WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
```
In re                                               :
                                                    :          **Chapter 11**
**THE GREAT ATLANTIC & PACIFIC TEA**                :
**COMPANY, INC.,** *et al.*,                        :          **Case No. 15-23007 (RDD)**
                                                    :
                  Debtors.[1]                       :          **(Joint Administration Pending)**
```
------------------------------------------------------------x
```

### MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363, 364, 503, AND 507 REQUESTING INTERIM AND FINAL AUTHORITY TO (I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, (II) IMPLEMENT CHANGES TO THE CASH MANAGEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS, (III) CONTINUE INTERCOMPANY TRANSACTIONS, (IV) PROVIDE ADMINISTRATIVE EXPENSE PRIORITY FOR POSTPETITION INTERCOMPANY CLAIMS AND FOR RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**A&P**") respectfully represent:

**Background**

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of Christopher W. McGarry Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, sworn to on the date hereof (the "**McGarry Declaration**"), which has been filed with the Court contemporaneously herewith.

**Jurisdiction**

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2

## **Relief Requested**

5.      By this Motion, pursuant to sections 105(a), 363, 364, 503, and 507 of the Bankruptcy Code, the Debtors request interim and final authority to (a) continue their existing cash management system, including, without limitation, the continued maintenance of their existing bank accounts and business forms, (b) implement changes to their cash management system in the ordinary course of business, including, without limitation, opening new or closing existing bank accounts, (c) continue to perform under and honor intercompany transactions in the ordinary course of business, in their business judgment and at their sole discretion, (d) provide administrative expense priority for postpetition intercompany claims, and for related relief.[2] Such relief, including any and all authorizations or payments requested herein, shall be subject to and implemented in accordance with the provisions of the DIP Orders (as defined in the McGarry Declaration).

6.      The Debtors further request that the Court authorize and direct the financial institutions at which the Debtors maintain various bank accounts to (a) continue to maintain, service, and administer the Debtors' bank accounts, and (b) debit the bank accounts in the ordinary course of business on account of (i) wire transfers or checks drawn on the bank accounts, <u>provided</u> that any payments drawn, issued or made prior to the Commencement Date shall not be honored absent direction of the Debtors and a separate order of the Court authorizing such prepetition payment, or (ii) undisputed service charges owed to the banks for maintenance of the Debtors' cash management system, if any.  Proposed forms of order granting the relief requested in this Motion on an interim and final basis are attached hereto as **Exhibit "A"** and **Exhibit "B"** (the "**Proposed Orders**"), respectively.

---

[2] The Debtors do not invest their cash and, therefore, are not seeking authority to continue to make investments.

### The Debtors' Cash Management System, Bank Accounts and Business Forms

7.       As described in the McGarry Declaration, in the ordinary course of business, the Debtors utilize an integrated, centralized cash management system to collect, concentrate, and disburse funds generated by their operations (the "**Cash Management System**").  In broad terms, the Debtors' Cash Management System is similar to the cash management systems used by other major corporate enterprises.  The Cash Management System is tailored to meet the Debtors' operating needs as an operator of six supermarket chains and other retail beverage businesses.  The Cash Management System enables the Debtors to efficiently collect and disburse cash generated by their business, pay their financial obligations, centrally control and monitor corporate funds and available cash, comply with the requirements of their financing agreements, reduce administrative expenses, and efficiently obtain accurate account balances and other financial data.  It is critical that the Cash Management System remain intact to ensure seamless continuation of transactions and uninterrupted collection of revenues.

8.       The Cash Management System is comprised of 38 bank accounts at various financial institutions (the "**Banks**")[3] to accommodate different business divisions and to collect, organize, and track various forms of customer receipts and cash disbursements (collectively, the "**Bank Accounts**").[4]  The vast majority of the Bank Accounts are in the name of The Great Atlantic and Pacific Tea Company, Inc. ("**A&P Inc.**").  All but one of the Debtors' Bank Accounts are located at Banks designated as authorized depositories by the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**")[5], pursuant to the U.S. Trustee's Operating

---

[3]  The Debtors' Banks include: Bank of America, N.A. ("**Bank of America**"), Citibank ("**Citibank**"), Lake Region State Bank ("**Lake Region**"), PNC Bank ("**PNC**"), Valley National Bank ("**Valley National**"), and Wells Fargo Bank, N.A. ("**Wells Fargo**").

[4]  A list and description of each of the Debtors' Bank Accounts is attached hereto as **Exhibit "C."**

[5]  The Debtors maintain a Bank Account at Lake Region State Bank (the "**Lake Region Account**"), which is not included among the Banks designated as authorized depositories by the U.S. Trustee.  The Debtors maintain the

Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "**UST Guidelines**").[6]

9.      As explained in further detail below, the Cash Management System operates an automated three-phase process that repeats daily.  First, cash and other receivables generated from the Debtors' operations are deposited into various deposit and lockbox accounts, which are designated by type of receipt, banner or supermarket/store, and geographic location.  Next, the cash is concentrated from the various accounts into a main concentration account.  The funds in the main concentration account are automatically transferred to the "Concentration Account" (as defined in the Debtors' Amended and Restated Senior Secured Revolving Credit Agreement, dated September 17, 2014).  The agent under the revolving facility, Wells Fargo, then wires funds to the Debtors' centralized operating account.  The final phase of the Cash Management System is disbursement.  The Debtors maintain various disbursement accounts, which are designated by the type of disbursement (*e.g.*, payroll, taxes, insurance, etc.).  The disbursement accounts are ZBAs.  When an authorized draw is made on a disbursement account, the amount drawn is automatically transferred from the Debtors' centralized operating account to satisfy the draw.  An average of $23 million to $25 million flows through the Cash Management System per banking day in receipts and disbursements.  A general overview of the flow of funds through the Debtors' Cash Management System is illustrated by a diagram attached hereto as **Exhibit "D."**

10.      The Cash Management System is overseen by the personnel in the Debtors' finance department (the "**Finance Department**").  Although much of the Cash Management

---

Lake Region Account as a zero-balance account ("**ZBA**") specifically to manage non-sufficient funds checks ("**NSF Checks**") provided by customers at the Debtors' supermarket stores.  NSF Checks are debited against the Lake Region Account, which, as described in more detail below, creates a draw on the Debtors' main operating account to satisfy such debits.

