WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| **In re** : | **Chapter 11** |
| : | |
| **THE GREAT ATLANTIC & PACIFIC TEA** : | |
| **COMPANY, INC.,** *et al.,* : | **Case No. 15-23007 (RDD)** |
| : | |
| **Debtors.**[1] : | **(Joint Administration Pending)** |

-------------------------------------------------------------x

<div align="center">

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 363**
**AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006 FOR APPROVAL**
**OF GLOBAL SALE AND LEASE RATIONALIZATION PROCEDURES**

</div>

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

       The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as

debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the

"**Debtors**"), respectfully represent:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

## Preliminary Statement

1. As part of a proactive process to explore strategic alternatives, the Debtors' board and management, with the assistance of the Debtors' advisors, have engaged in a comprehensive review of the Debtors' store portfolio, with the objective of determining each store's current and projected profitability, as well as each store's potential for rehabilitation. As a result of this review, the Debtors determined that the best way to maximize value for distribution to creditors is to sell their stores through an orderly, three-tiered comprehensive asset sales strategy (the "**Sale Strategy**"). As explained in greater detail below, the Sale Strategy and the related procedures developed by the Debtors, in consultation with their advisors and primary stakeholders, are intended to provide the Debtors flexibility to allow for the sale of as many stores on a going concern basis as possible, for the highest and best valuable available. In order to accomplish this goal and maximize value, the Sale Strategy must be implemented quickly and effectively. The Debtors have been averaging cash burn rates of $14.5 million during the first four periods of Fiscal Year 2015, and expect this cash burn to accelerate postpetition. In addition, as discussed in greater detail in the McGarry Declaration (defined below), the strict milestones (the "**DIP Milestones**") imposed by the Debtors' Junior Lien DIP Facility reinforce the need to accomplish the Sale Strategy in a prompt and timely manner.

2. In the first tier, the Debtors intend to sell approximately 120 of their most profitable and marketable "core" stores (including certain leases and related assets, the "**Tier I Stores**") to certain third-party bidders on a going-concern basis, pursuant to a marketing and sales process (the "**Tier I Sale Process**") conducted by Evercore Partners LLC ("**Evercore**").[2] The DIP Milestones require entry of sale orders in connection with the Tier I Sale Process on or

---

[2] Contemporaneously herewith, the Debtors have filed a motion seeking approval of certain bidding and sale procedures for the Tier I Stores and an application seeking authority to retain Evercore.

before October 15, 2015, with such sales to close on or before October 30, 2015. In the third tier, the Debtors intend to immediately begin the process of closing 25 stores that have negative profitability and negative lease value (the "**Tier III Stores**").[3] The DIP Milestones require that the Debtors have vacated the premises of each of the Tier III Stores within 60 days of the Commencement Date. The Debtors have engaged Hilco Real Estate, LLC ("**Hilco**"), as real estate advisor, to conduct a robust marketing and monetization process alongside Evercore (the "**Tier II Sale Process**") with respect to the remaining 151 "non-core" stores (including certain leases and related assets, the "**Tier II Stores**").[4] A schedule of the Tier II Stores is attached hereto as **Exhibit "A"**.

3. The Tier II Stores collectively represent an extremely valuable real estate portfolio. The relief requested herein will provide the Debtors with the flexibility to move as expeditiously as possible to negotiate and secure bids and conduct auctions, if necessary, for the highest and best offers for the Tier II Stores, while protecting the due process rights of all interested parties. More specifically, the Debtors seek advance approval of omnibus procedures (the "**Global Sale and Lease Rationalization Procedures**") that will authorize the Debtors to solicit proposals, negotiate transactions, provide break-up fee protections (if necessary and appropriate), hold auctions and consummate transactions to the highest and best offers, all while giving parties in interest and the Court and full and fair opportunity to review and consider proposed transactions. In light of the sheer volume of Tier II Stores the Debtors are seeking to monetize as part of the Tier II Sale Process and the compressed timeline imposed by the Debtors'

---

[3] Contemporaneously herewith, the Debtors have filed a motion seeking approval of certain store closing procedures for the Tier III Stores.

[4] Any of the Tier II Stores may be sold pursuant to the Tier I Process.

WEIL:\95403322\5\50482.0004

deteriorating cash position and the DIP Milestones, the Debtors submit that the relief requested should be approved as a reasonable exercise of the Debtors' business judgment.

<div align="center">**Background**</div>

4.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

5.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

6.      Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the Declaration of Christopher W. McGarry Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, sworn to on the date hereof, which has been filed with the Court contemporaneously herewith (the "**McGarry Declaration**").

<div align="center">**Jurisdiction**</div>

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

<div align="center">**Relief Requested**</div>

8.      By this Motion, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, the Debtors request entry of an

<div align="center">4</div>

order approving the Global Sale and Lease Rationalization Procedures (described below). A proposed form of order granting the relief requested in the Motion is attached hereto as **Exhibit "B"** (the "**Proposed Order**").

### Marketing and Monetization Process

9.       In connection with the Tier I Sale Process, in March 2015, the Debtors retained Evercore to serve as their investment banker and to market substantially all of their assets. Hilco was engaged in late April 2015 to provide additional consulting and advisory services to the Debtors in connection with the development of the Debtors' Sale Strategy. Almost immediately, Hilco began extensive due diligence in order to determine, among other things, which of the Debtors' stores were likely to generate the most market interest. In May 2015, Hilco completed an appraisal of the leasehold value of the Debtors' stores.

10.       Between April and June 2015, Evercore and the Debtors contacted over thirty potential buyers, including twenty strategic buyers (*i.e.*, companies already operating in the grocery industry) and over ten financial buyers (such as private equity firms), with the aim of attracting one or more bidders for the Debtors' assets. During this process, parties that executed confidentiality agreements were granted access to an electronic data room containing significant diligence and other confidential information about all of the Debtors' businesses. As a result of Evercore's extensive marketing efforts to these potential buyers, the Debtors received eight proposals, all of which contemplated a sale of the Tier I Stores free and clear of liens and claims pursuant to section 363 of the Bankruptcy Code. In evaluating the proposals, the Debtors and Evercore analyzed, among other things: (i) the consideration offered by each potential buyer; (ii) the profitability of the stores included in each proposal; (iii) the leasehold value of the stores included in each proposal based on an the May 2015 appraisal conducted by Hilco; and (iv) each proposal's treatment of and effect on labor.

WEIL:\95403322\5\50482.0004

11.     The Debtors selected six bidders to participate in a second round of bidding. During this round, the Debtors provided the bidders with further diligence information and allowed bidders to conduct numerous store visits over a period of weeks. Evercore and the Debtors continued negotiating with bidders to increase the value per store of the bids, the number of stores in each bid, and the value and number of stores in the aggregate. After extensive deliberations with their advisors, and separate negotiations with six bidders regarding the terms of an asset purchase agreement, the Debtors elected to proceed with the three bids for the Tier I Stores.

12.     As the Tier I Sale process progressed, Hilco reached out to a carefully-constructed list of approximately 35-40 grocery and non-grocery retailers regarding the Tier II Stores. Hilco selected parties for its initial contact list based on such parties' past expressions of interest in the Debtors' stores, and Hilco's belief that these parties would respect the confidential nature of the prepetition process. Most of the parties Hilco contacted expressed interest, and approximately 20 of these parties have executed non-disclosure agreements with the Debtors, allowing them to review non-public information in connection with their due diligence efforts.

13.     Negotiations with these 20 interested parties have been productive so far, and the Debtors expect market interest in the Tier II Stores to increase exponentially after the Commencement Date in connection with the Tier II Sale Process and in conjunction with the Tier I Sale Process. This Motion effectively puts the world on notice that the Tier II Stores are for sale. In addition, the Debtors will commence an aggressive marketing effort immediately following the Commencement Date. Among other things, Hilco will contact a broad universe of over 150 potential interested parties, including additional grocery and non-grocery retailers, as well as landlords, real estate investors and brokers, via direct emails and phone calls, and will

6

place strategic advertisements in local and national media in order to reach the widest possible audience of potential acquirers. The Debtors expect these efforts will result in significant interest. It is rare for large amounts of valuable real estate assets to become available in the dense, Northeast real estate market. Implementation of the Global Sale and Lease Rationalization Procedures will allow the Debtors to capitalize on this unique opportunity to generate significant value for the Debtors' estates.

14. The Debtors anticipate that the Tier II Sale Process will result in sales of the more lucrative Tier II Stores pursuant to public auctions, and that other Tier II Stores, including those with valuable leasehold interests, will be sold on a stand-alone basis. As described in greater detail below, the Global Sale and Lease Maximization Procedures are designed to allow the Debtors the flexibility to structure each transaction in the manner most likely to maximize value for the Debtors' estates, within the compressed timeline of these chapter 11 cases. At the same time, the procedures provide interested parties sufficient notice to bid and an opportunity to object where their interests may be affected.

### The Global Sale and Lease Rationalization Procedures

15. The Debtors have determined, in the exercise of their business judgment, and in consultation with Hilco and their other advisors, that the best and most efficient way to maximize the value of the Tier II Stores is to implement the Global Sale and Lease Rationalization Procedures. The material terms of the Global Sale and Lease Rationalization Procedures are summarized below:

- Debtor Notice Parties. For purposes of the Global Sale and Lease Rationalization Procedures, the "**Debtor Notice Parties**" are: (i) The Great Atlantic and Pacific Tea Company, Inc., 2 Paragon Drive, Montvale, New Jersey 07645 (Attn: Christopher W. McGarry and Matthew Bennett); (ii) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Garrett A. Fail,

Esq.); and (iii) Hilco, 5 Revere Dr. Suite 320, Northbrook, IL 60062 (Attn: Gregory S. Apter).

