WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | :   **Chapter 11** |
| **THE GREAT ATLANTIC & PACIFIC TEA** | : |
| **COMPANY, INC.,** *et al.*, | :   **Case No. 15-_____ (___)** |
| | : |
| Debtors.[1] | :   **(Joint Administration Pending)** |

-------------------------------------------------------------x

## APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(a), FED. R. BANKR. P. 2014(a) AND 2016(a), AND LOCAL RULES 2014-1 AND 2016-1 FOR AUTHORITY TO EMPLOY AND RETAIN PRIME CLERK LLC AS ADMINISTRATIVE AGENT FOR THE DEBTORS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**A&P**"), respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

## Background

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of Christopher W. McGarry Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), sworn to on the date hereof (the "**McGarry Declaration**"), which has been filed with the Court contemporaneously herewith.

## Jurisdiction

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.      By this Application (the "**Application**"), the Debtors seek authority, pursuant to section 327 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and   2016-1 to employ and retain Prime Clerk LLC ("**Prime Clerk**") as

2

administrative agent ("**Administrative Agent**") in the Debtors' chapter 11 cases effective *nunc pro tunc* to the Commencement Date in accordance with the terms and conditions of that certain Engagement Agreement dated July 15, 2015, by and between A&P and Prime Clerk (the "**Engagement Agreement**").   Such relief, including any and all authorizations or payments requested herein, shall be subject to and implemented in accordance with the provisions of the DIP Orders (as defined in the McGarry Declaration).

6.      By separate application filed contemporaneously herewith and pursuant to 28 U.S.C. § 156(c), the Debtors request entry of an order appointing Prime Clerk as their claims and noticing agent in these chapter 11 cases, effective *nunc pro tunc* to the Commencement Date (the "**Section 156(c) Application**").

7.      A proposed form of order granting the relief requested herein is attached hereto as **Exhibit "A"** (the "**Proposed Order**").   A copy of the Engagement Agreement is annexed to the Proposed Order as **Exhibit "1."**

8.      In support of the relief requested herein, the Debtors submit the Declaration of Shai Y. Waisman, the Chief Executive Officer of Prime Clerk (the "**Waisman Declaration**"), as attached hereto as **Exhibit "B."**

## Prime Clerk's Qualifications

9.      Prime Clerk is comprised of leading industry professionals who have robust experience in both the legal and administrative components of large, complex chapter 11 cases.   Prime Clerk's professionals are expertly-trained in noticing, claims administration, solicitation, balloting, and facilitating other important administrative objectives of chapter 11 cases.   A large percentage of Prime Clerk's professionals have served as debtor's counsel, official claims and noticing agent, and/or official administrative agent in several large bankruptcy cases

3

in this and many other districts nationwide. Prime Clerk's active cases include: *In re Chassix Holdings, Inc.*, Case No. 15-10578 (Bankr. S.D.N.Y.*); In re Caesars Entm't Operating Co.,* No. 15-01145 (Bankr. N.D. Ill.); *In re dELiA*s, Inc.*, No. 14-23678 (Bankr. S.D.N.Y.); *In re Aereo, Inc.*, No. 14-13200 (Bankr. S.D.N.Y.); *In re Dendreon Corp.*, No. 14-12515 (Bankr. D. Del.); *In re ALCO Stores, Inc.*, No. 14-34941 (Bankr. N.D. Tex.); *In re Inversiones Alsacia S.A.*, No. 14-12896 (Bankr. S.D.N.Y.); *In re SIGA Techs., Inc.*, No. 14-12623 (Bankr. S.D.N.Y.); *In re NII Holdings, Inc.*, No. 14-12611 (Bankr. S.D.N.Y.); *In re Trump Entm't Resorts, Inc.*, No. 14-12103 (Bankr. D. Del.); *In re Mineral Park, Inc.*, No. 14-11996 (Bankr. D. Del.); *In re Entegra Power Grp. LLC*, No. 14-11859 (Bankr. D. Del.); *In re Windsor Petroleum Transp. Corp.*, No. 14-11708 (Bankr. D. Del.); *In re Crumbs Bake Shop, Inc.*, No. 14-24287 (Bankr. D.N.J.); *In re Tactical Intermediate Holdings, Inc.*, No. 14-11659 (Bankr. D. Del.); *In re MIG, LLC*, No. 14-11605 (Bankr. D. Del.); *In re FL 6801 Spirits LLC*, No. 14-11691 (Bankr. S.D.N.Y.).

