## Exhibit 1

**Intercreditor Arrangements**

WEIL:\95410057\1\50482.0004

<u>**Amended Exhibit 1**</u>

**Intercreditor Arrangements**

Capitalized terms used herein shall have the meanings set forth in the Existing Intercreditor Agreement as in effect on the date hereof unless otherwise defined herein or in the Interim Order to which this Exhibit is attached (the "**Interim Order**").  Subject to the terms of the Interim Order, together with the relative rights and priorities of the DIP Secured Parties and the Prepetition Secured Parties set forth in the Interim Order, the following provisions constitute the intercreditor arrangements among the DIP Secured Parties and the Prepetition Secured Parties for purposes of the Interim Order.

As between and among the Prepetition Secured Parties only, the Existing Intercreditor Agreement and the other Prepetition Financing Documents shall remain in full force and effect (but subject to the Interim Order), subject to all parties' rights and defenses thereunder and under applicable law and except that Paragraph 6 below shall replace the purchase rights in the Existing Intercreditor Agreement).

1.      *Definitions*.  The following terms, as used herein, have the following meanings:

"**ABL Priority Collateral**" has the meaning specified in the Existing Intercreditor Agreement, <u>provided</u> that "ABL Priority Collateral" shall not include any Additional Collateral.

"**Additional ABL Priority Collateral**" has the meaning set forth in Paragraph 4(b) below.

"**Additional Collateral**" means (i) all property of the Debtors, if any, that is not subject to a valid and perfected Lien in favor of either or both of the ABL Agent and the Term Loan Agent immediately prior to the Commencement Date and in which a Lien has been granted to the DIP Agent pursuant to the applicable Order, including the Additional Collateral Account (as defined in the DIP Credit Agreement) and all amounts and property credited thereto (including, without limitation, all products and proceeds of all of the foregoing property) and (ii) all proceeds of leaseholds, subleaseholds and similar agreements in respect of real property interests that are not subject to a valid and perfected Lien in favor of either or both of the ABL Agent and the Term Loan Agent immediately prior to the Commencement Date under applicable law.  In addition, with respect to any property excluded from the Liens in favor of the DIP Agent because of contractual restrictions (including restrictions in leaseholds and subleaseholds) preventing the grant of such Liens (and with respect to which all required consents or waivers have not been obtained), Additional Collateral shall not include the Debtors' interests in such contracts, leaseholds or subleaseholds, but shall include any proceeds or products thereof.

"**Additional Term Priority Collateral**" has the meaning set forth in Paragraph 4(b) below.

"**Adequate Protection Lien Termination Date**" means, with respect to any Class of Secured Parties, the first date on which the indebtedness secured by the adequate protection lien granted to the applicable Class of Secured Parties pursuant to the Interim Order has been irrevocably paid in cash in full or such lien is otherwise terminated, canceled or extinguished or any earlier date of a final order by a court of competition jurisdiction that such Class of Secured Parties, in its capacity as such, is not entitled to adequate protection under section 507(b) of the Bankruptcy Code.

"**Class**" refers to the determination in relation to any particular Type of Common Collateral or Additional Collateral, (i) with respect to any Secured Obligations, whether such Secured Obligations are First Priority Obligations, Second Priority Obligations, DIP Obligations, Third Priority Obligations or Fourth Priority Obligations and (ii) with respect to any Secured Party, whether such Secured Party is a First Priority Secured Party, a Second Priority Secured Party, a DIP Secured Party, a Third Priority Secured Party or a Fourth Priority Secured Party.

"**Common Collateral**" has the meaning specified in the Existing Intercreditor Agreement, provided that "Common Collateral" shall not include any Additional Collateral.

"**DIP Secured Party**" means the DIP Agent and the DIP Lenders.

"**DIP Termination Date**" means the date on which (i) the DIP Obligations (other than those that constitute taxes, costs, indemnifications, reimbursements, damages and other liabilities (excluding the principal of, and interest and premium (if any) on, and fees and expenses relating to, the DIP Obligations) in respect of which no assertion of liability (whether oral or written) and no claim or demand for payment (whether oral or written) has been made (and, in the case of DIP Obligations for indemnification, no notice for indemnification has been issued by the indemnitee) at such time) have been paid in cash in full, (ii) all commitments to extend credit under the applicable DIP Documents have been terminated and (iii) the DIP Agent has delivered a written notice to the Third Priority Representative and the Fourth Priority Representative stating that the DIP Termination Date has occurred to the satisfaction of the DIP Agent.

"**Enforcement Action**" means, with respect to any Class of Secured Obligations, (a) other than with respect to the DIP Secured Parties, any demand for payment or acceleration thereof and (b) with respect to all Classes of Secured Obligations, the exercise of any rights and remedies with respect to any Common Collateral or any Additional Collateral, as applicable, securing such obligations or the commencement or prosecution of enforcement of any such rights and remedies under the Prepetition Financing Documents or the DIP Documents, as applicable, of such Class, or applicable law, including the exercise of any rights of set-off or recoupment, and the exercise of any such rights or remedies of a secured creditor under the Uniform Commercial Code, the Bankruptcy Code or other similar

creditors' rights, bankruptcy, insolvency, reorganization or similar laws of any applicable jurisdiction.

"**First Priority Documents**" means, with respect to any Type of Common Collateral or Additional Collateral, the Prepetition Financing Documents governing the First Priority Obligations.

"**First Priority Obligations**" means (i) with respect to the ABL Priority Collateral and Additional ABL Priority Collateral, all ABL Secured Obligations and (ii) with respect to the Term Priority Collateral and Additional Term Priority Collateral, all Term Loan Secured Obligations.  To the extent any payment with respect to any First Priority Obligation (whether by or on behalf of any Debtor, as proceeds of security, enforcement of any right of setoff or otherwise) is declared to be a fraudulent conveyance or a preference in any respect set aside or required to be paid to a debtor in possession, any Second Priority Secured Party, DIP Secured Party, Third Priority Secured Party, Fourth Priority Secured Party, receiver or similar Person, then the obligation or part thereof originally intended to be satisfied shall, for the purposes of the Existing Intercreditor Agreement and the Interim Order and the rights and obligations of the Secured Parties, be deemed to be reinstated and outstanding as if such payment had not occurred.

"**First Priority Secured Parties**" means, with respect to any Type of Common Collateral or Additional Collateral, the First Priority Representative and the holders of the First Priority Obligations with respect to such Common Collateral or Additional Collateral.

"**Fourth Priority Secured Parties**" means, with respect to any Type of Common Collateral or Additional Collateral, the Convertible Notes Secured Parties.

"**Representatives**" means the ABL Agent, the Term Loan Agent, the DIP Agent, the PIK Toggle Notes Trustee and the Convertible Notes Trustee, as applicable.

"**Second Priority Documents**" means, with respect to any Type of Common Collateral or Additional Collateral, the Prepetition Financing Documents governing the Second Priority Obligations.

"**Second Priority Obligations**" means (i) with respect to the ABL Priority Collateral and the Additional ABL Priority Collateral, all Term Loan Secured Obligations and (ii) with respect to the Term Priority Collateral and the Additional Term Priority Collateral, all ABL Secured Obligations.  To the extent any payment with respect to any Second Priority Obligation (whether by or on behalf of any Debtor, as proceeds of security, enforcement of any right of setoff or otherwise) is declared to be a fraudulent conveyance or a preference in any respect, set aside or required to be paid to a debtor in possession, any First Priority Secured Party, DIP Secured Party, Third Priority Secured Party, Fourth Priority Secured Party, receiver or similar Person, then the obligation or part thereof originally intended to be satisfied shall, for the purposes of the Existing

- 3 -

Intercreditor Agreement and the Interim Order and the rights and obligations of the Secured Parties, be deemed to be reinstated and outstanding as if such payment had not occurred.

"**Second Priority Secured Parties**" means, with respect to any Type of Common Collateral or Additional Collateral, the Second Priority Representative and the holders of the Second Priority Obligations with respect to such Common Collateral or Additional Collateral.

"**Secured Obligations**"·means the First Priority Obligations, the Second Priority Obligations, the DIP Obligations, the Third Priority Obligations and the Fourth Priority Obligations.

"**Secured Parties**" means the First Priority Secured Parties, the Second Priority Secured Parties, the DIP Secured Parties, the Third Priority Secured Parties and the Fourth Priority Secured Parties.

"**Term Priority Collateral**" has the meaning specified in the Existing Intercreditor Agreement, <u>provided</u> that "Term Priority Collateral" shall not include any Additional Collateral.

"**Third Priority Documents**" mean the PIK Toggle Notes Documents.

"**Third Priority Secured Parties**" means, with respect to any Type of Common Collateral or Additional Collateral, the PIK Toggle Notes Secured Parties.

"**Type**" when used to describe (i) any Common Collateral, refers to whether such Common Collateral is ABL Priority Collateral or Term Priority Collateral and (ii) any Additional Collateral, refers to whether such Additional Collateral is Additional ABL Priority Collateral or Additional Term Priority Collateral.

2.    *Exclusive Enforcement with respect to Common Collateral.*

a)      With respect to each Type of Common Collateral, until the First Priority Obligations Payment Date, the First Priority Secured Parties shall have the exclusive right to take and continue (or refrain from taking or continuing) any Enforcement Action with respect to such Common Collateral in accordance with the applicable First Priority Documents, without any consultation with or consent of any Second Priority Secured Party, any DIP Secured Party, any Third Priority Secured Party or any Fourth Priority Secured Party with respect to such Common Collateral.    With respect to each Type of Common Collateral, upon the occurrence and during the continuance of a Cash Collateral Termination Event (and subject to the provisions of the First Priority Documents), the First Priority Representative and the other First Priority Secured Parties may take and continue any Enforcement Action with respect to the applicable First Priority Obligations and such Common Collateral in such order and manner as they may determine in their sole discretion.

