**MENTER, RUDIN & TRIVELPIECE, P.C.**  Hearing Date: July 27, 2015 at 9:00 a.m.
308 Maltbie Street, Suite 200                            Dkt Ref. 20.
Syracuse, New York 13204-1439
Telephone:  (315) 474-7541
Facsimile:   (315) 474-4040
Kevin M. Newman
Adam F. Kinney

*Attorneys for Inland Commercial Real Estate Services, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| The Great Atlantic & Pacific Tea Company, Inc., *et al.,*[1] | Case No. 15-23007 (RDD) |
| | (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------------------

**INLAND COMMERCIAL REAL ESTATE SERVICES, LLC'S LIMITED
OBJECTION TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 363,
365 AND 554 FOR APPROVAL OF (I) GLOBAL PROCEDURES FOR (A) STORE
CLOSINGS, (B) THE EXPEDITED SALE, TRANSFER, OR ABANDONMENT OF
DE MINIMIS ASSETS, AND (C) REJECTING UNEXPIRED NONRESIDENTIAL
REAL PROPERTY LEASES, AND (II) ENTRY INTO A LIQUIDATION
CONSULTING AGREEMENT**

Inland Commercial Real Estate Services, LLC ("Inland"), as managing agent for New York Grocery DST (the "Landlord"), by and through its attorneys, Menter, Rudin & Trivelpiece, P.C., respectfully submits this limited objection (the "Limited Objection") to the above referenced debtors' (the "Debtors") *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Two Thousand Eight Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc. (3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

{33648/30077/DSM/01063700.DOCX}                    1

*and 554 for Approval of (I) Global Procedures for (A) Store Closings, (B) the Expedited Sale, Transfer, or Abandonment of De Minimis Assets, and (C) Rejecting Unexpired Nonresidential Real Property Leases, and (II) Entry into a Liquidation Consulting Agreement* (the "Motion"). (Dkt. No. 20.)

### PRELIMINARY STATEMENT

1.   The Debtors have proposed a sale process whereby they expect to sell certain of their stores (and their underlying leases) on a going concern basis and conduct store closing sales at others. The Landlord and one of the Debtors are parties to a lease (the "Lease") of nonresidential real property located at 1764 Grand Avenue, North Baldwin, New York (the "Premises"), where the Debtors operate a supermarket. The Debtors have identified approximately 120 of their locations as "Tier I Stores" that are likely to be sold to certain third party bidders. The Lease is not included among the Tier I Stores, but is included as an "additional store" subject to the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365 and 503 and Fed. R. Bank. P. 2002, 6004 and 6006 for Approval of: (I) (A) Global Bidding Procedures, (B) Bid Protections, (C) Form and Manner of Notice of Sale Transactions and Sale Hearing, and (D) Assumption and Assignment Procedures; and (II) (A) Purchase Agreements (B) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (C) Assumption and Assignment of Certain Executory Contracts and Leases* (the "Global Bidding Procedures Motion"). (Dkt. No. 26.) The Global Bidding Procedures Motion provides procedures for bidding on the Tier I Stores and 176 other store leases as well as assumption and assignment procedures for the same. The Motion includes twenty-five "Tier III Stores" that are unlikely to be sold to a third-party bidder, which do not include the Premises. The Debtors intend to conduct store closing sales at these locations and reject the leases. The

{33648/30077/DSM/01063700.DOCX}    2

Debtors seek authority to conduct store closing sales at additional locations in the future, however, that are to be governed by the store closing procedures approved with respect to the Tier III Stores. The Debtors also seek authority to engage a "Liquidation Consultant," to conduct the store closing sales.

2. The Motion seeks to establish store closing procedures that could be applicable to all of the Debtors' locations, including the Premises. The Debtors also seek approval of procedures to sell *de minimis* assets, including leases. Finally, the Debtors seek approval of procedures to reject nonresidential real property leases. These procedures, as proposed, violate the Landlord's rights and are inconsistent with the Bankruptcy Code.[2]

### JURISDICTION

3. This court has subject matter jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

4. On July 20, 2015 (the "Petition Date") the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York.

5. Upon information and belief, the Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Premises is located within a "shopping center" as the term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086–87 (3d Cir. 1990).

---

[2] Inland has been discussing a potential resolution of its opposition to the Motion with the Debtors. Should a resolution be reached before the hearing, Inland will withdraw this Limited Objection.

