UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                            :
                                                 :      Chapter 11
THE GREAT ATLANTIC & PACIFIC TEA                 :
COMPANY, INC., *et al.*,                         :      Case No. 15-23007 (RDD)
                                                 :
Debtors.[1]                                      :      (Jointly Administered)
                                                 :
------------------------------------------------------------x

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, 365 AND 554 APPROVING (I) GLOBAL PROCEDURES FOR (A) STORE CLOSINGS, (B) THE EXPEDITED SALE, TRANSFER, OR ABANDONMENT OF DE MINIMIS ASSETS, AND (C) REJECTING UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES, AND (II) ENTRY INTO A LIQUIDATION CONSULTING AGREEMENT

Upon the motion (the "**Motion**")[2] of The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant, pursuant to sections 105(a), 363, 365, and 541 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing the Debtors to (i) implement the Store Closing Procedures, (ii) sell, transfer or abandon De Minimis Assets pursuant to the De Minimis Asset Procedures, (iii) enter into a Liquidation Consulting Agreement, (iv) implement the Lease Rejection

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Two Thousand Eight Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion or McGarry Declaration, as applicable.

Procedures, and (v) reject the Initial Closing Stores' Leases identified on Exhibit 1 attached hereto, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given to the Notice Parties as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and a hearing having been held by the Court on July 27, 2015 to consider the interim relief requested in the Motion (the "**Hearing**"); and upon the Declaration of Christopher W. McGarry Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**McGarry Declaration**"), filed contemporaneously with the Motion; and upon the two written objections to the requested relief [Docket Nos. 161 and 168] and the Debtors' supplement to the Motion [Docket No. 178], dated July 26, 2015; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is a prudent exercise of business judgment, is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

WEIL:\95402463\6\50482.0004

ORDERED that the Motion is granted on an interim basis to the extent set forth herein; and it is further

ORDERED that the Debtors are authorized, but not directed, pursuant to section 105(a), 363(b) and (f), 365 and 554 of the Bankruptcy Code, to conduct Store Closing Sales at Closing Stores pursuant to the following store closing procedures (the "**Store Closing Procedures**"):

1. The Store Closing Sales will be conducted during normal business hours or such hours as otherwise permitted by the applicable unexpired lease, and the Debtors will abide by any applicable shopping center guidelines regarding maintenance, security, and trash removal.

2. The Store Closing Sales will be conducted in accordance with applicable state and local "Blue Laws," and thus, where such a law is applicable, no Store Closing Sales will be conducted on Sunday unless the Debtors have been operating such stores on Sundays.

3. All display and hanging signs used by the Debtors in connection with the Store Closing Sales will be professionally lettered and all hanging signs will be hung in a professional manner. No additional restrictions will be imposed on the Debtors that are not contained in the applicable lease. In addition, the Debtors will be permitted to utilize exterior banners and sign-walkers.

4. If Store Closing Sales are to be considered "final," conspicuous signs will be posted in each of the affected stores to the effect that all sales are "final."

5. The Debtors will not make any alterations to interior or exterior store lighting, and will not use any type of amplified sound to advertise the Store Closing Sales or solicit customers.

6. No alterations will be made to the Closing Stores, except as authorized pursuant to the applicable lease. The hanging of exterior banners or other signage will not constitute an alteration to a store.

7. No property of any landlord will be removed or sold during the Store Closing Sales.

8. The Debtors will keep store premises and surrounding areas clear and orderly, consistent with past practices.

9. The Liquidation Consultant, at the Debtors direction, will negotiate any particular modifications to the Store Closing Procedures with any landlord in regards to number and placement of signs or banners.

10. The Debtors do not have to comply with lease provisions or covenants that are inconsistent with these procedures.

11. The Debtors do not have to comply with the Liquidation Laws (as defined below).

12. Pharmaceutical Assets will be sold or transferred in accordance with applicable state law.

13. The Liquidation Consultant, on behalf and at the direction of the Debtors, may abandon De Minimis Assets in accordance with the De Minimis Asset Procedures.

