WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.,** *et al.*, | : | Case No. 15-23007 (RDD) |
| | : | |
| | : | **(Jointly Administered)** |
| **Debtors.**[1] | : | |

------------------------------------------------------------x

**DECLARATION OF GREGORY S. APTER
IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO
11 U.S.C. §§ 105, 363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006 FOR
APPROVAL OF GLOBAL SALE AND LEASE RATIONALIZATION PROCEDURES**

Gregory S. Apter, pursuant to 28 U.S.C. § 1746, declares as follows:

1. My name is Gregory S. Apter. I am over the age of 18 and competent to testify.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

2. I am the President of Hilco Real Estate, LLC ("**Hilco**"), proposed real estate consultant and advisor to the above-captioned debtors and debtors in possession (the "**Debtors**").

3. I submit this declaration in support of the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006 for Approval of Global Sale and Lease Rationalization Procedures* [Docket No. 27] (the "**Motion**").[2]

4. Except as otherwise indicated, all facts, statements and opinions in this declaration are based upon my experience, and personal knowledge and information derived from my involvement in Hilco's engagement with the Debtors, my review of relevant documents, and my discussions with the Debtors' senior management and other members of the Hilco team. I am authorized to submit this Declaration. If called upon to testify, I could and would testify competently to the facts set forth herein.

## Qualifications

5. I am a founder of Hilco's lease mitigation practice. Since joining Hilco in 2002, I have advised numerous retail clients in connection with lease restructurings, lease dispositions, and owned-property dispositions, including Wal-Mart, Hostess, Starbucks, Talbots, A&P, BCBG Max Azria, HD Supply, Samsonite, Bally Total Fitness, Claim Jumper Restaurants, and Select Comfort. Prior to joining Hilco in 2002, I was a senior vice president and head of the retail tenant representation group at Jones Lang LaSalle, a professional services and investment management company specializing in real estate. In that role, I was responsible for directing, managing and facilitating lease portfolio restructuring services, as well as market analysis, site selection, asset management, consulting, acquisition and disposition services. I have authored

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

numerous articles on lease restructuring, and am a frequent speaker and lecturer at trade association educational programs. I am a member of the American Bankruptcy Institute, the American Bar Association, the National Restaurant Association and the Turnaround Management Association. I hold a Juris Doctor degree from IIT Chicago-Kent College of Law and a Bachelor of Arts degree from the University of Illinois at Champaign-Urbana.

6. Hilco is a diversified real estate consulting and advisory firm and has an experienced team of real estate brokers, attorneys, and analysts. Hilco specializes in strategic real estate analysis, valuation and planning, real estate acquisition and disposition, real estate financing and sale lease-back transactions, and negotiating lease modifications or terminations. Hilco has extensive experience negotiating and facilitating the acquisition or disposition of real estate assets of all types, located both nationally and internationally. Moreover, Hilco has served as real estate broker and real estate consultant in many complex bankruptcy cases. *See, e.g.*, *In re Neff Corp.*, No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 9, 2010) [Docket No. 131]; *In re Lenox Sales, Inc.*, No. 08-14679 (ALG) (Bankr. S.D.N.Y. March 11, 2009) [Docket No. 397]; *In re Bally Total Fitness of Greater N.Y.*, No. 08-14818 (BRL) (Bankr. S.D.N.Y Jan. 14, 2009) [Docket No. 424]; *see also In re The Oceanaire Tex. Rest. Co., L.P.*, No. 09-34262 (BJH) (Bankr. N.D. Tex. Nov. 17, 2009) [Docket No. 289]; *In re Bashas' Inc.*, No. 09-16050 (JMM) (Bankr. D. Ariz. Aug. 26, 2009) [Docket No. 485]; *In re RCC Liquidating Corp.*, No. 09-10617 (MFW) (Bankr. D. Del. May 19, 2009) [Docket No. 583]; *In re Everything But Water, LLC*, No. 09-10649 (MFW) (Bankr. D. Del. Apr. 16, 2009) [Docket No. 215]; *In re Mervyn's Holdings, LLC*, No. 08-11586 (KG) (Bankr. D. Del. Sept. 26, 2008) [Docket No. 540]; *In re BSCV, Inc.*, No. 08-11637 (KG) (Bankr. D. Del. Sept. 15, 2008) [Docket No. 286].

**Hilco's Marketing and Monetization Process**

7. It is my understanding that the Debtors determined that the best way to maximize value for distribution to creditors is to sell their stores through an orderly, three-tiered comprehensive asset sales strategy (the "**Sale Strategy**"). In the spring of 2015, the Debtors engaged Hilco to provide consulting and advisory services in connection with the development of the Sale Strategy. Almost immediately, Hilco began extensive due diligence in order to determine, among other things, which of the Debtors' stores were likely to generate the most market interest.

