KATTEN MUCHIN ROSENMAN LLP
Dustin P. Branch  *(pro hac vice pending)*
2029 Century Park East, Suite 2600
Los Angeles, California  90067
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

-and-

575 Madison Ave
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

Attorneys for Brixmor Properties Group, DLC Management Corp.,
Federal Realty Investment Trust, The Prudential Insurance Company
of America, and Acadia Realty Trust, and Alecta Real Estate Investments, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ x
|  | : |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **THE GREAT ATLANTIC & PACIFIC** | : |  |
| **TEA COMPANY, INC., et al.,** | : | **Case No. 15-23007 (RDD)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |

------------------------------------------------------ x

**LIMITED OBJECTION OF THE BRIXMOR PROPERTIES GROUP, DLC
MANAGEMENT CORP., FEDERAL REALTY INVESTMENT TRUST, THE
PRUDENTIAL INSURANCE COMPANY OF AMERICA, ACADIA REALTY TRUST,
AND ALECTA REAL ESTATE INVESTMENTS, LLC TO THE DEBTORS' MOTION
PURSUANT TO SECTIONS 105, 363, AND 365 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 6004 AND 6006 FOR APPROVAL OF GLOBAL SALE AND
<u>LEASE RATIONALIZATION PROCEDURES</u>**

The Brixmor Properties Group, DLC Management Corp., Federal Realty Investment

Trust, The Prudential Insurance Company of America, Acadia Realty Trust, and Alecta Real

Estate Investments, LLC (the "<u>Landlords</u>") hereby file this objection (the "<u>Objection</u>") to the

Debtors' Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy

- 1 –

Rules 6004 and 6006 for Approval of Global Sale and Lease Rationalization Procedures (the "Motion"),[1] and respectfully represent as follows:

## I.      BACKGROUND FACTS

1.      The Great Atlantic & Pacific Tea Company, Inc., and it affiliated co-debtors (the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on December 12, 2010.  The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.      The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the shopping center locations (the "Centers") set forth in detail in Schedule A hereto.

3.      Each Lease is a "lease of real property in a shopping center" as that term is used in Section 365(b)(3).  See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3d Cir. 1990).

4.      On July 20, 2015, the Debtors filed the Motion. Landlords do not object to expedited and uniform procedures for assumption and assignment of the Tier II Leases.  The Motion as drafted, however, does not adequately address critical Landlord rights and protections under the Leases, the Bankruptcy Code, and non-bankruptcy law as set forth below.  In addition to the below, and to the extent applicable, Landlords hereby incorporate by this reference their limited objection to the Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365 and 503 and Fed. R. Bankr. P. 2002, 6004 and 6006 for Approval of: (I) (A) Global Bidding Procedures, (B) Bid Protections, (C) Form and Manner of Notice of Sale Transactions and Sale Hearing, and (D) Assumption and Assignment Procedures; and (II) (A) Purchase Agreements, (B) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, and (C)

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Motion and accompanying documents.

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

Assumption and Assignment of Certain Executory Contracts and Leases (the "Sale Motion"), which is being filed concurrently herewith, as if the arguments raised therein were set forth in this Objection in full.

## II. ARGUMENT

### A. The assumption and assignment procedures should mirror the procedures negotiated in the prior bankruptcy case.

5. The Debtors filed a similar motion with respect to the potential assumption and assignment of leases in their prior bankruptcy case. The terms of that final order were extensively negotiated by Debtors and Landlords, and those agreed procedures should be adopted with respect to the Motion. In the prior case, Landlords and Debtors agreed that Landlords would receive ten (10) calendar days to object to any proposed cure and assumption and assignment of a lease, as opposed to the seven (7) provided in the Motion. In addition, the prior order provided for service of the Assumption and Assignment Notice to counsel for Landlords and for service by e-mail. Finally, the prior order provided that Assumption and Assignment Notice would include a delivery of adequate assurance information (which would be reviewed on a confidential basis), and a proposed form of order. Finally, the prior order provided that any hearing on unresolved objections would take place no earlier than ten (10) calendar days after the objection deadline. The above all represent agreements by mostly the same parties as the present case, and Landlords seek their adoption in these cases.

6. Any expedited process for the assumption and assignment of Leases must be predicated upon the Landlords actually receiving adequate assurance of future performance information that is sufficient to satisfy Section 365(b). The information proposed by the Debtors, as set forth below, does not satisfy Section 365(b). In the event that the Landlords do not receive adequate assurance of future performance information in a timely fashion that is sufficient to meet the burden of Section 365(b) and object, any initial hearing should serve as a status conference to set dates for discovery and further hearings so that Landlords may take any reasonable steps necessary to obtain the information required by Section 365(b).

