KATTEN MUCHIN ROSENMAN LLP
Dustin P. Branch  *(pro hac vice pending)*
2029 Century Park East, Suite 2600
Los Angeles, California  90067
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

   -and-

575 Madison Ave
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

Attorneys for Brixmor Properties Group, DLC Management Corp.,
Federal Realty Investment Trust, The Prudential Insurance Company
of America, and Alecta Real Estate Investments, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------ x
                                                       :
In re:                                                 :          Chapter 11
                                                       :
THE GREAT ATLANTIC & PACIFIC                           :
TEA COMPANY, INC., et al.,                             :          Case No. 15-23007 (RDD)
                                                       :
                 Debtors.                              :          (Jointly Administered)
                                                       :
------------------------------------------------------ x
```

**LIMITED OBJECTION OF THE BRIXMOR PROPERTIES GROUP, DLC
MANAGEMENT CORP., FEDERAL REALTY INVESTMENT TRUST, THE
PRUDENTIAL INSURANCE COMPANY OF AMERICA, AND ALECTA REAL
ESTATE INVESTMENTS, LLC TO THE MOTION OF DEBTORS PURSUANT TO 11
U.S.C. §§ 105, 363, 365 AND 503 AND FED. R. BANKR. P. 2002, 6004 AND 6006 FOR
APPROVAL OF: (I) (A) GLOBAL BIDDING PROCEDURES, (B) BID PROTECTIONS,
(C) FORM AND MANNER OF NOTICE OF SALE TRANSACTIONS AND SALE
HEARING, AND (D) ASSUMPTION AND ASSIGNMENT PROCEDURES; AND (II) (A)
PURCHASE AGREEMENTS, (B) SALE OF CERTAIN OF THE DEBTORS' ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, AND
(C) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
<u>AND LEASES</u>**

　　　　The Brixmor Properties Group, DLC Management Corp., Federal Realty Investment

Trust, The Prudential Insurance Company of America, and Alecta Real Estate Investments, LLC

(the "<u>Landlords</u>") hereby file this limited objection (the "<u>Objection</u>") to the Motion of Debtors

- 1 –

Pursuant to 11 U.S.C. §§ 105, 363, 365 and 503 and Fed. R. Bankr. P. 2002, 6004 and 6006 for Approval of: (I) (A) Global Bidding Procedures, (B) Bid Protections, (C) Form and Manner of Notice of Sale Transactions and Sale Hearing, and (D) Assumption and Assignment Procedures; and (II) (A) Purchase Agreements, (B) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, and (C) Assumption and Assignment of Certain Executory Contracts and Leases (the "Sale Motion"),[1] and respectfully represent as follows:

## I.     INTRODUCTION AND SUMMARY OF LANDLORD OBJECTIONS

Landlords do not seek to prevent the Debtors from conducting an expeditious and thorough marketing and sale of their leases or other assets. Any such expedited sale process, however, must ensure that Landlords receive sufficient information to vet potential assignees as required by the Bankruptcy Code, and that they receive adequate assurance of future performance information in time to review such information prior to any objection deadline. While the Global Bidding Procedures Order and Global Bidding Procedures provide clear deadlines for Landlord to object to assumption and assignment and adequate assurance information, neither the proposed Global Bidding Procedures Order or Global Bidding Procedures require Debtors to provide Landlords with adequate assurance information prior to the proposed objection deadlines. Landlords should receive this information at least ten (10) days prior to any objection deadline. In addition, while the Global Bidding Procedures contemplate bids on individual leases, the typical procedures for Landlords to bid on their own leases are not included. Landlords should have the ability to bid on their own Leases without providing further documentation, and to credit bid on such lease without providing any deposit.

## II.    BACKGROUND FACTS

1.     The Great Atlantic & Pacific Tea Company, Inc., and it affiliated co-debtors (the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion, the Bidding Procedures and accompanying documents.

