Belkin Burden Wenig & Goldman, LLP
Attorneys for Allied Jackson Heights LLC
S. Stewart Smith
270 Madison Avenue
New York, New York 10016
T: (212) 867-4466
F: (212) 867-0709

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-23007 (RDD)<br><br>(Jointly Administered) |

**ALLIED JACKSON HEIGHTS LLC's LIMITED OBJECTION AND JOINDER TO OBJECTIONS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363, 365 AND 503 AND FED. R. BANKR. P. 2002, 6004 AND 6006 FOR APPROVAL OF (I) (A) GLOBAL BIDDING PROCEDURES, (B) BID PROTECTIONS, (C) FORM AND MANNER OF NOTICE OF SALE TRANSACTIONS AND SALE HEARING, AND (D) ASSUMPTION AND ASSIGNMENT PROCEDURES; AND (II) (A) PURCHASE AGREEMENTS (B) SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, AND (C) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES**

Allied Jackson Heights LLC ("Landlord"), by and through its undersigned counsel, hereby joins with other landlord objections to the Debtors' motion pursuant to 11 U.S.C. §§ 105, 363, 365 and 503 and Fed. R. Bankr. P. 2002, 6004 And 6006 for entry of an Order approving (I) (A) Global Bidding Procedures, (B) Bid Protections, (C) Form and Manner of Notice of Sale Transactions and Sale Hearing, and (D) Assumption and Assignment Procedures; and (II) (A) Purchase Agreements (B) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, and (C) Assumption and Assignment of Certain

Executory Contracts and Leases (the "Motion"). In opposition to Debtors' Application, Landlord states the following:

## Preliminary Statement

1. On July 19, 2015, The Great Atlantic & Pacific Tea Company, Inc. and its various subsidiaries and affiliates filed voluntary chapter 11 petitions for relief in this Court. The above-referenced cases are being jointly administered under case no. 15-23007 (RDD).

2. Debtors have entered into stalking horse agreements with Acme Markets, Inc., The Stop & Shop Supermarket Company, LLC and Key Food Stores Co-Operative, Inc. (each referred to as a "Stalking Horse Bidder").

3. A number of its store leases were separated into Stalking Horse Packages, whereby the Stalking Horse Bidder, has submitted a bid for a group of leases (the "Stalking Horse Packages").

4. Landlord, as landlord and Debtor, A & P Real Property, LLC, as tenant, are parties to a non-residential lease dated October 9, 1969, for the property located at and known as 75-55 31st Street, Jackson Heights, New York (the "Premises"), as subsequently amended and assigned (the "Lease").

5. According to Exhibit A attached to the Motion, the Lease appears as item 14 (Store No. 70641) in the list of leases contained in the Key Food Stores Co-Operative, Inc. Stalking Horse Package.

6. Landlord submits this limited objection to certain elements of the proposed Bidding Procedures Order (the "Order") attached as Exhibit B to the Motion and Global Bidding Procedures attached as Exhibit 1 to the Order (the "Bidding Procedures").

## Relevant Background

7.  Landlord[1] entered into a lease with Food Fair Stores, Inc. for the Premises dated October 9, 1969 May 12, 1993 (the "Original Lease"). The initial term of the Original Lease was fifteen (15) years

8.  The parties subsequently executed a Lease Modification Agreement dated July February 1, 1979 which recognized the assignment of the Lease from Food Fair Stores, Inc. to Shopwell, Inc. as tenant. The lease term was also extended to September 30, 1985.

9.  By Assignment and Assumption Agreement dated January 11, 1988, Shopwell, Inc. assigned the Lease to Waldbaum, Inc.

10. Pursuant to an Amendment of Lease dated December 22, 1988, the parties contemplated an expansion of the rental space, and the lease was extended from October 1, 2000 through September 30, 2005 with an option to further renew through September 30, 2015.

11. The Amendment of Lease dated December 22, 1988, was cancelled and supplemented with the Third Amendment of Lease dated December 26, 1991. Waldbaum, Inc. was provided with the option of renewing the Lease from October 1, 2000 through September 30, 2005, with an option for a further renewal period of October 1, 2005 through September 30, 2015.

