KELLEY DRYE & WARREN LLP  
101 Park Avenue  
New York, New York 10178  
Robert L. LeHane  
Gilbert R. Saydah, Jr.  
Scott L. Fleischer  
Tel:  (212) 808-7800  
Fax:  (212) 808-7897  

Hearing Date:  August 10, 2015 at 10:00 a.m.  
Objection Deadline:  August 5, 2015 at 4:00 p.m.  

Attorneys for Basser-Kaufman, Inc., Blumenfeld Development Group, Ltd. DDR Corp., Equity One, Inc., Nassimi Realty, LLC, Onyx Management Group LLC, Philips International, Realty Income Corporation, Woodbridge Plaza, LLC, Huntington-Grocery, LLC and Washington Park Plaza Associates, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC | ) |
| TEA COMPANY, INC., *et al.,* | ) |
| | ) Case No. 15 – 23007 (RDD) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

**LIMITED OBJECTION OF BASSER-KAUFMAN, INC., BLUMENFELD DEVELOPMENT GROUP, LTD., DDR CORP., EQUITY ONE, INC., NASSIMI REALTY, LLC, ONYX MANAGEMENT GROUP LLC, PHILIPS INTERNATIONAL, REALTY INCOME CORPORATION, WOODBRIDGE PLAZA, LLC, HUNTINGTON-GROCERY, LLC AND WASHINGTON PARK PLAZA ASSOCIATES, LLC, TO DEBTORS' MOTION FOR ENTRY OF A FINAL ORDER AUTHORIZING THE DEBTORS (A) TO OBTAIN POST-PETITION FINANCING AND (B) TO UTILIZE CASH COLLATERAL**

Basser-Kaufman, Inc., Blumenfeld Development Group, Ltd., DDR Corp., Equity One, Inc., Nassimi Realty, LLC, Onyx Management Group LLC, Philips International, Realty Income Corporation, Woodbridge Plaza, LLC, Huntington-Grocery, LLC and Washington Park Plaza Associates, LLC (collectively the "Landlords"), by and through their attorneys, Kelley Drye & Warren LLP, hereby submit this limited objection (the "Objection") to Debtors' Motion for

NY01\FleiS\4195386.2

Interim and Final Authority to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (B) Use Cash Collateral Pursuant to 11 U.S.C. § 361(c)(2), (C) Grant Certain Protections to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (D) Schedule a Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b) and (c) (the "Motion"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.  The Landlords object to the terms of the Proposed Final Order (as defined below) that grant the DIP Agent[1], for the benefit of itself and the DIP Lenders, a first priority lien directly on the Leases (as defined below) and inappropriately render unspecified provisions in the Leases that restrict or prohibit the grant of such liens unenforceable. The Debtors fail to justify why the DIP Lenders require liens directly on the Leases (as opposed to liens on the proceeds of the disposition of the Leases), and provide no basis, statutory or otherwise, for the Proposed Final Order's attempt to invalidate terms of the Leases in connection with a motion to approve debtor in possession financing.

2.  The Landlords also object to the broad grant of rights and remedies to the DIP Lenders in the event the Debtors default under the terms of the postpetition financing to use and occupy the Leased Premises (as defined below), all without notice (i) to the Landlords, (ii) regarding the terms of the Leases, or (iii) of any limits or guidelines as to the nature and duration of the use of the Leased Premises.

3.  The DIP Lenders' liens should be limited to the proceeds of the sale or disposition of the Leases and the DIP Lenders' default use and occupancy rights should be limited to (i)

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

NY01\FleiS\4195386.2

applicable non-bankruptcy law, (ii) written consent of the Landlords or (iii) further Order of the Court on motion and notice appropriate under the circumstances.

