ISRAEL GOLDOWITZ
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
LORI A. BUTLER
Assistant Chief Counsel
DAMARR M. BUTLER
THEA D. DAVIS
Attorneys
PENSION BENEFIT GUARANTY
  CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C. 20005
Tel.: (202) 326-4020, ext. 6883
Fax: (202) 326-4112
Emails: butler.damarr@pbgc.gov
        *and* efile@pbgc.gov

*Attorneys for Pension Benefit
Guaranty Corporation*

Hearing Date: August 10, 2015 at 10:00 am (ET)
Objection Deadline: August 5, 2015 at 4:00 pm (ET)
Dkt. Ref. 18

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,[1] | Case No. 15-23007(RDD) |
| Debtors. | (Jointly Administered) |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc. (3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

**THE PENSION BENEFIT GUARANTY CORPORATION'S LIMITED OBJECTION TO MOTION OF DEBTORS FOR INTERIM AND FINAL AUTHORITY TO (A) OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e), (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 363(c)(2), (C) GRANT CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (D) SCHEDULE A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b) AND (c)**

The Pension Benefit Guaranty Corporation ("PBGC"), a creditor in the above-captioned proceedings, hereby files this Limited Objection to the Motion of Debtors for Interim and Final Authority to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), (B) Use Cash Collateral Pursuant to 11 U.S.C. §§ 363(c)(2), (C) Grant Certain Protections to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (D) Schedule a Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b) and (c) ("Motion"). In support of this Limited Objection, PBGC respectfully states as follows:

**PRELIMINARY STATEMENT**

The Debtors have announced to the world that the purpose of these bankruptcy filings is to sell stores as going concerns and to liquidate the remaining stores. The Debtors' central theme is that they are in this position because of labor, pension, and other employee benefits costs, among other things. The Debtors should pursue a value-maximizing sale process and PBGC understands that to accomplish this feat, the Debtors require financing.

PBGC does not object to Debtor-in-possession financing ("DIP Financing") that is necessary, reasonable, and adequate for the Debtors. However, the need for DIP Financing does not justify entry of an order with improper provisions. PBGC objects to inclusion in a Final Order of the following unacceptable terms: (1) liens on proceeds of avoidance actions; (2) short sale deadlines (the "Milestones"); (3) unreasonable challenge or investigation limits; (4) failure

2

to reserve recharacterization rights; and (5) automatic validation of prepetition debts and credit bid amounts.

## FACTUAL BACKGROUND

### A. PBGC and the Pension Plans

PBGC is a wholly owned United States government corporation, and an agency of the United States, that administers and enforces the defined benefit pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1301-1461 (2012, Supp. I 2013). PBGC guarantees the payment of certain pension benefits upon the termination of a single-employer pension plan covered by Title IV of ERISA. When an underfunded plan terminates, PBGC generally becomes trustee of the plan and supplements any assets remaining in the plan with its insurance funds to pay to the retired employees their pension benefits, subject to statutory limits. *See* 29 U.S.C. §§ 1321-1322, 1342, 1361. PBGC's insurance funds are made up of, among other things, (i) the agency's recoveries of terminated pension plan's underfunding and (ii) premiums paid by pension plan sponsors.

Because PBGC typically becomes the statutory trustee of a terminated pension plan, it has authority to collect all amounts owed to the pension plan, including any unpaid minimum funding contributions for which the plan sponsor and controlled group members are jointly and severally liable. *See* 29 U.S.C. §§ 1082(b)(2), 1342(d), 1362(c); 26 U.S.C. § 412(b)(2).

The Debtors sponsor three single-employer and one multiple-employer defined benefit pension plans covered under Title IV of ERISA (the "Pension Plans"). The Pension Plans collectively cover an estimated 25,815 of the Debtors' current and former employees and are underfunded by an estimated $302 million. PBGC anticipates filing claims against each of the

Debtors for the following statutory liabilities: (i) the unfunded benefit liabilities of the Pension Plans; (ii) due and unpaid minimum funding contributions owed to the Pension Plans; and (iii) statutory premiums owed to PBGC. PBGC's claim for the unfunded benefit liabilities of the Pension Plans will be contingent upon the termination of the Pension Plans.

