WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock P.C.
Garrett A. Fail

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                    :
In re                               :        Chapter 11
                                    :
THE GREAT ATLANTIC & PACIFIC TEA    :        Case No. 15-23007 (RDD)
COMPANY, INC., et al.,              :
                                    :        (Jointly Administered)
            Debtors.                :
-------------------------------------------------------------x
```

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO MOTIONS**
**TO ESTABLISH (I) GLOBAL BIDDING PROCEDURES [ECF NO. 26] AND**
**(II) DISCRETE SALE AND LEASE RATIONALIZATION PROCEDURES [ECF NO. 27]**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this reply to the responses to (i) the motion to establish Global Bidding Procedures (ECF No. 26) and (ii) the motion to establish Global Sale and Lease Rationalization Procedures (ECF No. 27) (now, the "**Discrete Sale and Lease Rationalization Procedures**"), each dated July 19, 2015 (together, the "**Motions**").[1]  The Debtors respectfully represent as follows:

---

[1] Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to such terms by the applicable Motion.

## PRELIMINARY STATEMENT

1.      The Motions should be approved.  As revised, each proposed order has the full support of, or was not objected to by, the Debtors' pre- and post-petition secured lenders, the Official Committee of Unsecured Creditors (the "**Committee**"), the Stalking Horse Bidders, and various other parties in interest.  The proposed orders and procedures have been revised based on feedback from interested parties, including landlords and the United Food and Commercial Workers International (the "**UFCW**").  As indicated herein, many of the issues raised by the objections have been resolved.  Any remaining objections should be overruled for the reasons set forth below.

2.      Copies of the revised orders and procedures are attached hereto as **Exhibit B** and **Exhibit D** (the "**Revised Sale Procedures**").  The Revised Sale Procedures are intended to and will allow the Debtors to preserve as many jobs as possible, to realize the highest or best value for the Debtors' assets, and to provide due process to all parties in interest.

## THE OBJECTIONS AND THE DEBTORS' REPLY

3.      It is important to highlight what is not at issue in the Objections to give the Court and parties in interest proper context.  None of the Objections disputes the Debtors' business justification or need for a prompt sale process.  None disputes that the Debtors' marketing of their stores and related assets has been comprehensive and vibrant.  None challenges the appropriateness or magnitude of the Termination Payments provided to the Stalking Horse Bidders or any other protections afforded under the Global Bidding Procedures Order.  Instead, unresolved objections focus primarily on the concerns of landlords relating to adequacy of information and process to assign leases; however, the Debtors believe that the Global Bidding Procedures, as amended, should address any remaining issues.

2

4.      Attached hereto as **Exhibit A** is a detailed table summarizing the objections (the "**Objections**") and reservations of rights that were filed in response to the Motions.  Essentially, the objectors fall into one of two categories: landlord and non-landlord.  In the table, the Debtors respond to each issue raised and explain what changes, if any, were made to address the issue.  Although twenty-three of the Objections remain outstanding as of the filing of this Reply, the Debtors anticipate that this Reply and the revised orders will resolve many of the concerns raised by the objecting parties.  The Debtors will file an updated **Exhibit A** as additional Objections are modified or withdrawn prior to the hearing.

5.      Twenty-one of the twenty-three unresolved Objections were filed by landlords.  Generally, the landlord Objections request that (i) the landlords be granted more time to object to the assumption and assignment of their leases and to the associated cure costs, (ii) the Debtors provide certain specific adequate assurance information, and/or (iii) the applicable Sale Hearing constitute a status conference to set dates for discovery and further hearings to the extent there are unresolved adequate assurance objections.

6.      As set forth more fully in **Exhibit A**, the Debtors have either accommodated requests where practicable or provided a response as to why no accommodation is advisable or required.

7.      For example, to alleviate notice concerns, the Debtors increased the minimum notice periods: (i) from seven days to ten days for adequate assurance and cure objections under the Discrete Sale and Lease Rationalization Procedures; (ii) from seven days to eleven days for cure objections under the Global Bidding Procedures; and (iii) from four days to six days for adequate assurance objections under the Global Bidding Procedures.  Under various

3

circumstances, contract counterparties will have even more time.[2]  These notice periods provide

more than sufficient time for any contract counterparty to lodge a cure or adequate assurance

objection, and they are consistent with notice periods previously approved by the Court and other

courts in this District.  *See, e.g.*, *In re Borders Group, Inc.*, No. 11-10614 (MG), at 3-4 (Bankr.

S.D.N.Y. Aug. 11, 2011), ECF No. 1519 (providing six days after the auction for parties to lodge

objections to the assumption and assignment of leases); *In re Blockbuster Inc.*, No. 10-14997

(BRL), at 9 (Bankr. S.D.N.Y. Mar. 17, 2011), ECF No. 1223 (providing two days after the

auction for parties to object based on the inability of the successful bidder to provide adequate

assurance); *In re The Great Atl. & Pac. Tea Co., Inc.*, No. 10-24549 (RDD), at 6 (Bankr.

S.D.N.Y. Mar. 10, 2011), ECF No. 1004 (approving a ten-day objection period pursuant to the

debtors' lease rationalization procedures).

8.      The Revised Global Bidding Procedures do not dictate the specific types

of adequate assurance information that will be required.  However, the Revised Global Bidding

Procedures provide that the Debtors will submit to landlords, "information supporting the

Qualified Bidder's ability to comply with the requirements of adequate assurance of future

performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy

Code, including, the Potential Bidder's financial wherewithal and willingness to perform under

any contracts that are assumed and assigned."  Global Bidding Procedures Order ¶ 9.  This

language was added at the request of the Committee.  To the extent an individual landlord or

other contract counterparty is not satisfied with the adequate assurance information provided,

that counterparty will have an opportunity to object and be heard at the Sale Hearing.

---

[2] Contract counterparties will have as much as twenty-nine days and twenty-two days to file cure objections and adequate assurance objections, respectively, in respect of Transferred Contracts included in the Stalking Horse Store Packages.  Global Bidding Procedures Order ¶¶ 16-21.

9.      Contract counterparties are not entitled to have a Sale Hearing serve as a status conference to set a discovery schedule for unresolved adequate assurance objections.  As previously stated by this Court, "a motion to assume or reject 'should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate.  It is not the time or place for prolonged discovery or a lengthy trial with disputed issues.'"  *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993)); *accord In re Grubb & Ellis Co.*, 2012 WL 1036071, at *4, n. 4 (Bankr. S.D.N.Y. Mar. 27, 2012) ("A motion to sell a debtor's assets is, at its core, a summary proceeding, intended to efficiently review the trustee's or debtor's decision.") (citation omitted).

10.     For the reasons set forth herein and on **Exhibit A**, the Objections should be overruled to the extent they have not been resolved consensually, and the Revised Sale Procedures should be approved.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Debtors' request that the Court enter the attached proposed revised orders approving the Revised Sale Procedures.

Dated: August 7, 2015
         New York, New York

                                    */s/ Ray C. Schrock, P.C.*
                                    Ray C. Schrock, P.C.
                                    Garrett A. Fail
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    *Proposed Attorneys for the Debtors*
                                    *And the Debtors in Possession*

5

# EXHIBIT A

## Summary Chart of Objections and the Debtors' Reply

**EXHIBIT A**

**Summary Chart of Objections to Global Bidding Procedures and Discrete Sale and Lease Rationalization Procedures**[1]

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| **Global Bidding Procedures – Objections** | | | | |
| 1. | Cardinal Capital Partners, Inc., Benenson Capital Company LLC, and Certain of Their Respective Affiliates<br><br>(ECF No. 267) | A.  Landlords request that the Court use the Sale Hearing as a status conference to establish a discovery schedule and an appropriate date for a final evidentiary hearing for any non-consensual requests to assume and assign any leases. | A.  Landlords are not entitled to discovery or further hearings, as "a motion to assume or reject 'should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate.  It is not the time or place for prolonged discovery or a lengthy trial with disputed issues.'"  *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993). | **OPEN** |
| | | B.  The Global Sale Notice should be filed (so as to provide electronic notice to all parties of record). | B.  The Global Sale Notice will be filed with the Court and electronic notice will be provided to all persons requesting notice under Bankruptcy Rule 2002.  *See* Revised Global Bidding Procedures Order ¶ 4(a). | **RESOLVED - ADDRESSED IN REVISED ORDER** |

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Debtors' Omnibus Reply (the "**Reply**") to the objections to (i) the motion to establish Global Bidding Procedures (ECF No. 26) (the "**Global Bidding Procedures Motion**") and (ii) the motion to establish Discrete Sale and Lease Rationalization Procedures (ECF No. 27) (the "**Discrete Procedures Motion**").  The current proposed order approving the Global Bidding Procedures (the "**Revised Global Bidding Procedures Order**") is attached to the Reply as Exhibit B.  The current proposed order approving the Discrete Sale and Lease Rationalization Procedures (the "**Revised Discrete Procedures Order**" and, together with the Revised Global Bidding Procedures Order, the "**Revised Orders**") is attached to the Reply as Exhibit D.  The Revised Orders incorporate changes suggested by objecting parties and the Official Committee of Unsecured Creditors (the "**Committee**").

| No. | Objecting Party | Objection | Response | Status |
|-----|-----------------|-----------|----------|--------|
| | | C. The Sale Notice Parties should include counsel of record to each contract counterparty. | C. The definition of Sale Notice Parties will include counsel of record for all non-Debtors parties to the Applicable Transferred Contracts and Additional Contracts, if any. *Id.* | **RESOLVED - ADDRESSED IN REVISED ORDER** |
| | | D. Additional Cure Notices should be filed and served on counsel of record to each Additional Contract counterparty. | D. Additional Cure Notices will be filed with the Court and served on counsel of record, if any, for each non-Debtor counterparty to an Additional Contract included in an Auction Package. *Id.* ¶ 23. | **RESOLVED - ADDRESSED IN REVISED ORDER** |
| | | E. Contract counterparties should be provided with all materials that will be offered as evidence and a summary of any proposed testimony in connection with the Debtors' efforts to meet their burden of proof as to adequate assurance simultaneously with the filing of a Cure Notice or an Additional Cure Notice. | E. The Revised Global Bidding Procedures Order provides that (i) each Qualified Bidder must provide with its bid Adequate Assurance Information, (ii) within 10 days after entry of the Global Bidding Procedures Order, the Debtors shall provide, in coordination with the Stalking Horse Bidders, Adequate Assurance Information for the Applicable Stalking Horse Bidders, and (iii) no later than (1) day after the Auction, the Debtors will cause to be served by email the Notice of Successful Bidders and the Adequate Assurance Information for such bidders on, with respect to both (ii) and (iii), each counterparty to the Applicable Transferred Contracts and its counsel, if known, on a confidential basis. *Id.* ¶¶ 9, 18-20. | **RESOLVED - ADDRESSED IN REVISED ORDER** |
| | | F. Adequate assurance objections and cure objections for Additional Contracts should be due at the Sale Hearing. | F. The deadline for a Cure Objection or Adequate Assurance Objection for an Additional Contract was extended to October 2, 2015, five days prior to the Sale Hearing. *Id.* ¶ 22. | **OPEN - ADDRESSED IN REVISED ORDER** |

WEIL:\95427590\5\50482.0005

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | G.  The Sale Hearing as to Additional Contracts should go forward on October 1, 2015 for consensual assignments only. | G.  The Sale Hearing will take place on October 7, 2015 if more than one Qualified Bid is received and an Auction is conducted.  *Id.* Ex.1.  Given the compressed timeline necessitated by the circumstances of these cases, going forward with the Sale Hearing on October 7, 2015 for both consensual and nonconsensual assignments is reasonable and appropriate. | **OPEN - ADDRESSED IN REVISED ORDER** |
| | | H.  Joins in other landlord objections to the extent not inconsistent. | H.  The Debtors assert all relevant Responses. | **OPEN** |
| 2. | Brixmor Properties Group, DLC Management Corp., Federal Realty Investment Trust, The Prudential Insurance Company of America, and Alecta Real Estate Investments, LLC  (ECF No. 271) | A.  The Global Bidding Procedures should be amended to require that landlords receive adequate assurance information in time to review and prepare a meaningful objection, if necessary, to the proposed assignee and, with respect to Stalking Horse Bids, at least 10 days prior to the proposed objection deadline. | A.  *See supra* Response E to Objection No. 1.  Landlords will have more than three weeks from receiving the Adequate Assurance Information to file an Adequate Assurance Objection with respect to Transferred Contracts included in the Stalking Horse Packages.  With respect to other Successful Bidders, the Revised Global Bidding Procedures extend the minimum time period from four (4) to six (6) days.  In light of the necessary compressed timeline, these deadlines are reasonable and appropriate. | **OPEN – ADDRESSED IN REVISED ORDER** |
| | | B.  If adequate assurance information is not received 10 days in advance of a hearing, then the Sale Hearing should serve as a status conference to set expedited discovery, a briefing schedule, and a further hearing. | B.  *See supra* Response A to Objection No. 1. | **OPEN** |

WEIL:\95427590\5\50482.0005

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | C.  The Debtors cannot carry their burden to satisfy the heightened adequate assurance requirements under section 365(b)(3) for shopping center leases unless landlords receive (for any bidder) at a minimum: (i) the specific name of the proposed bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the store; (ii) the potential assignee's intended use for the space; (iii) audited financial statements and annual reports for the proposed assignee for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the lease subject to the assignment request, and any financial projections, calculations, and/or pro-formas prepared in contemplation of purchasing the lease; (v) all documents and other evidence of the potential assignee's retail experience and experience operating in-line stores in a shopping center; and (vi) a contact person for the proposed assignee that Landlords may directly contact in connection with the adequate assurance of future performance.  Absent this information, the Debtors cannot carry their burden. | C.  The Revised Global Bidding Procedures Order requires the Debtors to deliver to each counterparty to the Applicable Transferred Contracts and its counsel, if known, Adequate Assurance Information, defined as "information supporting the Qualified Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, the Potential Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned."  Global Bidding Procedures Order ¶ 9.  It is neither necessary nor appropriate to dictate what information is required.  To the extent a counterparty is not satisfied with the Adequate Assurance Information provided, such party will have an opportunity to object and be heard at the Sale Hearing. | **OPEN – ADDRESSED IN REVISED ORDER** |

4

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | D. Landlords should have the ability to bid on their own leases without providing further documentation and credit bid without providing any deposit. | D. The Global Bidding Procedures permit a landlord to bid on its own lease. The bid requirements for landlords have been relaxed in the Revised Global Bidding Procedures. Unless a landlord is seeking to purchase a Store on a going-concern basis, a landlord need not submit with its bid, "Employee and Labor Terms" or a statement or evidence regarding the ability to obtain regulatory approvals.<br><br>Landlords have no entitlement to credit bid pursuant to section 363(k) because they do not hold a lien against the lease proposed to be sold. | **OPEN – ADDRESSED IN REVISED ORDER** |
| | | E. Debtors should file the Cure Notice and Additional Cure Notice with the Bankruptcy Court. The notices should be served by email on landlords and their counsel. | E. *See supra* Responses B and C to Objection No. 1. | **RESOLVED - ADDRESSED IN REVISED ORDER** |
| | | F. Landlords object to any sale free and clear of the obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, but which have not yet been billed. | F. This objection presents a Sale Hearing issue, which should not be heard at a hearing to approve sale procedures. The Debtors reserve their rights to respond to such objection at the appropriate time. | **OPEN** |
| | | G. Any order approving the assumption and assignment of leases must provide that assumption and assignment is pursuant to the terms of the leases, including that any assignee continues to be responsible for all indemnification obligations, regardless of when they arose. | G. This objection presents a Sale Hearing issue, which should not be heard at a hearing to approve sale procedures. The Debtors reserve their rights to respond to such argument at the appropriate time. | **OPEN** |

5

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| 3. | Allied Jackson Heights LLC<br><br>(ECF No. 283) | A.  A hearing on cure amounts should not be held before all cure claims are ascertainable.  Cure amount should include rent, attorneys' fees or other charges that continue to accrue and year-end adjustments not yet been billed or not yet due.  The Debtors or their successors should be required to comply with all contractual indemnification obligations. | A.  This objection presents a Sale Hearing issue, which should not be heard at a hearing to approve sale procedures. The Debtors reserve their rights to respond to such objection at the appropriate time. | **OPEN** |
| | | B.  Debtors must provide adequate assurance of future performance, especially where shopping center leases are concerned. | B.  This objection presents a Sale Hearing issue, which should not be heard at a hearing to approve sale procedures. The Debtors reserve their rights to respond to such objection at the appropriate time.  *See supra* Response C to Objection No. 2. | **OPEN** |
| | | C.  All information and evidence upon which the Debtor and the successful bidder intend to rely upon to establish adequate assurance of future performance under section 365 should be delivered to the landlord no later than ten (10) business days prior to the Sale Hearing.  The landlord should be afforded an opportunity to conduct discovery, draft and file and objection, and prepare for a contested hearing.  As part of the bidding procedures, the Debtors, in consultation with the landlords, should develop a list of what minimum adequate information should be provided by each potential purchaser. | C.  *See supra* Response A to Objection No. 1, Responses A-C to Objection No. 2. | **OPEN – ADDRESSED IN REVISED ORDER** |

6

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | D. The landlord should be deemed a qualified bidder (without having to submit additional information), and should be allowed to bid on its lease (without having to bid on the remainder of a package). Otherwise, the bid procedures constitute an unwarranted restriction on the landlord's property rights, an alteration of the lease, and an improper taking. | D. *See supra* Response D to Objection 2. | **OPEN – ADDRESSED IN REVISED ORDER** |
| | | E. Objects to any waiver of the requirements of Rule 6004(h). | E. In light of the compressed timeline, a waiver of the fourteen (14) day stay of orders authorizing the use, sale or lease or property is necessary and appropriate to enable the Debtors to successfully implement the Sales Strategy. | **OPEN** |
| | | F. Joins in other landlord objections to the extent not inconsistent. | F. The Debtors assert all relevant Responses. | **OPEN** |
| 4. | Pension Benefit Guaranty Corporation (the "**PBGC**")<br><br>(ECF No. 332) | A. Global Bidding Procedures fail to take into account the possibility that a Qualified Bidder may wish to assume all or some portion of one or more of the defined benefit pension plans sponsored by the Debtors. | A. The Global Bidding Procedures were revised to make clear that a Qualified Bidder may assume pension liabilities. | **RESOLVED – ADDRESSED IN REVISED ORDER** |
| | | B. The proposed timing of the sale process does not facilitate a competitive auction process that maximizes value to the Debtors' estates. | B. The PBGC's timing concern was resolved by moving the non-binding indication of interest date from August 24, 2015 to August 28, 2015. | **RESOLVED – ADDRESSED IN REVISED ORDER** |
| | | C. Avoidance actions should be preserved for unsecured creditors. | C. The sale of the Debtors' encumbered avoidance actions is an appropriate exercise of the Debtors' business judgment. | **RESOLVED – NO CHANGES MADE** |

WEIL:\95427590\5\50482.0005

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | D.  The Debtors must provide substantive involvement by the PBGC on a real time basis with potential bidders. | D.  The PBGC will be provided with any Qualified Bids that assume pension obligations. | **RESOLVED – ADDRESSED IN REVISED ORDER** |
| 5. | United Food and Commercial Workers Union (the "**UFCW**")<br><br>(ECF No. 348) | A.  Joins in and adopts any objections or requests for modifications filed or advanced by the Committee. | A.  The Committee did not file an objection, only a statement and reservation of rights. The Committee supports the Revised Global Bidding Procedures. | **N/A** |
| | | B.  Sale Objection Deadline should be extended. | B.  The Debtors are considering granting the UFCW an extension of its Sale Objection Deadline. | **OPEN** |
| | | C.  The UFCW should be an Objection Notice Party. | C.  The Revised Global Bidding Procedures make the UFCW an Objection Notice Party. | **RESOLVED – ADDRESSED IN REVISED ORDER** |
| | | D.  The variables to be considered in reviewing bids should include impact on employees, employee claims against the estate, collective bargaining agreements, and whether the Bidder has reached a contract with the relative collective bargaining representatives. | D.  The Revised Global Bidding Procedures incorporate this change. | **RESOLVED – ADDRESSED IN REVISED ORDER** |
| | | E.  The Consultation Party should be the UFCW, not the lawyers for the UFCW. | E.  The Revised Global Bidding Procedures make the UFCW the Consultation Party. | **RESOLVED – ADDRESSED IN REVISED ORDER** |

8

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | F. In the event the Debtors seek modifications to the CBAs, the UFCW reserves all of its rights with respect to any such proceedings, including its rights under section 1113 of the Bankruptcy Code. | F. The Debtors reserve all rights in connection with any such proceedings. | **N/A – RESERVATION OF RIGHTS** |
| 6. | Joseph Angelone (ECF No. 346) | A. Objects to the Global Bidding Procedures to the extent they deny protections afforded by his lease and related extension. | A. This is a Sale Hearing issue. The Debtors reserve their rights to respond to any objection at the appropriate time. | **OPEN** |
| **Global Bidding Procedures – Reservations of Rights/Joinders** | | | | |
| 7. | New York Community Bank ("**NYCB**") (ECF No. 259) | A. NYCB reserves the right to object to any particular sale. | A. This is a Sale Hearing issue. The Debtors reserve their rights to respond to any such objection at the appropriate time. | **N/A – RESERVATION OF RIGHTS** |
| | | B. NYCB reserves the right to assert entitlement to protections under section 365(h) of the Bankruptcy Code in accordance with, *inter alia*, section 365(m) of the Bankruptcy Code. | B. The Debtors reserve their rights to respond to any such argument at the appropriate time. | **N/A – RESERVATION OF RIGHTS** |
| 8. | M & K Real Estate Associates, LLC ("**M&K**") and Feinrose Associates ("**Feinrose**") (ECF No. 266) | A. The Debtors failed to disclose to Key Foods and Stop & Shop the existence and nature of prepetition negotiations among M&K and Feinrose and representatives of the Debtors. | A. This is not an objection to the Global Bidding Procedures Order. The Debtors are under no obligation to disclose any such negotiations. | **OPEN** |
| | | B. Reserve rights to assert a Cure Objection, an Adequate Assurance Objection, and/or any other claims. | B. The Debtors reserve their rights to respond to any such objections at the appropriate time. | **N/A – RESERVATION OF RIGHTS** |

9

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | C.  Join in other landlord objections to the extent not inconsistent. | C.  The Debtors assert all relevant Responses. | **OPEN** |
| 9. | Westchester Fire Insurance Company<br><br>(ECF No. 275) | A.  Reserves rights to: (i) renew or non-renew surety bonds of; (ii) seek an allowance of administrative expense claims for any and all losses under the bonds and/or related documents; (iii) cancel or terminate any of the bonds under applicable non-bankruptcy law or seek relief from the automatic stay to do so; (iv) object to the terms of any yet to be provided revised Stalking Horse Agreement and/or sale of assets to the Stalking Horse Bidder or other Successful Bidder; (v) bond any Buyer or Successful Bidder for the Debtors' assets after completion of underwriting and execution of indemnity agreements; (vi) amend, modify or supplement this Reservation of Rights including in response to the filing of any additional documents or exhibits by the Debtors and/or any party-in-interest; and (vii) raise additional arguments at or prior to the hearing on the Motion. | A.  The Debtors reserve their rights to object or respond to any such actions or arguments at the appropriate time. | **N/A – RESERVATION OF RIGHTS** |
| 10 | 1199SEIU United Healthcare Workers<br><br>(ECF No. 280) | A.  Global Bidding Procedures Motion should not be used to sidestep the procedural and substantive requirements of section 1113 of the Bankruptcy Code and/or bolster their necessity arguments in any future litigation. | A.  The Debtors reserve their rights to respond to these arguments at the appropriate time. | **N/A – RESERVATION OF RIGHTS** |

WEIL:\95427590\5\50482.0005

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| 11 | The Official Committee of Unsecured Creditors (the "**Committee**")<br><br>(ECF No. 371) | A.  In the event the Committee's remaining few issues cannot be resolved consensually, the Committee reserves its rights to make its objections at or prior to the hearing on the Global Bidding Procedures Motion. | A.  The Debtors reserve their rights to respond to any objections of the Committee. | **N/A – RESERVATION OF RIGHTS** |
| | **Discrete Sale and Lease Rationalization Procedures (the "Discrete Procedures") –Objections** | | | |
| 12 | The Brixmor Properties Group, DLC Management Corp., Federal Realty Investment Trust, The Prudential Insurance Company of America, Acadia Realty Trust, and Alecta Real Estate Investments, LLC<br><br>(ECF No. 255) | A.  The Discrete Procedures should mirror the procedures negotiated in the Debtors' prior chapter 11 cases (the "**Prior Procedures**")[2] which provided for:<br><br>i.  ten (10) calendar days for landlords to object to any proposed cure and assumption and assignment of a lease; | i.  The Revised Discrete Procedures extend the objection deadline to ten (10) days after the date the Debtors serve the relevant Small Transaction Notice or Large Transaction Motion, as applicable. Revised Discrete Procedures Order, Ex. 1 § IV.E. | **RESOLVED – ADDRESSED IN REVISED ORDER** |

---

[2] The Prior Procedures refer to the Assumption and Assignment Procedures for Purchased Leases set forth in paragraph 23 of the *Order Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I) Authorizing and Approving (A) Global Store Rationalization Procedures, (B) the Sale of Assets in Connection Therewith Free and Clear of All Liens, Claims, and Encumbrances, (C) the Debtors' Entry into a Liquidation Consulting Agreement, and (D) Global Procedures for Assumptions and Assignment and Rejection of Unexpired Leases; and (II) Granting Related Relief, In re Great Atlantic & Pacific Tea Co., Inc., et al.,* Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Mar. 10, 2011) (ECF No. 1004).

WEIL:\95427590\5\50482.0005

| No. | Objecting Party | Objection | Response | Status |
|-----|-----------------|-----------|----------|--------|
|  |  | ii.   service of the Assumption and Assignment Notice to counsel for landlords and service by email; | ii.   The Revised Discrete Procedures include counsel of record for all non-Debtor parties to any executory contracts or unexpired leases proposed to be assumed and assigned as Transaction Notice Parties.  *Id.* § II.  The Revised Discrete Procedures require the Debtors to serve the Small Transaction Notice or the Large Transaction Notice, as applicable, including the Assumption and Assignment Information, on the Transaction Notice Parties.  *Id.* § IV.D.  The Revised Discrete Procedures provide for service by email.  *Id.* | **RESOLVED – ADDRESSED IN REVISED ORDER** |

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | iii.  the Assumption and Assignment Notice to include:  (i) delivery of adequate assurance information (which would be reviewed on a confidential basis) and (ii) a proposed form of order; and | iii.  The Revised Discrete Procedures provide for the delivery of the Adequate Assurance Information to the Cure Notice Parties by email and overnight mail, and for the Cure Notice Parties to review such information on a confidential basis. *Id.* § IV.D.  The Revised Discrete Procedures provide that a Large Transaction Motion will include a Proposed Transaction Order, approving the Large Transaction, including the assumption and assignment of any executory contract or unexpired lease in connection therewith.  *Id.* § IV.B.  An Uncontested Small Transaction will be deemed authorized under the terms of the Revised Discrete Procedures Order.  *Id.* § IV.F.2.  The notice of hearing with respect to a contested Small Transaction will include a proposed form of order.  *Id.* | **RESOLVED – ADDRESSED IN REVISED ORDER** |

| No. | Objecting Party | Objection | Response | Status |
|-----|-----------------|-----------|----------|--------|
|  |  | iv.    any hearing on unresolved objections to take place no earlier than ten (10) calendar days after the objection deadline. | iv.    Any hearing on unresolved objections will take place no earlier than seven (7) days after the Objection Deadline.  However, the Debtors did extend the Objection Deadline from seven (7) to ten (10) days. *Id.* § IV.G.  Given the necessary compressed timeline, seventeen (17) days' notice of a hearing on any unresolved objections to a Transaction is reasonable and appropriate, in light of the particular circumstances. | **OPEN – ADDRESSED IN REVISED ORDER** |
|  |  | B.    If adequate assurance information is not received in a timely fashion, then any initial hearing should serve as a status conference to set expedited discovery, a briefing schedule, and a further hearing. | B.    *See supra* Response A to Objection No. 1.  The Prior Procedures did not provide for discovery or further hearings in connection with the assumption and assignment of an executory contract or unexpired lease, and it would not be appropriate to do so here. | **OPEN** |
|  |  | C.    See Objection No. 2(C) | C.    *See supra* Response C to Objection No. 2. | **OPEN** |
|  |  | D.    If a proposed assignee is a newly-formed entity, the landlords will require such assignee to demonstrate that it is willing to enter into some type of credit enhancement, such as (i) a guaranty, (ii) a letter of credit or (iii) a cash security deposit. | D.    *See supra* Response C to Objection No. 2. | **OPEN** |

14

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | E.  Landlords object to any sale free and clear of the obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, but which have not yet been billed. | E.  *See supra* Response F to Objection No. 2. | **OPEN** |
| | | F.  Any waiver of the requirements of Bankruptcy Rule 6004(h) and 6006(d) is unnecessary and inequitable. | F.  *See supra* Response E to Objection No. 3. | **OPEN** |
| 13 | Cenmor Associates, Staltac Associates, and Spa 77 N L.P  (ECF No. 262) | A.  Object to any general release of all pre-assumption lease obligations. | A.  This objection presents a Transaction Hearing issue. The Debtors reserve their rights to respond to such objection at the appropriate time. | **OPEN** |
| | | B.  Leases must be assumed *cum onere*, with all their benefits and burdens. Specifically, by way of example, there are executory obligations for insurance, indemnity, environmental responsibility, compliance with law, and a myriad of other executory obligations.  These must be assumed as of the origin of the lease, and not solely as of the assumption date. Any order must be clear in this respect. | B.  This objection a Transaction Hearing issue. The Debtors reserve their rights to respond to such objection at the appropriate time. | **OPEN** |
| | | C.  Joins in other landlord objections to the extent not inconsistent, and specifically incorporates ECF No. 255. | C.  The Debtors assert all relevant Responses. | **OPEN** |

15

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| 14 | Cardinal Capital Partners, Inc., Benenson Capital Company LLC, and Certain of Their Respective Affiliates<br><br>(ECF No. 269) | A. The definition of Transaction Notice Parties should be expanded to include counsel of record to each contract counterparty. | A. *See supra* Response A.ii to Objection No. 12. | **RESOLVED – ADDRESSED IN REVISED ORDER** |
| | | B. The definition of Cure Notice Parties should be expanded to include counsel of record to each contract counterparty. | B. The Debtors revised the definition of Cure Notice Parties to include counsel of record for each non-Debtor counterparty to an executory contract or unexpired lease proposed to be assumed and assigned, if any. Revised Discrete Procedures Order, Ex. 1 § IV.D. | **RESOLVED – ADDRESSED IN REVISED ORDER** |
| | | C. Simultaneously with the filing of a Transaction Notice, a Transaction Motion, or an Assumption and Assignment Notice, contract counterparties should be provided with all materials that will be offered as evidence and a summary of any proposed testimony in connection with the Debtors' efforts to meet their burden of proof as to adequate assurance of future performance of lease terms pursuant to 11 U.S.C. § 365(b)(1)(C). | C. *See supra* Response A.ii Objection No. 12 and Response C to Objection No. 2. | **RESOLVED – ADDRESSED IN REVISED ORDER** |
| | | D. The deadline to object to a Transaction Notice, a Transaction Motion, or an Assumption and Assignment Notice should be ten (10) days after service of such notice (instead of 7). | D. *See supra* Response A.i to Objection No. 12. | **RESOLVED – ADDRESSED IN REVISED ORDER** |

16

| No. | Objecting Party | Objection | Response | Status |
|-----|-----------------|-----------|----------|--------|
|  |  | E. With respect to any non-consensual requests to assume and assign any leases, the landlords request that the Court use the preliminary hearing as a status conference to establish a discovery schedule and an appropriate date for a final evidentiary hearing on such contested assignments of leases. | E. *See supra* Response A to Objection No. 1. | **OPEN** |
|  |  | F. Join in objections of other landlords to the extent not inconsistent. | F. The Debtors assert all relevant Responses. | **OPEN** |
| **Discrete Procedures – Reservations of Rights/Joinders** | | | | |
| 15 | NYCB (ECF No. 260) | A. NYCB reserves the right to object to any particular sale. | A. This is a Transaction Hearing issue. The Debtors reserve their rights to respond to any such arguments at the appropriate time. | **N/A – RESERVATION OF RIGHTS** |
|  |  | B. NYCB reserves the right to assert entitlement to protections under section 365(h) of the Bankruptcy Code in accordance with, *inter alia*, section 365(m) of the Bankruptcy Code. | B. This is a Transaction Hearing issue. The Debtors reserve their rights to respond to any such arguments at the appropriate time. | **N/A – RESERVATION OF RIGHTS** |
| 16 | South-Whit Shopping Center Associates to Limited Objection of Certain Other Landlords (ECF No. 274) | A. Joins in ECF No. 255 and reserves the right to join in the objections of other similarly-situated landlords. | A. The Debtors assert all relevant Responses. | **RESOLVED** |
| 17 | F.I. Associates, Harwill Homes, Inc., Bernards Plaza Associates, LLC, and Old Bridge Plaza Associates, LLC (ECF No. 291) | A. Joins in ECF No. 255. | A. The Debtors assert all relevant Responses. | **OPEN** |

WEIL:\95427590\5\50482.0005

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| **Global Procedures and Discrete Procedures – Combined Objections** | | | | |
| 18 | Bank of America, National Association ("**BOA**") (ECF No. 264) | A. To the extent the motions seek authority for the Debtors to sell property free and clear of any leases, section 365(h) of the Bankruptcy Code prohibits any such sale. Moreover, even if the Debtors could establish that section 363(f) provides them with the authority to sell property free and clear of BOA's leasehold interests, notwithstanding section 365(h), they cannot satisfy their burden of (i) proving that they can satisfy one of the "gatekeeping" provisions of section 363(f) and (ii) providing BOA with adequate protection of its interest as required by 363(e). | A. This is a Sale/Transaction Hearing issue. The Debtors reserve their rights to respond to any such arguments at the appropriate time. | **OPEN** |
| 19 | MCB Landlords and MCB Real Estate LLC, as Authorized Representative for the MCB (ECF No. 277) | A. Each affected landlord and its counsel, if known, should be included as a "Transaction Notice Party" and given notice directly in connection with a proposed sale that includes the assumption and assignment of the lease of the landlord. | A. *See supra* Response B to Objection No. 1 and Response A.ii. to Objection No. 12. | **RESOLVED** |
| | | B. Joins all other objections filed by landlords. | B. The Debtors assert all relevant Responses. | **RESOLVED** |
| 20 | Greenburgh Shopping Center Associates, 255 Mall LLC and Feil-Whitestone LLC (ECF No. 278) | A. Request ten (10) calendar days to object to any proposed cure and assumption and assignment. | A. *See supra* Response A to Objection No. 2, Response A.i. to Objection No. 12. | **OPEN – ADDRESSED IN REVISED ORDERS** |

WEIL:\95427590\5\50482.0005

| No. | Objecting Party | Objection | Response | Status |
|-----|-----------------|-----------|----------|--------|
| | | B. Request email service of assumption and cure notices and delivery of adequate assurance information and a proposed form of order on Landlords' counsel. | B. *See supra* Responses B & C to Objection No. 1, Response A.ii. to Objection No. 12. | **RESOLVED – ADDRESSED IN REVISED ORDERS** |
| | | C. Request that any hearing on unresolved objections take place no earlier than ten (10) calendar days after the objection deadline. | C. *See supra* Response A Objection No. 2, Response A.iv. to Objection No. 12. | **OPEN – ADDRESSED IN REVISED ORDERS** |
| | | D. Any order granting the assumption and assignment of a shopping center lease must assume the whole lease and must strictly comply with the provisions of section 365(b)(1)(C) and the heightened requirements of section 365(b)(3) with regard to adequate assurance of future performance. | D. *See supra* Response C to Objection No. 2. | **OPEN – ADDRESSED IN REVISED ORDERS** |
| | | E. Object to any assumption that is free and clear of Debtors' obligations to satisfy unbilled reconciliations and adjustments that have accrued under the Leases prior to assumption and assignment, but which have not yet been billed. | E. *See supra* Response F to Objection No. 2. | **OPEN** |
| | | F. In the event of an objection regarding the assumption and assignment of any lease to be resolved consensually with the Debtor, the Landlord should not be deemed to have waived its right to an evidentiary hearing on the issue of adequate assurances of future performance or any other relevant issue. The compressed timeframes of both motions may prejudice the landlords' rights to seek discovery on any contested lease assumption issue. | F. *See supra* Response A to Objections No. 1. | **OPEN** |

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | G. Object to any waiver of requirements of Rules 6004(h) and 6006(d). | G. *See supra* Response E to Objections No. 3. | **OPEN** |
| | | H. Join in objections of other landlords to the extent not inconsistent. | H. The Debtors assert all relevant Responses. | **OPEN** |
| 21 | Grays Ferry Partners, LP to Debtors' Motions for Approval (ECF No. 282) | A. Objects that motions require landlord to object to proposed disposition of lease before (i) proposed assignee of Lease is identified, (ii) adequate assurance of future performance has been demonstrated, (iii) intended use of premises has been disclosed, (iv) the Debtors have met their burden of proof in connection with the proposed transfer, and (v) landlord has been provided with information necessary to determine whether to object to any proposed assumption and assignment of the Lease (collectively, the "Lease Transfer Information").  Any order entered in connection with the motions should first require the Debtors to provide Landlord with the Lease Transfer Information before Landlord is required to file a response to any proposed assumption and assignment of the lease. | A. *See supra* Response E to Objection No. 1, Response C to Objection No. 2. | **OPEN – ADDRESSED IN REVISED ORDERS** |
| | | B. Joins in objections of other shopping center lessors, to the extent consistent. | B. The Debtors assert all relevant Responses. | **OPEN** |
| 22 | 360 East 72nd Street Owners, Inc. (ECF No. 372) | A. Landlords should have the ability to bid on their own leases without providing further documentation and credit bid without providing any deposit. | A. *See supra* Response D to Objection No. 2. | **OPEN – ADDRESSED IN REVISED ORDER** |

| No. | Objecting Party | Objection | Response | Status |
|-----|-----------------|-----------|----------|--------|
| | | B. The Global Bidding Procedures should be amended to require that landlords receive certain specific adequate assurance information in time to review and prepare a meaningful objection, if necessary. | B. *See supra* Response E to Objection No. 1, Response C to Objection No. 2. | **OPEN – ADDRESSED IN REVISED ORDERS** |
| | | C. Landlords must receive specific adequate assurance information at least 10 days prior to the proposed objection deadline. | C. *See supra* Response A to Objection No. 2. | **OPEN – ADDRESSED IN REVISED ORDERS** |
| | | D. Any assumption and assignment must comply with the terms of the Lease, including provisions concerning use, radius, etc. | D. This objection presents a Sale Hearing issue, which should not be heard at a hearing to approve sale procedures. The Debtors reserve their rights to respond to such argument at the appropriate time. | **OPEN** |
| | | E. Any sale of the lease must be free and clear of obligations to pay all charges and satisfy unbilled recollections | E. *See supra* Response F to Objection No. 2. | **OPEN** |
| | | F. If the lease provides that a tenant must indemnify and hold Landlord harmless for any unknown claim, any order approving an assumption and assignment must be consistent with such provision. | F. This objection presents a Sale Hearing issue, which should not be heard at a hearing to approve sale procedures. The Debtors reserve their rights to respond to such argument at the appropriate time. | **OPEN** |
| | | G. To the extent consistent, joins in objections of other landlords, including but not limited to Docket Nos. 255, 271, 333. | G. The Debtors assert all relevant responses. | **OPEN** |
| 23 | 251 East 51st Street Corp. (ECF No. 373) | A. *See supra* Objection No. 20. | A. *See supra* Responses to Objection No. 20. | **OPEN** |

21

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | **Global Procedures and Discrete Procedures – Combined Reservation of Rights/Joinders** | | | |
| 24 | CJAM Associates, LLC to Landlords' Limited Objections (ECF No. 284) | A. Joins and incorporates by reference objections filed by other landlords, including ECF Nos. 161 and 255. | A. The Debtors assert all relevant Responses. | **OPEN** |
| | | B. Objects to the extent the procedures reduce any time periods within which landlords may object to assumption and assignments of leases and/or cure amounts asserted by the Debtors, from the Prior Procedures. | B. *See supra* Response A to Objection No. 2, Response A to Objection No. 12. | **OPEN – ADDRESSED IN REVISED ORDERS** |
| | | C. Objects to the extent Debtors propose to limit or reduce any information concerning the proposed assignee of the lease and adequate assurances of future performance from that approved in the prior cases.  In this regard, proposed assignees should be compelled to demonstrate to landlords (not just Debtors) the financial wherewithal and willingness to perform under the operative leases, with reasonable time for landlords to consider and, if warranted, object. | C. *See supra* Response C to Objection No. 2. | **OPEN – ADDRESSED IN REVISED ORDER** |
| 25 | Vets & Sparton, LLC to Landlords' Limited Objections (ECF No. 285) | A. Joins and incorporates by reference objections filed by other landlords, including ECF Nos. 161 and 255. | A. The Debtors assert all relevant Responses. | **OPEN** |
| | | B. Objects to the extent the procedures reduce time periods within which landlords may object to assumption and assignments of leases and/or cure amounts, from the Prior Procedures. | B. *See supra* Response A to Objection No. 2, Response A to Objection No. 12. | **OPEN – ADDRESSED IN REVISED ORDERS** |

22

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | C.  Objects to the extent Debtors propose to limit or reduce any information concerning the proposed assignee of the lease and adequate assurances of future performance from that approved in the prior cases.  In this regard, proposed assignees should be compelled to demonstrate to landlords (not just Debtors) the financial wherewithal and willingness to perform under the operative leases, with reasonable time for landlords to consider and, if warranted, object. | C.  *See supra* Response C to Objection No. 2. | **OPEN – ADDRESSED IN REVISED ORDERS** |
| 26 | Urstadt Biddle Properties Inc.;  UB New Providence, LLC; McLean Plaza Associates, LLC; UB Ironbound, L.P; UB Bloomfield I, LLC;  UB Boonton I, LLC; UB Pompton Lakes I, LLC; UB Harrison I, LLC; Sherwood Island 21, LLC; SI Ridgefield LLC. (ECF No. 286) | A.  Demand that all notices that are to be provided under the motions be served upon the Landlords through undersigned counsel. | A.  *See supra* Response C to Objection No. 1 and Response A.ii. to Objection No. 12. | **RESOLVED – ADDRESSED IN REVISED ORDERS** |
| | | B.  Reserve right to object to any particular sale and/or assumption and/or assignment. | B.  This is a Sale/Transaction Hearing issue.  The Debtors reserve their rights to respond to any such objections at the appropriate time. | **N/A – RESERVATION OF RIGHTS** |

WEIL:\95427590\5\50482.0005

| No. | Objecting Party | Objection | Response | Status |
|-----|----------------|-----------|----------|--------|
| | | C. Reserve any and all rights under section 365 and to demand proper and sufficient information be made available in a timely manner to afford landlords sufficient opportunity to protect their interests by asserting an objection to any proposed assumption and assignment that affects or impacts a lease held by any one of the landlords. Reserve rights to assert any all of the protections afforded under the Bankruptcy Code, including (without limitation) sections 365(h) and (m). | C. These are Sale/Transaction Hearing issues. The Debtors reserve their rights to respond to any such objections at the appropriate time. | **N/A – RESERVATION OF RIGHTS** |
| | | D. Join in all landlord responses, including ECF Nos. 255, 262, and 271. | D. The Debtors assert all relevant Responses. | **OPEN** |
| 27 | Rosmar Holding Company L.P. to Landlords' Limited Objections (ECF No. 288) | A. Joins and incorporates by reference objections filed by other landlords, including ECF Nos. 161 and 255. | A. The Debtors assert all relevant Responses. | **OPEN** |
| | | B. Objects to the extent the procedures reduce any time periods within which landlords may object to assumption and assignments of leases and/or cure amounts asserted by the Debtors, from the Prior Procedures. | B. *See supra* Response A to Objection No. 2, Response A to Objection No. 12. | **OPEN – DDRESSED IN REVISED ORDERS** |

24

| No. | Objecting Party | Objection | Response | Status |
|---|---|---|---|---|
| | | C. Objects to the extent Debtors propose to limit or reduce any information concerning the proposed assignee of the lease and adequate assurances of future performance from that approved in the prior cases. In this regard, proposed assignees should be compelled to demonstrate to landlords (not just Debtors) the financial wherewithal and willingness to perform under the operative leases, with reasonable time for landlords to consider and, if warranted, object. | C. *See supra* Response C to Objection No. 2. | **OPEN – ADDRESSED IN REVISED ORDERS** |
| 28 | Norse Realty Entities (ECF No. 295) | A. Joins in objections filed by similarly-situated landlords, especially in addressing the due process rights of landlords and the rights afforded landlords of shopping centers under section 365, such as ECF Nos. 255 and 278. | A. The Debtors assert all relevant Responses. | **OPEN – ADDRESSED IN REVISED ORDERS** |
| 29 | Kimco Realty Corporation (ECF No. 302) | A. Joins in objections filed by other landlords, including ECF Nos. 161, 255, 271, 277, and 288. | A. The Debtors assert all relevant Responses. | **OPEN** |
| 30 | Basser-Kaufman, Inc.; Blumenfeld Development Group, Ltd.; DDR Corp.; Equity One, Inc.; Huntington-Grocery, LLC; Nassimi Realty, Inc.; Onyx Management Group LLC; Philips International; Realty Income Corporation; Washington Park Plaza Associates, LLC and Woodbridge Plaza, LLC (ECF No. 333) | A. Join in objections filed by other landlords, including ECF Nos. 255 and 271. | A. The Debtors assert all relevant Responses. | **OPEN** |
| 31 | M Plaza L.P. | A. Joins in other landlord objections to the extent that such objections are applicable | A. The Debtors assert all relevant Responses. | **OPEN** |

25

| No. | Objecting Party | Objection | Response | Status |
|-----|-----------------|-----------|----------|--------|
|     | (ECF No. 369)   | to M Plaza L.P.'s lease |  |  |

WEIL:\95427590\5\50482.0005

**EXHIBIT B**

**Revised Global Bidding Procedures Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re                                                  :

                                                       :     **Chapter 11**

**THE GREAT ATLANTIC & PACIFIC TEA**                   :

**COMPANY, INC., et al.,**                             :     **Case No. 15-23007 (RDD)**

                                                       :

Debtors.[1]                                            :     **(Jointly Administered)**

                                                       :

------------------------------------------------------------------x

**ORDER APPROVING (A) GLOBAL BIDDING PROCEDURES, (B) BID
PROTECTIONS GRANTED TO CERTAIN STALKING HORSE PURCHASERS,
(C) THE FORM AND MANNER OF NOTICE OF AUCTIONS, SALE TRANSACTIONS
AND SALE HEARING, (D) THE ASSUMPTION AND ASSIGNMENT PROCEDURES,
AND (E) THE DATE FOR AUCTIONS, IF NECESSARY, AND SALE HEARINGS**

Upon the motion, dated July 19, 2015 (the "**Motion**"),[2] of the Debtors in the

above-captioned chapter 11 cases for an order pursuant to sections 105, 363, 365, 503 and 507 of

the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014:  (i) approving (a) the

Global Bidding Procedures attached hereto as **Exhibit 1**, (b) the Bid Protections granted to each

Stalking Horse Bidder as provided in such bidder's Stalking Horse Agreement, (c) the form and

manner of notice of each Auction, Sale Transaction and Sale Hearing, (d) the Assumption and

Assignment Procedures, including the procedures for determining cure costs, and (e) a date for

the Auctions and Sale Hearings (collectively, the "**Bidding and Auction Process**"); and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P
Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW
Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210);
Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para
Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell,
Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell
Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic &
Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate
headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms utilized but not defined herein shall have the meanings given them in the Motion or the Global
Bidding Procedures.

2

(ii) authorizing (a) the sale of the Acquired Assets, as defined and identified in each Stalking

Horse Agreement (including any Additional Stores), and any Additional Stores free and clear of

all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy

Code and (b) the assumption and assignment of Transferred Contracts, as defined and identified

in each Stalking Horse Agreement (including any Additional Contracts) (collectively, the "**Sale**

**Transactions**"), all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334; and consideration of the Motion and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been given as provided in the

Motion; and it appearing that no other or further notice need be provided; and a hearing having

been held to consider the relief requested in the Motion as to the Bidding and Auction Process

(the "**Hearing**"); and all of the proceedings had before the Court; and the Court having reviewed

the Motion, the McGarry Declaration, and the Goldstein Declaration filed in support of the

Motion; and the Court having found and determined that the relief sought in the Motion as to the

Bidding and Auction Process is in the best interests of the Debtors, their estates and creditors,

and all parties in interest and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is hereby

WEIL:\95428776\9\50482.0004

**FOUND AND DETERMINED THAT**:[3]

A.      This Court has jurisdiction to hear and determine the Motion and to grant

the relief requested herein with respect to the Bidding and Auction Process pursuant to 28

U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory and legal predicates for the relief requested in the Motion are

sections 105, 363, 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004,

6006, and 9014.

C.      Good and sufficient notice of the Motion, the Bidding and Auction

Process and the relief sought in the Motion has been given under the circumstances, and no other

or further notice is required except as set forth herein and in the Global Bidding Procedures.  A

reasonable opportunity to object or be heard regarding the relief provided herein has been

afforded to parties in interest.

D.      The Debtors and their advisors, including Evercore Group LLC and Hilco

Real Estate LLC, engaged in a robust and extensive marketing and sale process before and after

the Commencement Date, over a period of more than four months, to solicit and develop the

highest or best offer for the Stores.

E.      The bid of each Stalking Horse Bidder as reflected in the Stalking Horse

Agreement of such Stalking Horse Bidder (such Stalking Horse Bidder, the "**Applicable**

**Stalking Horse Bidder**" and the Stalking Horse Agreement applicable to such Stalking Horse

Bidder, the "**Applicable Stalking Horse Agreement**"), represents the highest or best offer the

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Debtors have received to purchase the Acquired Assets included in an Applicable Stalking Horse Agreement (the "**Applicable Acquired Assets**").

F.       Each of Acme Markets, Inc., The Stop & Shop Supermarket Company, LLC, and Key Food Stores Co-Operative, Inc., shall act as the "**Stalking Horse Bidder**" under a Stalking Horse Agreement, respectively, and be subject to higher or better offers in accordance with the Global Bidding Procedures.

G.       Pursuit of each Applicable Stalking Horse Bidder as a "stalking-horse" and its Applicable Stalking Horse Agreement as a "stalking-horse" sale agreement is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment.  The Applicable Stalking Horse Agreement provides the Debtors with the opportunity to sell the Applicable Acquired Assets, in order to preserve and realize their going concern value.  Each of the Applicable Stalking Horse Agreements will enable the Debtors to continue their operations, preserve jobs, minimize disruption to the Debtors' businesses, and secure a fair and adequate baseline price for the Applicable Acquired Assets at the auction for the Applicable Acquired Assets (the "**Applicable Auction**") and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest.

H.       The Bid Protections, including, but not limited to, any Termination Payments (as such term is defined in an Applicable Stalking Horse Agreement, the "**Applicable Termination Payment**"), (i) have been negotiated by the Applicable Stalking Horse Bidder and the Debtors and their respective advisors at arms' length and in good faith and (ii) are necessary to ensure that the Applicable Stalking Horse Bidders will continue to pursue its Applicable Stalking Horse Agreement and the sale transaction contemplated thereby (the "**Applicable Sale**

5

**Transaction**"). The Applicable Termination Payment, to the extent payable under the Applicable Stalking Horse Agreement, (x) is (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and (ii) shall be treated as an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, (y) is commensurate to the real and material benefits conferred upon the Debtors' estates by the Applicable Stalking Horse Bidder, and (z) is fair, reasonable and appropriate, including in light of the size and nature of the Applicable Sale Transaction, the necessity to announce a sale transaction for the Applicable Acquired Assets and the efforts that have been and will be expended by the Applicable Stalking Horse Bidder. The Bid Protections, including, but not limited to, any Applicable Termination Payments are a material inducement for, and condition of, each Applicable Stalking Horse Bidder's execution of the Applicable Stalking Horse Agreement. Unless it is assured that the Bid Protections, including, but not limited to, any Applicable Termination Payment, will be available, the Applicable Stalking Horse Bidder is unwilling to remain obligated to consummate the Applicable Sale Transaction or otherwise be bound under the Applicable Stalking Horse Agreement (including the obligations to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Global Bidding Procedures).

I.     The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Global Bidding Procedures, (ii) the Assumption and Assignment Procedures, (iii) the Bid Protections, including, but not limited to, any Applicable Termination Payment (to the extent payable under the Applicable Stalking Horse Agreement), and (iv) the

6

form and manner of notice of the Applicable Auction and Sale Hearing for the Applicable Sale

Transaction.

J.     The Global Bidding Procedures were negotiated in good faith and at arms'

length and are reasonably designed to promote participation and active bidding and ensure that

the highest or best value is generated for the Applicable Acquired Assets.

K.     None of the Applicable Stalking Horse Bidders is an "insider" or

"affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy

Code, and no common identity of incorporators, directors, or controlling stockholders existed

between the Applicable Stalking Horse Bidder and the Debtors.  The Applicable Stalking Horse

Bidder and its respective counsel and advisors have acted in "good faith" within the meaning of

section 363(m) of the Bankruptcy Code in connection with the Applicable Stalking Horse

Bidders' negotiation of its Bid Protections and the Global Bidding Procedures and the

Applicable Stalking Horse Bidders' negotiation and entry into the Applicable Stalking Horse

Agreement.

L.     The Assumption and Assignment Procedures, including notice of

proposed cure costs, are reasonable and appropriate and consistent with section 365 of the

Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures have

been tailored to provide adequate opportunity for all non-Debtor counterparties to the

Transferred Contracts (as defined in each Applicable Stalking Horse Agreement, the

"**Applicable Transferred Contracts**") to raise any objections to the proposed assumption and

assignment or to the cure costs.

M.     The Global Sale Notice is appropriate and reasonably calculated to

provide all interested parties with timely and proper notice of the Global Bidding Procedures, the

7

Assumption and Assignment Procedures, the Applicable Auctions, the Sale Hearings and the

Applicable Sale Transactions (including the sale of the Applicable Acquired Assets (as set forth

under the Applicable Stalking Horse Agreement) free and clear of any liens, claims,

encumbrances or interests pursuant to section 363(f) of the Bankruptcy Code) (with such liens,

claims, encumbrances or interests attaching to the proceeds of any such sale), and any and all

objection deadlines related thereto, and no other or further notice shall be required for the Sale

Motion, the Applicable Sale Transactions or the assumption and assignment of the Applicable

Transferred Contracts  except as expressly required herein.

           N.      Nothing contained herein shall prejudice or impair the right to credit bid,

as set forth in the Global Bidding Procedures (and subject to the terms of the Intercreditor

Agreement, as such term is defined in the Global Bidding Procedures) of (A) Fortress Credit

Corp., as agent under that certain Senior Secured Debtors-in-Possession Term Credit Agreement

(the "**DIP Lender**"), (B) Wells Fargo Bank, National Association ("**Wells Fargo**"), as agent

under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as

of September 17, 2014, (C) Wells Fargo, as agent under that certain Amended and Restated

Senior Secured Term Credit Agreement, dated as of September 17, 2014, (D) the majority

holders of the Senior Secured PIK Toggle Notes due 2017, and (E) the majority holders of the

Senior Secured Convertible Notes due 2018 (each, a "**Secured Lender**"), on such assets that are

subject to their respective liens in their respective priorities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND
DECREED THAT**:

           1.      The Motion is granted to the extent set forth herein.

8

2.      All objections to the relief granted herein that have not been withdrawn

with prejudice, waived or settled, and all reservations of rights included in such objections,

hereby are overruled and denied on the merits with prejudice.

**Notice of Sale Transaction**

3.      The Global Sale Notice and the Global Publication Sale Notice,

substantially in the forms annexed hereto as **Exhibit 2** and **Exhibit 3**, respectively, are approved.

4.      All parties in interest shall receive or be deemed to have received good

and sufficient notice of (a) the Motion, (b) the Assumption and Assignment Procedures,

including the proposed assumption and assignment of the Applicable Transferred Contracts to

the Applicable Stalking Horse Bidder pursuant to the Applicable Stalking Horse Agreement or to

a Successful Bidder, (c) the Applicable Auction, (d) the Applicable Sale Transaction, including

the sale of the Applicable Acquired Assets (as set forth under the Applicable Stalking Horse

Agreement) free and clear of all liens, claims, encumbrances or other interest, and (e) the Sale

Hearings, and no further notice of the foregoing shall be required, if:

(a)      As soon as practicable, but no later than three (3) days[4] after entry of this
Order, the Debtors cause the Global Sale Notice to be filed with the Court
and served by email, mail, facsimile or overnight delivery on: (i) counsel
for the Applicable Stalking Horse Bidder; (ii) all Persons known by the
Debtors to have expressed an interest to the Debtors in a transaction with
respect to the Applicable Acquired Assets or any Additional Stores during
the past twelve (12) months; (iii) all entities known by the Debtors to have
asserted any lien, claim, encumbrance, or other interest in the Applicable
Acquired Assets or any Additional Stores (for whom identifying
information and addresses are available to the Debtors); (iv) all non-
Debtor parties to the Applicable Transferred Contracts and Additional
Contracts, and their counsel of record, if any (for whom identifying
information and addresses are available to the Debtors); (v) any
Governmental Authority (as defined in the Applicable Stalking Horse
Agreement) known to have a claim in the above-captioned chapter 11
estates; (vi) the United States Attorney for the Southern District of New

---

[4] All references to "days" shall be calendar days, unless expressly noted.

York; (vii) the Office of the Attorney General in each state in which the Debtors operate; (iix) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (ix) all of the multiemployer pension plans to which any of the Debtors is a contributing employer and all of the single employer defined benefit plans to which any Debtor is a contributor; (x) all of the labor unions that represent employees of any Debtor; (xi) the Federal Trade Commission; (xii) the United States Attorney General/Antitrust Division of Department of Justice; (xiii) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); (xiv) all local environmental enforcement agencies; (xv) the United States Environmental Protection Agency; and (xvi) all other Persons requesting notice under Bankruptcy Rule 2002 or as directed by the Court (for whom identifying information and addresses are available to the Debtors) (collectively, the "**Sale Notice Parties**"); and

(b)     As soon as practicable, but no later than five (5) days after entry of this Order, the Debtors cause the Global Publication Sale Notice to be published on the website of the Debtors' claims and noticing agent and once in The New York Times, national edition, and twice in the trade publication, Supermarket News.

## The Global Bidding Procedures and the Auctions

5.      The Global Bidding Procedures, attached hereto as **Exhibit 1**, are incorporated herein and approved, and shall apply with respect to any bids for, and the auction and sale of, all of the Debtors' stores and related assets, including the Applicable Acquired Assets set forth under the Applicable Stalking Horse Agreement.  The Debtors are authorized to take all actions necessary or appropriate to implement the Global Bidding Procedures.

6.      The deadline for submitting Qualified Bids (the "**Global Bid Deadline**") is **September 11, 2015 at 5:00 p.m. (Eastern Time)**.  Any party that does not submit a Qualified Bid by the Global Bid Deadline in accordance with the Global Bidding Procedures will not be allowed to (a) submit any offer after the Global Bid Deadline or (b) participate in the Applicable Auction; provided that the foregoing shall not preclude the Debtors after the Global Bid Deadline from marketing to any person, or auctioning, or any parties from bidding on, any Stores not included in an Applicable Auction, including pursuant to the Discrete Sale and Lease

10

Rationalization Procedures; <u>provided</u> further that to the extent there is no Applicable Auction for the Applicable Acquired Assets of a Stalking Horse Bid, the prior proviso shall not be applicable to such Applicable Acquired Assets.  Each Applicable Stalking Horse Bidder is a Qualified Bidder and the bid reflected in the Applicable Stalking Horse Agreement is a Qualified Bid for all purposes and requirements pursuant to the Global Bidding Procedures.

7.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Applicable Auction and the terms and conditions of the sale or transfer of the Applicable Acquired Assets identified under the Applicable Stalking Horse Agreement.

8.      If the Applicable Stalking Horse Bidder's bid, as reflected in the Applicable Stalking Horse Agreement, is the only Qualified Bid in respect of the Applicable Acquired Assets identified under the Applicable Stalking Horse Agreement that is received by the Debtors by the Global Bid Deadline, no Applicable Auction will be conducted for the Applicable Acquired Assets, and the Applicable Stalking Horse Bidder will be the Successful Bidder for the Applicable Acquired Assets.

9.      Subject to Paragraph 18 below, each Qualified Bidder must provide with its bid information supporting the Qualified Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including the Potential Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Potential Bidders.

10.      To the extent a Qualified Bid provides for assumption of the Pension Plans (as defined below), the Debtors shall within 3 days provide to the Pension Benefit Guaranty

11

Corporation (the "**PBGC**") the Adequate Assurance Information provided to the Debtors so that

the PBGC may evaluate that the Qualified Bidder can provide adequate assurance of its financial

ability to assume the Pension Plans (as defined below).

11.     Each Qualified Bidder participating in the Applicable Auction shall

confirm in writing that (a) it has not engaged in any collusion with respect to the submission of

any bid, the bidding or the Applicable Auction and (b) its Qualified Bid is a good faith bona fide

offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at an

Applicable Auction shall be transcribed.

12.     Subject to the rights of an Applicable Stalking Horse Bidder under its

Applicable Stalking Horse Agreement, the Global Bidding Procedures (including the

consultation rights of the Consultation Parties described therein) and this Order, the Debtors shall

have the right as they may reasonably determine to be in the best interests of their estates to carry

out the Global Bidding Procedures, including, without limitation, to: (a) determine which bidders

are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which

Qualified Bid is a Baseline Bid (as such terms are defined in the Global Bidding Procedures); (d)

determine which bids are the Successful Bid and Back-Up Bid (as such terms are defined in the

Global Bidding Procedures), each as it relates to an Applicable Auction; (e) reject any bid that is

(i) inadequate or insufficient, (ii) not in conformity with the requirements of the Global Bidding

Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of

the Debtors and their estates; (f) adjourn or cancel an Applicable Auction and/or the applicable

Sale Hearing in open court without further notice or as provided in the Global Bidding

Procedures; (g) modify the Global Bidding Procedures consistent with their fiduciary duties and

bankruptcy law; and (h) withdraw the Sale Motion at any time with or without prejudice.

12

## The Sale Hearings and Sale Objections Deadlines

13.     If more than one Qualified Bid is received for the Applicable Acquired

Assets, the applicable Sale Hearing shall be held before this Court on **October 7, 2015 at 10:00**

**a.m. (Eastern Time).**  If the bid of the Applicable Stalking Horse Bidder, as reflected in the

Applicable Stalking Horse Agreement, is the only Qualified Bid received for the Applicable

Acquired Assets, the applicable Sale Hearing shall be held before this Court on **September 21,**

**2015, at 10:00 a.m. (Eastern Time)**.  The Debtors may (after consultation with the Consultation

Parties and the Applicable Stalking Horse Bidder or, if an Applicable Auction has been held, the

Successful Bidder and the Consultation Parties) seek an adjournment of the applicable Sale

Hearing as the Debtors deem appropriate in the exercise of their reasonable business judgment.

14.     Objections to an Applicable Sale Transaction (including the sale of the

Applicable Acquired Assets subject to such objection free and clear of liens, claims,

encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code) and entry of the

Sale Orders (other than objections to the provision of adequate assurance of future performance

by a Successful Bidder other than the Applicable Stalking Horse Bidder) (each, a "**Sale**

**Objection**") must: (a) be in writing and specify the nature of such objection; (b) comply with the

Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York (the

"**Local Rules**"); and (c) be filed with the Court and served on (i) counsel to the Debtors, Weil,

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock,

P.C., Garrett A. Fail, Esq. and Sunny Singh, Esq.), (ii) counsel to the Creditors' Committee,

Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017

(Attn:  Robert J. Feinstein, Esq. and Bradford J. Sandler, Esq.), (iii) counsel to the Applicable

Stalking Horse Bidder, (iv) counsel to Wells Fargo, as ABL Agent, Choate, Hall & Stewart LLP,

13

Two International Place, Boston, Massachusetts 02110 (attn.: Kevin J. Simard, Esq. and John F.

Ventola, Esq.), (v) counsel to Wells Fargo, as Term Agent, Otterbourg, O.C., 230 Park Avenue,

New York, New York 10169 (Attn:  Jonathan N. Helfat, Esq. and Daniel F. Fiorillo, Esq.), and

(vi) counsel to the United Food and Commercial Workers Union International, Cohen, Weiss and

Simon LLP, 330 West 42nd Street, New York, New York 10036 (Attn: Richard M. Seltzer, Esq.)

(collectively, the "**Objection Notice Parties**") by **September 11, 2015 at 5:00 p.m. (Eastern**

**Time**); <u>provided</u> that if Sale Objection relates to the sale of an Additional Store, the Objection

Deadline shall be **October 2, 2015 at 4:00 p.m. (Eastern Time)**.  All Sale Objections will be

heard by the Court at the applicable Sale Hearing.

15.     The failure of any objecting person or entity to timely file and serve a Sale

Objection shall be a bar to the assertion, at any Sale Hearing or thereafter, of any objection to the

Sale Motion, or to the consummation and performance of the Applicable Sale Transaction

contemplated by a Applicable Stalking Horse Agreement or any purchase agreement with a

Successful Bidder, including the transfer of the Applicable Acquired Assets (as set forth under

the Applicable Stalking Horse Agreement subject to the untimely Sale Objection) to the

Applicable Stalking Horse Bidder or the Successful Bidder, free and clear of all liens, claims,

encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

<u>**The Assumption and Assignment Procedures**</u>

16.     The following Assumption and Assignment Procedures are reasonable and

appropriate under the circumstances, fair to all non-Debtor counterparties, comply in all respects

with the Bankruptcy Code, and are approved.

17.     As soon as practicable, but not later than **three (3)** days after the entry of

this Order, the Debtors shall file with the Court and serve by first class mail on each non-Debtor

14

party to the Applicable Transferred Contracts a notice (the "**Cure Notice**") that shall: (i) provide

a description of each such Applicable Transferred Contract, (ii) state the amount, if any, that the

Debtors believe are necessary to cure, or compensate the non-Debtor party for, any and all

defaults under such Applicable Transferred Contract pursuant to section 365 of the Bankruptcy

Code (the "**Cure Costs**"); (iii) notify the non-Debtor party that such party's contract or lease

may be assumed and assigned to a purchaser of the Applicable Acquired Assets; (iv) state the

date of the Sale Hearing and that objections to any Cure Costs or to assumption and assignment

will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors (subject to

the consent of the Applicable Stalking Horse Bidder or, if an Applicable Auction has been held,

the Successful Bidder) in accordance with this Order; and (v) state the appropriate deadline by

which the non-Debtor party must file an objection to the Cure Costs or assumption and

assignment of the Applicable Transferred Contracts.  Upon service of the Cure Notice, all

counterparties to the Applicable Transferred Contracts shall receive or be deemed to have

received good and sufficient notice of the Cure Costs for, and the proposed assumption and

assignment of, the Applicable Transferred Contracts.  As soon as practicable, but no later than

three (3) days after the entry of this Order, the Debtors, the Debtors shall also post a copy of the

Cure Notice on the website for these chapter 11 cases maintained by the Debtors' claims and

noticing agent.

   18. Within 10 days after entry of this Order, the Debtors shall provide, in

coordination with the Stalking Horse Bidders, Adequate Assurance Information for the

Applicable Stalking Horse Bidders to each counterparty to the Applicable Transferred Contracts

and its counsel, if known, on a confidential basis; provided that the counterparties' use and

disclosure of the Adequate Assurance Information shall be subject to the same restrictions applicable to Cure Notice Parties as set forth in Paragraph 20 below.

19.     As soon as practicable, but no later than (1) day after the Auction, the Debtors will file a notice (the "**Notice of Successful Bidders**"), which shall set forth, among other things, (i) the Successful Bidders, (ii) the executory contracts and unexpired leases to be assumed and assigned to each of the Successful Bidders, and the property locations subject to each unexpired lease to be assumed and assigned; (iii) the proposed assignee(s) of such executory contracts and unexpired leases; (iv) a certification by the Debtors that the proposed assignee has provided the Successful Bidder's Adequate Assurance Information, as set forth in Paragraphs 18 and 20, as applicable, to each affected counterparty of such executory contract or unexpired lease on a confidential basis; and (v) the deadlines and procedures for filing Adequate Assurance Objections (as defined here) in response to the Notice of Successful Bidder (as set forth herein).

20.     The Debtors will cause to be served by email (i) the Notice of Successful Bidders and (ii) the Adequate Assurance Information on each non-Debtor counterparty to such executory contract or unexpired lease and their counsel appearing in this case (collectively, the "**Cure Notice Parties**").  The Cure Notice Parties shall review the Adequate Assurance Information on a confidential basis.  The Cure Notice Parties may not use any confidential Adequate Assurance Information for any purpose other than (i) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided and (ii) in support of any objection (subject to the limitations on disclosure set forth herein) by a Cure Notice Party relating to adequate assurance of future performance.  Any objection which discloses confidential, non-public

16

Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s).  This Order authorizes the filing of any such objections under seal, and on the docket with such non-public information redacted, without further Order of the Court.

21.    All Objections to any proposed Cure Costs (each, a "**Cure Objection**") and to the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) with respect to a Cure Objection, state with specificity what cure costs the objecting party believes are required; and (d) be filed with the Court and served on the Objection Notice Parties.

22.    Any Cure Objection or Adequate Assurance Objection in respect of an Applicable Transferred Contract must be filed and served by **September 11, 2015 at 5:00 p.m. (Eastern Time)**; <u>provided</u> that if a Successful Bidder other than the Applicable Stalking Horse Bidder prevails at the Auction, then (a) the deadline to file and serve an Adequate Assurance Objection in respect of an Applicable Transferred Contract shall be extended to **October 2, 2015 at 4:00 p.m. (Eastern Time)**.

23.    No later than **September 21, 2015**, the Debtors shall file with the Court and serve by first class mail upon each non-Debtor counterparty to an Additional Contract included in an Auction Package (as such term is defined in the Global Bidding Procedures Order) and its counsel of record, if any, a notice indicating (a) the applicable Cure Costs for the Additional Contract and (b) that the Debtors' may seek to assume and assign the Additional Contracts to a Successful Bidder or a Stalking Horse Bidder, as applicable (such notice, an "**Additional Cure Notice**").  The Debtors shall also post a copy of any Additional Cure Notices

17

on the website for these chapter 11 cases maintained by the Debtors' claims and noticing agent.

Upon service of the Additional Cure Notice, all counterparties included on such Additional

Contract Notice shall receive or be deemed to have received good and sufficient notice of the

Cure Costs for, and the proposed assumption and assignment of, the Additional Contracts.

24.     Any Cure Objection or Adequate Assurance Objection for an Additional

Contract must be filed and served by **October 2, 2015 at 4:00 p.m. (Eastern Time)**.

25.     If a timely Cure Objection or Adequate Assurance Objection is received

and such objection cannot otherwise be resolved by the parties, such objection shall be heard at

the applicable Sale Hearing; provided that a Cure Objection (only) may, at the Debtors'

discretion (after consultation with the Applicable Stalking Horse Bidder or, if an Applicable

Auction is held, the Successful Bidder), be adjourned to a subsequent hearing if, pending

resolution of such Cure Objection (an "**Adjourned Cure Objection**"), the Debtors maintain a

cash reserve equal to the cure cost the objecting party believes is required, as set forth in the

Cure Objection (the "**Cure Cost Reserve**").  An Adjourned Cure Objection may be resolved

after the applicable Closing Date; provided that the Debtors maintain the Cure Cost Reserve.

Upon resolution of such Adjourned Cure Objection and the payment of the applicable Cure Cost,

if any, the Applicable Transferred Contract or Additional Contract that was the subject of such

Adjourned Cure Objection shall be deemed assumed and assigned to the Applicable Stalking

Horse Bidder or, if any Applicable Auction is held, the Successful Bidder, as of the applicable

Closing Date.

26.     If no timely Cure Objection is filed and served in respect of an Applicable

Transferred Contract or Additional Contract, the Cure Cost identified on the Cure Notice or

Additional Cure Notice will be the only amount necessary under section 365(b) of the

WEIL:\95428776\9\50482.0004

Bankruptcy Code to cure all defaults under such Applicable Transferred Contract or Additional

Contract.  Any party failing to timely file a Cure Objection shall be forever barred from

objecting to the Cure Costs and from asserting any additional cure or other amounts against the

Debtors, their estates, the Applicable Stalking Horse Bidder or, if an Applicable Auction is held,

the applicable Successful Bidder.  If no timely Adequate Assurance Objection is filed and served

with respect to an Applicable Transferred Contract or Additional Contract, the Applicable

Stalking Horse Bidder or, if an Auction is held, the applicable Successful Bidder will be deemed

to have provided adequate assurance of future performance for such Transferred Contract or

Additional Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code.

27.     The Debtors' assumption and assignment of the Applicable Transferred

Contracts and any Additional Contracts to a Successful Bidder is subject to Court approval and

the consummation of an applicable Sale Transaction.  Accordingly, absent the closing of such

sale, the Applicable Transferred Contracts and Additional Contracts (if any) shall not be deemed

assumed or assigned, and shall in all respects be subject to further administration under the

Bankruptcy Code.

28.     The inclusion of a contract or other document or Cure Cost on a Cure

Notice or Additional Cure Notice shall not constitute or be deemed a determination or admission

by the Debtors, the Applicable Stalking Horse Bidder or any other party in interest that such

contract or other document is an executory contract or unexpired lease within the meaning of the

Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being

expressly reserved).  The Debtors reserve all of their rights, claims and causes of action with

respect to each contract or other document listed on the Cure Notice and Additional Cure Notice.

The Debtors' inclusion of an executory contract or unexpired lease on the Cure Notice or

19

Additional Cure Notice shall not be a guarantee that such executory contract or unexpired lease will ultimately be assumed or assumed and assigned.  The Cure Notice shall be without prejudice to each Stalking Horse Bidder's rights, if any, under the Stalking Horse Agreement to subsequently (i) exclude a Applicable Transferred Contract from assumption or assignment or (ii) to include Additional Contracts for assumption and assignment.

29.     The Debtors shall provide written notice to the parties to all Transferred Contracts and Additional Contracts that are ultimately assumed and assigned to a Successful Bidder of (a) such assumption and assignment and (b) the identity of the Successful Bidder.

**Reply Deadline**

30.     The Debtors shall have until **October 6, 2015 at 10:00 a.m. (Eastern Time)** to file and serve a reply to any objection filed in connection with the Sale Transactions, including any Sale Objection, Cure Objection, or Adequate Assurance Objection.

**Bid Protections**

31.     The Bid Protections are approved in their entirety, including, without limitation, the following Applicable Termination Payments payable in accordance with, and subject to the terms of, the Applicable Stalking Horse Agreement:

>       a.      Stalking Horse Bidder, Acme Markets Inc., shall be granted the right to a Termination Payment comprised of a break-up fee of 1.5% of the Cash Purchase Price (as such term is defined in the Applicable Stalking Horse Agreement), plus reimbursement of up to $4.5 million of reasonable and documented expenses in connection with its purchase of IT equipment required to consummate the transactions contemplated by the Applicable Stalking Horse Agreement.

>       b.      Stalking Horse Bidder, The Stop & Shop Supermarket Company, LLC, shall be granted the right to a Termination Payment comprised of a break-up fee of 3% of the Cash Purchase Price (as such terms is defined in the Applicable Stalking Horse Agreement), plus reimbursement of up to $1 million of reasonable and documented expenses.

20

        c.     Stalking Horse Bidder, Key Food Stores Co-Operative, Inc., shall be granted the right to a Termination Payment comprised of a break-up fee of 3% of the Cash Purchase Price (as such terms is defined in the Applicable Stalking Horse Agreement), plus reimbursement of up to $250,000 in reasonable and documented expenses; provided that such Termination Payment is contingent upon the Debtors' approval of the Stalking Horse Bidder's financing commitment letter, on the terms and conditions set forth in section 5.9 of the Applicable Stalking Horse Agreement.

Except as expressly provided for herein, no other termination payments are authorized or permitted under this Order.  Notwithstanding anything to the contrary herein, no Termination Payment shall be payable with respect to a Separable Store in the event that such Separable Store is sold to a party other than the Applicable Stalking Horse.

      32.     The Debtors are authorized and directed to pay the Applicable Termination Payment, to the extent payable under the Applicable Stalking Horse Agreement, without further order of the Court.  The Applicable Termination Payment, to the extent payable under the Applicable Stalking Horse Agreement, shall constitute an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code.  Subject to the foregoing, the Applicable Termination Payment shall be (a) paid in cash from the proceeds of any approved sale or (b) credited against the purchase price if, after an Applicable Auction, the Applicable Stalking Horse Bidder's bid, as enhanced at the Applicable Auction, is the Successful Bid and the sale contemplated by the Applicable Stalking Horse Agreement (as enhanced at the Applicable Auction) is consummated.

### **General Provisions**

      33.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale Transaction) to the extent

21

that it is later determined that the Court, absent consent of the parties, cannot enter final orders or

judgments in connection herewith consistent with Article III of the United States Constitution

and (b) waived any right to jury trial in connection with any disputes relating to the any of the

foregoing matters.

34.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h),

6006(d), 7062, 9014, or any applicable provisions of the Local Rules or otherwise, the terms and

conditions of this Order shall be immediately effective and enforceable upon its entry, and no

automatic stay of execution shall apply to this order.

35.     The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are

hereby satisfied or waived.

36.     This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order

Dated: _____, 2015
         White Plains, New York


                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

Global Bidding Procedures

# GLOBAL BIDDING PROCEDURES

## Overview

On July 19, 2015, The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

The Debtors are seeking to sell their 271 operating stores for the highest or best offers.  On August 10, 2015, the United States Bankruptcy Court for the Southern District of New York entered an order (the "**Global Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "**Global Bidding Procedures**") for the consideration of the highest or otherwise best price for **all** of their stores and related assets (each, a "**Store**"), on the terms and conditions set forth herein.

Three stalking horse bids (collectively, the "**Stalking Horse Bids**") have been submitted by Acme Markets, Inc.; The Stop & Shop Supermarket Company, LLC; and Key Food Stores Co-Operative, Inc. (collectively, the "**Stalking Horse Bidders**").  Each of the Stalking Horse Bidders has executed a separate agreement (each, a "**Stalking Horse Agreement**") for the purchase of non-overlapping groups of Stores (each such group, a "**Stalking Horse Store Package**").  For reference, the Stalking Horse Bids and the Stores that are part of the related Stalking Horse Store Packages are set forth on Schedule 1 attached hereto.

The Stalking Horse Bids are subject to higher or better offers submitted in accordance with the terms and conditions of these Global Bidding Procedures.  These Global Bidding Procedures describe, among other things: (A) the procedures for bidders to submit bids for one or more Stores, including the Stalking Horse Store Packages; (B) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below); (C) the negotiation of bids received; (D) the conduct of one or more subsequent auctions (an "**Auction**"); and (E) the ultimate selection of the Successful Bidder(s) (as defined below) and Court approval thereof (collectively, the "**Bidding Process**").

The Debtors reserve the right to extend any of the bidding deadlines or other dates set forth in these Global Bidding Procedures without further Order of the Bankruptcy Court subject to providing notice as described below; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadlines set forth in a Stalking Horse Agreement.

In addition to these Global Bidding Procedures, the Bankruptcy Court has authorized the Debtors, with the assistance of their advisors to market and sell Stores and other assets pursuant to omnibus procedures (the "**Discrete Sale and Lease Rationalization Procedures**").  Notwithstanding anything to the contrary herein, the Debtors may choose to utilize the Discrete Sale and Lease Rationalization Procedures to market or sell any of their Stores that are not included in a Stalking Horse Store Package.

1

## Summary of Important Dates

| | |
|---|---|
| **August 28, 2015** | Global Non-Binding Indication of Interest Date |
| **September 11, 2015, at 5:00 p.m.** | Global Binding Bid Deadline |
| **September 11, 2015, at 5:00 p.m.** | Deadline to Object to Sale of Stores Included in Stalking Horse Store Packages<br><br>Deadline to Object to Assumption and Assignment of Transferred Contracts to Stalking Horse Bidders, Including Proposed Cure Amounts |
| **September 21, 2015, at 5:00 p.m.** | Deadline for Debtors to Designate and Publish Qualified Bidders; select Baseline Bids; and Publish Stores to be included in the Auction |
| **September 21, 2015** | Deadline for Debtors to File and Serve Cure Notice for Additional Contracts to Be Included in the Auction |
| **September 21, 2015, at 10:00 a.m.** | Sale Hearing if no other Qualified Bids Received for Stalking Horse Store Package |
| **September 24 and 25, 2015** | Auction<br><br>Location: To Be Announced |
| **September 26, 2015** | Deadline for Debtors to File and Serve Notice of Successful Bidders |
| **October 2, 2015, at 4:00 p.m.** | Deadline to Object to Sale of any Additional Stores / Assumption and Assignment of any Additional Contracts<br><br>Deadline to Object to Assumption and Assignment of Transferred Contracts to Qualified Bidders Other than the Stalking Horse Bidders, Including Proposed Cure Amounts |
| **October 6, 2015, at 10:00 a.m.** | Debtors' Reply Deadline |
| **October 7, 2015, at 10:00 a.m.** | Sale Hearing if Auction is Conducted |

## Marketing Process

Assets to be Sold

        All of the Debtors' Stores are available for sale.  A party who is interested in purchasing any of the Stores may submit a bid to purchase:

WEIL:\95428776\9\50482.0004

    (A)      a Stalking Horse Store Package;

    (B)      the Mount Kisco Store (referred to herein as a "**Separable Store**"); or

    (C)      one or more Stores, in any combination, whether or not such Store is included in a Stalking Horse Store Package.

Global Non-Binding Indication of Interest Date

        If you are interested in purchasing any of the Stores as a going concern, whether individually, in combination or in connection with a Stalking Horse Store Package, you are encouraged to contact the Debtors' advisors, Evercore Group LLC ("**Evercore**") and Hilco Real Estate LLC ("**Hilco**"), by <u>no later than August 28, 2015</u> (the "**Global Indication of Interest Date**") in writing, expressing your interest and identifying the Stores in which you are expressing such interest to:

    (A)      Stephen Goldstein and Paul Billyard of Evercore (Stephen.Goldstein@Evercore.com and Billyard@Evercore.com); and

    (B)      Gregory Apter of Hilco (gapter@hilcoglobal.com).

        If you are interested in purchasing any of the Stores' leases or designation rights associated with such leases, whether individually or in combination, you are encouraged to contact Gregory Apter of Hilco (gapter@hilcoglobal.com) no later than the Global Indication of Interest Date.

        Note that submitting an indication of interest by the Global Indication of Interest Date does not obligate you to submit a formal bid or to participate in the sale process and does not exempt you from also having to submit a Qualified Bid by the Global Bid Deadline in order to participate in any subsequence Auction for the Stores on which you are indicating an interest, all as described below. For the avoidance of doubt, the submission of an indication of interest by the Global Indication of Interest Date is not a prerequisite for Potential Bidders to submit a Qualified Bid by the Global Bid Deadline.

Access to Diligence

        To participate in the diligence process and receive access to due diligence information with respect to any of the Stores, a party must submit to the Debtors or their advisors:

    (A)      an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder(s); and

    (B)      sufficient information, as reasonably determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties, to reasonably determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale

3

transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure reasonably acceptable to the Debtors in their discretion).

An interested party shall be a "**Potential Bidder**" if the Debtors determine in their reasonable discretion, after consultation with the Consultation Parties, that an interested party has satisfied the above requirements.  As soon as practicable, the Debtors will deliver to such Potential Bidder:  (A) an information package containing information and financial data with respect to the Stores in which such Potential Bidder has expressed an interest; and (B) access to the Debtors' confidential electronic data room concerning the Stores (the "**Data Room**").

Once an interested party is deemed a Potential Bidder, its identity may, in the Debtors' discretion, be disclosed to the Stalking Horse Bidders.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

Due Diligence

Until the Global Bid Deadline (as defined below), the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be initially directed to:

(A)     Paul Billyard and Will Jurist of Evercore (Billyard@Evercore.com and William.Jurist@Evercore.com) if you are interested in purchasing any of the Stores as a going concern; and

(C)     Gregory Apter of Hilco (gapter@hilcoglobal.com) if you are interested in purchasing any of the Stores as a going concern or any of the Stores' leases or designation rights associated with such leases; or

(B)     Weil at APDiligence@weil.com.

The Debtors will simultaneously distribute via the Data Room in written form any additional diligence materials not previously provided to the Stalking Horse Bidders or any other Potential Bidder to all Potential Bidders for the Stores to which such diligence materials relate (including, if applicable, the Stalking Horse Bidders) and the Consultation Parties.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder (as defined below) or (B) these Global Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Stores to any person or entity who is not a Potential Bidder or a Consultation Party or who does not comply with the participation requirements set forth above.

WEIL:\95428776\9\50482.0004

<u>**Auction Qualification Procedures**</u>

<u>Global Bid Deadline</u>

A Potential Bidder that desires to make a bid on one or more Stores shall deliver written and electronic copies of its bid in <u>both</u> PDF and MS-WORD format to the Notice Parties so as to be received no later than **September 11, 2015 at 5:00 p.m. (Eastern Time)** (the "*Global Bid Deadline*"); <u>provided</u> that the Debtors may extend the Global Bid Deadline without further Order of the Bankruptcy Court, subject to providing notice to all Potential Bidders and the Consultation Parties.

**Any party that does not submit a bid by the Global Bid Deadline will not be allowed to (A) submit any offer after the Global Bid Deadline, or (B) participate in any Auction;** <u>provided</u> that the foregoing shall not preclude the Debtors from marketing to any person, or auctioning, or any parties from bidding on, any Stores not included in the Auction after the Global Bid Deadline, including pursuant to the Discrete Sale and Lease Rationalization Procedures.

<u>Form and Content of Qualified Bid</u>

A bid is a signed document from a Potential Bidder received by the Global Bid Deadline that identifies the purchaser by its legal name (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of submitting bids or consummating a sale transaction), and any other party that will be participating in connection with the bid or the sale transaction, and includes, at a minimum, the following information (each, a "**Bid**"):

A.  <u>Proposed Stores and Valuation</u>.  Each Bid must clearly identify and list the particular Stores, additional assets (such as inventory or prescriptions) and liabilities that the Potential Bidder seeks to acquire, whether individually, in combination or in connection with a Stalking Horse Store Package.  The Bid must identify, on a per Store basis, the valuations, in U.S. dollars, that the Potential Bidder associates with each of those Stores, and a description of any significant assumptions on which such valuations are based.  To the extent the Bid proposes to purchase additional assets associated with the Stores, such as inventory or prescriptions, the Bid shall clearly identify the value, in U.S. dollars, associated with such assets.

B.  <u>Marked Agreement</u>.  Each Bid must include a copy of an asset purchase agreement reflecting the terms and conditions of its Bid, which agreement must be marked to show any proposed amendments and modifications to the form of purchase agreement posted by the Debtors in the Data Room (the "**Marked Agreement**").  Bids for going concern sales shall be marked against the going concern form.  Bids for non-going concern sales shall be marked against the non-going concern form.

WEIL:\95428776\9\50482.0004

C.   <u>Unconditional Offer</u>.  A statement that the Bid is formal, binding and unconditional (except for those conditions expressly set forth in the applicable Marked Agreement) and is not subject to any due diligence or financing contingency and is irrevocable until the first business day following the closing of the proposed sale transaction, except as otherwise provided in these Global Bidding Procedures.

D.   <u>Form of Consideration</u>.  Unless the Bid includes a credit bid (as described below), a statement confirming that the Bid is based on an all-cash offer, including, in the case of a bid for a Stalking Horse Store Package, sufficient cash consideration to pay any applicable Termination Payment (as such term is defined in the applicable Stalking Horse Agreement); <u>provided</u> that any Bid that includes a credit bid shall also include a cash component sufficient to pay, and earmarked exclusively for payment of, any applicable Termination Payment (if such Bid relates to a Stalking Horse Store Package) and shall comply with that certain Intercreditor Agreement, dated as of March 13, 2012 (as amended and supplemented, including pursuant to that certain Supplemental Senior Lien Intercreditor Agreement as amended) (the "**Intercreditor Agreement**"), including Section 5.06 thereof.

E.   <u>Purchase Price; Minimum Bid</u>.

1.   <u>Stalking Horse Store Package</u>.  Each Bid submitted in connection with a Stalking Horse Store Package (other than the Separable Store) must (i) be a Bid for all of the Stores contained in the applicable Stalking Horse Store Package, (ii) exceed the applicable cash purchase price by the Minimum Overbid Amount and the applicable Termination Payment, and (iii) propose an alternative transaction that provides substantially similar or better terms than the applicable Stalking Horse Bid, or (iv) propose to purchase the Stalking Horse Store Package for cash, and assume the corresponding liabilities on similar or better terms as the applicable Stalking Horse Bid.

2.   <u>Bids for Individual Stores or Combination of Stores</u>.  Bidders may also submit Bids for individual Stores or combinations of Stores, whether or not such Stores are included in a Stalking Horse Store Package (each a "**Partial Bid**").  The Debtors will determine, after consultation with the Consultation Parties, whether such Bids qualify as Qualified Bids. Generally, to be considered a Qualified Bid, the Debtors, in consultation with the Consultation Parties, must conclude that a Partial Bid, when taken together with other Partial Bids, satisfies the criteria for being a Qualified Bid.

If a Bid includes one or more Stores currently included in a Stalking Horse Store Package (other than a Separable Store), but is not for all of the Stores included in such Stalking Horse Store Package (not taking into account the Separable Store), such Bid will not be considered to be a

6

"Qualified Bid" unless the Debtors receive one or more Bids for the remaining Stores in such Stalking Horse Store Package (other than the Separable Store) that, in combination with one or more other Bids, constitute a higher or better bid than the applicable Stalking Horse Bid.

F.    <u>Employee and Labor Terms</u>.  If the Bid contemplates a going concern sale of Stores, a statement of proposed terms for unionized and non-unionized employees, which shall include, alternatively:  (i) a statement that the Potential Bidder will assume the Affected Labor Agreements (as such term is defined in the applicable Stalking Horse Agreement) without modification; or (ii) if the Potential Bidder will not assume the Affected Labor Agreements without modification, a statement that the Potential Bidder will enter into good faith negotiations with each of the Affected Unions to enter into Modified Labor Agreements (as such terms are defined in the Purchase Agreement), including a term sheet, which shall be attached to the Marked Agreement, proposing post-closing work rules and conditions to be offered to unionized employees.  Such statement shall also include an acknowledgment of the requirements of sections 1113 and 1114 of the Bankruptcy Code and an agreement to use good faith reasonable best efforts to cooperate with the Debtors in ensuring compliance with any applicable provisions thereof in the event that mutually satisfactory Modified Labor Agreements have not been entered into between the Potential Bidder and the affected unions prior to the closing of a sale contemplated by these Global Bidding Procedures.

G.    <u>Pension Plans</u>.  Each Bid must state whether or not the Potential Bidder intends to assume (i) sponsorship of all or any part of or (ii) any of the potential liabilities associated with The Great Atlantic & Pacific Tea Company Pension Plan, New York-New Jersey Amalgamated Pension Plan for A&P Employees, Delaware County Dairies, Inc. Hourly Employees Pension Plan, and Pathmark Stores, Inc. Pension Plan (collectively, the "Pension Plans").  If the Potential Bidder does not intend to assume sponsorship or liabilities of the Pension Plans in full, each Bid must state whether the Potential Bidder intends to assume the assets and liabilities of the Pension Plan(s) relating to plan participants associated with the stores in the Bid.

H.    <u>Required Approvals</u>.  A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings and (ii) of the Potential Bidder's plan and ability to obtain all governmental and regulatory approvals to operate the business and stores included in its Bid from and after closing the sale transaction and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals.  A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtor's legal counsel to discuss and explain Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Marked Agreement.

7

    I.    <u>No Entitlement to Expense Reimbursement or Other Amounts</u>.  Except as provided with respect to a Stalking Horse Bidder in a Stalking Horse Agreement, a statement that the Bid does not entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

    J.    <u>Adequate Assurance Information</u>.  Information supporting the Potential Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Potential Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Potential Bidders.

Notwithstanding the foregoing, if a Bid for a Store is submitted by the landlord under the real property lease for such Store, such landlord need not satisfy the requirements set forth in subsections F, G, and I above; <u>provided</u> that such landlord must satisfy the requirements set forth in subsection F above if its Bid contemplates a going concern purchase of the Store.

A Potential Bidder must also accompany its Bid with: (A) a Deposit (as defined below); (B) the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Potential Bidder; (C) written evidence of available cash, a commitment for financing (not subject to any conditions other than those expressly set forth in the applicable Marked Agreement) and such other evidence of ability to consummate the transaction contemplated by the applicable Marked Agreement, as acceptable in the Debtors' business judgment, in consultation with the Consultation Parties, including a description of each investor and any additional party or parties investing in the transaction included in the applicable bid and such party's financial position; (D) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed and to consummate the transaction contemplated by the Marked Agreement; (E) a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; (F) in the case of a Bid for a Stalking Horse Package, if the value of the Bid relative to the applicable Stalking Horse Agreement includes additional non-cash components (such as fewer contingencies than are in the Purchase Agreement), a detailed analysis of the value of any additional non-cash component of the Bid and back-up documentation to support such value; and (G) if the Bid includes an asset purchase agreement that is not executed, a signed statement that such Bid is irrevocable until the first business day following the closing or closings of the applicable sale transaction.

The submission of a Bid by the Global Bid Deadline shall constitute a binding and irrevocable offer to acquire the Stores or other assets reflected in such Bid.

WEIL:\95428776\9\50482.0004

Deposit

        To qualify as a Qualified Bid (as defined below), each Bid (other than Stalking Horse Bids or credit bids) must be accompanied by a good faith cash deposit in the amount of ten percent (10%) of the proposed purchase price (the "**Deposit**") for any store included in a Stalking Horse Package (or, for any store not included in a Stalking Horse Store Package, five percent (5%) of the proposed purchase price), to be deposited, prior to the Global Bid Deadline, with an escrow agent selected by the Debtors (the "*Escrow Agent*") pursuant to the escrow agreement to be provided by the Debtors to the Potential Bidders (the "*Escrow Agreement*").  To the extent the Stores included in a Qualified Bid are modified at or prior to the Auction, the Qualified Bidder must adjust its Deposit so that it equals ten percent (10%) of the proposed purchase price to be paid for each Store that is included in a Stalking Horse Store Package or five percent (5%) of the proposed purchase price to be paid for each Store not included in a Stalking Horse Store Package.

Review of Bids

        The Debtors will deliver, within one (1) business day after receipt thereof, copies of all Bids to the Consultation Parties and, if such Bids include the assumption of any liabilities associated with the Pension Plans, the Pension Benefit Guaranty Corporation, 1200 K Street, N.W. (Attn: Thea Davis, davis.thea@pbgc.gov).

        The Debtors will evaluate timely submitted bids, in consultation with the Consultation Parties, and may engage in negotiations with Potential Bidders who submitted Bids complying with the preceding paragraphs as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid.  In evaluating the bids, the Debtors may take into consideration the following non-binding factors:

1. the amount of the Bid and the Stores and number of Stores and other assets proposed to be acquired;

2. the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates after the payment of any applicable Termination Payment; provided that the Debtors shall review, evaluate and consider any Bids for a Stalking Horse Store Package (including a combination of Bids for a Stalking Horse Package) separate from and independent of, and shall not take into consideration when evaluating such Bid for a Stalking Horse Store Package, any other Stores that may be included in such Bid.

3. any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities through a credit bid;

4. any benefit to the Debtors' bankruptcy estates from any other assumption of liabilities, including any liabilities under the Pension Plans, the assumption of the sponsorship of all, any, or a portion of the Pension Plans;

9

5.  the value to be provided to the Debtors under the Bid for the Stores included therein (individually and in the aggregate);

6.  the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals;

7.  the impact on employees, employee claims against the Debtors, Affected Labor Agreements, and whether the Potential Bidder has reached an agreement with the Affected Unions;

8.  the impact on trade creditors and landlords; and

9.  any other factors the Debtors may reasonably deem relevant.

<u>Designation of Qualified Bidders</u>

A bid will be considered a "***Qualified Bid***," and each Potential Bidder that submits a Qualified Bid will be considered a "***Qualified Bidder***," if the Debtors determine, after consultation with the Consultation Parties, that such Bid:

(A)     meets the requirements set forth in these Global Bidding Procedures; and

(B)     satisfies the following:

    i.     with respect to a Bid for a Stalking Horse Store Package (excluding a Separable Store) or a combination of Bids that together cover at least all of the Stores included in a Stalking Horse Store Package (excluding a Separable Store), is higher or better than the transaction contemplated by the applicable Stalking Horse Agreement;

    ii.     with respect to a Bid for a Separable Store, is higher or better than the purchase price contemplated by the applicable Stalking Horse Agreement for the Separable Store; and/or

    iii.     with respect to a Store that is not included in a Stalking Horse Store Package, such Bid proposes a purchase price that would be acceptable to the Debtors for such Store or the Debtors believe should proceed to an auction for one or a combination of Stores included in such Bid, or such Bid is submitted by the landlord under the real property lease for such Store.

The Debtors reserve the right to work with any Bidder in advance of the Auctions to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid. The Debtors may accept a single Bid or multiple Bids for non-overlapping Stores such that, if

taken together, would otherwise meet the standards for a single Qualified Bid as to a Stalking Horse Store Package or any other Store or combination of Stores that the Debtors determine to auction (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the applicable Auction).  If a Bid is received and, in the Debtors' judgment, after consultation with the Consultation Parties, it is not clear whether the Bid is a Qualified Bid, the Debtors may consult with the Potential Bidder and seek additional information in an effort to establish whether or not the Bid is a Qualified Bid.

The Debtors, after consultation with the Consultation Parties, will have the right to determine that a Bid is not a Qualified Bid if any of the following conditions are satisfied:

(A)    A Potential Bidder has failed to comply with reasonable requests for additional information from the Debtors;

(B)    If the Bid includes a credit bid, such Bid does not (i) include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected and unavoidable liens on any assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment), (ii) comply with the terms of the Intercreditor Agreement or (iii) pay cash in the amount of any assets on which such bidder seeks to purchase, but does not have a valid, perfected and unavoidable lien; provided that any Bid for Stores included in the Stalking Horse Store Package that does not include a cash component sufficient to pay, and earmarked exclusively for payment of, an applicable Termination Payment shall not be a Qualified Bid; or

(C)    The terms of the Bid are burdensome or conditional in view of the proposed purchase price or, in the case of a Bid or combination of Bids for a Stalking Horse Store Package, are materially more burdensome or conditional than the terms of the applicable Stalking Horse Agreement, and are not offset by a material increase in purchase price, which determination (as made by the Debtors in consultation with the Consultation Parties) may take into consideration, among other things:

(i)    whether the Bid does not provide sufficient cash consideration to pay transfer taxes, cure costs or other cash costs of the transaction (including, if applicable, any Termination Payment);

(ii)    whether the Bid includes a non-cash instrument or similar consideration that is not freely marketable.

Each Stalking Horse Bidder is a Qualified Bidder and each Stalking Horse Bid is a Qualified Bid as to the applicable Stalking Horse Store Package.  Should it decide to credit bid, each of (A) Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014, (B) Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014, (C) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured PIK Toggle Notes due 2017, dated as of March 13, 2012, or the majority holder of the Senior

11

Secured PIK Toggle Notes due 2017, (D) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured Convertible Notes due 2018, dated as of March 13, 2012, or the majority holder of the Senior Secured Convertible Notes due 2018, and (E) the DIP Lenders is a Qualified Bidder and any such credit bid will be considered a Qualified Bid to the extent such bid is received by the Global Bid Deadline, complies with the above requirements set forth under the heading "Designation of Qualified Bidders," complies with section 363(k) of the Bankruptcy Code, complies with the requirements for a credit bid, complies with section 5.06(d) of the Intercreditor Agreement and includes, to the extent the credit bid is for a Stalking Horse Store Package a cash component sufficient to pay, and earmarked exclusively for payment of, an applicable Termination Payment, and all obligations secured by senior liens on the applicable assets to be purchased.

## Pre-Auction Procedures

Determination and Announcement of Baseline Bids

In consultation with the Consultation Parties, the Debtors shall make a determination regarding:

(A)    the Store or combination of Stores to be auctioned by the Debtors, including a Stalking Horse Store Package (each, an "**Auction Package**"); provided that an Auction Package for a Stalking Horse Store Package may not include less than all of the Stores in such Stalking Horse Store Package, unless such Auction Package includes solely the Separable Store;

(B)    the Store or Stores included in an Auction Package;

(C)    the highest or best Qualified Bid (or collection of Qualified Bids) determine for each Auction Package (each, a "**Baseline Bid**" and such bidder or group of bidders, a "**Baseline Bidder**") to serve as the starting point at the Auction for such Auction Package;

(D)    which Bids have been determined to be Qualified Bids and the Auction Package applicable to such Qualified Bid (provided that the Debtors may permit a Qualified Bidder to bid on any other Auction Package);

(E)    the time and place for the auction (each, an **"Auction"**) of each such Auction Package.

On **September 21, 2015, at 5:00 p.m. (Eastern Time)** (the "**Designation Deadline**"), the Debtors shall file notice of the foregoing on the Court's docket and publish such notice on the website of their claims and noticing agent and in the Data Room. As soon as practicable but no later than two (2) days prior to the Auction, the Debtors will provide copies of each Baseline Bid to the Consultation Parties and the Stalking Horse Bidders.

Between the date the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors, a Qualified Bidder

12

may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid for the Debtors, during the period that such Qualified Bid remains binding as specified herein; <u>provided</u> that any Qualified Bid may be improved at the Auction as set forth herein.

Except as provided in a Stalking Horse Agreement, the Debtors are under no obligation to (A) select any Baseline Bid, (B) conduct separate Auctions for any Stores, whether before or after selecting a Baseline Bid, or (C) sell the Separable Store separate and apart from the applicable Stalking Horse Agreement.  Notwithstanding anything to the contrary contained herein, the Debtors may elect, in their reasonable discretion, and after consultation with the Consultation Parties, to adjourn any Auction.

<u>Failure to Receive Two or More Qualified Bids</u>

With respect to each Stalking Horse Store Package, if no Qualified Bid other than the one submitted by the applicable Stalking Horse Bidder (including, if applicable, a Separable Store) is received by the Global Bid Deadline, the Debtors will not conduct the Auction for that Stalking Horse Store Package (including the Separable Store), and shall file and serve, **by September 15, 2015 at 4:00 p.m. (Eastern Time)**, a notice indicating that the Auction has been cancelled with respect to such Stalking Horse Store Package, that the applicable Stalking Horse Bidder is the Successful Bidder as to such Stalking Horse Store Package and that the Sale Hearing as to the applicable Stalking Horse Bidder will be conducted on **September 21, 2015, at 10:00 a.m. (Eastern Time)**.

With respect to Stores not included a Stalking Horse Store Package, if only one Qualified Bid is received by the Global Bid Deadline, the Debtors may, after consultation with the Consultation Parties, determine to consummate a sale transaction with a Qualified Bidder (to the extent one is received) and shall file and serve a notice identifying the Qualified Bidder, the terms of the Qualified Bid, and notice of the sale hearing applicable to such Qualified Bid.

Except as provided in a Stalking Horse Agreement, nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.

## **The Sale Hearing and Sale Order**

At one or more hearings before the Bankruptcy Court (each, a "***Sale Hearing***"), the Debtors will seek the entry of orders authorizing and approving, *inter alia*, the applicable sale transactions (each, a "***Sale Order***").  Each Sale Order shall authorize and approve the applicable sale transaction:

(A)     if no other Qualified Bid (which, for purposes of this subparagraph includes a combination of Bids that together would constitute a Qualified Bid for the Stores in such Stalking Horse Package (not taking into account the Separable Store)) is received by the Debtors in respect of a particular Stalking Horse Store Package, to the applicable Stalking Horse Bidder that submitted a bid for such package pursuant to the terms and conditions set forth in the Applicable Stalking Horse Agreement;

13

(B)      if another Qualified Bid is received by the Debtors in respect of a particular Stalking Horse Store Package, to the applicable Stalking Horse Bidder that submitted a Qualified Bid for such package and/or such other Qualified Bidder(s) that submitted a Qualified Bid for such package as the Debtors, in the exercise of their business judgment and, after consultation with the Consultation Parties, determine, following an auction, to have made the highest or best bid, consistent with these Global Bidding Procedures; or

(C)      with respect to any Stores not included in a Stalking Horse Store Package (or a Separable Store) that is auctioned pursuant to these Procedures, to the highest or best bidder(s) for one or more Stores.

In the Debtors' reasonable discretion (after consultation with the Consultation Parties and the applicable Stalking Horse Bidder or, if an Auction is held, the Successful Bidder and the Consultation Parties), any Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties, including by (A) an announcement of such adjournment at the Sale Hearing or at the Auction or (B) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in a Stalking Horse Agreement.

## Auction Procedures

If there are two or more Qualified Bids for an Auction Package, the Debtors may conduct one or more Auctions for such Auction Package on **September 24-25, 2015 at 9:30 a.m. (Eastern Time)**, at a location to be determined and announced, or such other time as the Debtors, after consultation with the Baseline Bidder and the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids.  Only a Qualified Bidder will be eligible to participate at an Auction, subject to such limitations as the Debtors may impose in good faith. Professionals and/or other representatives of the Consultation Parties will be permitted to attend and observe an Auction.

At any Auction, Qualified Bidders (including the Stalking Horse Bidders) will be permitted to increase their bids.  For each Baseline Bid, bidding will start at the purchase price and terms proposed in the applicable Baseline Bid, and will proceed thereafter in increments of 2% of the applicable Baseline Bid (a "**Minimum Overbid Amount**").  If a Stalking Horse Bidder bids at an Auction for its Stalking Horse Store Package, that Stalking Horse Bidder will be entitled to a "credit" in the amount of the applicable Termination Payment to be counted towards its bid such that the cash and other consideration proposed by the Stalking Horse Bidder plus the Termination Payment "credit" must exceed the most recent bid by at least the Minimum Overbid amount.

The Debtors may adopt rules, after consultation with the Consultation Parties, for an Auction at any time that the Debtors reasonably determine to be appropriate to promote the goals of the Bidding Process and are not inconsistent with these Global Bidding Procedures.  At the start of an Auction, the Debtors shall describe the terms of the applicable Baseline Bid.  Any

14

rules adopted by the Debtors will not unilaterally modify any of the terms of a Stalking Horse Agreement (as may be consensually modified at any Auction) without the consent of the applicable Stalking Horse Bidder.  Any rules developed by the Debtors will provide that all bids in a particular Auction will be made and received in one room, on an open basis, and all other bidders participating in that Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to all other bidders participating in that Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other bidders throughout the entire Auction.  Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction.

The Debtors reserve the right to and may, after consultation with the Consultation Parties, reject at any time before entry of the relevant Sale Order any bid that, in the Debtors' judgment, is: (A) inadequate or insufficient; (B) not in conformity with the requirements of the Bankruptcy Code, these Global Bidding Procedures or the terms and conditions of the applicable sale transaction; or (C) contrary to the best interests of the Debtors and their estates, except that if a Stalking Horse Bidder's bid as reflected in a Stalking Horse Agreement is the only Qualified Bid for a Stalking Horse Store Package, the foregoing provisions of this sentence will be inoperative.  In doing so, the Debtors may take into account the factors set forth above regarding the form and content of Qualified Bids and the Debtors' review of bids.  No attempt by the Debtors to reject a bid under this paragraph will modify any rights of the Debtors or any Stalking Horse Bidder under a Stalking Horse Agreement (as may be consensually modified at any Auction).

Prior to the conclusion of an Auction, the Debtors, after consultation with the Consultation Parties, will: (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating a sale transaction; _provided_ that in reviewing and evaluating the bids, the Debtors shall review, evaluate and consider any Bids for a Stalking Horse Package (including a combination of Bids for a Stalking Horse Package) separate from and independent of, and shall not take into consideration when evaluating such bid for a Stalking Horse Package, any other Stores or related assets that may be included in such bid; (B) determine the highest or best offer or collection of offers for an Auction Package (as applicable to each Auction Package, a "***Successful Bid***"); (C) except as provided in a Stalking Horse Agreement, determine which Qualified Bid is the next highest or best bid for such Auction Package (as applicable to each Auction Package, the "***Back-Up Bid***"); and (D) notify all Qualified Bidders participating in an Auction, prior to its conclusion, the successful bidder for such Auction Package (the "***Successful Bidder***"), the amount and other material terms of the Successful Bid and the identity of the party that submitted the Back-Up Bid for such Auction Package (the "***Back-Up Bidder***").

Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding or the Auction.

WEIL:\95428776\9\50482.0004

**Post-Auction Process**

A Successful Bidder shall, within one (1) business day after the close of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid.  Promptly following the submission of such documentation, the Debtors shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.  The Successful Bid may not be assigned to any party without the consent of the Debtors after consultation with the Consultation Parties.

Except to the extent otherwise provided in a Stalking Horse Purchase Agreement, the Back-Up Bid shall remain open and irrevocable until the earliest to occur of (A) ninety (90) days after the completion of the Auction, but in no event later than January 31, 2016, or such other date as may be provided for in an applicable Stalking Horse Agreement, (B) the consummation of the transaction with the Successful Bidder, or (C) the release of such bid by the Debtors (such date, the "**Back-Up Bid Expiration Date**").  If the transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed the Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid.

At a Sale Hearing, the Debtors will present a Successful Bid to the Bankruptcy Court for approval.

Unless otherwise required pursuant to the Debtors' fiduciary duties, the Debtors shall not consider any bids submitted after the conclusion of the Auction.

**Treatment and Return of Deposits**

Potential Bidders

Within three (3) business days after the Designation Deadline, the Escrow Agent shall return to each Potential Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Potential Bidder's Deposit, plus any interest accrued thereon. Upon the authorized return of such Potential Bidder's Deposit, the bid of such Potential Bidder shall be deemed revoked and no longer enforceable.

Qualified Bidders

The Deposit of a Qualified Bidder will be forfeited to the Debtors if (A) the applicable Qualified Bidder attempts to modify, amend or withdraw its Qualified Bid, except as permitted by these Global Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Global Bidding Procedures, or (B) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate the transaction according to these Global Bidding Procedures and the terms of the applicable transaction documents with respect to the Successful Bid.  The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by the Escrow Agent of a joint written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

16

With the exception of the Deposit of a Successful Bidder and a Back-Up Bidder, the Escrow Agent shall return to any other Qualified Bidder any Deposit, plus any interest accrued thereon, three (3) business days after the execution by the Successful Bidder and the Debtors of the documentation memorializing the Successful Bid, but in no event later than seven (7) business days after the conclusion of a Sale Hearing.

Notwithstanding anything to the contrary herein, the good faith deposit provided by a Stalking Horse Bidder pursuant to a Stalking Horse Agreement (including any required return of such deposit) shall be governed by the terms and conditions of the applicable Stalking Horse Agreement.

Back-Up Bidder

The Escrow Agent shall return a Back-Up Bidder's Deposit, plus any interest accrued thereon, within three (3) business days after the occurrence of the applicable Back-Up Bid Expiration Date.

The Successful Bidder

The Deposit of a Successful Bidder shall be applied against the cash portion of the Purchase Price of such Successful Bidder upon the consummation of the transaction proposed in the applicable Successful Bid.

Joint Notice to Escrow Agent

The Debtors and, as applicable, the Potential Bidder, Qualified Bidder, and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent for the return of any Deposit, to the extent such return is required by these Global Bidding Procedures. If either party fails to execute such written notice, the Deposit may be released by an order of the Bankruptcy Court.

## **Notice and Consultation Parties**

Contact Parties

Information that must be provided to the "***Notice Parties***" under these Global Bidding Procedures must be provided to the following parties: (A) The Great Atlantic and Pacific Tea Company, Inc., 2 Paragon Drive, Montvale, New Jersey 07645 (Attn: Christopher W. McGarry and Matthew Bennett); (B) counsel to the Debtors, Weil, Gotshal & Manges LLP ("***Weil***"), 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Garrett A. Fail, Esq. and Sunny Singh, Esq.); (C) Evercore Group, LLC, 55 East 52nd Street, New York, New York 10055 (Attn: Stephen Goldstein); and (D) Hilco Real Estate LLC, 5 Revere Dr., Suite 206, Northbrook, IL 60062 (Attn: Greg Apter).

Consultation Parties

The term "***Consultation Parties***" as used in these Global Bidding Procedures shall mean: (A) the official committee of unsecured creditors appointed in the Debtors' chapter

11 cases (the ***Creditors' Committee***"); (B) Fortress Credit Corp., as agent under that certain Senior Secured Debtors-in-Possession Term Credit Agreement, (C) Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014; (D) Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014; (E) the majority holders of the Senior Secured PIK Toggle Notes due 2017; (F) the majority holders of the Senior Secured Convertible Notes due 2018; (G) The Yucaipa Companies, LLC and their affiliated funds; and (H) the United Food and Commercial Workers Union International.[1]

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Global Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

In the event that any Consultation Party or any member of the Creditors' Committee or an affiliate of any of the foregoing, submits a bid that is a Qualified Bid, any obligation of the Debtors to consult with the bidding party established under these Global Bidding Procedures will be waived, discharged and released without further action; provided that the bidding party will have the same rights as any other Potential Bidder set forth above, and will retain any rights it has under existing orders regarding debtor in possession financing and/or use of cash collateral (to the extent applicable).

If a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will continue to have Consultation Rights; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any confidential information regarding the sale of the Assets to such member.

## Consent to Jurisdiction and Authority as Condition to Bidding

All Potential Bidders (including the Stalking Horse Bidders) shall be deemed to have (A) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to the Global Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale transaction, (B) waived any right to a jury trial in connection with any disputes relating to the Global Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale transaction, and (C) consented to the entry of a final order or judgment in any way related to the Global Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the sale transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

---

[1] To the extent any of the secured Consultation Parties have been paid in full, such parties shall no longer be Consultation Parties for purposes of these procedures.

WEIL:\95428776\9\50482.0004

## <u>Reservation of Rights</u>

The Debtors reserve the right, in their reasonable discretion and subject to the exercise of their business judgment, after consultation with the Consultation Parties, to alter or terminate these Global Bidding Procedures, to waive terms and conditions set forth herein with respect to all potential bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors (except for the Buyer) at any time and without specifying the reasons therefor, in each case to the extent not materially inconsistent with these Global Bidding Procedures and/or the Global Bidding Procedures Order; provided further that the Debtors' exercise of their discretion in evaluating bids and administering the bidding and auction process does not permit, and shall not be construed as permitting, the Debtors to materially deviate from the procedures, terms, conditions and protections set forth in these Global Bidding Procedures and/or the Global Bidding Procedures Order.

WEIL:\95428776\9\50482.0004

## __Schedule 1__

Stalking Horse Store Packages

## 76 Stores Included in Stalking Horse Bid of Acme Markets, Inc.

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 1 | 70927 | A&P | Wall Township | 2007 State Route 35 | NJ |
| 2 | 70205 | A&P | Yorktown | 100 Triangle Center | NY |
| 3 | 70620 | A&P | Midland Park | 137 Lake Street | NJ |
| 4 | 70677 | A&P | Mahwah | 125 Franklin Tnpk | NJ |
| 5 | 70408 | A&P | New Providence | 1260 Springfield Ave | NJ |
| 6 | 70233 | Superfresh | Philadelphia | 180 West Girard Ave | PA |
| 7 | 70787 | A&P | Thornwood | 610 Columbus Ave. | NY |
| 8 | 70479 | A&P | Fort Lee | 2160 Lemoine Ave | NJ |
| 9 | 70659 | A&P | Woodcliff Lake | 520 Chestnut Ridge Road | NJ |
| 10 | 70186 | A&P | Yonkers | 660 Mclean Ave | NY |
| 11 | 70107 | A&P | Mohegan Lake | 3105 East Main Street | NY |
| 12 | 70649 | A&P | Denville | 123-125 Main Street | NJ |
| 13 | 70640 | A&P | Jersey City | 125 18th Street | NJ |
| 14 | 72112 | Pathmark | Jersey City | 321 Stadium Plaza | NJ |
| 15 | 70639 | A&P | Allendale | 45 Demercurio Drive | NJ |
| 16 | 70784 | A&P | Croton on Hudson | 2005 Albany Post Rd. | NY |
| 17 | 70154 | A&P | Brewster | 1511 Rte 22 | NY |
| 18 | 70867 | A&P | Kenilworth | 801 Kenilworth Blvd | NJ |
| 19 | 70650 | A&P | South Plainfield | 907D Oak Tree Road | NJ |
| 20 | 70642 | A&P | Jefferson Township | 5774 Berkshire Valley Rd. | NJ |
| 21 | 70621 | A&P | Vernon | 530 Rt 515 Unit 1 | NJ |
| 22 | 70185 | A&P | Yonkers | 1233 Nepperhan Ave. | NY |
| 23 | 70821 | A&P | Little Silver | 507 Prospect Ave. | NJ |
| 24 | 70606 | A&P | Hoboken | 614 Clinton St | NJ |
| 25 | 70207 | A&P | Goldens Bridge | Rt 22 and Rt 138 | NY |
| 26 | 70167 | A&P | Hopewell Junction | 829 Route 82 | NY |
| 27 | 72181 | Pathmark | Elmwood Park | 58 Broad Way | NJ |
| 28 | 70768 | A&P | Bronxville | 12-14 Cedar Street | NY |
| 29 | 70864 | A&P | Montclair | 510 Valley Road | NJ |
| 30 | 70874 | Superfresh | Ocean City | 9507Coastal Hwy | MD |
| 31 | 70780 | A&P | Stamford | 1201 High Ridge Road | CT |
| 32 | 70773 | A&P | Bedford | 422 Old Post Road | NY |
| 33 | 72190 | Pathmark | Edgewater | 481 River Road | NJ |
| 34 | 70164 | A&P | Mahopac | 3 Village Center | NY |
| 35 | 70826 | A&P | Clark | 1060 Raritan  Road | NJ |
| 36 | 70208 | A&P | Millwood | 230 Saw Mill River Road | NY |
| 37 | 70908 | A&P | Ortley Beach | 5 Ortley Plaza | NJ |
| 38 | 70684 | A&P | Sussex | 455 Rt23 North | NJ |
| 39 | 70728 | A&P | Rye Brook | 261 South Ridge St. | NY |
| 40 | 70740 | A&P | Greenwich | 160 West Putnam Avenue | CT |
| 41 | 70763 | A&P | Briarcliff Manor | 1886 Pleasantville Road | NY |
| 42 | 70456 | A&P | Blairstown | 152 Route 94 | NJ |
| 43 | 70750 | A&P | Riverside | 1261 East Putnam Avenue | CT |

|    | Store | Banner | City | Address | State |
|----|-------|--------|------|---------|-------|
| 44 | 76710 | Pathmark | Philadelphia | 2101-41 Cottman Ave. | PA |
| 45 | 70766 | A&P | Eastchester | 777 White Plains Road | NY |
| 46 | 70664 | A&P | Park Ridge | 199 Kinderkamack Rd | NJ |
| 47 | 70786 | A&P | Greenburgh | 103 Knollwood Road | NY |
| 48 | 70189 | Superfresh | Haverton | 1305West Chester Pike | PA |
| 49 | 70153 | A&P | Shrub Oak | 1366 East Main Street | NY |
| 50 | 70761 | A&P | West New York | 55 Riverwalk Drive West | NJ |
| 51 | 70516 | A&P | New Rochelle | 23 Quaker Ridge Road | NY |
| 52 | 70094 | A&P | Pleasant Valley | Rte 44 & North Ave | NY |
| 53 | 70500 | A&P | New Canaan | 288 Elm Street | CT |
| 54 | 70626 | A&P | Tinton Falls | 990 Shrewsburry Ave | NJ |
| 55 | 72178 | Pathmark | Weehawken | 4100 Park Avenue | NJ |
| 56 | 70811 | A&P | Old Bridge | 3500 Route #9 | NJ |
| 57 | 72194 | Pathmark | Bergenfield | 80 New Bridge Road | NJ |
| 58 | 70471 | Superfresh | Manahawkin | 609 East Bay Avenue | NJ |
| 59 | 70391 | A&P | Saddle Brook | 75 Mayhill Street | NJ |
| 60 | 72186 | Pathmark | Newark | 281-295 Ferry Street | NJ |
| 61 | 70252 | Superfresh | Richboro | 800 2nd Street Pike | PA |
| 62 | 70584 | Superfresh | Wilmington | 1812 Marsh Rd | DE |
| 63 | 70730 | Superfresh | Philadelphia | 305 S. Fifth St. | PA |
| 64 | 70477 | Superfresh | Ocean City | 800 West Ave | NJ |
| 65 | 72587 | Pathmark | Ventnor | 5100 Wellington Avenue | NJ |
| 66 | 76725 | Pathmark | Philadelphia | 7700 Crittendan St | PA |
| 67 | 70747 | Superfresh | Philadelphia | 1001 South Street | PA |
| 68 | 70801 | A&P | Warrenville | 177 Washington Valley Rd. | NJ |
| 69 | 70559 | Superfresh | Rehoboth | 18578 Coastal Highway | DE |
| 70 | 72590 | Pathmark | Newark | 100 College Square | DE |
| 71 | 72586 | Pathmark | Wilmington | 4365 Kirkwood Highway | DE |
| 72 | 70474 | Superfresh | Wildwood | 2400 Delaware Avenue | NJ |
| 73 | 76585 | Pathmark | Boothwyn | 643 Conchester Highway | PA |
| 74 | 70293 | Superfresh | Wynnewood | 250 E Lancaster | PA |
| 75 | 70294 | Superfresh | Gladwynne | 1025 Youngsford Road | PA |
| 76 | 70588 | Superfresh | Newark | 401 New London Rd. | DE |

## 25 Stores Included in Stalking Horse Bid of The Stop & Shop Supermarket Company, LLC

|    | Store | Banner | City | Address | State |
|----|-------|--------|------|---------|-------|
| 1  | 70226 | A&P | Mt Kisco | 195 North Bedford Rd | NY |
| 2  | 72270 | Pathmark | South Orange | 407 Valley Street | NJ |
| 3  | 72633 | Pathmark | Franklin Square | 460 Franklin Avenue | NY |
| 4  | 72608 | Pathmark | Greenvale | 130 Wheatley Plaza | NY |
| 5  | 72667 | Pathmark | Bronx | 1720 Eastchester Road | NY |
| 6  | 72647 | Pathmark | Bronx | 2136 Bartow Avenue | NY |
| 7  | 72619 | Pathmark | Brooklyn | 625 Atlantic Avenue | NY |
| 8  | 72638 | Pathmark | Brooklyn | 2965 Cropsey Avenue | NY |
| 9  | 72616 | Pathmark | Jamaica | 134-40 Springfield Blvd | NY |
| 10 | 72626 | Pathmark | Ozone Park | 92-10 Atlantic Avenue | NY |
| 11 | 72622 | Pathmark | Whitestone | 31-06 Farrington Street | NY |
| 12 | 70658 | Waldbaums | Long Beach | 85 E. Park Ave. | NY |
| 13 | 70465 | Waldbaums | Massapequa | 702 Hicksville Road | NY |
| 14 | 72625 | Pathmark | Seaford | 4055 Merrick Road | NY |
| 15 | 70260 | Waldbaums | Southampton | 167 Main St. Jagger Lane | NY |
| 16 | 70452 | Waldbaums | Baldwin | 905 Atlantic Ave. | NY |
| 17 | 70651 | Waldbaums | Howard Beach | 156-01 Crossbay Blvd. | NY |
| 18 | 70236 | Waldbaums | Huntington | 60 Wall Street | NY |
| 19 | 72685 | Pathmark | Staten Island | 1351 Forest Avenue | NY |
| 20 | 70257 | Waldbaums | Easthampton | 67 Newtown Lane | NY |
| 21 | 70616 | Waldbaums | Bell Harbor | 112-15 Beach Channel Drive | NY |
| 22 | 72661 | Pathmark | Bronx | 961 East 174th Street | NY |
| 23 | 70632 | Waldbaums | Bay Terrace | 213-15 26th Avenue | NY |
| 24 | 70695 | A&P | Closter | 400 Demarest Avenue | NJ |
| 25 | 72284 | Pathmark | Kinnelon | 25 Kinnelon Road | NJ |

### 17 Stores Included in Stalking Horse Bid of Key Food Stores Co-Operative, Inc.

|    | Store | Banner | City | Address | State |
|----|-------|--------|------|---------|-------|
| 1  | 59502 | Food Basics | Paterson | 465 Getty Ave | NJ |
| 2  | 70295 | Waldbaums | Flushing | 196-35 Horace Harding Expressway | NY |
| 3  | 70657 | Waldbaums | Bayside | 35-09 Francis Lewis Blvd | NY |
| 4  | 70669 | Waldbaums | Albertson | 1050 Willis Avenue | NY |
| 5  | 59504 | Food Basics | Glen Rock | 937 Lincoln Ave | NJ |
| 6  | 70655 | Waldbaums | Glen Head | 1-1 Park Plaza | NY |
| 7  | 70762 | A&P | Bronx | 5661 Riverdale Ave | NY |
| 8  | 70442 | Waldbaums | Howard Beach | 82-35 153rd Ave | NY |
| 9  | 36715 | Food Emporium | New York | 10 Union Sq 14th & Park | NY |
| 10 | 70749 | A&P | Harrison | 355 Halsted Ave | NY |
| 11 | 59524 | Food Basics | Fairview | 289 Bergen Blvd. | NJ |
| 12 | 70296 | Waldbaums | Brooklyn | 81-21 N Utrecht Ave. | NY |
| 13 | 70641 | Waldbaums | Jackson Heights | 75-55 31St Ave. | NY |
| 14 | 72637 | Pathmark | Brooklyn | 1525 Albany Avenue | NY |
| 15 | 70292 | Waldbaums | South Flatbush | 2424 Flatbush Avenue | NY |
| 16 | 70613 | Waldbaums | Glen Oaks | 259-01 Union Turnpike | NY |
| 17 | 70849 | Waldbaums | Rosebank | 375 Tompkins Ave. | NY |

## **Schedule 2**

Additional Stores

**Additional Stores**

|  | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 1 | 19243 | Liquor | New Canaan | 282 Elm Street | CT |
| 2 | 19254 | Liquor | Ridgefield | 46B Danbury Rd. | CT |
| 3 | 70074 | A&P | Danbury | 1 Padanaram Rd | CT |
| 4 | 19129 | Liquor | Old Lyme | 28A Halls Rd (P.O. Box 491) | CT |
| 5 | 70951 | A&P | Mt Olive | 7 Naughright Rd | NJ |
| 6 | 70806 | A&P | Califon | 431 County Road 513 | NJ |
| 7 | 72280 | Pathmark | Montclair | 35 Lackawanna Plaza | NJ |
| 8 | 72198 | Pathmark | Fairlawn | 22-00 Maple Avenue | NJ |
| 9 | 59036 | Food Basics | East Paterson | 498 East 30th St | NJ |
| 10 | 72578 | Pathmark | Brick Twp. | 1930 Route 88 | NJ |
| 11 | 72223 | Pathmark | Newark | 167 Bergen Street | NJ |
| 12 | 72609 | Pathmark | New York | 160 East 125th Street | NY |
| 13 | 70611 | Waldbaums | Rocky Point | 245 Route 25A | NY |
| 14 | 72624 | Pathmark | Brooklyn | 1245 61St Street | NY |
| 15 | 72603 | Pathmark | New York | 300 West 145th Street | NY |
| 16 | 72679 | Pathmark | Staten Island | 100 Greaves Lane | NY |
| 17 | 72653 | Pathmark | Bethpage | 3901 Hempstead Turnpike | NY |
| 18 | 72649 | Pathmark | New Hyde Park | 2335 New Hyde Park Road | NY |
| 19 | 72646 | Pathmark | Shirley | 800 Montauk Highway | NY |
| 20 | 72652 | Pathmark | Massapequa | 941 Carmans Road | NY |
| 21 | 70298 | Waldbaums | Melville | 890 Walt Whitman Road | NY |
| 22 | 72614 | Pathmark | Patchogue | 399 Route 112 | NY |
| 23 | 70232 | Waldbaums | West Hampton | 70 Sunset Ave | NY |
| 24 | 70279 | Waldbaums | Merrick | 1686 Merrick Rd. | NY |
| 25 | 70241 | Waldbaums | N. Patchoque | 440 W. Sunrise Highway | NY |
| 26 | 72642 | Pathmark | Brooklyn | 1-37 12th Street | NY |
| 27 | 72634 | Pathmark | Brooklyn | 111-10 Flatlands Avenue | NY |
| 28 | 70263 | Waldbaums | Mattituck | Rt.25 And Factory Ave. | NY |
| 29 | 72600 | Pathmark | Brentwood | 101 Wicks Road | NY |
| 30 | 70240 | Waldbaums | Brooklyn | 2149 Ralph Ave | NY |
| 31 | 70235 | Waldbaums | Brooklyn | 3100 Ocean Ave | NY |
| 32 | 70275 | Waldbaums | College Point | 133-11 20th Avenue | NY |
| 33 | 70229 | Waldbaums | Ctr Moriches | 812 Montauk Hwy. | NY |
| 34 | 70699 | Waldbaums | Deer Park | 1960 Deer Park Ave. | NY |
| 35 | 72611 | Pathmark | East Rockaway | 492 East Atlantic Avenue | NY |
| 36 | 70617 | Waldbaums | Great Neck | 40 Great Neck Road | NY |
| 37 | 36703 | Food Emporium | New York | 1175 3rd Avenue | NY |
| 38 | 36711 | Food Emporium | New York | 1331 1st Avenue | NY |
| 39 | 36727 | Food Emporium | New York | 452 West 43 St. | NY |
| 40 | 36732 | Food Emporium | New York | 810 8th Ave | NY |
| 41 | 36707 | Food Emporium | New York | 969 Second Ave | NY |
| 42 | 36777 | Food Emporium | New York | 316 Greenwich St | NY |
| 43 | 36742 | Food Emporium | New York | 1066 3rd Avenue | NY |
| 44 | 36706 | Food Emporium | New York | 1450 3rd Avenue | NY |
| 45 | 36783 | Food Emporium | New York | 405 East 59th St. | NY |
| 46 | 36708 | Food Emporium | New York | 2415 Broadway | NY |

| 47 | 70662 | Waldbaums | Selden | 211 Middle Country Road | NY |
| 48 | 72678 | Pathmark | Staten Island | 2730 Arthur Kill Road | NY |
| 49 | 72682 | Pathmark | Staten Island | 2875 Richmond Avenue | NY |
| 50 | 70813 | Waldbaums | Tottenville | 6400 Amboy Road | NY |
| 51 | 70270 | Waldbaums | Whitestone | 153-01 10th Ave | NY |
| 52 | 72558 | Pathmark | Brookhaven | 5005 Edgemont Avenue | PA |
| 53 | 72569 | Pathmark | Glenolden | 140 North Mcdade Boulevard | PA |
| 54 | 72552 | Pathmark | Philadelphia | 330 Oregon Avenue | PA |
| 55 | 72550 | Pathmark | Philadelphia | 176-82 West Chelten Avenue | PA |
| 56 | 72522 | Pathmark | Philadelphia | 3399 Aramingo Avenue | PA |
| 57 | 19104 | Liquor | Bristol | 767 Pine Street | CT |
| 58 | 19110 | Liquor | Mystic | 25 Broadway Ave. | CT |
| 59 | 19119 | Liquor | Newington | 2400 Berlin Tpk. | CT |
| 60 | 19106 | Liquor | Newington | 40 Fenn Road | CT |
| 61 | 19246 | Liquor | Riverside | 1237 East Putnam Ave. | CT |
| 62 | 19121 | Liquor | Waterford | 117 Boston Post Rd | CT |
| 63 | 72593 | Pathmark | New Castle | 148 Sunset Boulevard | DE |
| 64 | 70586 | Superfresh | New Castle | 2044 New Castle Avenue | DE |
| 65 | 70888 | Superfresh | Ocean City | 12741 Ocean Gateway | MD |
| 66 | 70417 | A&P | Basking Ridge | 407 King George Road | NJ |
| 67 | 59506 | Food Basics | Belleville | 414 Main St. | NJ |
| 68 | 70936 | A&P | Belvidere | 525 East Route 46 | NJ |
| 69 | 70752 | A&P | Bloomfield | 19 Bellville Ave. | NJ |
| 70 | 70610 | A&P | Boonton | 550 Myrtle Ave | NJ |
| 71 | 70802 | A&P | Bricktown | 64 Brick Plaza | NJ |
| 72 | 70949 | A&P | Clinton | 49 Old Route 22 | NJ |
| 73 | 70515 | A&P | Edison | 1185 Amboy Ave | NJ |
| 74 | 72288 | Pathmark | Elizabeth | 211 Elmora Avenue | NJ |
| 75 | 70618 | A&P | Fairview | 425 Anderson Avenue | NJ |
| 76 | 70895 | A&P | Fanwood | 105 South Ave | NJ |
| 77 | 72450 | Pathmark | Garwood | 10 South Avenue | NJ |
| 78 | 72153 | Pathmark | Hackensack | 405 State Route 17 South | NJ |
| 79 | 37602 | Liquor | Hackettstown | 57 Route 46 | NJ |
| 80 | 37905 | Liquor | Haskell | 1069 Ringwood Ave | NJ |
| 81 | 72573 | Pathmark | Hazlet | 3020 Route 35 & Bethany Road | NJ |
| 82 | 72527 | Pathmark | Hopelawn | 95-101 New Brunswick Ave | NJ |
| 83 | 72224 | Pathmark | Irvington | 474-79 Lyons Avenue | NJ |
| 84 | 72114 | Pathmark | Jersey City | 420 Grand Street | NJ |
| 85 | 72261 | Pathmark | Landing | 175 Lakeside Boulevard & Center | NJ |
| 86 | 37993 | Liquor | Ledgewood | 1103 Howard Blvd | NJ |
| 87 | 70956 | A&P | Marlboro | 460 County Line Road Route 520 | NJ |
| 88 | 37872 | Liquor | Metuchen | 45 Pearl Street | NJ |
| 89 | 72436 | Pathmark | Middlesex | 242 Lincoln Boulevard | NJ |
| 90 | 70924 | A&P | Navesink | 1002 Rte 36 | NJ |
| 91 | 59512 | Food Basics | North Bergen | 1425 Kennedy Blvd. | NJ |

| 92  | 70887 | A&P         | North Brunswick       | 510 Milltown Road                | NJ |
| 93  | 70441 | A&P         | Old Tappan            | 216 Old Tappan Rd                | NJ |
| 94  | 37995 | Liquor      | Palisade Park         | 534 Bergen Blvd.                 | NJ |
| 95  | 72282 | Pathmark    | Parsippany            | 1157 Route 46 East               | NJ |
| 96  | 59501 | Food Basics | Passaic               | 514 Van Houten Ave.              | NJ |
| 97  | 70638 | A&P         | Pompton Lakes         | 47 Wanaque Avenue                | NJ |
| 98  | 37866 | Liquor      | Pt Pleasant           | 1205 Richmond Ave                | NJ |
| 99  | 72299 | Pathmark    | Ramsey                | 10 Triangle Plaza - Lake Road Ext. | NJ |
| 100 | 70688 | A&P         | Randolph              | 148 Center Grove Road            | NJ |
| 101 | 37814 | Liquor      | Summit                | 23 Summit Ave                    | NJ |
| 102 | 70807 | A&P         | Washington            | 459 Route 31 South               | NJ |
| 103 | 70439 | A&P         | Washington Township   | 315 Pascack Rd                   | NJ |
| 104 | 70668 | A&P         | Wayne                 | 560 Valley Road                  | NJ |
| 105 | 70685 | A&P         | West Milford          | 1938 Union Valley Road           | NJ |
| 106 | 37661 | Liquor      | Westwood              | 30 Irvington Ave                 | NJ |
| 107 | 72580 | Pathmark    | Woodbridge            | 1600 St Georges Avenue           | NJ |
| 108 | 70701 | A&P         | Woodland Park         | 1730 Route 46 West               | NJ |
| 109 | 72286 | Pathmark    | Woodport              | 757 Rt. 15                       | NJ |
| 110 | 72602 | Pathmark    | Bayshore              | 2060 Sunrise Highway             | NY |
| 111 | 70203 | Waldbaums   | Commack               | 84 Jericho Tpke                  | NY |
| 112 | 72664 | Pathmark    | Dix Hills             | 683 Old Country Road             | NY |
| 113 | 70434 | Waldbaums   | East Meadow           | 1530 Front Street                | NY |
| 114 | 70277 | Waldbaums   | East Setauket         | 4054 Nesconset Highway           | NY |
| 115 | 70223 | Waldbaums   | Garden City           | 2475 Jericho Turnpike            | NY |
| 116 | 70217 | Waldbaums   | Greenlawn             | 777 Pulaski Road                 | NY |
| 117 | 70769 | A&P         | Hastings              | 87 Main Street                   | NY |
| 118 | 70214 | Waldbaums   | Hauppauge             | 1236 Veterans Highway            | NY |
| 119 | 72641 | Pathmark    | Holbrook              | 5801 Sunrise Highway             | NY |
| 120 | 72639 | Pathmark    | Islip                 | 155 Islip Avenue                 | NY |
| 121 | 70289 | Waldbaums   | Jericho               | 336 North Broadway               | NY |
| 122 | 70003 | A&P         | Lagrange              | 1642 Route 82                    | NY |
| 123 | 70251 | Waldbaums   | Lindenhurst           | 50 E. Hoffman                    | NY |
| 124 | 70151 | A&P         | Mamaroneck            | 805 Mamaroneck Ave               | NY |
| 125 | 70256 | Waldbaums   | Massapequa            | 5508 Sunrise Hwy                 | NY |
| 126 | 72292 | Pathmark    | Nanuet                | 195 Rockland Center East Rt 59   | NY |
| 127 | 72615 | Pathmark    | North Babylon         | 1251 Deer Park Avenue            | NY |
| 128 | 70288 | Waldbaums   | Oakdale               | 4560 Sunrise Hwy                 | NY |
| 129 | 70126 | A&P         | Patterson             | 3101 Route 22                    | NY |
| 130 | 70194 | A&P         | Peekskill             | 20 Welcher Ave                   | NY |
| 131 | 72297 | Pathmark    | Port Chester          | 130 Midland Avenue               | NY |
| 132 | 72604 | Pathmark    | Port Jeff.Sta.        | 5145 Nesconset Highway           | NY |
| 133 | 70192 | A&P         | Scarsdale             | 668 Central Park Avenue          | NY |
| 134 | 72298 | Pathmark    | Scarsdale             | 2540 Central Park Avenue         | NY |
| 135 | 72171 | Pathmark    | Staten Island         | 2660 Hylan Avenue                | NY |
| 136 | 70601 | Waldbaums   | Stony Brook           | 2162 Nesconset Highway           | NY |
| 137 | 19918 | Liquor      | Unclassified          | 1175 Third Ave Suite A           | NY |
| 138 | 70794 | A&P         | Valley Cottage        | 14 Lake Ridge Plaza              | NY |
| 139 | 72644 | Pathmark    | West Babylon          | 531 Montauk Highway              | NY |

| 140 | 72293 | Pathmark | Yonkers | 1757 Central Park Avenue | NY |
| 141 | 72528 | Pathmark | Cheltenham | 1000 Easton Road | PA |
| 142 | 72529 | Pathmark | Fairless Hills | 500 Lincoln Highway | PA |
| 143 | 70718 | Superfresh | New Hope | 323 West Bridge Street | PA |
| 144 | 59530 | Food Basics | Philadelphia | 15501 Bustleton Ave. | PA |
| 145 | 70982 | Superfresh | Philadelphia | #N/A | PA |
| 146 | 59510 | Food Basics | Philadelphia | 8920 Frankford Avenue | PA |
| 147 | 72556 | Pathmark | Philadelphia | 4160 Monument Road | PA |
| 148 | 72553 | Pathmark | Philadelphia | 8700 Frankford Avenue | PA |
| 149 | 72532 | Pathmark | Philadelphia | 3021 Grays Ferry Avenue | PA |
| 150 | 72557 | Pathmark | Philadelphia | 2900 N. Broad St. & Glenwood Ave. | PA |
| 151 | 72568 | Pathmark | Upper Darby | 421 S. 69Th Street | PA |
| 152 | 59503 | Food Basics | Brooklyn | 2185 Coyle Street | NY |
| 153 | 72610 | Pathmark | New York | 410 West 207th Street | NY |

## **Exhibit 2**

Global Sale Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **THE GREAT ATLANTIC & PACIFIC TEA** | : | |
| **COMPANY, INC.,** *et al.*, | : | **Case No. 15-23007 (RDD)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |

------------------------------------------------------------x

## NOTICE OF SALE OF SUBSTANTIALLY ALL ASSETS

The Great Atlantic & Pacific Tea Company, Inc. and its affiliates identified in the footnote below (collectively, the "Debtors") are seeking to sell or assign substantially all of their stores, leases, and related assets (the "Stores"), including stores operating under the following banners: A&P, Waldbaum's, SuperFresh, Pathmark, Food Basics, The Food Emporium, Best Cellars, and A&P Liquors.

Three parties have already submitted binding bids (the "Bids") for a total of 120 Stores.  Each Bid remains subject to higher and better offers.  **A list of the Stores included in each Bid is attached as Exhibit A.**

**A list of the Debtors' 176 other Stores is attached as Exhibit B.**

By order, dated August 10, 2015 (the "Bid Procedures Orders"), the Bankruptcy Court approved certain "Bid Procedures" that govern the sale of all of the Debtors' Stores to the highest or best bidders.

The Debtors have requested the Bankruptcy Court enter orders (the "Sale Orders"), which provide, among other things, for the sale of the Stores free and clear of liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by successful bidders of certain liabilities.  A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned.

Copies of the Asset Purchase Agreements, the Bid Procedures Order, the Bid Procedures, and the proposed Sale Orders are available upon request to the Debtors' noticing agent, Prime Clerk, at (844) 239-9273 or apinfo@primeclerk.com, and are available for download at https://cases.primeclerk.com/aptea.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).

**ANY INTERESTED BIDDER SHOULD CONTACT THE DEBTORS' ADVISORS AT:**

| | |
|---|---|
| **Evercore Group LLC** | **Hilco Real Estate LLC** |
| Paul Billyard at 212-857-3150, billyard@evercore.com | Gregory Apter at gapter@hilcoglobal.com |
| Will Jurist at 212-849-3637, William.jurist@evercore.com | Matt Tabloff at mtabloff@hilcoglobal.com |

**PLEASE TAKE NOTE OF THE FOLLOWING IMPORTANT DEADLINES:**

- The **deadline to submit a bid** for one or more Stores is **September 11, 2015 at 5:00 p.m. (ET)**. The failure to abide by the procedures and deadlines set forth in the Bid Procedures Order and the Bid Procedures may result in the denial of your bid.

- The deadline to lodge an objection with the Bankruptcy Court to the proposed sale of the Stores (the "Sale Objection Deadline") is:

  - **September 11, 2015 at 5:00 p.m. (ET)** for the 120 stores included in the current Bids; and

  - **October 2, 2015 at 4:00 p.m. (ET)** for any of the 176 stores not included in the current Bids.

- Objections must be filed and served in accordance with the Bid Procedures Order.

- Auctions for Stores have been scheduled for **September 24 and 25, 2015 at 9:30 a.m. (ET)**.

- The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sales on:

  - **September 21, 2015 at 10:00 a.m. (Eastern Time)** if a Bid is the only Qualified Bid (as such term is defined in the Bid Procedures) received; and/or

  - **October 7, 2015 at 10:00 a.m. (Eastern Time)** if more than one Qualified Bid (as such term is defined in the Bidding Procedures) is received and an Auction is conducted.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE SALE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE ASSET PURCHASE AGREEMENTS (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THE STORES AND ASSUMPTION AND ASSIGNMENT OF STORE LEASES, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

Dated _____, 2015

                _____

                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York 10153
                Telephone:  (212) 310-8000
                Facsimile:   (212) 310-8007

                *Attorneys for Debtors and Debtors in Possession*

## **Exhibit 3**

Global Publication Sale Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                            :
                                                 :    Chapter 11
THE GREAT ATLANTIC & PACIFIC TEA                 :
COMPANY, INC., *et al.*,                         :    Case No. 15-23007 (RDD)
                                                 :
                     Debtors.                    :    (Jointly Administered)
---------------------------------------------------------------x

<u>NOTICE OF SALE OF SUBSTANTIALLY ALL ASSETS</u>

The Great Atlantic & Pacific Tea Company, Inc. and its affiliates identified below (collectively, the "Debtors") are seeking to sell or assign substantially all of their stores, leases, and related assets (the "Stores"), including stores operating under the following banners: A&P, Waldbaum's, SuperFresh, Pathmark, Food Basics, The Food Emporium, Best Cellars, and A&P Liquors.

Three parties have already submitted binding bids (the "Bids") for a total of 120 Stores.  Each Bid remains subject to higher and better offers.

By order, dated August 10, 2015 (the "Bid Procedures Orders"), the Bankruptcy Court approved certain "Bid Procedures" that govern the sale of all of the Debtors' Stores to the highest or best bidders.

The Debtors have requested the Bankruptcy Court enter orders (the "Sale Orders"), w hich provide, among other things, for the sale of the Stores free and clear of liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by successful bidders of certain liabilities.

Copies of the Asset Purchase Agreements, the Bid Procedures Order, the Bid Procedures, and the proposed Sale Orders are available upon request to the Debtors' noticing agent, Prime Clerk, at (844) 239-9273 or apinfo@primeclerk.com, and are available for download at https://cases.primeclerk.com/aptea.

**ANY INTERESTED BIDDER SHOULD CONTACT THE DEBTORS' ADVISORS AT:**

**Evercore Group LLC**

Paul Billyard at 212-857-3150,
billyard@evercore.com

Will Jurist at 212-849-3637,
William.jurist@evercore.com

**Hilco Real Estate LLC**

Gregory Apter at
gapter@hilcoglobal.com

Matt Tabloff at
mtabloff@hilcoglobal.com

**PLEASE TAKE NOTE OF THE FOLLOWING IMPORTANT DEADLINES:**

- The **deadline to submit a bid** for one or more Stores is **September 11, 2015 at 5:00 p.m. (ET)**.  The failure to abide by the procedures and deadlines set forth in the Bid Procedures Order and the Bid Procedures may result in the denial of your bid.

- The deadline to lodge an objection with the Bankruptcy Court to the proposed sale of the Stores (the "Sale Objection Deadline") is:

  o **September 11, 2015 at 5:00 p.m. (ET)** for the 120 stores included in the current Bids; and

  o **October 2, 2015 at 4:00 p.m. (ET)** for any of the 176 stores not included in the current Bids.

- Objections must be filed and served in accordance with the Bid Procedures Order.

- Auctions for Stores have been scheduled for **September 24 and 25, 2015 at 9:30 a.m. (ET)**.

- The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sales on:

  o **September 21, 2015 at 10:00 a.m. (Eastern Time)** if a Bid is the only Qualified Bid (as such term is defined in the Bid Procedures) received; and/or

  o **October 7, 2015 at 10:00 a.m. (Eastern Time)** if more than one Qualified Bid (as such term is defined in the Bidding Procedures) is received and an Auction is conducted.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE SALE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE ASSET PURCHASE AGREEMENTS (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THE STORES AND ASSUMPTION AND ASSIGNMENT OF STORE LEASES, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

**LIST OF DEBOTRS:**

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).

**<u>Exhibit 4</u>**

Cure Notice

WEIL:\95428776\9\50482.0004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                           :        **Chapter 11**
                                                :
**THE GREAT ATLANTIC & PACIFIC TEA**            :        **Case No. 15-23007 (RDD)**
**COMPANY, INC.,** *et al.,*                    :
                                                :        **(Jointly Administered)**
            **Debtors.**[1]                     :

---------------------------------------------------------------x

## NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

The Great Atlantic & Pacific Tea Company, Inc. and its chapter 11 affiliates identified in the footnote below (collectively, the "Debtors") are seeking to assume and assign substantially all of their executory contracts and unexpired leases in connection with the sale of substantially all of their stores (the "Stores"), including Stores operating under the following banners: A&P, Waldbaum's, SuperFresh, Pathmark, Food Basics, The Food Emporium, Best Cellars, and A&P Liquors. Three parties (the "Bidders") have already submitted binding bids (the "Bids") for a total of 120 Stores, and the Debtors are seeking Court approval of these Bids (or such higher and better bids) pursuant to a motion, dated _____, 2015 (Docket No. __).

**You are receiving this Notice because you may be a party to an executory contract or unexpired lease that is proposed to be assumed and assigned to the Bidders (collectively, the "Transferred Contracts"), or to such other bidders that submit higher or better offers for the Stores**.

The current Bidders are: Acme Markets, Inc.; The Stop & Shop Supermarket Company, LLC; and Key Food Stores Co-Operative, Inc. A list of the Transferred Contracts is attached hereto as Exhibit A. Copies of the Bids are available at https://cases.primeclerk.com/aptea or by calling 844-239-9273.

The Debtors have determined the current amounts owing (the "Cure Costs") under each Transferred Contract and have listed the applicable Cure Costs on Exhibit A. The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Transferred Contracts.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: The Great Atlantic & Pacific Tea Company, Inc. (0974); Montvale-Para Holdings, Inc. (2947); 2008 Broadway, Inc. (0986); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

**To the extent that a non-Debtor party objects to (i) the assumption and assignment of such party's Transferred Contract or (ii) the applicable Cure Costs, the non-Debtor counterparty must file and serve an objection in accordance with the Global Bidding Procedures Order (Docket No. __), so as to be received by the parties specified therein by September 11, 2015 at 5:00 p.m. (Eastern Time). Copies of the Global Bidding Procedures Order are available for download at https://cases.primeclerk.com/aptea.**

**If no objection is timely received, (i) the counterparty to a Transferred Contract shall be deemed to have consented to the assumption and assignment of the Transferred Contract and shall be forever barred from asserting any objection with regard to such assumption or assignment, and (ii) the Cure Costs set forth on Exhibit A attached hereto shall be controlling, notwithstanding anything to the contrary in any Transferred Contract, or any other document, and the counterparty to a Transferred Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Transferred Contract against the Debtors or the applicable transferee, or the property of any of them.**

If no Qualified Bids (as such term is defined in the Global Bidding Procedures), other than those of the Bidders, are received for the Stores, the Debtors will seek to assume and assign the Transferred Contracts at a hearing before the Honorable _____, in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (a "**Sale Hearing**") on _____, 2015, at ___ _.m. (Eastern Time), or at a later hearing, as determined by the Debtors. A hearing regarding the Cure Costs, if any, may be adjourned at the discretion of the Debtors.

If one or more Qualified Bids are received, other than those of the Bidders, auctions for the Stores, including the Transferred Contracts, will be conducted, and the Sale Hearing will be held on _____, 2015, at ___ _.m. (Eastern Time). After the auctions, the Debtors will file, but not serve, a notice that identifies the successful bidders for the Stores, including any Transferred Contracts. If a successful bidder at an auction is not one of the Bidders, then the deadline to object to adequate assurance of future performance by a successful bidder will be extended to two (2) days prior to the Sale Hearing; provided that the deadline to object to the Cure Costs shall not be extended.

Dated: [      ], 2015

_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*

**Exhibit C**

**Revised Global Bidding Procedures Order**
**(Redline)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re                                                          :
                                                               :        **Chapter 11**
**THE GREAT ATLANTIC & PACIFIC TEA**            :
**COMPANY, INC., et al.,**                                 :        **Case No. 15-23007 (RDD)**
                                                               :
          **Debtors.**[1]                                    :        **(Jointly Administered)**
                                                               :
-------------------------------------------------------------------x

**ORDER APPROVING (A) GLOBAL BIDDING PROCEDURES, (B) BID**
**PROTECTIONS GRANTED TO CERTAIN STALKING HORSE PURCHASERS,**
**(C) THE FORM AND MANNER OF NOTICE OF AUCTIONS, SALE TRANSACTIONS**
**AND SALE HEARING, (D) THE ASSUMPTION AND ASSIGNMENT PROCEDURES,**
**AND (E) THE DATE FOR AUCTIONS, IF NECESSARY, AND SALE HEARINGS**

Upon the motion, dated July 19, 2015 (the "**Motion**"),[2] of the Debtors in the

above-captioned chapter 11 cases for an order pursuant to sections 105, 363, 365, 503 and

507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014: (i) approving

(a) the Global Bidding Procedures attached hereto as **Exhibit 1**, (b) the Bid Protections

granted to each Stalking Horse Bidder as provided in such bidder's Stalking Horse

Agreement, (c) the form and manner of notice of each Auction, Sale Transaction and Sale

Hearing, (d) the Assumption and Assignment Procedures, including the procedures for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms utilized but not defined herein shall have the meanings given them in the Motion or the Global Bidding Procedures.

WEIL:\95424044\1\50482.0004WEIL:\95424044\10\50482.0004

determining cure costs, and (e) a date for the Auctions and Sale Hearings (collectively, the "**Bidding and Auction Process**"); and (ii) authorizing (a) the sale of the Acquired Assets, as defined and identified in each Stalking Horse Agreement (including any Additional Stores), and any Additional Stores free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code and (b) the assumption and assignment of Transferred Contracts, as defined and identified in each Stalking Horse Agreement (including any Additional Contracts) (collectively, the "**Sale Transactions**"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given as provided in the Motion; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion as to the Bidding and Auction Process (the "**Hearing**"); and all of the proceedings had before the Court; and the Court having reviewed the Motion, the McGarry Declaration, and the Goldstein Declaration filed in support of the Motion; and the Court having found and determined that the relief sought in the Motion as to the Bidding and Auction Process is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To

WEIL:\95424044\1\50482.0004 WEIL:\95424044\10\50482.0004

**FOUND AND DETERMINED THAT**:[3]

A.      This Court has jurisdiction to hear and determine the Motion and to grant the relief requested herein with respect to the Bidding and Auction Process pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.

C.      Good and sufficient notice of the Motion, the Bidding and Auction Process and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein and in the Global Bidding Procedures.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

D.      The Debtors and their advisors, including Evercore Group LLC and Hilco Real Estate LLC, engaged in a robust and extensive marketing and sale process before and after the Commencement Date, over a period of more than four months, to solicit and develop the highest or best offer for the Stores.

E.      The bid of each Stalking Horse Bidder as reflected in the Stalking Horse Agreement of such Stalking Horse Bidder (such Stalking Horse Bidder, the

---

pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

WEIL:\95424044\1\50482.0004 WEIL:\95424044\10\50482.0004

"**Applicable Stalking Horse Bidder**" and the Stalking Horse Agreement applicable to such

Stalking Horse Bidder, the "**Applicable Stalking Horse Agreement**"), represents the highest

or best offer the Debtors have received to purchase the Acquired Assets included in an

Applicable Stalking Horse Agreement (the "**Applicable Acquired Assets**").

F.    Each of [ ], [ ], and [ ]Acme Markets, Inc., The Stop & Shop

Supermarket Company, LLC, and Key Food Stores Co-Operative, Inc., shall act as the

"**Stalking Horse Bidder**" under a Stalking Horse Agreement, respectively, and be subject to

higher or better offers in accordance with the Global Bidding Procedures.

G.    Pursuit of each Applicable Stalking Horse Bidder as a "stalking-horse"

and its Applicable Stalking Horse Agreement as a "stalking-horse" sale agreement is in the

best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound

exercise of the Debtors' business judgment.  The Applicable Stalking Horse Agreement

provides the Debtors with the opportunity to sell the Applicable Acquired Assets, in order to

preserve and realize their going concern value.  Each of the Applicable Stalking Horse

Agreements will enable the Debtors to continue their operations, preserve jobs, minimize

disruption to the Debtors' businesses, and secure a fair and adequate baseline price for the

Applicable Acquired Assets at the auction for the Applicable Acquired Assets (the

"**Applicable Auction**") and, accordingly, will provide a clear benefit to the Debtors' estates,

their creditors, and all other parties in interest.

H.    The Bid Protections, including, but not limited to, any Termination

Payments (as such term is defined in an Applicable Stalking Horse Agreement, the

"**Applicable Termination Payment**"), (i) have been negotiated by the Applicable Stalking

Horse Bidder and the Debtors and their respective advisors at arms' length and in good faith

and (ii) are necessary to ensure that the Applicable Stalking Horse Bidders will continue to pursue its Applicable Stalking Horse Agreement and the sale transaction contemplated thereby (the "**Applicable Sale Transaction**").  The Applicable Termination Payment, to the extent payable under the Applicable Stalking Horse Agreement, (x) is (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and (ii) shall be treated as an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, (y) is commensurate to the real and material benefits conferred upon the Debtors' estates by the Applicable Stalking Horse Bidder, and (z) is fair, reasonable and appropriate, including in light of the size and nature of the Applicable Sale Transaction, the necessity to announce a sale transaction for the Applicable Acquired Assets and the efforts that have been and will be expended by the Applicable Stalking Horse Bidder.  The Bid Protections, including, but not limited to, any Applicable Termination Payments are a material inducement for, and condition of, each Applicable Stalking Horse Bidder's execution of the Applicable Stalking Horse Agreement.  Unless it is assured that the Bid Protections, including, but not limited to, any Applicable Termination Payment, will be available, the Applicable Stalking Horse Bidder is unwilling to remain obligated to consummate the Applicable Sale Transaction or otherwise be bound under the Applicable Stalking Horse Agreement (including the obligations to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Global Bidding Procedures).

I.      The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Global Bidding Procedures, (ii) the Assumption and Assignment Procedures, (iii) the Bid Protections, including, but not limited to, any Applicable Termination

WEIL:\95424044\1\50482.0004 WEIL:\95424044\10\50482.0004

Payment (to the extent payable under the Applicable Stalking Horse Agreement), and (iv) the form and manner of notice of the Applicable Auction and Sale Hearing for the Applicable Sale Transaction.

J.      The Global Bidding Procedures were negotiated in good faith and at arms' length and are reasonably designed to promote participation and active bidding and ensure that the highest or best value is generated for the Applicable Acquired Assets.

K.      None of the Applicable Stalking Horse Bidders is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Applicable Stalking Horse Bidder and the Debtors.  The Applicable Stalking Horse Bidder and its respective counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Applicable Stalking Horse Bidders' negotiation of its Bid Protections and the Global Bidding Procedures and the Applicable Stalking Horse Bidders' negotiation and entry into the Applicable Stalking Horse Agreement.

L.      The Assumption and Assignment Procedures, including notice of proposed cure costs, are reasonable and appropriate and consistent with section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures have been tailored to provide adequate opportunity for all non-Debtor counterparties to the Transferred Contracts (as defined in each Applicable Stalking Horse Agreement, the "**Applicable Transferred Contracts**") to raise any objections to the proposed assumption and assignment or to the cure costs.

M.     The Global Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Global Bidding Procedures, the Assumption and Assignment Procedures, the Applicable Auctions, the Sale Hearings and the Applicable Sale Transactions (including the sale of the Applicable Acquired Assets (as set forth under the Applicable Stalking Horse Agreement) free and clear of any liens, claims, encumbrances or interests pursuant to section 363(f) of the Bankruptcy Code) (with such liens, claims, encumbrances or interests attaching to the proceeds of any such sale), and any and all objection deadlines related thereto, and no other or further notice shall be required for the Sale Motion, the Applicable Sale Transactions or the assumption and assignment of the Applicable Transferred Contracts  except as expressly required herein.

N.     Nothing contained herein shall prejudice or impair the right to credit bid, as set forth in the Global Bidding Procedures (and subject to the terms of the Intercreditor Agreement, as such term is defined in the Global Bidding Procedures) of (A) Fortress ~~Investment Group,~~Credit Corp., as agent under that certain Senior Secured Debtors-in-Possession Term Credit Agreement (the "**DIP Lender**"), (B) Wells Fargo Bank, National Association ("**Wells Fargo**"), as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014, (C) Wells Fargo, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014, (D) the majority holders of the Senior Secured PIK Toggle Notes due 2017, and (E) the majority holders of the Senior Secured Convertible Notes due 2018 (each, a "**Secured Lender**"), on such assets that are subject to their respective liens in their respective priorities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND
DECREED THAT**:

1.      The Motion is granted to the extent set forth herein.

2.      All ~~Oo~~bjections to the relief granted herein that have not been
withdrawn with prejudice, waived or settled, and all reservations of rights included in such
objections, hereby are overruled and denied on the merits with prejudice.

**Notice of Sale Transaction**

3.      The Global Sale Notice and the Global Publication Sale Notice,
substantially in the forms annexed hereto as **Exhibit 2** and **Exhibit 3**, respectively, are
approved.

4.      All parties in interest shall receive or be deemed to have received good
and sufficient notice of (a) the Motion, (b) the Assumption and Assignment Procedures,
including the proposed assumption and assignment of the Applicable Transferred Contracts to
the Applicable Stalking Horse Bidder pursuant to the Applicable Stalking Horse Agreement or
to a Successful Bidder, (c) the Applicable Auction, (d) the Applicable Sale Transaction,
including the sale of the Applicable Acquired Assets (as set forth under the Applicable
Stalking Horse Agreement) free and clear of all liens, claims, encumbrances or other interest,
and (e) the Sale Hearings, and no further notice of the foregoing shall be required, if:

> (a)      As soon as practicable, but no later than three (3) days[4] after entry of
> this Order, the Debtors cause the Global Sale Notice to be filed with the
> Court and served by email, mail, facsimile or overnight delivery on: (i)
> counsel for the Applicable Stalking Horse Bidder; (ii) all Persons known
> by the Debtors to have expressed an interest to the Debtors in a

---

[4] All references to "days" shall be calendar days, unless expressly noted.

WEIL:\95424044\1\50482.0004 WEIL:\95424044\10\50482.0004

transaction with respect to the Applicable Acquired Assets or any Additional Stores during the past twelve (12) months; (iii) all entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in the Applicable Acquired Assets or any Additional Stores (for whom identifying information and addresses are available to the Debtors); (iv) all non-Debtor parties to the Applicable Transferred Contracts and Additional Contracts, and their counsel of record, if any (for whom identifying information and addresses are available to the Debtors); (v) any Governmental Authority (as defined in the Applicable Stalking Horse Agreement) known to have a claim in the above-captioned chapter 11 estates; (vi) the United States Attorney for the Southern District of New York; (vii) the Office of the Attorney General in each state in which the Debtors operate; (iix) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (ix) all of the multiemployer pension plans to which any of the Debtors is a contributing employer and all of the single employer defined benefit plans to which any Debtor is a contributor; (x) all of the labor unions that represent employees of any Debtor; (xi) the Federal Trade Commission; (xii) the United States Attorney General/Antitrust Division of Department of Justice; (xiii) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); (xiv) all local environmental enforcement agencies; (xv) the United States Environmental Protection Agency; and (xvi) all other Persons requesting notice under Bankruptcy Rule 2002 or as directed by the Court (for whom identifying information and addresses are available to the Debtors) (collectively, the "**Sale Notice Parties**"); and

(b)       As soon as practicable, but no later than five (5) days after entry of this Order, the Debtors cause the Global Publication Sale Notice to be published on the website of the Debtors' claims and noticing agent and once in The New York Times, national edition, and twice in the trade publication, Supermarket News.

## The Global Bidding Procedures and the Auctions

5.       The Global Bidding Procedures, attached hereto as **Exhibit 1**, are incorporated herein and approved, and shall apply with respect to any bids for, and the auction and sale of, all of the Debtors' stores and related assets, including the Applicable Acquired Assets set forth under the Applicable Stalking Horse Agreement. The Debtors are authorized to take all actions necessary or appropriate to implement the Global Bidding Procedures.

WEIL:\95424044\1\50482.0004WEIL:\95424044\10\50482.0004

6.      The deadline for submitting Qualified Bids (the "**Global Bid Deadline**") is **September 11, 2015 at 5:00 p.m. (Eastern Time)**.  Any party that does not submit a Qualified Bid by the Global Bid Deadline in accordance with the Global Bidding Procedures will not be allowed to (a) submit any offer after the Global Bid Deadline or (b) participate in the Applicable Auction; provided that the foregoing shall not preclude the Debtors after the Global Bid Deadline from marketing to any person, or auctioning, or any parties from bidding on, any Stores not included in an Applicable Auction, including pursuant to the ~~Tier II~~Discrete Sale and Lease Rationalization Procedures; provided further that to the extent there is no Applicable Auction for the Applicable Acquired Assets of a Stalking Horse Bid, the prior proviso shall not be applicable to such Applicable Acquired Assets.  Each Applicable Stalking Horse Bidder is a Qualified Bidder and the bid reflected in the Applicable Stalking Horse Agreement is a Qualified Bid for all purposes and requirements pursuant to the Global Bidding Procedures.

7.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Applicable Auction and the terms and conditions of the sale or transfer of the Applicable Acquired Assets identified under the Applicable Stalking Horse Agreement.

8.      If the Applicable Stalking Horse Bidder's bid, as reflected in the Applicable Stalking Horse Agreement, is the only Qualified Bid in respect of the Applicable Acquired Assets identified under the Applicable Stalking Horse Agreement that is received by the Debtors by the Global Bid Deadline, no Applicable Auction will be conducted for the Applicable Acquired Assets, and the Applicable Stalking Horse Bidder will be the Successful Bidder for the Applicable Acquired Assets.

WEIL:\95424044\1\50482.0004WEIL:\95424044\10\50482.0004

9.      Subject to Paragraph 18 below, each Qualified Bidder must provide with its bid information supporting the Qualified Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including the Potential Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Potential Bidders.

10.      To the extent a Qualified Bid provides for assumption of the Pension Plans (as defined below), the Debtors shall within 3 days provide to the Pension Benefit Guaranty Corporation (the "**PBGC**") the Adequate Assurance Information provided to the Debtors so that the PBGC may evaluate that the Qualified Bidder can provide adequate assurance of its financial ability to assume the Pension Plans (as defined below).

11.      9.  Each Qualified Bidder participating in the Applicable Auction shall confirm in writing that (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding or the Applicable Auction and (b) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at an Applicable Auction shall be transcribed.

12.      10.  Subject to the rights of an Applicable Stalking Horse Bidder under its Applicable Stalking Horse Agreement, the Global Bidding Procedures (including the consultation rights of the Consultation Parties described therein) and this Order, the Debtors shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Global Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is a Baseline Bid (as such terms are defined in the Global

11

Bidding Procedures); (d) determine which bids are the Successful Bid and Back-Up Bid (as

such terms are defined in the Global Bidding Procedures), each as it relates to an Applicable

Auction; (e) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the

requirements of the Global Bidding Procedures or the requirements of the Bankruptcy Code,

or (iii) contrary to the best interests of the Debtors and their estates; (f) adjourn or cancel an

Applicable Auction and/or the applicable Sale Hearing in open court without further notice or

as provided in the Global Bidding Procedures; (g) modify the Global Bidding Procedures

consistent with their fiduciary duties and bankruptcy law; and (h) withdraw the Sale Motion

at any time with or without prejudice.

### The Sale Hearings and Sale Objections Deadlines

13.    11. If more than one Qualified Bid is received for the Applicable

Acquired Assets, the applicable Sale Hearing shall be held before this Court on **October 17,**

**2015 at 10:00 a.m. (Eastern Time).** If the bid of the Applicable Stalking Horse Bidder, as

reflected in the Applicable Stalking Horse Agreement, is the only Qualified Bid received for

the Applicable Acquired Assets, the applicable Sale Hearing shall be held before this Court

on **September 2221, 2015, at 10:00 a.m. (Eastern Time)**.  The Debtors may (after

consultation with the Consultation Parties and the Applicable Stalking Horse Bidder or, if an

Applicable Auction has been held, the Successful Bidder and the Consultation Parties) seek an

adjournment of the applicable Sale Hearing as the Debtors deem appropriate in the exercise of

their reasonable business judgment.

14.    12. Objections to an Applicable Sale Transaction (including the sale of

the Applicable Acquired Assets subject to such objection free and clear of liens, claims,

encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code) and entry of

WEIL:\95424044\1\50482.0004WEIL:\95424044\10\50482.0004

the Sale Orders (other than objections to the provision of adequate assurance of future performance by a Successful Bidder other than the Applicable Stalking Horse Bidder) (each, a "**Sale Objection**") must: (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"); and (c) be filed with the Court and served on (i) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Garrett A. Fail, Esq. and Sunny Singh, Esq.), ~~and~~ (ii) counsel to the Creditors' Committee, ~~if any,~~Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017 (Attn:  Robert J. Feinstein, Esq. and Bradford J. Sandler, Esq.), (iii) counsel to the Applicable Stalking Horse Bidder, (iv) counsel to Wells Fargo, as ABL Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110 (attn.: Kevin J. Simard, Esq. and John F. Ventola, Esq.), ~~and~~ (v) counsel to Wells Fargo, as Term Agent, Otterbourg, O.C., 230 Park Avenue, New York, New York 10169 (Attn:  Jonathan N. Helfat, Esq. and Daniel F. Fiorillo, Esq.), and (vi) counsel to the United Food and Commercial Workers Union International, Cohen, Weiss and Simon LLP, 330 West 42nd Street, New York, New York 10036 (Attn: Richard M. Seltzer, Esq.) (collectively, the "**Objection Notice Parties**") by **September 11, 2015 at 5:00 p.m. (Eastern Time**); provided that if Sale Objection relates to the sale of an Additional Store, the Objection Deadline shall be **October 2, 2015 at 4:00 p.m. (Eastern Time**).  All Sale Objections will be heard by the Court at the applicable Sale Hearing.

15.    ~~13.~~ The failure of any objecting person or entity to timely file and serve a Sale Objection shall be a bar to the assertion, at any Sale Hearing or thereafter, of any objection to the Sale Motion, or to the consummation and performance of the Applicable Sale

Transaction contemplated by a Applicable Stalking Horse Agreement or any purchase agreement with a Successful Bidder, including the transfer of the Applicable Acquired Assets (as set forth under the Applicable Stalking Horse Agreement subject to the untimely Sale Objection) to the Applicable Stalking Horse Bidder or the Successful Bidder, free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

## The Assumption and Assignment Procedures

16.    14. The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all non-Debtor counterparties, comply in all respects with the Bankruptcy Code, and are approved.

17.    15. As soon as practicable, but not later than **three (3)** days after the entry of this Order, the Debtors shall file with the Court and serve by first class mail on each non-Debtor party to the Applicable Transferred Contracts a notice (the "**Cure Notice**") that shall: (i) provide a description of each such Applicable Transferred Contract, (ii) state the amount, if any, that the Debtors believe are necessary to cure, or compensate the non-Debtor party for, any and all defaults under such Applicable Transferred Contract pursuant to section 365 of the Bankruptcy Code (the "**Cure Costs**"); (iii) notify the non-Debtor party that such party's contract or lease may be assumed and assigned to a purchaser of the Applicable Acquired Assets; (iv) state the date of the Sale Hearing and that objections to any Cure Costs or to assumption and assignment will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors (subject to the consent of the Applicable Stalking Horse Bidder or, if an Applicable Auction has been held, the Successful Bidder) in accordance with this Order; and (ivv) state the appropriate deadline by which the non-Debtor party must file an objection

14

to the Cure Costs or assumption and assignment of the Applicable Transferred Contracts. Upon service of the Cure Notice, all counterparties to the Applicable Transferred Contracts shall receive or be deemed to have received good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Applicable Transferred Contracts. ~~The~~As soon as practicable, but no later than three (3) days after the entry of this Order, the Debtors ~~,~~ the Debtors shall also post a copy of the Cure Notice on the website for these chapter 11 cases maintained by the Debtors' claims and noticing agent.

18.    Within 10 days after entry of this Order, the Debtors shall provide, in coordination with the Stalking Horse Bidders, Adequate Assurance Information for the Applicable Stalking Horse Bidders to each counterparty to the Applicable Transferred Contracts and its counsel, if known, on a confidential basis; provided that the counterparties' use and disclosure of the Adequate Assurance Information shall be subject to the same restrictions applicable to Cure Notice Parties as set forth in Paragraph 20 below.

19.    As soon as practicable, but no later than (1) day after the Auction, the Debtors will file a notice (the "**Notice of Successful Bidders**"), which shall set forth, among other things, (i) the Successful Bidders, (ii) the executory contracts and unexpired leases to be assumed and assigned to each of the Successful Bidders, and the property locations subject to each unexpired lease to be assumed and assigned; (iii) the proposed assignee(s) of such executory contracts and unexpired leases; (iv) a certification by the Debtors that the proposed assignee has provided the Successful Bidder's Adequate Assurance Information, as set forth in Paragraphs 18 and 20, as applicable, to each affected counterparty of such executory contract or unexpired lease on a confidential basis; and (v) the deadlines and procedures for filing

~~WEIL:\95424044\1\50482.0004~~WEIL:\95424044\10\50482.0004

Adequate Assurance Objections (as defined here) in response to the Notice of Successful Bidder (as set forth herein).

20.    The Debtors will cause to be served by email (i) the Notice of Successful Bidders and (ii) the Adequate Assurance Information on each non-Debtor counterparty to such executory contract or unexpired lease and their counsel appearing in this case (collectively, the "**Cure Notice Parties**").  The Cure Notice Parties shall review the Adequate Assurance Information on a confidential basis.  The Cure Notice Parties may not use any confidential Adequate Assurance Information for any purpose other than (i) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided and (ii) in support of any objection (subject to the limitations on disclosure set forth herein) by a Cure Notice Party relating to adequate assurance of future performance.  Any objection which discloses confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s).  This Order authorizes the filing of any such objections under seal, and on the docket with such non-public information redacted, without further Order of the Court.

21.    16. All Objections to any proposed Cure Costs (each, a "**Cure Objection**") and to the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) with respect to a Cure Objection, state with specificity what cure costs the objecting party believes are required; and (d) be filed with the Court and served on the Objection Notice Parties.

WEIL:\95424044\1\50482.0004 WEIL:\95424044\10\50482.0004

22.   17. Any Cure Objection or Adequate Assurance Objection in respect of an Applicable Transferred Contract must be filed and served by **September 11, 2015 at 5:00 p.m. (Eastern Time)**; provided that if a Successful Bidder other than the Applicable Stalking Horse Bidder prevails at the Auction, then (a) the deadline to file and serve an Adequate Assurance Objection in respect of an Applicable Transferred Contract shall be extended to two (**October 2**) days prior to the Sale Hearing, and (b) as soon as possible after the conclusion of the Applicable Auction, the Debtors shall file with the Bankruptcy Court a notice that identifies the Successful Bidder and provides notice that the Debtors will seek to assume and assign the Applicable Transferred Contracts and any Additional Contracts to the Successful Bidder**, 2015 at 4:00 p.m. (Eastern Time)**.

23.   18. ByNo later than **September 21, 2015**, the Debtors shall file with the Court and serve by first class mail upon each non-Debtor counterparty to an Additional Contract included in an Auction Package (as such term is defined in the Global Bidding Procedures Order) and its counsel of record, if any, a notice indicating (a) the applicable Cure Costs for the Additional Contract and (b) that the Debtors' may seek to assume and assign the Additional Contracts to a Successful Bidder or a Stalking Horse Bidder, as applicable (such notice, an "**Additional Cure Notice**").  The Debtors shall also post a copy of any Additional Cure Notices on the website for these chapter 11 cases maintained by the Debtors' claims and noticing agent.  Any Cure Objection for an Additional Contract must be filed and served within seven (7) days of service of the Additional Cure Notice.  Any Adequate Assurance Objection for an Additional Contract must be filed and served two (2) days prior to the Sale Hearing. Upon service of the Additional Cure Notice, all counterparties included on such Additional Contract Notice shall receive or be deemed to have received good and sufficient

notice of the Cure Costs for, and the proposed assumption and assignment of, the Additional

Contracts. .

24.    Any Cure Objection or Adequate Assurance Objection for an Additional

Contract must be filed and served by **October 2, 2015 at 4:00 p.m. (Eastern Time)**.

25.    19. If a timely Cure Objection or Adequate Assurance Objection is

received and such objection cannot otherwise be resolved by the parties, such objection shall

be heard at the applicable Sale Hearing; provided that a Cure Objection (only) may, at the

Debtors' discretion (after consultation with the Applicable Stalking Horse Bidder or, if an

Applicable Auction is held, the Successful Bidder), be adjourned to a subsequent hearing if,

pending resolution of such Cure Objection (an "**Adjourned Cure Objection**"), the Debtors

maintain a cash reserve equal to the cure cost the objecting party believes is required, as set

forth in the Cure Objection (the "**Cure Cost Reserve**").  An Adjourned Cure Objection may

be resolved after the applicable Closing Date; provided that the Debtors maintain the Cure

Cost Reserve.  Upon resolution of such Adjourned Cure Objection and the payment of the

applicable Cure Cost, if any, the Applicable Transferred Contract or Additional Contract that

was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to

the Applicable Stalking Horse Bidder or, if any Applicable Auction is held, the Successful

Bidder, as of the applicable Closing Date.

26.    20. If no timely Cure Objection is filed and served in respect of an

Applicable Transferred Contract or Additional Contract, the Cure Cost identified on the Cure

Notice or Additional Cure Notice will be the only amount necessary under section 365(b) of

the Bankruptcy Code to cure all defaults under such Applicable Transferred Contract or

Additional Contract.  Any party failing to timely file a Cure Objection shall be forever barred

from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, the Applicable Stalking Horse Bidder or, if an Applicable Auction is held, the applicable Successful Bidder.  If no timely Adequate Assurance Objection is filed and served with respect to an Applicable Transferred Contract or Additional Contract, the Applicable Stalking Horse Bidder or, if an Auction is held, the applicable Successful Bidder will be deemed to have provided adequate assurance of future performance for such Transferred Contract or Additional Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code.

27.    ~~21.~~ The Debtors' assumption and assignment of the Applicable Transferred Contracts and any Additional Contracts to a Successful Bidder is subject to Court approval and the consummation of an applicable Sale Transaction.  Accordingly, absent the closing of such sale, the Applicable Transferred Contracts and Additional Contracts (if any) shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

28.    ~~22.~~ The inclusion of a contract or other document or Cure Cost on a Cure Notice or Additional Cure Notice shall not constitute or be deemed a determination or admission by the Debtors, the Applicable Stalking Horse Bidder or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims and causes of action with respect to each contract or other document listed on the Cure Notice and Additional Cure Notice.  The Debtors' inclusion of an executory contract or unexpired lease on the Cure Notice or Additional Cure Notice shall not be a guarantee that such executory

contract or unexpired lease will ultimately be assumed or assumed and assigned.  The Cure Notice shall be without prejudice to each Stalking Horse Bidder's rights, if any, under the Stalking Horse Agreement to subsequently (i) exclude a Applicable Transferred Contract from assumption or assignment or (ii) to include Additional Contracts for assumption and assignment.

29.    23.  The Debtors shall provide written notice to the parties to all Transferred Contracts and Additional Contracts that are ultimately assumed and assigned to a Successful Bidder of (a) such assumption and assignment and (b) the identity of the Successful Bidder.

**Reply Deadline**

30.    The Debtors shall have until **October 6, 2015 at 10:00 a.m. (Eastern Time)** to file and serve a reply to any objection filed in connection with the Sale Transactions, including any Sale Objection, Cure Objection, or Adequate Assurance Objection.

**Bid Protections**

31.    24.  The Bid Protections are approved in their entirety, including, without limitation, the following Applicable Termination Payments payable in accordance with, and subject to the terms of, the Applicable Stalking Horse Agreement:

a.    Stalking Horse Bidder, [  ]Acme Markets Inc., shall be granted the right to a Termination Payment comprised of a break-up fee of [  ]1.5% of the cCash pPurchase pPrice (as such term is defined in the Applicable Stalking Horse Agreement), plus reimbursement forof up to $[  ]4.5 million of reasonable and documented expenses in connection with its purchase of IT equipment required to consummate the transactions contemplated by the Applicable Stalking Horse Agreement.

b.    Stalking Horse Bidder, [  ]The Stop & Shop Supermarket Company, LLC, shall be granted the right to a Termination Payment

20

comprised of a break-up fee of [ ]3% of the eCash pPurchase pPrice (as such terms is defined in the Applicable Stalking Horse Agreement), plus reimbursement forof up to $[ ]1 million of reasonable and documented expenses.

c.       Stalking Horse Bidder, [ ]Key Food Stores Co-Operative, Inc., shall be granted the right to a Termination Payment comprised of a break-up fee of [ ]3% of the eCash pPurchase pPrice (as such terms is defined in the Applicable Stalking Horse Agreement), plus reimbursement forof up to $[ ] of250,000 in reasonable and documented expenses.; provided that such Termination Payment is contingent upon the Debtors' approval of the Stalking Horse Bidder's financing commitment letter, on the terms and conditions set forth in section 5.9 of the Applicable Stalking Horse Agreement.

Except as expressly provided for herein, no other termination payments are authorized or permitted under this Order.  Notwithstanding anything to the contrary herein, no Termination Payment shall be payable with respect to a Separable Store in the event that such Separable Store is sold to a party other than the Applicable Stalking Horse.

32.       25.  The Debtors are authorized and directed to pay the Applicable Termination Payment, to the extent payable under the Applicable Stalking Horse Agreement, without further order of the Court.  The Applicable Termination Payment, to the extent payable under the Applicable Stalking Horse Agreement, shall constitute an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code.  Subject to the foregoing, the Applicable Termination Payment shall be (a) paid in cash from the proceeds of any approved sale or (b) credited against the purchase price if, after an Applicable Auction, the Applicable Stalking Horse Bidder's bid, as enhanced at the Applicable Auction, is the Successful Bid and the sale contemplated by the Applicable Stalking Horse Agreement (as enhanced at the Applicable Auction) is consummated.

WEIL:\95424044\1\50482.0004WEIL:\95424044\10\50482.0004

**General Provisions**

33. 26. All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

34. 27. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this order.

35. 28. The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

36. 29. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order

Dated: _____, 2015
      White Plains, New York

                                 _____
                                 UNITED STATES BANKRUPTCY JUDGE

WEIL:\95424044\1\50482.0004 WEIL:\95424044\10\50482.0004

**<u>Exhibit 1</u>**

Global Bidding Procedures

## GLOBAL BIDDING PROCEDURES

### Overview

On July [19], 2015, The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

~~On July []~~The Debtors are seeking to sell their 271 operating stores for the highest or best offers.  On August 10, 2015, the United States Bankruptcy Court for the Southern District of New York entered an order (the "**Global Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "**Global Bidding Procedures**") for the consideration of the highest or otherwise best price for **all** of their stores and related assets (each, a "**Store**"), on the terms and conditions set forth herein.

Three stalking horse bids (collectively, the "**Stalking Horse Bids**") have been submitted by ~~[ ]; [ ]; and [ ]~~Acme Markets, Inc.; The Stop & Shop Supermarket Company, LLC; and Key Food Stores Co-Operative, Inc. (collectively, the "**Stalking Horse Bidders**"). Each of the Stalking Horse Bidders has executed a separate agreement (each, a "**Stalking Horse Agreement**") for the purchase of non-overlapping groups of Stores (each such group, a "**Stalking Horse Store Package**").  For reference, the Stalking Horse Bids and the Stores that are part of the related Stalking Horse Store Packages are set forth on Schedule 1 attached hereto.

The Stalking Horse Bids are subject to higher or better offers submitted in accordance with the terms and conditions of these Global Bidding Procedures.  These Global Bidding Procedures describe, among other things: (A) the procedures for bidders to submit bids for one or more Stores, including the Stalking Horse Store Packages; (B) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below); (C) the negotiation of bids received; (D) the conduct of one or more subsequent auctions (an "**Auction**"); and (E) the ultimate selection of the Successful Bidder(s) (as defined below) and Court approval thereof (collectively, the "**Bidding Process**").

The Debtors reserve the right to extend any of the bidding deadlines or other dates set forth in these Global Bidding Procedures without further Order of the Bankruptcy Court subject to providing notice as described below; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadlines set forth in a Stalking Horse Agreement.

In addition to these Global Bidding Procedures, the Bankruptcy Court has authorized the Debtors, with the assistance of their advisors to market and sell Stores and other assets pursuant to omnibus procedures (the "~~Tier II~~Discrete Sale and Lease Rationalization **Procedures**").  Notwithstanding anything to the contrary herein, the Debtors

1

may choose to utilize the ~~Tier II~~<u>Discrete Sale and Lease Rationalization</u> Procedures to market or sell any of their Stores that are not included in a Stalking Horse Store Package.

**Summary of Important Dates**

| | |
|---|---|
| **August ~~24~~28, 2015** | Global Non-Binding Indication of Interest Date |
| **September 11, 2015, at 5:00 p.m.** | Global Binding Bid Deadline |
| **September 11, 2015, at 5:00 p.m.** | Deadline to Object to Sale of Stores Included in Stalking Horse Store Packages<br><br>~~Objection~~ Deadline to ~~Sale /~~ Object to Assumption and Assignment of Transferred Contracts ~~¹~~to Stalking Horse Bidders, Including Proposed Cure Amounts |
| **September ~~18~~21, 2015, at 5:00 p.m.** | Deadline for Debtors to Designate and Publish Qualified Bidders; select Baseline Bids; and Publish Stores to be included in the Auction |
| **September 21, 2015** | Deadline for Debtors to File and Serve Cure Notice for Additional Contracts to Be Included in the Auction |
| **September ~~22~~21, 2015, at 10:00 a.m.** | Sale Hearing if no other Qualified Bids Received for Stalking Horse Store Package |
| **September 24 and 25, 2015** | Auction<br><br>Location: To Be Announced |
| **September 26, 2015** | Deadline for Debtors to File and Serve Notice of Successful Bidders |
| **October ~~1~~2, 2015, at 4:00 p.m.** | ~~Sale Hearing if Auction is Conducted~~<br><br>Deadline to Object to Sale of any Additional Stores / Assumption and Assignment of any Additional Contracts<br><br>~~Adequate Assurance Objection~~ Deadline ~~for Successful~~to Object to Assumption and Assignment of Transferred Contracts to Qualified Bidders ~~o~~Other than the Stalking Horse Bidders ~~and for Additional Contracts~~, Including Proposed Cure Amounts |
| **October 6, 2015, at 10:00 a.m.** | Debtors' Reply Deadline |
| **October 7, 2015, at** | Sale Hearing if Auction is Conducted |

---

~~¹ This objection deadline applies to all objections to the sale of the Stores, with the exception of objections related to adequate assurance of future performance by a Successful Bidder other than one of the Stalking Horse Bidders.~~

| **10:00 a.m.** | |
|---|---|

## **Marketing Process**

### Assets to be Sold

All of the Debtors' Stores are available for sale.  A party who is interested in purchasing any of the Stores may submit a bid to purchase:

(A)     a Stalking Horse Store Package;

(B)     the Mount Kisco Store (referred to herein as a "**Separable Store**"); or

(C)     one or more Stores, in any combination, whether or not such Store is included in a Stalking Horse Store Package.

### Global Non-Binding Indication of Interest Date

If you are interested in purchasing any of the Stores as a going concern, whether individually, in combination or in connection with a Stalking Horse Store Package, you ~~should~~are encouraged to contact the Debtors' advisors, Evercore Group LLC ("**Evercore**") and Hilco Real Estate LLC ("**Hilco**"), by **no later than August ~~24~~28, 2015** (the "**Global Indication of Interest Date**") in writing, expressing your interest and identifying the Stores in which you are expressing such interest ~~at~~to:

(A)     ~~Evercore Group LLC ("**Evercore**"), by contacting~~ Stephen Goldstein and Paul Billyard of Evercore                                ~~Paul Billyard~~ (Stephen.Goldstein@Evercore.com and Billyard@Evercore.com); and~~/or~~

(B)~~     Hilco Real Estate LLC ("**Hilco**"), by contacting~~ Gregory Apter of Hilco (gapter@hilcoglobal.com).

If you are interested in purchasing any of the Stores' leases or designation rights associated with such leases, whether individually or in combination, you are encouraged to contact Gregory Apter of Hilco (gapter@hilcoglobal.com) no later than the Global Indication of Interest Date.

Note that submitting an indication of interest by the Global Indication of Interest Date does not obligate you to submit a formal bid or to participate in the sale process and does not exempt you from also having to submit a Qualified Bid by the Global Bid Deadline in order to participate in any subsequence Auction for the Stores on which you are indicating an interest, all as described below.  For the avoidance of doubt, the submission of an indication of interest by the Global Indication of Interest Date is not a prerequisite for Potential Bidders to submit a Qualified Bid by the Global Bid Deadline.

Access                                     to                                     Diligence

To participate in the diligence process and receive access to due diligence information with respect to any of the Stores, a party must submit to the Debtors or their advisors:

(A)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder(s); and

(B) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties (as defined below), that the interested party has a *bona fide* interest in consummating a sale transaction;

(B)    (C) sufficient information, as reasonably determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties, to reasonably determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure reasonably acceptable to the Debtors in their discretion); and.

(D) a non-binding written indication of interest identifying the Stores in which the party is interest in purchasing.

An interested party shall be a "**Potential Bidder**" if the Debtors determine in their reasonable discretion, after consultation with the Consultation Parties, that an interested party has satisfied the above requirements.  As soon as practicable, the Debtors will deliver to such Potential Bidder:  (A) an information package containing information and financial data with respect to the Stores in which such Potential Bidder has expressed an interest; and (B) access to the Debtors' confidential electronic data room concerning the Stores (the "**Data Room**").

Once an interested party is deemed a Potential Bidder, its identity may, in the Debtors' discretion, be disclosed to the Stalking Horse Bidders.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

Due Diligence

Until the Global Bid Deadline (as defined below), the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be initially directed to:

(A)     Paul Billyard and Will Jurist of Evercore (Billyard@Evercore.com and William.Jurist@Evercore.com) if you are interested in purchasing any of the Stores as a going concern; and

(BC)   Gregory Apter of Hilco Real Estate LLC (gapter@hilcoglobal.com) if you are interested in purchasing any of the Stores as a going concern or any of the Stores' leases or designation rights associated with such leases; or

(CB)   Weil at APDiligence@weil.com.

The Debtors will simultaneously distribute via the Data Room in written form any additional diligence materials not previously provided to the Stalking Horse Bidders or any other Potential Bidder to all Potential Bidders for the Stores to which such diligence materials relate (including, if applicable, the Stalking Horse Bidders) and the Consultation Parties.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder (as defined below) or (B) these Global Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Stores to any person or entity who is not a Potential Bidder or a Consultation Party or who does not comply with the participation requirements set forth above.

## Auction Qualification Procedures

Global Bid Deadline

A Potential Bidder that desires to make a bid on one or more Stores shall deliver written and electronic copies of its bid in both PDF and MS-WORD format to the Notice Parties so as to be received no later than **September 11, 2015 at 5:00 p.m. (Eastern Time)** (the "*Global Bid Deadline*"); provided that the Debtors may extend the Global Bid Deadline without further Order of the Bankruptcy Court, subject to providing notice to all Potential Bidders and the Consultation Parties.

**Any party that does not submit a bid by the Global Bid Deadline will not be allowed to (A) submit any offer after the Global Bid Deadline, or (B) participate in any Auction;** provided that the foregoing shall not preclude the Debtors from marketing to any person, or auctioning, or any parties from bidding on, any Stores not included in the Auction after the Global Bid Deadline, including pursuant to the Tier IIDiscrete Sale and Lease Rationalization Procedures.

<u>Form and Content of Qualified Bid</u>

A bid is a signed document from a Potential Bidder received by the Global Bid Deadline that identifies the purchaser by its legal name (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of submitting bids or consummating a sale transaction), and any other party that will be participating in connection with the bid or the sale transaction, and includes, at a minimum, the following information (each, a "**Bid**"):

A. <u>Proposed Stores and Valuation</u>.  Each Bid must clearly identify and list the particular Stores, additional assets (such as inventory or prescriptions) and liabilities that the Potential Bidder seeks to acquire, whether individually, in combination or in connection with a Stalking Horse Store Package.  The Bid must identify, on a per Store basis, the valuations, in U.S. dollars, that the Potential Bidder associates with each of those Stores, and a description of any significant assumptions on which such valuations are based.  To the extent the Bid proposes to purchase additional assets associated with the Stores, such as inventory or prescriptions, the Bid shall clearly identify the value, in U.S. dollars, associated with such assets.

B. <u>Marked Agreement</u>.  Each Bid must include a copy of an asset purchase agreement reflecting the terms and conditions of its Bid, which agreement must be marked to show any proposed amendments and modifications to the form of purchase agreement posted by the Debtors in the Data Room (the "**Marked Agreement**").  <u>Bids for going concern sales shall be marked against the going concern form.  Bids for non-going concern sales shall be marked against the non-going concern form.</u>

C. <u>Unconditional Offer</u>.  A statement that the Bid is formal, binding and unconditional (except for those conditions expressly set forth in the applicable Marked Agreement) and is not subject to any due diligence or financing contingency and is irrevocable until the first business day following the closing of the proposed sale transaction, except as otherwise provided in these Global Bidding Procedures.

D.     Form of Consideration.  Unless the Bid includes a credit bid (as described below), a statement confirming that the Bid is based on an all-cash offer, including, in the case of a bid for a Stalking Horse Store Package, sufficient cash consideration to pay any applicable Termination Payment (as such term is defined in the applicable Stalking Horse Agreement); provided that any Bid that includes a credit bid shall also include a cash component sufficient to pay, and earmarked exclusively for payment of, any applicable Termination Payment (if such Bid relates to a Stalking Horse Store Package) and shall comply with that certain Intercreditor Agreement, dated as of March 13, 2012 (as amended and supplemented, including pursuant to that certain Supplemental Senior Lien Intercreditor Agreement as amended) (the "**Intercreditor Agreement**"), including Section 5.06 thereof.

E.     Purchase Price; Minimum Bid.

1.     Stalking Horse Store Package.  Each Bid submitted in connection with a Stalking Horse Store Package (other than the Separable Store) must (i) be a Bid for all of the Stores contained in the applicable Stalking Horse Store Package, (ii) exceed the applicable cash purchase price by the Minimum Overbid Amount and the applicable Termination Payment, and (iii) propose an alternative transaction that provides substantially similar or better terms than the applicable Stalking Horse Bid, or (iv) propose to purchase the Stalking Horse Store Package for cash, and assume the corresponding liabilities on similar or better terms as the applicable Stalking Horse Bid.

2.     Bids for Individual Stores or Combination of Stores.  Bidders may also submit Bids for individual Stores or combinations of Stores, whether or not such Stores are included in a Stalking Horse Store Package (each a "**Partial Bid**").  The Debtors will determine, after consultation with the Consultation Parties, whether such Bids qualify as Qualified Bids. Generally, to be considered a Qualified Bid, the Debtors, in consultation with the Consultation Parties, must conclude that a Partial Bid, when taken together with other Partial Bids, satisfies the criteria for being a Qualified Bid.

If a Bid includes one or more Stores currently included in a Stalking Horse Store Package (other than a Separable Store), but is not for all of the Stores included in such Stalking Horse Store Package (not taking into account the Separable Store), such Bid will not be considered to be a "Qualified Bid" unless the Debtors receive one or more Bids for the remaining Stores in such Stalking Horse Store Package (other than the Separable Store) that, in combination with one or more other Bids, constitute a higher or better bid than the applicable Stalking Horse Bid.

F.    Employee and Labor Terms.  If the Bid contemplates a going concern sale of Stores, a statement of proposed terms for unionized and non-unionized employees, which shall include, alternatively:  (i) a statement that the Potential Bidder will assume the Affected Labor Agreements (as such term is defined in the applicable Stalking Horse Agreement) without modification; or (ii) if the Potential Bidder will not assume the Affected Labor Agreements without modification, a statement that the Potential Bidder will enter into good faith negotiations with each of the Affected Unions to enter into Modified Labor Agreements (as such terms are defined in the Purchase Agreement), including a term sheet, which shall be attached to the Marked Agreement, proposing post-closing work rules and conditions to be offered to unionized employees.  Such statement shall also include an acknowledgment of the requirements of sections 1113 and 1114 of the Bankruptcy Code and an agreement to use good faith reasonable best efforts to cooperate with the Debtors in ensuring compliance with any applicable provisions thereof in the event that mutually satisfactory Modified Labor Agreements have not been entered into between the Potential Bidder and the affected unions prior to the closing of a sale contemplated by these Global Bidding Procedures.

G.    Pension Plans.  Each Bid must state whether or not the Potential Bidder intends to assume (i) sponsorship of all or any part of or (ii) any of the potential liabilities associated with The Great Atlantic & Pacific Tea Company Pension Plan, New York-New Jersey Amalgamated Pension Plan for A&P Employees, Delaware County Dairies, Inc. Hourly Employees Pension Plan, and Pathmark Stores, Inc. Pension Plan (collectively, the "Pension Plans").  If the Potential Bidder does not intend to assume sponsorship or liabilities of the Pension Plans in full, each Bid must state whether the Potential Bidder intends to assume the assets and liabilities of the Pension Plan(s) relating to plan participants associated with the stores in the Bid.

H.    G.  Required Approvals.  A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings and (ii) of the Potential Bidder's plan and ability to obtain all governmental and regulatory approvals to operate the business and stores included in its Bid from and after closing the sale transaction and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals.  A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtor's legal counsel to discuss and explain Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Marked Agreement.

I.    ~~H.~~ No Entitlement to Expense Reimbursement or Other Amounts.  Except as provided with respect to a Stalking Horse Bidder in a Stalking Horse Agreement, a statement that the Bid does not entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

J.    Adequate Assurance Information.  Information supporting the Potential Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Potential Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Potential Bidders.

Notwithstanding the foregoing, if a Bid for a Store is submitted by the landlord under the real property lease for such Store, such landlord need not satisfy the requirements set forth in subsections F, G, and I above; provided that such landlord must satisfy the requirements set forth in subsection F above if its Bid contemplates a going concern purchase of the Store.

A Potential Bidder must also accompany its Bid with: (A) a Deposit (as defined below); (B) the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Potential Bidder; (C) written evidence of available cash, a commitment for financing (not subject to any conditions other than those expressly set forth in the applicable Marked Agreement) and such other evidence of ability to consummate the transaction contemplated by the applicable Marked Agreement, as acceptable in the Debtors' business judgment, in consultation with the Consultation Parties, including a description of each investor and any additional party or parties investing in the transaction included in the applicable bid and such party's financial position; (D) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed and to consummate the transaction contemplated by the Marked Agreement; (E) a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; (F) in the case of a Bid for a Stalking Horse Package, if the value of the Bid relative to the applicable Stalking Horse Agreement includes additional non-cash components (such as fewer contingencies than are in the Purchase Agreement), a detailed analysis of the value of any additional non-cash component of the Bid and back-up documentation to support such value; and (G) if the Bid includes an asset purchase agreement that is not executed, a signed statement that such Bid is irrevocable until the first business day following the closing or closings of the applicable sale transaction.

The submission of a Bid by the Global Bid Deadline shall constitute a binding and irrevocable offer to acquire the Stores or other assets reflected in such Bid.

<u>Deposit</u>

To qualify as a Qualified Bid (as defined below), each Bid (other than Stalking Horse Bids or credit bids) must be accompanied by a good faith cash deposit in the amount of ten percent (10%) of the proposed purchase price (the "**Deposit**") (or, other than for~~for any store included in a Stalking Horse Package (or, for any store not included in~~ a Stalking Horse Store Package, ~~another amount agreed to by the Debtors, after consultation with the Consultation Parties~~five percent (5%) of the proposed purchase price), to be deposited, prior to the Global Bid Deadline, with an escrow agent selected by the Debtors (the "*Escrow Agent*") pursuant to the escrow agreement to be provided by the Debtors to the Potential Bidders (the "*Escrow Agreement*").  To the extent the Stores included in a Qualified Bid are modified at or prior to the Auction, the Qualified Bidder must adjust its Deposit so that it equals ten percent (10%) of the proposed purchase price to be paid for each Store that is included in a Stalking Horse Store Package or five percent (5%) of the proposed purchase price to be paid for each Store not included in a Stalking Horse Store Package.

<u>Review of Bids</u>

The Debtors will deliver, within one (1) business day after receipt thereof, copies of all Bids to the Consultation Parties and, if such Bids include the assumption of any liabilities associated with the Pension Plans, the Pension Benefit Guaranty Corporation, 1200 K Street, N.W. (Attn: Thea Davis, davis.thea@pbgc.gov).

The Debtors will evaluate timely submitted bids, in consultation with the Consultation Parties, and may engage in negotiations with Potential Bidders who submitted Bids complying with the preceding paragraphs as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid.  In evaluating the bids, the Debtors may take into consideration the following non-binding factors:

1. the amount of the Bid and the Stores and number of Stores and other assets proposed to be acquired;

2. the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates after the payment of any applicable Termination Payment; <u>provided</u> that the Debtors shall review, evaluate and consider any Bids for a Stalking Horse Store Package (including a combination of Bids for a Stalking Horse Package) separate from and independent of, and shall not take into consideration when evaluating such Bid for a Stalking Horse Store Package, any other Stores that may be included in such Bid.

3. any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities through a credit bid;

4. any benefit to the Debtors' bankruptcy estates from any other assumption of liabilities, including any liabilities under the Pension Plans, the assumption of the sponsorship of all, any, or a portion of the Pension Plans;

5. 4. the value to be provided to the Debtors under the Bid for the Stores included therein (individually and in the aggregate);

6. 5. the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals;

7. the impact on employees, employee claims against the Debtors, Affected Labor Agreements, and whether the Potential Bidder has reached an agreement with the Affected Unions;

8. 6. the impact on employeestrade creditors and landlords; and

9. 7. any other factors the Debtors may reasonably deem relevant.

<u>Designation of Qualified Bidders</u>

A bid will be considered a "**_Qualified Bid_**," and each Potential Bidder that submits a Qualified Bid will be considered a "**_Qualified Bidder_**," if the Debtors determine, after consultation with the Consultation Parties, that such Bid:

(A)    meets the requirements set forth in these Global Bidding Procedures; and

(B)    satisfies the following:

    i.    with respect to a Bid for a Stalking Horse Store Package (excluding a Separable Store) or a combination of Bids that together cover at least all of the Stores included in a Stalking Horse Store Package (excluding a Separable Store), is higher or better than the transaction contemplated by the applicable Stalking Horse Agreement;

    ii.    with respect to a Bid for a Separable Store, is higher or better than the purchase price contemplated by the applicable Stalking Horse Agreement for the Separable Store; and/or

    iii.    with respect to a Store that is not included in a Stalking Horse Store Package, such Bid proposes a purchase price that would be acceptable to the Debtors for such Store or the Debtors believe should proceed to an auction for one or a combination of Stores included in such Bid, or such Bid is submitted by the landlord under the real property lease for such Store.

The Debtors reserve the right to work with any Bidder in advance of the Auctions to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

The Debtors may accept a single Bid or multiple Bids for non-overlapping Stores such that, if taken together, would otherwise meet the standards for a single Qualified Bid as to a Stalking Horse Store Package or any other Store or combination of Stores that the Debtors determine to auction (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the applicable Auction). If a Bid is received and, in the Debtors' judgment, after consultation with the Consultation Parties, it is not clear whether the Bid is a Qualified Bid, the Debtors may consult with the Potential Bidder and seek additional information in an effort to establish whether or not the Bid is a Qualified Bid.

The Debtors, after consultation with the Consultation Parties, will have the right to determine that a Bid is not a Qualified Bid if any of the following conditions are satisfied:

(A)     A Potential Bidder has failed to comply with reasonable requests for additional information from the Debtors;

(B)     If the Bid includes a credit bid, such Bid does not (i) include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected and unavoidable liens on any assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment) or fails to, (ii) comply with the terms of the Intercreditor Agreement or (iii) pay cash in the amount of any assets on which such bidder seeks to purchase, but does not have a valid, perfected and unavoidable lien; provided that any Bid for Stores included in the Stalking Horse Store Package that does not include a cash component sufficient to pay, and earmarked exclusively for payment of, an applicable Termination Payment shall not be a Qualified Bid; or

(C)     The terms of the Bid are burdensome or conditional in view of the proposed purchase price or, in the case of a Bid or combination of Bids for a Stalking Horse Store Package, are materially more burdensome or conditional than the terms of the applicable Stalking Horse Agreement, and are not offset by a material increase in purchase price, which determination (as made by the Debtors in consultation with the Consultation Parties) may take into consideration, among other things:

(i)     whether the Bid does not provide sufficient cash consideration to pay transfer taxes, cure costs or other cash costs of the transaction (including, if applicable, any Termination Payment);

(ii)     whether the Bid includes a non-cash instrument or similar consideration that is not freely marketable.

Each Stalking Horse Bidder is a Qualified Bidder and each Stalking Horse Bid is a Qualified Bid as to the applicable Stalking Horse Store Package. Should it decide to credit bid, each of (A) Wells Fargo Bank, National Association, as agent under

that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014, (B) Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014, (C) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured PIK Toggle Notes due 2017, dated as of March 13, 2012, or the majority holder of the Senior Secured PIK Toggle Notes due 2017, (D) U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured Convertible Notes due 2018, dated as of March 13, 2012, or the majority holder of the Senior Secured Convertible Notes due 2018, and (E) the DIP Lenders is a Qualified Bidder and any such credit bid will be considered a Qualified Bid to the extent such bid is received by the Global Bid Deadline, complies with the above requirements set forth under the heading "Designation of Qualified Bidders," complies with section 363(k) of the Bankruptcy Code, complies with the requirements for a credit bid, complies with section 5.06(d) of the Intercreditor Agreement and includes, to the extent the credit bid is for a Stalking Horse Store Package a cash component sufficient to pay, and earmarked exclusively for payment of, an applicable Termination Payment, and all obligations secured by senior liens on the applicable assets to be purchased.

### Pre-Auction Procedures

Determination and Announcement of Baseline Bids

In consultation with the Consultation Parties, the Debtors shall make a determination regarding:

(A)    the Store or combination of Stores to be auctioned by the Debtors, including a Stalking Horse Store Package (each, an "**Auction Package**"); provided that an Auction Package for a Stalking Horse Store Package may not include less than all of the Stores in such Stalking Horse Store Package, unless such Auction Package includes solely the Separable Store;

(B)    the Store or Stores included in an Auction Package;

(C)    the highest or best Qualified Bid (or collection of Qualified Bids) determine for each Auction Package (each, a "**Baseline Bid**" and such bidder or group of bidders, a "**Baseline Bidder**") to serve as the starting point at the Auction for such Auction Package;

(D)    which Bids have been determined to be Qualified Bids and the Auction Package applicable to such Qualified Bid (provided that the Debtors may permit a Qualified Bidder to bid on any other Auction Package);

(E)    the time and place for the auction (each, an **"Auction"**) of each such Auction Package.

On **September 1821, 2015, at 5:00 p.m. (Eastern Time)** (the "**Designation Deadline**"), the Debtors shall file notice of the foregoing on the Court's docket and publish such notice on the website of their claims and noticing agent and in the Data Room. As soon

as practicable but no later than two (2) days prior to the Auction, the Debtors will provide copies of each Baseline Bid to the Consultation Parties and the Stalking Horse Bidders.

Between the date the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the written consent of the Debtors, a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid for the Debtors, during the period that such Qualified Bid remains binding as specified herein; provided that any Qualified Bid may be improved at the Auction as set forth herein.

Except as provided in a Stalking Horse Agreement, the Debtors are under no obligation to (A) select any Baseline Bid, (B) conduct separate Auctions for any Stores, whether before or after selecting a Baseline Bid, or (C) sell the Separable Store separate and apart from the applicable Stalking Horse Agreement.  Notwithstanding anything to the contrary contained herein, the Debtors may elect, in their reasonable discretion, and after consultation with the Consultation Parties, to adjourn any Auction.

<u>Failure to Receive Two or More Qualified Bids</u>

With respect to each Stalking Horse Store Package, if no Qualified Bid other than the one submitted by the applicable Stalking Horse Bidder (including, if applicable, a Separable Store) is received by the Global Bid Deadline, the Debtors will not conduct the Auction for that Stalking Horse Store Package (including the Separable Store), and shall file and serve, **by September 15, 2015 at 4:00 p.m. (Eastern Time),** a notice indicating that the Auction has been cancelled with respect to such Stalking Horse Store Package, that the applicable Stalking Horse Bidder is the Successful Bidder as to such Stalking Horse Store Package and that the Sale Hearing as to the applicable Stalking Horse Bidder will be conducted on **September ~~22~~21, 2015, at 10:00 a.m. (Eastern Time)**.

With respect to Stores not included a Stalking Horse Store Package, if only one Qualified Bid is received by the Global Bid Deadline, the Debtors may, after consultation with the Consultation Parties, determine to consummate a sale transaction with a Qualified Bidder (to the extent one is received) and shall file and serve a notice identifying the Qualified Bidder, the terms of the Qualified Bid, and notice of the sale hearing applicable to such Qualified Bid.

Except as provided in a Stalking Horse Agreement, nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.

**The Sale Hearing and Sale Order**

At one or more hearings before the Bankruptcy Court (each, a "***Sale Hearing***"), the Debtors will seek the entry of orders authorizing and approving, *inter alia*, the applicable sale transactions (each, a "***Sale Order***").  Each Sale Order shall authorize and approve the applicable sale transaction:

(A)     if no other Qualified Bid (which, for purposes of this subparagraph includes a combination of Bids that together would constitute a Qualified Bid for the Stores in such Stalking Horse Package (not taking into account the Separable Store)) is received by the Debtors in respect of a particular Stalking Horse Store Package, to the applicable Stalking Horse Bidder that submitted a bid for such package pursuant to the terms and conditions set forth in the Applicable Stalking Horse Agreement;

(B)     if another Qualified Bid is received by the Debtors in respect of a particular Stalking Horse Store Package, to the applicable Stalking Horse Bidder that submitted a Qualified Bid for such package and/or such other Qualified Bidder(s) that submitted a Qualified Bid for such package as the Debtors, in the exercise of their business judgment and, after consultation with the Consultation Parties, determine, following an auction, to have made the highest or best bid, consistent with these Global Bidding Procedures; or

(C)     with respect to any Stores not included in a Stalking Horse Store Package (or a Separable Store) that is auctioned pursuant to these Procedures, to the highest or best bidder(s) for one or more Stores.

In the Debtors' reasonable discretion (after consultation with the Consultation Parties and the applicable Stalking Horse Bidder or, if an Auction is held, the Successful Bidder and the Consultation Parties), any Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties, including by (A) an announcement of such adjournment at the Sale Hearing or at the Auction or (B) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in a Stalking Horse Agreement.

## Auction Procedures

If there are two or more Qualified Bids for an Auction Package, the Debtors may conduct one or more Auctions for such Auction Package on **September 24-25, 2015 at 9:30 a.m. (Eastern Time)**, at a location to be determined and announced, or such other time as the Debtors, after consultation with the Baseline Bidder and the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids. Only a Qualified Bidder will be eligible to participate at an Auction, subject to such limitations as the Debtors may impose in good faith. Professionals and/or other representatives of the Consultation Parties will be permitted to attend and observe an Auction.

At any Auction, Qualified Bidders (including the Stalking Horse Bidders) will be permitted to increase their bids. For each Baseline Bid, bidding will start at the purchase price and terms proposed in the applicable Baseline Bid, and will proceed thereafter in increments of 2% of the applicable Baseline Bid (a "**Minimum Overbid Amount**"). If a Stalking Horse Bidder bids at an Auction for its Stalking Horse Store Package, that Stalking

Horse Bidder will be entitled to a "credit" in the amount of the applicable Termination Payment to be counted towards its bid such that the cash and other consideration proposed by the Stalking Horse Bidder plus the Termination Payment "credit" must exceed the most recent bid by at least the Minimum Overbid amount.

The Debtors may adopt rules, after consultation with the Consultation Parties, for an Auction at any time that the Debtors reasonably determine to be appropriate to promote the goals of the Bidding Process and are not inconsistent with these Global Bidding Procedures. At the start of an Auction, the Debtors shall describe the terms of the applicable Baseline Bid. Any rules adopted by the Debtors will not unilaterally modify any of the terms of a Stalking Horse Agreement (as may be consensually modified at any Auction) without the consent of the applicable Stalking Horse Bidder. Any rules developed by the Debtors will provide that all bids in a particular Auction will be made and received in one room, on an open basis, and all other bidders participating in that Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to all other bidders participating in that Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other bidders throughout the entire Auction. Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction.

The Debtors reserve the right to and may, after consultation with the Consultation Parties, reject at any time before entry of the relevant Sale Order any bid that, in the Debtors' judgment, is: (A) inadequate or insufficient; (B) not in conformity with the requirements of the Bankruptcy Code, these Global Bidding Procedures or the terms and conditions of the applicable sale transaction; or (C) contrary to the best interests of the Debtors and their estates, except that if a Stalking Horse Bidder's bid as reflected in a Stalking Horse Agreement is the only Qualified Bid for a Stalking Horse Store Package, the foregoing provisions of this sentence will be inoperative. In doing so, the Debtors may take into account the factors set forth above regarding the form and content of Qualified Bids and the Debtors' review of bids. No attempt by the Debtors to reject a bid under this paragraph will modify any rights of the Debtors or any Stalking Horse Bidder under a Stalking Horse Agreement (as may be consensually modified at any Auction).

Prior to the conclusion of an Auction, the Debtors, after consultation with the Consultation Parties, will: (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating a sale transaction; provided that in reviewing and evaluating the bids, the Debtors shall review, evaluate and consider any Bids for a Stalking Horse Package (including a combination of Bids for a Stalking Horse Package) separate from and independent of, and shall not take into consideration when evaluating such bid for a Stalking Horse Package, any other Stores or related assets that may be included in such bid; (B) determine the highest or best offer or collection of offers for an Auction Package (as applicable to each Auction Package, a "***Successful Bid***"); (C) except as provided in a Stalking Horse Agreement, determine which Qualified Bid is the next highest or best bid for such Auction Package (as applicable to each Auction Package, the "***Back-Up Bid***"); and (D) notify all Qualified Bidders participating in an Auction, prior to its conclusion,

the successful bidder for such Auction Package (the "**Successful Bidder**"), the amount and other material terms of the Successful Bid and the identity of the party that submitted the Back-Up Bid for such Auction Package (the "**Back-Up Bidder**").

Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding or the Auction.

## Post-Auction Process

A Successful Bidder shall, within one (1) business day after the close of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. Promptly following the submission of such documentation, the Debtors shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder. The Successful Bid may not be assigned to any party without the consent of the Debtors after consultation with the Consultation Parties.

Except to the extent otherwise provided in a Stalking Horse Purchase Agreement, the Back-Up Bid shall remain open and irrevocable until the earliest to occur of (A) ~~120~~ninety (90) days after the completion of the Auction, but in no event later than January 31, 2016, or such other date as may be provided for in an applicable Stalking Horse Agreement, (B) the consummation of the transaction with the Successful Bidder, or (C) the release of such bid by the Debtors (such date, the "**Back-Up Bid Expiration Date**"). If the transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed the Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid.

At a Sale Hearing, the Debtors will present a Successful Bid to the Bankruptcy Court for approval.

Unless otherwise required pursuant to the Debtors' fiduciary duties, the Debtors shall not consider any bids submitted after the conclusion of the Auction.

## Treatment and Return of Deposits

Potential Bidders

Within three (3) business days after the Designation Deadline, the Escrow Agent shall return to each Potential Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Potential Bidder's Deposit, plus any interest accrued thereon. Upon the authorized return of such Potential Bidder's Deposit, the bid of such Potential Bidder shall be deemed revoked and no longer enforceable.

Qualified Bidders

The Deposit of a Qualified Bidder will be forfeited to the Debtors if (A) the applicable Qualified Bidder attempts to modify, amend or withdraw its Qualified Bid, except as permitted by these Global Bidding Procedures, during the time the Qualified Bid remains

binding and irrevocable under these Global Bidding Procedures, or (B) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate the transaction according to these Global Bidding Procedures and the terms of the applicable transaction documents with respect to the Successful Bid.  The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by the Escrow Agent of a joint written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

With the exception of the Deposit of a Successful Bidder and a Back-Up Bidder, the Escrow Agent shall return to any other Qualified Bidder any Deposit, plus any interest accrued thereon, three (3) business days after the execution by the Successful Bidder and the Debtors of the documentation memorializing the Successful Bid, but in no event later than seven (7) business days after the conclusion of a Sale Hearing.

Notwithstanding anything to the contrary herein, the good faith deposit provided by a Stalking Horse Bidder pursuant to a Stalking Horse Agreement (including any required return of such deposit) shall be governed by the terms and conditions of the applicable Stalking Horse Agreement.

Back-Up Bidder

The Escrow Agent shall return a Back-Up Bidder's Deposit, plus any interest accrued thereon, within three (3) business days after the occurrence of the applicable Back-Up Bid Expiration Date.

The Successful Bidder

The Deposit of a Successful Bidder shall be applied against the cash portion of the Purchase Price of such Successful Bidder upon the consummation of the transaction proposed in the applicable Successful Bid.

Joint Notice to Escrow Agent

The Debtors and, as applicable, the Potential Bidder, Qualified Bidder, and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent for the return of any Deposit, to the extent such return is required by these Global Bidding Procedures.  If either party fails to execute such written notice, the Deposit may be released by an order of the Bankruptcy Court.

**Notice and Consultation Parties**

Contact Parties

Information that must be provided to the "***Notice Parties***" under these Global Bidding Procedures must be provided to the following parties: (A) The Great Atlantic and Pacific Tea Company, Inc., 2 Paragon Drive, Montvale, New Jersey 07645 (Attn: Christopher W. McGarry and Matthew Bennett); (B) counsel to the Debtors, Weil, Gotshal & Manges

LLP ("*Weil*"), 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Garrett A. Fail, Esq. and Sunny Singh, Esq.); (C) Evercore Group, LLC, 55 East 52nd Street, New York, New York 10055 (Attn: Stephen Goldstein); and (D) Hilco Real Estate LLC, 5 Revere Dr., Suite 206, Northbrook, IL 60062 (Attn:  Greg Apter).

Consultation Parties

The term "*Consultation Parties*" as used in these Global Bidding Procedures shall mean: (A) the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "*Creditors' Committee*"); (B) Fortress ~~Investment Group~~Credit Corp., as agent under that certain Senior Secured Debtors-in-Possession Term Credit Agreement, (C) Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014; (D) Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014; (E) the majority holders of the Senior Secured PIK Toggle Notes due 2017; (F) the majority holders of the Senior Secured Convertible Notes due 2018; (G) The Yucaipa Companies, LLC and their affiliated funds; and (H) the ~~attorneys for the~~ United Food and Commercial Workers Union International.[1]

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Global Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

In the event that any Consultation Party or any member of the Creditors' Committee or an affiliate of any of the foregoing, submits a bid that is a Qualified Bid, any obligation of the Debtors to consult with the bidding party established under these Global Bidding Procedures will be waived, discharged and released without further action; provided that the bidding party will have the same rights as any other Potential Bidder set forth above, and will retain any rights it has under existing orders regarding debtor in possession financing and/or use of cash collateral (to the extent applicable).

If a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will continue to have Consultation Rights; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any confidential information regarding the sale of the Assets to such member.

---

[1] To the extent any of the secured Consultation Parties have been paid in full, such parties shall no longer be Consultation Parties for purposes of these procedures.

## Consent to Jurisdiction and Authority as Condition to Bidding

All Potential Bidders (including the Stalking Horse Bidders) shall be deemed to have (A) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to the Global Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale transaction, (B) waived any right to a jury trial in connection with any disputes relating to the Global Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale transaction, and (C) consented to the entry of a final order or judgment in any way related to the Global Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the sale transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Reservation of Rights

The Debtors reserve the right, in their reasonable discretion and subject to the exercise of their business judgment, after consultation with the Consultation Parties, to alter or terminate these Global Bidding Procedures, to waive terms and conditions set forth herein with respect to all potential bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors (except for the Buyer) at any time and without specifying the reasons therefor, in each case to the extent not materially inconsistent with these Global Bidding Procedures and/or the Global Bidding Procedures Order; provided further that the Debtors' exercise of their discretion in evaluating bids and administering the bidding and auction process does not permit, and shall not be construed as permitting, the Debtors to materially deviate from the procedures, terms, conditions and protections set forth in these Global Bidding Procedures and/or the Global Bidding Procedures Order.

## Schedule 1

Stalking Horse Store Packages

**76 Stores Included in Stalking Horse Bid of Acme Markets, Inc.**

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 1 | 70927 | A&P | Wall Township | 2007 State Route 35 | NJ |
| 2 | 70205 | A&P | Yorktown | 100 Triangle Center | NY |
| 3 | 70620 | A&P | Midland Park | 137 Lake Street | NJ |
| 4 | 70677 | A&P | Mahwah | 125 Franklin Tnpk | NJ |
| 5 | 70408 | A&P | New Providence | 1260 Springfield Ave | NJ |
| 6 | 70233 | Superfresh | Philadelphia | 180 West Girard Ave | PA |
| 7 | 70787 | A&P | Thornwood | 610 Columbus Ave. | NY |
| 8 | 70479 | A&P | Fort Lee | 2160 Lemoine Ave | NJ |
| 9 | 70659 | A&P | Woodcliff Lake | 520 Chestnut Ridge Road | NJ |
| 10 | 70186 | A&P | Yonkers | 660 Mclean Ave | NY |
| 11 | 70107 | A&P | Mohegan Lake | 3105 East Main Street | NY |
| 12 | 70649 | A&P | Denville | 123-125 Main Street | NJ |
| 13 | 70640 | A&P | Jersey City | 125 18th Street | NJ |
| 14 | 72112 | Pathmark | Jersey City | 321 Stadium Plaza | NJ |
| 15 | 70639 | A&P | Allendale | 45 Demercurio Drive | NJ |
| 16 | 70784 | A&P | Croton on Hudson | 2005 Albany Post Rd. | NY |
| 17 | 70154 | A&P | Brewster | 1511 Rte 22 | NY |
| 18 | 70867 | A&P | Kenilworth | 801 Kenilworth Blvd | NJ |
| 19 | 70650 | A&P | South Plainfield | 907D Oak Tree Road | NJ |
| 20 | 70642 | A&P | Jefferson Township | 5774 Berkshire Valley Rd. | NJ |
| 21 | 70621 | A&P | Vernon | 530 Rt 515 Unit 1 | NJ |
| 22 | 70185 | A&P | Yonkers | 1233 Nepperhan Ave. | NY |
| 23 | 70821 | A&P | Little Silver | 507 Prospect Ave. | NJ |
| 24 | 70606 | A&P | Hoboken | 614 Clinton St | NJ |
| 25 | 70207 | A&P | Goldens Bridge | Rt 22 and Rt 138 | NY |
| 26 | 70167 | A&P | Hopewell Junction | 829 Route 82 | NY |
| 27 | 72181 | Pathmark | Elmwood Park | 58 Broad Way | NJ |
| 28 | 70768 | A&P | Bronxville | 12-14 Cedar Street | NY |
| 29 | 70864 | A&P | Montclair | 510 Valley Road | NJ |
| 30 | 70874 | Superfresh | Ocean City | 9507Coastal Hwy | MD |
| 31 | 70780 | A&P | Stamford | 1201 High Ridge Road | CT |
| 32 | 70773 | A&P | Bedford | 422 Old Post Road | NY |
| 33 | 72190 | Pathmark | Edgewater | 481 River Road | NJ |
| 34 | 70164 | A&P | Mahopac | 3 Village Center | NY |
| 35 | 70826 | A&P | Clark | 1060 Raritan  Road | NJ |
| 36 | 70208 | A&P | Millwood | 230 Saw Mill River Road | NY |
| 37 | 70908 | A&P | Ortley Beach | 5 Ortley Plaza | NJ |
| 38 | 70684 | A&P | Sussex | 455 Rt23 North | NJ |
| 39 | 70728 | A&P | Rye Brook | 261 South Ridge St. | NY |
| 40 | 70740 | A&P | Greenwich | 160 West Putnam Avenue | CT |
| 41 | 70763 | A&P | Briarcliff Manor | 1886 Pleasantville Road | NY |
| 42 | 70456 | A&P | Blairstown | 152 Route 94 | NJ |
| 43 | 70750 | A&P | Riverside | 1261 East Putnam Avenue | CT |

|    | Store | Banner | City | Address | State |
|----|-------|--------|------|---------|-------|
| 44 | 76710 | Pathmark | Philadelphia | 2101-41 Cottman Ave. | PA |
| 45 | 70766 | A&P | Eastchester | 777 White Plains Road | NY |
| 46 | 70664 | A&P | Park Ridge | 199 Kinderkamack Rd | NJ |
| 47 | 70786 | A&P | Greenburgh | 103 Knollwood Road | NY |
| 48 | 70189 | Superfresh | Haverton | 1305West Chester Pike | PA |
| 49 | 70153 | A&P | Shrub Oak | 1366 East Main Street | NY |
| 50 | 70761 | A&P | West New York | 55 Riverwalk Drive West | NJ |
| 51 | 70516 | A&P | New Rochelle | 23 Quaker Ridge Road | NY |
| 52 | 70094 | A&P | Pleasant Valley | Rte 44 & North Ave | NY |
| 53 | 70500 | A&P | New Canaan | 288 Elm Street | CT |
| 54 | 70626 | A&P | Tinton Falls | 990 Shrewsbury Ave | NJ |
| 55 | 72178 | Pathmark | Weehawken | 4100 Park Avenue | NJ |
| 56 | 70811 | A&P | Old Bridge | 3500 Route #9 | NJ |
| 57 | 72194 | Pathmark | Bergenfield | 80 New Bridge Road | NJ |
| 58 | 70471 | Superfresh | Manahawkin | 609 East Bay Avenue | NJ |
| 59 | 70391 | A&P | Saddle Brook | 75 Mayhill Street | NJ |
| 60 | 72186 | Pathmark | Newark | 281-295 Ferry Street | NJ |
| 61 | 70252 | Superfresh | Richboro | 800 2nd Street Pike | PA |
| 62 | 70584 | Superfresh | Wilmington | 1812 Marsh Rd | DE |
| 63 | 70730 | Superfresh | Philadelphia | 305 S. Fifth St. | PA |
| 64 | 70477 | Superfresh | Ocean City | 800 West Ave | NJ |
| 65 | 72587 | Pathmark | Ventnor | 5100 Wellington Avenue | NJ |
| 66 | 76725 | Pathmark | Philadelphia | 7700 Crittenden St | PA |
| 67 | 70747 | Superfresh | Philadelphia | 1001 South Street | PA |
| 68 | 70801 | A&P | Warrenville | 177 Washington Valley Rd. | NJ |
| 69 | 70559 | Superfresh | Rehoboth | 18578 Coastal Highway | DE |
| 70 | 72590 | Pathmark | Newark | 100 College Square | DE |
| 71 | 72586 | Pathmark | Wilmington | 4365 Kirkwood Highway | DE |
| 72 | 70474 | Superfresh | Wildwood | 2400 Delaware Avenue | NJ |
| 73 | 76585 | Pathmark | Boothwyn | 643 Conchester Highway | PA |
| 74 | 70293 | Superfresh | Wynnewood | 250 E Lancaster | PA |
| 75 | 70294 | Superfresh | Gladwynne | 1025 Youngsford Road | PA |
| 76 | 70588 | Superfresh | Newark | 401 New London Rd. | DE |

## 25 Stores Included in Stalking Horse Bid of The Stop & Shop Supermarket Company, LLC

|     | Store | Banner | City | Address | State |
| --- | ----- | ------ | ---- | ------- | ----- |
| 1   | 70226 | A&P      | Mt Kisco        | 195 North Bedford Rd      | NY |
| 2   | 72270 | Pathmark | South Orange    | 407 Valley Street         | NJ |
| 3   | 72633 | Pathmark | Franklin Square | 460 Franklin Avenue       | NY |
| 4   | 72608 | Pathmark | Greenvale       | 130 Wheatley Plaza        | NY |
| 5   | 72667 | Pathmark | Bronx           | 1720 Eastchester Road     | NY |
| 6   | 72647 | Pathmark | Bronx           | 2136 Bartow Avenue        | NY |
| 7   | 72619 | Pathmark | Brooklyn        | 625 Atlantic Avenue       | NY |
| 8   | 72638 | Pathmark | Brooklyn        | 2965 Cropsey Avenue       | NY |
| 9   | 72616 | Pathmark | Jamaica         | 134-40 Springfield Blvd   | NY |
| 10  | 72626 | Pathmark | Ozone Park      | 92-10 Atlantic Avenue     | NY |
| 11  | 72622 | Pathmark | Whitestone      | 31-06 Farrington Street   | NY |
| 12  | 70658 | Waldbaums | Long Beach     | 85 E. Park Ave.           | NY |
| 13  | 70465 | Waldbaums | Massapequa     | 702 Hicksville Road       | NY |
| 14  | 72625 | Pathmark | Seaford         | 4055 Merrick Road         | NY |
| 15  | 70260 | Waldbaums | Southampton    | 167 Main St. Jagger Lane  | NY |
| 16  | 70452 | Waldbaums | Baldwin        | 905 Atlantic Ave.         | NY |
| 17  | 70651 | Waldbaums | Howard Beach   | 156-01 Crossbay Blvd.     | NY |
| 18  | 70236 | Waldbaums | Huntington     | 60 Wall Street            | NY |
| 19  | 72685 | Pathmark | Staten Island   | 1351 Forest Avenue        | NY |
| 20  | 70257 | Waldbaums | Easthampton    | 67 Newtown Lane           | NY |
| 21  | 70616 | Waldbaums | Bell Harbor    | 112-15 Beach Channel Drive | NY |
| 22  | 72661 | Pathmark | Bronx           | 961 East 174th Street     | NY |
| 23  | 70632 | Waldbaums | Bay Terrace    | 213-15 26th Avenue        | NY |
| 24  | 70695 | A&P      | Closter          | 400 Demarest Avenue       | NJ |
| 25  | 72284 | Pathmark | Kinnelon        | 25 Kinnelon Road          | NJ |

## 17 Stores Included in Stalking Horse Bid of Key Food Stores Co-Operative, Inc.

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 1 | 59502 | Food Basics | Paterson | 465 Getty Ave | NJ |
| 2 | 70295 | Waldbaums | Flushing | 196-35 Horace Harding Expressway | NY |
| 3 | 70657 | Waldbaums | Bayside | 35-09 Francis Lewis Blvd | NY |
| 4 | 70669 | Waldbaums | Albertson | 1050 Willis Avenue | NY |
| 5 | 59504 | Food Basics | Glen Rock | 937 Lincoln Ave | NJ |
| 6 | 70655 | Waldbaums | Glen Head | 1-1 Park Plaza | NY |
| 7 | 70762 | A&P | Bronx | 5661 Riverdale Ave | NY |
| 8 | 70442 | Waldbaums | Howard Beach | 82-35 153rd Ave | NY |
| 9 | 36715 | Food Emporium | New York | 10 Union Sq 14th & Park | NY |
| 10 | 70749 | A&P | Harrison | 355 Halsted Ave | NY |
| 11 | 59524 | Food Basics | Fairview | 289 Bergen Blvd. | NJ |
| 12 | 70296 | Waldbaums | Brooklyn | 81-21 N Utrecht Ave. | NY |
| 13 | 70641 | Waldbaums | Jackson Heights | 75-55 31St Ave. | NY |
| 14 | 72637 | Pathmark | Brooklyn | 1525 Albany Avenue | NY |
| 15 | 70292 | Waldbaums | South Flatbush | 2424 Flatbush Avenue | NY |
| 16 | 70613 | Waldbaums | Glen Oaks | 259-01 Union Turnpike | NY |
| 17 | 70849 | Waldbaums | Rosebank | 375 Tompkins Ave. | NY |

## **Schedule 2**

Additional Stores

**Additional Stores**

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 1 | 19243 | Liquor | New Canaan | 282 Elm Street | CT |
| 2 | 19254 | Liquor | Ridgefield | 46B Danbury Rd. | CT |
| 3 | 70074 | A&P | Danbury | 1 Padanaram Rd | CT |
| 4 | 19129 | Liquor | Old Lyme | 28A Halls Rd (P.O. Box 491) | CT |
| 5 | 70951 | A&P | Mt Olive | 7 Naughright Rd | NJ |
| 6 | 70806 | A&P | Califon | 431 County Road 513 | NJ |
| 7 | 72280 | Pathmark | Montclair | 35 Lackawanna Plaza | NJ |
| 8 | 72198 | Pathmark | Fairlawn | 22-00 Maple Avenue | NJ |
| 9 | 59036 | Food Basics | East Paterson | 498 East 30th St | NJ |
| 10 | 72578 | Pathmark | Brick Twp. | 1930 Route 88 | NJ |
| 11 | 72223 | Pathmark | Newark | 167 Bergen Street | NJ |
| 12 | 72609 | Pathmark | New York | 160 East 125th Street | NY |
| 13 | 70611 | Waldbaums | Rocky Point | 245 Route 25A | NY |
| 14 | 72624 | Pathmark | Brooklyn | 1245 61St Street | NY |
| 15 | 72603 | Pathmark | New York | 300 West 145th Street | NY |
| 16 | 72679 | Pathmark | Staten Island | 100 Greaves Lane | NY |
| 17 | 72653 | Pathmark | Bethpage | 3901 Hempstead Turnpike | NY |
| 18 | 72649 | Pathmark | New Hyde Park | 2335 New Hyde Park Road | NY |
| 19 | 72646 | Pathmark | Shirley | 800 Montauk Highway | NY |
| 20 | 72652 | Pathmark | Massapequa | 941 Carmans Road | NY |
| 21 | 70298 | Waldbaums | Melville | 890 Walt Whitman Road | NY |
| 22 | 72614 | Pathmark | Patchogue | 399 Route 112 | NY |
| 23 | 70232 | Waldbaums | West Hampton | 70 Sunset Ave | NY |
| 24 | 70279 | Waldbaums | Merrick | 1686 Merrick Rd. | NY |
| 25 | 70241 | Waldbaums | N. Patchoque | 440 W. Sunrise Highway | NY |
| 26 | 72642 | Pathmark | Brooklyn | 1-37 12th Street | NY |
| 27 | 72634 | Pathmark | Brooklyn | 111-10 Flatlands Avenue | NY |
| 28 | 70263 | Waldbaums | Mattituck | Rt.25 And Factory Ave. | NY |
| 29 | 72600 | Pathmark | Brentwood | 101 Wicks Road | NY |
| 30 | 70240 | Waldbaums | Brooklyn | 2149 Ralph Ave | NY |
| 31 | 70235 | Waldbaums | Brooklyn | 3100 Ocean Ave | NY |
| 32 | 70275 | Waldbaums | College Point | 133-11 20th Avenue | NY |
| 33 | 70229 | Waldbaums | Ctr Moriches | 812 Montauk Hwy. | NY |
| 34 | 70699 | Waldbaums | Deer Park | 1960 Deer Park Ave. | NY |
| 35 | 72611 | Pathmark | East Rockaway | 492 East Atlantic Avenue | NY |
| 36 | 70617 | Waldbaums | Great Neck | 40 Great Neck Road | NY |
| 37 | 36703 | Food Emporium | New York | 1175 3rd Avenue | NY |
| 38 | 36711 | Food Emporium | New York | 1331 1st Avenue | NY |
| 39 | 36727 | Food Emporium | New York | 452 West 43 St. | NY |
| 40 | 36732 | Food Emporium | New York | 810 8th Ave | NY |

| 41 | 36707 | Food Emporium | New York | 969 Second Ave | NY |
| 42 | 36777 | Food Emporium | New York | 316 Greenwich St | NY |
| 43 | 36742 | Food Emporium | New York | 1066 3rd Avenue | NY |
| 44 | 36706 | Food Emporium | New York | 1450 3rd Avenue | NY |
| 45 | 36783 | Food Emporium | New York | 405 East 59th St. | NY |
| 46 | 36708 | Food Emporium | New York | 2415 Broadway | NY |
| 47 | 70662 | Waldbaums | Selden | 211 Middle Country Road | NY |
| 48 | 72678 | Pathmark | Staten Island | 2730 Arthur Kill Road | NY |
| 49 | 72682 | Pathmark | Staten Island | 2875 Richmond Avenue | NY |
| 50 | 70813 | Waldbaums | Tottenville | 6400 Amboy Road | NY |
| 51 | 70270 | Waldbaums | Whitestone | 153-01 10th Ave | NY |
| 52 | 72558 | Pathmark | Brookhaven | 5005 Edgemont Avenue | PA |
| 53 | 72569 | Pathmark | Glenolden | 140 North Mcdade Boulevard | PA |
| 54 | 72552 | Pathmark | Philadelphia | 330 Oregon Avenue | PA |
| 55 | 72550 | Pathmark | Philadelphia | 176-82 West Chelten Avenue | PA |
| 56 | 72522 | Pathmark | Philadelphia | 3399 Aramingo Avenue | PA |
| 57 | 19104 | Liquor | Bristol | 767 Pine Street | CT |
| 58 | 19110 | Liquor | Mystic | 25 Broadway Ave. | CT |
| 59 | 19119 | Liquor | Newington | 2400 Berlin Tpk. | CT |
| 60 | 19106 | Liquor | Newington | 40 Fenn Road | CT |
| 61 | 19246 | Liquor | Riverside | 1237 East Putnam Ave. | CT |
| 62 | 19121 | Liquor | Waterford | 117 Boston Post Rd | CT |
| 63 | 72593 | Pathmark | New Castle | 148 Sunset Boulevard | DE |
| 64 | 70586 | Superfresh | New Castle | 2044 New Castle Avenue | DE |
| 65 | 70888 | Superfresh | Ocean City | 12741 Ocean Gateway | MD |
| 66 | 70417 | A&P | Basking Ridge | 407 King George Road | NJ |
| 67 | 59506 | Food Basics | Belleville | 414 Main St. | NJ |
| 68 | 70936 | A&P | Belvidere | 525 East Route 46 | NJ |
| 69 | 70752 | A&P | Bloomfield | 19 Bellville Ave. | NJ |
| 70 | 70610 | A&P | Boonton | 550 Myrtle Ave | NJ |
| 71 | 70802 | A&P | Bricktown | 64 Brick Plaza | NJ |
| 72 | 70949 | A&P | Clinton | 49 Old Route 22 | NJ |
| 73 | 70515 | A&P | Edison | 1185 Amboy Ave | NJ |
| 74 | 72288 | Pathmark | Elizabeth | 211 Elmora Avenue | NJ |
| 75 | 70618 | A&P | Fairview | 425 Anderson Avenue | NJ |
| 76 | 70895 | A&P | Fanwood | 105 South Ave | NJ |
| 77 | 72450 | Pathmark | Garwood | 10 South Avenue | NJ |
| 78 | 72153 | Pathmark | Hackensack | 405 State Route 17 South | NJ |
| 79 | 37602 | Liquor | Hackettstown | 57 Route 46 | NJ |
| 80 | 37905 | Liquor | Haskell | 1069 Ringwood Ave | NJ |
| 81 | 72573 | Pathmark | Hazlet | 3020 Route 35 & Bethany Road | NJ |

| 82 | 72527 | Pathmark | Hopelawn | 95-101 New Brunswick Ave | NJ |
| 83 | 72224 | Pathmark | Irvington | 474-79 Lyons Avenue | NJ |
| 84 | 72114 | Pathmark | Jersey City | 420 Grand Street | NJ |
| 85 | 72261 | Pathmark | Landing | 175 Lakeside Boulevard & Center | NJ |
| 86 | 37993 | Liquor | Ledgewood | 1103 Howard Blvd | NJ |
| 87 | 70956 | A&P | Marlboro | 460 County Line Road Route 520 | NJ |
| 88 | 37872 | Liquor | Metuchen | 45 Pearl Street | NJ |
| 89 | 72436 | Pathmark | Middlesex | 242 Lincoln Boulevard | NJ |
| 90 | 70924 | A&P | Navesink | 1002 Rte 36 | NJ |
| 91 | 59512 | Food Basics | North Bergen | 1425 Kennedy Blvd. | NJ |
| 92 | 70887 | A&P | North Brunswick | 510 Milltown Road | NJ |
| 93 | 70441 | A&P | Old Tappan | 216 Old Tappan Rd | NJ |
| 94 | 37995 | Liquor | Palisade Park | 534 Bergen Blvd. | NJ |
| 95 | 72282 | Pathmark | Parsippany | 1157 Route 46 East | NJ |
| 96 | 59501 | Food Basics | Passaic | 514 Van Houten Ave. | NJ |
| 97 | 70638 | A&P | Pompton Lakes | 47 Wanaque Avenue | NJ |
| 98 | 37866 | Liquor | Pt Pleasant | 1205 Richmond Ave | NJ |
| 99 | 72299 | Pathmark | Ramsey | 10 Triangle Plaza - Lake Road Ext. | NJ |
| 100 | 70688 | A&P | Randolph | 148 Center Grove Road | NJ |
| 101 | 37814 | Liquor | Summit | 23 Summit Ave | NJ |
| 102 | 70807 | A&P | Washington | 459 Route 31 South | NJ |
| 103 | 70439 | A&P | Washington Township | 315 Pascack Rd | NJ |
| 104 | 70668 | A&P | Wayne | 560 Valley Road | NJ |
| 105 | 70685 | A&P | West Milford | 1938 Union Valley Road | NJ |
| 106 | 37661 | Liquor | Westwood | 30 Irvington Ave | NJ |
| 107 | 72580 | Pathmark | Woodbridge | 1600 St Georges Avenue | NJ |
| 108 | 70701 | A&P | Woodland Park | 1730 Route 46 West | NJ |
| 109 | 72286 | Pathmark | Woodport | 757 Rt. 15 | NJ |
| 110 | 72602 | Pathmark | Bayshore | 2060 Sunrise Highway | NY |
| 111 | 70203 | Waldbaums | Commack | 84 Jericho Tpke | NY |
| 112 | 72664 | Pathmark | Dix Hills | 683 Old Country Road | NY |
| 113 | 70434 | Waldbaums | East Meadow | 1530 Front Street | NY |
| 114 | 70277 | Waldbaums | East Setauket | 4054 Nesconset Highway | NY |
| 115 | 70223 | Waldbaums | Garden City | 2475 Jericho Turnpike | NY |
| 116 | 70217 | Waldbaums | Greenlawn | 777 Pulaski Road | NY |
| 117 | 70769 | A&P | Hastings | 87 Main Street | NY |
| 118 | 70214 | Waldbaums | Hauppauge | 1236 Veterans Highway | NY |
| 119 | 72641 | Pathmark | Holbrook | 5801 Sunrise Highway | NY |
| 120 | 72639 | Pathmark | Islip | 155 Islip Avenue | NY |
| 121 | 70289 | Waldbaums | Jericho | 336 North Broadway | NY |
| 122 | 70003 | A&P | Lagrange | 1642 Route 82 | NY |
| 123 | 70251 | Waldbaums | Lindenhurst | 50 E. Hoffman | NY |
| 124 | 70151 | A&P | Mamaroneck | 805 Mamaroneck Ave | NY |
| 125 | 70256 | Waldbaums | Massapequa | 5508 Sunrise Hwy | NY |
| 126 | 72292 | Pathmark | Nanuet | 195 Rockland Center East Rt 59 | NY |

| | | | | | |
|---|---|---|---|---|---|
| 127 | 72615 | Pathmark | North Babylon | 1251 Deer Park Avenue | NY |
| 128 | 70288 | Waldbaums | Oakdale | 4560 Sunrise Hwy | NY |
| 129 | 70126 | A&P | Patterson | 3101 Route 22 | NY |
| 130 | 70194 | A&P | Peekskill | 20 Welcher Ave | NY |
| 131 | 72297 | Pathmark | Port Chester | 130 Midland Avenue | NY |
| 132 | 72604 | Pathmark | Port Jeff.Sta. | 5145 Nesconset Highway | NY |
| 133 | 70192 | A&P | Scarsdale | 668 Central Park Avenue | NY |
| 134 | 72298 | Pathmark | Scarsdale | 2540 Central Park Avenue | NY |
| 135 | 72171 | Pathmark | Staten Island | 2660 Hylan Avenue | NY |
| 136 | 70601 | Waldbaums | Stony Brook | 2162 Nesconset Highway | NY |
| 137 | 19918 | Liquor | Unclassified | 1175 Third Ave Suite A | NY |
| 138 | 70794 | A&P | Valley Cottage | 14 Lake Ridge Plaza | NY |
| 139 | 72644 | Pathmark | West Babylon | 531 Montauk Highway | NY |
| 140 | 72293 | Pathmark | Yonkers | 1757 Central Park Avenue | NY |
| 141 | 72528 | Pathmark | Cheltenham | 1000 Easton Road | PA |
| 142 | 72529 | Pathmark | Fairless Hills | 500 Lincoln Highway | PA |
| 143 | 70718 | Superfresh | New Hope | 323 West Bridge Street | PA |
| 144 | 59530 | Food Basics | Philadelphia | 15501 Bustleton Ave. | PA |
| 145 | 70982 | Superfresh | Philadelphia | #N/A | PA |
| 146 | 59510 | Food Basics | Philadelphia | 8920 Frankford Avenue | PA |
| 147 | 72556 | Pathmark | Philadelphia | 4160 Monument Road | PA |
| 148 | 72553 | Pathmark | Philadelphia | 8700 Frankford Avenue | PA |
| 149 | 72532 | Pathmark | Philadelphia | 3021 Grays Ferry Avenue | PA |
| 150 | 72557 | Pathmark | Philadelphia | 2900 N. Broad St. & Glenwood Ave. | PA |
| 151 | 72568 | Pathmark | Upper Darby | 421 S. 69Th Street | PA |
| 152 | 59503 | Food Basics | Brooklyn | 2185 Coyle Street | NY |
| 153 | 72610 | Pathmark | New York | 410 West 207th Street | NY |

**Exhibit 2**

Global Sale Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
In re                                    :
                                         :        Chapter 11
THE GREAT ATLANTIC & PACIFIC TEA         :
COMPANY, INC., *et al.*,                 :        Case No. 15-23007 (RDD)
                                         :
                Debtors.[1]              :        (Jointly Administered)
----------------------------------------------------------x

## NOTICE OF SALE OF ~~A~~ SUBSTANTIALLY ALL ASSETS

The Great Atlantic & Pacific Tea Company, Inc. and its affiliates identified in the footnote below (collectively, the "Debtors") are seeking to sell or assign substantially all of their stores, leases, and related assets (the "Stores"), including stores operating under the following banners: A&P, Waldbaum's, SuperFresh, Pathmark, Food Basics, The Food Emporium, Best Cellars, and A&P Liquors.

Three parties have already submitted binding bids (the "Bids") for a total of 120 Stores. Each Bid remains subject to higher and better offers. **A list of the Stores included in each Bid is attached as Exhibit A.**

**A list of the Debtors' 176 other Stores is attached as Exhibit B.**

By order, dated ~~[——]~~August 10, 2015 (the "Bid Procedures Orders"), the Bankruptcy Court approved certain "Bid Procedures" that govern the sale of all of the Debtors' Stores to the highest or best bidders.

The Debtors have requested the Bankruptcy Court enter orders (the "Sale Orders"), which provide, among other things, for the sale of the Stores free and clear of liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by successful bidders of certain liabilities. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned.

Copies of the Asset Purchase Agreements, the Bid Procedures Order, the Bid Procedures, and the proposed Sale Orders are available upon request to the Debtors' noticing agent, Prime

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).

Clerk, at (844) 239-9273 or apinfo@primeclerk.com, and are available for download at https://cases.primeclerk.com/aptea.

**ANY INTERESTED BIDDER SHOULD CONTACT THE DEBTORS' ADVISORS AT:**

**Evercore Group LLC**

Paul Billyard at 212-857-3150, billyard@evercore.com

Will Jurist at 212-849-3637, William.jurist@evercore.com

**Hilco Real Estate LLC**

Gregory Apter at gapter@hilcoglobal.com

Matt Tabloff at mtabloff@hilcoglobal.com

**PLEASE TAKE NOTE OF THE FOLLOWING IMPORTANT DEADLINES:**

- The **deadline to submit a bid** for one or more Stores is **September 11, 2015 at 5:00 p.m. (ET)**. ~~A bid must include a deposit in the amount of ten percent (10%) of the proposed purchase price.~~ The failure to abide by the procedures and deadlines set forth in the Bid Procedures Order and the Bid Procedures may result in the denial of your bid.

- The deadline to lodge an objection with the Bankruptcy Court to the proposed sale of the Stores ~~is **September 11, 2015 at 5:00 p.m. (ET)**~~ (the "Sale Objection Deadline") ~~.~~ is:

  o **September 11, 2015 at 5:00 p.m. (ET)** for the 120 stores included in the current Bids; and

  o **October 2, 2015 at 4:00 p.m. (ET)** for any of the 176 stores not included in the current Bids.

- Objections must be filed and served in accordance with the Bid Procedures Order.

- Auctions for Stores have been scheduled for **September 24 and 25, 2015 at 9:30 a.m. (ET)**.

- The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sales on:

  o **September ~~22~~21**, 2015 at 10:00 a.m. (Eastern Time) if a Bid is the only Qualified Bid (as such term is defined in the Bid Procedures) received; and/or

  o **October ~~1~~7**, 2015 at 10:00 a.m. (Eastern Time) if more than one Qualified Bid (as such term is defined in the Bidding Procedures) is received and an Auction is conducted.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE SALE**

**MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE ASSET PURCHASE AGREEMENTS (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THE STORES AND ASSUMPTION AND ASSIGNMENT OF STORE LEASES, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

Dated _____, 2015

_____

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*

## Exhibit 3

Global Publication Sale Notice

[Form to be provided.]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                    :
                                                         :        **Chapter 11**
**THE GREAT ATLANTIC & PACIFIC TEA**                     :
**COMPANY, INC.,** *et al.,*                             :        **Case No. 15-23007 (RDD)**
                                                         :
                    **Debtors.**                          :        **(Jointly Administered)**
------------------------------------------------------------x

## NOTICE OF SALE OF SUBSTANTIALLY ALL ASSETS

The Great Atlantic & Pacific Tea Company, Inc. and its affiliates identified below (collectively, the "Debtors") are seeking to sell or assign substantially all of their stores, leases, and related assets (the "Stores"), including stores operating under the following banners: A&P, Waldbaum's, SuperFresh, Pathmark, Food Basics, The Food Emporium, Best Cellars, and A&P Liquors.

Three parties have already submitted binding bids (the "Bids") for a total of 120 Stores.  Each Bid remains subject to higher and better offers.

By order, dated August 10, 2015 (the "Bid Procedures Orders"), the Bankruptcy Court approved certain "Bid Procedures" that govern the sale of all of the Debtors' Stores to the highest or best bidders.

The Debtors have requested the Bankruptcy Court enter orders (the "Sale Orders"), w hich provide, among other things, for the sale of the Stores free and clear of liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by successful bidders of certain liabilities.

Copies of the Asset Purchase Agreements, the Bid Procedures Order, the Bid Procedures, and the proposed Sale Orders are available upon request to the Debtors' noticing agent, Prime Clerk, at (844) 239-9273 or apinfo@primeclerk.com, and are available for download at https://cases.primeclerk.com/aptea.

**ANY INTERESTED BIDDER SHOULD CONTACT THE DEBTORS' ADVISORS AT:**

| **Evercore Group LLC** | **Hilco Real Estate LLC** |
|---|---|
| Paul Billyard at 212-857-3150, billyard@evercore.com | Gregory Apter at gapter@hilcoglobal.com |
| Will Jurist at 212-849-3637, William.jurist@evercore.com | Matt Tabloff at mtabloff@hilcoglobal.com |

**PLEASE TAKE NOTE OF THE FOLLOWING IMPORTANT DEADLINES:**

- The **deadline to submit a bid** for one or more Stores is **September 11, 2015 at 5:00 p.m. (ET)**.  The failure to abide by the procedures and deadlines set forth in the Bid Procedures Order and the Bid Procedures may result in the denial of your bid.

- The deadline to lodge an objection with the Bankruptcy Court to the proposed sale of the Stores (the "Sale Objection Deadline") is:

  - **September 11, 2015 at 5:00 p.m. (ET)** for the 120 stores included in the current Bids; and

  - **October 2, 2015 at 4:00 p.m. (ET)** for any of the 176 stores not included in the current Bids.

- Objections must be filed and served in accordance with the Bid Procedures Order.

- Auctions for Stores have been scheduled for **September 24 and 25, 2015 at 9:30 a.m. (ET)**.

- The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sales on:

  - **September 21, 2015 at 10:00 a.m. (Eastern Time)** if a Bid is the only Qualified Bid (as such term is defined in the Bid Procedures) received; and/or

  - **October 7, 2015 at 10:00 a.m. (Eastern Time)** if more than one Qualified Bid (as such term is defined in the Bidding Procedures) is received and an Auction is conducted.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE SALE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE ASSET PURCHASE AGREEMENTS (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THE STORES AND ASSUMPTION AND ASSIGNMENT OF STORE**

**LEASES, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

**LIST OF DEBOTRS:**

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).

**<u>Exhibit 4</u>**

Cure Notice

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                             :          **Chapter 11**
                                                  :
**THE GREAT ATLANTIC & PACIFIC TEA**              :          **Case No. 15-23007 (RDD)**
**COMPANY, INC.,** *et al.,*                       :
                                                  :          **(Jointly Administered)**
                      Debtors.[21]                :
-------------------------------------------------------------x

### NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

The Great Atlantic & Pacific Tea Company, Inc. and its chapter 11 affiliates identified in the footnote below (collectively, the "Debtors") are seeking to assume and assign substantially all of their executory contracts and unexpired leases in connection with the sale of substantially all of their stores (the "Stores"), including Stores operating under the following banners: A&P, Waldbaum's, SuperFresh, Pathmark, Food Basics, The Food Emporium, Best Cellars, and A&P Liquors. Three parties (the "Bidders") have already submitted binding bids (the "Bids") for a total of 120 Stores, and the Debtors are seeking Court approval of these Bids (or such higher and better bids) pursuant to a motion, dated _____, 2015 (Docket No. __).

**You are receiving this Notice because you may be a party to an executory contract or unexpired lease that is proposed to be assumed and assigned to the Bidders (collectively, the "Transferred Contracts"), or to such other bidders that submit higher or better offers for the Stores.**

The current Bidders are: Acme Markets, Inc.; The Stop & Shop Supermarket Company, LLC; and Key Food Stores Co-Operative, Inc. A list of the Transferred Contracts is attached hereto as Exhibit A. Copies of the Bids are available at https://cases.primeclerk.com/aptea or by calling 844-239-9273.

---

[21] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: The Great Atlantic & Pacific Tea Company, Inc. (0974); Montvale-Para Holdings, Inc. (2947); 2008 Broadway, Inc. (0986); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

The Debtors have determined the current amounts owing (the "Cure Costs") under each Transferred Contract and have listed the applicable Cure Costs on Exhibit A.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Transferred Contracts.

**To the extent that a non-Debtor party objects to (i) the assumption and assignment of such party's Transferred Contract or (ii) the applicable Cure Costs, the non-Debtor counterparty must file and serve an objection in accordance with the Global Bidding Procedures Order (Docket No. __), so as to be received by the parties specified therein by September 11, 2015 at 5:00 p.m. (Eastern Time).   Copies of the Global Bidding Procedures Order are available for download at https://cases.primeclerk.com/aptea.**

**If no objection is timely received, (i) the counterparty to a Transferred Contract shall be deemed to have consented to the assumption and assignment of the Transferred Contract and shall be forever barred from asserting any objection with regard to such assumption or assignment, and (ii) the Cure Costs set forth on Exhibit A attached hereto shall be controlling, notwithstanding anything to the contrary in any Transferred Contract, or any other document, and the counterparty to a Transferred Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Transferred Contract against the Debtors or the applicable transferee, or the property of any of them.**

If no Qualified Bids (as such term is defined in the Global Bidding Procedures), other than those of the Bidders, are received for the Stores, the Debtors will seek to assume and assign the Transferred Contracts at a hearing before the Honorable _____, in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (a "**Sale Hearing**") on _____, 2015, at ___ _.m. (Eastern Time), or at a later hearing, as determined by the Debtors.  A hearing regarding the Cure Costs, if any, may be adjourned at the discretion of the Debtors.

If one or more Qualified Bids are received, other than those of the Bidders, auctions for the Stores, including the Transferred Contracts, will be conducted, and the Sale Hearing will be held on _____, 2015, at ___ _.m. (Eastern Time).   After the auctions, the Debtors will file, but not serve, a notice that identifies the successful bidders for the Stores, including any Transferred Contracts.  If a successful bidder at an auction is not one of the Bidders, then the deadline to object to adequate assurance of future performance by a successful bidder will be extended to two (2) days prior to the Sale Hearing; provided that the deadline to object to the Cure Costs shall not be extended.

Dated: [        ], 2015

_____

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*

| Summary report: Litéra® Change-Pro TDC 7.5.0.112 Document comparison done on 8/7/2015 9:42:39 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://WEILDMS/WEIL/95424044/1 | |
| **Modified DMS:** iw://WEILDMS/WEIL/95424044/10 | |
| **Changes:** | |
| Add | 263 |
| Delete | 145 |
| Move From | 12 |
| Move To | 12 |
| Table Insert | 9 |
| Table Delete | 1 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 442 |

**EXHIBIT D**

**Revised Order Approving Discrete Sale and Lease Rationalization Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re                                          :
                                               :      **Chapter 11**
**THE GREAT ATLANTIC & PACIFIC TEA**           :
**COMPANY, INC.,** *et al.*,                   :      **Case No. 15-23007 (RDD)**
                                               :
        **Debtors.**[1]                        :      **(Jointly Administered)**
                                               :

-----------------------------------------------------------------x

**ORDER APPROVING DISCRETE SALE
AND LEASE RATIONALIZATION PROCEDURES**

Upon the motion (the "**Motion**")[2] of The Great Atlantic & Pacific Tea Company,

Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 363 and 365 of title 11

of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004 and 6006 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order approving the

Discrete Sale and Lease Rationalization Procedures attached hereto as **Exhibit 1**, all as more

fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in Exhibit 1 hereto.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided in accordance with the *Order*

*Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c), 2002 (m) and 9007 Implementing*

*Certain Notice and Case Management Procedures*, dated July 20, 2015 (ECF No. 62), and such

notice having been adequate and appropriate under the circumstances; and it appearing that no

other or further notice need be provided; and the Court having held a hearing to consider the

relief requested in the Motion (the "**Hearing**"); and upon the Declaration of Gregory S. Apter,

filed on July 31, 2015, the record of the Hearing, and all of the proceedings had before the Court;

and the Court having found and determined that the relief sought in the Motion and granted

herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and

that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted to the extent set forth herein; and it is

further

ORDERED that the Discrete Sale and Lease Rationalization Procedures attached

hereto as **Exhibit 1** are hereby approved; and it is further

ORDERED that the Small Transaction Notice, in substantially the form attached

hereto as **Exhibit 2** is hereby approved; and it is further

ORDERED that all buyers shall take assets sold or otherwise disposed of by the

Debtors pursuant to the Discrete Sale and Lease Rationalization Procedures approved by this

Order "as is" and "where is," without any representations or warranties from the Debtors as to

quality or fitness of such assets for either their intended or any particular purpose; and it is

further

3

ORDERED that all buyers shall take assets sold or otherwise disposed of by the

Debtors pursuant to the Discrete Sale and Lease Rationalization Procedures approved by this

Order free and clear of liens, claims and encumbrances, pursuant to section 363(f) of the

Bankruptcy Code, and that all such liens, claims and encumbrances shall attach to the proceeds

of the sale or disposition; and it is further

ORDERED that the ten-day stays of Bankruptcy Rules 6004(h) and 6006(d) are

hereby waived, and, notwithstanding Bankruptcy Rules 6004(h) or 6006(d) or otherwise, the

terms and conditions of this Order shall be immediately effective and enforceable upon its entry;

and it is further

ORDERED that all Small Transactions as to which no objection is timely filed

pursuant to Section IV.F of the Discrete Sale and Lease Rationalization Procedures (each, an

"**Unopposed Small Transaction**"), including the assumption and assignment of any executory

contracts or unexpired leases in connection therewith, shall be deemed authorized and approved

pursuant to the terms of this Order and no further or additional waivers of the ten-day stays of

Bankruptcy Rules 6004(h) or 6006(d) shall be required for the Debtors to consummate such

Small Transaction, subject to compliance with the notice and other procedures set forth in the

Discrete Sale and Lease Rationalization Procedures; and it is further

ORDERED that all buyers of assets pursuant to an Unopposed Small Transaction

consummated pursuant to this Order shall be deemed to have purchased such assets in "good

faith" within the meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to

all protections afforded thereby in the event of a reversal or modification on appeal of such

transaction; and it is further

4

ORDERED that, with respect to all Unopposed Small Transactions consummated

pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to

any particular purchaser, and an Unopposed Small Transaction consummated pursuant to the

Discrete Sale and Lease Rationalization Procedures approved by this Order shall be binding

upon and shall govern the acts of all persons and entities who may be required by operation of

law, the duties of their office, or contract, to accept, file, register or otherwise record or release

any documents or instruments, or who may be required to report or insure any title or state of

title in or to any of the property sold or otherwise disposed of pursuant to this Order, including

without limitation, all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of

state, and federal, state, and local officials, and each of such persons and entities is hereby

directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely

upon this Order in consummating the transactions contemplated hereby; and it is further

ORDERED that nothing in this Order shall be construed to prevent the Debtors, in

their sole discretion, from seeking this Court's approval at any time of any proposed sale or

disposition of any of their stores, leases or related assets after notice and an opportunity for a

hearing; and it is further

ORDERED that nothing in the Discrete Sale and Lease Rationalization

Procedures shall relieve the Debtors of their obligations under any applicable law; and it is

further

ORDERED that the time periods required by the Bankruptcy Rules and the Local

Rules for notice of any sale or auction of any of the Debtors' stores listed on Schedule 1 to the

Discrete Sale and Lease Rationalization Procedures (including certain leases and related assets)

5

or any procedures in connection therewith, are hereby shortened as set forth in the Discrete Sale

and Lease Rationalization Procedures; and it is further

ORDERED that the Debtors are authorized to take all action necessary to carry

out this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: _____, 2015
       White Plains, New York

                                _____
                                  UNITED STATES BANKRUPTCY JUDGE

WEIL:\95428776\9\50482.0004

## **Exhibit 1**

**Discrete Sale and Lease Rationalization Procedures**

### Discrete Sale and Lease Rationalization Procedures

On July 19, 2015, The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Debtors are seeking to sell as many of their 271 operating stores for the highest or best offers.  On [_____], 2015, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Global Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved certain procedures (the "**Global Bidding Procedures**") for the consideration of the highest or best offers for **all** of their stores and related assets (each, a "**Store**"), on the terms set forth in the Global Bidding Procedures.  Copies of the Global Bidding Procedures Order and the Global Bidding Procedures are available at https://cases.primeclerk.com/aptea.

Pursuant to the Global Bidding Procedures, the Debtors have received three stalking horse bids for the purchase of non-overlapping groups of 120 Stores total (collectively, the "**Stalking Horse Packages**").  The Global Bidding Procedures also include procedures that allow for the sale of any of the Debtors' 149 other operating Stores not included in the Stalking Horse Packages (including certain executory contracts, unexpired leases and assets related thereto, the "**Additional Stores**").  The Additional Stores are listed on **Schedule 1** hereto. Pursuant to the Global Bidding Procedures, an auction for the Stalking Horse Packages and any Additional Stores is scheduled to take place on September 24 and 25, 2015.

In addition to the Global Bidding Procedures, these Discrete Sale and Lease Rationalization Procedures apply to the Additional Stores, and may be utilized by the Debtors with respect to any Additional Stores as an alternative to the Global Bidding Procedures, as determined by the Debtors in their reasonable discretion.

If you are interested in purchasing any of the Stores as a going concern, whether individually, in combination or in connection with a Stalking Horse Package, you are encouraged to contact the Debtors' advisors, Evercore Group LLC ("**Evercore**") and Hilco Real Estate, LLC ("**Hilco**"), by **no later than August 28, 2015** (the "**Global Indication of Interest Date**") in writing, expressing your interest and identifying the Stores in which you are expressing such interest to Stephen Goldstein, Paul Billyard and Gregory S. Apter (Stephen.Goldstein@Evercore.com, Billyard@Evercore.com and gapter@hilcoglobal.com).

If you are interested in purchasing any of the Stores' leases or designation rights associated with such leases, whether individually or in combination, you are encouraged to contact Hilco, by contacting Gregory S. Apter (gapter@hilcoglobal.com) no later than the Global Indication of Interest Date.

The submission of an indication of interest by the Global Indication of Interest Date is not a prerequisite to enter into a transaction for an Additional Store pursuant to these procedures.

I.       *__Marketing Process and Due Diligence__*

The Debtors may provide confidential information regarding the Additional Stores to interested parties who execute a confidentiality agreement in form and substance satisfactory to the Debtors.

The Debtors may also require that interested parties submit:

A.       a statement identifying the Additional Stores sought to be acquired and the purchase price to be paid; and

B.       sufficient information, as reasonably determined by the Debtors, to allow the Debtors, in consultation with the Consultation Parties (defined below), to reasonably determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a transaction with respect to the identified Additional Stores, including but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure reasonably acceptable to the Debtors in their discretion).

Each interested party shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such interested party, as applicable, to consummate its contemplated transaction

II.      *__Notice Parties__*

For purposes of these Discrete Sale and Lease Rationalization Procedures, the "**Debtor Notice Parties**" are:  (i) The Great Atlantic and Pacific Tea Company, Inc., 2 Paragon Drive, Montvale, New Jersey 07645 (Attn: Christopher W. McGarry and Matthew Bennett); (ii) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Garrett A. Fail, Esq.); (iii) Evercore, 55 East 52nd Street, New York, New York 10055 (Attn: Stephen Goldstein); and (iv) Hilco, 5 Revere Dr. Suite 320, Northbrook, IL 60062 (Attn: Gregory S. Apter).

For purposes of these Discrete Sale and Lease Rationalization Procedures, the "**Consultation Parties**" are:  (i) the attorneys for the official committee of unsecured creditors (the "**Creditors' Committee**"); (ii) the attorneys for Fortress Credit Corp., as the Debtors' proposed post-petition secured lender, (iii) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014; (iv) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured PIK Toggle Notes due 2017, dated as of March 13, 2012 (the "**Prepetition PIK Notes**"); (vi) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured Convertible Notes due 2018, dated as of March 13, 2012 (the "**Prepetition Convertible Notes**"); (vii) the attorneys for the holders of a majority of the Prepetition PIK Notes; (viii) the attorneys

WEIL:\95428776\9\50482.0004

for the holders of a majority of the Prepetition Convertible Notes;[1] and (ix) counsel to the United Food and Commercial Workers Union International, Cohen, Weiss and Simon LLP, 330 West 42nd Street, New York, New York 10036 (Attn: Richard M. Seltzer, Esq.)

For purposes of these Discrete Sale and Lease Rationalization Procedures, the "**Transaction Notice Parties**" are:  (i) the Consultation Parties; (ii) the U.S. Trustee; (iii) all parties who have requested notice under Bankruptcy Rule 2002; (iv) all entities known or reasonably believed by the Debtors to have asserted a lien, encumbrance, claim or other interest in any of the Additional Stores that are the subject of the proposed transaction (for whom identifying information and addresses are available to the Debtors); (v) all entities known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to any of the assets offered for sale during the past twelve (12) months; (vi) all of the labor unions that represent employees of any Additional Store that is the subject of the proposed transaction; and (vii) all non-Debtor parties to any executory contracts or unexpired leases proposed to be assumed and assigned pursuant to the proposed transaction, and their counsel of record, if any, including counsel for the New York Community Bank ("**NYCB**"), to the extent the proposed transaction includes a Store in which NYCB asserts an interest as licensee.

III.    *__Auction Procedures__*

A.    If the Debtors determine, in consultation with the Consultation Parties, to hold an auction in connection with a one or more sale or disposition transactions in connection with one or more of the Additional Stores with the same party or related parties (a "**Transaction**"), the Debtors shall file and serve on the Transaction Notice Parties an Auction Notice and shall schedule an auction on a date that is at least fourteen (14) days after service of the Auction Notice.

B.    The Auction Notice shall set forth (i) the date, time and location of the auction and (ii) any rules for the auction that the Debtors determine, in their reasonable business judgment, and in consultation with the Consultation Parties, are appropriate to promote a spirited and robust auction, including without limitation, a deadline for submitting bids, criteria bidders must meet in order to participate in the auction (including a requirement to make a good faith deposit of 10% of the proposed purchase price or such other amount as the Debtors, in consultation with the Consultation Parties, may determine in their sole discretion), the purchase price and terms on which the bidding at the auction will start and the criteria for minimum overbids.

C.    In connection with any auction, subject to section C(1)-C(3) below, the Debtors may, but are not obligated to, designate a stalking horse (the "**Stalking Horse**") and offer a breakup fee and/or expense reimbursement to the stalking horse (the "**Bid Protections**"); <u>provided</u> that the Bid

---

[1] To the extent any of the secured Consultation Parties have been paid in full, such parties shall no longer be Consultation Parties for purposes of these procedures.

Protections shall not exceed 3% of the cash portion of the Stalking Horse's bid.  In the event the Debtors determine to designate a Stalking Horse, the Auction Notice shall identify the material terms of the Debtors' agreement with the Stalking Horse, including the terms and conditions of any Bid Protections.

1.    Any objections to the Bid Protections (the "**Bid Protection Objections**") must be filed with the Court and served on the Debtor Notice Parties and the Creditors' Committee within five (5) business days after service of the Auction Notice.

2.    If a Bid Protection Objection is timely filed with the Court and served on the Debtor Notice Parties and the Creditors' Committee, the auction shall not be conducted until such time as the Bid Protection Objection is resolved consensually, by agreement of the objecting party and the Debtors, in consultation the Consultation Parties, or by order of the Court.

3.    In the event no Bid Protection Objections are timely filed with the Court and served on the Debtor Notice Parties and the Creditors' Committee, the Bid Protections shall be deemed approved by the Court, without the need for further Court order.

D.    Before the conclusion of the auction, the Debtors shall determine, in consultation with the Consultation Parties, the highest or otherwise best offer or collection of offers (the "**Successful Bid**").[1]

E.    A scheduled auction may be adjourned or cancelled as the Debtors deem appropriate, in consultation with the Consultation Parties.  In the event that an auction is cancelled, the Debtors will proceed to file a Transaction Notice (defined below) or Transaction Motion (defined below), as applicable.

Notwithstanding the foregoing, the Debtors may, in their reasonable discretion, enter into a Transaction without an auction, subject to the Transaction Approval Procedures set forth below.

IV.    ***Transaction Approval Procedures***

A.    <u>Small Transactions – $10,000,000.00 or Less</u>.  If, with respect to a Transaction, (i) the Successful Bid or (ii) the consideration to be received by the Debtors pursuant to a private Transaction, as applicable, is less than $10,000,000.00 (a "**Small Transaction**"), the Debtors, in consultation with the Consultation Parties, shall file a notice of such Small Transaction

---

[1] In evaluating bids, the Debtors may take into consideration the non-binding factors set forth in the Global Bidding Procedures.

WEIL:\95428776\9\50482.0004

(a "**Small Transaction Notice**") with the Court, in the form attached to the Order as Exhibit 2.

B.    Large Transactions – Greater than $10,000,000.00.  If, with respect to a Transaction, (i) the Successful Bid or (ii) the consideration to be received by the Debtors pursuant to a private Transaction, as applicable, is greater than $10,000,000.00 (a "**Large Transaction**"), the Debtors shall file with the Court a motion (the "**Large Transaction Motion**") for approval of the Large Transaction, which motion will be heard at a hearing on a date that is at least seventeen (17) days after service of the Large Transaction Motion.  The Large Transaction Motion shall describe the auction, if applicable, or explain why the Debtors believe an auction is not necessary to maximize the value the Debtors will receive pursuant to the Large Transaction.  The Large Transaction Motion will include a proposed order (the "**Proposed Transaction Order**") approving the Large Transaction, including the assumption and assignment of any executory contracts or unexpired leases in connection therewith.

C.    Assumption and Assignment Information.  If the Debtors propose to assume and assign an executory contract or unexpired lease in connection with a Transaction, the Small Transaction Notice or Large Transaction Motion, as applicable, shall set forth the following information (the "**Assumption and Assignment Information**"), among other things: (i) the executory contract or unexpired lease to be assumed and assigned; (ii) the name(s) and address(es) of each counterparty to such executory contract or unexpired lease; (iii) the proposed effective date of the assumption and assignment for such executory contract or unexpired lease, which date shall be the effective date of the Transaction; (iv) the proposed cure amount, if any; (v) the name(s), address(es), phone number and email address of the proposed assignee(s) of such executory contract or unexpired lease; (vi) a certification by the Debtors that the assignee has provided information to each affected counterparty of such executory contract or unexpired lease demonstrating the assignee's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, the assignee's financial wherewithal and willingness to perform under such executory contract or unexpired lease (such information, the "**Adequate Assurance Information**"); and (vii) the deadlines and procedures for filing objections to the assumption and assignment of any executory contracts or unexpired leases in connection with the Transaction.

D.    Service of the Small Transaction Notice or the Large Transaction Motion and the Adequate Assurance Information.  The Debtors shall serve the Small Transaction Notice or the Large Transaction Motion, as applicable, on the Transaction Notice Parties by email, mail, facsimile or overnight delivery.  In addition, the Debtors shall cause to be served by email and

WEIL:\95428776\9\50482.0004

overnight mail on each non-Debtor counterparty to an executory contract or unexpired lease proposed to be assumed and assigned pursuant to the Transaction and their counsel of record, if any (collectively, the "**Cure Notice Parties**") the Adequate Assurance Information.  The Cure Notice Parties shall review the Adequate Assurance Information on a confidential basis.  Any objection which discloses confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s).  The Order approving these Discrete Sale and Lease Authorization Procedures shall authorize the filing of any such objections under seal, and on the docket with such non-public information redacted, without further order of the Court.

E.     Objection Procedures.  Parties objecting to a Transaction, including the proposed assumption and assignment of an executory contract or unexpired lease in connection therewith, including to the proposed cure amount, must file and serve a written objection so that such objection is filed with the Court and is actually received by the Debtor Notice Parties and the Creditors' Committee no later than ten (10) days after the date the Debtors serve the relevant Small Transaction Notice or Large Transaction Motion, as applicable (the "**Objection Deadline**").

F.     Event of No Objection.  If an objection is not timely filed and served by the Objection Deadline, then:

1.     with respect to the assumption and assignment of any executory contract or unexpired lease pursuant to the Transaction, (i) the Debtors' proposed cure amount shall be binding upon each non-Debtor party to such executory contract or unexpired lease for all purposes in the Debtors' chapter 11 cases and will constitute a final determination of the assumption and no additional cure amounts shall be due; (ii) each non-Debtor party to such executory contract or unexpired lease will be deemed to have received adequate assurance of future performance; (iii) the effective date of such assumption and assignment will be the effective date of the Transaction; (iv) any provisions in such executory contract or unexpired lease that prohibit or condition assignment thereof or, as a result of such assignment, allow the parties thereto to terminate, recapture, impose any penalty or fee, place a condition on renewal or extension, or modify any term or condition upon the assignment thereof, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Small Transaction or Large Transaction, as the case may be; (v) to the extent such executory contract or unexpired lease is actually assigned to the proposed assignee, in accordance with section 365 of the Bankruptcy Code, such assignee shall be deemed to be substituted for the Debtors, and shall be fully and irrevocably

13

vested with all rights, title, and interest of the Debtors thereunder, and such executory contract or unexpired lease shall be in full force and effect and enforceable in accordance with its respective terms; and (vi) pursuant to section 365(k) of the Bankruptcy Code, after the assignment by the Debtors of such executory contract or unexpired lease, the Debtors shall have no liability for any breach thereof that occurs after such assignment.

2.      with respect to a Small Transaction, such Small Transaction, including the assumption and assignment of any executory contract or unexpired lease in connection therewith, will be deemed final and fully authorized by the Court under the terms of the Order approving these Discrete Sale and Lease Authorization Procedures, and no further notice or Court approval to consummate the Small Transaction or such assumption and assignment, will be required or necessary; and

3.      with respect to a Large Transaction, the Debtors shall certify to the Court that there were no timely objections to the Large Transaction Motion and request entry of the Proposed Transaction Order.

G.      <u>Unresolved Objections</u>.  If any objections are timely filed and served by the Objection Deadline, the Debtors shall try to negotiate a consensual resolution with the objecting parties.  If the Debtors are unable to consensually resolve all objections within three (3) days after the Objection Deadline:

1.      with respect to a Small Transaction, the objection will be deemed a request for a hearing on the Transaction and the Debtors will file a notice for a hearing for the Court to consider the Transaction at a hearing that is at least seven (7) days after service of the objection (<u>provided</u> that the Debtors reserve the right to seek a hearing on the Transaction and objection prior to such time), and such notice will include a proposed form of order approving such Small Transaction, including the assumption and assignment of any executory contracts or unexpired leases in connection therewith;

2.      with respect to a Large Transaction, the objection will be heard on the hearing date set forth in the Large Transaction Motion;

3.      the Debtors may file a reply at least two (2) days before any such hearing;

4.      the Transaction may not proceed absent (a) withdrawal of the objection or (b) entry of an order by the Court specifically approving the Transaction;

14

5.      if any objection to the assumption or assignment of an executory contract or unexpired lease is overruled or withdrawn, such executory contract or unexpired lease shall be assumed with the effective date of such assumption and assignment to be the effective date of the Transaction; and

6.      to the extent an objection relates solely to a disputed cure amount, the Court may enter an order approving the Transaction, including the assumption and assignment of the executory contract or unexpired lease, subject to (i) the counterparties' right to be heard at a later hearing date on the cure and (ii) the below requirements regarding payment of the cure amount.

H.      <u>Payment of Cure Amount</u>.  All undisputed cure amounts shall be paid at the closing of the relevant Transaction.  Any disputed cure amount must be paid by the earlier of (i) when the Debtors and the non-Debtor counterparty agree to a cure amount or (ii) within five (5) days after the date of the entry of a final order by the Court determining an amount.  In the event that a cure amount relative to any assumed and assigned executory contract or unexpired lease, whether disputed or undisputed, is not paid in accordance with this subsection (H), then the assumption and assignment of such executory contract or unexpired lease shall be null and void five (5) days after the filing and service by either the assignor or a contract or lease counterparty of a Notice of Non-Payment of Cure Amount in this case, if such cure amount is not paid within the five (5) day period after the filing of the Notice of Non- Payment of Cure Amount.  The party filing the Notice of Non-Payment of Cure Amount shall serve same (A) by overnight mail upon the non-Debtor executory contract or unexpired lease counterparties affected by the Assumption and Assignment Notice, if applicable; and (B) and by email on the applicable assignee, the Debtor Notice Parties and the Creditors' Committee.

15

## **Schedule 1**

**Additional Stores**

**Additional Stores**

| | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 1 | 19243 | Liquor | New Canaan | 282 Elm Street | CT |
| 2 | 19254 | Liquor | Ridgefield | 46B Danbury Rd. | CT |
| 3 | 70074 | A&P | Danbury | 1 Padanaram Rd | CT |
| 4 | 19129 | Liquor | Old Lyme | 28A Halls Rd (P.O. Box 491) | CT |
| 5 | 70951 | A&P | Mt Olive | 7 Naughright Rd | NJ |
| 6 | 70806 | A&P | Califon | 431 County Road 513 | NJ |
| 7 | 72280 | Pathmark | Montclair | 35 Lackawanna Plaza | NJ |
| 8 | 72198 | Pathmark | Fairlawn | 22-00 Maple Avenue | NJ |
| 9 | 59036 | Food Basics | East Paterson | 498 East 30th St | NJ |
| 10 | 72578 | Pathmark | Brick Twp. | 1930 Route 88 | NJ |
| 11 | 72223 | Pathmark | Newark | 167 Bergen Street | NJ |
| 12 | 72609 | Pathmark | New York | 160 East 125th Street | NY |
| 13 | 70611 | Waldbaums | Rocky Point | 245 Route 25A | NY |
| 14 | 72624 | Pathmark | Brooklyn | 1245 61St Street | NY |
| 15 | 72603 | Pathmark | New York | 300 West 145th Street | NY |
| 16 | 72679 | Pathmark | Staten Island | 100 Greaves Lane | NY |
| 17 | 72653 | Pathmark | Bethpage | 3901 Hempstead Turnpike | NY |
| 18 | 72649 | Pathmark | New Hyde Park | 2335 New Hyde Park Road | NY |
| 19 | 72646 | Pathmark | Shirley | 800 Montauk Highway | NY |
| 20 | 72652 | Pathmark | Massapequa | 941 Carmans Road | NY |
| 21 | 70298 | Waldbaums | Melville | 890 Walt Whitman Road | NY |
| 22 | 72614 | Pathmark | Patchogue | 399 Route 112 | NY |
| 23 | 70232 | Waldbaums | West Hampton | 70 Sunset Ave | NY |
| 24 | 70279 | Waldbaums | Merrick | 1686 Merrick Rd. | NY |
| 25 | 70241 | Waldbaums | N. Patchoque | 440 W. Sunrise Highway | NY |
| 26 | 72642 | Pathmark | Brooklyn | 1-37 12th Street | NY |
| 27 | 72634 | Pathmark | Brooklyn | 111-10 Flatlands Avenue | NY |
| 28 | 70263 | Waldbaums | Mattituck | Rt.25 And Factory Ave. | NY |
| 29 | 72600 | Pathmark | Brentwood | 101 Wicks Road | NY |
| 30 | 70240 | Waldbaums | Brooklyn | 2149 Ralph Ave | NY |
| 31 | 70235 | Waldbaums | Brooklyn | 3100 Ocean Ave | NY |
| 32 | 70275 | Waldbaums | College Point | 133-11 20th Avenue | NY |
| 33 | 70229 | Waldbaums | Ctr Moriches | 812 Montauk Hwy. | NY |
| 34 | 70699 | Waldbaums | Deer Park | 1960 Deer Park Ave. | NY |
| 35 | 72611 | Pathmark | East Rockaway | 492 East Atlantic Avenue | NY |
| 36 | 70617 | Waldbaums | Great Neck | 40 Great Neck Road | NY |
| 37 | 36703 | Food Emporium | New York | 1175 3rd Avenue | NY |
| 38 | 36711 | Food Emporium | New York | 1331 1st Avenue | NY |
| 39 | 36727 | Food Emporium | New York | 452 West 43 St. | NY |
| 40 | 36732 | Food Emporium | New York | 810 8th Ave | NY |
| 41 | 36707 | Food Emporium | New York | 969 Second Ave | NY |

|    | Store | Banner | City | Address | State |
|----|-------|--------|------|---------|-------|
| 42 | 36777 | Food Emporium | New York | 316 Greenwich St | NY |
| 43 | 36742 | Food Emporium | New York | 1066 3rd Avenue | NY |
| 44 | 36706 | Food Emporium | New York | 1450 3rd Avenue | NY |
| 45 | 36783 | Food Emporium | New York | 405 East 59th St. | NY |
| 46 | 36708 | Food Emporium | New York | 2415 Broadway | NY |
| 47 | 70662 | Waldbaums | Selden | 211 Middle Country Road | NY |
| 48 | 72678 | Pathmark | Staten Island | 2730 Arthur Kill Road | NY |
| 49 | 72682 | Pathmark | Staten Island | 2875 Richmond Avenue | NY |
| 50 | 70813 | Waldbaums | Tottenville | 6400 Amboy Road | NY |
| 51 | 70270 | Waldbaums | Whitestone | 153-01 10th Ave | NY |
| 52 | 72558 | Pathmark | Brookhaven | 5005 Edgemont Avenue | PA |
| 53 | 72569 | Pathmark | Glenolden | 140 North Mcdade Boulevard | PA |
| 54 | 72552 | Pathmark | Philadelphia | 330 Oregon Avenue | PA |
| 55 | 72550 | Pathmark | Philadelphia | 176-82 West Chelten Avenue | PA |
| 56 | 72522 | Pathmark | Philadelphia | 3399 Aramingo Avenue | PA |
| 57 | 19104 | Liquor | Bristol | 767 Pine Street | CT |
| 58 | 19110 | Liquor | Mystic | 25 Broadway Ave. | CT |
| 59 | 19119 | Liquor | Newington | 2400 Berlin Tpk. | CT |
| 60 | 19106 | Liquor | Newington | 40 Fenn Road | CT |
| 61 | 19246 | Liquor | Riverside | 1237 East Putnam Ave. | CT |
| 62 | 19121 | Liquor | Waterford | 117 Boston Post Rd | CT |
| 63 | 72593 | Pathmark | New Castle | 148 Sunset Boulevard | DE |
| 64 | 70586 | Superfresh | New Castle | 2044 New Castle Avenue | DE |
| 65 | 70888 | Superfresh | Ocean City | 12741 Ocean Gateway | MD |
| 66 | 70417 | A&P | Basking Ridge | 407 King George Road | NJ |
| 67 | 59506 | Food Basics | Belleville | 414 Main St. | NJ |
| 68 | 70936 | A&P | Belvidere | 525 East Route 46 | NJ |
| 69 | 70752 | A&P | Bloomfield | 19 Bellville Ave. | NJ |
| 70 | 70610 | A&P | Boonton | 550 Myrtle Ave | NJ |
| 71 | 70802 | A&P | Bricktown | 64 Brick Plaza | NJ |
| 72 | 70949 | A&P | Clinton | 49 Old Route 22 | NJ |
| 73 | 70515 | A&P | Edison | 1185 Amboy Ave | NJ |
| 74 | 72288 | Pathmark | Elizabeth | 211 Elmora Avenue | NJ |
| 75 | 70618 | A&P | Fairview | 425 Anderson Avenue | NJ |
| 76 | 70895 | A&P | Fanwood | 105 South Ave | NJ |
| 77 | 72450 | Pathmark | Garwood | 10 South Avenue | NJ |
| 78 | 72153 | Pathmark | Hackensack | 405 State Route 17 South | NJ |
| 79 | 37602 | Liquor | Hackettstown | 57 Route 46 | NJ |
| 80 | 37905 | Liquor | Haskell | 1069 Ringwood Ave | NJ |
| 81 | 72573 | Pathmark | Hazlet | 3020 Route 35 & Bethany Road | NJ |

|  | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 82 | 72527 | Pathmark | Hopelawn | 95-101 New Brunswick Ave | NJ |
| 83 | 72224 | Pathmark | Irvington | 474-79 Lyons Avenue | NJ |
| 84 | 72114 | Pathmark | Jersey City | 420 Grand Street | NJ |
| 85 | 72261 | Pathmark | Landing | 175 Lakeside Boulevard & Center | NJ |
| 86 | 37993 | Liquor | Ledgewood | 1103 Howard Blvd | NJ |
| 87 | 70956 | A&P | Marlboro | 460 County Line Road Route 520 | NJ |
| 88 | 37872 | Liquor | Metuchen | 45 Pearl Street | NJ |
| 89 | 72436 | Pathmark | Middlesex | 242 Lincoln Boulevard | NJ |
| 90 | 70924 | A&P | Navesink | 1002 Rte 36 | NJ |
| 91 | 59512 | Food Basics | North Bergen | 1425 Kennedy Blvd. | NJ |
| 92 | 70887 | A&P | North Brunswick | 510 Milltown Road | NJ |
| 93 | 70441 | A&P | Old Tappan | 216 Old Tappan Rd | NJ |
| 94 | 37995 | Liquor | Palisade Park | 534 Bergen Blvd. | NJ |
| 95 | 72282 | Pathmark | Parsippany | 1157 Route 46 East | NJ |
| 96 | 59501 | Food Basics | Passaic | 514 Van Houten Ave. | NJ |
| 97 | 70638 | A&P | Pompton Lakes | 47 Wanaque Avenue | NJ |
| 98 | 37866 | Liquor | Pt Pleasant | 1205 Richmond Ave | NJ |
| 99 | 72299 | Pathmark | Ramsey | 10 Triangle Plaza - Lake Road Ext. | NJ |
| 100 | 70688 | A&P | Randolph | 148 Center Grove Road | NJ |
| 101 | 37814 | Liquor | Summit | 23 Summit Ave | NJ |
| 102 | 70807 | A&P | Washington | 459 Route 31 South | NJ |
| 103 | 70439 | A&P | Washington Township | 315 Pascack Rd | NJ |
| 104 | 70668 | A&P | Wayne | 560 Valley Road | NJ |
| 105 | 70685 | A&P | West Milford | 1938 Union Valley Road | NJ |
| 106 | 37661 | Liquor | Westwood | 30 Irvington Ave | NJ |
| 107 | 72580 | Pathmark | Woodbridge | 1600 St Georges Avenue | NJ |
| 108 | 70701 | A&P | Woodland Park | 1730 Route 46 West | NJ |
| 109 | 72286 | Pathmark | Woodport | 757 Rt. 15 | NJ |
| 110 | 72602 | Pathmark | Bayshore | 2060 Sunrise Highway | NY |
| 111 | 70203 | Waldbaums | Commack | 84 Jericho Tpke | NY |
| 112 | 72664 | Pathmark | Dix Hills | 683 Old Country Road | NY |
| 113 | 70434 | Waldbaums | East Meadow | 1530 Front Street | NY |
| 114 | 70277 | Waldbaums | East Setauket | 4054 Nesconset Highway | NY |
| 115 | 70223 | Waldbaums | Garden City | 2475 Jericho Turnpike | NY |
| 116 | 70217 | Waldbaums | Greenlawn | 777 Pulaski Road | NY |
| 117 | 70769 | A&P | Hastings | 87 Main Street | NY |
| 118 | 70214 | Waldbaums | Hauppauge | 1236 Veterans Highway | NY |
| 119 | 72641 | Pathmark | Holbrook | 5801 Sunrise Highway | NY |
| 120 | 72639 | Pathmark | Islip | 155 Islip Avenue | NY |
| 121 | 70289 | Waldbaums | Jericho | 336 North Broadway | NY |

|  | Store | Banner | City | Address | State |
|---|---|---|---|---|---|
| 122 | 70003 | A&P | Lagrange | 1642 Route 82 | NY |
| 123 | 70251 | Waldbaums | Lindenhurst | 50 E. Hoffman | NY |
| 124 | 70151 | A&P | Mamaroneck | 805 Mamaroneck Ave | NY |
| 125 | 70256 | Waldbaums | Massapequa | 5508 Sunrise Hwy | NY |
| 126 | 72292 | Pathmark | Nanuet | 195 Rockland Center East Rt 59 | NY |
| 127 | 72615 | Pathmark | North Babylon | 1251 Deer Park Avenue | NY |
| 128 | 70288 | Waldbaums | Oakdale | 4560 Sunrise Hwy | NY |
| 129 | 70126 | A&P | Patterson | 3101 Route 22 | NY |
| 130 | 70194 | A&P | Peekskill | 20 Welcher Ave | NY |
| 131 | 72297 | Pathmark | Port Chester | 130 Midland Avenue | NY |
| 132 | 72604 | Pathmark | Port Jeff.Sta. | 5145 Nesconset Highway | NY |
| 133 | 70192 | A&P | Scarsdale | 668 Central Park Avenue | NY |
| 134 | 72298 | Pathmark | Scarsdale | 2540 Central Park Avenue | NY |
| 135 | 72171 | Pathmark | Staten Island | 2660 Hylan Avenue | NY |
| 136 | 70601 | Waldbaums | Stony Brook | 2162 Nesconset Highway | NY |
| 137 | 19918 | Liquor | Unclassified | 1175 Third Ave Suite A | NY |
| 138 | 70794 | A&P | Valley Cottage | 14 Lake Ridge Plaza | NY |
| 139 | 72644 | Pathmark | West Babylon | 531 Montauk Highway | NY |
| 140 | 72293 | Pathmark | Yonkers | 1757 Central Park Avenue | NY |
| 141 | 72528 | Pathmark | Cheltenham | 1000 Easton Road | PA |
| 142 | 72529 | Pathmark | Fairless Hills | 500 Lincoln Highway | PA |
| 143 | 70718 | Superfresh | New Hope | 323 West Bridge Street | PA |
| 144 | 59530 | Food Basics | Philadelphia | 15501 Bustleton Ave. | PA |
| 145 | 70982 | Superfresh | Philadelphia | #N/A | PA |
| 146 | 59510 | Food Basics | Philadelphia | 8920 Frankford Avenue | PA |
| 147 | 72556 | Pathmark | Philadelphia | 4160 Monument Road | PA |
| 148 | 72553 | Pathmark | Philadelphia | 8700 Frankford Avenue | PA |
| 149 | 72532 | Pathmark | Philadelphia | 3021 Grays Ferry Avenue | PA |
| 150 | 72557 | Pathmark | Philadelphia | 2900 N. Broad St. & Glenwood Ave. | PA |
| 151 | 72568 | Pathmark | Upper Darby | 421 S. 69Th Street | PA |
| 152 | 59503 | Food Basics | Brooklyn | 2185 Coyle Street | NY |
| 153 | 72610 | Pathmark | New York | 410 West 207th Street | NY |

**<u>Exhibit 2</u>**

**Small Transaction Notice**

WEIL:\95428776\9\50482.0004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                    :
                                                         :        Chapter 11
THE GREAT ATLANTIC & PACIFIC TEA          :
COMPANY, INC., *et al.*,                             :        Case No. 15-23007 (RDD)
                                                         :
            Debtors.[1]                                 :        (Jointly Administered)
------------------------------------------------------------x

## NOTICE OF PROPOSED TRANSACTION PURSUANT TO DISCRETE SALE AND LEASE RATIONALIZATION PROCEDURES

        **PLEASE TAKE NOTICE** that, on July 19, 2015 (the "**Commencement Date**"), The Great Atlantic & Pacific Tea Company, Inc. and its affiliates identified in footnote 1 below, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

        **PLEASE TAKE FURTHER NOTICE** that, on August [___], 2015, the Bankruptcy Court entered the *Order Approving Discrete Sale and Lease Rationalization Procedures* [Docket No. _____] (the "**Discrete Procedures Order**").  A copy of the Discrete Procedures Order may be found at:  https://cases.primeclerk.com/aptea.

        **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Discrete Procedures Order, the Debtors hereby provide notice of their intent to enter into a Small Transaction[2] with respect to certain assets (the "**Assets**") with [_____] (the "**Counterparty**") pursuant to an agreement dated [_____], 2015 (the "**Agreement**").  The material terms of the Agreement are as follows:

- **Description of Assets**:  The Assets consist of the lease(s) referenced below (the "**Lease(s)**") [and the additional assets referenced below (the "**Additional Assets**")]:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corp. (7132); APW Supermarkets, Inc. (9509); Borman's Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); Shopwell, Inc. (3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms but not otherwise defined herein shall have the meanings ascribed to them in the Discrete Procedures Order.

| Lease(s) | |
|---|---|
| Landlord(s) Name(s) and Address(es) | |
| Real Property Address(es) | |
| Lease Expiration Date(s) | |
| **Additional Assets** | |
| Description | |
| Location | |

- **Liens and Encumbrances on and Other Interests in the Assets**. The Debtors are aware of the following liens and encumbrances on or interests in the Assets: _____. To the extent that any party has liens and encumbrances on or interests in the Assets, the Debtors believe that any such liens, encumbrances or interests would be subject to monetary satisfaction in accordance with section 363(f)(5) of the Bankruptcy Code.

- **Economic Terms and Conditions of the Proposed Transaction**. The Debtors propose to sell or dispose of the Assets to Counterparty on an "as is" basis, free and clear of all liens, claims, encumbrances and other interests therein, pursuant to section 363(f) of the Bankruptcy Code (the "**Transaction**").

- **Purchase Price**. The Purchaser has agreed to pay a purchase price of $_____ for the Assets.

PLEASE TAKE FURTHER NOTICE that, in connection with the Transaction, the Debtors seek to assume and assign the Lease(s) to Counterparty. Pursuant to the Discrete Procedures Order, the Debtors hereby provide the following Assumption and Assignment Information:

| Proposed Effective Date of Assumption and Assignment | |
|---|---|
| Proposed Cure Amount | |
| Counterparty's Name, Address, Telephone Number and Email Address | |

PLEASE TAKE FURTHER NOTICE that the Debtors hereby certify that, contemporaneously with the filing of this Notice, the Debtors have caused to be served by email and overnight mail on the Cure Notice Parties demonstrating the Counterparty's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, Counterparty's financial wherewithal and willingness to perform under the Lease(s) (such information, the "**Adequate Assurance Information**"). The Adequate Assurance Information is being provided to the Cure Notice Parties on a confidential basis. To the extent any of the Cure Notice Parties wish to disclose this non-public information

in an objection filed with the Bankruptcy Court, such Cure Notice Parties must file such objection under seal.  Pursuant to the Discrete Procedures Order, the Cure Notice Parties are not required to obtain separate authority from the Bankruptcy Court to file the objection under seal.

    **PLEASE TAKE FURTHER NOTICE** that any objection to the proposed Transaction, (an "**Objection**") including to the assumption and assignment of the Lease(s) in connection therewith and/or the proposed cure amount(s) set forth in this Notice, must:  (i) be in writing; (ii) state with specificity the nature of the objection; and (iii) be filed with the Bankruptcy Court and served on (a) The Great Atlantic and Pacific Tea Company, Inc., 2 Paragon Drive, Montvale, New Jersey 07645 (Attn: Christopher W. McGarry and Matthew Bennett); (b) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Garrett A. Fail, Esq.); (c) Hilco, 5 Revere Dr. Suite 320, Northbrook, IL 60062 (Attn: Gregory S. Apter) (the "**Debtor Notice Parties**")  and (d) the attorneys for the Creditors' Committee, Pachulski Stang Ziehl & Jones, LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn:  Robert J. Feinstein, Esquire, and Bradford J. Sandler, Esquire, rfeinstein@pszjlaw.com and bsandler@pszjlaw.com), so that it is actually received by the Debtor Notice Parties and the Creditors' Committee on or before _____, _____ (the "**Objection Deadline**").

    **PLEASE TAKE FURTHER NOTICE** that, if any Objections are timely filed and served by the Objection Deadline and the Debtors are unable to negotiate a consensual resolution with the objecting parties within three (3) days after the Objection Deadline, the Objections will be deemed a request for a hearing and the Debtors will file a separate notice of hearing with respect to the Transaction.

    **PLEASE TAKE FURTHER NOTICE** that, if no Objections are timely filed with the Bankruptcy Court and served by the Objection Deadline, (i) the Transaction, including the assumption and assignment of the Lease(s) in connection therewith will be deemed fully and finally authorized by the Court under the terms of the Discrete Procedures Order and no further notice or Court approval to consummate the Transaction shall be required or necessary; (ii) the proposed cure amount(s) set forth in this Notice shall be binding upon each non-Debtor party to the Lease(s) for all purposes in the Debtors' chapter 11 cases and will constitute a final determination of the assumption and no additional cure amounts shall be due; (iii) each non-Debtor party to the Lease(s) will be deemed to have received adequate assurance of future performance; and (iv) the effective date of the such assumption and assignment of the Lease(s) will be the proposed effective date set forth in this Notice.

Dated: _____, 2015
          New York, New York

_____

WEIL, GOTSHAL & MANGES LLP

767 Fifth Avenue

New York, New York  10153

Telephone:  (212) 310-8000

Facsimile:  (212) 310-8007

Ray C. Schrock, P.C.

Garrett A. Fail

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**EXHIBIT E**

**Revised Order Approving Discrete Sale and Lease Rationalization Procedures
(Redline)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | :     **Chapter 11** |
| **THE GREAT ATLANTIC & PACIFIC TEA** | : |
| **COMPANY, INC.,** *et al.*, | :     **Case No. 15-~~——~~23007** |
| (~~——~~**RDD**) | |
| | : |
| Debtors.[1] | :     **(Jointly Administered)** |
| | : |

------------------------------------------------------------x

### ORDER APPROVING ~~GLOBAL~~DISCRETE SALE
### AND LEASE RATIONALIZATION PROCEDURES

Upon the motion (the "**Motion**")[2] of The Great Atlantic & Pacific Tea

Company, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 363 and

365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004 and

6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order

approving the ~~Global~~Discrete Sale and Lease Rationalization Procedures attached hereto as

**Exhibit 1**, all as more fully set forth in the Motion; and the Court having jurisdiction to

~~consider~~decide the Motion and the relief requested therein in accordance with 28 U.S.C. §§

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in ~~the Motion~~Exhibit 1 hereto.

157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been ~~given to the Notice Parties as~~ provided in ~~the Motion~~accordance with the *Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c), 2002 (m) and 9007 Implementing Certain Notice and Case Management Procedures,* dated July 20, 2015 (ECF No. 62), and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the Declaration of Gregory S. Apter, filed on July 31, 2015, the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion and granted herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted to the extent set forth herein; and it is further

ORDERED that the ~~Global~~Discrete Sale and Lease Rationalization Procedures attached hereto as **Exhibit 1** are hereby approved; and it is further

ORDERED that the Small Transaction Notice, in substantially the form attached ~~to the Motion~~hereto as **Exhibit ~~B~~2** is hereby approved; and it is further

2

ORDERED that all buyers shall take assets sold or otherwise disposed of by the Debtors pursuant to the ~~Global~~Discrete Sale and Lease Rationalization Procedures approved by this Order "as is" and "where is," without any representations or warranties from the Debtors as to quality or fitness of such assets for either their intended or any particular purpose; and it is further

ORDERED that all buyers shall take assets sold or otherwise disposed of by the Debtors pursuant to the ~~Global~~Discrete Sale and Lease Rationalization Procedures approved by this Order free and clear of liens, claims and encumbrances, pursuant to section 363(f) of the Bankruptcy Code, and that all such liens, claims and encumbrances shall attach to the proceeds of the sale or disposition; and it is further

ORDERED that the ten-day stays of Bankruptcy Rules 6004(h) ~~is~~and 6006(d) are hereby waived, and, notwithstanding Bankruptcy Rules 6004(h) or 6006(d) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that all ~~Noticed~~Small Transactions as to which no objection is timely filed pursuant to Section IV.F of the Discrete Sale and Lease Rationalization Procedures (each, an "**Unopposed Small Transaction**"), including the assumption and assignment of any executory contracts or unexpired leases in connection therewith, shall be deemed authorized and approved pursuant to the terms of this Order and no further or additional waivers of the ten-day stays of Bankruptcy Rules 6004(h) or 6006(d) shall be required for the Debtors to consummate ~~a Noticed~~such Small Transaction, subject to compliance with the notice and other procedures set forth in the ~~Global~~Discrete Sale and Lease Rationalization Procedures; and it is further

ORDERED that all buyers of assets pursuant to an Unopposed Small Transaction consummated pursuant to this Order shall be deemed to have purchased such assets in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to all protections afforded thereby in the event of a reversal or modification on appeal of such transaction; and it is further

ORDERED that, with respect to all ~~Noticed~~Unopposed Small Transactions consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and ~~a Noticed~~an Unopposed Small Transaction consummated pursuant to the ~~Global~~Discrete Sale and Lease Rationalization Procedures approved by this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold or otherwise disposed of pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby; and it is further

ORDERED that nothing in this Order shall be construed to prevent the Debtors, in their sole discretion, from seeking this Court's approval at any time of any proposed sale or disposition of any of the~~ir Tier II Ss~~tores, leases or related assets after notice and an opportunity for a hearing; and it is further

4

ORDERED that nothing in the ~~Global~~Discrete Sale and Lease Rationalization Procedures shall relieve the Debtors of their obligations under any applicable law; and it is further

ORDERED that the time periods required by the Bankruptcy Rules and the Local Rules for notice of any sale or auction of any of the ~~Tier II Stores,~~ Debtors' stores listed on Schedule 1 to the Discrete Sale and Lease Rationalization Procedures (including certain leases and related assets) or any procedures in connection therewith, are hereby shortened as set forth in the ~~Global~~Discrete Sale and Lease Rationalization Procedures; and it is further

ORDERED that the Debtors are authorized to take all action necessary to carry out this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2015
          White Plains, New York

_____
UNITED STATES BANKRUPTCY JUDGE

~~WEIL:\95422957\1\50482.0004~~WEIL:\95422957\7\50482.0004

**Exhibit 1**

~~Global~~Discrete Sale and Lease Rationalization Procedures

## ~~Global~~Discrete Sale and Lease Rationalization Procedures

~~The Global Sale and Lease Rationalization Procedures set forth herein govern the sale or disposition of the stores listed on **Schedule 1** hereto (including certain leases and related assets, the "**Tier II Stores**"), which stores are owned and operated by~~On July 19, 2015, The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") ~~.  Parties may offer to purchase some or all of the Tier II Stores, including any~~filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

~~of the Tier II Stores on a going-concern basis~~The Debtors are seeking to sell as many of their 271 operating stores for the highest or best offers.  On [_____—], 2015, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Global Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approv~~ing~~ed ~~these~~certain procedures (the "~~**Order**").~~**Global Bidding Procedures**") for the consideration of the highest or best offers for **all** of their stores and related assets (each, a "**Store**"), on the terms set forth in the Global Bidding Procedures.  Copies of the Global Bidding Procedures Order and the Global Bidding Procedures are available at https://cases.primeclerk.com/aptea.

### ~~I. *Marketing Process and Due Diligence*~~

Pursuant to the Global Bidding Procedures, the Debtors have received three stalking horse bids for the purchase of non-overlapping groups of 118 Stores total (collectively, the "**Stalking Horse Packages**").  The Global Bidding Procedures also include procedures that allow for the sale of any of the Debtors' 149 other operating Stores not included in the Stalking Horse Packages (including certain executory contracts, unexpired leases and assets related thereto, the "**Additional Stores**").  The Additional Stores are listed on **Schedule 1** hereto.  Pursuant to the Global Bidding Procedures, an auction for the Stalking Horse Packages and any Additional Stores is scheduled to take place on September 24 and 25, 2015.

In addition to the Global Bidding Procedures, these Discrete Sale and Lease Rationalization Procedures apply to the Additional Stores, and may be utilized by the Debtors with respect to any Additional Stores as an alternative to the Global Bidding Procedures, as determined by the Debtors in their reasonable discretion.

~~Any parties~~If you are interested in purchasing any of the ~~Tier II~~ Stores ~~should express their interest to the Debtors' real estate consultant and advisor,~~as a going concern, whether individually, in combination or in connection with a Stalking Horse Package, you are encouraged to contact the Debtors' advisors, Evercore Group LLC ("**Evercore**") and Hilco Real Estate, LLC ("**Hilco**"), by ~~contacting~~no later than August 26, 2015 (the "**Global Indication of Interest Date**") in writing, expressing your interest and identifying the Stores in which you are expressing such interest to Stephen Goldstein, Paul Billyard and Gregory S. Apter (Stephen.Goldstein@Evercore.com, Billyard@Evercore.com and

gapter@hilcoglobal.com). ~~The Debtors request that all parties interested in entering into a transaction with respect to any of the Tier II Stores express such interest by August 24, 2015.~~

If you are interested in purchasing any of the Stores' leases or designation rights associated with such leases, whether individually or in combination, you are encouraged to contact Hilco, by contacting Gregory S. Apter (gapter@hilcoglobal.com) no later than the Global Indication of Interest Date.

The submission of an indication of interest by the Global Indication of Interest Date is not a prerequisite to enter into a transaction for an Additional Store pursuant to these procedures.

I.    *Marketing Process and Due Diligence*

The Debtors may provide confidential information regarding the ~~Tier II~~Additional Stores ~~(the "**Confidential Information**")~~ to interested parties who execute a confidentiality agreement in form and substance satisfactory to the Debtors.

The Debtors may also require that interested parties submit:

A.    a statement identifying the ~~Tier II~~Additional Stores sought to be acquired and the purchase price to be paid; and

~~B. a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a *bona fide* interest in consummating a transaction with respect to the identified Tier II Stores; and~~

B.    ~~C.~~ sufficient information, as ~~defined~~reasonably determined by the Debtors, to allow the Debtors ~~to~~, in consultation with the Consultation Parties (defined below), to reasonably determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a transaction with respect to the identified ~~Tier II~~Additional Stores, including but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure reasonably acceptable to the Debtors in their ~~sole~~ discretion).

Each interested party shall comply with all reasonable requests for information and due diligence access by the Debtors or ~~Hilco~~their advisors regarding the ability of such interested party, as applicable, to consummate its contemplated transaction

~~The Debtors or Hilco may, but are not obligated to, furnish any due diligence information regarding the Tier II Stores to any interested party.~~

8

II.    *Notice Parties*

For purposes of these ~~Global~~Discrete Sale and Lease Rationalization Procedures, the "**Debtor Notice Parties**" are: (i) The Great Atlantic and Pacific Tea Company, Inc., 2 Paragon Drive, Montvale, New Jersey 07645 (Attn: Christopher W. McGarry and Matthew Bennett); (ii) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Garrett A. Fail, Esq.); ~~and~~ (iii) Evercore, 55 East 52nd Street, New York, New York 10055 (Attn: Stephen Goldstein); and (iv) Hilco, 5 Revere Dr. Suite 320, Northbrook, IL 60062 (Attn: Gregory S. Apter).

For purposes of these ~~Global~~Discrete Sale and Lease Rationalization Procedures, the "~~Transaction Notice~~Consultation Parties" are: (i) the attorneys for the official committee of unsecured creditors ~~appointed in the Debtors' chapter 11 cases~~ (the "**Creditors' Committee**"); (ii) the attorneys for Fortress ~~Investment~~Credit Corp., as the Debtors' proposed post-petition secured lender, (iii) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 17, 2014; (iv) the attorneys for Wells Fargo Bank, National Association, as agent under that certain Amended and Restated Senior Secured Term Credit Agreement, dated as of September 17, 2014; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured PIK Toggle Notes due 2017, dated as of March 13, 2012 (the "**Prepetition PIK Notes**"); (vi) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for Senior Secured Convertible Notes due 2018, dated as of March 13, 2012 (the "**Prepetition Convertible Notes**"); (vii) the attorneys for the holders of a majority of the Prepetition PIK Notes; (viii) the attorneys for the holders of a majority of the Prepetition Convertible Notes; ~~(x)~~ [1] and (ix) counsel to the United Food and Commercial Workers Union International, Cohen, Weiss and Simon LLP, 330 West 42nd Street, New York, New York 10036 (Attn: Richard M. Seltzer, Esq.)

For purposes of these Discrete Sale and Lease Rationalization Procedures, the "**Transaction Notice Parties**" are: (i) the Consultation Parties; (ii) the U.S. Trustee; (~~xii~~iii) all parties who have requested notice under Bankruptcy Rule 2002; (~~xii~~iv) all entities known or reasonably believed by the Debtors to have asserted a lien, encumbrance, claim or other interest in any of the ~~Tier II~~Additional Stores that are the subject of the proposed transaction (for whom identifying information and addresses are available to the Debtors); (~~xiii~~v) all entities known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to any of the assets offered for sale during the past twelve (12) months; ~~and~~ (~~xiv~~vi) all of the labor unions that represent employees of any ~~Tier II~~Additional Stores that is the subject of the proposed transaction~~.~~; and (vii) all non-Debtor parties to any executory contracts or unexpired leases proposed to be assumed and assigned pursuant to the proposed

---

[1] To the extent any of the secured Consultation Parties have been paid in full, such parties shall no longer be Consultation Parties for purposes of these procedures.

transaction, and their counsel of record, if any, including counsel for the New York Community Bank ("**NYCB**"), to the extent the proposed transaction includes a Store in which NYCB asserts an interest as licensee.

III.    ***Auction Procedures***

A.    If the Debtors determine, in consultation with their sole discretionConsultation Parties, to hold an auction in connection with a one or more sale or disposition transactions in connection with one or more of the Tier IIAdditional Stores with the same party or related parties (a "Tier II Transaction"), the Debtors shall file and serve on the Transaction Notice Parties an Auction Notice and shall schedule an auction on a date that is at least fourteen (14) days after service of the Auction Notice.

    1. If the Debtors propose to assume and assign any executory contract or unexpired lease in connection with such Tier II Transaction, the Debtors shall also comply with the Lease Assumption and Assignment Procedures set forth in Section VI below.

B.    The Auction Notice shall set forth (i) the date, time and location of the auction and (ii) any rules for the auction that the Debtors determine, in their reasonable business judgment, and in consultation with the Consultation Parties, are appropriate to promote the goal of thea spirited and robust auction (i.e. to maximize the consideration to be received by the Debtors), including without limitation, a deadline for submitting bids, criteria bidders must meet in order to participate in the auction (including a requirement to make a good faith deposit of 10% of the proposed purchase price or such other amount as the Debtors, in consultation with the Consultation Parties, may determine in their sole discretion), the purchase price and terms on which the bidding at the auction will start and the criteria for minimum overbids.

C.    In connection with any auction, subject to section C(1)-C(3) below, the Debtors may, but are not obligated to, designate a stalking horse (the "**Stalking Horse**") and offer a breakup fee and/or expense reimbursement to the stalking horse (the "**Bid Protections**"); provided that the Bid Protections shall not exceed 3% of the cash portion of the Stalking Horse's bid.  In the event the Debtors determine to designate a Stalking Horse, the Auction Notice shall identify the material terms of the Debtors' agreement with the Stalking Horse, including the terms and conditions of any Bid Protections.

    1.    Any objections to the Bid Protections (the "**Bid Protection Objections**") must be filed with the Court and served on the

WEIL:\95422957\1\50482.0004WEIL:\95422957\7\50482.0004

Debtor Notice Parties and the Creditors' Committee within five (5) business days after service of the Auction Notice.

2. If ana Bid Protection oObjection is timely and properly filed with the Court and served on the Debtor Notice Parties, the Court will hold a hearing to resolve anyand the Creditors' Committee, the auction shall not be conducted until such time as the Bid Protection Objections on a date that is at least five (5) days prior to the scheduled auctionis resolved consensually, by agreement of the objecting party and the Debtors, in consultation the Consultation Parties, or by order of the Court.

3. In the event no Bid Protection Objections are timely and properly filed with the Court and served on the Debtor Notice Parties and the Creditors' Committee, the Bid Protections shall be deemed approved by the Court, without the need for further Court order.

D. Before the conclusion of the auction, the Debtors shall determine, in consultation with their sole discretionConsultation Parties, the highest or otherwise best offer or collection of offers (the "**Successful Bid**").[1]

E. A scheduled auction may be adjourned or cancelled as the Debtors deem appropriate, in consultation with the Consultation Parties.  In the event that an auction is cancelled, the Debtors will proceed to file a Transaction Notice (defined below) or Transaction Motion (defined below), as applicable.

IV. *Tier II Transactions –Less Than $25,000,000.00.*

Notwithstanding the foregoing, the Debtors may, in their reasonable discretion, enter into a Transaction without an auction, subject to the Transaction Approval Procedures set forth below.

IV. *Transaction Approval Procedures*

A. Small Transactions – $10,000,000.00 or Less.  If, with respect to a Tier II Transaction, (i) the Successful Bid or (ii) the consideration to be received by the Debtors pursuant to a private Tier II Transaction, as applicable, is less than $2510,000,000.00 (a "NoticedSmall Transaction"), the Debtors, in consultation with the Consultation Parties, shall file a notice of such Tier IISmall Transaction (a "**Small Transaction Notice**") with the Court, in the form attached to the

---

[1] In evaluating bids, the Debtors may take into consideration the non-binding factors set forth in the Global Bidding Procedures.

~~Motion~~Order as Exhibit ~~B, and serve the Transaction Notice on the Transaction Notice Parties~~2.

~~1. If the Debtors propose to assume and assign any executory contract or unexpired lease in connection with such Noticed Transaction, the Debtors shall also comply with the Lease Assumption and Assignment Procedures set forth in Section VI below.~~

~~B. Any objections to a Noticed Transaction must be filed with the Court and served on the Debtor Notice Parties within seven (7) days after service of the Transaction Notice.~~

~~C. If an objection is timely and properly filed with the Court and served on the Debtor Notice Parties, (i) the objection will be deemed a request for a hearing on the Noticed Transaction and objection and will be heard at the next scheduled omnibus hearing in these chapter 11 cases that is at least seven (7) days after service of the objection (provided that the Debtors reserve the right to seek a hearing on the Noticed Transaction and objection prior to such time) and (ii) the Noticed Transaction may not proceed absent (a) withdrawal of the objection or (b) entry of an order by the Court specifically approving the Noticed Transaction.~~

~~D. If no objection is timely and properly filed with the Court and served on the Debtor Notice Parties, such Noticed Transaction will be deemed final and fully authorized by the Court under the terms of the Order approving these Global Sale and Lease Authorization Procedures, and no further notice or Court approval to consummate the Noticed Transaction will be required or necessary.~~

~~V. *Tier II Transactions - $25,000,000.00 or Greater*~~

B.    ~~A.~~ Large Transactions – Greater than $10,000,000.00.  If, with respect to a ~~Tier II~~ Transaction, (i) the Successful Bid or (ii) the consideration to be received by the Debtors pursuant to a private ~~Tier II~~ Transaction, as applicable, is ~~$25,000,000.00 or~~ greater than $10,000,000.00 (a "**Large Transaction**"), the Debtors shall file with the Court ~~and serve on the Transaction Notice Parties~~ a motion (the "**Large** Transaction Motion") for approval of the ~~Tier II~~Large Transaction, which motion will be heard at a hearing ~~to approve the transaction~~ on a date that is at least ~~fourteen~~seventeen (~~14~~17) days after service of the Large Transaction Motion.  The Large Transaction Motion shall describe the auction ~~that was held~~, if applicable, or explain why the Debtors believe an auction is not necessary to maximize the value the Debtors will receive pursuant to the Large ~~t~~Transaction~~.~~  The Large Transaction Motion will include a proposed order (the "**Proposed Transaction Order**") approving the

12

Large Transaction, including the assumption and assignment of any executory contracts or unexpired leases in connection therewith.

1. If the Debtors propose to assume and assign any executory contract or unexpired lease in connection with such Tier II Transaction, the Debtors shall also comply with the Lease Assumption and Assignment Procedures set forth in Section VI below.

B. Any objections to a Transaction Motion must be filed with the Court and served on the Debtor Notice Parties within seven (7) days after service of the Transaction Motion.

C. If no objections are timely and properly filed with the Court and served on the Debtor Notice Parties, the Debtors shall certify to the Court that there were no timely objections to the Transaction Motion, and request entry of the proposed order attached to the Transaction Motion.

VI. **Lease Assumption and Assignment Procedures**.  The Debtors shall comply with these Lease Assumption and Assignment Procedures in connection with any Tier II Transaction where the Debtors propose to assume and assign an executory contract or unexpired lease.

C. A. Assumption and Assignment NoticeInformation.  If Tthe Debtors will file a notice (the "**Assumption and Assignment Notice**")propose to assume and assign an executory contract or unexpired lease in accordance with these procedures, whichconnection with a Transaction, the Small Transaction Notice or Large Transaction Motion, as applicable, shall set forth the following information (the "**Assumption and Assignment** Notice shall set forth**Information**"), among other things;: (i) the executory contract or unexpired lease to be assumed and assigned; (ii) the name(s) and address(es) of each counterparty to such executory contract or unexpired lease; (iii) the proposed effective date of the assumption and assignment for such executory contract or unexpired lease, which date shall be the effective date of the Tier II Transaction; (iv) the proposed cure amount, if any; (v) the name(s), address(es), phone number and email address of the proposed assignee(s) of such executory contract or unexpired lease; (vi) a certification that each assignee has demonstrated toby the Debtors that the assignee has provided information to each affected counterparty of such executory contract or unexpired lease demonstrating the assignee's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, the assignee's financial wherewithal and willingness to perform under such executory contract or unexpired lease (such information, the "**Adequate Assurance Information**"); and (vii) the deadlines and procedures for filing objections to the Aassumption and Aassignment Notice (as set

forth below)of any executory contracts or unexpired leases in connection with the Transaction.

B. Service of the Assumption and Assignment Notice.  The Debtors will cause the Assumption and Assignment Notice to be served on each non-Debtor counterparty to such executory contract or unexpired lease (collectively, the "**Cure Notice Parties**").

D.    Service of the Small Transaction Notice or the Large Transaction Motion and the Adequate Assurance Information.  The Debtors shall serve the Small Transaction Notice or the Large Transaction Motion, as applicable, on the Transaction Notice Parties by email, mail, facsimile or overnight delivery.  In addition, the Debtors shall cause to be served by email and overnight mail on each non-Debtor counterparty to an executory contract or unexpired lease proposed to be assumed and assigned pursuant to the Transaction and their counsel of record, if any (collectively, the "**Cure Notice Parties**") the Adequate Assurance Information.  The Cure Notice Parties shall review the Adequate Assurance Information on a confidential basis.  Any objection which discloses confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s).  The Order approving these Discrete Sale and Lease Authorization Procedures shall authorize the filing of any such objections under seal, and on the docket with such non-public information redacted, without further order of the Court.

E.    C. Objection Procedures.  Parties objecting to a Transaction, including the proposed assumption and assignment of an executory contract or unexpired lease in connection therewith, including to the proposed cure amount, must file and serve a written objection so that such objection is filed with the Court and is actually received by the Debtors Notice Parties and the Creditors' Committee no later than seventen (710) days after the date the Debtors serve the relevant Assumption and Assignment Notice (the "**Assumption and Assignment**Small Transaction Notice or Large Transaction Motion, as applicable (the "**Objection Deadline**").

F.    D. Event of No Objection.  If an objection is not timely and properly filed and served by the Assumption and Assignment Objection Deadline, then:

1.    with respect to the assumption and assignment of any executory contract or unexpired lease pursuant to the Transaction, (i) the Debtors' proposed cure amount shall be binding upon each non-Debtor party to such executory contract or unexpired lease for all purposes in the Debtors' chapter 11 cases and will constitute a final determination of the assumption and no additional cure

14

amounts shall be due; (ii) each non-Debtor party to such executory contract or unexpired lease will be deemed to have received adequate assurance of future performance; (iii) the effective date of such assumption and assignment will be the effective date of the ~~Tier II~~ Transaction; ~~and~~ (iv) any provisions in such executory contract or unexpired lease that prohibit or condition assignment thereof or, as a result of such assignment, allow the parties thereto to terminate, recapture, impose any penalty or fee, place a condition on renewal or extension, or modify any term or condition upon the assignment thereof, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Small Transaction or Large Transaction, as the case may be; (v) to the extent such executory contract or unexpired lease is actually assigned to the proposed assignee, in accordance with section 365 of the Bankruptcy Code, such assignee shall be deemed to be substituted for the Debtors, and shall be fully and irrevocably vested with all rights, title, and interest of the Debtors thereunder, and such executory contract or unexpired lease shall be in full force and effect and enforceable in accordance with its respective terms; and (vi) pursuant to section 365(k) of the Bankruptcy Code, after the assignment by the Debtors of such executory contract or unexpired lease, the Debtors shall ~~submit a proposed order to the Court granting the unopposed requested relief, together with a statement that there were no timely objections to the proposed relief.~~ have no liability for any breach thereof that occurs after such assignment.

2. with respect to a Small Transaction, such Small Transaction, including the assumption and assignment of any executory contract or unexpired lease in connection therewith, will be deemed final and fully authorized by the Court under the terms of the Order approving these Discrete Sale and Lease Authorization Procedures, and no further notice or Court approval to consummate the Small Transaction or such assumption and assignment, will be required or necessary; and

3. with respect to a Large Transaction, the Debtors shall certify to the Court that there were no timely objections to the Large Transaction Motion and request entry of the Proposed Transaction Order.

G. ~~E.~~ Unresolved Objections.  If any objections ~~to the assumption and assignment of such executory contract or unexpired lease is~~ are timely filed and ~~not withdrawn or resolved~~ served by the Objection Deadline, the Debtors shall try to negotiate a consensual resolution with ~~each non-Debtor party to such executory contract or unexpired lease~~ the objecting

WEIL:\95422957\1\50482.0004 WEIL:\95422957\7\50482.0004

parties.  If the Debtors ~~and each non Debtor party to such executory contract or unexpired lease~~ are unable to consensually resolve all objections within three (3) days after ~~Assumption and Assignment~~the Objection Deadline~~, (i) the Debtors will file a notice for a hearing for the Court to consider the objection(s) at the next available omnibus hearing or such other date as the Debtors may request or (ii) such objection will be heard at the hearing on the Tier II Transaction, if applicable.  If such~~:

1.  with respect to a Small Transaction, the objection will be deemed a request for a hearing on the Transaction and the Debtors will file a notice for a hearing for the Court to consider the Transaction at a hearing that is at least seven (7) days after service of the objection (provided that the Debtors reserve the right to seek a hearing on the Transaction and objection prior to such time), and such notice will include a proposed form of order approving such Small Transaction, including the assumption and assignment of any executory contracts or unexpired leases in connection therewith;

2.  with respect to a Large Transaction, the objection will be heard on the hearing date set forth in the Large Transaction Motion;

3.  the Debtors may file a reply at least two (2) days before any such hearing;

4.  the Transaction may not proceed absent (a) withdrawal of the objection or (b) entry of an order by the Court specifically approving the Transaction;

5.  if any objection to the assumption or assignment of an executory contract or unexpired lease is overruled or withdrawn, such executory contract or unexpired lease shall be assumed with the effective date of such assumption and assignment to be the effective date of the ~~Tier II~~ Transaction~~.~~; and

6.  to the extent an objection relates solely to a disputed cure amount, the Court may enter an order approving the Transaction, including the assumption and assignment of the executory contract or unexpired lease, subject to (i) the counterparties' right to be heard at a later hearing date on the cure and (ii) the below requirements regarding payment of the cure amount.

H.  ~~F.~~ Payment of Cure Amount.  All undisputed cure amounts shall be paid at the closing of the relevant ~~Tier II~~ Transaction.  Any disputed cure amount must be paid by the earlier of (i) when the Debtors and the non-Debtor counterparty agree to a cure amount or (ii) within five (5) days

after the date of the entry of ~~an~~a final order by the Court determining an amount.  In the event that a cure amount relative to any assumed and assigned executory contract or unexpired lease, whether disputed or undisputed, is not paid in accordance with this subsection (H), then the assumption and assignment of such executory contract or unexpired lease shall be null and void five (5) days after the filing and service by either the assignor or a contract or lease counterparty of a Notice of Non-Payment of Cure Amount in this case, if such cure amount is not paid within the five (5) day period after the filing of the Notice of Non-Payment of Cure Amount.  The party filing the Notice of Non-Payment of Cure Amount shall serve same (A) by overnight mail upon the non-Debtor executory contract or unexpired lease counterparties affected by the Assumption and Assignment Notice, if applicable; and (B) and by email on the applicable assignee, the Debtor Notice Parties and the Creditors' Committee.

WEIL:\95422957\1\50482.0004WEIL:\95422957\7\50482.0004