Elise S. Frejka, CIPP/US
*Consumer Privacy Ombudsman*
FREJKA PLLC
733 Third Avenue, 15TH Floor
New York, New York 10017
Telephone: (212) 641-0800
efrejka@frejka.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
In re                                                            :    Chapter 11
                                                                 :
THE GREAT ATLANTIC & PACIFIC TEA                                 :    Case No.: 15-23007 (RDD)
COMPANY, INC., *et al.*,                                         :
                                                                 :    (Jointly Administered)
                                Debtors.                         :
                                                                 :
---------------------------------------------------------------- X

## REPORT OF THE CONSUMER PRIVACY OMBUDSMAN – RITE AID SALE

Elise S. Frejka, the duly appointed consumer privacy ombudsman[1] in the above-captioned cases (the "Ombudsman"), files this report (the "Report"), pursuant to sections 332(b) and 363(b)(1)(B) of chapter 11, title 11, United States Code (the "Bankruptcy Code"), to assist the Bankruptcy Court in its consideration of the facts, circumstances and conditions of the proposed sale of personally identifiable information ("PII"),[2] including protected health

---

[1] See Order Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman (ECF No. 520); Notice of Appointment of Consumer Privacy Ombudsman (ECF No. 523).

[2] Pursuant to 11 U.S.C. § 101(41A), [t]he term "PII" means—

    (A) if provided by an individual to the debtor in connection with obtaining a product or a service from the debtor primarily for personal, family, or household purposes—

        (i) the first name (or initial) and last name of such individual, whether given at birth or time of adoption, or resulting from a lawful change of name;
        (ii) the geographical address or a physical place of residence of such individual;
        (iii) an electronic address (including an e-mail address) of such individual;
        (iv) a telephone number dedicated to contacting such individual at such physical place of residence;
        (v) a social security account number issued to such individual; or
        (vi) the account number of a credit card issued to such individual[.]

11 U.S.C. § 101(41A)

information ("PHI"),³ of customers of The Great Atlantic & Pacific Tea Company, Inc., A&P Live Better, LLC, Super Fresh Food Markets, Inc. and Pathmark Stores, Inc. (collectively, the "Debtors") to Eckerd Corporation, Rite Aid of New Jersey, Inc., Thrift Drug, Inc., and Rite Aid of Pennsylvania, Inc. (collectively, "Rite Aid") pursuant to an Asset Purchase Agreement dated August 20, 2015 (the "Asset Purchase Agreement").

### RECOMMENDATION

After a review of the facts and circumstances, and as more fully discussed in this Report, the Ombudsman recommends that the Bankruptcy Court approve the proposed sale and transfer of certain of the Debtors' hard copy and electronic prescription files and records, pharmacy customer lists and patient profiles (the "Pharmacy Records"), subject to the following recommendation to be included in any order approving the sale of the Pharmacy Records to Rite Aid:

- Rite Aid, at Rite Aid's expense, shall notify by mail each customer who has had a prescription filled or refilled at any of the pharmacy locations to be acquired by Rite Aid within the two (2) years prior to the Closing Date of the Sale, including notice of the transfer of the Pharmacy Records.

The Ombudsman believes implementation of this recommendation will adequately address the transfer of PII in a manner that protects consumers' PII, including PHI, while facilitating the sale for the benefit of the Debtors' estates.

---

3  The privacy of consumers' personally identifiable medical information is regulated by The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (Pub. L. 104-191), the Health Information Technology for Economic and Clinical Health Act ("HITECH Act"), 45 C.F.R. § 164.504, and various regulations promulgated under those laws, including The Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules under the Health Information Technology for Economic and Clinical Health Act and the Genetic Information Nondiscrimination Act; Other Modifications to the HIPAA Rules (the "Omnibus Rule"), 78 Fed. Reg. 5566 (Jan. 25, 2013). The term PHI is defined in the Privacy Rule issued under HIPAA to mean any information held by a health care provider or other "Covered Entity" that identifies, or reasonably could be used to identity, an individual, and that relates to physical or mental health, the provision of health care to an individual, or payment for health care. 45 C.F.R. § 164.504. The Debtors and Rite Aid are each a "Covered Entity" under HIPAA.

