WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re                                                             :
                                                                  :        **Chapter 11**
**THE GREAT ATLANTIC & PACIFIC TEA**              :
**COMPANY, INC.,** *et al.*,                              :        **Case No. 15-23007 (RDD)**
                                                                  :
          **Debtors.**[1]                                    :        **(Jointly Administered)**

-------------------------------------------------------------x

## NOTICE OF OMNIBUS REJECTION OF CERTAIN
## UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES

On July 19, 2015 (the "**Commencement Date**"), The Great Atlantic & Pacific

Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively,

the "**Debtors**"), each commenced with the United States Bankruptcy Court for the Southern

District of New York (the "**Bankruptcy Court**") a voluntary case under chapter 11 of title 11 of

the United States Code (the "**Bankruptcy Code**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc. (3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

PLEASE TAKE NOTICE that, on the Commencement Date, the Debtors filed the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365 and 554 for Approval of (I) Global Procedures for (A) Store Closings, (B) the Expedited Sale, Transfer, or Abandonment of De Minimis Assets, and (C) Rejecting Unexpired Nonresidential Real Property Leases, and (II) Entry into a Liquidation Consulting Agreement* [Docket No. 20] (the "**Motion**").  The Motion was supplemented on July 26, 2015 [Docket No. 178].   On August 13, 2015, the Bankruptcy Court entered the order granting the Motion on a final basis [Docket No. 546] (the "**Order**").[2]

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Order, the Debtors hereby provide notice of their intent to reject the leases identified on **Exhibit "A"** attached hereto (collectively, the "**Leases**").

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Order, the rejection of the Leases shall become effective on September 14, 2015 (the "**Rejection Date**"),   which will be the later of: (i) service of this "Notice of Rejection of Certain Nonresidential Real Property Leases" (the "**Rejection Notice**"); or (ii) the delivery of the keys, key codes, and alarm codes to the premises to the applicable lease counterparty and (x) the Debtors' unequivocal surrender of the leased premises in broom clean condition with all property that is not owned by the lease and sublease counterparty removed from the premises including any and all hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) materials, or (y) five business (5) days after the Abandonment Notice is sent to applicable third parties, without further notice, hearing or order of this Court.

---

[2] A copy of the Order is attached hereto as **Exhibit "B"** and capitalized terms used herein but not defined shall have the meanings ascribed to them in the Order.

**PLEASE TAKE FURTHER NOTICE** that, should you object to the Debtors' rejection of the Leases, you must file and serve a written objection so that such objection is filed with the Bankruptcy Court and **<u>actually received</u>** no later than 10 calendar days after the date that the Debtors served this Rejection Notice on the following parties (the "**Notice Parties**"): (i) counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn.:  Ray C. Schrock, P.C., Garrett A. Fail, Esq. and Sunny Singh, Esq.; (ii) counsel to the Creditors' Committee, Pachulski, Stang, Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017, Attn: Bradford J. Sandler, Esq., Robert Feinstein, Esq.; and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York, Attn:  Brian Masumoto, Esq.

**PLEASE TAKE FURTHER NOTICE that absent such an objection being filed and served in compliance with the foregoing, the rejection of the Leases shall become effective as of the Rejection Date without further notice, hearing or order of the Bankruptcy Court.**

**PLEASE TAKE FURTHER NOTICE** that, if an objection is properly filed and served on the Notice Parties as specified above, the Bankruptcy Court will schedule a hearing to consider that objection.  If the Bankruptcy Court upholds the objection and determines the effective date of rejection of such Lease, that date shall be the rejection date.  If such objection is overruled or withdrawn or the Bankruptcy Court does not determine the date of rejection, the rejection date of such Lease shall be deemed to have occurred on the Rejection Date.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, if the Debtors have deposited monies with a lessor as a security deposit or arrangement, such

lessor or contract counterparty may not off-set or otherwise use such deposit without prior authorization from the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion is available at https://cases.primeclerk.com/aptea.  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at https://ecf.nysb.uscourts.gov.

Dated: September 3, 2015
      New York, New York

/s/ Garrett A. Fail_____
Ray C. Schrock, P.C.
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\95454297\1\50482.0004

**Exhibit A**

**Rejected Leases**

| DEBTOR ENTITY | REAL PROPERTY LEASE ADDRESS | STORE ID NUMBER | LANDLORD | LEASE EXPIRATION DATE |
|---|---|---|---|---|
| A&P Real Property, LLC | 325 Route 35 Cliffwood, NJ 07721 | 70597 | Basser-Kaufman of Matawan, L.L.C. | 3/31/2023 |
| A&P Real Property, LLC | 895 Paulison Avenue Clifton, NJ 07011 | 72185 | Clifton Grocery Owners, LLC | 3/31/2033 |
| A&P Real Property, LLC | 2105 Philadelphia Pike Claymont, DE 19703 | 70562 | C'PIA, L.L.C. | 4/30/2020 |
| A&P Real Property, LLC | 1301 Skippack Pike Center Square, PA 19422 | 70314 | Center Square Plaza Associates | 5/22/2020 |
| A&P Real Property, LLC | 863 E. Baltimore Pike Kennett Square, PA 19348 | 70244 | East Marlboro Associates | 8/31/2017 |
| A&P Real Property, LLC | 85 Franklin Mills Boulevard Philadelphia, PA 19154 | 76723 | U.S. Bank National Association, as Trustee | 11/30/2020 |
| A&P Real Property, LLC | 200 South Best Avenue Walnutport, PA 18088 | 76363 | Walnutport Associates | 6/30/2021 |
| A&P Real Property, LLC | 400-450 W. Swedesford Road Devon, PA 19312 | 76248 | Echo Swedesford Associates, LP | 4/30/2021 |
| A&P Real Property, LLC | 3901 Lancaster Pike Wilmington, DE 19805 | 72589 | Realty Income Wilmington Lancaster LLC | 11/30/2030 |
| A&P Real Property, LLC | 420 MacDade Boulevard Folsom, PA 19033 | 72567 | Garnat Co. | 5/31/2017 |

