WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                       :
                                                            :   Chapter 11
**THE GREAT ATLANTIC & PACIFIC TEA**                        :
**COMPANY, INC., et al.,**                                  :   Case No. 15-23007 (RDD)
                                                            :
                         Debtors.[1]                        :   (Jointly Administered)
------------------------------------------------------------x

**SUPPLEMENTAL DECLARATION OF STEPHEN GOLDSTEIN IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 363, 365 AND 503 AND FED. R. BANKR. P. 2002, 6004 AND 6006 FOR APPROVAL OF: (I) (A) GLOBAL BIDDING PROCEDURES, (B) BID PROTECTIONS, (C) FORM AND MANNER OF NOTICE OF SALE TRANSACTIONS AND SALE HEARING, AND (D) ASSUMPTION AND ASSIGNMENT PROCEDURES; AND (II) (A) PURCHASE AGREEMENTS (B) SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, AND (C) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES**

Stephen Goldstein, pursuant to 28 U.S.C. § 1746, declares as follows:

1. My name is Stephen Goldstein. I am over the age of 18 and competent to testify to the matters set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

2. I am a Senior Managing Director of Evercore Group L.L.C. ("**Evercore**"), a financial advisory and investment banking firm with offices around the world. On March 12, 2015, Evercore was engaged to serve as investment banker to The Great Atlantic & Pacific Tea Company, Inc. ("**A&P**") and its affiliates as debtors and debtors in possession (collectively with A&P, the "**Debtors**") in the above-captioned chapter 11 cases (these "**Cases**").[2]

3. I submit this declaration to supplement my original declaration (ECF No. 251) (my "**Original Sale Declaration**") in support of the Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365 and 503 and Fed. R. Bankr. P. 2002, 6004 and 6006 for Approval of: (I) (A) Global Bidding Procedures, (B) Bid Protections, (C) Form and Manner of Notice of Sale Transactions and Sale Hearing, And (D) Assumption and Assignment Procedures; and (II) (A) Purchase Agreements (B) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, and (C) Assumption and Assignment of Certain Executory Contracts and Leases (Docket No. 26) (the "**Motion**")[3] and to update the Court and all parties in interest on the results of the process undertaken pursuant to the Global Bidding Procedures in these Cases with respect to Acme Markets, Inc. ("**Acme**") and The Stop & Shop Supermarket Company, LLC ("**Stop & Shop**").

4. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge of the Debtors' operations and finances, personal knowledge gleaned during the course of my engagement with the Debtors, my discussions with the Debtors' senior management or members of the Evercore team, my review of relevant documents, or my

---

[2] The deadline to bid on the stores subject to the stalking horse bid of Key Food Stores Co-Operative, Inc. was extended to 5:00 p.m. on September 21, 2015 in accordance with the Global Bidding Procedures. Parties have additional time to submit competing bids for those stores, and as of the filing of this declaration the Auction for those stores has not been cancelled.

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

2

opinion based upon experience, knowledge, and information concerning the Debtors' operations and financial affairs. I am authorized to submit this declaration. If called upon to testify, I could and would testify competently to the facts set forth herein.

**Bid Deadline Extensions and Results of Sale Process**

5. On July 19, 2015, following the months-long process of marketing the Debtors' stores that is detailed in paragraphs 8–17 of my Original Sale Declaration, Acme submitted a binding bid for 76 of the Debtors' stores (which bid was later reduced to 70 stores in accordance with the Acme stalking horse agreement) and Stop & Shop submitted a binding bid for 25 of the Debtors' stores (of which the Debtors now seek approval to sell 24 stores)[4] (each group of 70 and 24 stores, respectively, an "**Initial Sale Package**").

6. On August 11, 2015, the Court entered an order approving the Global Bidding Procedures in these Cases (ECF No. 495) and authorizing the Debtors to proceed with the marketing and sales process that began prepetition.

7. Under the Global Bidding Procedures, the original deadline for parties to submit Qualified Bids for the Debtors' stores and related assets was September 11, 2015 at 5:00 p.m. (Eastern Time) (the "**Global Bid Deadline**").

8. Prior to the Global Bid Deadline, the Debtors extended the deadline for parties to submit Qualified Bids to September 17, 2015 at 5:00 p.m. (the "**Extended Bid Deadline**") (*see* ECF No. 896).

9. Prior to the Extended Bid Deadline, the Debtors extended the Extended Bid Deadline to September 21, 2015 at 5:00 p.m. for (i) all stores other than those included in the

---

[4] The remaining store—the Mount Kisco Store (as defined below)—received a competitive overbid and will proceed to Auction.

