**OKIN HOLLANDER LLC**
Paul S. Hollander, Esq.
Gregory S. Kinoian, Esq (GK7386)
Margreta M. Morgulas (MM7441)
Glenpointe Centre West
500 Frank W. Burr Boulevard, Suite 40
Teaneck, New Jersey 07666
Tel:    (201) 947-7500
Fax:    (201) 947-2663
phollander@okinhollander.com
gkinoian@okinhollander.com
mmorgulas@okinhollander.com

Attorneys for 3500 Aramingo Avenue, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

| | |
|---|---|
| **In re** | Chapter 11 |
| **THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.,** *et al.,* | Case No. 15-23007 (RDD) |
| | (Jointly Administered) |
| **Debtors**[1]. | |

---------------------------------------------------------x

**OBJECTION OF 3500 ARAMINGO AVENUE, LLC TO PROPOSED "MODIFIED" BIDDING PROCEDURES AND PROPOSED BID PROTECTIONS RE SALE OF PROPERTIES TO WAKEFERN FOOD CORP. PURSUANT TO DISCRETE SALE AND LEASE RATIONALIZATION PROCEDURES [RE DOCKET NO. 1081]**

3500 Aramingo Avenue, LLC ("3500 Aramingo"), by and through its undersigned

counsel, hereby files this objection ("Objection") to the *Notice of Auction Pursuant to Discrete*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc. (3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645

*Sale and Lease Rationalization Procedures* [Docket No. 1081], which was filed by the above-captioned debtors and debtors in possession (each, a "Debtor," and, collectively, the "Debtors") on or about September 25, 2015 ("Notice of Wakefern Sale"). As set forth more fully herein, 3500 Aramingo objects to the Debtors proposed sale of property and interests to Wakefern Food Corp. ("Wakefern") pursuant to the "modified" bidding procedures and the proposed provisions to Wakefern of "bid protections," including, but in no way limited to, the onerous and unreasonable break-up fee the Debtors propose to provide to Wakefern in connection, allegedly in compliance with this court's prior *Order Approving Discrete Sale and Lease Rationalization Procedures* [Docket No. 496] ("Sale Order").

In support of this Objection, 3500 Aramingo relies upon factual and legal arguments set forth herein and such other and further arguments and evidence as may be presented at any hearing to be scheduled or held in connection with this Objection.

## BACKGROUND FACTS

A.      **Prior Chapter 11 Cases**

1.      On December 12, 2010, certain of the Debtors filed voluntary petitions for relief under chapter 11 (collectively, the "Prior Chapter 11 Cases")[2] of title 11 of the United States Code (the "Bankruptcy Code").

2.      This Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* [Prior Chapter 11 Cases Docket No. 3477] in the Prior Chapter 11 Cases on February 28, 2012.

---

[2]     The Prior Chapter 11 Cases were *styled In re The Great Atlantic & Pacific Tea Company, Inc. et al*, Case No. 10-24549 (RDD).

3.      The chapter 11 plan confirmed in the Prior Chapter 11 Cases went effective on March 13, 2012 [Prior Chapter 11 Cases Docket No. 3525].

**B.      Debtors' Current Chapter 11 Cases**

4.      On July 19, 2015 (the "Petition Date"), the Debtors commenced cases under chapter 11 of the Bankruptcy Code.

5.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6.      As of the Petition Date, Debtor Pathmark Stores, Inc. ("Debtor Pathmark") was the tenant-party by succession with respect to a non-residential real property lease for a property located at 3399 Aramingo Avenue, Philadelphia, Pennsylvania ("3399 Aramingo Lease")[3].

**C.      3500 Aramingo's Duly-Recorded Right of First Offer
          With Respect to 3399 Aramingo Lease**

7.      In May, 2009, Pathmark Stores, Inc. entered into an "Agreement of Sale" with 3500 Aramingo (as the same may have been amended from time to time, the "Sale Agreement")[4], pursuant to which 3500 Aramingo purchased certain real property and improvements (together with additional rights and interests of Debtor Pathmark) located at 3500 Aramingo Avenue, Philadelphia, Pennsylvania.  Among the assets, rights, title and interests sold by Debtor Pathmark to 3500 Aramingo pursuant to the Sale Agreement is the right of first offer with respect to the 3399 Aramingo Lease ("ROFO"), which, from the perspective of 3500

---

[3]     According to the Debtors, the premises under the 3399 Aramingo Lease are assessed as 3301 Aramingo Avenue, Philadelphia, Pennsylvania.

[4]     The Sale Agreement is not annexed hereto due to certain confidential and/or proprietary terms thereof. However, should the Court or any party in interest in these chapter 11 cases desire a copy, the same may be requested from the undersigned counsel.

Aramingo Avenue, was a bargained for component of the sale and purchase transaction for which 3500 Aramingo paid adequate consideration.

8.    The ROFO, which is incorporated into the Sale Agreement at Section 44 thereof, provides:

> Purchase & Sale Agreement
> **44.    RIGHT OF FIRST OFFER ON PATHMARK SPACE.**  Pathmark is presently the tenant at the property generally known as 3399 Aramingo Avenue, Philadelphia, Pennsylvania.  Subject to any presently existing contractual obligation of Pathmark's pursuant to its lease at 3399 Aramingo Avenue, Philadelphia, Pennsylvania, should Pathmark from time to time decide to sublet a portion of its premises constituting more than 25,000 square feet of floor area ("Sublet Offer Premises") or assign its lease (the "Existing Lease"), Pathmark shall provide Purchaser notice ("Pathmark Notice") of such decision. Purchaser, within twenty (20) days of delivery of the Pathmark Notice, shall accept or reject the assignment of the Existing Lease or sublet the Sublet Offer Premises on the terms presented. If Purchaser does not accept, Pathmark may consummate the transaction described in the Pathmark Notice substantially on the terms set forth therein provided such transaction is consummated within nine (9) months of the delivery of the Pathmark Notice to Purchaser.