[6] The Court authorized A&P's continued maintenance of the non-designated Bank Account as part of A&P's Cash Management System in its prior chapter 11 cases.

System is automated, Finance Department personnel monitor the Bank Accounts and manage the proper collection and disbursement of funds.

11.    The Debtors maintain robust controls relating to the Cash Management System. Members of the Finance Department, including the Chief Financial Officer, meet on a daily basis to review reports on the Debtors' cash balances and disbursements. The Chief Executive Officer also reviews this information on a daily basis. Various levels of required authorizations are determined by the size and type of the disbursement. Twice a week, the Finance Department prepares and sends to Wells Fargo, the Debtors' primary Bank, a file listing all authorized check disbursements to be processed and honored. The Finance Department also sends wire and Automated Clearing House payment ("**ACH Payment**") notifications to Wells Fargo on a daily basis. These procedures ensure that Wells Fargo only processes and honors payments that the Debtors expressly have authorized. In the rare event the Debtors' reports and Bank Account records do not match, the Finance Department works with Wells Fargo to resolve such discrepancies quickly and efficiently.

12.    Maintaining the Cash Management System in its current state is crucial to the Debtors' continued operations, given the significant volume of cash transactions processed through the Cash Management System each day. Any disruption to the Cash Management System unnecessarily and significantly would hinder the Debtors' complex day-to-day operations and impede the successful administration of their chapter 11 estates.

13.    In furtherance of the foregoing, the Debtors request that all of the Banks be authorized and directed to continue to administer the Bank Accounts as they were maintained and administered prepetition, without interruption and in the usual and ordinary course, and to honor all representations from the Debtors as to which checks should be honored or dishonored.

6

The Banks also should be authorized and directed to pay all checks, drafts, wires, and ACH Payments issued on the Bank Accounts for payment of any claims authorized by the Debtors arising on or after the Commencement Date so long as those accounts contain sufficient funds. To the extent that the Debtors have directed that any prepetition checks be dishonored, they reserve the right to issue replacement checks to pay the amounts related to any dishonored checks, consistent with orders of this Court.

## A.    Cash Collection

14.    As set forth in the McGarry Declaration, the Debtors generate and receive funds through the operations and promotional activities of their supermarkets, combination food and drug stores, and beer, wine, and liquor stores.  As part of their daily operations, the Debtors collect cash, checks, wire payments, and credit card payments.  This revenue is deposited into one of the Debtors' deposit accounts (the "**Deposit Accounts**") or lockbox accounts (the "**Lockboxes**," and, together with the Deposit Accounts, the "**Collection Accounts**"), which are designated by (a) type of receipts (*e.g.*, credit card receipts, pharmacy receipts, lottery proceeds, receipts for beer, wine and spirits sales, etc.), (b) "banner" of supermarket/store (*e.g.*, A&P, Pathmark, Waldbaum's, etc.), and (c) geographic location.

15.    Generally, the Debtors' cash collection accounts consist of:

a.    <u>Store Deposit Accounts</u>.    The Debtors maintain five store Deposit Accounts (the "**Store Deposit Accounts**") designated by "banner" to collect revenue generated from the Debtors' store operations.  Cash collected at the stores are deposited into the Store Deposit Accounts on an almost daily basis.  Each of the Store Deposit Accounts is a ZBA.

b.    <u>Pharmacy Lockboxes</u>.  The Debtors maintain six Lockboxes at Bank of America to collect revenue generated from their pharmacy operations (the "**Pharmacy Lockboxes**").  Each of the Pharmacy Lockboxes is a ZBA. The Pharmacy Lockboxes provide a secure and convenient collection process for checks, ACH Payments, and wire transfers from business customers, insurance companies, government agencies, and other third parties.

      c.      <u>Corporate Receivables Lockboxes</u>.  The Debtors maintain three (3) Lockboxes to collect miscellaneous payments, such as sublease rental income (the "**Corporate Receivables Lockboxes**").  Like the Pharmacy Lockboxes, each of the Corporate Receivables Lockboxes is a ZBA and provides a secure and convenient collection process for payments from third parties.

      d.      <u>Credit/Debit Accounts</u>.  The Debtors maintain merchant accounts with several credit and debit card companies, including American Express Company, Discover Financial Services, MasterCard Inc., and Visa, Inc.  The Debtors maintain two ZBAs to collect payments received from these credit and debit card companies.

**B.     Cash Concentration**

16.     As stated, the Debtors use a number of Collection Accounts to collect their funds.  Before the end of each day, the funds in the Collection Accounts clear—through wire payments, ACH Payments, or ZBAs—into a main concentration account (the "**Main Concentration Account**") maintained at Wells Fargo.  The Main Concentration Account is a ZBA.

17.     The Debtors' main operating account serves as the ultimate collection point for all funds moving through the Cash Management System (the "**Main Operating Account**").  At the end of each business day, the funds in the Main Concentration Account automatically are swept into the Main Operating Account, which also is maintained at Wells Fargo.  The Debtors satisfy their daily financial obligations using the funds in the Main Operating Account.  On average, approximately $23 million in receipts are swept into the Main Operating Account each day.

**C.     Cash Disbursements**

18.     The Debtors use the funds in the Main Operating Account to fund their ongoing operations through 14 disbursement accounts (the "**Disbursement Accounts**").  All but two of the Disbursement Accounts are ZBAs.  Funds are automatically transferred from the Main Operating Account to fulfill draws made on any of the Disbursement Accounts.  The Disbursement Accounts are designated by type of disbursement.  For example, the Debtors maintain separate Disbursement Accounts to satisfy payroll, taxes, insurance, and other recurring

8

obligations. The Debtors also maintain two "bottle" Disbursement Accounts at Wells Fargo to pay New York and Connecticut state redemption authorities proceeds from refundable bottle deposits that are charged on sales of soda, beer, and other bottled drinks sold at the Debtors' stores.