- Transaction Notice Parties.  For purposes of the Global Sale and Lease Rationalization Procedures, the "**Transaction Notice Parties**" are:  (i) the attorneys for the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Creditors' Committee**"); (ii) the attorneys for Fortress Investment Corp., as the Debtors' proposed post-petition secured lender, (iii) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014; (iv) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014; (v) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured PIK Toggle Notes due 2017 (the "**Prepetition PIK Notes**"); (vi) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured Convertible Notes due 2018 (the "**Prepetition Convertible Notes**"); (vii) the attorneys for the holders of a majority of the Prepetition PIK Notes; (viii) the attorneys for the holders of a majority of the Prepetition Convertible Notes; (x) the U.S. Trustee; (xi) all parties who have requested notice under Bankruptcy Rule 2002; (xii) all entities known or reasonably believed by the Debtors to have asserted a lien, encumbrance, claim or other interest in any of the Tier II Stores that are the subject of the proposed transaction (for whom identifying information and addresses are available to the Debtors); (xiii) all entities known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to any of the assets offered for sale during the past twelve (12) months; and (xiv) all of the labor unions that represent employees of any Tier II Stores that is the subject of the proposed transaction.

- Auction Procedures.

  - *Auction Notice*.  If the Debtors determine, in their sole discretion, to hold an auction in connection with one or more sale or disposition transactions in connection with one or more of the Tier II Stores (a "**Tier II Transaction**"), the Debtors shall file and serve on the Transaction Notice Parties an Auction Notice and shall schedule an auction on a date that is at least fourteen (14) days after service of the Auction Notice.  The Auction Notice shall set forth the (i) date, time and location of the auction and (ii) any rules for the auction that the Debtors determine, in their reasonable business judgment, are appropriate to promote the goal of the auction (*i.e.* to maximize the consideration to be received by the Debtors), including without limitation, a deadline for submitting bids, criteria bidders must meet in order to participate in the auction (including a requirement to make a good faith deposit of 10% of the proposed purchase price or such other amount as the Debtors may determine in their sole discretion), the

purchase price and terms on which the bidding at the auction will start and the criteria for minimum overbids.

- *Stalking Horse Provisions.* The Debtors may, but are not obligated to, designate a stalking horse bidder (the "**Stalking Horse**") and offer a breakup fee and/or expense reimbursement to the Stalking Horse (the "**Bid Protections**"); provided the Bid Protections shall not exceed 3% of the cash portion of the Stalking Horse's bid. If the Debtors determine to designate a Stalking Horse, the Auction Notice shall identify the material terms of the Debtors' agreement with the Stalking Horse, including the terms and conditions of any Bid Protections. Any objections to the Bid Protections (the "**Bid Protection Objections**") must be filed with the Court and served on the Debtor Notice Parties within five (5) days after service of the Auction Notice. If an objection is timely and properly filed with the Court and served on the Debtor Notice Parties, the Court will hold a hearing to resolve any Bid Protection Objections on a date that is at least five (5) days prior to the scheduled auction. In the event no Bid Protection Objections are timely filed with the Court and received by the Debtor Notice Parties, the Bid Protections shall be deemed approved by the Court, without the need for further Court order.

- *Declaration of Successful Bidder.* Before the conclusion of the auction, the Debtors will determine, in their sole discretion, the highest or otherwise best offer or collection of offers (the "**Successful Bid**").

- *Cancellation of Auction.* A scheduled auction may be adjourned or cancelled as the Debtors deem appropriate. In the event that an auction is cancelled, the Debtors will proceed to file a Transaction Notice (defined below) or a Transaction Motion (defined below), as applicable.

- Tier II Transactions: Less Than $25,000,000.00.

  - *Transaction Notice.* If, with respect to a Tier II Transaction, (i) the Successful Bid or (ii) the consideration to be received by the Debtors pursuant to a private Tier II Transaction, as applicable, is less than $25,000,000.00 (a "**Noticed Transaction**"), the Debtors shall file a notice of such Tier II Transaction (a "**Transaction Notice**") with the Court, in the form attached hereto as **Exhibit B**, and serve the Transaction Notice on the Transaction Notice Parties.

  - *Objection Procedures.* Any objections to a Noticed Transaction must be filed with the Court and served on the Debtor Notice Parties within seven (7) days after service of the Transaction Notice. If an objection is timely and properly filed with the Court and served on the Debtor Notice Parties, (i) the objection will be deemed a request for a hearing

WEIL:\95403322\5\50482.0004

on the Noticed Transaction and objection and will be heard at the next scheduled omnibus hearing in these chapter 11 cases that is at least seven (7) days after service of the objection (provided that the Debtors reserve the right to seek a hearing on the Noticed Transaction and objection prior to such time) and (ii) the Noticed Transaction may not proceed absent (a) withdrawal of the objection or (b) entry of an order by the Court specifically approving the Noticed Transaction.

- o *Event of No Objection.* If no objection is timely and properly filed with the Court and served on the Debtor Notice Parties, such Noticed Transaction will be deemed final and fully authorized by the Court under the terms of the Order approving these Global Sale and Lease Authorization Procedures, and no further notice or Court approval to consummate the Noticed Transaction will be required or necessary.

- **Tier II Transactions:  $25,000,000.00 or Greater**.

  - o *Transaction Motion.* If, with respect to a Tier II Transaction, (i) the Successful Bid or (ii) the consideration to be received by the Debtors pursuant to a private Tier II Transaction, as applicable, is $25,000,000.00 or greater, the Debtors shall file with the Court and serve on (a) the Transaction Notice Parties and (b) all parties who have requested notice under Bankruptcy Rule 2002 (the "**2002 Notice Parties**") a motion (the "**Transaction Motion**") for approval of the Tier II Transaction, which motion will be heard at a hearing to approve the transaction on a date that is at least fourteen (14) days after service of the Transaction Motion. The Transaction Motion shall describe the auction that was held, if applicable, or explain why the Debtors believe an auction is not necessary to maximize the value the Debtors will receive pursuant to the transaction.

  - o *Objection Deadline.* Any objections to a Transaction Motion must be filed with the Court and served on the Debtor Notice Parties within seven (7) days after service of the Transaction Motion.

  - o *Event of No Objection.* If no objections are timely and properly filed with the Court and served on the Debtor Notice Parties, the Debtors shall certify to the Court that there were no timely objections to the Transaction Motion, and request entry of the proposed order attached to the Transaction Motion.

- **Lease Assumption and Assignment Procedures**. The Debtors will comply with the Lease Assumption and Assignment Procedures in connection with any Tier II Transaction where the Debtors propose to assume and assign an executory contract or unexpired lease.

WEIL:\95403322\5\50482.0004

- *Assumption and Assignment Notice.* The Debtors will file a notice (the "**Assumption and Assignment Notice**") to assume and assign an executory contract or unexpired lease in accordance with the Lease Assumption and Assignment Procedures, which Assumption and Assignment Notice shall set forth, among other things, (i) the executory contract or unexpired lease to be assumed and assigned; (ii) the name(s) and address(es) of each counterparty to such executory contract or unexpired lease; (iii) the proposed effective date of the assumption and assignment for such executory contract or unexpired lease, which date shall be the effective date of the Tier II Transaction; (iv) the proposed cure amount, if any; (v) the assignee(s) of such executory contract or unexpired lease; (vi) a certification that each assignee has demonstrated to the Debtors the financial wherewithal and willingness to perform under such executory contract or unexpired lease; and (vii) the deadlines and procedures for filing objections to the Assumption and Assignment Notice (as set forth below).

- *Service of the Assumption and Assignment Notice.* The Debtors will cause the Assumption and Assignment Notice to be served on each non-Debtor counterparty to such executory contract or unexpired lease (collectively, the "**Cure Notice Parties**").

- *Objection Procedures.* Parties objecting to a proposed assumption and assignment, including to the proposed cure amount, will file and serve a written objection so that such objection is filed with the Court and is actually received by the Debtors no later than seven (7) days after the date the Debtors serve the relevant Assumption and Assignment Notice (the "**Assumption and Assignment Objection Deadline**").

- *Event of No Objection.* If an objection is not timely filed and served by the Assumption and Assignment Objection Deadline, then: (i) the Debtors' proposed cure amount will be binding upon each non-Debtor party to such executory contract or unexpired lease for all purposes in the above-captioned chapter 11 cases and will constitute a final determination of the assumption and no additional cure amounts shall be due; (ii) each non-Debtor party to such executory contract or unexpired lease will be deemed to have received adequate assurance of future performance; (iii) the effective date of such assumption and assignment will be the effective date of the Tier II Transaction; and (iv) the Debtors shall submit a proposed order to the Court granting the unopposed requested relief, together with a statement that there were no timely objections to the proposed relief.

- *Unresolved Objections.* If an objection to the assumption and assignment of such executory contract or unexpired lease is timely filed and not withdrawn or resolved, the Debtors will try to negotiate a consensual resolution with each non-Debtor party to such executory

WEIL:\95403322\5\50482.0004

contract or unexpired lease. If the Debtors and each non-Debtor party to such executory contract or unexpired lease are unable to consensually resolve all objections within three days after Assumption and Assignment Objection Deadline, (i) the Debtors will file a notice for a hearing for the Court to consider the objection(s) at the next available omnibus hearing or such other date as the Debtors may request or (ii) such objection will be heard at the hearing on the Tier II Transaction, if applicable. If such objection is overruled or withdrawn, such executory contract or unexpired lease shall be assumed with the effective date of such assumption and assignment to be the effective date of the Tier II Transaction.

o *Payment of Cure Amount.* All undisputed cure amounts will be paid at the closing of the relevant Tier II Transaction. Any disputed cure amount must be paid by the earlier of (i) when the Debtors and the non-Debtor counterparty can agree to a cure amount or (ii) within five days after the date of the entry of an order by the Court determining an amount.

## The Global Sale and Lease Rationalization Procedures Are in the Best Interests of the Debtors' Estates and Should be Approved

### A. The Global Sale and Lease Rationalization Procedures Are an Exercise of the Debtors' Sound Business Judgment

16. The Court may grant the relief requested herein pursuant to sections 105 and 363 of the Bankruptcy Code. Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

17. To obtain Court approval to sell or otherwise dispose of Tier II Stores under section 363(b) of the Bankruptcy Code, the Debtors need only articulate a business justification, other than appeasement of major creditors, for the proposed action. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.* (*In re Johns-Manville*

12

*Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.") (citation omitted). When a valid business justification exists, the law vests the debtor's decision to use, less or lease property out of the ordinary course of business with a strong presumption "'that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1990) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Accordingly, parties challenging a debtor's decision must make a showing of "bad faith, self-interest or gross negligence." *Integrated Res.*, 147 B.R. at 656 (citations omitted).