## Scope of Services

10.     This Application only pertains to the work to be performed by Prime Clerk pursuant to 11 U.S.C. § 327(a), Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1. Specifically, Prime Clerk will perform the following tasks in its capacity as Administrative Agent, as well as all quality control relating thereto:

a.     Assist with, among other things, solicitation, balloting, and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest;

b.     Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

c.     Assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

4

      d.      Provide a confidential data room, if requested;

      e.      Manage and coordinate any distributions pursuant to a chapter 11 plan; and

      f.      Provide such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, to the extent not included in the Section 156(c) Application, as may be requested from time to time by the Debtors, the Court, or the Office of the Clerk of the Bankruptcy Court (the "**Clerk**").

### Professional Compensation

11.    The Debtors are advised that Prime Clerk intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Commencement Date in connection with the services it provides as Administrative Agent in accordance with General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)); Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)); and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58) (collectively, the "**Fee Guidelines**"), sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any further orders of the Court (the "**Orders**"), both in connection with the Application and the interim and final fee applications to be filed by Prime Clerk in these chapter 11 cases. The Debtors also are advised that Prime Clerk intends to make a reasonable effort to comply with the Office of the United States Trustee for the Southern District of New York's (the "**U.S. Trustee**") requests for information and additional disclosures as set forth in the Fee Guidelines.

WEIL:\95406881\4\50482.0004

12.     Prior to the Commencement Date, the Debtors provided to Prime Clerk a retainer in the amount of $50,000.00.  Prime Clerk first seeks to apply the retainer to all prepetition invoices, and, thereafter, to have the retainer replenished to the original retainer amount, and, thereafter, to hold the retainer during these chapter 11 cases as security for the payment of fees and expenses incurred pursuant to the Engagement Agreement.

13.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Prime Clerk and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances solely resulting from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or order of this Court. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of an Administrative Agent in these chapter 11 cases.

## No Duplication of Services

14.     The Debtors intend that the services of Prime Clerk will complement, and not duplicate, the services being rendered by other professionals retained in these chapter 11 cases. Prime Clerk understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Disinterestedness

15.     To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Waisman Declaration, Prime Clerk has represented that it neither holds nor represents any interest that are materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

6

16.     The Debtors are advised that Prime Clerk believes that it does not have any relationships with creditors of the Debtors or other parties in interest that would present a disqualifying conflict of interest.  Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require additional disclosure.

### Basis for Relief

17.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

18.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR. P. 2014.

19.     In light of the size and complexity of these chapter 11 cases, the Debtors respectfully submit that retaining and employing Prime Clerk pursuant to the terms of the Engagement Agreement is necessary and in the best interests of the Debtors' estates and all parties in interest to these chapter 11 cases.  The Debtors also believe that the terms and conditions of the Engagement Agreement are reasonable in light of the anticipated high volume of creditors and other parties in interest that will be involved in these cases.

WEIL:\95406881\4\50482.0004

## Notice

20.     Notice of this Application has been provided to (i) the Office of the U.S. Trustee; (ii) the holders of the four (4) largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014; (v) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014; (vi) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured PIK Toggle Notes due 2017 (the "**Prepetition PIK Notes**"); (vii) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured Convertible Notes due 2018 (the "**Prepetition Convertible Notes**"); (viii) the attorneys for the holders of a majority of the Prepetition PIK Notes; (ix) the attorneys for the holders of a majority of the Prepetition Convertible Notes; (x) the attorneys for the DIP Agent; (xi) the attorneys for The Yucaipa Companies, LLC and their affiliated funds; (xii) the attorneys for the United Food and Commercial Workers Union International; (xiii) the Securities and Exchange Commission; (xiv) the Internal Revenue Service; (xv) the United States Attorney's Office for the Southern District of New York; and (xvi) Prime Clerk.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

WEIL:\95406881\4\50482.0004

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: July 19, 2015
      New York, New York

THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.
(for itself and on behalf of its affiliates
as Debtors and Debtors in Possesion)