- 4 -

b)      With respect to each Type of Common Collateral, after the First Priority
Obligations Payment Date but before the Second Priority Obligations Payment
Date, the Second Priority Secured Parties shall have the exclusive right to take
and continue (or refrain from taking or continuing) any Enforcement Action with
respect to such Common Collateral in accordance with the applicable Second
Priority Documents, without any consultation with or consent of any DIP Secured
Party, any Third Priority Secured Party or any Fourth Priority Secured Party with
respect to such Common Collateral.  With respect to each Type of Common
Collateral, after the First Priority Obligations Payment Date but before the Second
Priority Obligations Payment Date, upon the occurrence and during the
continuance of a Cash Collateral Termination Event (and subject to the provisions
of the Second Priority Documents), the Second Priority Representative and the
other Second Priority Secured Parties may take and continue any Enforcement
Action with respect to the applicable Second Priority Obligations and such
Common Collateral in such order and manner as they may determine in their sole
discretion.

c)      With respect to each Type of Common Collateral, after the Second Priority
Obligations Payment Date but before the DIP Termination Date, the DIP Secured
Parties shall have the exclusive right to take and continue (or refrain from taking
or continuing) any Enforcement Action with respect to such Common Collateral
in accordance with the applicable DIP Documents, without any consultation with
or consent of any Third Priority Secured Party or any Fourth Priority Secured
Party with respect to such Common Collateral.  With respect to each Type of
Common Collateral, after the Second Priority Obligations Payment Date but
before the DIP Termination Date, upon the occurrence and during the continuance
of a DIP Event of Default (and subject to the provisions of the DIP Documents),
the DIP Agent and the other DIP Secured Parties may take and continue any
Enforcement Action with respect to the DIP Obligations and such Common
Collateral in such order and manner as they may determine in their sole
discretion.

d)      With respect to each Type of Common Collateral, after the DIP Termination Date
but before the Third Priority Obligations Payment Date, the Third Priority
Secured Parties shall have the exclusive right to take and continue (or refrain from
taking or continuing) any Enforcement Action with respect to such Common
Collateral in accordance with the applicable Third Priority Documents, without
any consultation with or consent of any Fourth Priority Secured Party with respect
to such Common Collateral.  With respect to each Type of Common Collateral,
after the DIP Termination Date but before the Third Priority Obligations Payment
Date, upon the occurrence and during the continuance of a Cash Collateral
Termination Event (and subject to the provisions of the Third Priority
Documents), the Third Priority Representative and the other Third Priority
Secured Parties may take and continue any Enforcement Action with respect to
the applicable Third Priority Obligations and such Common Collateral in such
order and manner as they may determine in their sole discretion.

NAI-1500444380v11

3.  *Standstill with respect to Common Collateral.*

a)  Notwithstanding the foregoing clauses of Paragraph 2, any Second Priority Secured Party may exercise its rights and remedies in respect of the applicable Type of Common Collateral under the Second Priority Documents or applicable law after the passage of a period of [15] days (the "**Common Collateral Second Priority Standstill Period**") from the first date on which (x) such Second Priority Secured Party shall have delivered a notice in writing to the First Priority Representative of its intention to exercise such rights and remedies, which notice may only be delivered following the occurrence of and during the continuation of a Cash Collateral Termination Event, and (y) the automatic stay shall have been terminated as to the applicable Common Collateral; <u>provided</u> that, notwithstanding the foregoing, in no event shall any Second Priority Secured Party exercise or continue to exercise any such rights or remedies if, notwithstanding the expiration of the Common Collateral Second Priority Standstill Period, any First Priority Secured Party shall have commenced and be diligently pursuing the exercise of any of its rights and remedies with respect to any of such Common Collateral (prompt notice of such exercise to be given to the Second Priority Representative); and <u>provided</u>, <u>further</u>, that in any Insolvency Proceeding commenced by or against any Debtor, the Second Priority Representative and the Second Priority Secured Parties may take any action expressly permitted by and consistent with the Interim Order;

b)  Notwithstanding the foregoing clauses of Paragraph 2, any DIP Secured Party may exercise its rights and remedies in respect of the applicable Type of Common Collateral under the DIP Documents or applicable law after the passage of a period of [30] days (or, if earlier, upon the expiration or termination of the Common Collateral Third Priority Standstill Period or the Common Collateral Fourth Priority Standstill Period) (the "**Common Collateral DIP Standstill Period**") from the first date on which (x) such DIP Secured Party shall have delivered a notice in writing to the First Priority Representative and the Second Priority Representative of its intention to exercise such rights and remedies, which notice may only be delivered following the occurrence of and during the continuation of a DIP Event of Default, and (y) the automatic stay shall have been terminated as to the applicable Common Collateral; <u>provided</u> that, notwithstanding the foregoing, in no event shall any DIP Secured Party exercise or continue to exercise any such rights or remedies if, notwithstanding the expiration of the Common Collateral DIP Standstill Period, any First Priority Secured Party or Second Priority Secured Party shall have commenced and be diligently pursuing the exercise of any of its rights and remedies with respect to any of such Common Collateral (prompt notice of such exercise to be given to the DIP Agent); and <u>provided</u>, <u>further</u>, that in any Insolvency Proceeding commenced by or against any Debtor, the DIP Agent and the DIP Secured Parties may take any action expressly permitted by and consistent with the Interim Order;

c)  Notwithstanding the foregoing clauses of Paragraph 2, any Third Priority Secured Party may exercise its rights and remedies in respect of the applicable Type of

Common Collateral under the Third Priority Documents or applicable law after the passage of a period of [45] days (or, if earlier, upon the expiration or earlier termination of the Common Collateral Fourth Priority Standstill Period) (the "**Common Collateral Third Priority Standstill Period**") from the first date on which (x) such Third Priority Secured Party shall have delivered a notice in writing to the First Priority Representative, the Second Priority Representative and the DIP Agent of its intention to exercise such rights and remedies, which notice may only be delivered following the occurrence of and during the continuation of a Cash Collateral Termination Event, and (y) the automatic stay shall have been terminated as to the applicable Common Collateral; <u>provided</u> that, notwithstanding the foregoing, in no event shall any Third Priority Secured Party exercise or continue to exercise any such rights or remedies if, notwithstanding the expiration of the Common Collateral Third Priority Standstill Period, any First Priority Secured Party, Second Priority Secured Party or DIP Secured Party shall have commenced and be diligently pursuing the exercise of any of its rights and remedies with respect to any of such Common Collateral (prompt notice of such exercise to be given to the Third Priority Representative); and <u>provided</u>, <u>further</u>, that in any Insolvency Proceeding commenced by or against any Debtor, the Third Priority Representative and the Third Priority Secured Parties may take any action expressly permitted by and consistent with the Interim Order; and

d)  Notwithstanding the foregoing clauses of Paragraph 2, any Fourth Priority Secured Party may exercise its rights and remedies in respect of the applicable Type of Common Collateral under the Fourth Priority Documents or applicable law after the passage of a period of [60] days (the "**Common Collateral Fourth Priority Standstill Period**") from the first date on which (x) such Fourth Priority Secured Party shall have delivered a notice in writing to the First Priority Representative, the Second Priority Representative, the DIP Agent and the Third Priority Representative of its intention to exercise such rights and remedies, which notice may only be delivered following the occurrence of and during the continuation of a Cash Collateral Termination Event, and (y) the automatic stay shall have been terminated as to the applicable Type of Common Collateral; <u>provided</u> that, notwithstanding the foregoing, in no event shall any Fourth Priority Secured Party exercise or continue to exercise any such rights or remedies if, notwithstanding the expiration of the Common Collateral Fourth Priority Standstill Period, any First Priority Secured Party, Second Priority Secured Party, DIP Secured Party or Third Priority Secured Party shall have commenced and be diligently pursuing the exercise of any of its rights and remedies with respect to any of such Common Collateral (prompt notice of such exercise to be given to the Fourth Priority Representative); and <u>provided</u>, <u>further</u>, that in any Insolvency Proceeding commenced by or against any Debtor, the Fourth Priority Representative and the Fourth Priority Secured Parties may take any action expressly permitted by and consistent with the Interim Order.