**L<small>IMITED</small> O<small>BJECTION</small>**

7. The Debtors propose to implement certain store closing procedures (the "Store Closing Procedures") "to effectively close any store or location." (Motion, ¶ 13.) They do not, however, provide for adequate notice to landlords of the intent to conduct store closing sales at their locations. (*See* Motion, ¶ 14.) If the Store Closing Procedures are approved as currently drafted, the Debtors may be permitted to engage an unknown liquidator, on unknown terms, to conduct a store closing sale at the Premises at an unknown date, all without adequate notice to Inland. Accordingly, the Court should require that Inland be provided at least fourteen (14) days' notice of any store closing sale that may take place at the Premises and have sufficient opportunity to object and be heard with respect to the same.

8. Furthermore, if a store closing sale is permitted at the Premises, the proposed Store Closing Procedures are insufficient to adequately protect the Landlord. Section 363(b)(1) provides that a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); s*ee In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992). Nevertheless, Section 363(e) provides that the Court may "prohibit or condition" the sale, use, or lease of property upon the request of a party in interest in order to afford the protesting party adequate protection of its interest. 11 U.S.C. § 363(e). "§ 363(e) reserves for Bankruptcy Courts the discretion to condition the time, place and manner of store closing sales thereby providing adequate safeguards to protect shopping center landlords and their other tenants . . . ." *In re Ames Dep't. Stores, Inc.*, 136 B.R. at 359. The Court should thus seek to balance the Debtors' interest in liquidating their assets and the Landlord's interest in maintaining a certain level of decorum and standard of appearance at the shopping center that contains the Premises. Accordingly, the Landlord respectfully requests that the Court place

additional and different limitations on the Debtors' and their Liquidation Consultant's right to conduct store closing sales as follows:

    a) There are insufficient restrictions on the hanging of banners and signs at premises where store closing sales will take place. Window signs should: (i) not exceed 36 inches by 60 inches each and should not cover more than 50% of the surface area of the window, (ii) be set back at least twelve (12) inches from the glass, and (iii) should not contain more than three (3) colors per sign in addition to black and white. In addition to the window signs, each 1,000 square feet of sales floor space inside a store should contain no more than five (5) hanging signs, which signs may not exceed 28 inches by 40 inches each. "Toppers" should not exceed 8.5 inches by 11 inches. No neon or "day-glo" colors should be used on any signs or toppers. No more than one interior banner (not to exceed 3 feet by 15 feet) should be used in the store, which should be hung in the rear third of each store.

    b) There should be no exterior banners at the Premises. Notwithstanding this, to the extent exterior banners are permitted, they should be limited as follows: (a) the Debtors or Liquidation Consultant may place one exterior banner at each store; (b) exterior banners must be no greater in size then 3 feet by 30 feet and in no event be longer or wider than the Debtors' existing sign and be placed either directly above or directly below such sign unless agreed in writing, and should not wrap around the sides of the building; (c) any exterior banner should not hang below the bottom of the store's façade and should be firmly secured to the building such that it does not flap or otherwise blow in the wind; and (d) the Debtors or Liquidation Consultant should not make any hole or cause any damage

to the façade or roof of the Premises in installing or removing the banner and shall repair any damage that may occur resulting from the hanging or removal of the banner. Additionally, any such banner must be clear that the sale is only being conducted at the Debtors' store.

c) All signage and advertising, including banners, must be in English and should only use the terms "Store Closing Sale," "Sale on Everything," or something equivalent or less offensive as agreed to by the Debtors or the Liquidation Consultant and Inland. The terms "Bankruptcy," "Going Out of Business," "Lost our Lease," "Bare to the Walls," "liquidation," "court ordered," "Chapter 11 Sale," "Liquidation Sale," "Total Liquidation Sale," or other similar themes should not be used in any signage or advertising, including banners.

d) At the conclusion of the store closing sale, the Debtors or the Liquidation Consultant should remove all signs and shall be responsible for the reasonable repair of any damages caused by the hanging or removal of signs. In addition, following the conclusion of the term of the store closing sale, the Debtors and the Liquidation Consultant shall not interfere with the Landlord's right of reasonable access to the Premises to dress windows to prevent the appearance of a dark store and such other reasonable access rights as the Lease provides.

e) The following should not be permitted on the Landlord's owned property: tethered hot-air or other balloons or other inflatable devices, inflatable images, sandwich boards, A-Frames, sign walkers, rooftop advertising, vehicles advertising sales, flashing lights, strobe lights, large spotlights, bullhorns or any other type of amplified sound, and any other exterior signs, not otherwise

permitted herein. The Debtors and Liquidation Consultant should not distribute handbills, leaflets, or other written materials outside of a store on Landlord's property or otherwise advertise or solicit customers on Landlord's property outside of the store.