14. An unexpired nonresidential real property lease will be deemed rejected only in accordance with the Lease Rejection Procedures and will not be treated as De Minimis Assets.

provided that the Debtors and landlords of any Closing Store are authorized to enter into agreements modifying the Store Closing Procedures (each a "**Landlord Agreement**") without further order of the Court; provided further that such agreements do not have a material adverse effect on the Debtors or their estates; and it is further

ORDERED that the Debtors are authorized to sell or otherwise dispose of the Pharmaceutical Assets to the highest or best bidder(s) as identified by the Debtors in their business judgment and subject to applicable federal and state law, including, without limitation, public health, safety and privacy requirements imposed by applicable non-bankruptcy law. To the extent applicable, the Debtors shall comply with the De Minimis Asset Sale Procedures, as approved by this Court with respect to the Pharmaceutical Assets; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the Store Closing Assets being sold shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens,

judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of the Proposed DIP Lenders (collectively, the "**Liens and Claims**"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately prior to the closing of the applicable sale; and it is further

ORDERED that no entity, including, without limitation, utilities, landlords, creditors and all persons acting for or on their behalf (but not Governmental Units, as defined in section 101(27)) shall interfere with or otherwise impede the conduct of the Store Closing Sales, or institute any action against the Debtors or landlords in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closing Sales; and it is further

ORDERED that any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these chapter 11 cases constitute a default under a lease or provide a basis to terminate the lease; provided, the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Store Closing Procedures and any Landlord Agreement; and it is further

ORDERED that the Closing Stores may "go-dark" during the Store Closing Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for "going

5

dark") may not be enforced to hinder or interrupt the Store Closing Sales (and the "going dark" under such leases shall not be a basis to cancel or terminate the leases); and it is further

ORDERED that, subject to applicable federal, state and local public health and safety laws (the "**Safety Laws**"), and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, the "**General Laws**"), but excluding licensing or other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including (but not limited to) state and local laws, statutes, rules, regulations, and ordinances (the "**Liquidation Sale Laws**"), the Debtors are authorized to take such actions as necessary and appropriate to conduct the Store Closing Sales without the necessity of a further order of this Court, including, but not limited to, advertising the Store Closing Sales; and it is further

ORDERED that, provided the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Store Closing Procedures and any applicable Landlord Agreement, and in light of the provisions in the laws of many local and state laws that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance or otherwise excused from compliance with any Liquidation Sale Laws, and are authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order without the necessity of compliance with any such Liquidation Sale Laws; and it is further

ORDERED that the Debtors shall be entitled to use sign walkers, hang signs, and/or interior or exterior banners advertising the Store Closing Sales in accordance with the Store Closing Procedures and any applicable Landlord Agreement, including, without limitation, advertising the Store Closing Sales as "store closing," "sale on everything," or similar themed sales and by means of media advertising, A-frames, banners, and similar

6

signage, without further consent of any person and without compliance with the Liquidation Sale Laws. Provided that the use of banners and sign walkers is done in a safe and responsible manner, such sign walkers and banners, in and of themselves, shall not be deemed to be in violation of Safety Laws and/or General Laws; and it is further

ORDERED that each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Order as binding authority that no further approval, license, or permit of any governmental unit shall be required, nor shall the Debtors be required to post any bond, to conduct the Store Closing Sales; and it is further

ORDERED that state and/or local authorities shall not fine, assess, or otherwise penalize the Debtors or any of the landlords of the Closing Stores for conducting or advertising the Store Closing Sales in a manner inconsistent with state or local law; *provided*, that the Store Closing Sales are conducted and advertised in a manner contemplated by this Interim Order; and it is further

ORDERED that the Debtors may not transfer any Inventory or FF&E located at a Tier I Store or Tier II Store to any Initial Closing Store; and it is further

ORDERED that the Debtors shall reasonably consult with the Creditors' Committee and the DIP Agent (including providing information requested by the Creditors' Committee and/or the DIP Agent) in connection with (a) Store Closing Sales, (b) sales of Pharmaceutical Assets, and (c) any modification of the Store Closing Procedures; and it is further