8. As explained in greater detail in the Motion, in the first tier of the Sale Strategy, the Debtors intend to sell approximately 120 of their most profitable and marketable "core" stores (including certain leases and related assets, the "**Tier I Stores**") to certain third-party bidders on a going concern basis, pursuant to a marketing and sales process (the "**Tier I Sale Process**") conducted by Evercore Partners LLC ("**Evercore**").[3] In the third tier, the Debtors intend to immediately begin the process of closing 25 stores that have negative profitability and negative lease value (the "**Tier III Stores**"), and have filed a motion to reject the leases and subleases in six additional Tier III Stores, referred to as "dark store" locations because the Debtors have already ceased ongoing operations, or the subtenant is party to sublease that is not profitable to the Debtors.[4] The Debtors engaged Hilco to conduct a robust

---

[3] A more detailed description of the Tier I Sale Process is set forth in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365 and 503 and Fed. R. Bankr. P. 2002, 6004 and 6006 for Approval of (I)(A) Global Bidding Procedures, (B) Bid Protections, (C) Form and Manner of Notice of Sale Transactions and Sale Hearing, and (D) Assumption and Assignment Procedures; and (II) (A) Purchase Agreements, (B) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, and (C) Assumption and Assignment of Certain Executory Contracts and Leases* [Docket No. 26], and the Declaration of Stephen Goldstein in support thereof, filed contemporaneously herewith.

[4] In connection with the Debtors' disposition of the Tier III Stores, on July 28, 2015, the Court entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 363, 365 and 554 Approving (I) Global Procedures for (A) Store Closings, (B) the Expedited Sale, Transfer, or Abandonment of De Minimis Assets, and (C) Rejecting Unexpired Nonresidential Real Property Leases, and (II) Entry Into a Liquidation Consulting Agreement* [Docket No. 204] and

marketing and monetization process alongside Evercore (the "**Tier II Sale Process**") with respect to the remaining approximately 150 "non-core" stores (including certain leases and related assets, the "**Tier II Stores**").[5]

9. As the Tier I Sale Process progressed, Hilco reached out to a carefully-constructed list of approximately 35-40 grocery and non-grocery retailers regarding the Tier II Stores. Hilco selected parties for its initial contact list based on such parties' past expressions of interest in the Debtors' stores, and Hilco's belief that these parties would respect the confidential nature of the prepetition process. Most of the parties Hilco contacted expressed interest, and approximately 20 of these parties executed non-disclosure agreements with the Debtors prior to the Commencement Date, allowing them to review non-public information in connection with their due diligence efforts. Prepetition negotiations with these 20 interested parties were productive, and have continued to progress since the Commencement Date.

10. As Hilco expected, market interest in the Tier II Stores has increased exponentially following the Commencement Date. The Motion effectively put the world on notice that the Tier II Stores are for sale. In addition, immediately following the Commencement Date, Hilco commenced an aggressive marketing effort for the Tier II Stores. Among other things, Hilco contacted a broad universe of over 150 potential interested parties, including additional grocery and non-grocery retailers, as well as landlords, real estate investors and brokers, via direct emails and phone calls. Hilco also placed strategic advertisements in local and national media in order to reach the widest possible audience of potential acquirers. As a

---

on July 24, 2015, the Debtors filed the *Omnibus Motion of Debtors Pursuant to 11 U.S.C. § 365, Fed R. Bankr. P. 6006, and Local Rule 6006-1 to Reject Certain Unexpired Leases and Related Subleases of Nonresidential Real Property* [Docket No. 173].

[5] Any of the Tier II Stores may be sold pursuant to the Tier I Process.

result, the total number of interested parties that have executed non-disclosure agreements with the Debtors in connection with the Tier II Sale Process has already increased to 148, 35 of which are grocery retailers. It is rare for large amounts of valuable real estate assets to become available in the dense Northeast real estate market. Implementation of the Global Sale and Lease Rationalization Procedures will allow the Debtors to capitalize on this unique opportunity to generate significant value for the Debtors estates.

11. The Debtors anticipate that the Tier II Sale Process will result in sales of the more lucrative Tier II Stores pursuant to public auctions, and that other Tier II Stores, including those with valuable leasehold interests, will be sold on a stand-alone basis. The Global Sale and Lease Maximization Procedures were designed to allow the Debtors the flexibility to structure each transaction in the manner most likely to maximize value for the Debtors' estates, within the compressed timeline of these chapter 11 cases. It is my opinion that the Global Sale and Lease Maximization Procedures will, in fact, accomplish this goal. Hilco will work with the Debtors and Evercore to ensure coordination and attention to each party interested in a Tier II Store, including for going-concern sales of such stores.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2015, in Northbrook, Illinois.

/s/ Gregory S. Apter
Gregory S. Apter, President
Hilco Real Estate, LLC