**B.    The Debtor must provide adequate assurance of future performance information.**

7.      The Motion and proposed Global Sale and Lease Rationalization Procedures states that the Assumption and Assignment Notice will provide information demonstrating "a certification that each assignee has demonstrated to the Debtors the financial wherewithal and willingness to perform under such executory contract of unexpired lease." See Proposed Global Sale and Lease Rationalization Procedures at Section IV(A)(vi).  The Leases are shopping center leases and the Debtors must comply with Section 365(b), including Section 365(b)(3), in order to assume and assign the Leases.  See Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.), 367 F.3d 237 (4th Cir. 2004).  This result is also supported by the legislative history surrounding the enactment of the BAPCPA (as defined below) amendments in 2005.

8.      The Debtors may not assume and assign any of the Leases unless there is adequate assurance of future performance under the Leases. 11 U.S.C. § 365(b)(1)(C); See also 11 U.S.C. § 365(f)(2). The Debtors bear the ultimate burden of persuasion as to issues under Section 365.  *See* In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also* Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985).

9.      Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. See e.g., Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented);  In re Bygaph, Inc., 56 B.R. 596 (Bankr. S.D.N.Y. 1986).  Without this information, the Landlords are denied their statutory right to conduct a meaningful analysis of any proposed assignee.

10.      In this case, the Leases are shopping center leases, and as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Leases under Section 365(b)(1)(C), and more than simply demonstrating the financial wherewithal to perform under the Lease.  In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999). The heightened adequate assurance requirements that the Debtors must satisfy under Section 365(b)(3) includes the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. <u>See</u> 11 U.S.C. § 365(b)(3)(A);
- that any percentage rent due under the lease will not decline substantially. <u>See</u> 11 U.S.C. § 365(b)(3)(B);
- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. <u>See</u> 11 U.S.C. § 365(b)(3)(C); and
- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. <u>See</u> 11 U.S.C. § 365(b)(3)(D).

11.     These adequate assurance of future performance requirements must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). <u>Sun TV and Appliances, Inc.</u>, 234 B.R. at 370.

12.     In order to satisfy the adequate assurance of future performance requirements of the Bankruptcy Code, the information provided with the Assumption and Assignment Notice will need to provide Landlords, at a minimum, with: (i) the specific name of the proposed bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the store; (ii) the potential assignee's intended use for the space; (iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projection for the Lease subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Lease; (v) all documents and other evidence of the potential assignee's retail experience and experience operating in-line stores in a shopping center; and (vi) a contact person for the proposed assignee that Landlord may directly contact in connection with the adequate assurance of future performance.

13.     The items set forth above constitute a non-exclusive list of the minimum information the Landlords will need, but absent this information, the Debtors cannot carry their burden under Section 365 and Landlords cannot meaningfully assess a proposed assumption and assignment.

14.    The Landlords have additional concerns where the identity of a potential assignee of the Leases is unknown.  Such assignee may be a newly formed entity with no financial or operating history.  If so, the Landlords will require such assignee to demonstrate that it is willing to enter into some type of credit enhancement, such as: (i) a guaranty of future performance; (ii) a letter or credit; or (iii) a cash security deposit.  Landlords require that an existing entity with acceptable financing guaranty the performance of any newly-formed company.  In addition, pursuant to Section 365(l), the Landlords may require a security deposit or letter of credit as security for the performance of the assignee's obligations under the Leases in the event that the assignee fails to perform on a going-forward basis.   This is a reasonable condition of demonstrating adequate assurance of future performance where there is a potential assignee with no operating history.

**C.    Any assumption and assignment must comply with the terms of the Leases.**

15.    Through the BAPCPA[3] amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)."  Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).  In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center.  When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored.  Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

16.    The changes embodied in the BAPCPA specifically preserve a landlord's right to enforce lease provisions.  Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

---

[3] On October 17, 2005, the Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 (the "BAPCPA") went into effect, clarifying, *inter alia*, the protections that Landlords are entitled to under 11 U.S.C. § 365.

A shopping center operator. . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed.

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

17.     Bankruptcy courts must strictly enforce the use and other provisions in the Leases. This intent is echoed by comments from the House of Representatives, and the legislative history leaves no doubt that such provisions must be strictly enforced:

Section 404(b) amends § 365(f)(1) to assure that § 365(f) does not override any part of § 365(b). Thus, § 404(b) makes a trustee's [debtor-in-possession's] authority to assign an executory contract or unexpired lease subject not only to § 365(c), but also to § 365(b), which is given full effect. Therefore, for example, assumption or assignment of a lease of real property in a shopping center must be subject to the provisions of the lease, such as use clauses. (Emphasis added)

H.R. Rep. No. 109-31, pt. 1, at 87, reprinted in 2005 U.S. Code Cong. & Admin. News 153.