States Code on July 20, 2015. The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2. The Debtors lease space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the shopping center locations (the "Centers") set forth in Schedule A hereto.

3. Each Lease is a "lease of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3d Cir. 1990).

4. On July 20, 2015, the Debtors filed the Sale Motion [Docket No. 26]. The Sale Motion seeks a multi-track sales process, and identifies three (3) separate stalking horse bidders (The "Stalking Horse Bidders") for certain of the Leases. The Landlords do not necessarily object to the sale to the Stalking Horse Bidders, or any other sale, but the proposed Global Bidding Procedures deny Landlords essential protections afforded by the Bankruptcy Code and the Leases. As a result, the Court should modify the proposed procedures and timing to adequately protect all parties' rights under the Bankruptcy Code.

III.   ARGUMENT

A.   **The proposed auction and sale schedule does not adequately protect Landlords.**

5. The timetable proposed by the Debtors does not provide adequate time for the Landlords to make an informed decision as to the ability of any successful bidder to perform under the Leases (much less to file any meaningful objection or conduct discovery). The proposed schedule below should be modified to provide Landlords the protections to which the Bankruptcy Code provides them as the party that will have to conduct business with the eventual assignee on a going forward basis.
.
- August 14, 2015 – Deadline to serve Global Notice and Cure Notice.
- August 24, 2015 – Deadline for providing non-binding indications of interest.
- September 11, 2015 – Deadline to object to sale transactions, cure amounts, and the assumption and assignment of leases to stalking horse bidders.

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

- September 11, 2015 – Global Bid Deadline.
- September 18, 2015 – Deadline to publish baseline bids and auction stores.
- September 21, 2015 – Debtors will serve Additional Cure Notice.
- September 22, 2015 – Tier I Sale hearing (if no other qualified bids received).
- September 24 and 25, 2015 – Auction dates for any competitive bids.
- September 28, 2015 – Deadline to object to Additional Cure Notice.
- September 29, 2015 – Deadline to object to adequate assurance of future performance as to any successful bidder other than stalking horse bidders.
- October 1, 2015 – post-auction Sale hearing.

6.      The proposed schedule unnecessarily prejudices Landlords' rights and interests and is inconsistent with Section 365. The Schedule should be modified to require that Landlords receive adequate assurance information in time to review and prepare a meaningful objection, if necessary, to any proposed assignee. While the schedule provides a deadline for Landlords to object to proposed cure amounts and adequate assurance, the proposed Global Bidding Procedures do not require any bidder to provide adequate assurance as part of its bid packages or require Debtors to provide Landlords with any adequate assurance information to satisfy Section 365(b) prior to the proposed objection deadlines.  Without receipt of this information prior to the objection deadlines, any adequate assurance objection becomes simply a generalized objection requesting adequate assurance information prior to any substantive hearing.  The procedures also do not provide time for Landlords to conduct discovery to gather necessary information to contest any assumption and assignment if that information is not provided voluntarily.

7.      This issue is easily remedied with respect to the Stalking Horse Bidders by amending the procedures to require that Landlords receive adequate assurance information with respect to Stalking Horse Bidders at least 10 days prior to the proposed objection deadline in the manner set forth below.  However, in the event that another party is the successful at the auction with respect to the leases subject to stalking horse bids, or if the Debtors receive bids for other leases, there is only two (2) business days between the proposed conclusion of the auction and proposed deadline to object to adequate assurance information.

**B.      The Debtors must provide adequate assurance of future performance information, and must do so prior to any objection deadline.**

8.      Neither the Sale Motion, Global Bidding Procedures, nor the Global Bidding Procedures Order require that Landlords receive adequate assurance of future performance

information.  The Sale Motion states that the Debtors will "to the extent necessary" "proffer testimony or present evidence to demonstrate the ability of each Successful Bidder to perform under the applicable Transferred Contracts and Additional Contract." See Sale Motion at ¶ 50. This does not satisfy the requirements of Section 365(b), especially with respect to shopping center leases as discussed below, and the proposed Global Bidding Procedures should require that Landlords receive adequate assurance information in advance of any objection deadline.[3]

9.      Landlords must receive adequate assurance of future performance information far enough in advance of an objection deadline to conduct a meaningful analysis of such information, as well as due diligence of the proposed assignee of any Lease.