12. Landlord and Waldbaum, Inc. executed an Extension and Amendment to Lease dated November 30, 2004 which extended the Lease to September 30, 2015 with the option to further renew the Lease for the period of October 1, 2015 to September 30, 2020 at a fixed rent

---

[1] The Landlord under the Original Lease, a is denominated as Jackson Heights Shopping Center, Inc., whose name was subsequently changed to Jackson Heights Shopping Center, Co. On March 15, 2005, Jackson Heights Shopping Center Co. was converted to Jackson Heights Holdings, LLC. On April 5, 2005, Jackson Heights Holdings, LLC assigned a package of leases, including the Original Lease as amended, to Allied Jackson Heights LLC.

of rent of $37,959.50 per month plus 1½% of excess gross sales, real estate escalations and a pro-rata share of the common area expenses. Waldbaum, Inc. was also granted the option to extend the Lease for an additional term of October 1, 2020 to September 30, 2025 at a market rate rent.

13. A&P Real Estate Property, LLC ("A&P") became a guarantor of the Lease pursuant to a written Guaranty dated March 13, 2012.

14. By letter dated March 22, 2012, the Lease was assigned by Waldbaum, Inc. to A&P and by letter dated August 6, 2014, A&P informed Landlord that it was exercising its option to renew the Lease from October 1, 2015 to September 30, 2020.

15. Pursuant to the Original Lease, as amended and modified (collectively, the "Lease"), A&P is contractually obligated and liable to Allied and responsible for all obligations under the Lease.

## Limited Objection

### A. The Cure Amount Must Include End of the Year Adjustments and Procedures

16. Section 365(b)(1) provides that a debtor may not assume an unexpired lease on which there has been a default unless it: (a) cures the default or provides adequate assurance that the default will be promptly cured; (b) compensates or provides adequate assurance that any pecuniary loss of the counterparty resulting from the default will be promptly compensated; and (c) provides adequate assurance of future performance under the unexpired lease. 11 U.S.C. §365(b)(1). The concept of pecuniary loss includes compensation for attorneys' fees due under the Lease. *See In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2001)("courts have held that attorneys' fees are recoverable as part of a cure claim only if the contract or lease

specifically requires their payment")(*citing In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993). Pursuant to §365(f)(2)(A), a debtor may not assign an unexpired lease unless it first assumes the lease in accordance with the provisions of §365. To the extent a lease is assumed and assigned, the buyer must take the assignment of the lease subject to all terms and conditions, as well as pay all outstanding obligations owing under the lease.

17. To the extent that rent, attorneys' fees or other charges continue to accrue, the Landlord reserves the right to amend and/or supplement the Cure Amount to reflect such additional amounts or to account for year-end adjustments that have not yet been billed or have not yet become due under the Lease. The Landlord requests that the Debtors, or their successors, be required to comply with all contractual obligations to indemnify and hold the Landlord harmless with respect to events that may have occurred pre- or post-petition but that are not now known to either the Landlord or the Debtors as of the date of the assumption including, without limitation, claims for personal injury that occurred at the Building, and presently unknown damage and/or destruction to the Building.

18. Landlord respectfully requests that as a condition to closing any sale of the Lease to a third party, the Debtors be directed to cure all fixed rent, additional rent owed, gross receipt rent, maintenance for common areas, and real estate tax escalations, if any, owed as a condition to the assignment, and that an appropriate reserve be placed in escrow to address cure amounts that become liquidated post-closing. For these reasons, Landlord objects to having a hearing on its cure amount held before all cure claims are ascertainable.

### B. *The Debtors must provide adequate assurance of future performance*

19.    The Debtors may not assume and assign the Lease unless the Landlord has been provided with adequate assurance of future performance under the Lease. 11 U.S.C. § 365(b)(1)(C); see also 11 U.S.C. § 365(f)(2). The Debtors bear the ultimate burden of persuasion as to issues under § 365. *See In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing Co. v. Capital bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

20.    This is especially so where shopping center leases are concerned, which call for enhanced adequate assurance of future performance pursuant to 11 U.S.C. § 365(b)(1)(C). *See, In re Sun TV & Appliances, Inc.*, 234 B.R. 356 (Bankr. D. Del. 1999).