## BACKGROUND

4. On July 19, 2015 (the "Petition Date"), The Great Atlantic & Pacific Tea Company, Inc., and its debtor affiliates, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

5. The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. The Landlords are the owners, or the managing agents for the landlords, of numerous shopping centers located in New York, New Jersey, Pennsylvania, Connecticut and Delaware. The Debtors lease retail space from the Landlords pursuant to written leases (collectively, the "Leases") at the locations identified in the chart annexed hereto as Exhibit "A" (the "Leased Premises"). With few possible exceptions, the Leased Premises are located in shopping centers as that term is defined in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1087 (3d Cir. 1990).

7. On July 20, 2015, the Debtors filed the Motion, seeking interim and final orders authorizing the Debtors to obtain post-petition secured financing in the aggregate amount of $100 million (the "DIP Financing") from Fortress Credit Corp. and one or more of its designated affiliates or other lender parties thereto from time to time (collectively, the "DIP Lenders"). By the Motion, the Debtors request that the financing provided by the DIP Lenders be secured by, among other things, a first-priority, fully perfected lien on all unencumbered assets of the Debtors, which primarily consists of certain of the Debtors' leasehold interests. (Motion at ¶ 16).

3

NY01\FleiS\4195386.2

8. On July 21, 2015, this Court entered its interim order granting the Motion on an interim basis and scheduling a final hearing for August 10, 2015 at 10:00 A.M.[2] On July 23, 2015, the Court entered an amended interim order (the "Amended Interim Order") granting the Motion on an interim basis.[3]

9. The Debtors have not provided a proposed final order for the relief requested in the Motion (the "Proposed Final Order"). Instead, the Debtors have directed the Landlords to the Amended Interim Order entered by the Court and submitted that the Proposed Final Order will be substantially similar. The Landlords' objections to the Proposed Final Order are premised on this fact and the Landlords do not waive any objection to the Proposed Final Order.

10. Pursuant to the Proposed Final Order, the DIP Lenders are granted a fully-perfected, first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors that is not otherwise subject to valid, perfected and non-avoidable liens, including the Debtors' interests in leaseholds. (Amended Interim Order at ¶ 14).

11. Further, the Proposed Final Order would vacate the automatic stay to the extent necessary to permit the DIP Lenders to exercise all rights and remedies against the DIP Financing collateral provided for in the DIP Financing documents. (Amended Interim Order at ¶ 21(a)). In the exercise of such rights, there appear to be no limits on the DIP Lenders' ability to use and occupy the Leased Premises.

12. In addition, the Proposed Final Order would nullify any provision in the Leases that requires the consent of the Landlords in order for the Debtors to pledge, grant, sell, assign or otherwise transfer their leasehold interests, or proceeds thereof. (Amended Interim Order at ¶ 21(b)). The Proposed Final Order provides that "[a]ny such provision shall have no force and

---

[2] Docket Entry No. 88.

effect with respect to the granting of post-petition liens hereunder on such leasehold interest, license, contract or other agreement or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Agent, the DIP Lenders or the Pre-Petition Secured Parties in accordance with the terms of the DIP Documents or this Interim Order." (Amended Interim Order at ¶ 21(b)).

## LIMITED OBJECTION

**A.    There is no Authority to Render Provisions in the
Leases Unenforceable in Connection with Post-Petition Financing**

13.    Although the Proposed Final Order preserves the Landlords' right to object to any assignment of leases pursuant to section 365(b)(3) of the Bankruptcy Code,[4] the Landlords object to paragraph 21 of the Proposed Final Order which attempts to delete unspecified provisions in the Leases that would restrict placing a lien directly on the lease or in any way interfere with the Debtors' ability to convey the security interest sought by the DIP Lenders.  Anti-lien provisions in leases are not only enforceable under State law and bargained for at arm's-length, but critical to a Landlord's ability to prevent a tenant from encumbering its lease when the Landlord's mortgage or loan documents prohibit such liens.