### B. The Bankruptcy Proceedings

On July 19, 2015, the Debtors filed voluntary Chapter 11 petitions with this Court, along with their First-Day Motions, including this Motion. The Debtors sought and procured a $100 million secured third lien postpetition term loan facility (the "Junior Lien DIP Facility" and the obligations thereunder, the "DIP Obligations") pursuant to a term credit agreement, dated as of July 19, 2015, among A&P, as borrower, each of the other Debtors (other than Kwik Save, Inc.), as guarantors, Fortress Credit Corp., as administrative and collateral agent, and the lender parties thereto (the "DIP Lenders").[2]

An Interim Order was entered on July 21, 2015, whereby the Debtors were given access to $50 million of the DIP Financing. On July 24, 2015, PBGC was appointed a member of the Official Committee of Unsecured Creditors (the "Committee").[3] A hearing seeking a Final Order on this Motion is scheduled for August 10, 2015, where the Debtors will seek approval of access to the remaining $50 million.

### ARGUMENT

In determining whether to approve the proposed DIP Financing, the Court acts within its informed discretion.[4] The Court must balance the interests of the lenders with those of the

---

[2] Docket No. 18 at ¶ 4.

[3] *See* Docket No. 164.

[4] *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).

general unsecured creditors. Post-petition financing should be approved only if it is in the best interest of the general creditor body.[5] Further, such credit should not be for the primary benefit of a single creditor over the debtor's bankruptcy estate.[6] The terms of the financing must be fair, reasonable, and adequate under the circumstances.[7]

Debtors negotiating post-petition financing have unequal bargaining power; the debtor is typically not the best party to ensure that post-petition financing is fair to all parties, including the general unsecured creditors.[8] Even so, a debtor cannot put aside its fiduciary duties to its estates and creditors.[9] With respect to providing adequate protection to prepetition parties, the goal is to preserve the status quo and not to better those parties' positions.[10] Taken in its entirety, the Court should reject "proposed terms that would tilt the conduct of the bankruptcy case; prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors; or leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits."[11]

---

[5] *In re Roblin Indus.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985).

[6] *Ames Dep't Stores, Inc.*, 115 B.R. at 37.

[7] *Id.*, 115 B.R. at 39.

[8] *In re Texlon Corp.*, 596 F.2d 1092, 1098 (2d Cir. 1979) (concluding that a debtor in possession is hardly neutral).

[9] *Ames Dep't Stores, Inc.*, 115 B.R. at 38.

[10] *See, e.g., In re 354 E. 66th St. Realty Corp.*, 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995); *In re Roe Excavating, Inc.*, 52 B.R. 439, 440 (Bankr. S.D. Ohio 1984).

[11] *Ames Dep't Stores*, 115 B.R. at 37; *see also, e.g., General Elec. Capital Corp. v. Hoerner (In re Grand Valley Sport & Marine)*, 143 B.R. 840, 852 (Bankr. W.D. Mich. 1992) ("[T]his court will not authorize postpetition financing pursuant to § 364 where a creditor leverages a debtor in possession into making a concession unauthorized by, or in conflict with, the Bankruptcy Code as a condition for the requested credit."); *Tenney Vill. Co.*, 104 B.R. at 568 (rejecting DIP financing structure that would "seize control of the reins of reorganization").

PBGC asserts that several terms found in the Amended Interim Order should be removed in order to preserve the status quo and level the playing field in small measure. Accordingly, PBGC objects to inclusion of the following unacceptable terms: (1) liens on proceeds of avoidance actions; (2) aggressive sale Milestones; (3) unreasonable challenge or investigation limits; (4) failure to reserve recharacterization rights; and (5) automatic validation of prepetition debts and credit bid amounts.