## BACKGROUND

### The Sale Motion

1. On July 19, 2015 (the "Petition Date") the Debtors and certain of their affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. On August 20, 2015, the Debtors filed a Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 6004 for Approval of the Sale of Certain Pharmaceutical Assets. (ECF No. 619) (the "Sale Motion").  The assets to be sold pursuant to the Sale Motion include, among other things, the Pharmacy Records.

### Review of the Debtors' Privacy Policies and Practices

3. In performing her duties, the Ombudsman has relied upon and reviewed, among other things, the following:

   a. The Debtors' Health Information Privacy Policy in effect on the Petition Date, the Notice of Privacy Practices in effect on the Petition Date for each of the Debtors, and Rite Aid's Notice of Privacy Practices;

   b. Telephonic and email interviews and discussions with (i) counsel for the Debtors and (ii) Robin Page, Vice President of Pharmacy and HIPAA Privacy Officer for the Debtors;

   c. The Sale Motion and the Proposed Sale Order (ECF No. 625);

   d. The Debtors' privacy practices and collection procedures concerning PII and PHI with respect to the Pharmacy Records, including the Debtors' database maintenance procedures for PHI, and their procedures for the sharing and use of such information.  In connection therewith, the following relevant facts were provided to the Ombudsman by Ms. Page: (i) the Debtors maintain PHI in a secure database; (ii) PHI is segregated from PII collected through, among other things, customer loyalty programs; (iii) PHI was collected, maintained and used pursuant to a written privacy policy; and (iv) the Debtors have complied or will comply to the extent applicable with state laws regulating the sale and transfer of pharmaceutical assets;

   e. Applicable United States federal and state privacy laws, regulations, enforcement actions, guidance and industry best practices; and

   f. The Asset Purchase Agreement.

3

## ANALYSIS

4. Section 363(b)(1) of the Bankruptcy Code governs a debtor's ability to "use, sell, or lease" PII, including PHI. Generally, a debtor may sell PII if such sale is not inconsistent with the debtor's privacy policy in effect on the Petition Date.[4]

5. Section V of the Debtors' U.S. Pharmacy Notice of Privacy Practices provides, in relevant part:

> We will obtain your written authorization before using or disclosing PHI about you for purposes other than those provided above or as otherwise permitted by law. Your authorization is required for any use or disclosure of PHI for marketing communications or sale of PHI that involves financial remuneration to the Company.

6. Under § 164.508 of the Privacy Rule of HIPAA, a "Covered Entity" may use and disclose PHI for purposes not otherwise permitted under that rule, if the covered entity has obtained written authorization from the subject of the PHI. Similarly, under section 13405(d)(1) of the HITECH Act, a covered entity may not receive direct or indirect remuneration in exchange for the disclosure of PHI unless the covered entity had obtained an authorization consistent with § 164.508. The Omnibus Rule added § 164.502(a)(5)(ii) to the Privacy Rule, which permits the disclosure of PHI without a prior written authorization in certain limited circumstances, including a sale of PHI. Specifically, when a "Covered Entity" seeks to transfer PHI pursuant to a sale, transfer, merger or consolidation with another "Covered Entity," written consent of a consumer is not required.[5] The proposed sale of the Pharmacy Records is therefore permitted by law and consistent with the Debtors' privacy practices and should be approved provided that any order approving the sale be conditioned on the requirement that customers be given actual notice of the sale and transfer of their PHI.

---

[4] See 11 U.S.C. § 363(b)(1).

[5] See 45 C.F.R. § 164.502(a)(5)(ii).

4

**CONCLUSION**

7.      In summary, the Ombudsman believes that the recommendation set forth in this Report, if incorporated in any order approving the sale of the Pharmacy Records, strikes an appropriate balance between the privacy rights of consumers and the practical considerations associated with the sale of the Pharmacy Records and is consistent with relevant federal and state laws concerning such transfers.

Dated:  New York, New York
        August 23, 2015

                                        RESPECTFULLY SUBMITTED,

                                        _____
                                        Elise S. Frejka, CIPP/US
                                        Consumer Privacy Ombudsman