**Exhibit B**

**Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                        :
In re                                   :       Chapter 11
                                        :
THE GREAT ATLANTIC & PACIFIC TEA        :       Case No. 15-23007 (RDD)
COMPANY, INC., *et al.*,                :
                                        :       (Jointly Administered)
              Debtors.[1]               :
----------------------------------------------------------------x

### AMENDED FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, 365 AND 554 APPROVING (I) GLOBAL PROCEDURES FOR (A) STORE CLOSINGS, (B) THE EXPEDITED SALE, TRANSFER, OR ABANDONMENT OF DE MINIMIS ASSETS, AND (C) REJECTING UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES, AND (II) ENTRY INTO A LIQUIDATION CONSULTING AGREEMENT

Upon the motion (the "**Motion**")[2] of The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 365, and 541 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing the Debtors to (i) implement the Store Closing Procedures, (ii) sell, transfer or abandon De Minimis Assets pursuant to the De Minimis Asset Procedures, (iii) enter into a Liquidation Consulting Agreement, (iv) implement the Lease Rejection Procedures, and (v) reject the Initial Closing Stores' Leases identified on Exhibit 1 attached hereto, all as more fully set forth in the Motion;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc. (3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion or McGarry Declaration, as applicable.

and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.), consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b), and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given to the Notice Parties as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and a hearing having been held by the Court on July 27, 2015 to consider the interim relief requested in the Motion (the "**Interim Hearing**"), and the Court having entered an order granting the relief requested in the Motion on an interim basis (ECF No. 204); and a hearing having been held on August 10, 2015, to consider the relief requested in the Motion on a final basis (the "**Final Hearing**"); and upon the Declaration of Christopher W. McGarry Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**McGarry Declaration**"), filed contemporaneously with the Motion, the record of the Interim Hearing, the Final Hearing, and all of the proceedings had before the Court; and there being no objections to the Motion that have not been withdrawn or resolved by the terms of this Final Order; and the Court having found and determined that the relief sought in the Motion is a prudent exercise of business judgment, is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, the Court entered an order granting the Motion on a final basis; and the Debtors having sought the entry of this Amended Order to include two additional decretal paragraphs to memorialize agreements between the Debtors and parties in interest with respect to

2

the Motion; and good and sufficient cause appearing to grant such relief under Fed. R. Bankr. P.

9023, it is hereby

ORDERED that the Court's prior order granting the Motion on a final basis is

amended and superseded by this Amended Order; and it is further

ORDERED that the Motion is granted to the extent set forth herein; and it is

further

ORDERED that any objection to the relief sought in the Motion that has not been

previously withdrawn, waived, settled or resolved is hereby denied and overruled on the merits

with prejudice; and it is further

ORDERED that the Debtors are authorized, but not directed, pursuant to section

105(a), 363(b) and (f), 365 and 554 of the Bankruptcy Code, to conduct Store Closing Sales

pursuant to the following store closing procedures (the "**Store Closing Procedures**"):

1.      The Store Closing Sales will be conducted during normal business hours
or such hours as otherwise permitted by the applicable unexpired lease, and the
Debtors will abide by any applicable shopping center guidelines regarding
maintenance, security, and trash removal.

2.      The Store Closing Sales will be conducted in accordance with applicable
state and local "Blue Laws," and thus, where such a law is applicable, no Store
Closing Sales will be conducted on Sunday unless the Debtors have been
operating such stores on Sundays.

3.      All display and hanging signs used by the Debtors in connection with the
Store Closing Sales will be professionally lettered and all hanging signs will be
hung in a professional manner.  No additional restrictions will be imposed on the
Debtors that are not contained in the applicable lease. In addition, the Debtors will
be permitted to utilize exterior banners and sign-walkers.

4.      If Store Closing Sales are to be considered "final," conspicuous signs will
be posted in each of the affected stores to the effect that all sales are "final."

5.      The Debtors will not make any alterations to interior or exterior store
lighting, and will not use any type of amplified sound to advertise the Store
Closing Sales or solicit customers.

3

6.      No alterations will be made to the stores closed pursuant to the Store Closing Procedures (including the Initial Closing Stores, the "**Closing Stores**"), except as authorized pursuant to the applicable lease.  The hanging of exterior banners or other signage will not constitute an alteration to a store.

7.      No property of any landlord will be removed or sold during the Store Closing Sales.

8.      The Debtors will keep store premises and surrounding areas clear and orderly, consistent with past practices.

9.      The Liquidation Consultant, at the Debtors direction, will negotiate any particular modifications to the Store Closing Procedures with any landlord in regards to number and placement of signs or banners.

10.      The Debtors do not have to comply with lease provisions or covenants that are inconsistent with these procedures.