3

Initial Sale Packages and (ii) the store located in Mount Kisco, New York (the "**Mount Kisco Store**").[5]  (*See* ECF No. 988.)

10.   Upon the passage of the Extended Bid Deadline, the Debtors had received over 100 bids for a substantial majority of all of the Debtors' stores.  Bidders had placed bids and/or indications of interest on a total of 39 of the 70 stores included in the Acme Initial Sale Package and 16 of the 24 stores included in the Stop & Shop Initial Sale Package.  Even if one were to consider the highest bids received on each of the stores included in an Initial Sale Package, the aggregate value of such bids would not exceed the total consideration provided by such Initial Sale Package.

11.   Pursuant to the Global Bidding Procedures, because the Debtors did not receive a bid (or combination of bids) for all of the stores included in either the Acme Initial Sale Package or the Stop & Shop Initial Sale Package, the bids of Acme and Stop & Shop constitute the only Qualified Bids received for the Initial Sale Packages.  Accordingly, the Debtors have cancelled the Auction with respect to all stores included in the Initial Sale Packages (other than the Separable Stores).

12.   That certain *Asset Purchase Agreement* by and among A&P, Super Fresh Food Markets, Inc., Waldbaum, Inc., Pathmark Stores, Inc., A&P Live Better, LLC, Tradewell Foods of Conn., Inc., A&P Real Property, LLC, and Acme dated July 19, 2015 (the "**Acme APA**") permits Acme to remove certain stores from its Qualified Bid under certain circumstances.  Stores subject to removal from a stalking horse bidder's Qualified Bid are referred to as "**Separable Stores**."  Likewise, that certain *Asset Purchase Agreement* by and among A&P, APW Supermarkets, Inc., Pathmark Stores, Inc., A&P Real Property, LLC, and

---

[5] The Debtors extended the Extended Bid Deadline for the Separable Store (as defined herein) notwithstanding that such store was included in Stop & Shop's Qualified Bid.

Stop & Shop dated July 19, 2015 (the "**Stop & Shop APA**"; and together with the Acme APA, the "**Initial Sale APAs**") provides Stop & Shop with the same rights. In accordance with the Initial Sale APAs, six Separable Stores were removed from Acme's original bid of 76 stores; Acme's Qualified Bid now covers 70 stores. Those stores will be subject to an Auction. The Mount Kisco Store (which is a Separable Store under the Stop & Shop APA) received a competitive overbid. Accordingly, Stop & Shop's Qualified Bid now covers 24 stores, and the Mount Kisco Store will be subject to an Auction without the need for the Debtors to pay a break-up fee.

13. Based on the foregoing, I believe that the present proposed sales of the Initial Sale Packages to Acme and Stop & Shop pursuant to the Initial Sale APAs are the highest and best offers attainable at this time for the assets in the Initial Sale Packages.

14. I believe that, in light of the comprehensive pre- and postpetition sale and marketing process and the arms' length negotiations with Acme, Stop & Shop, and the parties that submitted bids under the Global Bidding Procedures, a comprehensive sale process has been conducted and did not result in any better offers for the Initial Sale Packages. Acme and Stop & Shop, respectively, conducted themselves in good faith during their negotiations and transactions. Moreover, any delay in consummating the sales of the Initial Sale Packages would unduly threaten the success of these Cases and harm all parties in interest, particularly in light of the milestone contained in the Debtors' Junior Lien DIP Facility that requires the entry of sale orders approving sale transactions with a minimum value of $275 million by October 15, 2015. I believe that the Debtors' sale of the Initial Sale Packages to Acme and Stop & Shop, respectively, as the result of the process described above, constitutes a sound and reasonable exercise of the Debtors' business judgment.

5

**<u>Conclusion</u>**

Prior to the commencement of these Cases, the Debtors and their advisors undertook a comprehensive evaluation of their potential strategic alternatives for maximizing value. Through that evaluation, the Debtors determined that engaging in the process governed by the Global Bidding Procedures was the best and most viable alternative for the Debtors to maximize the value of their estates. Having conducted the initial portion of that process, the Debtors have subjected their assets to competitive bidding that resulted in the determination that Acme and Stop & Shop have submitted the highest and best bids, respectively, for the Initial Sale Packages. Accordingly, for the reasons set forth herein, I believe that the Debtors, with the help of their advisors, have executed a comprehensive sale and marketing process for the Initial Sale Packages that will allow the Debtors to achieve their goal of maximizing the value of their estates for the benefit of all parties in interest in these Cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 18, 2015
      New York, New York

                                    /s/ Stephen Goldstein
                                    Stephen Goldstein