9.    In order to ensure that its rights under the ROFO were fully protected, 3500 Aramingo timely recorded, with the Philadelphia County Recorder of Deeds, a "Memo of Right of First Offer" dated February 26, 2009 ("Recorded ROFO Memo")[5], which Recorded ROFO Memo generally describes and provides record notice of 3500 Aramingo's ROFO with respect to the 3399 Aramingo Lease.

10.    Upon information and belief, Hilco Real Estate LLC ("Hilco") has a copy of the Recorded ROFO Memo in the due diligence files that were made available to all interested bidders in connection with the proposed sale of the 3399 Aramingo Lease.

**D.    Debtors' Failure to Provide 3500 Aramingo with Notice of Filing of Debtors' Chapter 11 Cases or Sale Motions**

11.    The Debtors failed to give 3500 Aramingo notice of the filing of the Debtors' chapter 11 cases or the motions filed and ultimately granted by this Court that pertain to

---

[5]    A true and correct copy of the Recorded ROFO Memo is annexed hereto as Exhibit "A".

the sale and assumption and assignment of the leases of the Debtors[6], which motions directly affect 3500 Aramingo's rights and interests.  Accordingly, 3500 Aramingo was not given notice and an opportunity to object to the Debtors proposed sale free and clear of interests and was therefore deprived of its due process rights with respect to the same.

12.    By letter dated August 25, 2015 ("August 25 Letter")[7], counsel to 3500 Aramingo informed Debtors' professionals of both the lack of due process and the postpetition breach of 3500 Aramingo's ROFO -- specifically, the breach caused by the Debtors failure to comply with the terms and conditions of the ROFO prior to offering the 3399 Aramingo Lease for sale.  In a subsequent conversation between counsel for 3500 Aramingo and counsel for the Debtors, 3500 Aramingo was encouraged to contact Mr. Aptar at Hilco to try and resolve the issues surrounding Debtor Pathmark's material, postpetition breach of 3500 Aramingo's ROFO.[8]  As reflected in a letter to Debtors' counsel and Hilco dated September 9, 2015 ("September 9 Letter")[9], representatives of 3500 Aramingo did, in fact, immediately reach out to Mr. Aptar, who,

---

[6]    By way of example, 3500 Aramingo did not receive notice of and an opportunity to object to the relief requested in  the following motions filed by the Debtors:

   Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365 and 554 for Approval of (I) Global Procedures for (A) Store Closings, (B) the Expedited Sale, Transfer, or Abandonment of De Minimis Assets, and (C) Rejecting Unexpired Nonresidential Real Property Leases, and (II) Entry Into a Liquidation Consulting Agreement filed by Ray C Schrock on behalf of The Great Atlantic & Pacific Tea Company, Inc. [Docket No. 20];

   Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365 and 503 and Fed. R. Bankr. P. 2002, 6004 and 6006 for Approval of: (I) (A) Global Bidding Procedures, (B) Bid Protections, (C) Form and Manner of Notice of Sale Transactions and Sale Hearing, and (D) Assumption and Assignment Procedures; and (II) (A) Purchase Agreements (B) Sale of Certain of the Debtors Assets Free and Clear of Liens, Claims, Interests and Encumbrances, and (C) Assumption and Assignment of Certain Executory Contracts and Leases [Docket No. 26]; and

   Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006 for Approval of Global Sale and Lease Rationalization Procedures [Docket No. 27].

[7]    A true and correct copy of the August 25 Letter is attached hereto as Exhibit "B".

[8]    Counsel to 3500 Aramingo and counsel to the Debtors agreed that any such conversations would be without prejudice and with an express reservation of rights by all parties.

[9]    A true and correct copy of the September 9 Letter is attached hereto as Exhibit "C".

after several days, returned 3500 Aramingo's call and in the course of such conversation indicated that he would transmit a specific proposal to 3500 Aramingo with respect to the resolution of its objections. However, no such proposal was ever received. As stated in the September 9 Letter, the inevitable conclusion drawn from the actions and inactions of the Debtors' professionals is that the Debtors have no intention of or feel that they are under an obligation to honor 3500 Aramingo's publicly-recorded ROFO, despite the significant due process issues and the fact that the Debtor's agents and representatives were aware of the publicly-recorded ROFO prior to seeking authorization of this Court to sell their interests in the 3399 Aramingo Lease free and clear of all interests.

### E.    Debtors' Breach of 3500 Aramingo's Duly-Recorded ROFO

13.    In a letter dated September 17, 2015[10], counsel to the Debtors disingenuously alleges that the Sale Agreement containing the ROFO was "deemed rejected" in the Prior Chapter 11 Cases and is thus unenforceable. However, as had been previously explained to Debtors' counsel by counsel to 3500 Aramingo: (i) the Sale Agreement was and is not executory and, therefore, was not capable of rejection in the Prior Chapter 11 Cases or in the Debtors' current chapter 11 cases[11]; (ii) the ROFO is a material part of the fully-integrated Sale Agreement under applicable state law and thus is not subject to being independently assumed or rejected; and (iii)

---

[10]    A true and correct copy of the September 17, 2015 letter from Mr. Garrett Fail of Weil Gotshal & Manges, Debtors' counsel, to Ms. Margreta Morgulas, counsel to 3500 Aramingo, is attached hereto as Exhibit "D".