19. The Debtors also maintain six (6) Bank Accounts that are not directly connected to the Main Operating Account (the "**Standalone Accounts**"). A description of each of the Standalone Accounts is set forth on **Exhibit C**.

### D. Intercompany Transactions and Claims

20. In the ordinary course of business, the Debtors maintain business relationships among each other, which result in intercompany receivables and payables (the "**Intercompany Claims**").[7] The Intercompany Claims by and large are driven by cash, given the centralized nature of the Debtors' Cash Management System. All of the outstanding Intercompany Claims represent intercompany transactions (the "**Intercompany Transactions**") that have occurred from and after A&P's prior chapter 11 cases in 2010. The primary Intercompany Transactions giving rise to Intercompany Claims among the Debtors are:

    a.    <u>Cash Receipts Activities</u>. As described above, in accordance with the Cash Management System, the Debtors concentrate their revenue into the Main Operating Account, which is owned by A&P Inc. As a result, to the extent the revenue in the Main Operating Account is transferred from another Debtor entity, an Intercompany Transaction is recorded by A&P, Inc. with the particular Debtor that transferred the funds to the Main Operating Account.

    b.    <u>Disbursement Activities</u>. Likewise, in accordance with the Cash Management System, any disbursement made from the Main Operating

---

[7] Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises similar to the Debtors, the Debtors believe the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis. The continued performance of the ordinary course Intercompany Transactions is integral to ensuring the Debtors' ability to operate their business as debtors in possession. The Debtors have two non-debtor foreign affiliates who are not integrated into the Cash Management System or other operations. Accordingly, there are no Intercompany Claims between these foreign affiliates and the Debtors.

Account owned by A&P Inc. on behalf of another Debtor gives rise to an intercompany receivable to A&P Inc.

c.   Inventory.   Plainbridge, LLC ("**Plainbridge**") acts as a centralized "inventory agent" to fulfill the majority of the Debtors' inventory needs. Generally, A&P's accounting system treats inventory acquired by Plainbridge as being purchased by Plainbridge on behalf of the applicable affiliate. This Intercompany Transaction is recorded as an intercompany receivable due to Plainbridge and as an intercompany payable due from the affiliate.

d.   Expense Allocations.   In the ordinary course of business, the Debtors incur centrally-billed expenses, including insurance premiums, workers' compensation obligations, payroll and benefit costs, general corporate services, and information technology costs.   A&P Inc. pays these expenses, thereby creating Intercompany Claims that are reflected on the relevant Debtors' balance sheets.

21.   Intercompany Claims are not settled by actual transfers of cash among the Debtors.   The Debtors track all Intercompany Transactions electronically in their accounting system, which concurrently are recorded on the applicable Debtor's balance sheets.   The accounting system requires that all general-ledger entries be balanced at the legal-entity level, and, therefore, when the accounting system enters an intercompany receivable on one entity's balance sheet, it also automatically creates a corresponding intercompany payable on the applicable affiliate's balance sheet.   For example, if A&P Inc. makes a payroll disbursement on behalf of Pathmark Stores, Inc. ("**Pathmark**"), the Debtors' accounting system automatically enters an intercompany receivable on A&P Inc.'s balance sheet and an intercompany payable on Pathmark's balance sheet.   This results in a net balance of zero when accumulating all intercompany accounts.

22.   The Debtors maintain records of all transactions processed through their Cash Management System.   During these chapter 11 cases, the Debtors will keep records of any postpetition Intercompany Transactions and implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions

10

**E.      The Debtors' Existing Business Forms and Checks**

23.      In the ordinary course of business, the Debtors use several types of checks. Additionally, the Debtors use a variety of correspondence and business forms, including, but not limited to, letterhead, purchase orders, and invoices (collectively, the "**Business Forms**").

24.      To minimize expenses, the Debtors seek authorization to continue using all Business Forms and checks substantially in the forms used immediately prior to the Commencement Date, without reference to the Debtors' status as debtors in possession; <u>provided</u> that in the event that the Debtors generate new  Business Forms and/or checks during the pendency of these cases other than from their existing stock, such Business Forms and checks will include a legend referring to the Debtors as "Debtors-In-Possession."  To the extent practicable, the Debtors also will laser print such legend on any Business Forms and checks electronically generated during these cases.

25.      The Debtors have prepared communication materials to distribute to the various parties with whom they conduct business, which will, among other things, notify such parties of the commencement of these chapter 11 cases.  The Debtors believe that these direct communications will provide adequate notice of the Debtors' status as debtors in possession.

<u>The Relief Requested Should Be Granted</u>

**A.      Continuing the Cash Management System Is in the Best Interests of the Debtors, Their Creditors, and All Other Parties in Interest**

26.      The Cash Management System constitutes an ordinary course and essential business practice of the Debtors.  The Cash Management System provides significant benefits to the Debtors including, among other things, the ability to (i) control corporate funds, (ii) ensure the maximum availability of funds when and where necessary, and (iii) reduce costs and

administrative expenses by facilitating the movement of funds and the development of more timely and accurate account information.

27.    The operation of the Debtors' businesses requires that the Cash Management System continue during the pendency of these chapter 11 cases.  As a practical matter, because of the Debtors' corporate and financial structure, it would be extremely difficult and expensive to establish and maintain a separate cash management system for each Debtor.  Requiring the Debtors to adopt new, segmented cash management systems at this early and critical stage of these cases would be extraordinarily disruptive and harmful to their operations.  Any such disruption would have a severe and adverse impact upon the Debtors' chapter 11 estates. Consequently, maintaining the existing Cash Management System is in the best interest of all parties in interest.

28.    Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.  *Med. Malpractice Ins. Ass'n v. Hirsch* (*In re Lavigne*), 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc.* (*In re Crystal Apparel, Inc.*), 207 B.R. 406, 409 (S.D.N.Y. 1997).  Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.  *Amdura Nat'l Distrib. Co. v. Amdura Corp.* (*In re Amdura Corp.*), 75 F.3d 1447, 1453 (10th Cir. 1996).  Accordingly, the Debtors seek authority under section 363(c)(1) to continue the collection, concentration, and disbursement of cash pursuant to their Cash Management System.