18.     Implementing the Global Sale and Lease Rationalization Procedures for the disposition of the Tier II is a sound exercise of the Debtors' business judgment. These procedures are designed to give the Debtors the flexibility needed to monetize the Tier II Stores expediently and efficiently, and in a manner that maximizes value for the benefit of all stakeholders. In light of the anticipated volume of transactions the Debtors hope to consummate as part of the Tier II Sale Process, the Global Sale and Lease Rationalization Procedures are necessary to avoid the excessive delay and costs to the estates and burden on the Court that would otherwise be incurred if the Debtors were required to seek Court approval for each Tier II Transaction on a one-off basis. The relief requested is also consistent with the Amended Guidelines for the Conduct of Asset Sales, adopted by General Order M-383, dated November 18, 2009 (Bernstein, C.J) at n.3, which provide, in relevant part, "[w]hen multiple asset sales

over time are expected, a debtor should consider seeking Court approval of global bidding procedures to avoid the need to obtain Court approval of procedures for each such sale."

**B.    The Global Sale and Lease Rationalization Procedures**
**Satisfy the Notice and Hearing Requirements under Section 363(b)(1)**

19.    The notice and hearing requirements contained in section 353(b)(1) are satisfied if appropriate notice and an opportunity for a hearing are given in light of the particular circumstances of the proposed sale.  *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances").  Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty one (21) days' notice of proposed sales of property outside the ordinary course of business be provided by mail "to the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code, unless a debtor shows "cause."  Moreover, courts are authorized to limit notice of assets sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice.  *See* Bankruptcy Rule 2002(i).

20.    The Debtors submit that sufficient cause exists to implement the modified noticed provisions proposed herein because these modified notice procedures will improve the efficiency of the Tier II Sale Process and maximize the value of the Tier II Stores to the Debtors' estates.  This Motion puts all parties in interest on notice that any of the Tier II Stores may be sold pursuant to the Global Sale and Lease Rationalization Procedures.  Further, the Transaction Notice Parties will receive notice of and a reasonable opportunity to object to all Tier II Transactions.  In addition, as explained below, parties will have an opportunity to object and be heard with respect to any proposed Bid Protections offered to a Stalking Horse in connection

with an auction. These notice provisions are reasonable and appropriate, particularly in light of the circumstances of these cases. Accordingly, the Debtors respectfully submit that cause has been shown to shorten the notice period set forth in Rule 2002 for any Tier II Transaction entered into pursuant to the Global Sale and Lease Rationalization Procedures.

       **C.**      **The Global Sale and Lease Rationalization**
                    **Procedures Satisfy the Requirements of Section 363(f)**
                    <u>**and Allow the Debtors to Sell Property Free and Clear**</u>

       21.      Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the price at which the property is to be sold exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See Citicorp Homeowners Servs. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (finding that court may approve sale "free and clear" provided at least one of the subsections above is met); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) (interpreting section 363(f)(5) to mean "a payment constituting less than full payment of the underlying debt"); *see also Cheslock Bakker & Assocs., Inc. v. Kremer (In re Downtown Athletic Club)*, No. M-47 (JSM), 2000 WL 744126, at *3 (Bankr. S.D.N.Y. June 9, 2000) (holding free and clear sale under the debtor's plan of reorganization was binding on the debtor's creditors who received notice of the confirmation hearings).

       22.      Assets encumbered by interests held by other parties will only be sold or otherwise disposed of pursuant to the Global Sale and Lease Rationalization Procedures if such interests are capable of monetary satisfaction or the holders of such interests consent to the proposed transactions. Accordingly, the requirements of section 363(f) of the Bankruptcy Code

are satisfied for any proposed Tier II Transaction free and clear of liens, claims or encumbrances. Moreover, the Debtors propose that any such interests attach to the proceeds of such Tier II Transactions.

### D.    Authority to Designate a Stalking Horse is Warranted

23.    In the event the Debtors determine to conduct an auction in connection with a Tier II Transaction, the Global Sale and Lease Rationalization Procedures give the Debtors the authority to, in their discretion, designate a stalking horse bidder and offer Bid Protections (up to 3% of the cash portion of the stalking horse's bid).  The use of a stalking horse in a public auction process for sales pursuant to section 363 of the Bankruptcy Code has become a customary practice in chapter 11 cases.  A stalking horse bid is, in many circumstances, the best way to maximize value in an auction process because it locks in a purchase price "floor" before exposing an asset to auction.  As a result, stalking horse bidders virtually always require breakup fees or other forms of bid protection as an inducement for holding their purchase offer open while it is exposed to overbids in an auction process.  Thus, the use of bidding protections, including breakup fees, has become an established practice in chapter 11 cases.  The Debtors believe that the ability to select a stalking horse and offer Bid Protections, when appropriate, will be essential to maximizing the value of certain of the Tier II Stores for the benefit of the Debtors' estates and creditors.

24.    As set forth in the Global Sale and Lease Authorization Procedures, in the event the Debtors determine to designate a Stalking Horse, the Debtors will include in the Auction Notice the material terms of the Debtors' agreement with the Stalking Horse, including the terms and conditions of any Bid Protections, and parties will have an opportunity to object. The Court will hold a hearing at least five days before the scheduled auction, if necessary; if no objections are received, the Stalking Horse and Bid Protections will be deemed approved by the

16

Court, without the need for further Court order. The Stalking Horse provisions of the Global Sale and Lease Authorization Procedures appropriately provide the Debtors access to an essential value-maximization tool, within a construct that provides for Court oversight in the event of a dispute. In addition, the proposed Breakup Fee is well within the range of such fees approved by this and other courts, including in the Debtors' prior chapter 11 cases. *See In re The Great Atlantic & Pacific Tea Co., Inc.*, Case No. 10-24549 (RDD) (May 2, 2011) (authorizing breakup fee of up to 2.5% of cash portion of purchase price); *see also In re Hostess Brands, Inc.*, No. 12-22052 (RDD) (Bankr. S.D.N.Y. January 28, 2013) (approving breakup fee of 3% of the purchase price); *In re HMX Acquisition Corp.*, No. 12-14300 (ALG) (Bankr. S.D.N.Y. Nov. 29, 2012) (approving breakup fee of approximately 3.0% of the purchase price); *In re Bos. Generating, LLC*, No. 10-14419 (SCC) (Bankr. S.D.N.Y. Oct. 12, 2010) (approving a breakup fee of approximately 2.7% of the purchase price); *In re Cabrini Med. Ctr.*, No. 09-14398 (AJG) (Bankr. S.D.N.Y. Dec. 30, 2009) (approving 3.75% break-up fee); *In re Fortunoff Fine Jewelry & Silverware, LLC*, No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008) (approving breakup fee of 2.8% of the purchase price); *In re Bally Total Fitness of Greater N.Y., Inc.*, No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 21, 2007) (approving breakup fee of 4.3% of the purchase price).

     **E.**     **The Lease Assumption and Assignment
Procedures Are In the Best Interests of the Estates**

     25.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an executory contract or unexpired lease of a debtor, providing, in relevant part, that:

     (b)(1) If there has been a default in an executory contract or
unexpired lease of the debtor, the [debtor] may not assume such

contract or lease unless, at the time of assumption of such contract or lease, the [debtor]—

(A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . ;

(B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

26. Similar to a debtor's proposed use, sale or lease of property outside of the ordinary course of business, courts apply the business judgment standard in determining whether the assumption or rejection of an executory contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code should be approved. *See, e.g., Group of Inst. Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) (noting "the question whether . . . [and on what terms a lease] should be assumed is one of business judgment"); *In re Ionosphere Clubs, Inc.* ("the business judgment rule is the standard to be applied under either scenario" of seeking to assume a prepetition contract or unexpired lease or sell assets other than in the ordinary course of business). Generally, courts will approve a proposed assumption or rejection under the business judgment standard if it would be beneficial the estate. *See e.g. Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1099 (2d Cir. 1993) (holding that "the process of deciding a motion to assume is one of the bankruptcy court placing itself in the position of the trustee or debtor-in-possession and determining whether assuming the contract would be a good business decision or a bad one"); *Nat'l Sugar Ref. Co. v. Stroehmann Bros. Co.* (*In re Nat'l Sugar Ref. Co.*), 26 B.R. 765, 767 (Bankr. S.D.N.Y. 1983) (holding that "if a contract is profitable to a debtor, its assumption

should be authorized").  Under the "business judgment" standard, the debtor's decision to assume or reject an executory contract or unexpired lease "should not be interfered with, absent a showing of bad faith or abuse of business discretion."  *See In re Chipwich, Inc.*, 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985).

27.     Here, the marketing process to be conducted by the Debtors and Hilco will ensure that the Debtors receive the highest consideration possible in exchange for each unexpired lease or executory contract assumed and assignment pursuant to a Tier II Transaction.  Pursuant to the Lease Assumption and Assignment Procedures, the Assumption and Assignment Notice that the Debtors will send to counterparties will list the amounts necessary to cure any defaults pursuant to section 365(b)(1)(A) of the Bankruptcy Code and the counterparties will have opportunity to dispute the proposed cure amount.  The Debtors will also evaluate each assignee of an unexpired lease or executory contract to determine if such assignee has adequate financial capacity to perform its obligations under the lease pursuant to section 365(b)(1)(C) of the Bankruptcy Code and shall include a representation there is sufficient adequate assurance of future performance of each unexpired lease or executory contract on the Assumption and Assignment Notice.  The Debtors therefore believe that they will meet the requirements for assumption and assignment of any unexpired leases or executory contracts in connection with a Tier II Transaction through compliance with the Lease Assumption and Assignment Procedures.

**F.     The Lease Assumption and Assignment Procedures Comply
        with the Procedural Requirements of Bankruptcy Rule 6006**

28.     As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014." FED. R. BANKR. P. 6006(a).  Bankruptcy Rule 9014 provides that:  "In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and

opportunity for hearing shall be afforded the party against whom relief is sought."  FED. R. BANKR. P. 9014(a).  The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.  *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").  The Lease Assumption and Assignment Procedures provide notice to lease and contract counterparties and an opportunity to be heard at a hearing, and thus satisfy the requirement of Bankruptcy Rules 6006(a) and 9014.