/s/ Christopher W. McGarry
NAME: Christopher W. McGarry
TITLE:  Chief Restructuring Officer

9

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                      :
                                                           :       **Chapter 11**
**THE GREAT ATLANTIC & PACIFIC TEA**                       :
**COMPANY, INC.,** *et al.*,                               :       **Case No. 15-_____ (___)**
                                                           :
            **Debtors.**[1]                                :       **(Jointly Administered)**
-------------------------------------------------------------------x

## ORDER PURSUANT TO 11 U.S.C. § 327(a), FED. R. BANKR. P. 2014(a) AND 2016(a), AND LOCAL RULES 2014-1 AND 2016-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF PRIME CLERK LLC AS ADMINISTRATIVE AGENT FOR THE DEBTORS

Upon the application (the "**Application**")[2] of The Great Atlantic & Pacific Tea

Company, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**" or "**A&P**"), pursuant to 11 U.S.C. §

327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and

2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules

2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"**Local Rules**") to employ and retain Prime Clerk LLC ("**Prime Clerk**") as administrative agent

("**Administrative Agent**") in the Debtors' chapter 11 cases effective *nunc pro tunc* to the

Commencement Date in accordance with the terms and conditions of that certain Engagement

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Application.

Agreement dated July 15, 2015, by and between A&P and Prime Clerk (the "**Engagement Agreement**"), all as more fully set forth in the Application; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application having been given as provided in the Application, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "**Hearing**"); and upon the Declaration of Christopher W. McGarry Pursuant to Local Rule 1007-2, filed contemporaneously with the Application, the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates, creditors, and all other parties in interest, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted to the extent set forth herein; and it is further

ORDERED that the Debtors are authorized to retain Prime Clerk as Administrative Agent effective *nunc pro tunc* to the Commencement Date under the terms of the Engagement Agreement annexed hereto as "**Exhibit 1**," as set forth herein, and Prime Clerk is authorized and directed to perform the bankruptcy administrative services described in the Application and set forth in the Engagement Agreement; and it is further

2

ORDERED that notwithstanding the terms of the Engagement Agreement, the Application is approved solely to the extent set forth in this Order; and it is further

ORDERED that Prime Clerk shall be compensated for fees and reimbursed for reasonable and necessary expenses and will file interim and final fee applications for allowance of its compensation and expenses in its role as Administrative Agent in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)); Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)); and the United States Trustee Fee Guidelines (collectively, the "**Fee Guidelines**"); and it is further

ORDERED that Prime Clerk may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and, thereafter, Prime Clerk may hold its retainer during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement; and it is further

ORDERED that the Debtors shall indemnify Prime Clerk under the terms of the Engagement Agreement, as modified pursuant to this Order; and it is further

ORDERED that all requests by Prime Clerk for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided that in no event shall Prime Clerk be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary

3

duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in the event Prime Clerk seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Prime Clerk's own applications, both interim and final, but determined by this Court after notice and a hearing; and it is further

ORDERED that in accordance with this Order (or other order of this Court), each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the Application are authorized and directed to (a) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on or subsequent to the Commencement Date, without any duty to inquire otherwise; and it is further

ORDERED that the Debtors and Prime Clerk are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application; and it is further

ORDERED that notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order immediately shall be effective and enforceable upon its entry; and it is further

ORDERED that in the event of any inconsistency between the Engagement

4

Agreement and the Order, the Order shall govern; and it is further

ORDERED that notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2015
          White Plains, New York

_____
UNITED STATES BANKRUPTCY JUDGE

5

**Exhibit 1**

**Engagement Agreement**



**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of July 15, 2015 between Prime Clerk LLC ("**Prime Clerk**") and The Great Atlantic & Pacific Tea Co. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>**Services**</u>

   (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder.  The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. <u>**Rates, Expenses and Payment**</u>

   (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "**Rate Structure**").  The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

   (c) Prime Clerk will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

   (d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

**Prıme Clerk**

invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $50,000.  Prime Clerk may use such advance against unpaid fees and expenses hereunder.  Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

3. **Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

4. **Confidentiality**

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



### 5.  Property Rights

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Prime Clerk for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

### 6.  Bank Accounts

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

### 7.  Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "**Cause**" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