4.    *Exclusive Enforcement with respect to Additional Collateral.*

a)    With respect to any Additional Collateral, until the DIP Termination Date, the DIP Secured Parties shall have the exclusive right to take and continue (or refrain from taking or continuing) any Enforcement Action with respect to such Additional Collateral in accordance with the applicable DIP Documents, without any consultation with or consent of any First Priority Secured Party, any Second Priority Secured Party, any Third Priority Secured Party or any Fourth Priority Secured Party with respect to such Additional Collateral.  With respect to any Additional Collateral, upon the occurrence and during the continuance of a DIP Event of Default (and subject to the provisions of the DIP Documents), the DIP Agent and the other DIP Secured Parties may take and continue any Enforcement Action with respect to the DIP Obligations and such Additional Collateral in such order and manner as they may determine in their sole discretion.

b)    With respect to any Additional Collateral, on and after the DIP Termination Date:

i)    that would have constituted Term Priority Collateral if such Additional Collateral were encumbered by a  prepetition Mortgage or was otherwise of a type described as "Term Priority Collateral" in the Existing Intercreditor Agreement) but was not perfected upon the filing of the Cases immediately ("**Additional Term Priority Collateral**"), prior to the Adequate Protection Lien Termination Date for the Term Loan Secured Parties, the Term Loan Secured Parties shall have the right to take and continue (or refrain from taking or continuing) any Enforcement Action with respect to such Additional Term Priority Collateral in accordance with the applicable Term Loan Documents (in each case, as amended, supplemented, or otherwise modified prior to the date hereof, the "**Prepetition Term Loan Documents**"), without any consultation with or consent of any ABL Secured Party, any Third Priority Secured Party or any Fourth Priority Secured Party with respect to such Additional Term Priority Collateral.  With respect to such Additional Term Priority Collateral, after the DIP Termination Date but before the Adequate Protection Lien Termination Date for the Term Loan Secured Parties, upon the occurrence and during the continuance of a Cash Collateral Termination Event (and subject to the provisions of the Prepetition Term Loan Documents), the Term Loan Secured Parties may take and continue any Enforcement Action with respect to the applicable Term Loan Secured Obligations and such Additional Term Priority Collateral in such order and manner as they may determine in their sole discretion;

ii)    that is not Additional Term Priority Collateral ("**Additional ABL Priority Collateral**"), before the Adequate Protection Lien Termination Date for the ABL Secured Parties, the ABL Secured Parties shall have the exclusive right to take and continue (or refrain from taking or continuing) any Enforcement Action with respect to such Additional ABL Priority Collateral in accordance with the applicable ABL Loan Documents (in each case, as amended, supplemented, or otherwise modified prior to the date hereof, the "**Prepetition ABL Loan Documents**"), without any

NAI-1500444380v11

consultation with or consent of any Term Loan Secured Party, any Third Priority Secured Party or any Fourth Priority Secured Party with respect to such Additional ABL Priority Collateral. With respect to such Additional ABL Priority Collateral, after the DIP Termination Date but before the Adequate Protection Lien Termination Date for the ABL Secured Parties, upon the occurrence and during the continuance of a Cash Collateral Termination Event (and subject to the provisions of the Prepetition ABL Loan Documents), the ABL Secured Parties may take and continue any Enforcement Action with respect to the applicable ABL Secured Obligations and such Additional ABL Priority Collateral in such order and manner as they may determine in their sole discretion;

iii)    that constitutes Additional ABL Priority Collateral, after the ABL Termination Date but before the Adequate Protection Lien Termination Date for the Term Loan Secured Parties, the Term Loan Secured Parties shall have the exclusive right to take and continue (or refrain from taking or continuing) any Enforcement Action with respect to such Additional ABL Priority Collateral in accordance with the applicable Prepetition Term Loan Documents, without any consultation with or consent of any Third Priority Secured Party or any Fourth Priority Secured Party with respect to such Additional ABL Priority Collateral. With respect to such Additional ABL Priority Collateral, after the ABL Termination Date but before the Adequate Protection Lien Termination Date for the Term Loan Secured Parties, upon the occurrence and during the continuance of a Cash Collateral Termination Event (and subject to the provisions of the Prepetition Term Loan Documents), the Term Loan Secured Parties may take and continue any Enforcement Action with respect to the applicable Term Loan Secured Obligations and such Additional ABL Priority Collateral in such order and manner as they may determine in their sole discretion; and

iv)    that constitutes Additional Term Priority Collateral, after the Term Loan Termination Date but before the Adequate Protection Lien Termination Date for the ABL Secured Parties, the ABL Secured Parties shall have the exclusive right to take and continue (or refrain from taking or continuing) any Enforcement Action with respect to such Additional Term Priority Collateral in accordance with the applicable Prepetition ABL Loan Documents, without any consultation with or consent of any Third Priority Secured Party or any Fourth Priority Secured Party with respect to such Additional Term Priority Collateral. With respect to such Additional Term Priority Collateral, after the Term Loan Termination Date but before the Adequate Protection Lien Termination Date for the ABL Secured Parties, upon the occurrence and during the continuance of a Cash Collateral Termination Event (and subject to the provisions of the Prepetition ABL Loan Documents), the ABL Secured Parties may take and continue any Enforcement Action with respect to the applicable ABL

NAI-1500444380v11

Secured Obligations and such Additional Term Priority Collateral in such order and manner as they may determine in their sole discretion.

c)    With respect to any Additional Collateral, after the later to occur of the ABL Termination Date and the Term Loan Termination Date (the "Prepetition Senior Facilities Termination Date") but before the Adequate Protection Lien Termination Date for the Third Priority Secured Parties, the Third Priority Secured Parties shall have the exclusive right to take and continue (or refrain from taking or continuing) any Enforcement Action with respect to such Additional Collateral in accordance with the applicable Prepetition PIK Notes Documents, without any consultation with or consent of any Fourth Priority Secured Party with respect to such Additional Collateral.  With respect to any Additional Collateral, after the Prepetition Senior Facilities Termination Date but before the Adequate Protection Lien Termination Date for the Third Priority Secured Parties, upon the occurrence and during the continuance of a Cash Collateral Termination Event (and subject to the provisions of the Prepetition PIK Notes Documents), the Third Priority Representative and the other Third Priority Secured Parties may take and continue any Enforcement Action with respect to the applicable Third Priority Obligations and such Additional Collateral in such order and manner as they may determine in their sole discretion.

5.    *Standstill with respect to Additional Collateral.*

a)    Notwithstanding the foregoing clauses of Paragraph 4, before the Adequate Protection Lien Termination Date for the First Priority Secured Parties, any First Priority Secured Party may exercise its rights and remedies in respect of the applicable Type of Additional Collateral under the First Priority Documents or applicable law after the passage of a period of [15] days (the "**Additional Collateral First Priority Standstill Period**") from the date of delivery of a notice in writing to the DIP Agent of its intention to exercise such rights and remedies, which notice may only be delivered following the occurrence of and during the continuation of a Cash Collateral Termination Event; provided that, notwithstanding the foregoing, in no event shall any First Priority Secured Party exercise or continue to exercise any such rights or remedies if, notwithstanding the expiration of the Additional Collateral First Priority Standstill Period, any DIP Secured Party shall have commenced and be diligently pursuing the exercise of any of its rights and remedies with respect to any of such Additional Collateral (prompt notice of such exercise to be given to the First Priority Representative); and provided, further, that in any Insolvency Proceeding commenced by or against any Debtor, the First Priority Representative and the First Priority Secured Parties may take any action expressly permitted by the Interim Order.

b)    Notwithstanding the foregoing clauses of Paragraph 4, before the Adequate Protection Lien Termination Date for the Second Priority Secured Parties, any Second Priority Secured Party may exercise its rights and remedies in respect of the applicable Type of Additional Collateral under the Second Priority Documents or applicable law after the passage of a period of [30] days (the "**Additional**

**Collateral Second Priority Standstill Period**") from the date of delivery of a notice in writing to the DIP Agent and the First Priority Representative of its intention to exercise such rights and remedies, which notice may only be delivered following the occurrence of and during the continuation of a Cash Collateral Termination Event; provided that, notwithstanding the foregoing, in no event shall any Second Priority Secured Party exercise or continue to exercise any such rights or remedies if, notwithstanding the expiration of the Additional Collateral Second Priority Standstill Period, any DIP Secured Party or First Priority Secured Party shall have commenced and be diligently pursuing the exercise of any of its rights and remedies with respect to any of such Additional Collateral (prompt notice of such exercise to be given to the Second Priority Representative); and provided, further, that in any Insolvency Proceeding commenced by or against any Debtor, the Second Priority Representative and the Second Priority Secured Parties may take any action expressly permitted by the Interim Order.

c)      Notwithstanding the foregoing clauses of Paragraph 4, before the Adequate Protection Lien Termination Date for the Third Priority Secured Parties, any Third Priority Secured Party may exercise its rights and remedies in respect of the applicable Type of Additional Collateral under the Third Priority Documents or applicable law after the passage of a period of [45] days (the "**Additional Collateral Third Priority Standstill Period**") from the date of delivery of a notice in writing to the DIP Agent, the First Priority Representative and the Second Priority Representative of its intention to exercise such rights and remedies, which notice may only be delivered following the occurrence of and during the continuation of a Cash Collateral Termination Event; provided that, notwithstanding the foregoing, in no event shall any Third Priority Secured Party exercise or continue to exercise any such rights or remedies if, notwithstanding the expiration of the Additional Collateral Third Priority Standstill Period, any DIP Secured Party, First Priority Secured Party or Second Priority Secured Party shall have commenced and be diligently pursuing the exercise of any of its rights and remedies with respect to any of such Additional Collateral (prompt notice of such exercise to be given to the Third Priority Representative); and provided, further, that in any Insolvency Proceeding commenced by or against any Debtor, the Third Priority Representative and the Third Priority Secured Parties may take any action expressly permitted by the Interim Order.

d)      Notwithstanding the foregoing clauses of Paragraph 4, before the Adequate Protection Lien Termination Date for the Fourth Priority Secured Parties, any Fourth Priority Secured Party may exercise its rights and remedies in respect of the applicable Type of Additional Collateral under the Fourth Priority Documents or applicable law after the passage of a period of [60] days (the "**Additional Collateral Fourth Priority Standstill Period**") from the date of delivery of a notice in writing to the DIP Agent, the  First Priority Representative, the Second Priority Representative and the Third Priority Representative of its intention to exercise such rights and remedies, which notice may only be delivered following the occurrence of and during the continuation of a Cash Collateral Termination

- 11 -

Event; _provided_ that, notwithstanding the foregoing, in no event shall any Fourth Priority Secured Party exercise or continue to exercise any such rights or remedies if, notwithstanding the expiration of the Additional Collateral Fourth Priority Standstill Period, any DIP Secured Party, First Priority Secured Party, Second Priority Secured Party or Third Priority Secured Party shall have commenced and be diligently pursuing the exercise of any of its rights and remedies with respect to any of such Additional Collateral (prompt notice of such exercise to be given to the Fourth Priority Representative); and _provided_, _further_, that in any Insolvency Proceeding commenced by or against any Debtor, the Fourth Priority Representative and the Fourth Priority Secured Parties may take any action expressly permitted by the Interim Order.