f) Neither the Debtors nor the Liquidation Consultant should be permitted to conduct an auction, fire sale, tent sale, sidewalk sale, or other outside or common area sale. Moreover, the Liquidation Consultant should not be permitted to augment inventory at the Premises, except for inventory brought from the Debtors' other locations. Store closing sales are conducted to liquidate the remaining inventory of a debtor, not the inventory of a debtor's liquidating agent.

g) Furniture, fixtures, and equipment ("FF&E") sold during the store closing sales should not be removed from the Premises through the customer entrances. FF&E should only be removed through the rear entrance or loading dock, as applicable and physically practicable. Also, Inland should be permitted to conduct a walk-through of the Premises with the Liquidation Consultant to discuss issues with respect to the potential sale and removal of any FF&E that Inland believes does not belong to (or may not be sold by) the Debtors or the Liquidation Consultant.

h) In the event Inland believes that the Debtors or the Liquidation Consultant is conducting the store closing sales in violation of the Store Closing Procedures, Inland should be permitted to, subject to the Court's calendar, move for an expedited hearing on the alleged violation. Inland should be required to provide notice of this expedited hearing of not less than twenty-four hours to the Debtors and the Liquidation Consultant.

9. The Debtors have also proposed procedures (the "De Minimis Asset Sale Procedures") for the sale of what they have termed the "De Minimis Assets," which are defined as including surplus, obsolete, non-core, or burdensome assets, which may include leases. (Motion, ¶¶ 2, 22.) The De Minimis Asset Sale Procedures provide that:

> For sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price, as measured by the amount of cash and other consideration to be received by the Debtors on account of the assets to be sold ("**Sale Price**"), less than or equal to $250,000 . . . the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales are in the best interest of the estates, without further order of the Court or notice to any party.

(Motion, ¶ 24(a)(i).) The Bankruptcy Court requires Court approval of the assumption or rejection of any unexpired lease of the Debtor. 11 U.S.C. § 365. Furthermore, a lease may only be assumed and assigned if the Debtors:

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1)(A), (B), & (C); *see also* 11 U.S.C. § 365(b)(3). The De Minimis Sale Procedures do not require notice, and do not provide for the payment of cure amounts or the

provision of adequate assurance of future performance as is required by the Bankruptcy Code as a precondition to assumption and assignment of leases. The Debtors have filed other motions that seek authority to assume and assign store lease (Dkt Nos. 26 & 27) and the De Minimis Sale Procedures should not be used to assume and assign store leases.

10. Additionally, while the Debtors wish to sell De Minimis Assets where possible, they also seek authority to abandon such assets in the event that they are unable to find purchasers for the same. (Motion, ¶ 24.) In furtherance of this, the Debtors have proposed certain procedures governing the abandonment of such assets (the "De Minimis Asset Abandonment Procedures") where the Debtors determine that the cost of continuing to maintain, relocate, and store such assets outweighs any potential recover from a future sale. (Motion, ¶ 25.) Relatedly, the Debtors have proposed procedures to govern the rejection of leases that are not assumed and assigned. (Motion, ¶ 29.) The De Minimis Asset Abandonment Procedures and rejection procedures should be revised to provide that any and all personal property remaining at premises subject to a rejected lease is deemed abandoned upon the effective date of rejection and that the landlord may dispose of any and all such personal property without further notice or order and without liability to the Debtors or any third party, and landlords' rights to file claims for the costs of such disposition shall be reserved. Furthermore, the Debtors should be required to remove any hazardous materials from the Premises prior to rejection. Such relief is necessary to ensure landlords have full dominion and control over the subject premises as of lease rejection and is common in retail bankruptcy cases such as this.

**WHEREFORE**, Inland respectfully requests that the Court deny the relief sought in the Motion or grant it in a modified form as set forth in this Limited Objection and grant Inland any other and further relief as it may deem just and appropriate.

Dated: July 24, 2015                          Respectfully submitted,

**MENTER, RUDIN & TRIVELPIECE, P.C.**

By:  /s/ Kevin M. Newman
Kevin M. Newman
Adam F. Kinney
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1439
Telephone:  (315) 474-7541
Facsimile:  (315) 474-4040

*Attorneys for Inland Commercial Real Estate Services, LLC*