7

ORDRED that the Debtors may conduct additional Store Closing Sales in accordance with the terms of this Interim Order at locations other than the Initial Closing Stores by filing and serving the Notice Parties (as defined below) and any landlord at an affected location with (i) notice of intent to conduct a Store Closing Sale pursuant to this Interim Order, and (ii) a copy of this Interim Order. The Notice Parties and affected landlord(s) will have 10 calendar days from the filing and service of the notice of intent to conduct additional Store Closing Sales to object to the terms of the Store Closing Procedures and request a hearing on the objection. If no objection is filed, the Debtors may conduct Store Closing Sales at such locations in accordance with the terms of this Interim Order; and it is further

### **De Minimis Asset Procedures**

ORDERED that the Debtors are authorized, but not directed, to sell or transfer De Minimis Assets under the following procedures (the "**De Minimis Asset Sale Procedures**"):

(a) For sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price, as measured by the amount of cash and other consideration to be received by the Debtors on account of the assets to be sold ("**Sale Price**"), less than or equal to $250,000:

   (i) the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales are in the best interest of the estates, without further order of the Court or notice to any party;

   (ii) any such transactions shall be free and clear of all liens, claims and encumbrances with such liens, claims and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as immediately prior to the transaction; and

   (iii) each purchaser of a De Minimis Asset will be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.

(b) For sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a Sale Price greater than $250,000 and less than or equal to $5,000,000:

(i)     the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales are in the best interest of the estates, without further order of the Court, subject to the procedures set forth herein;

(ii)     any such transactions shall be free and clear of all liens, claims and encumbrances with such liens, claims and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as immediately prior to the transaction;

(iii)     each purchaser of a De Minimis Asset will be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser;

(iv)     the Debtors shall, at least five (5) business days prior to closing such sale or effectuating such transfer, serve a written notice of such sale or transfer by e-mail, facsimile, or overnight delivery service (each notice, a "**De Minimis Asset Sale Notice**") to (a) the U.S. Trustee; (b) proposed counsel to the Creditors' Committee; (c) any known affected creditor(s) and their respective counsel, if known, asserting a Lien or Claim on the relevant De Minimis Assets; (d) those parties requesting notice pursuant to Bankruptcy Rule 2002; (e) counsel to the DIP Agent (as defined in the DIP Orders); (f) counsel to each agent for the Debtors' Prepetition Secured Lenders; (g) majority holders of Senior Secured PIK Toggle Notes due 2017 issued by the Debtors; and (h) majority holders of Senior Secured Convertible Notes due 2018 (collectively, the "**Notice Parties**");

(v)     the content of the De Minimis Asset Sale Notice shall consist of:
- identification of the De Minimis Assets being sold or transferred and its location;
- identification of the purchaser of the assets and any relationship such party has with the Debtors;
- identification of any parties known to the Debtors as holding liens or encumbrances on the assets subject to the De Minimis Assets being sold and a statement indicating whether all such liens or encumbrances are capable of monetary satisfaction;
- the purchase price; and
- any other significant terms of the sale or transfer; and
- date and time within which objections may be filed and served on the Debtors;

(vi)     Objections, if any, must be in writing and served on the other Notice Parties and counsel to the Debtors so as to be received by all such parties prior to 4:00 p.m. (Eastern Time) on the fifth business day after service of the De Minimis Asset Sale Notice and must state with

9

specificity the grounds for the objection;

    (vii)    if no written objections are filed by any of the Notice Parties within five (5) business days of service of such De Minimis Asset Sale Notice, the Debtors are authorized to immediately consummate such transaction; and

    (viii)    if a written objection is received from a Notice Party within such five (5) business day period that cannot be resolved, the objection will be deemed a request for a hearing on the objection at the next scheduled hearing, subject to adjournment by the Debtors, and the relevant De Minimis Asset(s) shall only be sold upon withdrawal of such written objection or further order of the Court specifically approving the sale or transfer of the De Minimis Asset(s);

and it is further

ORDERED that, the De Minimis Asset Sale Procedures shall not apply to any sales or transfers of assets that involve an employee or an "insider" of the Debtors as such term is defined in section 101(31) of the Bankruptcy Code; and it is further