18.     The BAPCPA clarified Section 365 to reflect the Congressional intent that Section 365(f)(1) not be used by debtors to circumvent negotiated lease provisions. The language of Section 365(f), and any ability to assume and assign the Leases, is subject to the protections provided by Section 365(b)(1) and (3). Therefore, any assignment must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance, etc.

**D.     Any sale must not be free and clear of obligations to pay all charges due under the Leases, including unbilled year-end adjustments and reconciliations.**

19.     The Motion seeks authority for the assumption and assignment of the Leases to be free and clear of all claims. See Motion at ¶¶ 21 & 22. Landlords object to any assumption and assignment free and clear of Debtors' obligations to satisfy unbilled reconciliations and adjustments that have accrued under the Leases prior to assumption and assignment, but which have not yet been billed. The assignee must satisfy all charges due under the Leases, including charges which have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. The Debtors continue to be responsible for all such unbilled charges as they

come due under the Leases, and any assumption and assignment of the Leases cannot cut off the Landlords' right to recover unbilled charges that have accrued, or are accruing, under the Leases.

**E.      Landlords object to any waiver of Rules 6004(g) and 6006(d).**

20.      The Landlords object to any waiver of requirements of Federal Rule of Bankruptcy Procedure ("Rule") 6004(g) and 6006(d), especially to the extent it adversely affects the Landlords' appellate rights thereunder.  Such a waiver is unnecessary and inequitable.  These subsections were added to the Rules specifically to protect the rights of the objecting parties, and thus eliminate the "rush to the courthouse" to obtain stay orders by those parties adversely affected by entry of orders under Sections 363 or 365.  Landlords should not have their appellate rights compromised by an unnecessary and advance waiver of these protections, particularly since Debtors have not established any cause for such a waiver.

**F.      Reservation of rights to raise further objections.**

21.      In addition to the above, Landlords reserve all rights with respect to any objections, including but not limited to: (i) raising all appropriate objections at the time of any proposed assumption and assignment of any Lease; (ii) raising all objections to deficiencies in the receipt of adequate assurance of future performance information; (iii) objecting to the form of any documents and order proposed in connection with any request for assumption and assignment; (iv) object to any designation rights procedures that impacts that Leases; and (v) requiring any proposed assumption and assignment to comply with all lease terms.

## III.    CONCLUSION

The Court should modify the Motion to incorporate the objections raised above and adequately protect the rights of Landlords, and grant such further relief as the Court deems proper.

Dated:  August 3, 2015

**KATTEN MUCHIN ROSENMAN LLP**
By:     /s/ Dustin P. Branch

Dustin P. Branch *(pro hac vice pending)*
2029 Century Park East, Suite 2600
Los Angeles, California  90067
Phone: (310) 788-4400
FAX: (310) 788-4471

575 Madison Ave
New York, New York 10022
Phone: (212) 940-8800
FAX: (212) 940-8776

*Attorneys for Brixmor Properties Group, DLC Management, Federal Realty Investment Trust, The Prudential Insurance Company of America, Acadia Realty Trust, and Alecta Real Estate Investments, LLC*

## SCHEDULE A

| Store Number | Center Name | City, State |
|---|---|---|
| **Brixmor Properties Group** | | |
| 70826 | Fresh Market | Clark, NJ |
| 72293 | Highridge Center | Yonkers, NY |
| Unknown | Ivyridge Plaza | Philadelphia, PA |
| 72578 | Laurel Square Shopping Center | Brick, NJ |
| 70151 | Mamaroneck Center | Mamaroneck, NY |
| 70277 | Suffolk Plaza | East Setauket, NY |
| 70167 | Unity Plaza | East Fishkill, NY |
| **DLC Management Corp.** | | |
| 70164 | Mahopac Village Centre | Mahopac, NY |
| **Federal Realty Investment Trust** | | |
| 70802 | Brick Plaza | Brick, NJ |
| 70217 | Greenlawn Plaza | Greenlawn, NY |
| 70298 | Melville Mall | Huntington, NY |
| 72282 | Troy Hills | Parsippany, NJ |
| **Alecta Real Estate Investments, LLC** | | |
| 72649 | New Hyde Park | New Hyde Park, NY |
| **Acadia Realty Trust** | | |
| 72181 | Elmwood Park | Elmwood Park, NJ |
| 70107 | Cortlandt Town Center | Mohegan Lake, NY |
| **The Prudential Insurance Company of America** | | |
| 70761 | 55 Riverwalk | West New York, NJ |

US_110025165_1_203280_00001 8/3/2015 6:37 AM