10.      In order to satisfy the adequate assurance of future performance burden discussed below, the Landlords must receive (for any bidder), at a minimum, the following information:

(i)      the specific name of the proposed bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the store;
(ii)     the potential assignee's intended use for the space;
(iii)    audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto;
(iv)     cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projection for the Lease subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Leases;
(v)      all documents and other evidence of the potential assignee's retail experience and experience operating in-line stores in a shopping center; and
(vi)     a contact person for the proposed assignee that Landlord may directly contact in connection with the adequate assurance of future performance.

11.      The above constitutes a non-exclusive list of the minimum information Landlords need to assess the bona fides of any potential assignee, and Debtors cannot carry their burden under Section 365 without providing this information.  Landlords reserve the right to request further information that they deem necessary to make an informed decision as to the ability of a potential assignee to satisfy the requirements of Section 365.

---

[3] If Landlords do not have sufficient information (or time) to make a determination as to a proposed assignee, or if the proposed assignee is unacceptable, Landlords will need to object to the proposed assignment and prepare for a contested evidentiary hearing.  In preparation of such evidentiary hearing, Landlords will need to conduct expedited discovery, arrange for expert testimony, and file supplemental objections based upon the information actually produced.  This process cannot be accomplished on Debtors' proposed schedule.

12.     Landlords request that they receive adequate assurance information at least ten (10) days before any objection deadline, or the Sale Hearing should serve as a status conference to set a schedule for obtaining adequate assurance information, and setting a further sale hearing.

**C.     The Debtors' carry the adequate assurance of future performance burden.**

13.     The Debtors may not assume and assign the Leases unless there is adequate assurance of future performance under the Leases. 11 U.S.C. § 365(b)(1)(C); see also 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. See In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); see also Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985). This obligation to comply with Section 365(b) and Section 365(f) is unaffected by maneuvering the assumption and assignment process through a sale under Section 363.

14.     Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. See e.g., Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented); In re Bygaph, Inc., 56 B.R. 596 (Bankr. S.D.N.Y. 1986) (court granted motion to assume and assign based on assignee's capital contribution, personal financial resources, and expressed willingness to devote sufficient funding which gave new restaurant a strong likelihood of succeeding, coupled with assignee's experience as an owner/operator of a successful restaurant and his family's planned involvement in the day-to-day management).

**D.     Section 365(b)(3) entitles Landlords to heightened adequate assurance information.**

15.     In addition to the above, the Leases are shopping center leases and, as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Leases under Section 365(b)(1)(C).[4]   In re Sun TV and Appliances, Inc., 234 B.R. 356, 359

---

[4] Although "shopping center" is not a term defined by the Bankruptcy Code, courts making the determination of what development constitutes a shopping center have considered a variety of factors. See Joshua Slocum, 922

(Bankr. D. Del. 1999). In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D). See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 291, 299 (3rd Cir. 2000). The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);
- that any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);
- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

---

F.2d at 1086-1087, Sun TV and Appliances, Inc., 234 B.R. at 359, and In re Goldblatt Bros., Inc., 766 F.2d 1136, 1140-41 (7th Cir. 1985). The leading bankruptcy treatise found that "the most important characteristic will be a combination of leases held by a single landlord, leased to commercial retail distributors of goods, with the presence of a common parking area." Joshua Slocum, 922 F.2d at 1088, citing 2 Collier on Bankruptcy ¶ 365.04[3]. If disputed, Landlords are prepared, either by an offer of proof or direct testimony, to establish that the Centers are in fact shopping centers as that term is used in Section 365, and that the Leases are shopping center leases. In the first instance, Landlords have the burden of proving that the Centers are shopping centers for purposes of Section 365(b)(3). Courts making the determination of what development constitutes a shopping center have considered a variety of factors. Those factors include, but are not limited to:

(a) the existence of a combination of leases for the stores;
(b) the fact that all leases are held by single landlord;
(c) the fact that all tenants are engaged in commercial retail distribution of goods;
(d) the presence of common parking area;
(e) the purposeful development of premises as shopping center;
(f) the existence of a master lease;
(g) the existence of fixed hours during which all stores are open;
(h) the existence of joint advertising;
(i) the contractual interdependence of tenants, as evidenced by restrictive use provisions in their leases;
(j) the existence of percentage rent provisions in leases;
(k) the right of tenants to terminate their leases if anchor tenant terminates its lease;
(l) the joint participation by tenants in trash removal and other maintenance;
(m) existence of tenant mix, and
(n) a contiguity of stores.