21.    Pursuant 11 U.S.C. § 365(b)(3), at a minimum, Debtor is required to substantiate: (1) the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantor(s), if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. [*see* 11 U.S.C. § 365(b)(3)(A)]; (2) that any percentage of the rent due under the lease will not decline substantially, [*see* 11 U.S.C. § 365(b)(3)(B)]; (3) that the assumption and assigning of the lease is subject to all provisions thereof, including but not limited to, provisions such as radius, location, use, or exclusivity provision, and will not breach any such provision in any other lease, financing agreement, or master agreement relating to such shopping center [*see* 11 U.S.C. § 365(b)(3)(C)]; and (4) that the assumption and assignment of the lease will not disrupt the tenant mix or balance of the shopping center [*see* 11 U.S.C. § 365(b)(3)(D)].

22.     Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented); *In re Bygaph, Inc.*, 56 B.R. 596 (Bankr. S.D.N.Y. 1986) (court granted motion to assume and assign based on assignee's capital contribution, personal financial resources, and expressed willingness to devote sufficient funding which gave new restaurant a strong likelihood of succeeding, coupled with assignee's experience as an owner/operator of a successful restaurant and his family's planned involvement in the day-to-day management).

### C. The Landlord Must be Afforded a Fair Opportunity to Conduct Discovery of the Successful Bidder

23.     Without meaningful information regarding the proposed assignee's financial wherewithal and operational experience, the Landlord is denied its statutory right to conduct a meaningful analysis of any future performance to be rendered by the proposed assignee. The proposed timeline for the auction and sale of Debtors' leases does not provide sufficient notice to lessors. Landlord submits that the proposed timeline denies the Landlord fundamental due process[2] and must be amended.

24.     The Court should require the Debtors to provide Landlord with both adequate assurance of future performance information for the successful bidder and sufficient time to analyze such information. In order to preserve Landlord's due process rights, it must be

---

[2] Fundamental concepts of due process require that "notice must be reasonably calculated to apprise interested parties of the pendency of an action and to afford them an opportunity to present objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). *See also* Sullivan v. Barnett, 139 F.3d 158, 171 (3d Cir. 1998) (due process requires notice and a meaningful opportunity to be heard).

provided with and have ample time to review, all information and evidence upon which the Debtors and the successful bidder intend to rely upon to establish adequate assurance of future performance under §365 (e.g. name of bidder and name under which it proposes to operate, intended use of the leasehold space, audited financials and annual reports for at least the past 3 years, cash flow projections, business plans, evidence of retail experience and experience of operation in shopping centers, contact person, etc.). The information and supporting documentation should be delivered to Landlord no later than ten (10) business days prior to the Sale Hearing.

25.    Unfortunately, paragraph 16 of the Proposed Order attached to the Motion provides that objections to cure costs and/ the provision of adequate assurance of future performance are required to be filed by September 11, 2015, notwithstanding that nowhere is it stated when Debtor will provide the Stalking Horses' evidence of adequate assurance of future performance will be provided and that the for a successful bidder other than the Stalking Horse, the deadline is extended to 2-days before the scheduled Sale Hearing (i.e. September 29, 2015) which is merely 4-dyas after the conclusion of the auction.

26.    The Debtors' proposed timeline denies the Landlord a meaningful opportunity to review and evaluate the Successful Bidder's ability to adequately perform all obligations under the Lease following the assignment. The Landlord should be afforded an opportunity to conduct discovery, draft and file an objection, and prepare for a contested assignment hearing[3].

---

[3] The Debtors' proposal to provide the Landlord with notice of all Potential Purchasers on or before December 21, 2011 at 3 p.m. is no solution. First, that still is not sufficient time to assess adequate assurance of future performance. The Landlord will have from 12/21 @ 3 pm to 12/27 to conduct discovery. The Auction, Christmas Eve, Christmas Day and December 26 (on which date the Christmas Holiday may be observed; e.g. the Court is closed) occur during that period of time. Second, the Debtors' proposal potentially forces the Landlord to

27.     Notably the Proposed Order contains no requirement that the counter-parties actually receive the notice of the potential purchaser's and also is silent on what "adequate assurance of future performance information" that will be provided.

28.     The proposed time frame just to consider the adequate protection information is woefully inadequate. To require landlords to review **and respond** to all potential purchasers within that time is not reasonable.

29.     The procedure also is objectionable because it puts all the cost and burden on the Landlord. For example, if there are ten (10) Potential Purchasers for a lease, the landlord and its professionals then have to review ten (10) separate adequate protection packages. This imposes a lot of cost on the landlord and, in the case of ten (10) Potential Purchasers, 90% of that time is unnecessary because only one will be the successful bidder.