14.    Section 365 of the Bankruptcy Code mandates that the Debtors must "timely perform all of the obligations" under the Leases until such time that the Debtors assume or reject the Leases.  11 U.S.C. § 365(d)(3).[5]  The Debtors have not assumed or rejected any of the Leases

---

(…continued)
[3]    Docket Entry No. 140.
[4]    Amended Interim Order at ¶ 21(b).
[5]    Although section 365(f)(1) of the Bankruptcy Code authorizes a bankruptcy court to invalidate certain lease provisions that prohibit, restrict or condition an assignment of a lease, that section only applies when a debtor is attempting to assume or assign a lease pursuant to the terms of section 365 of the Bankruptcy Code.  Here, the Debtors are not seeking to assume or assign the Leases under section 365, and section 364 – which governs a request for post-petition financing – contains no similar provision.

and, accordingly, the Debtors must comply with those Leases containing negative lien covenants and otherwise refrain from granting leasehold mortgages in such Leases.

15. The Proposed Final Order further provides for the survival of the DIP Lenders' rights and remedies against the DIP Financing collateral, including the Leases, even upon dismissal of these bankruptcy cases. (*See* Amended Interim Order at ¶¶ 27 and 39). Although the Debtors may assume and assign the Leases subject to section 365 of the Bankruptcy Code, it is axiomatic that the Debtors must otherwise comply with the terms of the Leases. *See* 11 U.S.C. § 365(d)(3). Upon dismissal of a bankruptcy case, however, the respective parties are returned to the *status quo ante*, and the terms of the Leases should remain unchanged, including but not limited to anti-assignment, subordination and anti-lien provisions. The Debtors cite no authority for using the Proposed Final Order as a vehicle to re-write the terms of the Leases and expand the tenants' rights beyond the dismissal of these bankruptcy cases. Accordingly, upon dismissal, any rights and remedies afforded the DIP Lenders by the Proposed Final Order that alter rights of the Landlords or tenants under the Leases should be rendered completely null and void.

16. Although the Landlords object to the improper attempt to grant the DIP Lenders liens or security interests that are prohibited by the Leases, the Landlords do <u>not</u> object to granting the DIP Lenders a lien on the proceeds of the sale of the Leases. A lien on the potential proceeds of the disposition of the Debtors' leases more than adequately protects the DIP Lenders' interests. The "bonus value" of the leases has been recognized as property of the bankruptcy estate, *see, e.g., In re Ernst Home Center, Inc.*, 209 B.R. 974, 985-986 (Bankr. W.D. Wash. 1997), and a security interest in that bonus value, in the form of a lien on the proceeds of the disposition of leases, strikes a balance between the DIP Lenders' economic interests, the

6

Debtors' need for financing, and the Landlords' rights under the Leases and the Bankruptcy Code.

17. Accordingly, the Landlords request that the proposed liens attach only on the proceeds of the sale, assignment or disposition of the Leases when direct liens are prohibited by the Lease. This provides the DIP Lenders with a lien on what they desire – the economic value of the Leases – and does not otherwise prejudice the Debtors or the Landlords.

B. **The DIP Lenders' Default Use and Occupancy Rights Must be Limited**

18. In the event of default, the Proposed Final Order would vacate the automatic stay to the extent necessary to allow the DIP Lenders to exercise all rights and remedies provided under the DIP Documents against the DIP Financing collateral, including foreclosing the Debtors' interest in leaseholds. (Amended Interim Order at ¶¶ 24(a) and (c)). In the absence of any limits in the Proposed Final Order, the DIP Lenders will be granted the unfettered right, in the event of a default, to occupy and use the Leased Premises without performing the Debtors' obligations under the Leases or providing the Landlords with adequate assurance of future performance as required in connection with an assignment of the Lease pursuant to section 365 of the Bankruptcy Code. The DIP Lenders are not the tenants under the Leases and do not have the right to use the Lease Premises to liquidate their collateral without complying with all of the obligations under the Leases, and the Debtors provide no authority that supports such a request. Accordingly, the DIP Lenders' authorization to use and occupancy of the Leased Premises in the event of a default should be limited to (i) existing rights under applicable non-bankruptcy law; (ii) express written consent of the Landlords; or (iii) pursuant to further Order of this Court on motion and notice to the Landlords appropriate under the circumstance.