### A. The DIP Lenders Should Not Receive a Lien on the Proceeds of Causes of Action Under Chapter 5 of the Bankruptcy Code

The Interim Order provides that the DIP Lenders will not receive a lien on causes of action under Chapter 5 of the Bankruptcy Code, but upon entry of a Final Order the DIP Liens shall "attach to any proceeds or property recovered under Chapter 5 of the Bankruptcy Code, whether by judgment, settlement or otherwise."[12] Avoidance actions should not be pursued for the exclusive benefit of a secured creditor to the detriment of all general unsecured creditors.[13]

The purpose of avoidance actions is to allow the debtor in possession or trustee to recover certain payments for the benefit of unsecured creditors.[14] Avoidance actions are designed to facilitate equality of distribution among a debtor's general unsecured creditors.[15] For these reasons, bankruptcy courts typically restrict the ability of debtors to pledge avoidance power

---

[12] Amended Interim Order ¶ 14(a). The Debtors have not filed a proposed Final Order as of this date. PBGC will cite to the applicable provisions in the Amended Interim Order (Docket No. 140).

[13] *Buncher Co. v. Official Comm. Of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d. Cir. 2000).

[14] *Mellon Bank, N.A. v. Glick (In re Integrated Testing Prods. Corp.)*, 69 B.R. 901, 904 (D.N.J. 1987).

[15] *See Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548, 567 (3d Cir 2000) (noting that the underlying intent of the avoidance powers is the recovery of valuable assets for the benefit of a debtor's estate); *In re Sweetwater*, 55 B.R. 724, 731 (D. Utah 1985), rev'd on other grounds, 884 F.2d 1323 (10th Cir. 1989) ("The avoiding powers are not 'property' but a statutorily created power to recover property.").

actions as security.[16] Further, it would be unduly punitive and unnecessary for the Court to expand the DIP Lenders' collateral package by granting liens on previously unencumbered assets or on rights that are uniquely created under the Bankruptcy Code.[17] Accordingly, the DIP Lenders should not be granted a lien on avoidance actions in the Final Order.

### B. PBGC Should be Added as a Party that can Challenge or Investigate

The Interim Order fails to specify who may investigate the facts supporting the Debtors' Stipulations, including those related to the amount, validity, enforceability, perfection or priority of all or any portion of the Prepetition Obligations, the Prepetition Liens or the Prepetition Financing Documents. The Interim Order provides that the only parties who may challenge the Debtors' stipulations are "the Creditors' Committee, any subsequent chapter 7 trustee or any other party in interest that is granted standing and requisite authority by the Bankruptcy Court."[18] Yet, all parties in interest, including PBGC, will be bound by the Debtors' Stipulations. PBGC should be designated as a party that can investigate and challenge any of the Debtors' Stipulations.

The success of these cases will be best served by a consensual resolution regarding the treatment of the Pension Plans. PBGC hopes all parties in interest will make all reasonable good faith efforts to achieve the best result in these bankruptcy proceedings. Such negotiations will be

---

[16] *See, e.g. Official Comm. of Unsecured Creditors v. Goold Electronics Corp. (In re Goold Electronics Corp.)*, No. 93-4196, 1993 WL 408366, *3-4 (N.D. Ill., Sept. 22, 1993) (vacating debtor-in-possession financing order to the extent that the order granted the lender a security interest in the debtor's preference actions).

[17] *See, e.g.*, *In re Four Seasons Marine & Cycle, Inc.*, 263 B.R. 764, 771 (Bankr. E.D. Tex. 2001) (describing fundamental unfairness that could be imposed on unsecured creditors by granting of a replacement lien on unencumbered assets of the estate); *In re Integrated Testing Prods. Corp.*, 69 B.R. 901, 905 (D.N.J. 1987) (holding that prepetition secured creditor was not entitled to proceeds of sale of collateral recovered as preference because to allow the secured creditor to "claim these preferences would frustrate the policy of equal treatment of creditors under the Code").