11.      The Debtors do not have to comply with the Liquidation Laws (as defined below).

12.      Pharmaceutical Assets will be sold or transferred in accordance with applicable state law.

13.      The Liquidation Consultant, on behalf and at the direction of the Debtors, may abandon De Minimis Assets in accordance with the De Minimis Asset Procedures.

14.      An unexpired nonresidential real property lease will be deemed rejected only in accordance with the Lease Rejection Procedures and will not be treated as De Minimis Assets.

provided that the Debtors and landlords of any Closing Store are authorized to enter into agreements modifying the Store Closing Procedures (each a "**Landlord Agreement**") without further order of the Court; provided further that such agreements do not have a material adverse effect on the Debtors or their estates; and it is further

ORDERED that the Debtors are authorized to sell or otherwise dispose of the Pharmaceutical Assets to the highest or best bidder(s) as identified by the Debtors in their business judgment and subject to applicable federal and state law, including, without limitation,

4

public health, safety and privacy requirements imposed by applicable non-bankruptcy law.  To

the extent applicable, the Debtors shall comply with the De Minimis Asset Sale Procedures, as

approved by this Court with respect to the Pharmaceutical Assets; and it is further

ORDERED  that, pursuant to section 363(f) of the Bankruptcy Code, the Store

Closing Assets being sold shall be sold free and clear of any and all mortgages, security

interests, conditional sales or title retention agreements, pledges, hypothecations, liens

(including, without limitation, all consensual, judicial and statutory liens), judgments,

encumbrances or claims of any kind or nature (including, without limitation, any and all

"claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation,

the liens and security interests of the Proposed DIP Lenders (collectively, the "**Liens and**

**Claims**"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the

same validity and enforceability, to the same extent, subject to the same defenses, and with the

same amount and priority as they attached to such assets immediately prior to the closing of the

applicable sale; and it is further

ORDERED that no entity, including, without limitation, utilities, landlords,

creditors and all persons acting for or on their behalf (but not Governmental Units, as defined in

section 101(27)) shall interfere with or otherwise impede the conduct of the Store Closing

Sales, or institute any action against the Debtors or landlords in any court (other than in this

Court) or before any administrative body which in any way directly or indirectly interferes

with, obstructs, or otherwise impedes the conduct of the Store Closing Sales; and it is further

ORDERED that any restrictions in any lease agreement, restrictive covenant, or

similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the

Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these

5

chapter 11 cases constitute a default under a lease or provide a basis to terminate the lease;

provided, the Store Closing Sales are conducted in accordance with the terms of this Final

Order, the Store Closing Procedures and any Landlord Agreement; and it is further

ORDERED that the Closing Stores may "go-dark" during the Store Closing

Sales and remain "dark" despite any lease restriction, real estate local act, local law, or

ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases

(or any lease provision that purports to increase the rent or impose any penalty for "going

dark") may not be enforced to hinder or interrupt the Store Closing Sales (and the "going dark"

under such leases shall not be a basis to cancel or terminate the leases); and it is further

ORDERED that, subject to applicable federal, state and local public health and

safety laws (the "**Safety Laws**"), and applicable tax, labor, employment, environmental, and

consumer protection laws, including consumer laws regulating deceptive practices and false

advertising (collectively, the "**General Laws**"), but excluding licensing or other requirements

governing the conduct of store closing, liquidation, or other inventory clearance sales, including

(but not limited to) state and local laws, statutes, rules, regulations, and ordinances (the

"**Liquidation Sale Laws**"), the Debtors are authorized to take such actions as necessary and

appropriate to conduct the Store Closing Sales without the necessity of a further order of this

Court, including, but not limited to, advertising the Store Closing Sales; and it is further

ORDERED that, provided the Store Closing Sales are conducted in accordance

with the terms of this Final Order, the Store Closing Procedures and any applicable Landlord

Agreement, and in light of the provisions in the laws of many local and state laws that exempt

court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance or

otherwise excused from compliance with any Liquidation Sale Laws, and are authorized to

6

conduct the Store Closing Sales in accordance with the terms of this Final Order without the necessity of compliance with any such Liquidation Sale Laws; and it is further

ORDERED that the Debtors shall be entitled to use sign walkers, hang signs, and/or interior or exterior banners advertising the Store Closing Sales in accordance with the Store Closing Procedures and any applicable Landlord Agreement, including, without limitation, advertising the Store Closing Sales as "store closing," "sale on everything," or similar themed sales and by means of media advertising, A-frames, banners, and similar signage, without further consent of any person and without compliance with the Liquidation Sale Laws. Provided that the use of banners and sign walkers is done in a safe and responsible manner, such sign walkers and banners, in and of themselves, shall not be deemed to be in violation of Safety Laws and/or General Laws; and it is further

ORDERED that each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any governmental unit shall be required, nor shall the Debtors be required to post any bond, to conduct the Store Closing Sales; and it is further

ORDERED that state and/or local authorities shall not fine, assess, or otherwise penalize the Debtors or any of the landlords of the Closing Stores for conducting or advertising the Store Closing Sales in a manner inconsistent with state or local law; provided, that the Store Closing Sales are conducted and advertised in a manner contemplated by this Final Order; and it is further

7

ORDERED that the Debtors may not transfer any Inventory or FF&E located at a Tier I Store or Tier II Store to any Initial Closing Store; and it is further