[11]    Moreover, the Debtors argument is flawed because even if the Sale Agreement had been executory as of the commencement of the Prior Chapter 11 Cases, the debtors in the Prior Chapter 11 Cases could not be deemed to have rejected the same as they failed to give 3500 Aramingo adequate notice of their intention to reject executory contracts through the informal, default method contained in the chapter 11 plan confirmed in the Prior Chapter 11 Cases. See, e.g., In re National Gypsum Co., 208 F.3d 498, 513 (5th Cir. 2000) ("'These provisions [referencing Bankruptcy Code sections 1141(b)(1) and 502(g)] read together clearly contemplate that a party to an executory contract will receive notice of rejection when it receives a copy of the Disclosure Statement and Plan, giving it a window in which to file a proof of claims for damages. A party which has not even had notice of the plan, let alone the debtor's intention to reject, is given no opportunity to file a claim'") (quoting In re Parkwood Realty Corp., 157 B.R. 687, 690 (Bankr. W.D. Wash. 1993).

even assuming *arguendo* that the ROFO is severable from the Sale Agreement, which it is not, it was and remains a contingent and unilateral obligation of Debtor Pathmark and thus was and is not capable of rejection. Debtors' counsel, however, has clearly chosen to ignore the applicable facts and law and to willfully and knowingly permit the Debtors to breach 3500 Aramingo's rights under the ROFO.

### F.    Debtors' Proposed Sale of Leases and Other Property to Wakefern

14.    On or about September 24, 2015, the Debtors filed the Notice of Wakefern Sale, purporting to establish "modified" bidding procedures in connection with the proposed sale of 12 leases ("Proposed Wakefern Lease Package") to Wakefern Food Corp. ("Wakefern"), and, in connection, provide Wakefern certain bid protections, including a break-up fee of $1.2 million, in connection with Wakefern's so-called "stalking horse bid". The 3399 Aramingo Lease is one of the 12 leases that is part of the Proposed Wakefern Lease Package.

15.    Of note is the fact that the Debtors have separately allocated the proposed total purchase price of $40 million to be paid by Wakefern for the Proposed Wakefern Lease Package on a lease-by-lease basis (albeit without explanation as to how such allocations were determined)[12], but have not similarly allocated the "break-up" fee of $1.2 million that the Debtors propose to provide to Wakefern in connection with its so called "stalking horse bid". This differs markedly from other proposed "multi-property" sales that have been announced by the Debtors,

---

[12]    If 3500 Aramingo's Objection is not consensually resolved, 3500 Aramingo intends to seek expedited discovery from the Debtors and Wakefern with respect to the allocation of the purchase price in advance of and in connection with 3500 Aramingo's anticipated objection to any proposed sale to Wakefern. Significant questions exist as to the allocation given the independent research performed by 3500 Aramingo's professionals with respect to the value of each of the leases in the Proposed Wakefern Lease Package. By way of example, the allocated value for the 3399 Aramingo Lease rights is both significantly above market and bears no reasonable relationship to the value ascribed to the additional leases and property to be sold pursuant to the Proposed Wakefern Lease Package. This is particularly troublesome as it raises the specter of manipulation given that the 3399 Aramingo Lease is the only lease in the Proposed Wakefern Package that is subject to a duly-recorded and enforceable right of first offer or similar preemptive right.

such as the proposed sale to Federal Realty Investment Trust ("Federal Realty"), *see* Docket No. 1089, where the Debtors have allocated both the purchase price and the proposed "break-up" fee to be paid to Federal Realty on a lease-by-lease basis.

## OBJECTION

16.    Even assuming *arguendo* that the Debtors' unilateral "modification" of the global bidding procedures is permissible absent seeking and receiving further relief of this Court, which is questionable, the sale of the Proposed Wakefern Lease Package should not be permitted to proceed subject to the proposed bidding procedures and bid protections, at least insofar as the same pertain to the proposed sale of the 3399 Aramingo Lease.  This is true both because the structure of the proposed procedures and protections will only serve to "chill" bidding (rather than, as the Debtors contend, serve to "maximize value") and because the Debtors have knowingly and willfully violated 3500 Aramingo's rights under the ROFO by failing to abide by the express terms and conditions thereof prior to entering into a stalking horse sale agreement with Wakefern for, among others, the 3399 Aramingo Lease.

17.    3500 Aramingo provided the Debtors' professionals with notice of its rights under the ROFO no later than August 25, 2015.  Accordingly, even assuming that the Debtors' professionals were unaware of the existence of the duly-recorded ROFO prior to that time (which is highly questionable given that a copy thereof is included in the Hilco data room)[13], the Debtors' professionals were provided with more than sufficient time to comply with the terms and conditions of the ROFO prior to negotiating with Wakefern with respect to the sale of the 3399 Aramingo Lease.  Indeed, the ROFO requires that Debtor Pathmark provide 3500 Aramingo only

---

[13]    Additionally, it is unfathomable that the Debtors would seek to sell property interests without first researching the state of title with respect to such assets.

8

20 days' notice of the opportunity to accept or reject an offer. Instead of complying with these requirements, the Debtors chose to willfully and knowingly breach the ROFO, contending that in doing so they were working to "maximize value" for the Debtors' estates. There is, however, nothing no applicable law that excuses a debtor's material breach of an agreement on such grounds. This is true regardless of whether the Sale Agreement is, as the Debtors' wrongly contend, an executory agreement.