29.     Even if continuation of the Cash Management System and other relief requested herein is outside of the ordinary course, the Court may approve it pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims for suppliers).

30.     The Court also may rely on its general equitable powers to grant the relief requested in this Motion.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Continuing the Debtors' Cash Management System without interruption is vital to the Debtors' business operations and the success of these chapter 11 cases.  Therefore, it is within the Court's equitable powers under section 105(a) to approve the continued use of the Cash Management System.

31.     Indeed, courts in this and other districts—including this Court in A&P's prior chapter 11 cases—specifically have authorized debtors to maintain and continue using their existing cash management systems and prepetition bank accounts.  *See In re The Great Atl. & Pac. Tea Co.*, Case No. 10-24549 (Bankr. S.D.N.Y. Feb. 7, 2011); *In re Chassix Holdings, Inc.*, Case No. 15-10578 (Bankr. S.D.N.Y. Apr. 13, 2015); *In re MPM Silicones, LLC*, Case No. 14-

22503 (Bankr. S.D.N.Y. May 16, 2014); *In re dELiA*s, INC.*, Case No. 14-23678 (Bankr. S.D.N.Y. Dec. 24, 2014); *In re Inversiones Alsacia S.A.*, Case No. 14-12896 (Bankr. S.D.N.Y. Dec. 4, 2014); *In re SIGA Techs., Inc.*, Case No. 14-12623 (Bankr. S.D.N.Y. Oct. 23, 2014).

32.     Maintaining the existing Cash Management System is in the best interests of their estates and all parties in interest, and, therefore, should be approved. If the Debtors are required to significantly alter the way in which they collect and disburse cash throughout the Cash Management System, their operations will experience severe disruptions, which ultimately would frustrate the Debtors' ability to maximize value for their stakeholders.

33.     If the Debtors are not permitted to maintain and continue to use their Bank Accounts and Business Forms, the resulting prejudice will include (i) severe and likely irreparable disruption of the Debtors' ordinary financial affairs and business operations, (ii) delay in the administration of the Debtors' estates and (iii) cost to the estates to set up new systems, open new accounts, and order new Business Forms. Accordingly, the Debtors request that they be permitted to maintain and continue to use their existing Bank Accounts and Business Forms to the extent set forth herein.

**B.     Granting Administrative Expense Priority to Postpetition Intercompany Claims Is Necessary and Appropriate**

34.     The Debtors' funds are aggregated in the Cash Management System. The Debtors track all fund transfers in their accounting system and have the ability to account for all Intercompany Transactions regarding cash receipts, disbursements, and the centralized distribution of goods for sale. Continuation of the Intercompany Transactions in the Cash Management System is in the best interests of the Debtors, their estates, and all parties in interest. To ensure each individual Debtor will not fund, at the expense of its creditors, the operations of another entity, the Debtors request that, pursuant to sections 503(b)(1) and 364(b)

of the Bankruptcy Code, all Intercompany Claims arising after the Commencement Date be accorded administrative expense priority.

## C.   Honoring Certain Prepetition Obligations Related to the Cash Management System Should Be Approved

35.   The Debtors incur periodic service charges and other fees from the Banks in connection with the maintenance of the Cash Management System (collectively, the "**Bank Fees**"), which average approximately $147,000 per month. The Debtors estimate that they owe approximately $73,000 in Bank Fees as of the Commencement Date.   Similarly, the Debtors' credit card processors deduct service charges before transferring the Debtors credit card and debit card receivables.  Such fees generally are between one and three percent (1-3%) (together, with the Bank Fees, the "**Service Charges**").  Payment of any prepetition Service Charges is in the best interests of the Debtors and all parties in interest in these chapter 11 cases, as it will prevent unnecessary disruptions to the Cash Management System and ensure that the Debtors' receipt of funds are not delayed.  Further, because the Banks and credit and debit card processors likely have setoff rights for the Service Charges, payment of prepetition Service Charges should not alter the rights of unsecured creditors in these chapter 11 cases.

## D.   Maintenance of the Debtors' Existing Bank Accounts and Business Forms Is Warranted

36.   The Debtors request that the Court waive the requirements of the UST Guidelines, which require, among other things, the closure of the Debtors' prepetition Bank Accounts, the opening of new bank accounts, and the immediate ordering of new business forms and checks with a legend referencing the Debtors as "Debtors-In-Possession."  The Debtors seek an order authorizing and directing the Banks, including, but not limited to those listed on **Exhibit C**, to continue to treat, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive,

15

process, and honor and pay all checks, drafts, wires, or ACH Payments drawn on the Bank

Accounts after the Commencement Date by the holders or makers thereof, as the case may be;

provided that any payments issued or made prior to the Commencement Date will not be

honored absent direction of the Debtors and an order of the Court.

37.    The Debtors believe that their chapter 11 cases will be more orderly if they are

permitted to maintain all Bank Accounts with the same account numbers during these chapter

11 cases.  By preserving business continuity and avoiding the disruption and delay to the

Debtors' disbursement obligations, all parties in interest, including employees, vendors, and

customers, will be best served by the relief requested.  In addition, to the extent necessary, the

Debtors request authorization to open new bank accounts at their existing Banks or other

authorized depositories designated by the U.S. Trustee.

38.    To minimize expenses, the Debtors further request they be authorized to continue

to use their Business Forms and checks, substantially in the forms existing immediately before

the Commencement Date, without reference to their status as debtors in possession; provided that

in the event that the Debtors generate new  Business Forms and/or checks during the pendency of

these cases other than from their existing stock, such Business Forms and checks will include a

legend referring to the Debtors as "Debtors-In-Possession."  To the extent practicable, the

Debtors will work with their systems personnel and outside consultants to determine what

computer system changes are required to reflect their status as debtors in possession on

electronically generated Business Forms and checks and will implement such changes.