29.    Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to assume and assign multiple executory contracts and unexpired leases in one motion, subject to Bankruptcy Rule 6006(f).  *See* FED. R. BANKR. P. 6006(e).  Bankruptcy Rule 6006(f) sets forth six requirements that motions to assume or reject multiple executory contracts and unexpired leases must satisfy.  These requirements are procedural in nature.  A motion to assume or reject multiple executory contracts and unexpired leases that are not between the same parties shall:

(a)    state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

(b)    list parties alphabetically and identify the corresponding contract or lease;

(c)    specify the terms, including the curing of defaults, for each requested assumption or assignment;

(d)    specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(e)    be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

(f)    be limited to no more than 100 executory contracts or unexpired leases.

FED. R. BANKR. P. 6006(f).

WEIL:\95403322\5\50482.0004

30. The Lease Assumption and Assignment Procedures satisfy Bankruptcy Rule 6006(f). The clear purpose of Bankruptcy Rule 6006(f) is to protect the due process rights of counterparties to the Debtors' unexpired leases and executory contracts. Counterparties must be able to locate their leases and readily determine whether their leases are being assumed or rejected. The Debtors will comply with all applicable procedural requirements of Bankruptcy Rule 6006(f) when serving the Assumption and Assignment Notices.

31. Under the circumstances, given the number of unexpired leases and executory contracts the Debtors may be seeking to assume and assign in connection with Tier II Transactions, obtaining Court approval of each assumption and assignment would impose unnecessary administrative burdens on the Debtors and the Court, and result in costs to the Debtors' estates that may decrease the economic benefits of otherwise accretive transactions. Therefore, the Debtors request approval of the Lease Assumption and Assignment Procedures as the most efficient and economical way for the Debtors to address their unexpired leases and maximize the value such leases can bring to the estates.

### Waiver of Rule 6004 Stay

32. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) (to the extent such requirements are inconsistent with the notice requirements set forth in the Global Sale and Lease Authorization Procedures) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

33. Nothing contained herein is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any

WEIL:\95403322\5\50482.0004

agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Notice**

34.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014; (v) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014; (vi) U.S. Bank National Association, as trustee under that certain Indenture for the Prepetition PIK Notes; (vii) U.S. Bank National Association, as trustee under that certain Indenture for the Prepetition Convertible Notes; (viii) the attorneys for the holders of a majority of the Prepetition PIK Notes; (ix) the attorneys for the holders of a majority of the Prepetition Convertible Notes; (x) the attorneys for the DIP Agent; (xi) the attorneys for The Yucaipa Companies, LLC and their affiliated funds; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office for the Southern District of New York. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

WEIL:\95403322\5\50482.0004

## No Prior Request

35.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other or further relief as is just.

Dated: July 19, 2015
      New York, New York

<div style="margin-left:40%">

/s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

</div>

**<u>Exhibit A</u>**

**Tier II Stores**

# Tier II Stores

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 1 | 19243 | Liquor | New Canaan | 282 Elm Street | CT |
| 2 | 19254 | Liquor | Ridgefield | 46B Danbury Rd. | CT |
| 3 | 70074 | A&P | Danbury | 1 Padanaram Rd | CT |
| 4 | 19129 | Liquor | Old Lyme | 28A Halls Rd (P.O. Box 491) | CT |
| 5 | 70951 | A&P | Mt Olive | 7 Naughright Rd | NJ |
| 6 | 70806 | A&P | Califon | 431 County Road 513 | NJ |
| 7 | 72280 | Pathmark | Montclair | 35 Lackawanna Plaza | NJ |
| 8 | 72198 | Pathmark | Fairlawn | 22-00 Maple Avenue | NJ |
| 9 | 59036 | Food Basics | East Paterson | 498 East 30th St | NJ |
| 10 | 72578 | Pathmark | Brick Twp. | 1930 Route 88 | NJ |
| 11 | 72223 | Pathmark | Newark | 167 Bergen Street | NJ |
| 12 | 72609 | Pathmark | New York | 160 East 125th Street | NY |
| 13 | 70611 | Waldbaums | Rocky Point | 245 Route 25A | NY |
| 14 | 72624 | Pathmark | Brooklyn | 1245 61St Street | NY |
| 15 | 72603 | Pathmark | New York | 300 West 145th Street | NY |
| 16 | 72679 | Pathmark | Staten Island | 100 Greaves Lane | NY |
| 17 | 72653 | Pathmark | Bethpage | 3901 Hempstead Turnpike | NY |
| 18 | 72649 | Pathmark | New Hyde Park | 2335 New Hyde Park Road | NY |
| 19 | 72646 | Pathmark | Shirley | 800 Montauk Highway | NY |
| 20 | 72652 | Pathmark | Massapequa | 941 Carmans Road | NY |
| 21 | 70298 | Waldbaums | Melville | 890 Walt Whitman Road | NY |
| 22 | 72614 | Pathmark | Patchogue | 399 Route 112 | NY |
| 23 | 70232 | Waldbaums | West Hampton | 70 Sunset Ave | NY |
| 24 | 70279 | Waldbaums | Merrick | 1686 Merrick Rd. | NY |
| 25 | 70241 | Waldbaums | N. Patchoque | 440 W. Sunrise Highway | NY |
| 26 | 72642 | Pathmark | Brooklyn | 1-37 12th Street | NY |
| 27 | 72634 | Pathmark | Brooklyn | 111-10 Flatlands Avenue | NY |
| 28 | 70263 | Waldbaums | Mattituck | Rt.25 And Factory Ave. | NY |
| 29 | 72600 | Pathmark | Brentwood | 101 Wicks Road | NY |
| 30 | 70240 | Waldbaums | Brooklyn | 2149 Ralph Ave | NY |
| 31 | 70235 | Waldbaums | Brooklyn | 3100 Ocean Ave | NY |
| 32 | 70275 | Waldbaums | College Point | 133-11 20th Avenue | NY |
| 33 | 70229 | Waldbaums | Ctr Moriches | 812 Montauk Hwy. | NY |
| 34 | 70699 | Waldbaums | Deer Park | 1960 Deer Park Ave. | NY |
| 35 | 72611 | Pathmark | East Rockaway | 492 East Atlantic Avenue | NY |
| 36 | 70617 | Waldbaums | Great Neck | 40 Great Neck Road | NY |
| 37 | 36703 | Food Emporium | New York | 1175 3rd Avenue | NY |
| 38 | 36711 | Food Emporium | New York | 1331 1st Avenue | NY |
| 39 | 36727 | Food Emporium | New York | 452 West 43 St. | NY |
| 40 | 36732 | Food Emporium | New York | 810 8th Ave | NY |
| 41 | 36707 | Food Emporium | New York | 969 Second Ave | NY |
| 42 | 36777 | Food Emporium | New York | 316 Greenwich St | NY |
| 43 | 36742 | Food Emporium | New York | 1066 3rd Avenue | NY |
| 44 | 36706 | Food Emporium | New York | 1450 3rd Avenue | NY |

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 45 | 36783 | Food Emporium | New York | 405 East 59th St. | NY |
| 46 | 36708 | Food Emporium | New York | 2415 Broadway | NY |
| 47 | 70662 | Waldbaums | Selden | 211 Middle Country Road | NY |
| 48 | 72678 | Pathmark | Staten Island | 2730 Arthur Kill Road | NY |
| 49 | 72682 | Pathmark | Staten Island | 2875 Richmond Avenue | NY |
| 50 | 70813 | Waldbaums | Tottenville | 6400 Amboy Road | NY |
| 51 | 70270 | Waldbaums | Whitestone | 153-01 10th Ave | NY |
| 52 | 72558 | Pathmark | Brookhaven | 5005 Edgemont Avenue | PA |
| 53 | 72569 | Pathmark | Glenolden | 140 North Mcdade Boulevard | PA |
| 54 | 72552 | Pathmark | Philadelphia | 330 Oregon Avenue | PA |
| 55 | 72550 | Pathmark | Philadelphia | 176-82 West Chelten Avenue | PA |
| 56 | 72522 | Pathmark | Philadelphia | 3399 Aramingo Avenue | PA |
| 57 | 19104 | Liquor | Bristol | 767 Pine Street | CT |
| 58 | 19110 | Liquor | Mystic | 25 Broadway Ave. | CT |
| 59 | 19119 | Liquor | Newington | 2400 Berlin Tpk. | CT |
| 60 | 19106 | Liquor | Newington | 40 Fenn Road | CT |
| 61 | 19246 | Liquor | Riverside | 1237 East Putnam Ave. | CT |
| 62 | 19121 | Liquor | Waterford | 117 Boston Post Rd | CT |
| 63 | 72593 | Pathmark | New Castle | 148 Sunset Boulevard | DE |
| 64 | 70586 | Superfresh | New Castle | 2044 New Castle Avenue | DE |
| 65 | 70888 | Superfresh | Ocean City | 12741 Ocean Gateway | MD |
| 66 | 70417 | A&P | Basking Ridge | 407 King George Road | NJ |
| 67 | 59506 | Food Basics | Belleville | 414 Main St. | NJ |
| 68 | 70936 | A&P | Belvidere | 525 East Route 46 | NJ |
| 69 | 70752 | A&P | Bloomfield | 19 Bellville Ave. | NJ |
| 70 | 70610 | A&P | Boonton | 550 Myrtle Ave | NJ |
| 71 | 70802 | A&P | Bricktown | 64 Brick Plaza | NJ |
| 72 | 70949 | A&P | Clinton | 49 Old Route 22 | NJ |
| 73 | 70515 | A&P | Edison | 1185 Amboy Ave | NJ |
| 74 | 72288 | Pathmark | Elizabeth | 211 Elmora Avenue | NJ |
| 75 | 70618 | A&P | Fairview | 425 Anderson Avenue | NJ |
| 76 | 70895 | A&P | Fanwood | 105 South Ave | NJ |
| 77 | 72450 | Pathmark | Garwood | 10 South Avenue | NJ |
| 78 | 72153 | Pathmark | Hackensack | 405 State Route 17 South | NJ |
| 79 | 37602 | Liquor | Hackettstown | 57 Route 46 | NJ |
| 80 | 37905 | Liquor | Haskell | 1069 Ringwood Ave | NJ |
| 81 | 72573 | Pathmark | Hazlet | 3020 Route 35 & Bethany Road | NJ |
| 82 | 72527 | Pathmark | Hopelawn | 95-101 New Brunswick Ave | NJ |
| 83 | 72224 | Pathmark | Irvington | 474-79 Lyons Avenue | NJ |
| 84 | 72114 | Pathmark | Jersey City | 420 Grand Street | NJ |
| 85 | 72261 | Pathmark | Landing | 175 Lakeside Boulevard & Center | NJ |
| 86 | 37993 | Liquor | Ledgewood | 1103 Howard Blvd | NJ |