### 8.  No Representations or Warranties

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9. **Indemnification**

    (a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b) Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c) The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

    (d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder.  In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Company Data**

    (a) The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "<u>SOFAs and Schedules</u>").  Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b) The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

    (c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk.  Any such disposal shall be in a manner requested by or

**Prime Clerk**

acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,

Prime Clerk

understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Prime Clerk:    Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, NY 10022
Attn: Shai Waisman
Tel: (212) 257-5450
Email: swaisman@primeclerk.com

If to the Company:    Great Atlantic & Pacific Tea Co.
2 Paragon Drive
New York, NY 07645
Attn: Christopher McGarry
Tel:
Email:

With a copy to:    Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn: Ray C. Schrock, P.C.
Tel: (212) 310-8210
Email: ray.schrock@weil.com



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: _Shai Waisman_
Title: CEO

**The Great Atlantic & Pacific Tea Co.**

By: _Christopher McGarry_
Title: CAO

7

# Rates

## Claim and Noticing Rates[1]

| Title | Hourly Rate |
|---|---|
| Analyst<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $25 - $45 |
| Technology Consultant<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $80 - $100 |
| Consultant<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. | $90 - $130 |
| Senior Consultant<br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. | $135 - $160 |
| Director<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. | $170 - $190 |

## Solicitation, Balloting and Tabulation Rates

| | |
|---|---|
| Solicitation Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Analyst prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. | $190 |
| Director of Solicitation<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. | $210 |

---

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours. Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

## Printing and Noticing Services

| | |
|---|---|
| Printing | $0.10 per page[2] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.08 per page |
| Proof of Claim Acknowledgment Card | Waived |
| Envelopes | Varies by Size |

## Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

## Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

## Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

## Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month (waived first three months) |
| Virtual Data Rooms | Available on request |

---

[2] Volume discounts will be applied to large mailings.

### On-line Claim Filing Services

| | |
|---|---|
| On-line claim filing | No charge |

### Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | Set-up fee waived, $0.34 per minute |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

### Disbursement Services

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

**Exhibit B**

**Waisman Declaration**

WEIL:\95406881\4\50482.0004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                               :
                                                    :    **Chapter 11**
**THE GREAT ATLANTIC & PACIFIC TEA**                :
**COMPANY, INC.,** *et al.,*                        :    **Case No. 15-_____ (___)**
                                                    :
          **Debtors.**[1]                           :    **(Joint Administration Pending)**

------------------------------------------------------------x

### DECLARATION OF SHAI Y. WAISMAN IN SUPPORT OF DEBTORS' APPLICATION PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), AND LOCAL RULE 5075-1 FOR AN ORDER APPOINTING PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS

I, Shai Y. Waisman, under penalty of perjury, declare as follows:

1.      I am the Chief Executive Officer of Prime Clerk LLC ("**Prime Clerk**"), a chapter 11 administrative services firm whose offices are located at 830 Third Avenue, 9th Floor, New York, New York 10022.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the application (the "**Application**")[2] of The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to such terms in the Application.

as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the
"**Debtors**" or "**A&P**"), for Appointment of Prime Clerk as Administrative Agent, which was
filed contemporaneously herewith.