6.    _Option to Purchase._

a)    With respect to each Type of Common Collateral and Additional Collateral,

i)    prior to the First Priority Obligations Payment Date, upon the occurrence and during the continuance of a Cash Collateral Termination Event, (A) all or a portion of the Second Priority Secured Parties acting as a single group, (B) all or a portion of the DIP Secured Parties acting as a single group, (C) all or a portion of the Third Priority Secured Parties acting as a single group or (D) all or a portion of the Fourth Priority Secured Parties acting as a single group (in each case, the "**First Priority Purchasing Secured Parties**") shall have the option at any time upon prior written notice to the relevant Representatives to purchase (w) in the case of clause (A), all of the First Priority Obligations from the First Priority Secured Parties, (x) in the case of clause (B), all of the First Priority Obligations from the First Priority Secured Parties and all of the Second Priority Obligations from the Second Priority Secured Parties, (y) in the case of clause (C), all of the First Priority Obligations from the First Priority Secured Parties, all of the Second Priority Obligations from the Second Priority Secured Parties and all of the DIP Obligations from the DIP Secured Parties and (z) in the case of clause (D), all of the First Priority Obligations from the First Priority Secured Parties, all of the Second Priority Obligations from the Second Priority Secured Parties, all of the DIP Obligations from the DIP Secured Parties and all of the Third Priority Obligations from the Third Priority Secured Parties (in each case, the "**First Priority Selling Secured Parties**").  Such notice from the relevant First Priority Purchasing Secured Parties to the Representatives of the relevant First Priority Selling Secured Parties shall be irrevocable unless otherwise agreed in writing by such Representatives;

ii)    after the First Priority Obligations Payment Date and prior to the Second Priority Obligations Payment Date, upon the occurrence and during the continuance of a Cash Collateral Termination Event, (A) all or a portion of the DIP Secured Parties acting as a single group, (B) all or a portion of the Third Priority Secured Parties acting as a single group or (C) all or a

NAI-1500444380v11

portion of the Fourth Priority Secured Parties acting as a single group (in each case, the "**Second Priority Purchasing Secured Parties**") shall have the option at any time upon prior written notice to the relevant Representatives to purchase (x) in the case of clause (A), all of the Second Priority Obligations from the Second Priority Secured Parties, (y) in the case of clause (B), all of the Second Priority Obligations from the Second Priority Secured Parties and all of the DIP Obligations from the DIP Secured Parties and (z) in the case of clause (C), all of the Second Priority Obligations from the Second Priority Secured Parties, all of the DIP Obligations from the DIP Secured Parties and all of the Third Priority Obligations from the Third Priority Secured Parties (in each case, the "**Second Priority Selling Secured Parties**").  Such notice from the relevant Second Priority Purchasing Secured Parties to the Representatives of the relevant Second Priority Selling Secured Parties shall be irrevocable unless otherwise agreed in writing by such Representatives;

iii)     (1) upon (x) any submission by the DIP Agent of a credit bid in writing for any of the Debtors' assets before the applicable deadline for the submission of such bids (a "**Credit Bid**"), (y) the scheduling by the Debtors of an auction for the sale of such assets (a "**Specified Auction**") and (z) the qualification of the DIP Agent as a bidder in such auction (and upon the reasonable request by the Third Priority Secured Parties or the Fourth Priority Secured Parties, the DIP Agent will confirm whether it has so qualified as a bidder), or (2) after the Second Priority Obligations Payment Date and prior to the DIP Termination Date, upon the occurrence and during the continuance of a Cash Collateral Termination Event, (A) all or a portion of the Third Priority Secured Parties acting as a single group or (B) all or a portion of the Fourth Priority Secured Parties acting as a single group  (in such capacity, the "**DIP Purchasing Secured Parties**") shall have the option at any time upon prior written notice to the DIP Agent to purchase (x) in the case of clause (A), all of the DIP Obligations from the DIP Secured Parties and (y) in the case of clause (B), all of the DIP Obligations from the DIP Secured Parties and all of the Third Priority Obligations from the Third Priority Secured Parties (in such capacity, the "**DIP Selling Secured Parties**").  Such notice from the DIP Purchasing Secured Parties to the DIP Agent shall be irrevocable unless otherwise agreed in writing by the DIP Agent; and

iv)     after the DIP Termination Date and prior to the Third Priority Obligations Payment Date, upon the occurrence and during the continuance of a Cash Collateral Termination Event, all or a portion of the Fourth Priority Secured Parties acting as a single group (in such capacity, the "**Third Priority Purchasing Secured Parties**" and, together with the First Priority Purchasing Secured Parties, the Second Priority Purchasing Secured Parties and the DIP Purchasing Secured Parties, the "**Purchasing Secured Parties**") shall have the option at any time upon prior written notice to the Third Priority Representative to purchase all of the Third

- 13 -

Priority Obligations from the Third Priority Secured Parties (in such capacity, the "**Third Priority Selling Secured Parties**" and, together with the First Priority Selling Secured Parties, the Second Priority Selling Secured Parties and the DIP Selling Secured Parties, the "**Selling Secured Parties**"). Such notice from the Third Priority Purchasing Secured Parties to the Third Priority Representative shall be irrevocable unless otherwise agreed in writing by the Third Priority Representative.

b)    On the date (the "**Purchase Date**") specified by the relevant Purchasing Secured Parties in the notice contemplated by clauses (a)(i) through (a)(iv) above (which shall not be less than five (5) business days, nor more than twenty (20) calendar days, after the receipt by the Representatives of the relevant Selling Secured Parties of the notice of the relevant Purchasing Secured Parties' election to exercise such option and which, in the case of an election in respect of a Credit Bid, shall be the second Business Day prior to the date scheduled for the Specified Auction, as such date may be rescheduled from time to time (or, if the DIP Agent has qualified as a bidder after such date, immediately prior to the Specified Auction) or such other date agreed by such Representatives in writing, the relevant Selling Secured Parties shall sell to the relevant Purchasing Secured Parties, and the relevant Purchasing Secured Parties shall purchase (on a ratable basis in accordance with the outstanding principal amount of their respective Obligations (as defined in the applicable Prepetition Financing Documents or the DIP Documents, as applicable) or such other basis as agreed by such Purchasing Secured Parties) from the relevant Selling Secured Parties, the relevant Obligations, <u>provided</u> that, the relevant Selling Secured Parties and Purchasing Secured Parties (and the Representatives thereof) shall retain all rights to be indemnified or held harmless by the Debtors in accordance with the terms of the relevant Finance Documents but the relevant Selling Secured Parties shall not retain any rights to the security therefor (but the Selling Secured Parties shall be treated as paid in full), <u>provided</u> that, no such sale and purchase shall occur with respect to an election in respect of a Credit Bid if the DIP Agent notifies the Representative for the relevant Purchasing Secured Parties that the DIP Agent has withdrawn its Credit Bid or determined not to participate in the Specified Auction (in each case in compliance with the applicable bidding procedures) reasonably in advance of the time specified for the funding of the sale and purchase.

c)    On the Purchase Date, the relevant Purchasing Secured Parties shall (i) pay to each Representative of the relevant Selling Secured Parties for the benefit of such Selling Secured Parties as the purchase price there for the full amount of all Obligations of such Selling Secured Parties then outstanding and unpaid (including principal, interest, fees and expenses (including, without limitation, (A) the Make Whole Fee, as defined in the DIP Credit Agreement, if the Selling Secured Parties are the DIP Secured Parties, or (B) any other applicable make whole fee or premium, if the Selling Secured Parties are not the DIP Secured Parties), including reasonable attorneys' fees and legal expenses, (ii) furnish cash collateral to such Representative in a manner and in such amounts as such Representative determines is reasonably necessary to secure such Representative

and such Selling Secured Parties in connection with any issued and outstanding letters of credit, Bank Product Obligations and Cash Management Obligations (each as defined in the Prepetition ABL Credit Agreement) secured by the relevant Prepetition Financing Documents or DIP Documents, as applicable, in each case to the extent applicable, (iii) agree to reimburse such Representative and such Selling Secured Parties for any loss, cost, damage or expense (including reasonable attorneys' fees and legal expenses) in connection with any commissions, fees, costs or expenses related to any issued and outstanding letters of credit as described above and any checks or other payments provisionally credited to the Obligations of such Secured Parties, and/or as to which such Representative has not yet received final payment, (iv) agree to reimburse the such Selling Secured Parties in respect of indemnification obligations of the Debtors under the relevant Prepetition Financing Documents or DIP Documents, as applicable, as to matters or circumstances known to such Representative at the time of the purchase and sale which would reasonably be expected to result in any loss, cost, damage or expense (including reasonable attorneys' fees and legal expenses) to such Selling Secured Parties and (v) agree to indemnify and hold harmless such Selling Secured Parties from and against any loss, liability, claim, damage or expense (including reasonable fees and expenses of legal counsel) arising out of any claim asserted by a third party in respect of the Obligations of such Selling Secured Parties as a direct result of any acts by such Selling Secured Parties occurring after the date of such purchase.  Such purchase price and cash collateral shall be remitted by wire transfer in federal funds to such bank account in New York, New York as each such Representative may designate in writing for such purpose.

d)      Such purchase shall be expressly made (i) without representation or warranty of any kind by the relevant Selling Secured Parties (or the Representative thereof) and without recourse of any kind, except that such Selling Secured Parties shall represent and warrant:  (A) the amount of the Obligations being purchased from it and (B) that such Selling Secured Parties are the sole legal and beneficial owner of such Obligations and have the right to assign such Obligations and the assignment is duly authorized and (ii) pursuant to definitive documentation reasonably acceptable to the relevant Selling Secured Parties and Purchasing Secured Parties.