ORDERED that sales of De Minimis Assets that are consummated pursuant to the De Minimis Asset Sale Procedures shall be deemed arm's-length transactions entitled to the protections of section 363(m) of the Bankruptcy Code; and it is further

ORDERED that the De Minimis Asset Sale Procedures shall not apply to any transaction that involves the assumption and the assignment of unexpired leases of nonresidential real property or the requirements of section 365 of the Bankruptcy Code; and it is further

ORDERED that the absence of an objection to the relief requested in the Motion combined with the absence of a timely objection to the sale or transfer of the De Minimis Assets in accordance with the terms of this Interim Order shall be determined to be "consent" to such sale or transfer free and clear of Liens and Claims within the meaning of section 363(f)(2); and it is further

ORDERED that, except as specifically provided in the applicable sale or transfer document, sales and transfers of De Minimis Assets shall be free and clear of all Liens and Claims, with such Liens and Claims with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately prior to the closing of the applicable sale; and it is further

ORDERED that the Debtors are authorized, but not directed, to abandon De Minimis Assets under the following procedures (the "**De Minimis Asset Abandonment Procedures**"):

(a) For De Minimis Assets that the Debtors believe in their sound business judgment have a fair market value ("**Market Value**"), less than or equal to $250,000:

(i) the Debtors are authorized to abandon such De Minimis Assets if the Debtors determine in the reasonable exercise of their business judgment that such abandonment is in the best interest of the estates, without further order of the Court or notice to any party; provided that the Debtors shall, at least five (5) business days prior to abandoning De Minimis Assets, serve notice of such abandonment by e-mail, facsimile or overnight delivery service (each notice, an "**Abandonment Notice**") on the landlord of the premises for which the De Minimis Assets are being abandoned and its counsel, if known.

(b) For De Minimis Assets that the Debtors believe in their sound business judgment have a Fair Market Value greater than $250,000 but less than or equal to $5,000,000:

(i) The Debtors shall, at least five (5) business days prior to abandoning De Minimis Assets, serve an Abandonment Notice on the Notice Parties;

(ii) the content of the Abandonment Notice shall consist of: (a) the location and identification of the De Minimis Assets being abandoned; and (b) a summary of the reasons for abandoning such De Minimis Assets;

(iii) if a written objection is received from a De Minimis Notice Party within

11

such five (5) business day period that cannot be resolved, the relevant De Minimis Assets shall only be abandoned upon withdrawal of such written objection or further order of the Court.

and it is further;

ORDERED that in addition to the Debtors' obligation to reasonably consult with the Creditors' Committee and the DIP Agent, the Debtors will file a report with the Court and serve on all parties entitled to notice in the cases, within 30 days after each calendar quarter, summarizing any sales, transfers, or abandonments consummated pursuant to the De Minimis Asset Procedures; and it is further

ORDERED that any personal property of the Debtors remaining at a Closing Store after the effective date of rejection of the lease shall be deemed abandoned as of the Rejection Date; and it is further

ORDERED that with respect any De Minimis Assets abandoned under the De Minimis Asset Abandonment Procedures herein and located at one of the Debtors' leased properties, the applicable landlord or other designee shall be free to dispose of such property without liability to any party and without further notice or order of the Court; *provided*, that notwithstanding anything to the contrary in this Interim Order, the Debtors are not authorized hereunder to abandon, and are directed to remove, any hazardous (as such term is defined in federal, state, or local law, rule, regulation or ordinance) materials at any premises subject to a nonresidential real property lease or sublease. Landlords' rights, if any, to file claims for the costs of disposal of such property are fully reserved, as are the rights of any party in interest to object to such claims; and it is further