See Joshua Slocum, 922 F.2d at 1086-1087, and Sun TV and Appliances, Inc., 234 B.R. 356, and Goldblatt Bros., Inc., 766 F.2d at 1140-41. Landlords submit that the overwhelming majority of the Leases are in shopping center under the criteria set forth above.

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

16. This heightened adequate assurance of future performance determination must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). <u>Sun TV and Appliances, Inc.</u>, 234 B.R. at 370. And, in connection with the heightened adequate assurance requirement for shopping center leases, courts do require a specific factual showing through competent evidence to determine whether the Debtors have provided adequate assurance of future performance. <u>Matter of Haute Cuisine, Inc.</u>, 58 B.R. at 394. Without receiving the information required by Section 365(b)(1) & (b)(3), Landlords cannot conduct the meaningful analysis that the Bankruptcy Code is intended to provides them.

17. Debtors can provide adequate assurance information to Landlords prior to the proposed objection deadlines. Debtors can circulate adequate assurance information for the Stalking Horse Bidders at the time it serves the Cure Notice. Debtors can require other bidders to include adequate assurance information in their bid packages, which Debtors can provide to affected landlords at the Bid Deadline, or at the latest, along with the Additional Cure Notice. If there are any other bidders that surface, the Court should schedule a further hearing so that Landlords have time to review adequate assurance from any such party, and object, if necessary. Any final procedures and order should specify that Landlords will keep the adequate assurance information confidential as is customary in retail bankruptcy cases. Providing adequate assurance information prior to any objection deadlines benefits all parties by facilitating resolution of any adequate assurance issues and avoiding unnecessary objections.

18. In the absence of Landlords receiving adequate assurance information in time to review and prepare any necessary objections. Landlords request that the scheduled Sale Hearing serve as a status conference to set expedited discovery, a briefing schedule, and a further hearing for any Leases where assumption and assignment is contested by Landlords.

**E.     Any final procedures should provide provisions for a Landlord to bid on its Lease.**

19. The Sale Motion and Global Bidding Procedures provide that Debtors will accept bids for all stores, either individually or in a package. Therefore, any final order or procedures

should include separate procedures for a Landlord bidding on its own Lease, as is customary in lease auction procedures. Landlords are the fee simple owner of the leased premises and are in a different position than other bidders – at least with respect to bidding on their own lease. Landlords should not need to provide any prior indication of interest, and they do not need access to due diligence information for such a lease. Landlords should not need to provide financial information, adequate assurance of future performance information or any other information to bid on their own Leases. In addition, Landlords should be entitled to credit bid any portion of the outstanding amounts owed under the Leases without the need of submitting a deposit. Landlords should only be required to submit a letter stating their intent to bid on their Leases and execute an agreeable form of lease termination or other agreement, and providing the amount of any proposed credit or other bid, in order for their bid to be a Qualified Bid and for such Landlord to be a Qualified Bidder entitled to appear and participate at the auction.