30.     Debtor does not denominate the information that is to be provided to lessors to support a claim of adequate assurance of future performance and type of information to be provided is not defined in the Bidding Procedures or the Proposed Order. The information provided by each potential purchaser might be different. As part of the bidding procedures, the Debtors, in consultation with the landlords whose leases are offered for sale, should develop a list of what minimum adequate information should be provided by each potential purchaser. If a limited liability company is newly formed to serve as the potential purchaser, a landlord should know what entities stand behind that shell company, and whether those entities are contractually obligated to fund and/or manage the shell company.

---

take discovery of multiple Potential Purchasers. That unnecessarily drives up the professional cost to the Landlord and is impractical.

### D. *The Landlord Should be Deemed a Qualified Bidder*

31. The Global Bidding Procedures state that in order be deemed a Potential Bidder, not only must the interested party notify Debtor by August 24, 2015, that the interested party is interested in bidding om certain specified leases, but apparently must meet the requirements for access to Debtors' due diligence to those specific properties. These requirements include: (a) executing a confidentiality agreement; (b) a statement and factual support that the interested party has a *bona fide* interest in completing its purchase; (c) "sufficient information, a determined by the Debtors, to allow Debtors to determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements"; (d) identification of the leases in interest.

32. While, in order conduct due diligence on its Lease, the Owner has not objection to executing a confidentiality agreement, but should not be required to provide any additional information in order to become a Potential Bidder to owns Lease.

### E. *The Landlord Should Be Allowed To Purchase Solely It's Lease Without Such Sale Being Contingent on the Rest of the Leases in the Stalking Horse Package*

33. The Bidding Procedures allow for "partial bids" which is a bid for one or more leases in a Stalking Horse Package, but is less than all of the leases in such package.

34. The Bidding Procedures go on to state that in such an instance "such Bid will not be considered to be a "Qualified Bid" unless the Debtors receive one or more Bids for the

-10-

remaining Stores in such Stalking Horse Package . . . that in combination with one or more other Bids, constitute a higher or being bid that the applicable Stalking Horse Bid.

35. The Landlord should not be required to bid on all of the leases in the Stalking Horse Package in order to purchase its own Lease and its bid should not be contingent upon other parties purchasing the remainder of the leases in the Staling Horse Package.

36. To require the Landlord to do so would, in effect, constitute an unwarranted restriction on the Landlord's property rights, substantially alter the terms of the Lease, and constitute an improper taking.

### F. *The Landlord Objects to any Requested Waiver of the Ten-Day Stay Provided by Bankruptcy Rule 6004*

37. The Landlord objects to any waiver of the requirements of Rule 6004 of the Fed. R. Bank. P. 6004(h), especially to the extent it adversely affects the Landlord's appellate rights thereunder. Any order approving the Motion, should not include a prospective waiver of Rule 6004(h). Subsection (h) [formerly subdivision (g)] was added to Rule 6004, specifically to *protect* the rights of objecting parties, and eliminate the "rush to the courthouse" to obtain stay orders by those parties adversely affected by entry of orders under sections 363 and 365. Landlord should not have its appellate rights compromised by any unnecessary and advance waiver of these protections, particularly since the Debtors have failed to establish any cause for such a waiver, and particularly where the landlord has such a negligible amount of time between learning the identity of any successful bidder and the hearing to approve the Sale.

### G. *Landlord Reserves Its Right to Raise Further Objections*

38. The Landlord reserves the right to amend and/or supplement this Limited Objection and assert further and other cure amounts.

### H. *Joinder In Objections Of Other Landlords*

39. To the extent not inconsistent with this Objection, the Landlord joins in the objections of other landlords to the Motion.

### Conclusion

WHEREFORE, Landlord respectfully requests that the Motion be denied to the extent set forth herein and the Landlord be granted such other and further relief as this Court deems just and proper.

Dated: August 3, 2015
      New York, New York

                              BELKIN BURDEN WENIG & GOLDMAN, LLP
                              Attorneys for Allied Jackson Heights LLC

                              By: _____/s/ S. Stewart Smith_____
                                    S. Stewart Smith, Esq.
                                    Joshua G. Losardo
                                    270 Madison Avenue
                                    New York, New York 10016
                                    T: (212) 867-4466
                                    F: (212) 297-1859

SSMITH/11511.0014/1646329