19. At a minimum, in the event the Court authorizes the DIP Lenders to occupy the Leased Premises to liquidate their collateral, the Proposed Final Order should provide that if the

DIP Lenders occupy the Leased Premises, they must timely perform all of the obligations arising under the Leases going forward as required by section 365(d)(3) of the Bankruptcy Code, and cure all existing defaults as required by sections 365(b)(1) and (b)(3) of the Bankruptcy Code when a lease is assumed and assigned.

20. Finally, the Proposed Final Order provides that upon an event of default, the DIP Lenders may exercise their rights against the DIP Financing collateral within seven (7) business days notice to the Debtors (with a copy to counsel to the Creditors' Committee and to the U.S. Trustee). (Amended Interim Order at ¶ 11(b)). Landlords and their counsel should receive the same notice provided to the Debtors and be afforded an opportunity to object to the exercise of any remedy that would grant the DIP Lenders use and occupancy of the Leased Premises.

## JOINDER IN OTHER OBJECTIONS

21. The Landlords hereby join in any objections raised by the Debtors' other landlords to the extent not inconsistent herewith.

## RESERVATION OF RIGHTS

22. Nothing contained herein shall constitute a waiver of any rights or remedies of the Landlords under the Bankruptcy Code or applicable law, including, without limitation, the right to supplement this Objection or raise any other additional arguments at a later date.

NY01\FleiS\4195386.2

## CONCLUSION

WHEREFORE, the Landlords respectfully request that the Court (i) deny the relief requested in the Motion unless, as set forth above, the Proposed Final Order (a) limits any lien relating to the Leases to the proceeds of the sale of the Leases, and not the Leases themselves and (b) modifies the DIP Lenders' remedies in the event of a default by the Debtors as set forth above; and (ii) grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 5, 2015

        KELLEY DRYE & WARREN LLP

        By: */s/ Robert L. LeHane*
            Robert L. LeHane
            Gilbert R. Saydah, Jr.
            Scott L. Fleischer
        101 Park Avenue
        New York, New York 10178
        Tel: 212-808-7800
        Fax: 212-808-7897

        Attorneys for Basser-Kaufman, Inc., Blumenfeld Development Group, Ltd. DDR Corp., Equity One, Inc., Nassimi Realty, LLC, Onyx Management Group LLC, Philips International, Realty Income Corporation, Woodbridge Plaza, LLC, Huntington-Grocery, LLC and Washington Park Plaza Associates, LLC.

9

**EXHIBIT A**

| Landlord | Store Number | Property Location |
|---|---|---|
| **Basser-Kaufman, Inc.:** | 72644 | West Babylon, NY |
| | 70289 | Jericho, NY |
| | 72615 | North Babylon, NY |
| | 72600 | Brentwood, NY |
| | 19106 | Newington, CT |
| | 70597 | Cliffwood/Matawan, NJ |
| **DDR Corp.:** | 70702 | West Falls Plaza, NJ |
| **Equity One, Inc.:** | 36703 | New York, NY |
| | 72626 | Ozone Park, NY |
| **Woodbrige Plaza, LLC** | 72580 | Woodbridge/Avenel, NJ |
| **Philips International:** | 70256 | Massapequa, NY |
| **Huntington-Grocery, LLC** | 70236 | Huntington, NY |
| **Nassimi Realty, LLC** | 72175 | Clifton, NJ |
| | 72528 | Wyncote, PA |
| **Onyx Management Group LLC** | 70849 | Rosebank, NY |
| **Blumenfeld Development Group, Ltd.** | N/A | E. Northport, NY |
| **Realty Income Corporation** | 72589 | Wilmington, DE |
| | 72625 | Seaford, NY |
| | 72568 | Upper Darby, PA |
| **Washington Park Plaza Associates, LLC** | 70728 | Rye Brook, NY |

10