[18] Interim Order ¶ 6(b).

the focus of PBGC's time and efforts.  PBGC has substantial contingent claims in these cases, estimated to be in excess of $302 million.  As a result, PBGC has a strong interest in ensuring that there is a proper investigation and, should the facts and evidence warrant, a prosecution of any and all colorable causes of action arising therefrom.  PBGC anticipates that the Committee will fully and completely investigate any such matter, and PBGC will work closely with the Committee's professionals in any such investigation.  While PBGC does not currently anticipate that its interests in these cases will diverge from those of the Committee, PBGC, given the enormous size of its potential claims, must protect its ability to maximize its recovery in these cases.  This includes the ability to seek standing to prosecute potential causes of action if the Committee were to decline to take such a step.  Thus, PBGC should be added as a party that can challenge or investigate.  Further, PBGC's deadline to conduct an investigation and seek to bring any causes of action should be extended commensurate with the deadline sought by the Committee.

### C. The Milestones for the Sale Process are Unreasonable, Restrictive and will Discourage Potential Bidders

PBGC understands that some cases may compel an expedited sale process because of liquidity concerns.  However, the Debtors have not shown a sufficient need for the expedited proposed sale process.  As a result, the DIP Financing terms should not be approved, to the extent they call for overly aggressive Milestones regarding the sale of the Debtors' assets.  Through these Milestones, the DIP Lenders require the Debtors to sell their assets on an expedited timeline.  In particular, the Milestones provide that the Debtors must: (1) reject certain leases within 60 days within the Commencement Date, (2) obtain Court-approval of certain sales by October 15, 2015, (3) obtain Court-approval of certain winding down procedures within 60 days of the Commencement Date, (4) reach agreements with unions regarding relief from

8

collective bargaining agreements, and (5) obtain Court approval of various asset sales among other Milestones.[19]

While the Debtors have met some Milestones by filing for the requested relief in these bankruptcy proceedings, completion of other Milestones will not be as easy. For example, the Debtors and DIP Lenders are effectively seeking to dictate when this Court should approve the Debtors' requests for relief. Further, the Debtors leave creditors with little time to review and understand all of the implications of the relief the Debtors are seeking. The Debtors go to great length to say what they need, but lack substance on why they need it on an expedited basis, other that the DIP Lenders require it. Finally, it is unreasonable to expect that interested bidders can conduct due diligence of the Debtors' vast operations to determine whether they are interested in purchasing any of the Debtors' assets, given all of the restrictive Milestones. Therefore, the Final Order should expand the timeline in the Milestones to accommodate at least a few additional weeks. PBGC joins the Committee's informal proposal regarding the modification of the Milestones that it believes would best maximize the value of the Debtors' assets.

### D. Recharacterization Rights Should Be Preserved

It is black letter law that Bankruptcy Code section 506(b) allows payment of postpetition interest, fees, and expenses *only to the extent a secured claim is oversecured.*[20] Even for

---

[19] *See* DIP Credit Agreement § 6.13.

[20] *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365 (1988) (denying postpetition interest sought as adequate protection by an undersecured creditor); *Baybank-Middlesex v. Ralar Distribs., Inc.*, 93 F.3d 1200, 1203 (1st Cir. 1995) ("We need not determine whether there was a failure of adequate protection because . . . Baybank, as an undersecured creditor, is not entitled to postpetition interest and fees under § 506(b) . . . .").

oversecured creditors, however, there is no right to *current*, real-time payments during the pendency of the bankruptcy case.[21]

PBGC does not object to the payment of postpetition interest, fees and expenses of an oversecured creditor. However, the Final Order should expressly preserve parties' rights to seek to recharacterize all such payments as a dollar-for-dollar reduction of any allowed secured claim if it is later determined that the secured party is undersecured and was never entitled to such payments of interest, fees, and expenses.[22]

### E. Automatic Validation of Debt Provisions of Prepetition Secured Lenders Who Have Not Provided New Financing and Credit Bids Is Improper