ORDERED that the Debtors shall reasonably consult with the Creditors' Committee and the DIP Agent (including providing information requested by the Creditors' Committee and/or the DIP Agent) in connection with (a) Store Closing Sales, (b) sales of Pharmaceutical Assets, and (c) any modification of the Store Closing Procedures; and it is further

ORDERED that the Debtors may conduct additional Store Closing Sales in accordance with the terms of this Final Order at locations other than the Initial Closing Stores by filing and serving the Notice Parties (as defined below) and any landlord at an affected location with (i) notice of intent to conduct a Store Closing Sale pursuant to this Final Order, and (ii) a copy of this Final Order.  The Notice Parties and affected landlord(s) will have 10 calendar days from the filing and service of the notice of intent to conduct additional Store Closing Sales to object to the terms of the Store Closing Procedures and request a hearing on the objection.  If no objection is filed, the Debtors may conduct Store Closing Sales at such locations in accordance with the terms of this Final Order; and it is further

**De Minimis Asset Procedures**

ORDERED that the Debtors are authorized, but not directed, to sell or transfer De Minimis Assets under the following procedures (the "**De Minimis Asset Sale Procedures**"):

(a)    For sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price, as measured by the amount of cash and other consideration to be received by the Debtors on account of the assets to be sold ("**Sale Price**"), less than or equal to $250,000:

(i)    the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business

8

judgment that such sales are in the best interest of the estates, without further order of the Court or notice to any party;

(ii)    any such transactions shall be free and clear of all liens, claims and encumbrances with such liens, claims and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as immediately prior to the transaction; and

(iii)    each purchaser of a De Minimis Asset will be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.

(b)    For sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a Sale Price greater than $250,000 and less than or equal to $5,000,000:

(i)    the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales are in the best interest of the estates, without further order of the Court, subject to the procedures set forth herein;

(ii)    any such transactions shall be free and clear of all liens, claims and encumbrances with such liens, claims and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as immediately prior to the transaction;

(iii)    each purchaser of a De Minimis Asset will be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser;

(iv)    the Debtors shall, at least five (5) business days prior to closing such sale or effectuating such transfer, serve a written notice of such sale or transfer by e-mail, facsimile, or overnight delivery service (each notice, a "**De Minimis Asset Sale Notice**") to (a) the U.S. Trustee; (b) proposed counsel to the Creditors' Committee; (c) any known affected creditor(s) and their respective counsel, if known, asserting a Lien and Claim on the relevant De Minimis Assets; (d) those parties requesting notice pursuant to Bankruptcy Rule 2002; (e) counsel to the DIP Agent (as defined in the DIP Orders); (f) counsel to each agent for the Debtors' Prepetition Secured Lenders; (g) majority holders of Senior Secured PIK Toggle Notes due 2017 issued by the Debtors; and (h) majority holders of Senior Secured Convertible Notes due 2018 (collectively, the "**Notice Parties**");

(v)    the content of the De Minimis Asset Sale Notice shall consist of:
- identification of the De Minimis Assets being sold or transferred and its location;

WEIL:\95404910\5\50482.0004

- identification of the purchaser of the assets and any relationship such party has with the Debtors;
- identification of any parties known to the Debtors as holding liens or encumbrances on the assets subject to the De Minimis Assets being sold and a statement indicating whether all such liens or encumbrances are capable of monetary satisfaction;
- the purchase price; and
- any other significant terms of the sale or transfer; and
- date and time within which objections may be filed and served on the Debtors;

(vi)    Objections, if any, must be in writing and served on the other Notice Parties and counsel to the Debtors so as to be received by all such parties prior to 4:00 p.m. (Eastern Time) on the fifth business day after service of the De Minimis Asset Sale Notice and must state with specificity the grounds for the objection;

(vii)   if no written objections are filed by any of the Notice Parties within five (5) business days of service of such De Minimis Asset Sale Notice, the Debtors are authorized to immediately consummate such transaction; and

(viii)  if a written objection is received from a Notice Party within such five (5) business day period that cannot be resolved, the objection will be deemed a request for a hearing on the objection at the next scheduled hearing, subject to adjournment by the Debtors, and the relevant De Minimis Asset(s) shall only be sold upon withdrawal of such written objection or further order of the Court specifically approving the sale or transfer of the De Minimis Asset(s);

and it is further

ORDERED that, the De Minimis Asset Sale Procedures shall not apply to any sales or transfers of assets that involve an employee or an "insider" of the Debtors as such term is defined in section 101(31) of the Bankruptcy Code; and it is further

ORDERED that sales of De Minimis Assets that are consummated pursuant to the De Minimis Asset Sale Procedures shall be deemed arm's-length transactions entitled to the protections of section 363(m) of the Bankruptcy Code; and it is further

10

ORDERED that the De Minimis Asset Sale Procedures shall not apply to any transaction that involves the assumption and the assignment of unexpired leases of nonresidential real property or the requirements of section 365 of the Bankruptcy Code; and it is further

ORDERED that the absence of an objection to the relief requested in the Motion combined with the absence of a timely objection to the sale or transfer of the De Minimis Assets in accordance with the terms of this Final Order shall be determined to be "consent" to such sale or transfer free and clear of Liens and Claims within the meaning of section 363(f)(2); and it is further

ORDERED that, except as specifically provided in the applicable sale or transfer document, sales and transfers of De Minimis Assets shall be free and clear of all Liens and Claims, with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately prior to the closing of the applicable sale; and it is further

ORDERED that the Debtors are authorized, but not directed, to abandon De Minimis Assets under the following procedures (the "**De Minimis Asset Abandonment Procedures**"):

(a)     For De Minimis Assets that the Debtors believe in their sound business judgment have a fair market value ("**Market Value**"), less than or equal to $250,000:

(i)     the Debtors are authorized to abandon such De Minimis Assets if the Debtors determine in the reasonable exercise of their business judgment that such abandonment is in the best interest of the estates, without further order of the Court or notice to any party; <u>provided</u> that the Debtors shall, at least five (5) business days prior to abandoning De Minimis Assets, serve notice of such abandonment by e-mail, facsimile or overnight delivery service (each notice, an "**Abandonment Notice**") on the landlord of the premises for which the De Minimis

WEIL:\95404910\5\50482.0004

Assets are being abandoned and its counsel, if known.