18.    As stated previously, the Debtors have baselessly argued that the Sale Agreement was rejected in the Prior Chapter 11 Cases and is thus unenforceable. However, this is without factual footing as, on the commencement date of the Prior Chapter 11 Cases, the Sale Agreement, which contains the ROFO, was *not* an executory contract that was or even could have been rejected in the Prior Chapter 11 Cases as it was substantially and materially performed in advance of December 12, 2010 (i.e., the commencement date of the Prior Chapter 11 Cases).[14] Indeed, the only performance that remains is the <u>contingent, unilateral obligation of Debtor</u>

---

[14]   This Court in *In re Calpine Corp.*, 2008 WL 3154763, at *3 (Bankr. S.D.N.Y. Aug. 4, 2008), stated as follows:

> The Bankruptcy Code does not define the term "executory contract" but the Second Circuit Court of Appeals has characterized an executory contract as one "on which performance remains due to some extent on both sides." *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 379 (2d Cir.2008). (citing *Eastern Air Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992 (2d Cir.1996); see also H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5844, 6303 (The legislative history of section 365 states that "though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides."). In *Penn Traffic*, the Second Circuit also recognized the Countryman test, a somewhat more stringent test, which deems a contract executory if the "obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Id.* In other words, under Countryman's "material breach" test, a prepetition contract is executory when both sides are still obligated to render substantial performance.

Pathmark to abide by the terms and conditions of the ROFO if and when it decides to assign its interests in the 3399 Aramingo Lease.

19.    Second, the Sale Agreement is a fully-integrated agreement[15] and thus there is no legitimate basis for the Debtors to sever the ROFO from the Sale Agreement.  Further, even if Pennsylvania state law, the law that governs the interpretation and enforcement of the Sale Agreement[16], permitted severance of the ROFO under the applicable facts and circumstances, which it does not, severance of the ROFO would not change the inevitable outcome of the analysis – namely, that the ROFO is not an executory contract subject to assumption or rejection by the Debtors.[17]

20.    Third, the Debtors cannot seek to assume and assign the 3399 Aramingo Lease "free and clear" of 3500 Aramingo's duly-recorded ROFO.  This is true because there is no provision in the Bankruptcy Code that would permit such relief under the present facts and circumstances.  Bankruptcy Code section 363(f) provides that a debtor can sell its assets free and

---

[15]    Section 18 of the Sale Agreement provides, in pertinent part:

> ENTIRE AGREEMENT. This Agreement contains the final and entire agreement between the parties hereto and each shall not be bound by any terms, conditions, statements, warranties or representations, oral or written, not contained herein.

[16]    Section 19 of the Sale Agreement provides:

> CHOICE OF LAW. This Agreement shall be interpreted in accordance with the laws of the State of Pennsylvania and venue shall be in Philadelphia County.

[17]    This is true because as of the Petition Date, the ROFO was a contingent, unilateral obligation of the Debtors and was, therefore, not executory.  Several courts have held that in the case of an agreement containing such contingent, unilateral obligations, the same cannot be found to be executory unless and until the debtor takes the steps necessary to require performance by the non-debtor party.  *See, e.g., In re Bergt*, 241 B.R. 17, 19-20 (Bankr. D. Alaska 1999) (holding that right of first refusal was not an executory contract that chapter 11 debtors could reject, where no sale of subject property was pending at time of debtors' bankruptcy filing).  In other words, assuming arguendo that the ROFO was severable from the Sale Agreement, which it is not, it could not be deemed to be an executory agreement capable of assumption or rejection unless Debtor Pathmark had, prior to the Petition Date (which is the measuring date for purposes of determining the executoriness of an agreement) made the required offer to 3500 Aramingo that would then trigger 3500 Aramingo's performance obligations (i.e., the obligation to accept or reject the offer within the 20-day time period).  There can be no dispute that Debtor Pathmark did not take such actions prior to the Petition Date.

clear of "any interest" if (1) applicable nonbankruptcy law so permits, (2) the interest holder

consents, (3) the interest is a lien and the price at which the debtor's assets are being sold is greater

than the value of all the liens on its property, (4) the validity of the interest is in bona fide dispute,

or (5) the interest holder, whether in a legal or equitable proceeding, could be compelled to accept

a money judgment for its interest. 11 U.S.C. § 363(f) (1)–(5).   None of these exceptions are

applicable in the present case.    It is indisputable that there is nothing under applicable

nonbankruptcy law that would permit such treatment, that 3500 Aramingo has not consented to

such treatment, that the ROFO (a contract right and not a property interest) does not give rise to a

lien, that there is no bona fide dispute regarding the validity or enforceability of the ROFO, and/or

that Pennsylvania law would permit the Debtors to force 3500 Aramingo to accept a money

judgment in satisfaction of its rights under the ROFO.[18]

> 21.    The Debtors also have no basis to argue that the ROFO should be rendered

void pursuant to Bankruptcy Code section 365(f)(1) because such subsection is only applicable to

executory agreements that the Debtors are seeking to assume and assign.[19]  As stated previously,

---

[18]    As to the last issue, Pennsylvania courts applying Pennsylvania state law have generally held that a holder of a preemptive right, such as the ROFO, is entitled to seek specific performance thereof and is not required to accept money damages in lieu of such equitable relief.  *See, e.g., Boyd & Mahoney v. Chevron U.S.A.*, 614 A.2d 1191, 1194 (Pa. Super. Ct. 1992) (holding ""It is well-settled that contractual rights of first refusal…may be enforced by a decrees of specific performance."); *Delaware River Preservation Co., Inc. v. Miskin*, 923 A.2d 1177, 1182 (Pa. Super. Ct. 2007) (holding that "When the promissee's right of first refusal is violated or ignored, the promissee may be entitled to specific performance; a party may obtain specific performance of a right of first refusal where the right is valid, the challenged conveyance was made in derogation of the right, and there is no adequate remedy at law.").