39.    By virtue of the nature and scope of the Debtors' business operations and the

large number of suppliers of goods and services with whom the Debtors transact, it is important

that the Debtors be permitted to continue to use their existing Business Forms without alteration

16

or change, except as requested herein.  Indeed, because parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the publicized nature of these cases and the notice of commencement the Debtors are distributing to such parties, changing their Business Forms would be unnecessary and unduly burdensome.

### The Debtors Satisfy Bankruptcy Rule 6003(b)

40.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the commencement date.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)); *see also* Fed. R. Bankr. P. 6003, Committee Notes (noting that cases applying Bankruptcy Rule 4001(b)(2) and (c)(2) may "provide guidance" for relief under Bankruptcy Rule 6003).

41.     The Cash Management System is critical to the Debtors' ongoing operations. Modifications of and disruptions to the Cash Management System likely would cause large-scale payment delays and impede the Debtors' ability to efficiently track the flow of funds. Late payments could frustrate the Debtors' relationships with vendors and cause other severe and irreparable disruptions to the Debtors' business.   Additionally, changes to the Cash Management System could impair the Debtors' ability to obtain important financial information in a timely manner.  Ultimately, these outcomes would cause a diminution in the value of the Debtors' estates, which would have a negative impact on all parties in interest.

17

Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

42.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **Notice**

43.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the four (4) largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014; (v) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014; (vi) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured PIK Toggle Notes due 2017 (the "**Prepetition PIK Notes**"); (vii) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured Convertible Notes due 2018 (the "**Prepetition Convertible Notes**"); (viii) the attorneys for the holders of a majority of the Prepetition PIK Notes; (ix) the attorneys for the holders of a majority of the Prepetition Convertible Notes; (x) the attorneys for the DIP Agent; (xi) the attorneys for The Yucaipa Companies, LLC and their affiliated funds; (xii) the attorneys for the United Food and Commercial Workers Union International; (xiii) the Securities and Exchange Commission; (xiv) the Internal Revenue Service; (xv) the

18

United States Attorney's Office for the Southern District of New York; and (xvi) each of the Banks at which the Debtors maintain the Bank Accounts identified on **Exhibit C**. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

44.   No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: July 19, 2015
New York, New York

/s/ Ray C. Schrock, P.C.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail

*Proposed Attorneys for Debtors
and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re                                              :
                                                   :        Chapter 11
THE GREAT ATLANTIC & PACIFIC TEA                   :
COMPANY, INC., *et al.*,                           :        Case No. 15-23007 (RDD)
                                                   :
          Debtors.[1]                              :        (Jointly Administered)

-------------------------------------------------------------------x

### INTERIM ORDER PURSUANT 11 U.S.C. §§ 105(a), 363, 364, 503, AND 507 REQUESTING AUTHORITY TO (I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, (II) IMPLEMENT CHANGES TO THE CASH MANAGEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS, (III) CONTINUE INTERCOMPANY TRANSACTIONS, (IV) PROVIDE ADMINISTRATIVE EXPENSE PRIORITY FOR POSTPETITION INTERCOMPANY CLAIMS, AND FOR RELATED RELIEF

Upon the motion (the "**Motion**")[2] of The Great Atlantic & Pacific Tea Company,

Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 364, 503, and

507 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing the

Debtors to (a) continue their existing cash management system, bank accounts, and business

forms, (b) implement changes to their cash management system in the ordinary course of

business, including, without limitation, opening or closing existing bank accounts, (c) continue to

perform under and honor intercompany transactions, in their business judgement and at their sole

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

discretion, (d) provide administrative expense priority for postpetition intercompany claims, and for related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28. U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given to the Notice Parties as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Declaration of Christopher W. McGarry Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, filed contemporaneously with the Motion, the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis to the extent set forth herein; and it is further

ORDERED that the Debtors are authorized and empowered pursuant to sections 105(a), 363, 364, 503, and 507 to continue using their integrated cash management system described in the Motion (the "**Cash Management System**") and to collect, concentrate, and

disburse cash in accordance with the Cash Management System, including intercompany funding among Debtor affiliates; and it is further

ORDERED that the Debtors are authorized to implement changes to the Cash Management System in the ordinary course of business, including, without limitation, the opening of any new bank accounts and the closing of any existing bank accounts (the "**Bank Accounts**") as they may deem necessary and appropriate in their sole discretion, so long as any such new account is (A) with a bank that is (i) insured with the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation and (ii) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees, and (B) the Debtors provide notice to the U.S. Trustee of the opening of such account; and it is further

ORDERED that the relief, rights, and responsibilities provided for in this Interim Order shall be deemed to apply to any and all Bank Accounts maintained in the Debtors' names, including, without limitation, any new bank accounts, whether or not such Bank Accounts are identified on **Exhibit "C"** to the Motion, and any Banks at which new accounts are opened shall be subject to the rights and obligations of this Interim Order; and it is further

ORDERED that the Debtors are authorized to (a) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Commencement Date, including, without limitation, those accounts identified on **Exhibit C** to the Motion;  (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) use, in their present form, all correspondence and business forms (including, but not limited to, letterhead, purchase orders, and invoices) (collectively, the "**Business Forms**"), as well as checks and all other documents related to the Bank Accounts existing immediately before the

3

Commencement Date, without reference to the Debtors' status as debtors in possession; provided that in the event the Debtors generate new Business Forms and/or checks during the pendency of these chapter 11 cases, such Business Forms and checks shall include a legend referring to the Debtors as "Debtors-In-Possession," and, to the extent practicable, the Debtors shall laser print such legend on any Business Forms and checks electronically generated during these cases; and it is further

ORDERED that the Debtors are authorized and empowered to continue performing under and honoring Intercompany Transactions; provided that the Debtors shall (a) keep records of any postpetition Intercompany Transactions that occur during the chapter 11 cases and (b) implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions; and it is further