WEIL:\95403322\5\50482.0004

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 87 | 70956 | A&P | Marlboro | 460 County Line Road Route 520 | NJ |
| 88 | 37872 | Liquor | Metuchen | 45 Pearl Street | NJ |
| 89 | 72436 | Pathmark | Middlesex | 242 Lincoln Boulevard | NJ |
| 90 | 70924 | A&P | Navesink | 1002 Rte 36 | NJ |
| 91 | 59512 | Food Basics | North Bergen | 1425 Kennedy Blvd. | NJ |
| 92 | 70887 | A&P | North Brunswick | 510 Milltown Road | NJ |
| 93 | 70441 | A&P | Old Tappan | 216 Old Tappan Rd | NJ |
| 94 | 37995 | Liquor | Palisade Park | 534 Bergen Blvd. | NJ |
| 95 | 72282 | Pathmark | Parsippany | 1157 Route 46 East | NJ |
| 96 | 59501 | Food Basics | Passaic | 514 Van Houten Ave. | NJ |
| 97 | 70638 | A&P | Pompton Lakes | 47 Wanaque Avenue | NJ |
| 98 | 37866 | Liquor | Pt Pleasant | 1205 Richmond Ave | NJ |
| 99 | 72299 | Pathmark | Ramsey | 10 Triangle Plaza - Lake Road Ext. | NJ |
| 100 | 70688 | A&P | Randolph | 148 Center Grove Road | NJ |
| 101 | 37814 | Liquor | Summit | 23 Summit Ave | NJ |
| 102 | 70807 | A&P | Washington | 459 Route 31 South | NJ |
| 103 | 70439 | A&P | Washington Township | 315 Pascack Rd | NJ |
| 104 | 70668 | A&P | Wayne | 560 Valley Road | NJ |
| 105 | 70685 | A&P | West Milford | 1938 Union Valley Road | NJ |
| 106 | 37661 | Liquor | Westwood | 30 Irvington Ave | NJ |
| 107 | 72580 | Pathmark | Woodbridge | 1600 St Georges Avenue | NJ |
| 108 | 70701 | A&P | Woodland Park | 1730 Route 46 West | NJ |
| 109 | 72286 | Pathmark | Woodport | 757 Rt. 15 | NJ |
| 110 | 72602 | Pathmark | Bayshore | 2060 Sunrise Highway | NY |
| 111 | 70203 | Waldbaums | Commack | 84 Jericho Tpke | NY |
| 112 | 72664 | Pathmark | Dix Hills | 683 Old Country Road | NY |
| 113 | 70434 | Waldbaums | East Meadow | 1530 Front Street | NY |
| 114 | 70277 | Waldbaums | East Setauket | 4054 Nesconset Highway | NY |
| 115 | 70223 | Waldbaums | Garden City | 2475 Jericho Turnpike | NY |
| 116 | 70217 | Waldbaums | Greenlawn | 777 Pulaski Road | NY |
| 117 | 70769 | A&P | Hastings | 87 Main Street | NY |
| 118 | 70214 | Waldbaums | Hauppauge | 1236 Veterans Highway | NY |
| 119 | 72641 | Pathmark | Holbrook | 5801 Sunrise Highway | NY |
| 120 | 72639 | Pathmark | Islip | 155 Islip Avenue | NY |
| 121 | 70289 | Waldbaums | Jericho | 336 North Broadway | NY |
| 122 | 70003 | A&P | Lagrange | 1642 Route 82 | NY |
| 123 | 70251 | Waldbaums | Lindenhurst | 50 E. Hoffman | NY |
| 124 | 70151 | A&P | Mamaroneck | 805 Mamaroneck Ave | NY |
| 125 | 70256 | Waldbaums | Massapequa | 5508 Sunrise Hwy | NY |
| 126 | 72292 | Pathmark | Nanuet | 195 Rockland Center East Rt 59 | NY |
| 127 | 72615 | Pathmark | North Babylon | 1251 Deer Park Avenue | NY |
| 128 | 70288 | Waldbaums | Oakdale | 4560 Sunrise Hwy | NY |
| 129 | 70126 | A&P | Patterson | 3101 Route 22 | NY |
| 130 | 70194 | A&P | Peekskill | 20 Welcher Ave | NY |

WEIL:\95403322\5\50482.0004

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 131 | 72297 | Pathmark | Port Chester | 130 Midland Avenue | NY |
| 132 | 72604 | Pathmark | Port Jeff.Sta. | 5145 Nesconset Highway | NY |
| 133 | 70192 | A&P | Scarsdale | 668 Central Park Avenue | NY |
| 134 | 72298 | Pathmark | Scarsdale | 2540 Central Park Avenue | NY |
| 135 | 72171 | Pathmark | Staten Island | 2660 Hylan Avenue | NY |
| 136 | 70601 | Waldbaums | Stony Brook | 2162 Nesconset Highway | NY |
| 137 | 19918 | Liquor | Unclassified | 1175 Third Ave Suite A | NY |
| 138 | 70794 | A&P | Valley Cottage | 14 Lake Ridge Plaza | NY |
| 139 | 72644 | Pathmark | West Babylon | 531 Montauk Highway | NY |
| 140 | 72293 | Pathmark | Yonkers | 1757 Central Park Avenue | NY |
| 141 | 72528 | Pathmark | Cheltenham | 1000 Easton Road | PA |
| 142 | 72529 | Pathmark | Fairless Hills | 500 Lincoln Highway | PA |
| 143 | 70718 | Superfresh | New Hope | 323 West Bridge Street | PA |
| 144 | 59530 | Food Basics | Philadelphia | 15501 Bustleton Ave. | PA |
| 145 | 70982 | Superfresh | Philadelphia | #N/A | PA |
| 146 | 59510 | Food Basics | Philadelphia | 8920 Frankford Avenue | PA |
| 147 | 72556 | Pathmark | Philadelphia | 4160 Monument Road | PA |
| 148 | 72553 | Pathmark | Philadelphia | 8700 Frankford Avenue | PA |
| 149 | 72532 | Pathmark | Philadelphia | 3021 Grays Ferry Avenue | PA |
| 150 | 72557 | Pathmark | Philadelphia | 2900 N. Broad St. & Glenwood Ave. | PA |
| 151 | 72568 | Pathmark | Upper Darby | 421 S. 69Th Street | PA |

WEIL:\95403322\5\50482.0004

**Exhibit B**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re                                      :

                                        :        **Chapter 11**

**THE GREAT ATLANTIC & PACIFIC TEA**   :

**COMPANY, INC.,** *et al.*,             :        **Case No. 15-23007 (\_\_\_)**

                                          :

                **Debtors.**[1]         :        **(Jointly Administered)**

                                          :

-----------------------------------------------------------------x

## ORDER APPROVING GLOBAL SALE AND
## LEASE RATIONALIZATION PROCEDURES

Upon the motion (the "**Motion**")[2] of The Great Atlantic & Pacific Tea Company,

Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 363 and 365 of title 11

of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004 and 6006 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order approving the

Global Sale and Lease Rationalization Procedures attached hereto as **<u>Exhibit 1</u>**, all as more fully

set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing

Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given to the Notice Parties as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted to the extent set forth herein; and it is further

ORDERED that the Global Sale and Lease Rationalization Procedures attached hereto as **Exhibit 1** are hereby approved; and it is further

ORDERED that the Transaction Notice, in substantially the form attached to the Motion as Exhibit B is hereby approved; and it is further

ORDERED that all buyers shall take assets sold or otherwise disposed of by the Debtors pursuant to the Global Sale and Lease Rationalization Procedures approved by this Order "as is" and "where is," without any representations or warranties from the Debtors as to quality or fitness of such assets for either their intended or any particular purpose; and it is further

ORDERED that all buyers shall take assets sold or otherwise disposed of by the Debtors pursuant to the Global Sale and Lease Rationalization Procedures approved by this Order free and clear of liens, claims and encumbrances, pursuant to section 363(f) of the

2

Bankruptcy Code, and that all such liens, claims and encumbrances shall attach to the proceeds of the sale or disposition; and it is further

ORDERED that the ten-day stay of Bankruptcy Rule 6004(h) is hereby waived, and, notwithstanding Bankruptcy Rule 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that all Noticed Transactions shall be deemed authorized pursuant to the terms of this Order and no further or additional waivers of the ten-day stay of Bankruptcy Rule 6004(h) shall be required for the Debtors to consummate a Noticed Transaction, subject to compliance with the notice and other procedures set forth in the Global Sale and Lease Rationalization Procedures; and it is further

ORDERED that, with respect to all Noticed Transactions consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and a Noticed Transaction consummated pursuant to the Global Sale and Lease Rationalization Procedures approved by this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold or otherwise disposed of pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby; and it is further

WEIL:\95400917\8\50482.0004

ORDERED that nothing in this Order shall be construed to prevent the Debtors, in their sole discretion, from seeking this Court's approval at any time of any proposed sale or disposition of any of the Tier II Stores after notice and an opportunity for a hearing; and it is further

ORDERED that nothing in the Global Sale and Lease Rationalization Procedures shall relieve the Debtors of their obligations under any applicable law; and it is further

ORDERED that the time periods required by the Bankruptcy Rules and the Local Rules for notice of any sale or auction of any of the Tier II Stores, or any procedures in connection therewith, are hereby shortened as set forth in the Global Sale and Lease Rationalization Procedures; and it is further

ORDERED that the Debtors are authorized to take all action necessary to carry out this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2015
       White Plains, New York

_____
UNITED STATES BANKRUPTCY JUDGE

WEIL:\95400917\8\50482.0004

**Exhibit 1**

**Global Sale and Lease Rationalization Procedures**

# Global Sale and Lease Rationalization Procedures

The Global Sale and Lease Rationalization Procedures set forth herein govern the sale or disposition of the stores listed on **Schedule 1** hereto (including certain leases and related assets, the "**Tier II Stores**"), which stores are owned and operated by The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"). Parties may offer to purchase some or all of the Tier II Stores, including any of the Tier II Stores on a going-concern basis. On [_____], 2015, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order approving these procedures (the "**Order**").