<u>**Prime Clerk's Qualifications**</u>

3.      Prime Clerk is comprised of leading industry professionals who have
robust experience in both the legal and administrative components of large, complex chapter 11
cases.   Prime Clerk's professionals are expertly-trained in noticing, claims administration,
solicitation, balloting, and facilitating other important administrative objectives of chapter 11
cases (together with all other Prime Clerk employees, the "**Prime Clerk Professionals**").   A
large percentage of Prime Clerk Professionals have served as debtor's counsel, official claims
and noticing agent, and/or official administrative agent in several large bankruptcy cases in this
and many other districts nationwide.   Prime Clerk's active cases include: *In re Chassix Holdings,
Inc.*, Case No. 15-10578 (Bankr. S.D.N.Y.*); In re dELiA*s, Inc.*, No. 14-23678 (Bankr.
S.D.N.Y.); *In re Aereo, Inc.*, No. 14-13200 (Bankr. S.D.N.Y.); *In re Dendreon Corp.*, No. 14-
12515 (Bankr. D. Del.); *In re ALCO Stores, Inc.*, No. 14-34941 (Bankr. N.D. Tex.); *In re
Inversiones Alsacia S.A.*, No. 14-12896 (Bankr. S.D.N.Y.); *In re SIGA Techs., Inc.*, No. 14-
12623 (Bankr. S.D.N.Y.); *In re NII Holdings, Inc.*, No. 14-12611 (Bankr. S.D.N.Y.); *In re
Trump Entm't Resorts, Inc.*, No. 14-12103 (Bankr. D. Del.); *In re Mineral Park, Inc.*, No. 14-
11996 (Bankr. D. Del.); *In re Entegra Power Grp. LLC*, No. 14-11859 (Bankr. D. Del.); *In re
Windsor Petroleum Transp. Corp.*, No. 14-11708 (Bankr. D. Del.); *In re Crumbs Bake Shop,
Inc.*, No. 14-24287 (Bankr. D.N.J.); *In re Tactical Intermediate Holdings, Inc.*, No. 14-11659
(Bankr. D. Del.); *In re MIG, LLC*, No. 14-11605 (Bankr. D. Del.); *In re FL 6801 Spirits LLC*,
No. 14-11691 (Bankr. S.D.N.Y.).

2

## Scope of Services

4.      Prime Clerk will perform the following tasks in its capacity as Administrative Agent, as well as all quality control relating thereto:

g.      Assist with, among other things, solicitation, balloting, and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest;

h.      Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

i.      Assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

j.      Provide a confidential data room, if requested;

k.      Manage and coordinate any distributions pursuant to a chapter 11 plan; and

l.      Provide such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, to the extent not included in the Section 156(c) Application, as may be requested from time to time by the Debtors, the Court, or the Office of the Clerk of the Bankruptcy Court (the "**Clerk**").

## Professional Compensation

5.      In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is annexed to the Proposed Order as **Exhibit "1."** Prime Clerk intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Commencement Date in connection with the services it provides as Administrative Agent in accordance with General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)); Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated

3

January 29, 2013 (Morris, C.J.)); and the U.S. Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to

28 C.F.R. § 58) (collectively, the "**Fee Guidelines**"), sections 330 and 331 of the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, and any further orders of the Court (the

"**Orders**"), both in connection with the Application and the interim and final fee applications to

be filed by Prime Clerk in these chapter 11 cases.  In addition, Prime Clerk intends to make a

reasonable effort to comply with the Office of the United States Trustee for the Southern District

of New York's (the "**U.S. Trustee**") requests for information and additional disclosures as set

forth in the Fee Guidelines.

6.    Prior to the Commencement Date, the Debtors provided to Prime Clerk a

retainer in the amount of $50,000.00.  Prime Clerk first seeks to apply the retainer to all

prepetition invoices, and, thereafter, to have the retainer replenished to the original retainer

amount, and, thereafter, to hold the retainer during these chapter 11 cases as security for the

payment of fees and expenses incurred pursuant to the Engagement Agreement.

## No Duplication of Services

7.    Prime Clerk understands that the Debtors have retained and may retain

additional professionals during the term of the engagement and will work cooperatively with

such professionals to integrate any respective work conducted by the professionals on behalf of

the Debtors.

## Disinterestedness

8.    I caused to be submitted for review by our conflicts system the names of

all known potential parties in interest (the "**Potential Parties in Interest**") in these chapter 11

cases.  The list of Potential Parties in Interest was provided by the Debtors and included, among

4

other parties, the Debtors and their affiliates, current and former directors and officers, shareholders, secured creditors, creditors holding the forty (40) largest unsecured claims on a consolidated basis, major vendors, and other parties. The results of the conflicts check were compiled and reviewed by Prime Clerk Professionals working under my supervision. At this juncture, and as set forth in further detail herein, Prime Clerk is not aware of any relationship that would present a disqualifying conflict of interest. Should Prime Clerk discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable best efforts to promptly file a supplemental declaration.

9.      To the best of my knowledge, and solely based upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk nor any Prime Clerk Professional has any interest that is materially adverse to the Debtors, their creditors, or other relevant parties with respect to any matter upon which Prime Clerk is to be engaged in these chapter 11 cases. Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or in connection with other cases in which Prime Clerk serves or has served in a neutral capacity as Claims and Noticing Agent and/or administrative advisor for another chapter 11 debtor.