7.      *Application of Proceeds*

a)      All proceeds of the ABL Priority Collateral (including any interest earned thereon) resulting from any Enforcement Action, and whether or not pursuant to an Insolvency Proceeding, shall be distributed as follows:

        *first*, to the ABL Agent to be applied in accordance with Section 8.03 of the Prepetition ABL Credit Agreement until the ABL Termination Date has occurred;

NAI-1500444380v11

*second*, to the Term Loan Agent to be applied in accordance with Section 8.03 of the Prepetition Term Loan Agreement until the Term Loan Termination Date has occurred;

*third*, to the DIP Agent to be applied in accordance with Section 8.03 of the DIP Credit Agreement (or any corresponding provision with respect to any replacement DIP Credit Agreement) until the DIP Termination Date has occurred;

*fourth*, to the PIK Toggle Notes Trustee to be applied in accordance with Section 8.03 of the Prepetition PIK Notes Indenture until the PIK Toggle Notes Termination Date has occurred;

*fifth*, to the Convertible Notes Trustee to be applied in accordance with Section 8.03 of the Prepetition Convertible Notes Indenture until the Convertible Notes Termination Date has occurred; and

*finally*, to the relevant Debtor, or as a court of competent jurisdiction may direct.

b)    All proceeds of the Term Priority Collateral (including any interest earned thereon) resulting from any Enforcement Action, and whether or not pursuant to an Insolvency Proceeding, shall be distributed as follows:

*first*, to the Term Loan Agent to be applied in accordance with Section 8.03 of the Prepetition Term Loan Agreement until the Term Loan Termination Date has occurred;

*second*, to the ABL Agent to be applied in accordance with Section 8.03 of the Prepetition ABL Credit Agreement until the ABL Termination Date has occurred;

*third*, to the DIP Agent to be applied in accordance with Section 8.03 of the DIP Credit Agreement (or any corresponding provision with respect to any replacement DIP Credit Agreement) until the DIP Termination Date has occurred;

*fourth*, to the PIK Toggle Notes Trustee to be applied in accordance with Section 8.03 of the Prepetition PIK Notes Indenture until the PIK Toggle Notes Termination Date has occurred;

*fifth*, to the Convertible Notes Trustee to be applied in accordance with Section 8.03 of the Prepetition Convertible Notes Indenture until the Convertible Notes Termination Date has occurred; and

*finally*, to the relevant Debtor, or as a court of competent jurisdiction may direct.

c)      All proceeds of the Additional Collateral (including any interest earned thereon) resulting from any Enforcement Action, and whether or not pursuant to an Insolvency Proceeding, shall be distributed as follows:

*first*, to the DIP Agent to be applied in accordance with Section 8.03 of the DIP Credit Agreement (or any corresponding provision with respect to any replacement DIP Credit Agreement) until the DIP Termination Date has occurred;

*second*, in the manner set forth in the Existing Intercreditor Agreement as and to the extent applicable, subject to any all rights and defenses available thereunder and under applicable law; and

*third*, after indefeasible payment in full of all First Priority Secured Obligations, Second Priority Secured Obligations, DIP Secured Obligations, Third Priority Secured Obligations and Fourth Priority Secured Obligations, to the relevant Debtor, or as a court of competent jurisdiction may direct.

8.      *Turnover Provisions with respect to Common Collateral*

a)      With respect to each Type of Common Collateral, until the occurrence of the First Priority Obligations Payment Date, no Second Priority Secured Party, DIP Secured Party, Third Priority Secured Party or Fourth Priority Secured Party may accept any such Common Collateral, including any such Common Collateral constituting proceeds, in satisfaction, in whole or in part, of the Second Priority Secured Obligations, DIP Obligations, Third Priority Secured Obligations or Fourth Priority Secured Obligations, as the case may be, in violation of Paragraph 7(a) or 7(b). Any Common Collateral received by a Second Priority Secured Party, DIP Secured Party, Third Priority Secured Party or Fourth Priority Secured Party that is not permitted to be received pursuant to the preceding sentence shall be segregated and held in trust and promptly turned over to the First Priority Representative to be applied in accordance with Paragraph 7(a) or 7(b), as the case may be, in the same form as received, with any necessary endorsements, and each Second Priority Secured Party, the DIP Agent, each Third Priority Secured Party and each Fourth Priority Secured Party hereby authorizes the First Priority Representative to make any such endorsements as agent for the Second Priority Representative, the DIP Agent, the Third Priority Representative and the Fourth Priority Representative (which authorization, being coupled with an interest, is irrevocable). Upon the turnover of such Common Collateral as contemplated by the immediately preceding sentence, the Second Priority Obligations, the DIP Obligations, the Third Priority Obligations or the Fourth Priority Obligations, as the case may be, purported to be satisfied by the payment of such Common Collateral shall be immediately reinstated in full as though such payment had never occurred.

- 17 -

b)      With respect to each Type of Common Collateral, after the First Priority Obligations Payment Date and prior to the Second Priority Obligations Payment Date, no DIP Secured Party, Third Priority Secured Party or Fourth Priority Secured Party may accept any such Common Collateral, including any such Common Collateral constituting proceeds, in satisfaction, in whole or in part, of the DIP Obligations, Third Priority Secured Obligations or Fourth Priority Secured Obligations in violation of Paragraph 7(a) or 7(b).   Any Common Collateral received by a DIP Secured Party, a Third Priority Secured Party or a Fourth Priority Secured Party that is not permitted to be received pursuant to the preceding sentence shall be segregated and held in trust and promptly turned over to the Second Priority Representative to be applied in accordance with Paragraph 7(a) or 7(b), as the case may be, in the same form as received, with any necessary endorsements, and each DIP Secured Party, Third Priority Secured Party and Fourth Priority Secured Party hereby authorizes the Second Priority Representative to make any such endorsements as agent for the DIP Agent, Third Priority Representative and the Fourth Priority Representative (which authorization, being coupled with an interest, is irrevocable).   Upon the turnover of such Common Collateral as contemplated by the immediately preceding sentence, the DIP Obligations, the Third Priority Obligations and Fourth Priority Obligations purported to be satisfied by the payment of such Common Collateral shall be immediately reinstated in full as though such payment had never occurred.

c)      With respect to each Type of Common Collateral, after the Second Priority Obligations Payment Date and prior to the DIP Termination Date, no Third Priority Secured Party or Fourth Priority Secured Party may accept any such Common Collateral, including any such Common Collateral constituting proceeds, in satisfaction, in whole or in part, of the Third Priority Secured Obligations or Fourth Priority Secured Obligations in violation of Paragraph 7(a) or 7(b).   Any Common Collateral received by a Third Priority Secured Party or a Fourth Priority Secured Party that is not permitted to be received pursuant to the preceding sentence shall be segregated and held in trust and promptly turned over to the DIP Agent to be applied in accordance with Paragraph 7(a) or 7(b), as the case may be, in the same form as received, with any necessary endorsements, and each Third Priority Secured Party and Fourth Priority Secured Party hereby authorizes the DIP Agent to make any such endorsements as agent for the Third Priority Representative and the Fourth Priority Representative (which authorization, being coupled with an interest, is irrevocable).   Upon the turnover of such Common Collateral as contemplated by the immediately preceding sentence, the Third Priority Obligations and Fourth Priority Obligations purported to be satisfied by the payment of such Common Collateral shall be immediately reinstated in full as though such payment had never occurred.

d)      With respect to each Type of Common Collateral, after the DIP Termination Date and prior to the Third Priority Obligations Payment Date, no Fourth Priority Secured Party may accept any such Common Collateral, including any such Common Collateral constituting proceeds, in satisfaction, in whole or in part, of

- 18 -

the Fourth Priority Secured Obligations in violation of Paragraph 7(a) or 7(b). Any Common Collateral received by a Fourth Priority Secured Party that is not permitted to be received pursuant to the preceding sentence shall be segregated and held in trust and promptly turned over to the Third Priority Representative to be applied in accordance with Paragraph 7(a) or 7(b), as the case may be, in the same form as received, with any necessary endorsements, and each Fourth Priority Secured Party hereby authorizes the Third Priority Representative to make any such endorsements as agent for the Fourth Priority Representative (which authorization, being coupled with an interest, is irrevocable).  Upon the turnover of such Common Collateral as contemplated by the immediately preceding sentence, the Fourth Priority Obligations purported to be satisfied by the payment of such Common Collateral shall be immediately reinstated in full as though such payment had never occurred.