ORDERED that service of the De Minimis Asset Sale Notice and/or the De Minimis Asset Abandonment Notice is sufficient notice of the sale, transfer, and/or abandonment of such De Minimis Assets; and it is further

ORDERED that the Debtors are authorized to pay those reasonable and necessary fees and expenses incurred in the sale, transfer, or abandonment of De Minimis Assets, including reasonable commission fees to agents, brokers, auctioneers and liquidators, if any; and it is further

ORDERED that any payment made or to be made under this Interim Order, and any authorization contained in this Interim Order, shall be subject to the terms of the DIP Orders; and it is further

**Liquidation Consulting Agreement**

ORDERED that the Debtors are authorized to enter into a Liquidation Consulting Agreement with the Liquidation Consultant; and it is further

ORDERED that any payment made or to be made under this Interim Order, and any authorization contained in this Interim Order, shall be subject to the terms of the DIP Orders; and it is further

ORDERED that notwithstanding anything herein to the contrary, (a) nothing in this Interim Order shall in any way limit, subordinate, or constitute a waiver of any rights and priorities of claimants with trust rights under the Perishable Agricultural Commodities Act ("**PACA**") or the Packers and Stockyards Act ("**PASA**"), all such rights hereby being expressly reserved, and (b) nothing herein in any way purports to grant any liens or priorities contrary to the statutory trust protections afforded under PACA or PASA; and it is further

ORDERED that the rights and interests, if any, of Union County Realty Group LLC, solely with respect to the FF&E at the Debtors' store located at 651 N. Stiles Street, Linden,

13

New Jersey 07036, operating under the Pathmark banner, are preserved and at least five (5) business days' notice shall be given to it and its counsel appearing on its behalf in these chapter 11 cases, before any sale of such FF&E; and it is further

ORDERED that the requirements of Bankruptcy Rule 6003(b) have been satisfied; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are hereby waived for cause; and it is further

ORDERED that notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Final Hearing on the Motion shall be held on **August 10, 2015, at 10:00 a.m. (Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Garrett A. Fail, Esq. and Sunny Singh, Esq.); (ii) attorneys for Gordon Brothers, Reimer Braunstein LLP, Seven Times Square, Suite 2506, New York, New York 10036 (Attn: Steven Fox, Esq.); and (iii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Prevailing Eastern Time) on August 5, 2015**; and it is further

ORDERED that nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Order, other than as expressly provided for herein, is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights

to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; and it is further

ORDERED that notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party; and it is further

ORDERED that this Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; <u>provided</u> that, the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order; and it is further

ORDERED that the Debtors are authorized to take all action necessary to carry out this Interim Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order and any Landlord Agreement.

Dated: July 28, 2015
      White Plains, New York        /s/ Robert D. Drain_____
                                                         UNITED STATES BANKRUPTCY JUDGE