**F.      The cure procedure requires modification.**

20.      The Debtors propose to serve a Cure Notice, and if necessary an Additional Cure Notice, on all non-debtor counterparties to the Leases. The Debtors intend to serve these notices by first class mail, but they do not propose to serve either notice on counsel. While the Global Bidding Procedures Order provides that the Debtors will file the Cure Notice with the Court, it does not provide that the Additional Cure Notice will be filed with the Bankruptcy Court. Landlords do no object to a reasonable cure procedure, but especially in light of the proposed deadline for objections to the Additional Cure Notices, Debtors should file both the Cure Notice and Additional Cure Notice with the Bankruptcy Court, and the notices should be served by email on Landlords and their counsel. Landlords have no way of knowing what address the Debtors have for service, and in many instances, a debtors simply sends notices to the address they use for payments – typically a lockbox at a bank. In the case of such service, Landlords either never receive notices, or only receive them after a lengthy delay. By filing the notices and serving them on counsel, where known, this notice issue does not materialize.

**G.     Any assumption and assignment must comply with the terms of the Leases.**

21.     Through the BAPCPA[5] amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)."  Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).  In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center.  When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored.  Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

22.     The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions.  Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator. . . must be given broad leeway to determine the mix of retail tenants it leases to.  Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy.  It is my understanding that some bankruptcy judges have not followed this mandate.  Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed.

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

23.     As set forth above, bankruptcy courts must strictly enforce the use and other provisions in the Leases.  This intent is echoed by comments from the House of Representatives, and the legislative history leaves no doubt that such provisions must be strictly enforced:

> Section 404(b) amends § 365(f)(1) to assure that § 365(f) does not override any part of § 365(b).  Thus, § 404(b) makes a trustee's [debtor-in-possession's] authority to assign an executory contract or unexpired lease subject not only to § 365(c), but also to § 365(b), which is given full effect.  <u>Therefore, for example, assumption or assignment of a lease of real property in a shopping center must be subject to the provisions of the lease, such as use clauses</u>. (Emphasis added)

---

[5] On October 17, 2005, the Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 (the "<u>BAPCPA</u>") went into effect, clarifying, *inter alia*, the protections that Landlord is entitled to under 11 U.S.C. § 365.

H.R. Rep. No. 109-31, pt. 1, at 87, reprinted in 2005 U.S. Code Cong. & Admin. News 153.

24.     The BAPCPA clarified Section 365 to reflect Congressional intent that Debtors not use Section 365(f)(1) to avoid lease provisions. The language of Section 365(f), and any ability to assume and assign the Leases, is subject to the protections of Section 365(b)(1) and (3). It does not modify Section 365(b). <u>Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)</u>, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections Section 365(b)(3)(C) grants landlords). Therefore, any assignment must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance, etc.

25.     The Debtors make a blanket request that the Court render "anti-assignment" provisions unenforceable. <u>See</u> Sale Motion at ¶ 51. Landlords understand that the Stalking Horse Bidders will continue to operate the stores as grocery stores, so there should be little, if any, issues with respect to the continuing use of these stores. That said, since there is no pending contested hearing for any Lease, and no pending dispute with respect to the language of any Lease, there is no reason for any prospective blanket ruling concerning the enforceability of any lease provision at this time.

26.     The revisions to Section 365 make it clear that the Debtors cannot use Section 365(f) to render lease provisions unenforceable. While certain provisions may indirectly limit the assignment of the Leases, Section 365(b) specifically protects these provisions. Provisions governing use, radius and the permitted conduct upon the Premises, therefore, are not anti-assignment provisions and Section 365(f) does not render them unenforceable. These are provisions negotiated in good faith that legitimately preserve the Landlords' control over shopping center environments. Section 365(b)(3) no longer permits even insubstantial breaches of provisions such as use, radius, location or exclusivity. These critical lease terms are enforceable under Section 365(b), and this Court should deny any attempted assignment that fails to comply with such provisions, as well as any language in an order that prospectively renders lease provisions unenforceable.