The Interim Order contains the Debtors' stipulation that all Prepetition Obligations constitute legal, valid, binding, unavoidable and enforceable obligations of the Debtors and are not subject to any challenge or defense.[23]    The Interim Order further states that each stipulation shall be irrevocably binding upon all other parties in interest and the Debtors' estates, unless the Committee or any other party in interest that is granted standing and requisite authority by the Bankruptcy Court has timely commenced and properly filed an appropriate contested matter or adversary proceeding challenging any of the Debtor's stipulations, including those related to the amount, validity, enforceability, perfection or priority of all or any portion of the Prepetition Obligations no later than 75 days after the petition date. If the challenge is not timely

---

[21] *See, e.g., Orix Credit Alliance, Inc. v. Delta Res., Inc. (In re Delta Res., Inc.)*, 54 F.3d 722, 727-30 (11th Cir. 1995).

[22] *See, e.g., In re Hostess Brands, Inc.*, Case No. 12-22052-RDD, Docket No. 254 at p. 31 (Bankr. S.D.N.Y. Feb. 3, 2012) (providing that, notwithstanding payment of lenders fees, such payments "may be recharacterized under section 506(a) of the Bankruptcy Code as a payment of principal with respect to the related Pre-Petition Debt in the event it is determined by final order that such Lenders' Professional Fees and Expenses should not have been paid").

[23] Interim Order ¶ 5.

commenced or if the challenge is not successful, then all of Debtors' Stipulations are binding upon the estate and all parties in interest and the Prepetition Obligations and Prepetition Liens shall be deemed finally allowed by all purposes in the Chapter 11 Cases or any subsequent Chapter 7 Cases.[24]

PBGC objects to the Prepetition Secured Parties, holding the Prepetition Obligations, receiving any special benefits under the Final Order. The Prepetition Secured Parties are not providing new financing to the Debtors or their estates in connection with the DIP Financing and the automatic validation of debt provisions should not extend to them.

Furthermore, the Interim Order provides that the Prepetition Secured Parties, DIP Agent and DIP Lenders

> "shall be permitted to credit bid some or all of the outstanding DIP Obligations, Prepetition Obligations, DIP Superpriority Claims or Adequate Protection Superiority Claims, as applicable, as consideration in any sale of the DIP Collateral (or any part thereof) or Common Collateral (or any part thereof), in each case to the extent permitted by section 363(k) of the Bankruptcy Code, without the need for further order of the Bankruptcy Court."

Interim Order ¶ 31. This credit bid amount should not be automatically validated in the Final Order.

### RESERVATION OF RIGHTS

PBGC will communicate to Debtors its concerns regarding the terms of the Final Order. PBGC hopes that the Debtors are amicable to its concerns and welcomes a consensual resolution. Because such resolution may not be reached before the August 5, 2015 filing deadline, PBGC files this Limited Objection.

---

[24] Interim Order ¶ 6(b).

## **CONCLUSION**

For the foregoing reasons, PBGC requests that the Final Order address PBGC's concerns expressed herein.

| | |
|---|---|
| DATED: August 5, 2015<br>Washington, D.C. | Respectfully submitted,<br><br>By: /s/ Damarr M. Butler<br>ISRAEL GOLDOWITZ<br>Chief Counsel<br>CHARLES L. FINKE<br>Deputy Chief Counsel<br>LORI A. BUTLER<br>Assistant Chief Counsel<br>DAMARR M. BUTLER<br>THEA D. DAVIS<br>Attorneys<br>Office of the Chief Counsel<br>**PENSION BENEFIT GUARANTY CORPORATION**<br>1200 K Street, N.W.<br>Washington, D.C. 20005<br>Tel.: (202) 326-4020, ext. 6883<br>Fax: (202) 326-4112<br>Emails: butler.damarr@pbgc.gov *and*<br>          efile@pbgc.gov<br><br>*Attorneys for Pension Benefit Guaranty Corporation* |