(b)     For De Minimis Assets that the Debtors believe in their sound business judgment have a Fair Market Value greater than $250,000 but less than or equal to $5,000,000:

(i)     The Debtors shall, at least five (5) business days prior to abandoning De Minimis Assets, serve an Abandonment Notice on the Notice Parties;

(ii)    the content of the Abandonment Notice shall consist of: (a) the location and identification of the De Minimis Assets being abandoned; and (b) a summary of the reasons for abandoning such De Minimis Assets;

(iii)   if a written objection is received from a De Minimis Notice Party within such five (5) business day period that cannot be resolved, the relevant De Minimis Assets shall only be abandoned upon withdrawal of such written objection or further order of the Court.

and it is further;

ORDERED that in addition to the Debtors' obligation to reasonably consult with the Creditors' Committee and the DIP Agent, the Debtors will file a report with the Court and serve on all parties entitled to notice in the cases, within 30 days after each calendar quarter, summarizing any sales, transfers, or abandonments consummated pursuant to the De Minimis Asset Procedures; and it is further

ORDERED that any personal property of the Debtors remaining at a Closing Store after the effective date of rejection of the lease shall be deemed abandoned as of the Rejection Date; and it is further

ORDERED that with respect any De Minimis Assets abandoned under the De Minimis Asset Abandonment Procedures herein and located at one of the Debtors' leased properties, the applicable landlord or other designee shall be free to dispose of such property without liability to any party and without further notice or order of the Court; provided, that

WEIL:\95404910\5\50482.0004

notwithstanding anything to the contrary in this Final Order, the Debtors are not authorized

hereunder to abandon, and are directed to remove, any hazardous (as such term is defined in

federal, state, or local law, rule, regulation or ordinance) materials at any premises subject to a

nonresidential real property lease or sublease.  Landlords' rights, if any, to file claims for the costs

of disposal of such property are fully reserved, as are the rights of any party in interest to object to

such claims; and it is further

ORDERED that service of the De Minimis Asset Sale Notice and/or the De

Minimis Asset Abandonment Notice is sufficient notice of the sale, transfer, and/or abandonment

of such De Minimis Assets; and it is further

ORDERED that the Debtors are authorized to pay those reasonable and necessary

fees and expenses incurred in the sale, transfer, or abandonment of De Minimis Assets, including

reasonable commission fees to agents, brokers, auctioneers and liquidators, if any; and it is further

ORDERED that any payment made or to be made under this Final Order, and any

authorization contained in this Final Order, shall be subject to the terms of the DIP Orders; and it

is further

## Lease Rejection Procedures

ORDERED that the following procedures for the Debtors' rejection of unexpired

nonresidential real property leases and/or subleases pursuant to section 365 of the Bankruptcy

Code (the "**Lease Rejection Procedures**") are hereby approved and established in the Debtors'

chapter 11 cases:

(a)     Rejection Notice.  The Debtors will file a notice (the "**Rejection Notice**")
substantially in the form attached hereto as **Exhibit 2** to reject the
identified unexpired lease(s) and/or sublease(s) pursuant to section 365 of
the Bankruptcy Code, which Rejection Notice shall set forth, among other
things: (i) the unexpired lease(s) and/or sublease(s) to be rejected; (ii) the
names and addresses of the counterparties to such unexpired lease(s)

WEIL:\95404910\5\50482.0004

and/or sublease(s); (iii) the proposed effective date of the rejection for each such unexpired lease(s) and/or sublease(s) ("**Rejection Date**"); and (iv) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below). The Rejection Notice shall include the proposed order approving rejection of the unexpired lease(s) and/or sublease(s) (the "**Rejection Order**").

(b)   Rejection Date.   The Rejection Date for any unexpired lease and/or sublease shall not be before the later of: (i) service of the Rejection Notice; or (ii) the delivery of the keys, key codes, and alarm codes to the premises to the applicable lease counterparty and (x) the Debtors' unequivocal surrender of the leased premises in broom clean condition with all property that is not owned by the lease and sublease counterparty removed from the premises including any and all hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) materials, or (y) five business (5) days after the Abandonment Notice is sent to applicable third parties, without further notice, hearing or order of this Court. The Rejection Date for any unexpired lease sublet to a third party and any related sublease shall not be before ten (10) calendar days after the service of the Rejection Notice.

(c)   Service of the Rejection Notice.   The Debtors will cause the Rejection Notice to be served by (i) overnight mail upon the unexpired lease or sublease counterparties, and their counsel, if known, affected by the Rejection Notice and (ii) e-mail upon the Notice Parties.