[19]    *See, e.g., In re Fleming Companies, Inc.*, 499 F.3d 300, 307 (3d Cir. Aug. 22, 2007) ("The Bankruptcy Code expressly permits assignment of executory contracts even when contracts prohibit such assignment. 11 U.S.C. § 365(f)(1). Section 365(f)(1) is not limited to explicit anti-assignment provisions. Provisions which are so restrictive that they constitute de facto anti-assignment provisions are also rendered unenforceable…. Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder. I*n re ANC Rental Corp.*, 277 B.R. 226, 238 (Bankr.D.Del.2002). "The [debtor] ... may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other." *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir.1951). The *cum onere* rule "prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement." *United Air Lines, Inc. v. U.S. Bank Trust Nat'l Ass'n (In re UAL Corp.)*, 346 B.R. 456, 468 n. 11 (Bankr.N.D.Ill.2006).")

the Sale Agreement is not an executory contract and the ROFO cannot be severed and treated

separately as such.  Regardless, the ROFO is not contained in the 3399 Aramingo Lease that the

Debtors are seeking to assume and assign and thus there is no basis to apply section 365(f) to the

ROFO even if it were severed from the Sale Agreement and deemed to be executory.

22.    Finally, the fact that the Debtors have proposed to sell the 3399 Aramingo

Lease as part of a multi-property transaction is irrelevant.  Stripped of the Debtors meritless

contentions regarding the effect of their prior bankruptcy on the enforceability of the ROFO, the

Debtors only alleged basis for the knowing and willful breach 3500 Aramingo's duly-recorded

ROFO seems to be that in selling Debtor Pathmark's remaining rights under the 3399 Aramingo

Lease as part of a multi-party transaction and subject to onerous and unjustified "bid protections,"

the Debtors are somehow maximizing value for their estates and creditors.  This argument should

be seen for what it really is -- a thinly-veiled attempt to justify the unsanctionable stripping of 3500

Aramingo's rights with respect to the 3399 Aramingo Lease.  However, the Debtors have not,

because the Debtors cannot, point to any law, rule or regulation that would permit such a material

breach simply by packaging the lease as part of a multi-property transaction and adopting

unreasonable "bid protections" in an attempt to thwart valid objections of interest holders such as

3500 Aramingo.

## RESERVATION OF RIGHTS

23.    3500 Aramingo expressly reserves the right to supplement and amend this

Objection, and to seek discovery with respect to same if necessary.

## CONCLUSION

**WHEREFORE**, 3500 Aramingo respectfully requests that the Court reject the Debtors'

request to modify the bidding procedures previously established by this Court's order and/or to

provide bid protections to Wakefern in connection therewith for all of the reasons set forth herein

above, and to grant such other and further relief as this Court may deem just and proper.

Dated: Teaneck, New Jersey
      October 1, 2015

                                **OKIN HOLLANDER LLC**
                                Attorneys for 3500 Aramingo Avenue, LLC

                                By: _____
                                Paul S. Hollander, Esq.
                                Gregory S. Kinoian, Esq. (GK7386)
                                Margreta M. Morgulas (MM7441)
                                Glenpointe Centre West
                                500 Frank W. Burr Boulevard, Suite 40
                                Teaneck, New Jersey 07666
                                Tel:    (201) 947-7500
                                Fax:   (201) 947-2663

# Exhibit A
# Recorded ROFO Memo

*12*

FIRST AMERICAN TITLE INSURANCE CO.
TWO PENN CENTER PLAZA, SUITE 1910
PHILADELPHIA, PA 19102
397474 PA1

## MEMO OF RIGHT OF FIRST OFFER

**THIS MEMO OF RIGHT OF FIRST OFFER** made as of the 26th day of February, 2009 ("Memo"), by and between **PATHMARK STORES, INC.**, a Delaware corporation, having an office at 2 Paragon Drive, Montvale, New Jersey 07645 ("Grantor"), and **3500 ARAMINGO AVENUE, LLC**, a Delaware limited liability company, having an office at c/o Lerner Heidenberg Properties, 234 Closter Dock Road, Closter, New Jersey 07624 ("Grantee").

## RECITALS

A.    On or about October 21, 1977, 909 Group L.P., as landlord, entered into a certain Agreement of Lease (as amended, the "Lease") with Acme Markets, Inc., as tenant, for a store ("Demised Premises") generally known as 3399 Aramingo Avenue, Philadelphia Pennsylvania (assessed as 3301 Aramingo Avenue). The store is shown by shading on Exhibit "A" attached hereto and made a part hereof and is located on a portion of the property described on Exhibit "B" attached hereto and made a part hereof. A short form lease was recorded in the Department of Records of the City of Philadelphia at Deed Book DCC 1510, page 196.

B.    Grantor is the successor to Acme Markets, Inc. as tenant under the Lease.

C.    Grantor has granted to Grantee certain rights in the leasehold estate created by the Lease.

NOW THEREFORE, the parties hereto, for good and valuable consideration in hand paid from Grantee to Grantor, the receipt and sufficiency of which is acknowledged by Grantor, do hereby agree as follows.

1.    Subject to any existing contractual obligation of Grantor's existing on May 31, 2009, pursuant to the Lease, should Grantor from time to time decide to sublet a portion of the Demised Premises constituting more than 25,000 square feet of floor area ("Sublet Offer Premises") or assign the Lease, Grantor shall provide Grantee notice ("Grantor Notice") of such decision. Grantee, within twenty (20) days of delivery of the Grantor Notice, shall accept or reject the assignment of the Lease or sublet the Sublet Offer Premises on the terms presented. If Grantee does not accept, Grantor may consummate the transaction described in the Grantor Notice substantially on the terms set forth therein provided such transaction is consummated within nine (9) months of the delivery of the Grantor Notice to Grantee.

## [SIGNATURE PAGE FOLLOW]

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have executed and delivered this Memo of Right of First Offer as of the day and year first above written.