ORDERED that in accordance with sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, all Intercompany Claims arising after the Commencement Date shall be accorded administrative expense priority; and it is further

ORDERED that except as otherwise expressly provided in this Interim Order, all banks at which the Bank Accounts are maintained (collectively, the "**Banks**") are authorized and directed to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires, and ACH Payments issued by the Debtors and drawn on the Bank Accounts after the Commencement Date to the extent the Debtors have sufficient funds standing to their credit with such Bank; provided that any payments drawn, issued or made prior to the Commencement Date shall not be honored absent direction of the Debtors and a separate order of the Court authorizing such prepetition payment; and it is further

4

ORDERED that the Banks are authorized to charge and the Debtors are authorized to pay and honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with Debtors (collectively, the "**Service Charges**"); and it is further

ORDERED that each of the Banks is authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of the Petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtor's accounts with such Bank prior to Commencement Date that have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such costs and fees prior to Commencement Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as Service Charges for the maintenance of the Cash Management System; and it is further

ORDERED that the Banks may rely on the representations of the Debtor with respect to whether any check, item, or other payment order drawn or issued by the Debtor prior to filing of the Petition should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein, and shall not be liable to any party on account of (a) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry), (b) honoring of any prepetition checks, drafts, wires or ACH Payments

5

in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire or ACH Payments or (c) an innocent mistake made despite implementation of reasonable handling procedures; and it is further

ORDERED that the Debtors' credit and debit card providers are authorized and directed to transfer all credit card receivables payable to the Debtors and to deduct any Service Charges, whether arising before or after the Commencement Date, payable by the Debtors from such transfers; and it is further

ORDERED that nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services subject to their compliance with applicable law; and it is further

ORDERED that as soon as practicable after the entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on those Banks that make disbursements pursuant to the Debtors' Cash Management System; and it is further

ORDERED that that nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**"); and it is further

ORDERED that nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an

6

approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; and it is further

ORDERED that the requirements of Bankruptcy Rule 6003(b) have been satisfied; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are hereby waived; and it is further

ORDERED that notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Final Hearing on the Motion shall be held on _____, **2015, at _____ (Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Garrett A. Fail, Esq. and Sunny Singh, Esq.); (ii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014; (iii) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014, Choate, Hall & Stewart LLP, 2 International Place, Boston, MA 02110 (Attn: Kevin J. Simard, Esq., John F. Ventola, Esq.); (iv) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014, Otterbourg P.C., 230 Park Avenue, New York, NY 10169 (Attn: Johnathan N. Helfat); (v) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured PIK Toggle Notes due 2017 (the "**Prepetition PIK Notes**") and as trustee under that certain

Indenture for Senior Secured Convertible Notes due 2018 (the "**Prepetition Convertible Notes**"), 100 Wall Street, New York, NY 10005 (Attn: Corporate Trust Department); (vi) the attorneys for the holders of a majority of the Prepetition PIK Notes, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York NY 10037 (Attn: Joshua M. Siegel); (vii) the attorneys for the holders of a majority of the Prepetition Convertible Notes, Schulte Roth & Zabel LLP. 919 3rd Avenue, New York, NY 10022 (Attn: Adam Harris); (viii) the attorneys for the DIP Agent, Jones Day, 222 E. 41st Street, New York, New York 10017 (Attn: Scott J. Greenberg); (ix) the attorneys for The Yucaipa Companies, LLC and their affiliated funds, 9130 Sunset Boulevard, Los Angeles, CA 90069; and (x) the attorneys for the United Food and Commercial Workers Union International, Cohen, Weiss and Simon LLP, 330 W. 42nd St., New York, NY 10036 (Attn: Richard M. Seltzer), in each case so as to be received no later than **4:00 p.m. (Prevailing Eastern Time) on _____, 2015**; and it is further

ORDERED that this Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order; and it is further

ORDERED that the Debtors are authorized to take all actions necessary to carry out this Interim Order; and it is further

ORDERED that any payment made or to be made under this Interim Order, and any authorization contained in this Interim Order, shall be subject to the terms of the DIP Orders; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

Dated: _____, 2015

White Plains, New York                  UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                               :
                                                    :        Chapter 11
THE GREAT ATLANTIC & PACIFIC TEA                    :
COMPANY, INC., *et al.*,                            :        Case No. 15-23007 (RDD)
                                                    :
              Debtors.[1]                           :        (Jointly Administered)

----------------------------------------------------------------x

**FINAL ORDER PURSUANT 11 U.S.C. §§ 105(a), 363, 364,
503, AND 507 REQUESTING AUTHORITY TO (I) CONTINUE USING
EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS
FORMS, (II) IMPLEMENT CHANGES TO THE CASH MANAGEMENT SYSTEM
IN THE ORDINARY COURSE OF BUSINESS, (III) CONTINUE INTERCOMPANY
TRANSACTIONS, (IV) PROVIDE ADMINISTRATIVE EXPENSE PRIORITY FOR
<u>POSTPETITION INTERCOMPANY CLAIMS, AND FOR RELATED RELIEF</u>**

Upon the motion (the "**Motion**")[2] of The Great Atlantic & Pacific Tea Company,

Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b), 363(c)

364(b), 503(b)(1) and 507(a)(2) of title 11 of the United States Code (the "**Bankruptcy Code**"),

for an order authorizing the Debtors to a) continue their existing cash management system, bank

accounts, and business forms, (b) implement changes to their cash management system in the

ordinary course of business, including, without limitation, opening or closing existing bank

accounts, (c) continue to perform under and honor intercompany transactions, , in their business

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

judgement and at their sole discretion, (d) provide administrative expense priority for postpetition intercompany claims, and for related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28. U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given to the Notice Parties as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and the Court having held hearings to consider the relief requested in the Motion on an interim and final basis (the "**Final Hearing**"), and the Court having entered an order granting the relief requested in the Motion on an interim basis; and upon the Declaration of Christopher W. McGarry Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, filed contemporaneously with the Motion, the record of the Final Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on a final basis to the extent set forth herein; and it is further

ORDERED that the Debtors are authorized and empowered pursuant to sections 105(a), 363, 364, 503, and 507 to continue using their integrated cash management system as

2