## I. *Marketing Process and Due Diligence*

Any parties interested in purchasing any of the Tier II Stores should express their interest to the Debtors' real estate consultant and advisor, Hilco Real Estate, LLC ("**Hilco**"), by contacting Gregory S. Apter (gapter@hilcoglobal.com). The Debtors request that all parties interested in entering into a transaction with respect to any of the Tier II Stores express such interest by August 24, 2015.

The Debtors may provide confidential information regarding the Tier II Stores (the "**Confidential Information**") to interested parties who execute a confidentiality agreement in form and substance satisfactory to the Debtors.

The Debtors may also require that interested parties submit:

A.      a statement identifying the Tier II Stores sought to be acquired and the purchase price to be paid;

B.      a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a *bona fide* interest in consummating a transaction with respect to the identified Tier II Stores; and

C.      sufficient information, as defined by the Debtors, to allow the Debtors to determine that the interested party has the financial wherewithal and any required internal corporate, legal or other authorizations to close a transaction with respect to the identified Tier II Stores, including but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their sole discretion).

Each interested party shall comply with all reasonable requests for information and due diligence access by the Debtors or Hilco regarding the ability of such interested party, as applicable, to consummate its contemplated transaction

The Debtors or Hilco may, but are not obligated to, furnish any due diligence information regarding the Tier II Stores to any interested party.

II.    *__Notice Parties__*

For purposes of these Global Sale and Lease Rationalization Procedures, the "**Debtor Notice Parties**" are: (i) The Great Atlantic and Pacific Tea Company, Inc., 2 Paragon Drive, Montvale, New Jersey 07645 (Attn: Christopher W. McGarry and Matthew Bennett); (ii) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Garrett A. Fail, Esq.); and (iii) Hilco, 5 Revere Dr. Suite 320, Northbrook, IL 60062 (Attn: Gregory S. Apter).

For purposes of these Global Sale and Lease Rationalization Procedures, the "**Transaction Notice Parties**" are: (i) the attorneys for the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Creditors' Committee**"); (ii) the attorneys for Fortress Investment Corp., as the Debtors' proposed post-petition secured lender, (iii) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014; (iv) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured PIK Toggle Notes due 2017, dated as of March 13, 2012 (the "**Prepetition PIK Notes**"); (vi) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured Convertible Notes due 2018, dated as of March 13, 2012 (the "**Prepetition Convertible Notes**"); (vii) the attorneys for the holders of a majority of the Prepetition PIK Notes; (viii) the attorneys for the holders of a majority of the Prepetition Convertible Notes; (x) the U.S. Trustee; (xi) all parties who have requested notice under Bankruptcy Rule 2002; (xii) all entities known or reasonably believed by the Debtors to have asserted a lien, encumbrance, claim or other interest in any of the Tier II Stores that are the subject of the proposed transaction (for whom identifying information and addresses are available to the Debtors); (xiii) all entities known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to any of the assets offered for sale during the past twelve (12) months; and (xiv) all of the labor unions that represent employees of any Tier II Stores that is the subject of the proposed transaction.

III.    *__Auction Procedures__*

A.    If the Debtors determine, in their sole discretion, to hold an auction in connection with a one or more sale or disposition transactions in connection with one or more of the Tier II Stores with the same party or related parties (a "**Tier II Transaction**"), the Debtors shall file and serve on the Transaction Notice Parties an Auction Notice and shall schedule an auction on a date that is at least fourteen (14) days after service of the Auction Notice.

1.    If the Debtors propose to assume and assign any executory contract or unexpired lease in connection with such Tier II Transaction, the Debtors shall also comply with the Lease Assumption and Assignment Procedures set forth in Section VI below.

B.    The Auction Notice shall set forth (i) the date, time and location of the auction and (ii) any rules for the auction that the Debtors determine, in their reasonable business judgment, are appropriate to promote the goal of the auction (*i.e.* to maximize the consideration to be received by the Debtors), including without limitation, a deadline for submitting bids, criteria bidders must meet in order to participate in the auction (including a requirement to make a good faith deposit of 10% of the proposed purchase price or such other amount as the Debtors may determine in their sole discretion), the purchase price and terms on which the bidding at the auction will start and the criteria for minimum overbids.

C.    In connection with any auction, subject to section C(1)-C(3) below, the Debtors may, but are not obligated to, designate a stalking horse (the "**Stalking Horse**") and offer a breakup fee and/or expense reimbursement to the stalking horse (the "**Bid Protections**"); provided that the Bid Protections shall not exceed 3% of the cash portion of the Stalking Horse's bid.  In the event the Debtors determine to designate a Stalking Horse, the Auction Notice shall identify the material terms of the Debtors' agreement with the Stalking Horse, including the terms and conditions of any Bid Protections.

1.    Any objections to the Bid Protections (the "**Bid Protection Objections**") must be filed with the Court and served on the Debtor Notice Parties within five (5) days after service of the Auction Notice.

2.    If an objection is timely and properly filed with the Court and served on the Debtor Notice Parties, the Court will hold a hearing to resolve any Bid Protection Objections on a date that is at least five (5) days prior to the scheduled auction.

3.    In the event no Bid Protection Objections are timely and properly filed with the Court and served on the Debtor Notice Parties, the Bid Protections shall be deemed approved by the Court, without the need for further Court order.

D.    Before the conclusion of the auction, the Debtors shall determine, in their sole discretion, the highest or otherwise best offer or collection of offers (the "**Successful Bid**").

E.    A scheduled auction may be adjourned or cancelled as the Debtors deem appropriate.  In the event that an auction is cancelled, the Debtors will proceed to file a Transaction Notice (defined below) or Transaction Motion (defined below), as applicable.

8

IV.     *Tier II Transactions – Less Than $25,000,000.00.*

A.      If, with respect to a Tier II Transaction, (i) the Successful Bid or (ii) the consideration to be received by the Debtors pursuant to a private Tier II Transaction, as applicable, is less than $25,000,000.00 (a "**Noticed Transaction**"), the Debtors shall file a notice of such Tier II Transaction (a "**Transaction Notice**") with the Court, in the form attached to the Motion as Exhibit B, and serve the Transaction Notice on the Transaction Notice Parties.

1.      If the Debtors propose to assume and assign any executory contract or unexpired lease in connection with such Noticed Transaction, the Debtors shall also comply with the Lease Assumption and Assignment Procedures set forth in Section VI below.

B.      Any objections to a Noticed Transaction must be filed with the Court and served on the Debtor Notice Parties within seven (7) days after service of the Transaction Notice.

C.      If an objection is timely and properly filed with the Court and served on the Debtor Notice Parties, (i) the objection will be deemed a request for a hearing on the Noticed Transaction and objection and will be heard at the next scheduled omnibus hearing in these chapter 11 cases that is at least seven (7) days after service of the objection (provided that the Debtors reserve the right to seek a hearing on the Noticed Transaction and objection prior to such time) and (ii) the Noticed Transaction may not proceed absent (a) withdrawal of the objection or (b) entry of an order by the Court specifically approving the Noticed Transaction.

D.      If no objection is timely and properly filed with the Court and served on the Debtor Notice Parties, such Noticed Transaction will be deemed final and fully authorized by the Court under the terms of the Order approving these Global Sale and Lease Authorization Procedures, and no further notice or Court approval to consummate the Noticed Transaction will be required or necessary.

V.      *Tier II Transactions – $25,000,000.00 or Greater*

A.      If, with respect to a Tier II Transaction, (i) the Successful Bid or (ii) the consideration to be received by the Debtors pursuant to a private Tier II Transaction, as applicable, is $25,000,000.00 or greater, the Debtors shall file with the Court and serve on the Transaction Notice Parties a motion (the "**Transaction Motion**") for approval of the Tier II Transaction, which motion will be heard at a hearing to approve the transaction on a date that is at least fourteen (14) days after service of the Transaction Motion. The Transaction Motion shall describe the auction that was held, if applicable, or explain why the Debtors believe an auction is not

WEIL:\95400917\8\50482.0004

necessary to maximize the value the Debtors will receive pursuant to the transaction.

    1.        If the Debtors propose to assume and assign any executory contract or unexpired lease in connection with such Tier II Transaction, the Debtors shall also comply with the Lease Assumption and Assignment Procedures set forth in Section VI below.

B.        Any objections to a Transaction Motion must be filed with the Court and served on the Debtor Notice Parties within seven (7) days after service of the Transaction Motion.

C.        If no objections are timely and properly filed with the Court and served on the Debtor Notice Parties, the Debtors shall certify to the Court that there were no timely objections to the Transaction Motion, and request entry of the proposed order attached to the Transaction Motion.

VI.    **Lease Assumption and Assignment Procedures**.  The Debtors shall comply with these Lease Assumption and Assignment Procedures in connection with any Tier II Transaction where the Debtors propose to assume and assign an executory contract or unexpired lease.

A.        <u>Assumption and Assignment Notice</u>.  The Debtors will file a notice (the "**Assumption and Assignment Notice**") to assume and assign an executory contract or unexpired lease in accordance with these procedures, which Assumption and Assignment Notice shall set forth, among other things, (i) the executory contract or unexpired lease to be assumed and assigned; (ii) the name(s) and address(es) of each counterparty to such executory contract or unexpired lease; (iii) the proposed effective date of the assumption and assignment for such executory contract or unexpired lease, which date shall be the effective date of the Tier II Transaction; (iv) the proposed cure amount, if any; (v) the assignee(s) of such executory contract or unexpired lease; (vi) a certification that each assignee has demonstrated to the Debtors the financial wherewithal and willingness to perform under such executory contract or unexpired lease; and (vii) the deadlines and procedures for filing objections to the Assumption and Assignment Notice (as set forth below).