10.      Certain of Prime Clerk's professionals were partners of or formerly were employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Weil, Gotshal & Manges LLP ("**Weil**"); Kirkland & Ellis LLP ("**Kirkland**"); O'Melveny & Myers LLP; Mayer Brown LLP; Willkie Farr & Gallagher LLP; Togut, Segal & Segal LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell & Giuliani LLP; Proskauer Rose LLP; McKinsey & Company; KPMG LLP; Epiq Bankruptcy

5

Solutions, LLC; Donlin, Recano & Company, Inc.; and Kurtzman Carson Consultants LLC ("**KCC**"). Except as disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

11.    From approximately May 1997 until December 2003, I was an associate of Weil, the proposed attorneys for the Debtors, and was a partner of Weil from January 2004 until my departure in 2011. During my tenure at Weil, I neither was involved with nor advised the Debtors with respect to any aspect of their businesses or their strategy, preparation, or filing of their chapter 11 cases.

12.    Chris Schepper, is an Executive Vice President of Prime Clerk, was previously employed by KCC, which was claims and noticing agent in A&P's prior chapter 11 cases. Mr. Schepper left KCC in February 2013. Mr. Schepper billed time to A&P in their prior chapter 11 cases and is expected to bill time to A&P in these chapter 11 cases.

13.    Michael Frishberg, Co-President and Chief Operating Officer of Prime Clerk, was previously a partner at Kirkland, which was counsel for A&P in its prior chapter 11 cases. In addition, Benjamin P.D. Schrag, an Executive Vice President of Prime Clerk, was previously an associate at Kirkland and Benjamin J. Steele, a Vice President of Prime Clerk, was previously an associate at Kirkland. Mr. Frishberg left Kirkland in February 2008, Mr. Schrag left Kirkland in June 2010 and Mr. Steele left Kirkland in August 2013. Mr. Frishberg, Mr. Schrag and Mr. Steele did not work on any matters involving the Debtors while employed by Kirkland. Mr. Schrag also was previously employed by KCC, leaving in March 2013. Mr. Schrag did not bill time to A&P's prior chapter 11 cases but may bill time to A&P in these chapter 11 cases.

6

14.     Stephen Karotkin is a partner of Weil.   Mr. Karotkin's son, Joshua Karotkin, has been an employee of Prime Clerk since April 2014.   Joshua Karotkin holds no equity interest in Prime Clerk and receives no compensation based upon Prime Clerk's revenue.

15.     Prime Clerk has and will continue to represent clients in matters unrelated to these chapter 11 cases.   In addition, with respect to matters unrelated to these cases, Prime Clerk and its personnel have and will continue to have relationships in the ordinary course of business with certain vendors, professionals, and other parties in interest that may be involved in the Debtors' chapter 11 cases.   Prime Clerk also may provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, the Debtors or their chapter 11 cases.

16.     Prime Clerk and Prime Clerk Professionals in their individual capacities regularly utilize the services of law firms, accounting firms, and financial advisors.   Such firms engaged by Prime Clerk or any Prime Clerk Professional may appear in chapter 11 cases representing the Debtors or other parties in interest.   All engagements where such firms represent Prime Clerk or any Prime Clerk Professional in their individual capacities are unrelated to these chapter 11 cases.

17.     From time to time, Prime Clerk Professionals personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "**Investment Funds**"), through which such Prime Clerk Professionals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Prime Clerk's knowledge.   Individually, Prime Clerk Professionals generally own substantially less than one percent (1%) of such Investment Fund, do not manage, or otherwise control, such Investment Fund, and have no influence over the

7

Investment Fund's decision to buy, sell, or vote any particular security.  The Investment Fund generally is operated as a blind pool, such that when a Prime Clerk Professional makes an investment in the Investment Fund, he or she has no knowledge of or control over which securities the blind pool will purchase or sell.

18.     To the best of my knowledge, neither Prime Clerk nor any Prime Clerk Professional represents any interest materially adverse to the Debtors' estates with respect to any matter upon which Prime Clerk is to be engaged.  Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on July 19, 2015

_____
Shai Y. Waisman
Chief Executive Officer
Prime Clerk LLC

8