9.      *Turnover Provisions with respect to Additional Collateral.*

   a)      With respect to any Additional Collateral, until the occurrence of the DIP Termination Date, no First Lien Secured Party, Second Priority Secured Party, Third Priority Secured Party or Fourth Priority Secured Party may accept any such Additional Collateral, including any such Additional Collateral constituting proceeds, in satisfaction, in whole or in part, of the First Priority Secured Obligations, Second Priority Secured Obligations, Third Priority Secured Obligations or Fourth Priority Secured Obligations, as the case may be, in violation of Paragraph 7(c).  Any Additional Collateral received by a First Priority Secured Party, Second Priority Secured Party, Third Priority Secured Party or Fourth Priority Secured Party that is not permitted to be received pursuant to the preceding sentence shall be segregated and held in trust and promptly turned over to the DIP Agent to be applied in accordance with Paragraph 7(c), in the same form as received, with any necessary endorsements, and each First Priority Secured Party, each Second Priority Secured Party, each Third Priority Secured Party and each Fourth Priority Secured Party hereby authorizes the DIP Agent to make any such endorsements as agent for the First Priority Representative, the Second Priority Representative, the Third Priority Representative and the Fourth Priority Representative (which authorization, being coupled with an interest, is irrevocable).  Upon the turnover of such Additional Collateral as contemplated by the immediately preceding sentence, the First Priority Obligations, the Second Priority Obligations, the Third Priority Obligations or the Fourth Priority Obligations, as the case may be, purported to be satisfied by the payment of such Additional Collateral shall be immediately reinstated in full as though such payment had never occurred.

10.     *Bailee for Perfection.*

   a)      With respect to each Type of Common Collateral, each Representative hereby acknowledges that, to the extent that it holds, or a third party holds on its behalf, physical possession of or "control" (as defined in the Uniform Commercial Code) over such Common Collateral pursuant to the First Priority Documents, such

- 19 -

possession or control is also for the benefit of each other Representative for the other applicable Secured Parties, but solely to the extent required to perfect their security interest by possession or control in such Common Collateral as a gratuitous bailee for the other Secured Parties (such bailment being intended, among other things, to satisfy the requirements of Section 8-l06(d)(3), 8-30l(a)(2) and 9-313(c) of the UCC). Nothing in the preceding sentence shall be construed to impose any duty on the any such Representative (or any third party acting on its behalf) with respect to such Common Collateral or provide any other Representative or any other Secured Party with respect to such Common Collateral with any rights with respect to such Common Collateral beyond those specified in the Interim Order, the Existing Intercreditor Agreement and the First Priority Documents, the Second Priority Documents, the DIP Documents, the Third Priority Documents or the Fourth Priority Documents, as the case may be, provided that with respect to each Type of Common Collateral, (i) promptly upon the First Priority Obligations Payment Date and prior to the Second Priority Obligations Payment Date, the First Priority Representative shall (x) deliver to the Second Priority Representative (and each Debtor hereby directs such First Priority Representative to so deliver and each of the Representatives (on behalf of itself and the other applicable Secured Parties), consents to such delivery) any stock certificates, promissory notes or other possessory collateral evidencing or constituting such Common Collateral in its possession together with any necessary endorsements or (y) direct and deliver such Common Collateral as a court of competent jurisdiction otherwise directs, and deliver any other notices or documents as the Second Priority Representative may reasonably request, all at the Debtors' sole cost and expense, (ii) promptly upon the Second Priority Obligations Payment Date and prior to the DIP Termination Date, the Second Priority Representative shall (x) deliver to the DIP Agent (and each Debtor hereby directs such Second Priority Representative to so deliver and each other Representative (on behalf of itself and the other Secured Parties) consents to such delivery), any stock certificates, promissory notes or other possessory collateral evidencing or constituting such Common Collateral in its possession together with any necessary endorsements or (y) direct and deliver such Common Collateral as a court of competent jurisdiction otherwise directs, and deliver any other notices or documents as the DIP Agent may reasonably request, all at the Debtors' sole cost and expense, (iii) promptly upon the DIP Termination Date and prior to the Third Priority Obligations Payment Date, the DIP Agent shall (x) deliver to the Third Priority Representative (and each Debtor hereby directs such DIP Agent to so deliver and the Fourth Priority Representative (on behalf of itself and the other Fourth Priority Secured Parties) consents to such delivery), any stock certificates, promissory notes or other possessory collateral evidencing or constituting such Common Collateral in its possession together with any necessary endorsements or (y) direct and deliver such Common Collateral as a court of competent jurisdiction otherwise directs, and deliver any other notices or documents as the Third Priority Representative may reasonably request, all at the Debtors' sole cost and expense and (iv) after the Third Priority Obligations Payment Date, the Third Priority Representative shall (x) to the extent any Fourth Priority Obligations

- 20 -

remain outstanding, deliver to the Fourth Priority Representative (and each Debtor hereby directs such Third Priority Representative to so deliver), any stock certificates, promissory notes or other possessory collateral evidencing or constituting such Common Collateral in its possession together with any necessary endorsements or (y) direct and deliver such Common Collateral as a court of competent jurisdiction otherwise directs, and deliver any other notices or documents as the Fourth Priority Representative may reasonably request, all at the Debtors' sole cost and expense.

b) With respect to Additional Collateral, the DIP Agent hereby acknowledges that, to the extent that it holds, or a third party holds on its behalf, physical possession of or "control" (as defined in the Uniform Commercial Code) over such Additional Collateral pursuant to the DIP Documents, such possession or control is also for the benefit of the Prepetition Secured Parties, but solely to the extent required to perfect their security interest by possession or control in such Additional Collateral as a gratuitous bailee for the Prepetition Secured Parties (such bailment being intended, among other things, to satisfy the requirements of Section 8-l06(d)(3), 8-30l(a)(2) and 9-313(c) of the UCC).  Nothing in the preceding sentence shall be construed to impose any duty on the DIP Agent (or any third party acting on its behalf) with respect to such Additional Collateral or provide any Prepetition Secured Party with respect to such Additional Collateral with any rights with respect to such Additional Collateral beyond those specified in the Interim Order, provided that with respect to any Additional Collateral, after the DIP Termination Date, the DIP Agent shall (x) deliver to the First Priority Representative (for the benefit of all other Prepetition Secured Parties) (and each Debtor hereby directs the DIP Agent to so deliver and the First Priority Representative (on behalf of itself and the other First Priority Secured Parties), the Second Priority Representative (on behalf of itself and the other Second Priority Secured Parties),  the Third Priority Representative (on behalf of itself and the other Third Priority Secured Parties) and the Fourth Priority Representative (on behalf of itself and the other Fourth Priority Secured Parties) consent to such delivery) at the Debtors' sole cost and expense, any stock certificates, promissory notes or other possessory collateral evidencing or constituting such Additional Collateral in its possession together with any necessary endorsements or (y) direct and deliver such Additional Collateral as a court of competent jurisdiction otherwise directs.

c) Paragraphs 10(a) and 10(b) are intended solely to effectuate the respective Lien priorities as between the Secured Parties and shall not impose on any Secured Party any obligations in respect of the disposition of any Common Collateral or Additional Collateral (or any proceeds thereof) that would conflict with prior perfected Liens or any claims thereon in favor of any other Person that is not a Secured Party.

d) Other than as set forth in the provisos in Paragraphs 10(a) and 10(b), any Secured Party, with physical possession of or control over Common Collateral or Additional Collateral shall not have any duty or liability to protect or preserve any

- 21 -

rights pertaining to any of such Common Collateral or Additional Collateral, as applicable, and, except for gross negligence or willful misconduct as determined pursuant to a final non-appealable order of a court of competent jurisdiction, each Secured Party hereby waives and releases such Person from all claims and liabilities arising pursuant to such Person's role as bailee with respect to such Common Collateral or Additional Collateral, as applicable.

11.    *Credit Bidding*.   Each Secured Party shall expressly have the right to bid or credit bid any of its Secured Obligations for or purchase the Additional Collateral or the Common Collateral at any public, private or judicial foreclosure or sale of any Additional Collateral or Common Collateral (including a "partial credit bid") or in an Insolvency Proceeding or otherwise; <u>provided</u> that (a) any such credit bid or partial credit bid of the DIP Obligations must provide for the payment in full in cash of the First Priority Obligations and the Second Priority Obligations on closing of any resulting disposition (to the extent then outstanding), (b) any such credit bid or partial credit bid of Third Priority Obligations must provide for the payment in full in cash of the First Priority Obligations, the Second Priority Obligations and the DIP Obligations on closing of any resulting disposition (in each case, to the extent then outstanding) and (c) any such credit bid or partial credit bid of Fourth Priority Obligations must provide for the payment in full in cash of the First Priority Obligations, the Second Priority Obligations, the DIP Obligations and the Third Priority Obligations on closing of any resulting disposition (in each case, to the extent then outstanding).