15

WEIL:\95402463\6\50482.0004

**Exhibit 1**

Initial Closing Stores

# Rejection Schedule of Initial Closing Store Leases

| STORE ID NO. | COUNTERPARTY-LANDLORD | DEBTOR | PROPERTY ADDRESS | LEASE EXPIRATION DATE |
|---|---|---|---|---|
| 70212 | Riverhead Centre, LLC | A&P Real Property, LLC | 1510 Old Country Rd. Riverhead, NY | Jul. 31, 2023 |
| 70213 | 3620 Long Beach Road LLC (as successor in interest to Nathan Serota) | A&P Real Property, LLC | 3620 Long Beach Rd Oceanside, NY | June 30, 2021 |
| 70244 | East Marlboro Associates | A&P Real Property, LLC | 863 E. Baltimore Pike Kenneth Square, PA | Aug. 31, 2017 |
| 70314 | Center Square Plaza Associates | A&P Real Property, LLC | 1301 Skippack Pike Center Square, PA | May 22, 2020 |
| 70343 | AVR CP-TWO, LLC | A&P Real Property, LLC | 2 Westbury Avenue Carle Place, NY | Aug. 31, 2015 |
| 70562 | C'PIA, LLC | A&P Real Property, LLC | Route 13 & Maple Rd (aka 2105 Philadelphia Pike) Claymont DE | Apr. 30, 2020 |
| 70597 | Basser-Kaufman of Matawan, L.L.C. | A&P Real Property, LLC | 325 Route 35 Cliffwood, NJ | Mar. 31, 2023 |
| 70656 | Holmdel Towne Center, LLC | A&P Real Property, LLC | 2101 Route 35 Holmdel, NJ | Mar. 31, 2018 |
| 70726 | Delaware 1851 Associates, LP | A&P Real Property, LLC | 1851 S. Christopher Columbus Blvd Philadelphia, PA | Sept. 30, 2020 |
| 72128 | BOIV Belleville MCB, LLC | A&P Real Property, LLC | 115 Belmont Ave Belleville, NJ | Jan. 31, 2034 |
| 72175 | Cliffpass SPE Corp., successor to Cliffpass Development, Inc. | A&P Real Property, LLC | Botany Plaza 85 Ackerman Ave Clifton, NJ | Mar. 31, 2017 |
| 72185 | Clifton Grocery Stores, LLC | A&P Real Property, LLC | 895 Paulison Ave Clifton, NJ | Mar. 31, 2033 |
| 72512 | Union County Realty Group LLC, as successor in interest to Valley Circle, Inc. | A&P Real Property, LLC | 651 North Stiles St Linden, NJ | Jan. 31, 2025 |
| 72535 | Wick Shopping Plaza Associates, L.L.C. | A&P Real Property, LLC | 561 Route 1, Unit B Edison, NJ | Oct. 31, 2017 |
| 72538 | MCB East Brunswick, LLC | A&P Real Property, LLC | 50 Race Track Rd East Brunswick, NJ | Oct. 31, 2033 |
| 72564 | OLP-MCB Philly-Cottman, LP, as successor in interest to 840 Cottman Associates, LLC | A&P Real Property, LLC | 840 Cottman Ave. Philadelphia, PA | Sept. 30, 2021 |

| STORE ID NO. | COUNTERPARTY-LANDLORD | DEBTOR | PROPERTY ADDRESS | LEASE EXPIRATION DATE |
|---|---|---|---|---|
| 72567 | Garnet Company | A&P Real Property, LLC | 420 MacDade Blvd Folsom, PA | May 31, 2017 |
| 72581 | Old Bridge Plaza Associates, LLC | A&P Real Property, LLC | 1043 US Route 9 Old Bridge, NJ | Oct. 31, 2017 |
| 72582 | Indian Head Plaza Associates, successor in interest to Peter L. Levine | A&P Real Property, LLC | 1256 Indian Head Road Toms River, NJ | Jan. 31, 2020 |
| 72589 | Realty Income Corporation as successor to Inland Diversified Wilmington Lancaster, L.L.C. as successor to WE APP Wilmington LLC | A&P Real Property, LLC | 3901 Lancaster Pike Wilmington, DE | Nov. 30, 2030 |
| 72623 | New York Grocery DST | A&P Real Property, LLC | 1764 Grand Avenue, Baldwin NY | Nov. 30, 2030 |
| 72663 | Kimco Centereach, LLC | A&P Real Property, LLC | 2150 Middle Country Rd Centereach, NY | Sept. 30, 2020 |
| 76248 | Echo Swedesford Associates LP as successor in interest to 400 West Swedesford Road Holdings LLC, as successor in interest to Swedesford Shopping Center Acquisition, LLC | A&P Real Property, LLC | 400-450 W. Swedesford Rd Devon, PA | Apr. 30, 2021 |
| 76363 | Walnutport Associates | Super Fresh Food Markets, Inc. and/or A&P Real Property, LLC as successor in interest | 300 S. Best Ave & Main St Walnutport, PA | June 30, 2021 |
| 76723 | US Bank National Association, as successor in interest to Liberty Plaza Limited Partnership | A&P Real Property, LLC | 85 Franklin Mills Blvd Philadelphia, PA | Nov. 30, 2020 |