**H.** **Any sale must not be free and clear of obligations to pay all charges due under the Leases, including unbilled year-end adjustments and reconciliations.**

27.     The Sale Motion seeks authority for the sale the leases free and clear of liens, claims and encumbrances. <u>See</u> Sale Motion at ¶ 37. Landlords object to any sale free and clear of the obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, but which have not yet been billed. Debtors continue to be responsible for all such unbilled charges as they come due under the Leases, and the Debtors, or any successful bidder must continue to satisfy all charges due under the Leases, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Leases cannot cut off the Landlords' right to recover unbilled charges that have accrued, or are accruing, under the Leases. If the sale is not subject to these reconciliation and adjustment claims, it is unlikely that these legitimate lease charges will get paid to the Landlords.

28.     Finally, the Leases provide that Debtors must indemnify and hold Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by Debtors or their agents. Any order approving the assumption and assignment of the Leases must provide that the assumption and assignment is pursuant to the terms of the Leases, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose. In the alternative, Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any such claims that relate to the period prior to any assumption and assignment of the Leases.

29.     Therefore, any sale and/or assignment order must specify that these charges and obligations will survive the assumption and assignment of any of the Leases.

## IV. RESERVATION OF RIGHTS TO RAISE FURTHER OBJECTIONS

30. In light of the objections raised above, Landlords reserve all rights to: (i) raise additional objections in connection with any sale hearing and assumption and assignment of the Leases; (ii) raise further objections to an assignment of Leases to any successful bidder upon receipt of adequate assurance of future performance information; (iii) require any proposed assumption and assignment to comply with all lease terms; and (iv) to object to any designation procedure that affects the Leases.

## V. JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

31. To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

## VI. CONCLUSION

The Court should modify the sale procedures and auction procedure to incorporate the objections raised above and adequately protect the rights of Landlords, and grant such further relief as the Court deems proper.

Dated: August 3, 2015

**KATTEN MUCHIN ROSENMAN LLP**
By:＿＿＿/s/ Dustin P. Branch＿＿＿＿＿＿＿＿

Dustin P. Branch *(pro hac vice pending)*
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Phone: (310) 788-4400
FAX: (310) 788-4471

575 Madison Ave
New York, New York 10022
Phone: (212) 940-8800
FAX: (212) 940-8776

*Attorneys for Brixmor Properties Group, DLC Management, Federal Realty Investment Trust, The Prudential Insurance Company of America, and Alecta Real Estate Investments, LLC*

## SCHEDULE A

| Brixmor Properties Group | | |
|---|---|---|
| **Store Number** | **Center Name** | **City, State** |
| 70826 | Fresh Market | Clark, NJ |
| 72293 | Highridge Center | Yonkers, NY |
| Unknown | Ivyridge Plaza | Philadelphia, PA |
| 72578 | Laurel Square Shopping Center | Brick, NJ |
| 70151 | Mamaroneck Center | Mamaroneck, NY |
| 70277 | Suffolk Plaza | East Setauket, NY |
| 70167 | Unity Plaza | East Fishkill, NY |
| **DLC Management Corp.** | | |
| 70164 | Mahopac Village Centre | Mahopac, NY |
| **Federal Realty Investment Trust** | | |
| 70802 | Brick Plaza | Brick, NJ |
| 70217 | Greenlawn Plaza | Greenlawn, NY |
| 70298 | Melville Mall | Huntington, NY |
| 72282 | Troy Hills | Parsippany, NJ |
| **Alecta Real Estate Investments, LLC** | | |
| 72649 | New Hyde Park | New Hyde Park, NY |
| **The Prudential Insurance Company of America** | | |
| 70761 | 55 Riverwalk | West New York, NJ |