(d)   Objection Procedures.   Parties objecting to a proposed rejection must file and serve a written objection so that such objection is filed with the Court and is actually received by the Notice Parties no later than ten (10) calendar days after the date the Debtors serve the relevant Rejection Notice (the "**Rejection Objection Deadline**").

(e)   Event of No Objection.   Absent an objection being filed by the Rejection Objection Deadline, the Debtors shall submit the proposed Rejection Order within five (5) days of the Rejection Objection Deadline, together with a statement confirming the absence of any timely objections to the relief granted by the Rejection Order. The Rejection Order shall set forth the applicable bar date for filing claims arising from the rejection of such unexpired lease(s) and/or sublease(s) and the Rejection Date.

(f)   Unresolved Objections.   If an objection to the rejection of any unexpired lease(s) and/or sublease(s) is timely filed and not withdrawn or resolved, the Debtors shall file a notice for a hearing for the Court to consider the objection for the unexpired lease(s) and/or sublease(s) to which such objection(s) relates at the next scheduled omnibus hearing after the Rejection Objection Deadline, unless the Debtors and lease and sublease counterparties, as applicable, agree to an earlier hearing date and subject

WEIL:\95404910\5\50482.0004

to the Court's schedule. If such objection is overruled or withdrawn, such unexpired lease(s) and/or sublease(s) shall be deemed rejected as of the Rejection Date or such other date to which the Debtors and the counterparty to such unexpired lease(s) and/or sublease(s) have agreed or such other date as determined by the Court.

ORDERED that, pursuant to section 365 of the Bankruptcy Code, the Debtors' rejection of any unexpired nonresidential real property lease and/or sublease, in accordance with the Lease Rejection Procedures set forth in this Final Order is hereby approved; and it is further

ORDERED that the Debtors' rejection of the Initial Closing Store Leases pursuant to section 365(a) of the Bankruptcy Code is an exercise of the Debtors' sound business judgment and is in the best interest of the Debtors' estates and creditors; and it is further

ORDERED that, to the extent that the Debtors determine that property located in the Initial Closing Stores or any other premises that are the subject of any rejected unexpired nonresidential real property lease or sublease has little or no value or that the preservation thereof will be burdensome to their estates compared with the expense of removing and storing such property, the Debtors are authorized to abandon, in their sole discretion, such property as of the Rejection Date pursuant to section 554 of the Bankruptcy Code, consistent with the requirements set forth in the De Minimis Asset Abandonment Procedures; provided that the Debtors shall provide any known third party (and their counsel, if known) holding or asserting any Lien and Claim against such property, any known third party (and their counsel, if known) to a personal property lease pertaining to such property with five (5) business days prior notice of such Abandonment Notice and shall afford such third parties the opportunity to make arrangements to remove such property in a manner acceptable to the Debtors and the applicable landlords by the Rejection Date; and provided further, that the Debtors are not authorized, without further order of the Court, to abandon any hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) materials at any premises subject to a

unexpired lease and/or sublease and any such hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) materials shall be removed prior to the Rejection Date; and it is further

ORDERED that pursuant to section 554(a) of the Bankruptcy Code and Bankruptcy Rule 6007, the Debtors are authorized, in their sole discretion, to abandon their property located within an Initial Closing Store free and clear of any interests, effective as of the Rejection Date for such lease, and any property located on the premises of a lease that is rejected in accordance with the terms hereof shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code without further notice or order of this Court, free and clear of any interests of any other party, and any landlord or other designee shall be free to dispose of same without notice or liability to any party.  Landlords' rights, if any, to file claims for the costs of disposal of such property are fully reserved, as are the rights of all parties in interest to object to such claims; and it is further

ORDERED that the counterparties to unexpired nonresidential real property leases and/or subleases that are rejected pursuant to the Lease Rejection Procedures are hereby required to file a proof of claim relating to the rejection of such unexpired nonresidential real property leases and/or subleases, if any, by the later of (a) any applicable claims bar date established in these chapter 11 cases or (b) thirty (30) days after the entry of the Rejection Order; and it is further

ORDERED that the Lease Rejection Procedures shall not invalidate or modify any right the DIP Lenders and/or the DIP Agent may have to notice of any rejection of any unexpired nonresidential real property leases and/or subleases pursuant to the DIP Order; and it is further

16

ORDERED that the Lease Rejection Procedures comply with the requirements of Bankruptcy Rule 6006(f); and it is further

ORDERED that the approval of the Lease Rejection Procedures and this Final Order will not prevent the Debtors from seeking to reject an unexpired lease by separate motion; and it is further

## Liquidation Consulting Agreement

ORDERED that the Debtors are authorized to enter into a Liquidation Consulting Agreement with Gordon Brothers Retail Partners LLC, the Liquidation Consultant, in connection with the Initial Closing Stores; and it is further

ORDERED that the Debtors are authorized to establish a sinking fund in satisfaction of amounts due to the Liquidation Consultant under the Liquidation Consulting Agreement; and it is further

ORDERED that the Debtors are authorized, in their sole discretion and upon reasonable consultation with the DIP Agent and the Creditors' Committee, to enter into subsequent Liquidation Consulting Agreements on substantially similar or better terms with other Liquidation Consultants without further order of the Court; and it is further

ORDERED that any payment made or to be made under this Final Order, and any authorization contained in this Final Order, shall be subject to the terms of the DIP Orders; and it is further