PATHMARK STORES, INC.                          3500 ARAMINGO AVENUE, LLC

By: _____                    By: _____
Name: Christopher W. McGarry                    Name: Robert Heidenberg
Title: Vice President & Secretary               Title: Manager

#1475585 v1
102550-66041

STATE OF NEW JERSEY          )
                             : ss.:
COUNTY OF BERGEN             )

On this __25ᵗʰ__ day of February, 2010, before me, a Notary Public the undersigned officer, personally appeared Christopher W. McGarry who acknowledged himself to be the Vice President and Secretary of Pathmark Stores, Inc., a Delaware corporation, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation, by himself as Vice President and Secretary.

In Witness Whereof, I hereunto set my hand and official seal.


_____*Phyllis S. Cotsis*_____ (Seal)

**PHYLLIS S. COTSIS**
**Notary Public**
**State of New Jersey**
**I.D. # 2302887**
**Commission Expires** _7-16-2013_

STATE OF          )
                  : ss.:
COUNTY OF         )

On this _____ day of February, 2010, before me, a Notary Public the undersigned officer, personally appeared Robert Heidenberg who acknowledged himself to be the Manager of 3500 Aramingo Avenue, LLC, a Delaware limited liability company, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the limited liability company, by himself as Manager.

In Witness Whereof, I hereunto set my hand and official seal.


_____ (Seal)

3

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have executed and delivered this Memo of Right of First Offer as of the day and year first above written.

PATHMARK STORES, INC.                    3500 ARAMINGO AVENUE, LLC

By:_____              By:_____
Name: Christopher W. McGarry             Name: Robert Heidenberg
Title: Vice President & Secretary        Title: Manager

STATE OF NEW JERSEY          )
                             : ss.:
COUNTY OF BERGEN             )

On this _____ day of February, 2010, before me, a Notary Public the undersigned officer, personally appeared Christopher W. McGarry who acknowledged himself to be the Vice President and Secretary of Pathmark Stores, Inc., a Delaware corporation, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation, by himself as Vice President and Secretary.

In Witness Whereof, I hereunto set my hand and official seal.

_____(Seal)

STATE OF _New Jersey_     )
                          : ss.:
COUNTY OF _Bergen_        )

On this ____26____ day of February, 2010, before me, a Notary Public the undersigned officer, personally appeared Robert Heidenberg who acknowledged himself to be the Manager of 3500 Aramingo Avenue, LLC, a Delaware limited liability company, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the limited liability company, by himself as Manager.

In Witness Whereof, I hereunto set my hand and official seal.

_____(Seal)

JACQUELINE MARTIN
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 12/22/2010

**EXHIBIT "A"**



**EXHIBIT "B"**

D 1510-199

### Exhibit B

Aramingo Avenue & Westmoreland Street, Philadelphia, PA.

BEGINNING at a point formed by the intersection of the South-
easterly side of Aramingo Avenue (108 feet wide) with the Northeasterly
side of Westmoreland Street (60 feet wide); thence (1) extending along
the Southeasterly side of Aramingo Avenue North 57 degrees 35 minutes
30 seconds East 716 feet, 2½ inches to a point of intersection with the
Southwesterly side of Ontario Street (60 foot wide); thence (2)
extending along the Southwesterly side of Ontario Street South 32 degrees
24 minutes 30 seconds East 555 feet 3-3/4 inches to a point of inter-
section with the Northwesterly side of Gaul Street (50 feet wide);
thence (3) extending along the Northwesterly side of Gaul Street South
57 degrees 35 minutes 30 seconds West 618 feet and 5-3/4 inches to a
point; thence (4) extending North 32 degrees 24 minutes 30 seconds
West 42 feet, 7-3/4 inches to a point; thence (5) extending South 79
degrees 02 minutes 30 seconds West 104 feet, 11-3/4 inches to a point
on the Northeasterly side of Westmoreland Street; thence (6) extending
along the Northeasterly side of Westmoreland Street North 32 degrees 24
minutes 30 seconds West 474 feet, 3½ inches to the first mentioned
point and place of beginning.

Containing 391,664 sq. ft. more or less.

ASSESSED AT 3301 ARAMINGo Avenue

# Exhibit B
## August 25 Letter



## OKIN HOLLANDER

Okin Hollander LLC
One Parker Plaza, 12th Floor
400 Kelby Street
Fort Lee, NJ 07024
T 201 947 7500
F 201 947 2663

Margreta M. Morgulas, Esq.
mmorgulas@okinhollander.com

August 25, 2015

**VIA OVERNIGHT MAIL**

Mr. Ray C. Schrock, Esq.                         Mr. Gregory Apter
Mr. Garrett A. Fail, Esq.                        Mr. Matt Tabloff
WEIL, GOTSHAL & MANGES LLP                       HILCO REAL ESTATE LLC
767 Fifth Avenue                                 5 Revere Dr Suite 320
New York, New York 10153                         Northbrook, IL 60062

Re:    **In re The Great Atlantic & Pacific Tea Company, Inc., et al.,**
       **Chapter 11 Case No. 15-23007 (RDD)**

Dear Messrs. Schrock, Fail, Apter and Tabloff:

        We represent 3500 Aramingo Avenue, LLC ("3500 Aramingo"), in connection with the above-captioned chapter 11 cases ("Chapter 11 Cases"). As an initial matter, as of the date of this letter, 3500 Aramingo has not received notice of the filing of the Chapter 11 Cases or, more importantly, the myriad of motions filed (many of which appear to have already been granted by the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court")), that may directly affect 3500 Aramingo's rights and interests.

        We are writing to specifically address concerns that have arisen as a result of the recent discovery by our client that the debtors and debtors in possession in the Chapter 11 Cases (collectively, the "Debtors") are proposing, in connection with the liquidation of their operations, to assume and assign all right, title and interest in and to the Agreement of Lease dated on or about October 21, 1977 with 909 Group L.P. for a store generally known as 3399 Aramingo Avenue, Philadelphia, Pennsylvania ("3399 Aramingo Lease"). The proposed assumption and assignment of the 3399 Aramingo Lease is being done in direct contravention of 3500 Aramingo's rights with respect thereto and absent the clear obligation of the Debtors to afford 3500 Aramingo due process with respect to the Chapter 11 Cases generally and the proposed asset dispositions in particular.