described in the Motion (the "**Cash Management System**") and to collect, concentrate, and disburse cash in accordance with the Cash Management System, including intercompany funding among Debtor affiliates; and it is further

ORDERED that the Debtors are authorized to implement changes to the Cash Management System in the ordinary course of business, including, without limitation, the opening of any new bank accounts and the closing of any existing bank accounts (the "**Bank Accounts**") as they may deem necessary and appropriate in their sole discretion so long as any such new accounts is (A) with a bank that is (i) insured with the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation and (ii) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees, and (B) the Debtors provide notice to the U.S. Trustee of the opening of such account; and it is further

ORDERED that the relief, rights, and responsibilities provided for in this Final Order shall be deemed to apply to any and all Bank Accounts maintained in the Debtors' names, including, without limitation, any new bank accounts, whether or not such Bank Accounts are identified on **Exhibit "C"** to the Motion, and any Banks at which new accounts are opened shall be subject to the rights and obligations of this Final Order; and it is further

ORDERED that the Debtors are authorized to (a) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Commencement Date, including, without limitation, those accounts identified on **Exhibit C** to the Motion;  (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) use, in their present form, all correspondence and business forms (including, but not limited to, letterhead, purchase orders, and invoices) (collectively, the "**Business Forms**"), as well as

3

checks and all other documents related to the Bank Accounts existing immediately before the Commencement Date, without reference to the Debtors' status as debtors in possession; provided that in the event the Debtors generate new Business Forms and/or checks during the pendency of these chapter 11 cases, such Business Forms and checks shall include a legend referring to the Debtors as "Debtors-In-Possession," and, to the extent practicable, the Debtors shall laser print such legend on any Business Forms and checks electronically generated during these cases; and it is further

ORDERED that the Debtors are authorized and empowered to continue performing under and honoring Intercompany Transactions; provided that the Debtors shall (a) keep records of any postpetition Intercompany Transactions that occur during the chapter 11 cases and (b) implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions; and it is further

ORDERED that in accordance with sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, all Intercompany Claims arising after the Commencement Date shall be accorded administrative expense priority; and it is further

ORDERED that except as otherwise expressly provided in this Interim Order, all banks at which the Bank Accounts are maintained (collectively, the "**Banks**") are authorized and directed to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires, and ACH Payments issued by the Debtors and drawn on the Bank Accounts after the Commencement Date to the extent the Debtors have sufficient funds standing to their credit with such Bank; provided that any payments drawn,

4

issued or made prior to the Commencement Date shall not be honored absent direction of the Debtors and a separate order of the Court authorizing such prepetition payment; and it is further

ORDERED that the Banks are authorized to charge and the Debtors are authorized to pay and honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with Debtors (collectively, the "**Service Charges**"); and it is further

ORDERED that each of the Banks is authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of the Petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtor's accounts with such Bank prior to Commencement Date that have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such costs and fees prior to Commencement Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as Service Charges for the maintenance of the Cash Management System; and it is further

ORDERED that the Banks may rely on the representations of the Debtor with respect to whether any check, item, or other payment order drawn or issued by the Debtor prior to filing of the Petition should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein, and shall not be liable to any party on account of (a) following the

Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry), (b) honoring of any prepetition checks, drafts, wires or ACH Payments in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire or ACH Payments or (c) an innocent mistake made despite implementation of reasonable handling procedures; and it is further

ORDERED that the Debtors' credit and debit card providers are authorized and directed to transfer all credit card receivables payable to the Debtors and to deduct any Service Charges, whether arising before or after the Commencement Date, payable by the Debtors from such transfers; and it is further

ORDERED that nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services subject to their compliance with applicable law; and it is further

ORDERED that as soon as practicable after the entry of this Final Order, the Debtors shall serve a copy of this Final Order on those Banks that make disbursements pursuant to the Debtors' Cash Management System and on counsel for the Administrative Agent; and it is further;

ORDERED that nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are hereby waived; and it is further

ORDERED that notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Debtors are authorized to take all actions necessary to carry out this Final Order; and it is further

ORDERED that any payment made or to be made under this Final Order, and any authorization contained in this Final Order, shall be subject to the terms of the DIP Orders; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

Dated: _____, 2015

     White Plains, New York

                                           UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**Bank Accounts**

| Account | Financial Institution | Type | Description | Account Number |
|---|---|---|---|---|
| The Great A&P Tea Co., Inc. Bank of America Office Deposit Account | Bank of America | Concentration | Concentration Account Pharmacy Lockboxes | xxxx4381 |
| The Great A&P Tea Co., Inc. Pharmacy Lockbox | Bank of America | Collection | Pharmacy Lockbox | xxxx3938 |
| The Great A&P Tea Co., Inc. Corporate Receivables Concentration Account[1] | Bank of America | Concentration | Concentration Account Corporate Receivables Lockboxes | xxxx3973 |
| A&P Real Estate Lockbox | Bank of America | Collection | Corporate Receivables Lockbox | xxxx3973-6434 |
| A&P Metro Lockbox | Bank of America | Collection | Corporate Receivables Lockbox | xxxx3973-6426 |
| A&P Food Emporium Lockbox | Bank of America | Collection | Corporate Receivables Lockbox | xxxx3973-6453 |
| The Great A&P Tea Co., Inc. Wells Fargo Wholesale Lockbox Account | Wells Fargo | Collection | Corporate Receivables Lockbox | xxxx6520 |
| Waldbaum, Inc. Medicare Lockbox | Bank of America | Collection | Pharmacy Lockbox | xxxx6156 |
| Pathmark Stores, Inc. Medicare Lockbox | Bank of America | Collection | Pharmacy Lockbox | xxxx6169 |
| The Great A&P Tea Co., Inc. Third Party Prescription Lockbox | Bank of America | Collection | Pharmacy Lockbox | xxxx0681 |
| Super Fresh Food Markets, Inc. Medicare Lockbox | Bank of America | Collection | Pharmacy Lockbox | xxxx2030 |
| A&P Live Better LLC | Bank of America | Collection | Pharmacy Lockbox | xxxx3932 |

[1]  The Great A&P Tea Co. Inc. Corporate Receivables Concentration Account (Account No. xxxx3973) and each of the individual Lockbox Accounts associated with such account (Account Nos. xxxx3973-6434; xxxx3973-6426; and xxxx3973-6453) soon will be closed and the funds therein transferred to a "Wholesale Lockbox Account" maintained at Wells Fargo (Account No. xxxx6520).