B.        <u>Service of the Assumption and Assignment Notice</u>.  The Debtors will cause the Assumption and Assignment Notice to be served on each non-Debtor counterparty to such executory contract or unexpired lease (collectively, the "**Cure Notice Parties**").

C.        <u>Objection Procedures</u>.  Parties objecting to a proposed assumption and assignment, including to the proposed cure amount, must file and serve a written objection so that such objection is filed with the Court and is actually received by the Debtors no later than seven (7) days after the date

the Debtors serve the relevant Assumption and Assignment Notice (the "**Assumption and Assignment Objection Deadline**").

D. <u>Event of No Objection</u>.  If an objection is not timely and properly filed and served by the Assumption and Assignment Objection Deadline, then: (i) the Debtors' proposed cure amount shall be binding upon each non-Debtor party to such executory contract or unexpired lease for all purposes in the Debtors' chapter 11 cases and will constitute a final determination of the assumption and no additional cure amounts shall be due; (ii) each non-Debtor party to such executory contract or unexpired lease will be deemed to have received adequate assurance of future performance; (iii) the effective date of such assumption and assignment will be the effective date of the Tier II Transaction; and (iv) the Debtors shall submit a proposed order to the Court granting the unopposed requested relief, together with a statement that there were no timely objections to the proposed relief.

E. <u>Unresolved Objections</u>.  If an objection to the assumption and assignment of such executory contract or unexpired lease is timely filed and not withdrawn or resolved, the Debtors shall try to negotiate a consensual resolution with each non-Debtor party to such executory contract or unexpired lease.  If the Debtors and each non-Debtor party to such executory contract or unexpired lease are unable to consensually resolve all objections within three (3) days after Assumption and Assignment Objection Deadline, (i) the Debtors will file a notice for a hearing for the Court to consider the objection(s) at the next available omnibus hearing or such other date as the Debtors may request or (ii) such objection will be heard at the hearing on the Tier II Transaction, if applicable.  If such objection is overruled or withdrawn, such executory contract or unexpired lease shall be assumed with the effective date of such assumption and assignment to be the effective date of the Tier II Transaction.

F. <u>Payment of Cure Amount</u>.  All undisputed cure amounts shall be paid at the closing of the relevant Tier II Transaction.  Any disputed cure amount must be paid by the earlier of (i) when the Debtors and the non-Debtor counterparty agree to a cure amount or (ii) within five (5) days after the date of the entry of an order by the Court determining an amount.

WEIL:\95400917\8\50482.0004

**<u>Schedule 1</u>**

**Tier II Stores**

## Tier II Stores

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 1 | 19243 | Liquor | New Canaan | 282 Elm Street | CT |
| 2 | 19254 | Liquor | Ridgefield | 46B Danbury Rd. | CT |
| 3 | 70074 | A&P | Danbury | 1 Padanaram Rd | CT |
| 4 | 19129 | Liquor | Old Lyme | 28A Halls Rd (P.O. Box 491) | CT |
| 5 | 70951 | A&P | Mt Olive | 7 Naughright Rd | NJ |
| 6 | 70806 | A&P | Califon | 431 County Road 513 | NJ |
| 7 | 72280 | Pathmark | Montclair | 35 Lackawanna Plaza | NJ |
| 8 | 72198 | Pathmark | Fairlawn | 22-00 Maple Avenue | NJ |
| 9 | 59036 | Food Basics | East Paterson | 498 East 30th St | NJ |
| 10 | 72578 | Pathmark | Brick Twp. | 1930 Route 88 | NJ |
| 11 | 72223 | Pathmark | Newark | 167 Bergen Street | NJ |
| 12 | 72609 | Pathmark | New York | 160 East 125th Street | NY |
| 13 | 70611 | Waldbaums | Rocky Point | 245 Route 25A | NY |
| 14 | 72624 | Pathmark | Brooklyn | 1245 61St Street | NY |
| 15 | 72603 | Pathmark | New York | 300 West 145th Street | NY |
| 16 | 72679 | Pathmark | Staten Island | 100 Greaves Lane | NY |
| 17 | 72653 | Pathmark | Bethpage | 3901 Hempstead Turnpike | NY |
| 18 | 72649 | Pathmark | New Hyde Park | 2335 New Hyde Park Road | NY |
| 19 | 72646 | Pathmark | Shirley | 800 Montauk Highway | NY |
| 20 | 72652 | Pathmark | Massapequa | 941 Carmans Road | NY |
| 21 | 70298 | Waldbaums | Melville | 890 Walt Whitman Road | NY |
| 22 | 72614 | Pathmark | Patchogue | 399 Route 112 | NY |
| 23 | 70232 | Waldbaums | West Hampton | 70 Sunset Ave | NY |
| 24 | 70279 | Waldbaums | Merrick | 1686 Merrick Rd. | NY |
| 25 | 70241 | Waldbaums | N. Patchoque | 440 W. Sunrise Highway | NY |
| 26 | 72642 | Pathmark | Brooklyn | 1-37 12th Street | NY |
| 27 | 72634 | Pathmark | Brooklyn | 111-10 Flatlands Avenue | NY |
| 28 | 70263 | Waldbaums | Mattituck | Rt.25 And Factory Ave. | NY |
| 29 | 72600 | Pathmark | Brentwood | 101 Wicks Road | NY |
| 30 | 70240 | Waldbaums | Brooklyn | 2149 Ralph Ave | NY |
| 31 | 70235 | Waldbaums | Brooklyn | 3100 Ocean Ave | NY |
| 32 | 70275 | Waldbaums | College Point | 133-11 20th Avenue | NY |
| 33 | 70229 | Waldbaums | Ctr Moriches | 812 Montauk Hwy. | NY |
| 34 | 70699 | Waldbaums | Deer Park | 1960 Deer Park Ave. | NY |
| 35 | 72611 | Pathmark | East Rockaway | 492 East Atlantic Avenue | NY |
| 36 | 70617 | Waldbaums | Great Neck | 40 Great Neck Road | NY |
| 37 | 36703 | Food Emporium | New York | 1175 3rd Avenue | NY |
| 38 | 36711 | Food Emporium | New York | 1331 1st Avenue | NY |
| 39 | 36727 | Food Emporium | New York | 452 West 43 St. | NY |
| 40 | 36732 | Food Emporium | New York | 810 8th Ave | NY |
| 41 | 36707 | Food Emporium | New York | 969 Second Ave | NY |
| 42 | 36777 | Food Emporium | New York | 316 Greenwich St | NY |
| 43 | 36742 | Food Emporium | New York | 1066 3rd Avenue | NY |
| 44 | 36706 | Food Emporium | New York | 1450 3rd Avenue | NY |

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 45 | 36783 | Food Emporium | New York | 405 East 59th St. | NY |
| 46 | 36708 | Food Emporium | New York | 2415 Broadway | NY |
| 47 | 70662 | Waldbaums | Selden | 211 Middle Country Road | NY |
| 48 | 72678 | Pathmark | Staten Island | 2730 Arthur Kill Road | NY |
| 49 | 72682 | Pathmark | Staten Island | 2875 Richmond Avenue | NY |
| 50 | 70813 | Waldbaums | Tottenville | 6400 Amboy Road | NY |
| 51 | 70270 | Waldbaums | Whitestone | 153-01 10th Ave | NY |
| 52 | 72558 | Pathmark | Brookhaven | 5005 Edgemont Avenue | PA |
| 53 | 72569 | Pathmark | Glenolden | 140 North Mcdade Boulevard | PA |
| 54 | 72552 | Pathmark | Philadelphia | 330 Oregon Avenue | PA |
| 55 | 72550 | Pathmark | Philadelphia | 176-82 West Chelten Avenue | PA |
| 56 | 72522 | Pathmark | Philadelphia | 3399 Aramingo Avenue | PA |
| 57 | 19104 | Liquor | Bristol | 767 Pine Street | CT |
| 58 | 19110 | Liquor | Mystic | 25 Broadway Ave. | CT |
| 59 | 19119 | Liquor | Newington | 2400 Berlin Tpk. | CT |
| 60 | 19106 | Liquor | Newington | 40 Fenn Road | CT |
| 61 | 19246 | Liquor | Riverside | 1237 East Putnam Ave. | CT |
| 62 | 19121 | Liquor | Waterford | 117 Boston Post Rd | CT |
| 63 | 72593 | Pathmark | New Castle | 148 Sunset Boulevard | DE |
| 64 | 70586 | Superfresh | New Castle | 2044 New Castle Avenue | DE |
| 65 | 70888 | Superfresh | Ocean City | 12741 Ocean Gateway | MD |
| 66 | 70417 | A&P | Basking Ridge | 407 King George Road | NJ |
| 67 | 59506 | Food Basics | Belleville | 414 Main St. | NJ |
| 68 | 70936 | A&P | Belvidere | 525 East Route 46 | NJ |
| 69 | 70752 | A&P | Bloomfield | 19 Bellville Ave. | NJ |
| 70 | 70610 | A&P | Boonton | 550 Myrtle Ave | NJ |
| 71 | 70802 | A&P | Bricktown | 64 Brick Plaza | NJ |
| 72 | 70949 | A&P | Clinton | 49 Old Route 22 | NJ |
| 73 | 70515 | A&P | Edison | 1185 Amboy Ave | NJ |
| 74 | 72288 | Pathmark | Elizabeth | 211 Elmora Avenue | NJ |
| 75 | 70618 | A&P | Fairview | 425 Anderson Avenue | NJ |
| 76 | 70895 | A&P | Fanwood | 105 South Ave | NJ |
| 77 | 72450 | Pathmark | Garwood | 10 South Avenue | NJ |
| 78 | 72153 | Pathmark | Hackensack | 405 State Route 17 South | NJ |
| 79 | 37602 | Liquor | Hackettstown | 57 Route 46 | NJ |
| 80 | 37905 | Liquor | Haskell | 1069 Ringwood Ave | NJ |
| 81 | 72573 | Pathmark | Hazlet | 3020 Route 35 & Bethany Road | NJ |
| 82 | 72527 | Pathmark | Hopelawn | 95-101 New Brunswick Ave | NJ |
| 83 | 72224 | Pathmark | Irvington | 474-79 Lyons Avenue | NJ |
| 84 | 72114 | Pathmark | Jersey City | 420 Grand Street | NJ |
| 85 | 72261 | Pathmark | Landing | 175 Lakeside Boulevard & Center | NJ |
| 86 | 37993 | Liquor | Ledgewood | 1103 Howard Blvd | NJ |