12.    *Access to Additional Collateral by ABL Agent*.

a)    If the ABL Agent commences any action or proceeding with respect to any of its rights or remedies (including any action of foreclosure), enforcement, collection or execution with respect to the ABL Priority Collateral ("**ABL Priority Collateral Enforcement Actions**") or if the DIP Agent commences any action or proceeding with respect to any of its rights or remedies (including, but not limited to, any action of foreclosure), enforcement, collection or execution with respect to the Additional Collateral and the DIP Agent (or a purchaser at a foreclosure sale conducted in foreclosure of the DIP Agent's Liens) takes actual or constructive possession of the Additional Collateral of any Grantor ("**Additional Collateral Enforcement Actions**"), then (1) if the ABL Agent has commenced an ABL Priority Collateral Enforcement Action, the ABL Agent shall furnish the DIP Agent with prompt written notice of the commencement of such action (the "**ABL Priority Collateral Enforcement Action**") and (2) in all cases, the DIP Agent shall (x) cooperate with the ABL Agent (and with its officers, employees, representatives and agents) in its efforts to conduct ABL Priority Collateral Enforcement Actions in the ABL Priority Collateral and to finish any work-in-process and process, ship, produce, store, complete, supply, lease, sell or otherwise handle, deal with, assemble or dispose of, in any lawful manner, the ABL Priority Collateral, (y) not hinder or restrict in any respect the ABL Agent from conducting ABL Priority Collateral Enforcement Actions in the ABL Priority Collateral or from finishing any work-in-process or processing, shipping, producing, storing, completing, supplying, leasing, selling or otherwise handling,

dealing with, assembling or disposing of, in any lawful manner, the ABL Priority Collateral and (z) permit the ABL Agent, its employees, agents, advisers and representatives, at the cost and expense of the ABL Secured Parties, to enter upon and use the Additional Collateral, for a period commencing on (I) the earlier of the date of the initial ABL Priority Collateral Enforcement Action or the date of delivery of the ABL Priority Collateral Enforcement Action Notice, as the case may be, and (II) ending on the earlier of the date occurring 120 days thereafter and the date on which all ABL Priority Collateral (other than ABL Priority Collateral abandoned by the ABL Agent in writing) has been sold or disposed of (such period, as the same may be extended with the written consent of the DIP Agent, the "**ABL Priority Collateral Processing and Sale Period**"),

provided, however, that nothing contained in this Agreement shall restrict the rights of the DIP Agent from selling, assigning or otherwise transferring any Additional Collateral prior to the expiration of such ABL Priority Collateral Processing and Sale Period if the purchaser, assignee or transferee thereof agrees in writing (for the benefit of the ABL Agent and the ABL Secured Parties) to be bound by the provisions of this Section 12. If any stay or other order prohibiting the exercise of remedies with respect to the ABL Priority Collateral has been entered by a court of competent jurisdiction, such ABL Priority Collateral Processing and Sale Period shall be tolled during the pendency of any such stay or other order.

b)      During the period of actual occupation, use and/or control by the ABL Secured Parties and/or the ABL Agent (or their respective employees, agents, advisers and representatives) of any Additional Collateral, the ABL Secured Parties and the ABL Agent shall be obligated to repair at their expense any physical damage to such Additional Collateral resulting from such occupancy, use or control, and to leave such Additional Collateral in substantially the same condition as it was at the commencement of such occupancy, use or control, ordinary wear and tear excepted. Notwithstanding the foregoing, in no event shall the ABL Secured Parties or the ABL Agent have any liability to the DIP Secured Parties pursuant to this Section 12 as a result of any condition (including any environmental condition, claim or liability) on or with respect to the Additional Collateral existing prior to the date of the exercise by the ABL Secured Parties (or the ABL Agent, as the case may be) of their rights under this Section 12 and the ABL Secured Parties shall have no duty or liability to maintain the Additional Collateral in a condition or manner better than that in which it was maintained prior to the use thereof by the ABL Secured Parties, or for any diminution in the value of the Additional Collateral that results from ordinary wear and tear resulting from the use of the Additional Collateral by the ABL Secured Parties in the manner and for the time periods specified under this Section 12. Without limiting the rights granted in this Section 12, the ABL Secured Parties and the ABL Agent shall cooperate with the DIP Secured Parties in connection with any efforts made by the DIP Secured Parties to sell the Additional Collateral.

13.     *Access to Additional Collateral by DIP Agent or Term Loan Agent.*

a)      If the DIP Agent commences any action or proceeding with respect to any of its rights or remedies (including any action of foreclosure), enforcement, collection or execution with respect to the Additional ABL Priority Collateral ("**Additional ABL Priority Collateral Enforcement Actions**") or if the Term Loan Agent commences any action or proceeding with respect to any of its rights or remedies (including, but not limited to, any action of foreclosure), enforcement, collection or execution with respect to the Additional Collateral and the Term Loan Agent (or a purchaser at a foreclosure sale conducted in foreclosure of the Term Loan Agent's Liens) takes actual or constructive possession of the Additional ABL Priority Collateral of any Grantor ("**Additional Collateral Enforcement Actions**"), then (1) if the DIP Agent has commenced a DIP Priority Collateral Enforcement Action, the DIP Agent shall furnish the Term Loan Agent with prompt written notice of the commencement of such action (the "**Additional ABL Priority Collateral Enforcement Action**") and (2) in all cases, the Term Loan Agent shall (x) cooperate with the ABL Agent (and with its officers, employees, representatives and agents) in its efforts to conduct Additional ABL Priority Collateral Enforcement Actions in the Additional ABL Priority Collateral and to finish any work-in-process and process, ship, produce, store, complete, supply, lease, sell or otherwise handle, deal with, assemble or dispose of, in any lawful manner, the Additional ABL Priority Collateral, (y) not hinder or restrict in any respect the DIP Agent from conducting Additional ABL Priority Collateral Enforcement Actions in the Additional ABL Priority Collateral or from finishing any work-in-process or processing, shipping, producing, storing, completing, supplying, leasing, selling or otherwise handling, dealing with, assembling or disposing of, in any lawful manner, the Additional ABL Priority Collateral and (z) permit the DIP Agent, its employees, agents, advisers and representatives, at the cost and expense of the DIP Secured Parties, to enter upon and use the Additional Collateral, for a period commencing on (I) the earlier of the date of the initial Additional ABL Priority Collateral Enforcement Action or the date of delivery of the Additional ABL Priority Collateral Enforcement Action Notice, as the case may be, and (II) ending on the earlier of the date occurring 120 days thereafter and the date on which all Additional ABL Priority Collateral (other than Additional ABL Priority Collateral abandoned by the DIP Agent in writing) has been sold or disposed of (such period, as the same may be extended with the written consent of the Term Loan Agent, the "**Additional ABL Priority Collateral Processing and Sale Period**"),

provided, however, that nothing contained in this Agreement shall restrict the rights of the Term Agent from selling, assigning or otherwise transferring any Term Priority Collateral prior to the expiration of such Additional ABL Priority Collateral Processing and Sale Period if the purchaser, assignee or transferee thereof agrees in writing (for the benefit of the DIP Agent and the DIP Secured Parties) to be bound by the provisions of this Section 12.  If any stay or other order prohibiting the exercise of remedies with respect to the Additional ABL Priority Collateral has been entered by a court of competent jurisdiction, such Additional ABL Priority Collateral Processing and Sale Period shall be tolled during the pendency of any such stay or other order.

NAI-1500444380v11

b)      During the period of actual occupation, use and/or control by the Additional ABL Secured Parties and/or the Term  Agent (or their respective employees, agents, advisers and representatives) of any Term Priority Collateral, the ABL Secured Parties and the ABL Agent shall be obligated to repair at their expense any physical damage to such Term Priority Collateral resulting from such occupancy, use or control, and to leave such Term Priority Collateral in substantially the same condition as it was at the commencement of such occupancy, use or control, ordinary wear and tear excepted.  Notwithstanding the foregoing, in no event shall the DIP Secured Parties or the Term Loan Agent have any liability to the Term Secured Parties pursuant to this Section 12 as a result of any condition (including any environmental condition, claim or liability) on or with respect to the Term Priority Collateral existing prior to the date of the exercise by the DIP Secured Parties (or the DIP Agent, as the case may be) of their rights under this Section 12 and the DIP Secured Parties shall have no duty or liability to maintain the Term Priority Collateral in a condition or manner better than that in which it was maintained prior to the use thereof by the DIP Secured Parties, or for any diminution in the value of the Term Priority Collateral that results from ordinary wear and tear resulting from the use of the Term Priority Collateral by the DIP Secured Parties in the manner and for the time periods specified under this Section 12.

14.     In connection with any asset sale by a Debtor that includes both Common Collateral and Additional Collateral, the parties hereto will cooperate reasonably to allocate the consideration for such sale to the Common Collateral and the Additional Collateral.

15.     Upon the Adequate Protection Lien Termination Date with respect to the applicable Class, any adequate protection liens or adequate protection claims held by the applicable Class shall be deemed terminated, canceled and extinguished.