ORDERED that notwithstanding anything herein to the contrary, (a) nothing in this Final Order shall in any way limit, subordinate, or constitute a waiver of any rights and priorities of claimants with trust rights under the Perishable Agricultural Commodities Act

WEIL:\95404910\5\50482.0004

("**PACA**") or the Packers and Stockyards Act ("**PASA**"), all such rights hereby being expressly reserved, and (b) nothing herein in any way purports to grant any liens or priorities contrary to the statutory trust protections afforded under PACA or PASA; and it is further

ORDERED that the rights and interests, if any, of Union County Realty Group LLC, solely with respect to the FF&E at the Debtors' store located at 651 N. Stiles Street, Linden, New Jersey 07036, operating under the Pathmark banner, are preserved and at least five (5) business days' notice shall be given to it and its counsel appearing on its behalf in these chapter 11 cases, before any sale of such FF&E; and it is further

ORDERED that nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order, other than as expressly provided for herein, is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; and it is further

ORDERED that notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are hereby waived; and it is further

ORDERED that notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry; and it is further

WEIL:\95404910\5\50482.0004

ORDERED that the Debtors are authorized to take all action necessary to carry out this Final Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

Dated: August 13, 2015
        White Plains, New York

/s/ Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE

20

**Exhibit 1**

**Initial Closing Stores**

**Rejection Schedule of Initial Closing Store Leases**

| STORE ID NO. | COUNTERPARTY-LANDLORD | DEBTOR | PROPERTY ADDRESS | LEASE EXPIRATION DATE |
|---|---|---|---|---|
| 70212 | Riverhead Centre, LLC | A&P Real Property, LLC | 1510 Old Country Rd. Riverhead, NY | Jul. 31, 2023 |
| 70213 | 3620 Long Beach Road LLC (as successor in interest to Nathan Serota) | A&P Real Property, LLC | 3620 Long Beach Rd Oceanside, NY | June 30, 2021 |
| 70244 | East Marlboro Associates | A&P Real Property, LLC | 863 E. Baltimore Pike Kenneth Square, PA | Aug. 31, 2017 |
| 70314 | Center Square Plaza Associates | A&P Real Property, LLC | 1301 Skippack Pike Center Square, PA | May 22, 2020 |
| 70343 | AVR CP-TWO, LLC | A&P Real Property, LLC | 2 Westbury Avenue Carle Place, NY | Aug. 31, 2015 |
| 70562 | C'PIA, LLC | A&P Real Property, LLC | Route 13 & Maple Rd (aka 2105 Philadelphia Pike) Claymont DE | Apr. 30, 2020 |
| 70597 | Basser-Kaufman of Matawan, L.L.C. | A&P Real Property, LLC | 325 Route 35 Cliffwood, NJ | Mar. 31, 2023 |
| 70656 | Holmdel Towne Center, LLC | A&P Real Property, LLC | 2101 Route 35 Holmdel, NJ | Mar. 31, 2018 |
| 70726 | Delaware 1851 Associates, LP | A&P Real Property, LLC | 1851 S. Christopher Columbus Blvd Philadelphia, PA | Sept. 30, 2020 |
| 72128 | BOIV Belleville MCB, LLC | A&P Real Property, LLC | 115 Belmont Ave Belleville, NJ | Jan. 31, 2034 |
| 72175 | Cliffpass SPE Corp., successor to Cliffpass Development, Inc. | A&P Real Property, LLC | Botany Plaza 85 Ackerman Ave Clifton, NJ | Mar. 31, 2017 |
| 72185 | Clifton Grocery Stores, LLC | A&P Real Property, LLC | 895 Paulison Ave Clifton, NJ | Mar. 31, 2033 |
| 72512 | Union County Realty Group LLC, as successor in interest to Valley Circle, Inc. | A&P Real Property, LLC | 651 North Stiles St Linden, NJ | Jan. 31, 2025 |
| 72535 | Wick Shopping Plaza Associates, L.L.C. | A&P Real Property, LLC | 561 Route 1, Unit B Edison, NJ | Oct. 31, 2017 |
| 72538 | MCB East Brunswick, LLC | A&P Real Property, LLC | 50 Race Track Rd East Brunswick, NJ | Oct. 31, 2033 |
| 72564 | OLP-MCB Philly-Cottman, LP, as successor in interest to 840 Cottman Associates, LLC | A&P Real Property, LLC | 840 Cottman Ave. Philadelphia, PA | Sept. 30, 2021 |

| STORE ID NO. | COUNTERPARTY-LANDLORD | DEBTOR | PROPERTY ADDRESS | LEASE EXPIRATION DATE |
|---|---|---|---|---|
| 72567 | Garnet Company | A&P Real Property, LLC | 420 MacDade Blvd Folsom, PA | May 31, 2017 |
| 72581 | Old Bridge Plaza Associates, LLC | A&P Real Property, LLC | 1043 US Route 9 Old Bridge, NJ | Oct. 31, 2017 |
| 72582 | Indian Head Plaza Associates, successor in interest to Peter L. Levine | A&P Real Property, LLC | 1256 Indian Head Road Toms River, NJ | Jan. 31, 2020 |
| 72589 | Realty Income Corporation as successor to Inland Diversified Wilmington Lancaster, L.L.C. as successor to WE APP Wilmington LLC | A&P Real Property, LLC | 3901 Lancaster Pike Wilmington, DE | Nov. 30, 2030 |
| 72623 | New York Grocery DST | A&P Real Property, LLC | 1764 Grand Avenue, Baldwin NY | Nov. 30, 2030 |
| 72663 | Kimco Centereach, LLC | A&P Real Property, LLC | 2150 Middle Country Rd Centereach, NY | Sept. 30, 2020 |
| 76248 | Echo Swedesford Associates LP as successor in interest to 400 West Swedesford Road Holdings LLC, as successor in interest to Swedesford Shopping Center Acquisition, LLC | A&P Real Property, LLC | 400-450 W. Swedesford Rd Devon, PA | Apr. 30, 2021 |
| 76363 | Walnutport Associates | Super Fresh Food Markets, Inc. and/or A&P Real Property, LLC as successor in interest | 300 S. Best Ave & Main St Walnutport, PA | June 30, 2021 |
| 76723 | US Bank National Association, as successor in interest to Liberty Plaza Limited Partnership | A&P Real Property, LLC | 85 Franklin Mills Blvd Philadelphia, PA | Nov. 30, 2020 |