        By way of background, in May, 2009, Pathmark Stores, Inc., a debtor and debtor in possession in the Chapter 11 Cases, ("Debtor Pathmark"), entered into an Agreement of Sale with 3500 Aramingo (as the same may have been amended from time to time, the "Sale Agreement")[1], pursuant to

---

[1]  A true and correct copy of the Sale Agreement is enclosed herewith for your convenience.

okinhollander.com



Weil, Gotshal & Manges
Hilco Real Estate
August 25, 2015
Page 2

which 3500 Aramingo purchased certain real property and improvements (together with additional rights and interests of Debtor Pathmark) located at 3500 Aramingo Avenue, Philadelphia, Pennsylvania.  Among the assets, rights, title and interests sold by Debtor Pathmark to 3500 Aramingo pursuant to the Sale Agreement is the right of first offer or refusal with respect to the 3399 Aramingo Lease ("ROFO"), a material component of the sale and purchase transaction for which 3500 Aramingo paid consideration.

In order to ensure that its rights under the ROFO were fully protected, 3500 Aramingo timely recorded, with the Philadelphia County Recorder of Deeds, a "Memo of Right of First Offer" dated February 26, 2009 ("Recorded Memo") [2], which Recorded Memo generally describes and provides record notice of 3500 Aramingo's ROFO with respect to the 3399 Aramingo Lease.

Upon information and belief, Hilco Real Estate LLC ("Hilco") has a copy of the Recorded Memo in the due diligence files being made available to all interested bidders in connection with the proposed assumption and assignment of the 3399 Aramingo Lease.  Accordingly, there can be no question that the Debtors and their professionals and advisors were aware of the existence of such ROFO and yet failed to give 3500 Aramingo not only notice of the filing of the Chapter 11 Cases but, perhaps most importantly, notice and an opportunity to object to the relief requested by the Debtors in the pleadings filed with respect to the proposed sale and liquidation procedures, which were ultimately approved by the Bankruptcy Court and before our client became aware of the same.

The Debtors proposed sale of certain of its assets on a "bulk" or "multi-property/lease" basis is of no moment.  As recognized by applicable law, a right of first offer/refusal cannot be defeated simply by including the property interest in a multi-property or multi-asset transaction.  *See, e.g., Boyd & Mahoney v. Chevron, USA,* 419 Pa. Super. 24, 29-30 (1992).  This is particularly true in the instant case where the Debtors have failed, despite their indisputable knowledge of 3500 Aramingo's ROFO, to give 3500 Aramingo notice of the filing of the Chapter 11 Cases or the proposed sale and liquidation procedures the Debtors propose to govern the liquidation of its assets, including the 3399 Aramingo Lease.

Accordingly, this letter shall serve as notice that Debtor Pathmark has, postpetition, materially breached the Sale Agreement by failing to accord 3500 Aramingo the right of first offer/refusal for which 3500 Aramingo explicitly bargained and paid valuable consideration for in connection with the transactions consummated by the Sale Agreement.  Even with the proposed expedited timing of the sale and disposition of the Debtors' assets, the Debtors have more than sufficient time to cure such breach by immediately complying with the terms of the ROFO contained in Section 44 of the Sale Agreement. We, therefore, hereby demand that the Debtor Pathmark immediately cure the material, postpetition breach of the Sale Agreement by complying with the explicit requirements of the ROFO contained in Section 44 of the Sale Agreement.  Should Debtor Pathmark fail to do so, 3500 Aramingo will be required to seek injunctive relief in an appropriate forum with respect to the same.

---

[2] A true and correct copy of the Recorded Memo is enclosed herewith for your convenience.

**OKIN HOLLANDER**

Weil, Gotshal & Manges
Hilco Real Estate
August 25, 2015
Page 3

        Please contact me immediately upon receipt of this letter so that we may discuss a mutually-acceptable resolution of such issues.

Sincerely,

_____
Margrett M. Morgulas, Esq.

**ENCLOSURES**

cc:      Senior VP, Real Estate, The Great Atlantic & Pacific Tea Company, Inc.
          VP- Legal Services, The Great Atlantic & Pacific Tea Company, Inc.
          Mr. Robert Heidenberg

# Exhibit C
# September 9 Letter



**OKIN HOLLANDER**

Okin Hollander LLC
One Parker Plaza, 12th Floor
400 Kelby Street
Fort Lee, NJ 07024
T 201 947 7500
F 201 947 2663

Margreta M. Morgulas, Esq.
mmorgulas@okinhollander.com

September 9, 2015

**VIA E MAIL**

Mr. Ray C. Schrock, Esq.                         Mr. Gregory Apter
Mr. Garrett A. Fail, Esq.                         Mr. Matt Tabloff
WEIL, GOTSHAL & MANGES LLP                        HILCO REAL ESTATE LLC
767 Fifth Avenue                                  5 Revere Dr Suite 320
New York, New York 10153                          Northbrook, IL 60062

Re:    **In re The Great Atlantic & Pacific Tea Company, Inc., et al.,**
       **Chapter 11 Case No. 15-23007 (RDD)**

Dear Messrs. Schrock, Fail, Apter and Tabloff:

        We represent 3500 Aramingo Avenue, LLC ("3500 Aramingo"), in connection with the above-captioned chapter 11 cases ("Chapter 11 Cases").  In our prior letter dated August 25, 2015, we alerted you to the fact that 3500 Aramingo had not received any notice of the Chapter 11 Cases or the motions filed and ultimately granted by the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court")), that pertain to the sale and assumption and assignment of the leases of the above-captioned debtors, which directly affect 3500 Aramingo's rights and interests.