| Account | Financial Institution | Type | Description | Account Number |
|---|---|---|---|---|
| Medicare Lockbox | | | | |
| The Great A&P Tea Co., Inc. Cigna Health Insurance Account | Citibank | Disbursement | Disbursement Account Cigna Health Insurance Disbursements | xxxx7048 |
| The Great A&P Tea Co., Inc. Cigna Insurance Account | Citibank | Disbursement | Disbursement Account Cigna Insurance Reimbursements | xxxx7427 |
| The Great A&P Tea Co., Inc. Cigna Insurance Account | Citibank | Disbursement | Disbursement Account Cigna CT General Life Insurance Disbursements | xxxx0178 |
| The Great A&P Tea Co., Inc. Cigna Insurance Account | Citibank | Disbursement | Disbursement Account Cigna Partial Term Disability Disbursements | xxxx0613 |
| The Great A&P Tea Co., Inc. Returned Checks Account | Lake Region State Bank | Disbursement | Disbursement Account Consolidated Returned Checks | xxxx5646 |
| Pathmark Stores, Inc. We Care Fund Account | PNC Bank | Standalone | Standalone Account Charitable Contributions to Pathmark Employees | xxxx0352 |
| The Great A&P Remediation Trust Account | Valley National Bank | Standalone | Standalone Account EPA Trust | xxxx5500 |
| The Great A&P Tea Co., Inc. Concentration Account | Wells Fargo | Concentration | Main Concentration Account | xxxx6555 |
| The Great A&P Tea Co., Inc. Deposit Account | Wells Fargo | Collection | Deposit Account A&P Credit/Debit Cards | xxxx6938 |
| The Great A&P Tea Co., Inc. (Pathmark) Deposit Account | Wells Fargo | Collection | Deposit Account Pathmark Credit/Debit Cards | xxxx6946 |
| The Great A&P Tea Co., Inc. CT Bottle Account | Wells Fargo | Disbursement | Disbursement Account CT Refundable Bottle Deposit Disbursements | xxxx5480 |

2

| Account | Financial Institution | Type | Description | Account Number |
|---|---|---|---|---|
| The Great A&P Tea Co., Inc. NY Bottle Account | Wells Fargo | Disbursement | Disbursements Account NY Refundable Bottle Deposit Disbursements | xxxx5472 |
| The Great A&P Tea Co., Inc. Operating Account | Wells Fargo | Operating | Master Operating Account | xxxx6605 |
| A&P PA Legacy Deposit Account | Wells Fargo | Collection | Store Deposit Account A&P PA Legacy | xxxx5489 |
| The Great A&P Tea Co., Inc. Lottery Account | Wells Fargo | Disbursement | Disbursement Account – PA, DE, ME, NJ, & NY Lottery Disbursements | xxxx7004 |
| The Great A&P Tea Co., Inc. Lottery Account | Wells Fargo | Disbursement | Disbursement Account CT Lottery Disbursements | xxxx6998 |
| The Great A&P Tea Co., Inc. Payroll Account | Wells Fargo | Disbursement | Disbursement Account Payroll | xxxx1465 |
| The Great A&P Tea Co., Inc. Checking Account | Wells Fargo | Disbursement | Disbursement Account Check Disbursements | xxxx1364 |
| The Great A&P Tea Co., Inc. EFT/EDI Account | Wells Fargo | Disbursement | Disbursement Account Electronic Funds Transfers/ Electronic Data Interchange | xxxx6613 |
| The Great A&P Tea Co., Inc. Tax Account | Wells Fargo | Disbursement | Disbursement Account Tax Disbursements | xxxx6621 |
| The Great A&P Tea Co., Inc. d/b/a Waldbaums Deposit Account | Wells Fargo | Collection | Store Deposit Account Waldbaums | xxxx6996 |
| A&P Legacy Deposit Account | Wells Fargo | Collection | Store Deposit Account A&P Legacy | xxxx7002 |
| The Great A&P Tea Co., Inc. d/b/a Pathmark Stores Deposit Account | Wells Fargo | Collection | Store Deposit Account Pathmark | xxxx7028 |
| The Great A&P Tea Co., Inc. d/b/a NY Transit Account | Wells Fargo | Disbursement | Disbursement Account NY Transit Disbursements | xxxx7036 |

| Account | Financial Institution | Type | Description | Account Number |
|---|---|---|---|---|
| The Great A&P Tea Co., Inc. d/b/a A&P Stores Deposit Account | Wells Fargo | Collection | Store Deposit Account A&P | xxxx6912 |
| The Great A&P Tea Co., Inc. Aetna Insurance Account | Wells Fargo | Disbursement | Disbursement Account Aetna Insurance Disbursements | xxxx6654 |
| The Great A&P Tea Co., Inc. Store Super Master Account | Wells Fargo | Concentration | Concentration Account Store Deposit Accounts | xxxx6597 |
| Atlantic Choice Insurance & Indemnity, Inc. Account | Wells Fargo | Standalone | Standalone Account Insurance Claims | xxxx6979 |
| A&P Bermuda LTD Account | Wells Fargo | Standalone | Standalone Account A&P Bermuda LTD | xxxx6995 |
| The Great A&P Tea Co., Inc. Lockbox Account | Wells Fargo | Concentration | Concentration Account Corporate Receivables | xxxx6520 |
| Delaware County Dairies Checking Account | Wells Fargo | Standalone | Standalone Account Delaware County Dairies Pension Checking Account | xxxx6961 |
| Delaware County Dairies Money Market Account | Wells Fargo | Standalone | Standalone Account Delaware County Dairies Pension Money Market Account | xxxx5498 |

4

**Exhibit D**

**Cash Management System Diagram**

# Bank Account Structure