|  | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 87 | 70956 | A&P | Marlboro | 460 County Line Road Route 520 | NJ |
| 88 | 37872 | Liquor | Metuchen | 45 Pearl Street | NJ |
| 89 | 72436 | Pathmark | Middlesex | 242 Lincoln Boulevard | NJ |
| 90 | 70924 | A&P | Navesink | 1002 Rte 36 | NJ |
| 91 | 59512 | Food Basics | North Bergen | 1425 Kennedy Blvd. | NJ |
| 92 | 70887 | A&P | North Brunswick | 510 Milltown Road | NJ |
| 93 | 70441 | A&P | Old Tappan | 216 Old Tappan Rd | NJ |
| 94 | 37995 | Liquor | Palisade Park | 534 Bergen Blvd. | NJ |
| 95 | 72282 | Pathmark | Parsippany | 1157 Route 46 East | NJ |
| 96 | 59501 | Food Basics | Passaic | 514 Van Houten Ave. | NJ |
| 97 | 70638 | A&P | Pompton Lakes | 47 Wanaque Avenue | NJ |
| 98 | 37866 | Liquor | Pt Pleasant | 1205 Richmond Ave | NJ |
| 99 | 72299 | Pathmark | Ramsey | 10 Triangle Plaza - Lake Road Ext. | NJ |
| 100 | 70688 | A&P | Randolph | 148 Center Grove Road | NJ |
| 101 | 37814 | Liquor | Summit | 23 Summit Ave | NJ |
| 102 | 70807 | A&P | Washington | 459 Route 31 South | NJ |
| 103 | 70439 | A&P | Washington Township | 315 Pascack Rd | NJ |
| 104 | 70668 | A&P | Wayne | 560 Valley Road | NJ |
| 105 | 70685 | A&P | West Milford | 1938 Union Valley Road | NJ |
| 106 | 37661 | Liquor | Westwood | 30 Irvington Ave | NJ |
| 107 | 72580 | Pathmark | Woodbridge | 1600 St Georges Avenue | NJ |
| 108 | 70701 | A&P | Woodland Park | 1730 Route 46 West | NJ |
| 109 | 72286 | Pathmark | Woodport | 757 Rt. 15 | NJ |
| 110 | 72602 | Pathmark | Bayshore | 2060 Sunrise Highway | NY |
| 111 | 70203 | Waldbaums | Commack | 84 Jericho Tpke | NY |
| 112 | 72664 | Pathmark | Dix Hills | 683 Old Country Road | NY |
| 113 | 70434 | Waldbaums | East Meadow | 1530 Front Street | NY |
| 114 | 70277 | Waldbaums | East Setauket | 4054 Nesconset Highway | NY |
| 115 | 70223 | Waldbaums | Garden City | 2475 Jericho Turnpike | NY |
| 116 | 70217 | Waldbaums | Greenlawn | 777 Pulaski Road | NY |
| 117 | 70769 | A&P | Hastings | 87 Main Street | NY |
| 118 | 70214 | Waldbaums | Hauppauge | 1236 Veterans Highway | NY |
| 119 | 72641 | Pathmark | Holbrook | 5801 Sunrise Highway | NY |
| 120 | 72639 | Pathmark | Islip | 155 Islip Avenue | NY |
| 121 | 70289 | Waldbaums | Jericho | 336 North Broadway | NY |
| 122 | 70003 | A&P | Lagrange | 1642 Route 82 | NY |
| 123 | 70251 | Waldbaums | Lindenhurst | 50 E. Hoffman | NY |
| 124 | 70151 | A&P | Mamaroneck | 805 Mamaroneck Ave | NY |
| 125 | 70256 | Waldbaums | Massapequa | 5508 Sunrise Hwy | NY |
| 126 | 72292 | Pathmark | Nanuet | 195 Rockland Center East Rt 59 | NY |
| 127 | 72615 | Pathmark | North Babylon | 1251 Deer Park Avenue | NY |
| 128 | 70288 | Waldbaums | Oakdale | 4560 Sunrise Hwy | NY |
| 129 | 70126 | A&P | Patterson | 3101 Route 22 | NY |
| 130 | 70194 | A&P | Peekskill | 20 Welcher Ave | NY |

|     | Store | Banner | City | Address | State |
|-----|-------|--------|------|---------|-------|
| 131 | 72297 | Pathmark | Port Chester | 130 Midland Avenue | NY |
| 132 | 72604 | Pathmark | Port Jeff.Sta. | 5145 Nesconset Highway | NY |
| 133 | 70192 | A&P | Scarsdale | 668 Central Park Avenue | NY |
| 134 | 72298 | Pathmark | Scarsdale | 2540 Central Park Avenue | NY |
| 135 | 72171 | Pathmark | Staten Island | 2660 Hylan Avenue | NY |
| 136 | 70601 | Waldbaums | Stony Brook | 2162 Nesconset Highway | NY |
| 137 | 19918 | Liquor | Unclassified | 1175 Third Ave Suite A | NY |
| 138 | 70794 | A&P | Valley Cottage | 14 Lake Ridge Plaza | NY |
| 139 | 72644 | Pathmark | West Babylon | 531 Montauk Highway | NY |
| 140 | 72293 | Pathmark | Yonkers | 1757 Central Park Avenue | NY |
| 141 | 72528 | Pathmark | Cheltenham | 1000 Easton Road | PA |
| 142 | 72529 | Pathmark | Fairless Hills | 500 Lincoln Highway | PA |
| 143 | 70718 | Superfresh | New Hope | 323 West Bridge Street | PA |
| 144 | 59530 | Food Basics | Philadelphia | 15501 Bustleton Ave. | PA |
| 145 | 70982 | Superfresh | Philadelphia | #N/A | PA |
| 146 | 59510 | Food Basics | Philadelphia | 8920 Frankford Avenue | PA |
| 147 | 72556 | Pathmark | Philadelphia | 4160 Monument Road | PA |
| 148 | 72553 | Pathmark | Philadelphia | 8700 Frankford Avenue | PA |
| 149 | 72532 | Pathmark | Philadelphia | 3021 Grays Ferry Avenue | PA |
| 150 | 72557 | Pathmark | Philadelphia | 2900 N. Broad St. & Glenwood Ave. | PA |
| 151 | 72568 | Pathmark | Upper Darby | 421 S. 69Th Street | PA |

**Exhibit C**

**Transaction Notice**

WEIL:\95403322\5\50482.0004

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
```
In re                                    :        **Chapter 11**
                                         :
**THE GREAT ATLANTIC & PACIFIC TEA**     :
**COMPANY, INC.,** *et al.*,             :        **Case No. 15-02377 (RDD)**
                                         :
              **Debtors.**[1]            :        **(Joint Administration Pending)**
```
-------------------------------------------------------x
```

### NOTICE OF PROPOSED TRANSACTION PURSUANT TO
### GLOBAL SALE AND LEASE RATIONALIZATION PROCEDURES

PLEASE TAKE NOTICE that the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), pursuant to the *Order Approving Global Sale and Lease Rationalization Procedures* entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____, _____ [Docket No. _____] (the "**Order**"), propose to enter into a transaction with respect to certain assets (the "**Assets**") with _____ (the "**Counterparty**") pursuant to an agreement dated _____, _____ (the "**Agreement**"). This Notice is being provided in accordance with and sets forth the information required under the Section V.B. of the Global Sale and Lease Rationalization Procedures attached to the Order as Exhibit 1.

Description of the Assets. The Assets consist of _____ and are located at_____. [The Debtors are not aware of any appraisal or other indicia of value with respect to the Assets.]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

Relationship of Counterparty to the Debtors.  The Counterparty's relationship, if any, with the Debtors is as follows:_____.

Liens and Encumbrances on and Other Interests in the Assets.  The Debtors are aware of the following liens and encumbrances on or interests in the Assets: _____. To the extent that any party has liens and encumbrances on or interests in the Assets, the Debtors believe that any such liens, encumbrances or interests would be subject to monetary satisfaction in accordance with section 363(f)(5) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

Economic Terms and Conditions of the Proposed Transaction.  The Debtors propose to sell or dispose of the Assets to Counterparty on an "as is" basis, free and clear of all liens, claims, encumbrances and other interests therein, pursuant to section 363(f) of the Bankruptcy Code (the "**Transaction**").  The Purchaser has agreed to pay a purchase price of $_____ for the Assets.

Procedures to Object to the ProposedTransaction.  Any objection to the proposed Transaction (an "**Objection**") must:  (i) be in writing; (ii) state with specificity the nature of the objection; and (iii) be filed with the Bankruptcy Court and served on (i) The Great Atlantic and Pacific Tea Company, Inc., 2 Paragon Drive, Montvale, New Jersey 07645 (Attn: Christopher W. McGarry and Matthew Bennett); (ii) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Garrett A. Fail, Esq.); and (iii) Hilco, 5 Revere Dr. Suite 320, Northbrook, IL 60062 (Attn: Gregory S. Apter) (the "**Debtor Notice Parties**")  on or before _____, _____ (the "**Objection Deadline**").  If no Objections are filed with the Bankruptcy Court and served on the Debtor Notice Parties by the Objection Deadline in accordance with the terms of the Order

WEIL:\95403322\5\50482.0004

described above, then the Debtors may proceed with the **Transactions** in accordance with the

terms of the Order.

Dated: July 19, 2015
    New York, New York

 

_____

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\95403322\5\50482.0004