NAI-1500444380v11

## Exhibit 2

### Budget

The Great Atlantic and Pacific Tea Company
25-Week Cash Flow Model
($ in Millions)

| | FY15 P6 | | | | FY15 P7 | | | | FY15 P8 | | | | FY15 P9 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Period | Period 6 | Period 6 | Period 6 | Period 6 | Period 7 | Period 7 | Period 7 | Period 7 | Period 8 | Period 8 | Period 8 | Period 8 | Period 9 | |
| Actual/Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | |
| Fiscal Week | Week 21 | Week 22 | Week 23 | Week 24 | Week 25 | Week 26 | Week 27 | Week 28 | Week 29 | Week 30 | Week 31 | Week 32 | Week 33 | 13 Weeks |
| Week Ending | 25-Jul | 1-Aug | 8-Aug | 15-Aug | 22-Aug | 29-Aug | 5-Sep | 12-Sep | 19-Sep | 26-Sep | 3-Oct | 10-Oct | 17-Oct | Through 17-Oct |
| Forecast Week | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 Tier 1 Auction | Week 10 | Week 11 Tier 1 Sale | Week 12 | Week 13 | |
| | BX Filing | | | | | | | | | | | | | |
| Memo: Store Merch Sales Comp | -11.8% | -10.3% | -10.4% | -10.7% | -10.5% | -10.5% | -11.8% | -6.9% | -11.0% | -11.4% | -11.4% | -11.7% | -11.4% | -10.8% |
| Memo: Store Count | 296 | 296 | 296 | 295 | 295 | 295 | 270 | 270 | 270 | 270 | 270 | 252 | 234 | 234 |
| Operating Receipts | 94.9 | 98.7 | 102.2 | 100.8 | 96.8 | 97.5 | 97.1 | 97.0 | 92.0 | 89.2 | 91.9 | 86.8 | 76.0 | 1,322.5 |
| Operating Disbursements | | | | | | | | | | | | | | |
| Merchandise Payments (C&S and DSD/Other Merch.) | 69.9 | 70.4 | 64.9 | 61.9 | 63.5 | 67.6 | 67.7 | 62.2 | 62.8 | 65.7 | 65.7 | 58.2 | 49.1 | 901.4 |
| Payroll/Benefits | 22.0 | 14.9 | 16.0 | 19.6 | 20.3 | 14.7 | 17.3 | 12.8 | 19.6 | 17.6 | 17.7 | 12.5 | 18.0 | 242.7 |
| Other Operating Expenses | 15.1 | 25.3 | 8.6 | 8.6 | 11.0 | 12.7 | 23.3 | 8.2 | 8.0 | 15.7 | 12.7 | 5.5 | 5.1 | 168.4 |
| Subtotal | 107.0 | 110.5 | 89.6 | 90.1 | 94.8 | 95.0 | 108.3 | 83.2 | 90.4 | 99.1 | 96.1 | 76.1 | 72.2 | 1,312.5 |
| Operating Cash Flow | (12.1) | (11.9) | 12.7 | 10.7 | 1.9 | 2.5 | (11.1) | 13.8 | 1.6 | (9.9) | (4.2) | 10.6 | 3.8 | 9.9 |
| Non-Operating & Ch. 11 Disbursements/(Receipts) | | | | | | | | | | | | | | |
| Maintenance Capital Expenditures | 0.7 | 0.7 | 0.7 | 0.7 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.5 | 9.0 |
| Interest /Fees | 1.3 | 2.3 | 0.1 | - | 1.3 | - | 6.7 | - | - | - | 3.8 | - | - | 15.9 |
| Asset Sales/Other Proceeds | - | - | - | (5.9) | - | - | (8.9) | (0.9) | - | - | - | (213.1) | (119.9) | (350.4) |
| Professional Fees | 2.2 | 0.2 | - | - | 1.0 | 4.4 | 0.2 | - | - | - | 6.4 | 5.2 | - | 23.8 |
| Other Non-Operating and Ch. 11 Disbursements | 15.0 | 3.9 | 0.1 | 0.6 | 0.1 | 0.7 | 13.4 | - | - | 0.6 | 6.2 | 4.3 | 4.2 | 50.7 |
| Subtotal | 19.2 | 7.2 | 0.9 | (4.6) | 3.0 | 5.8 | 12.0 | (0.3) | 0.6 | 0.6 | 17.0 | (203.1) | (115.2) | (251.1) |
| Net Cash Flow | (31.2) | (19.1) | 11.8 | 15.3 | (1.0) | (3.3) | (23.2) | 14.1 | 1.0 | (10.5) | (21.2) | 213.7 | 119.0 | 261.1 |
| Beginning Cash Balance - Bank | 36.6 | 54.8 | 45.7 | 45.7 | 62.2 | 98.2 | 90.8 | 79.3 | 82.6 | 84.7 | 74.7 | 55.9 | 83.3 | 36.4 |
| Net Cash Flow | (31.2) | (19.1) | 11.8 | 15.3 | (1.0) | (3.3) | (23.2) | 14.1 | 1.0 | (10.5) | (21.2) | 213.7 | 119.0 | 261.1 |
| Pre petition Debt Borrowings/(Repayments & LC Cash Collateralization) | - | - | - | - | (12.8) | (3.5) | - | - | - | - | - | (182.9) | (119.9) | (319.0) |
| DIP Draw/(Repayment) | 50.0 | - | - | - | 50.0 | - | - | - | - | - | - | - | - | 100.0 |
| Store Cash Reclass to Bank Cash | - | - | - | 0.0 | - | - | 1.7 | - | - | - | - | 2.4 | 2.0 | 6.2 |
| Change in Float | (0.5) | 9.9 | (11.8) | 1.3 | (0.3) | (0.5) | 9.9 | (10.7) | 1.1 | 0.4 | 2.4 | (5.9) | 0.2 | (0.1) |
| Ending Available Cash Balance - Bank | 54.8 | 45.7 | 45.7 | 62.2 | 98.2 | 90.8 | 79.3 | 82.6 | 84.7 | 74.7 | 55.9 | 83.3 | 84.6 | 84.6 |
| Less: Check Float | 12.5 | 22.4 | 10.6 | 11.9 | 11.6 | 11.0 | 21.0 | 10.2 | 11.4 | 11.8 | 14.2 | 8.3 | 8.5 | 8.5 |
| Ending Available Cash Balance - Book | 42.4 | 23.3 | 35.1 | 50.4 | 86.6 | 79.8 | 58.3 | 72.4 | 73.4 | 62.9 | 41.7 | 75.0 | 76.1 | 76.1 |

## Exhibit 3

**2012 Confirmation Order Excerpts**

WEIL:\95410057\1\50482.0004

114.    In accordance with the terms of Article IV.J of the Plan, the Reorganized Debtors and/or NewCo shall authorize, issue and distribute, pursuant to the Plan and the Securities Purchase Agreements, the New Second Lien Notes, the New Convertible Third Lien Notes, the NewCo Equity, the Investment Warrants, the new common stock of Reorganized A&P and any other Securities to be authorized, issued and distributed pursuant to the Plan and Securities Purchase Agreements, and the Debtors and the Reorganized Debtors as the case may be shall be authorized to execute and deliver all documentation related thereto.    Upon execution and delivery by the Debtors or Reorganized Debtors, as applicable, of the foregoing documents, or issuance of the Securities related thereto, as the case may be, such documents and Securities shall be deemed validly executed and delivered and deemed to constitute valid, binding and enforceable agreements and obligations of the Reorganized Debtors and are not in conflict with any applicable laws.    Upon issuance, the NewCo Equity and the new common stock of Reorganized A&P issued to NewCo, including without limitation, any capital stock of Reorganized A&P or NewCo shall be deemed pursuant to this Order, duly authorized, validly

53

issued, fully paid and non-assessable under all applicable laws. In addition, any capital stock issued pursuant to, including by way of conversion or exercise, the Investment Warrants, the New Second Lien Notes, the New Convertible Third Lien Notes, and any documents related thereto, are hereby deemed duly authorized, and, upon issuance, are deemed validly issued, fully-paid and non-assessable under all applicable laws.

115.     The Liens contemplated by and related to the New Second Lien Notes and the New Convertible Third Lien Notes, are valid, binding and enforceable Liens on the collateral specified in the relevant agreements executed by the Reorganized Debtors in connection with the New Second Lien Notes and the New Convertible Third Lien Notes. The guarantees, mortgages, pledges, Liens, and other security interests granted pursuant to or in connection with the New Second Lien Notes and the New Convertible Third Lien Notes, are granted in good faith as an inducement to the holders of such notes to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, and shall not otherwise be subject to avoidance, and the priorities of such Liens and security interests shall be as set forth in the intercreditor agreements and other definitive documentation executed in connection with the New Second Lien Notes and the New Convertible Third Lien Notes.

117.    Any provision in any of the Debtors' leases that purports to require the consent of the lessor thereunder in order for the applicable loan party to mortgage, pledge or collaterally assign such leases (or to restrict, prohibit or void any such mortgage, pledge or collateral assignment) is hereby (and as additionally set forth in paragraph 112 of this Confirmation Order) invalidated for the sole and limited purpose of allowing the Debtors' leasehold interests to be included in the collateral security of the New Second Lien Notes and New Convertible Third Lien Notes. The collateral agent for the New Second Lien Notes and New Convertible Third Lien Notes shall be granted Liens on the collateral, including all of the Debtors' leasehold interests, which Liens shall be deemed perfected and effective as of the Effective Date (collectively, the "*Second Lien Pledge*" or the "*Convertible Third Lien Pledge*," respectively). For the avoidance of doubt, (i) it is expressly understood that, other than with respect to the Second Lien Pledge and the Convertible Third Lien Pledge, nothing herein or in the Plan shall broaden or limit any rights of the collateral agent or holders of the New Second Lien Notes or the New Convertible Third Lien Notes (in each case, whether arising under the applicable leases or applicable law, including, but not limited to and solely by way of example, any right to cure defaults, exercise remedies or compel delivery of notices from lessors) or of the lessors, in each case with respect to the Debtors' leasehold interests and (ii) to the extent any lessor under any of the Debtors' leases has not objected to the relief set forth herein or has withdrawn its objection or indicated its assent on the record at the Confirmation Hearing, such lessor shall be deemed to have consented to the Second Lien Pledge and the Convertible Third Lien Pledge (as described above and including clause (i)).

K&E 21784620