2

**EXHIBIT 2**

**Form Rejection Notice**

## NOTICE OF REJECTION OF CERTAIN
## UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES

**PLEASE TAKE NOTICE** that, on July 19, 2015 (the "**Commencement Date**"),

The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates, as debtors and

debtors in possession (collectively, the "**Debtors**"),[1] each commenced with the United States

Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a voluntary

case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**PLEASE TAKE FURTHER NOTICE** that, on the Commencement Date, the

Debtors filed the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365 and 554 for*

*Approval of (I) Global Procedures for (A) Store Closings, (B) the Expedited Sale, Transfer, or*

*Abandonment of De Minimis Assets, and (C) Rejecting Unexpired Nonresidential Real Property*

*Leases, and (II) Entry into a Liquidation Consulting Agreement* [Docket No. 20] (the "**Motion**").

The Motion was supplemented on July 26, 2015 [Docket No. 178].  On July 27, 2015 the

Bankruptcy Court entered the order granting the Motion on an interim basis [Docket No. 204]

and on [_____], 2015, entered the order granting the Motion on a final basis [Docket No. __]

(together, the "**Order**").  A copy of the Order is attached hereto and capitalized terms used

herein but not defined shall have the meanings ascribed to them in the Order.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Order, the Debtors hereby provide notice of their intent to reject the lease(s) referenced below (the "**Lease**"):

| | |
|---|---|
| 1) Landlord | |
| 2) Debtor Entity | |
| 3) Store ID Number | |
| 4) Real Property Lease Address | |
| 5) Expiration Date of Lease | |

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Order, the rejection of the Lease shall become effective (the "**Rejection Date**") as of the date that is the later of: (i) service of this "Notice of Rejection of Certain Nonresidential Real Property Leases" (the "**Rejection Notice**"); or (ii) the delivery of the keys, key codes, and alarm codes to the premises to the applicable lease counterparty and (x) the Debtors' unequivocal surrender of the leased premises in broom clean condition with all property that is not owned by the lease and sublease counterparty removed from the premises including any and all hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) materials, or (y) five business (5) days after the Abandonment Notice is sent to applicable third parties, without further notice, hearing or order of this Court.

PLEASE TAKE FURTHER NOTICE that, should you object to the Debtors' rejection of the Lease, you must file and serve a written objection so that such objection is filed with the Bankruptcy Court and **<u>actually received</u>** no later than 10 calendar days after the date that the Debtors served this Rejection Notice on the following parties (the "**Notice Parties**"): (i) counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New

2

York 10153, Attn.:   Ray C. Schrock, P.C., Garrett A. Fail, Esq. and Sunny Singh, Esq.; (ii) counsel to the Creditors' Committee, Pachulski, Stang, Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017, Attn: Bradford J. Sandler, Esq., Robert Feinstein, Esq.); and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York, Attn:  Brian Masumoto, Esq.

**PLEASE TAKE FURTHER NOTICE that absent such an objection being filed and served in compliance with the foregoing, the rejection of the Lease shall become effective as of the Rejection Date without further notice, hearing or order of the Bankruptcy Court.**

**PLEASE TAKE FURTHER NOTICE** that, if an objection is properly filed and served on the Notice Parties as specified above, the Bankruptcy Court will schedule a hearing to consider that objection.   If the Bankruptcy Court upholds the objection and determines the effective date of rejection of such lease, that date shall be the rejection date.  If such objection is overruled or withdrawn or the Bankruptcy Court does not determine the date of rejection, the rejection date of such lease shall be deemed to have occurred on the Rejection Date.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, if the Debtors have deposited monies with a lessor as a security deposit or arrangement, such lessor or contract counterparty may not off-set or otherwise use such deposit without prior authorization from the Bankruptcy Court.

3

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion is available at

https://cases.primeclerk.com/aptea.  You may also obtain copies of any pleadings filed in these

chapter 11 cases for a fee via PACER at https://ecf.nysb.uscourts.gov.

Dated: [_____], 2015
      New York, New York

                                                  _____
                                                  Ray C. Schrock, P.C.
                                                  Garrett A. Fail
                                                  WEIL, GOTSHAL & MANGES LLP
                                                  767 Fifth Avenue
                                                  New York, New York  10153
                                                  Telephone:  (212) 310-8000
                                                  Facsimile:  (212) 310-8007

                                                  *Proposed Attorneys for Debtors*
                                                  *and Debtors in Possession*

WEIL:\95404910\5\50482.0004