        Specifically, we raised the postpetition material breach of 3500 Aramingo's duly recorded right of first offer ("ROFO") with respect to the lease by Pathmark Stores, Inc., a debtor and debtor in possession in the Chapter 11 Cases, ("Debtor Pathmark"), of the property located at 3399 Aramingo Avenue in Philadelphia, Pennsylvania ("3399 Aramingo Lease").  A true and correct copy of the recorded ROFO was enclosed with our prior letter and is also included in the due diligence materials maintained by Hilco with respect to the 3399 Aramingo Lease.

        In subsequent conversations with Mr. Fail, we were encouraged to direct our client to contact Mr. Aptar at Hilco to try and resolve the issues surrounding Debtor Pathmark's material breach of 3500 Aramingo's ROFO.  Our client reached out to Mr. Aptar, who eventually took part in a conversation with representatives of 3500 Aramingo on Friday, September 4, 2015.  Although our client understood from that conversation that Mr. Aptar was going to transmit a specific proposal to our client, no such proposal has been received by our client as of the date hereof.  Unfortunately, from our client's perspective, both of your firms appear to be taking the position that Debtor Pathmark has no intention of or obligation to, despite significant due process issues and the fact that the Debtor's agents and representatives were aware of the

okinhollander.com



**OKIN HOLLANDER**

Weil, Gotshal & Manges
Hilco Real Estate
September 9, 2015
Page 2

publicly-recoded ROFO, honor 3500 Aramingo's ROFO or trying to negotiate a mutually-satisfactory resolution with respect thereto.

        3500 Aramingo hereby reiterates its demand that Debtor Pathmark comply with its obligations under the ROFO.  Should Debtor Pathmark elect not to comply, this shall serve as further notice that our client intends to take all actions necessary to protect its interests and to ensure that it is not improperly denied the constitutional protections to which it is entitled in these Chapter 11 Cases.

Sincerely,

Margeta M. Morgulas, Esq.

cc:        3500 Aramingo Avenue, LLC

# Exhibit D
# September 17 Letter from Debtors' Counsel to Counsel to 3500 Aramingo

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

# Weil, Gotshal & Manges LLP

Garrett A. Fail
+1 212 310 8451
garrett.fail@weil.com

BY EMAIL

September 17, 2015

Okin Hollander LLC
One Parker Plaza, 12th Floor
Fort Lee, NJ 07024
Attn:    Margreta M. Morgulas, Esq.

Re:  *In re The Great Atlantic & Pacific Tea Company, Inc., et al.,*
     Chapter 11 Case No. 15-23007 (RDD) (jointly administered)

Dear Ms. Morgulas:

Reference is made to your correspondence dated August 25, 2015 and September 9, 2015, and our several conversations concerning the lease for the premises located at 3399 Aramingo Avenue, Philadelphia, Pennsylvania (the "**Lease**")[1] and leased by A&P Live Better, LLC (as assignee to Pathmark Stores, Inc.), and to the order entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") approving the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") discrete sale and lease rationalization procedures (ECF No. 496) (the "**Sale Procedure Order**").

In your correspondence, you refer to a purported prepetition Agreement of Sale (the "**Prepetition Sale Agreement**") between your client, 3500 Aramingo Avenue, LLC ("**3500 Aramingo**"), and Debtor Pathmark Stores, Inc., dated as of May 2009, providing for a purported right of first offer with respect to the Lease.

As you are aware, on December 12, 2010, the Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates commenced chapter 11 cases in the Bankruptcy Court (case no. 10-24549) (the "**2010 Chapter 11 Cases**"). Pursuant to the *Findings of Facts, Conclusions of Law, and Order Confirming Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code,* dated February 28, 2012, all executory contracts and unexpired leases that were not assumed were deemed rejected as of the effective date of the plan of reorganization.  *See* 2010 Chapter 11 Cases, ECF No. 3477.  Our records indicate that the Prepetition Sale Agreement was not assumed during the 2010 Chapter 11 Cases.  As such, it was rejected and is of no force or effect.

Despite our differing position as to the status and enforceability of the Prepetition Sale Agreement, I continue to reiterate that the Debtors encourage bidding and your client is welcome to submit a bid for any of the Debtors' available assets, including the Lease, in accordance with the procedures set forth in the Sale Procedures Order.

---

[1] The premises under the Lease are assessed as 3301 Aramingo Avenue, Philadelphia, Pennsylvania.

WEIL\95461634\3\50482  0005

**Weil, Gotshal & Manges LLP**

In furtherance thereof, the Debtors remain amenable to considering any timely bid submitted by 3500 Aramingo.  The deadline to submit a bid for the Lease has been extended through Monday, September 21, 2015 at 5:00 p.m. (Eastern Time).

As we discussed previously, even if the Debtors were to extend to your client a right of first offer, any disposition of the Lease would remain subject to Bankruptcy Court approval and the opportunity for any party to make a higher or better offer.  The Debtors intend to continue to honor their fiduciary duties to maximize value for their estates.  If your client desires the Lease its energies are best directed towards bidding in the auction process that has been publicly announced and approved by the Bankruptcy Court.

Should your client have any further questions pertaining to the marketing and sale of the interests associated with the Lease you can feel free to contact me or the Debtors' advisors at Hilco Real Estate LLC (gapter@hilcoglobal.com)  or Evercore Group LLC (stephen.goldstein@evercore.com).

Sincerely,

Garrett A. Fail

cc:   Christopher W. McGarry (by e-mail)
      Ray C. Schrock, P.C. (by e-mail)
      Stephen R. Goldstein (by e-mail)
      Gregory S. Apter (by e-mail)