UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                                          :
                                                               :      Chapter 11
THE GREAT ATLANTIC & PACIFIC TEA                               :
COMPANY, INC., *et al.*,                                       :      Case No. 15-23007 (RDD)
                                                               :
                               Debtors.[1]                     :      (Jointly Administered)
                                                               :
----------------------------------------------------------------x

## MEMORANDUM OF DECISION ON DEBTORS' MOTION TO REJECT HARLEM LEASE UNDER STIPULATION WITH LANDLORD

Counsel:

Weil, Gotshal & Manges LLP, by Ray C. Schrock, P.C. and Candace Arthur, Esq., for the Debtors

Platzer, Swergold, Levine, Goldberg, Katz & Jaslow, LLP, by Sherri D. Lydell, Esq. and Clifford A. Katz, Esq., counsel for Rainbow USA, Inc.

Hon. Robert D. Drain, United States Bankruptcy Judge

The Court held a hearing on November 5, 2015 on the motion of certain of the debtors

and debtors in possession herein for an order under 11 U.S.C. § 365(a) and Fed. R. Bankr. P.

6006 authorizing the rejection of an unexpired lease (the "Lease") of commercial real property

located at 160 East 125th Street, New York, New York pursuant to a Stipulation and Agreement

to Reject an Unexpired Lease of Nonresidential Real Property, dated October 4, 2015 (the

---

[1] The debtors in these chapter 11 cases are 2008 Broadway, Inc. (15-23006); The Great Atlantic & Pacific Tea Company, Inc. (15-23007); A&P Live Better, LLC (15-23008); A&P Real Property, LLC (15-23009); APW Supermarket Corporation (15-23010); APW Supermarkets, Inc. (15-23011); Borman's, Inc. (15-23012); Delaware County Dairies, Inc. (15-23013); Food Basics, Inc. (15-23014); Kwik Save Inc. (15-23015); McLean Avenue Plaza Corp. (15-23016); Montvale Holdings, Inc. (15-23017); Montvale-Para Holdings, Inc. (15-23018); Onpoint, Inc. (15-23019); Pathmark Stores, Inc. (15-23020); Plainbridge LLC (15-23021); Shopwell, Inc.(15-23022); Super Fresh Food Markets, Inc. (15-23023); The Old Wine Emporium of Westport, Inc. (15-23024); Tradewell Foods of Conn., Inc. (15-23025); and Waldbaum, Inc. (15-23026).  An order directing the joint administration of the Debtors' cases under the case caption In re Great Atlantic & Pacific Tea Company, Inc. (15-23007) was signed and entered on July 20, 2015 [ECF Dkt. No. 57].

"Stipulation"), between the debtors and the landlord under the Lease, 160 East 125th Owner,

LLC (the "Landlord").  Rainbow USA, Inc. ("Rainbow"), as subtenant under a sublease (the

"Sublease") of a portion of the property with one of the debtors, A&P Real Property, LLC, as

sublessor ("A&P Real Property"), objected to the motion, which also provided for rejection of

the Sublease.  At the hearing, the Court overruled the objection and granted the motion, as

memorialized in an order dated November 13, 2015.

        This Memorandum of Decision sets forth in greater detail than the Court's ruling at the

hearing the Court's reasons for granting such relief.

## Jurisdiction

        The Court has jurisdiction to decide the motion pursuant to 28 U.S.C. §§ 157(a)-(b) and

1334(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2).  As discussed in more detail

below, the motion is a summary proceeding, intended to review promptly A&P Real Property's

decision to reject the Lease and the Sublease, not to determine the parties' substantive rights,

including, specifically, Rainbow's rights vis a vis the Landlord after rejection.  In re Orion

Pictures Corp., 4 F.3d 1095, 1098-99 (2d Cir. 1993).

## Facts

        Under the Lease, A&P Real Property leased 61,000 square feet from the Landlord for an

initial term of twenty-five years expiring on April 30, 2024, plus five renewal options

aggregating another 23 years and 11 months.  Pursuant to the Sublease, A&P Real Property

subleased 5,479 square feet of the leased property to Rainbow for an initial term of five years

plus two renewal options for another 8 years and 6 months.  The Landlord is neither a party to

the Sublease nor, apparently, otherwise in privity with Rainbow; paragraph 11(c) of the Sublease

refers to Rainbow's waivable right to terminate the Sublease if it does not receive a "Recognition

Agreement" from the Landlord within 60 days of the commencement of the Sublease, but no

such agreement is in the record.  Rainbow operates a clothing store at the subleased portion of

the property.  Until recently, the Debtors operated a grocery store at the rest of the property.

The debtors do not appear to have had any choice except to commence[2] their chapter 11

cases with the intention of efficiently liquidating all of their operations and assets.  Since the

planning phase that preceded these chapter 11 cases, the debtors' prepetition lenders, who assert

liens on substantially all of the debtors' assets, were unwilling to provide new funding or agree

to the debtors' use of their cash collateral with the exception of facilitating the debtors' orderly

liquidation.  No other sources of postpetition financing or adequate protection of the lenders'

cash collateral were available, as confirmed by the lack of meaningful opposition to the entry of

a debtor-in-possession financing and cash collateral order[3] that limited the debtors' access to the

lenders' cash collateral and postpetition credit to 170 days after the Petition Date -- that is, until

January 5, 2016 -- subject to reduction upon certain events and liquidation-related benchmarks.

The debtors also faced a second time constraint.  On the Petition Date, the debtors'

approximately 300 leases of real property comprised a significant, perhaps the most valuable,

portion of their estates, because the Bankruptcy Code enables debtors to turn favorable leases

into cash by assignment to third parties or rejection in return for consideration from the landlord,

in each case under 11 U.S.C. § 365(a).  Under section 365(d)(4) of the Bankruptcy Code,

however, Congress curtailed such power by limiting debtors' time to assume, assume and assign

or reject leases of nonresidential real property to a maximum of 210 days after the petition date

---

[2] The debtors filed their chapter 11 petitions on July 19, 2015 (the "Petition Date").

[3] *Final Order Authorizing Debtors to (A) Obtain Third Lien Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 364(c)(1), 362(c)(2), 362(c)(3), 364(d)(1) and 364(e), (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2), and (C) Grant Certain Protections to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364*, entered on August 12, 2015 [ECF Dkt. No. 531].

and provided that upon rejection "the trustee [or debtor in possession] shall immediately

surrender that nonresidential real property to the lessor."[4]  Here, the debtors' time to assume or

reject executory contracts and unexpired leases expires on the earlier of February 15, 2016 and

the entry of an order confirming the Debtors' chapter 11 plan, unless the relevant landlord agrees

to an extension.[5]

In light of the foregoing, the debtors' strategy to liquidate their operations and assets by

the end of 2015 included promptly obtaining Court permission to assume and assign or reject

their real property leases pursuant to three procedural orders:  (1) the *Order Approving (A)

Global Bidding Procedures, (B) Bid Protections Granted to Certain Stalking Horse Purchasers,

(C) the Form and Manner of Notice of Auctions, Sale Transactions and Sale Hearing, (D) the

Assumption and Assignment Procedures, and (E) the Date for Auctions, If Necessary, and Sale

Hearings*, entered August 11, 2015 [ECF Dkt. No. 495] (the "Global Bidding Procedures

Order"), (2) the *Order Approving Discrete Sale and Lease Rationalization Procedures*, entered

on August 11, 2015 [ECF Dkt. No. 496] (the "Discrete Procedures Order"), and (3) the *Amended

Final Order Approving (I) Global Procedures for (A) Store Closings, (B) The Expedited Sale,

Transfer, or Abandonment of De Minimis Assets, and (C) Rejecting Unexpired Nonresidential

Real Property Leases, and (II) Entry Into a Liquidation Consulting Agreement*, entered on

August 13, 2015 [ECF Dkt. No. 546] (the "Store Closing Procedures Order;" together with the

Global Bidding Procedures Order and the Discrete Procedures Order, the "Procedures Orders").

The Global Bidding Procedures Order governs the assumption and assignment of leases that

were included in so-called "stalking horse packages," that is, leases of grocery stores that were

---

[4] 11 U.S.C. § 365(d)(4)(A).
[5] *Order Pursuant to 11 U.S.C. § 365(d)(4) and Local Bankruptcy Rule 6006-1(c) Extending the Time to Assume or Reject Unexpired Leases and Subleases of Nonresidential Real Property* entered on October 27, 2015 [ECF Dkt. No. 1583].

proposed to be sold as a group to advance bidders, subject to higher and better offers.  The

Discrete Procedures Order governs the assumption and assignment or rejection of leases that

were not included in the stalking horse packages.  The Store Closing Procedures Order governs

procedures for closing grocery store locations, disposing of related assets and rejecting related

leases.  The Court approved each of the Procedures Orders after notice and a hearing.  While

there were several objections to aspects of the requested relief, no party disputed the debtors'

need to liquidate their assets, including their leases, promptly and efficiently.

Each of the Procedures Orders recognized the debtors' duty to maximize the value of

their assets, affording the debtors flexibility to assign a lease instead of rejecting it, or vice versa,

while subjecting the debtors' decision to Court review after notice and the opportunity for a

hearing.

Consistent with the foregoing, the debtors' aggressively marketed the Lease, among their

other assets, to prospective assignees.  The Lease was included in the publically filed schedule of

available leases attached to both the Global Bidding Procedures Order and the Discrete Bidding

Procedures Order.  Transcript of November 5, 2015 hearing on the motion ("Tr."), at 72-73.[6]

Pursuant to the Global Bidding Procedures Order, August 31, 2015 was set as the

deadline for third parties to submit non-binding expressions of interest in the debtors' leases and

related assets, including the Lease, and September 11, 2015 as the deadline to submit binding

bids.  Following a series of extensions, the deadline to submit binding bids was last extended for

certain leases, including the Lease, to October 6, 2015 (two days after the date of the

Stipulation).  The debtors also published notices of the proposed disposition of their leases,

---

[6] The Lease and Sublease were also included in the debtors' *Omnibus Notice of Store Closing Sales* [ECF Dkt. No. 1189], filed on October 9, 2015 pursuant to the Store Closing Procedures Order.  Like most of the debtors' stores, the grocery store operated on the property under the Lease was scheduled to have a going out of business sale before Thanksgiving, 2015.  Tr. at 78.

including the Lease, on their claim and noticing agent's website and in The New York Times national edition, and the Lease was among the assets available for review in the electronic data room assembled and overseen by the financial advisors responsible for marketing the debtors' assets.

Eight potential third party bidders for the Lease expressed interest; ultimately, however, only the Landlord made a firm bid.  Tr. at 73.  Obtaining such a bid was a considerable achievement, highlighting the Debtors' marketing efforts:  one can infer that the Landlord was sufficiently concerned about the debtors' possible assignment of the Lease to a third party that it made its proposal before the bid deadline, not wanting to take the risk of simply waiting for the Lease to expire under 11 U.S.C. § 365(d)(4).

The Stipulation[7] memorializes the parties' terms for rejection of the Lease and the Sublease, subject to Court approval and the submission of higher and better offers, which, as noted, did not materialize.  Under the Stipulation, the Debtors will receive $21 million in consideration for rejecting of the Lease plus a release of any claims that the Landlord may have against them.  Stipulation ¶ 5.  $10.5 million of the $21 million is payable within five business days of the entry of the Court's final order approving the Stipulation.  Id.  The remaining $10.5 million is payable within five business days of Rainbow's surrender of or dispossession from the property, which  the Landlord undertakes to prosecute diligently, subject to a credit against such $10.5 million for its litigation costs.  Id.

**Discussion**

---

[7] The Stipulation was filed with the *Notice of Filing of Stipulation and Agreement Related to Rejection of Unexpired Lease and Related Sublease of Nonresidential Real Property Located at 160 East 125th Street, New York*, dated October 26, 2015 [ECF Dkt. No. 1570].

A.      <u>The Stipulation was a proper exercise of business judgment and in good faith.</u>  Based on

the foregoing, the Court denied Rainbow's first objection to the Motion, which argued that the

Court should not approve the Stipulation and rejection of the Lease because the Stipulation was

not a proper exercise of business judgment and not agreed to in good faith.

        *(i) The debtors satisfied the standard for rejection of the Lease.*

        Under 11 U.S.C. § 365(a), a debtor in possession, "subject to the court's approval, may

assume or reject any . . . unexpired lease of the debtor."  "The purpose behind allowing the

assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to

use valuable property of the estate and to renounce title to and abandon burdensome property."

<u>In re Orion Pictures Corp.</u>, 4 F.3d at 1098 (quotation and citation omitted).  Subject to the

requirement of notice and a hearing and the bankruptcy court's approval, section 365(a) allows

the debtor in possession to assess its inventory of unexpired leases and "decide which ones

would be beneficial to adhere to and which ones it would be beneficial to reject."  <u>Id.</u>

        As held by <u>In re Orion Pictures Corp.</u>, "[T]he process of deciding a motion to assume [or

reject] is one of the bankruptcy court placing itself in the position of the . . . debtor in possession

and determining whether assuming [or rejecting] the contract would be a good business decision

or a bad one."  4 F.3d at 1099; <u>see also</u> <u>In re Penn Traffic Co.</u>, 524 F.3d 373, 383 (2d Cir. 2008);

<u>In re Great Atlantic & Pacific Tea Co.</u>, 472 B.R. 666, 672 (S.D.N.Y. 2012).  While those

opinions describe this analysis as a "business judgment" test, it is not identical with, although it

has similar factors as, the state law "business judgment" standard for review of corporate

decision-making.  For example, it is prospective looking and the Court considers the views of

parties in interest to inform its judgment about the desirability of the proposed transaction.

Nevertheless, particularly where there are no objections by parties with a general stake in the

decision, the Court may largely defer to the debtor's view that rejection or assumption will benefit the estate, provided that the debtor is not conflicted and has taken sufficient steps to maximize value. In re Genco Shipping & Trading Ltd., 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014) ("[A] debtor must simply put forth a showing that assumption or rejection of the . . . unexpired lease will benefit the Debtor's estate."); In re MF Global Holdings Ltd., 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); see generally 3 Collier on Bankruptcy ¶ 365.03[2] (16th ed. 2015) at 365-27 ("[T]he court should focus on the business judgment of the trustee or debtor in possession, not on its own business judgment."). Unless a separate provision of the Bankruptcy Code provides a non-debtor party with specific protection, the debtor and its estate's interests are paramount; adverse effects on the non-debtor contract party arising from the decision to assume or reject are irrelevant. In re Penn Traffic Co., 524 F.3d at 383; In re Great Atlantic & Pacific Tea Co., 472 B.R. at 672-73; In re Old Carco LLC, 406 B.R. 180, 192-93 (Bankr. S.D.N.Y. 2009).

Here, no party with an interest in maximizing the value of the debtors' estates objected to the motion, and with good reason. A&P Real Property's rejection of the Lease pursuant to the terms of the Stipulation clearly will benefit the debtors and is within their sound business judgment. Not only does the Stipulation relieve the debtors of the Lease, which is of a property that they lacked the wherewithal to operate beyond the third week of November, but also the Landlord is supplying substantial value that no other party was prepared to exceed, or even to compete against.

*(ii) No formal auction was required.*

Rainbow contended that the debtors characterized the Stipulation as a rejection of the Lease subject to approval under 11 U.S.C. § 365(a) in bad faith in order to circumvent the

8

"customary and fiscally prudent steps" of selling assets by auction pursuant to 11 U.S.C. §

363(b).  Objection ¶ 8.  It is true that there was no formal auction of the Lease, but it was

marketed pursuant to the Procedures Orders and presumably there would have been an auction if

a higher firm bid had been submitted by the bid deadline.  More importantly, there is no rule that

a debtor's decision to reject a lease be subject to a formal auction:  even asset sales are not

conditioned on such a requirement, which does not appear in the Bankruptcy Code or

Bankruptcy Rules.  See also General Order M-383, the Bankruptcy Court for the Southern

District of New York's *Guidelines for the Conduct of Asset Sales*,[8] which specifically recognizes

the propriety of private sales, stating that, subject to certain disclosure requirements,[9] the Court

does not "express a preference for public sales over private sales as a means to maximize the sale

price."  Sale Guidelines at ¶ I(A) n.2.  Moreover, because of the requirement of Court review

coupled with debtors' duty to maximize the value of their estates, see In re Financial News

Networks, Inc., 980 F.2d 165, 169 (2d Cir. 1992); In re GSC, Inc., 453 B.R. 132, 169-70 (Bankr.

S.D.N.Y. 2011), any motion for approval of the assumption or rejection of an executory contract

or lease, or of the sale of an asset, has inherent within it the possibility for an auction:  all it takes

to turn the hearing on such a motion into an auction is the public submission of an arguably

higher or better firm offer.  Here, again, there was no auction because there were no competing

proposals, notwithstanding aggressive marketing.  The Stipulation, therefore, provides for a fair,

---

[8] Available at the Court's website at: http://www.nysb.uscourts.gov/rule-6004-1 (last updated Aug. 1, 2013).

[9] The additional disclosures include why the debtor proposes a private sale and why such a sale is likely to maximize the sale price, which were provided here.  Id. at ¶ I(A) & (D)(3).

market driven price, which no one was prepared to top, even with the contingency pertaining to its second, $10.5 million component.[10]

B.  <u>The Court may not decide, in the context of the motion, Rainbow's possessory rights against the Landlord.</u>  Turning to the Stipulation's $10.5 million contingency, both A&P Real Property and Rainbow argued that the Court should decide in the context of the present motion whether Rainbow would have the right to continued possession of the subleased portion of the Property after A&P Real Property's rejection of the Lease and the Landlord's attempt to evict it. Rainbow contended that it had such a right under New York's "voluntary surrender" doctrine (and, therefore, that the Stipulation could not be fully implemented and, at a minimum, was not as good a deal as the debtors argued).  The debtors contended, to the contrary, that the facts did not warrant application of the voluntary surrender doctrine.  Each party relied heavily on <u>380 Yorktown Food Corp. v. 380 Downing Dr., LLC</u>, 35 Misc. 3d 1243(A), 957 N.Y.S.2d 267, 2012 N.Y. Misc. LEXIS 2923 (Sup. Ct., Westchester Cty. 2012), <u>aff'd</u>, <u>appeal dismissed</u>, 107 A.D.3d 786, 967 N.Y.S.2d 125 (2d Dep't. 2013), <u>lv. appeal denied</u>, 22 N.Y.3d 860 (2014), which construed New York's voluntary surrender doctrine under analogous facts arising out of the debtors' prior chapter 11 cases and ultimately found that the doctrine did not apply.  The Court ruled, however, that it could not, given Second Circuit precedent, decide Rainbow's post-rejection rights against the Landlord in the context of a rejection motion, which, as noted, is a summary proceeding.

As held by <u>In re Orion Pictures Corp.</u>, a summary proceeding such as a lease rejection motion "is not the time or place for prolonged discovery or a lengthy trial with disputed issues."

---

[10] As discussed below, it is also reasonable to assume that the Landlord would be able to dispossess Rainbow from the Property after entry of the Court's order approving rejection of the Lease; thus, it appears that even the second $10.5 million payment under the Stipulation is far from illusory.

4 F.3d at 1098-99.  Instead, such motions concern the Court's efficient review of the debtor's business judgment.  Id.  It would be incompatible with that focus for the Court to decide a substantive legal issue in such a context, id. at 1099, although nothing prevents bankruptcy courts from scheduling a motion under section 365(a) of the Bankruptcy Code to be heard simultaneously with an adversary proceeding or contested matter to determine the merits of substantive legal disputes related to the motion, and the Court should consider such disputes, in a non-binding way, when deciding whether rejection of the Lease makes good business sense in their light.  Id.

Whether New York's voluntary surrender doctrine applies to Rainbow's continued possession is the type of issue that Orion Pictures precludes the Court from deciding here.  It is a fact-based common law exception to the general rule that "under New York law when a prime lease fails, so does the sublease."  In re 48th Street Steakhouse, Inc., 835 F.2d 427, 430 (2d Cir. 1987), cert. denied, 485 U.S. 1035 (1988).  It applies "where the prime tenant surrendered its lease to the landlord pursuant to a separate agreement."  Id. at 430-31.  See also Goldcrest Transp., Ltd. v. Across Am. Leasing Corp., 298 A.D.2d 494, 748 N.Y.S.2d 411, 413 (2d Dep't. 2002) ("As a general rule, where a landlord and prime tenant enter into an agreement to voluntarily terminate the paramount lease, the subtenant becomes the immediate tenant of the original lessor, and the interest of the subtenant and terms of the sublease continue as if no termination had occurred.").  The doctrine is intended to prevent the landlord and prime tenant from colluding to deprive an innocent subtenant of the benefit of its bargain.  Johns v. AMC Beauty Salon, 29 Misc. 3d 342, 905 N.Y.S.2d 501, 504 (Sup. Ct., N.Y. Cty. 2010).  "The effect of a voluntary surrender is equivalent to a transfer of the reversion, the interests of the landlord

11

and the tenant merge, and what remains is the landlord's fee subject to the subtenancy." 380
Yorktown Food Corp. v. 380 Downing Dr., LLC, 2012 N.Y. Misc. LEXIS 2923, at *68 n.35.

The voluntary surrender doctrine does not, however, protect the subtenant from the
landlord's ability to reenter and terminate the overlease and, thus, the sublease, upon the tenant's
*breach* of the overlease. Eten v. Luyster, 60 N.Y. 252, 258 (1875); 380 Yorktown Food Corp.,
107 A.D.3d at 788, 967 N.Y.S.2d at 127; Goldcrest Transp. Ltd., 298 A.D.2d at 496, 748
N.Y.S.2d at 413. In keeping with its name, the doctrine requires the *voluntary* surrender of the
lessee's interest to the landlord, although there appears to be some discretion to find that a breach
was collusive, which requires, however, more than a stipulation resolving an eviction proceeding
commenced after an overlease was rejected under 11 U.S.C. § 365. Lippe v. Prof'l Surgical
Supply Co., 132 Misc. 2d 293, 296, 503 N.Y.S.2d 254, 256 (Civ. Ct., Queens Cty. 1986); see
generally Stephen T. Kaiser, Note, Giving Up on Voluntary Surrender:  The Rights of a
Sublessee when the Tenant and Landlord Cancel the Main Lease, 24 Cardozo L. Rev. 2149,
2152-59 (2003) ("To summarize, courts generally are not willing to infer a surrender from the
conduct of the tenant and landlord when the subtenant alleges collusion between the landlord and
tenant to default on the terms of the lease.  It appears that absent clear evidence of fraud or
collusion, the subtenant will lose his property interest.").

Given the factual rulings that the Court would have to make, In re Orion Pictures Corp.
thus precludes the Court's determination of whether the voluntary surrender doctrine applies in
the context of a motion to reject the Lease under 11 U.S.C. § 365(a).  4 F.3d at 1098. Cf. Chatlos
Sys. v. Kaplan, 147 B.R. 96, 100 (D. Del. 1992), aff'd sub nom. In re TIE Commc'ns, 991 F.2d
1005 (3d Cir. 1997);  In re Stalter & Co., 99 B.R. 327, 329, 333 (E.D. La. 1989); In re Elephant
Bar Restaurant, 195 B.R. 353, 357 (Bankr. W.D. Pa. 1996); In re Dial-A-Tire, Inc., 78 B.R. 13,

16 (Bankr. W.D.N.Y. 1987); and In re Elmhurst Transmission Corp., 60 B.R. 9, 10 (Bankr.

E.D.N.Y. 1986), each holding that the issue of the overlandlord's and subtenant's rights against

each other after rejection of the overlease should not be determined in the context of the

overlease rejection motion where the bankruptcy estate has no remaining interest in the ultimate

disposition of the underlying property.  As stated by the Dial-A-Tire court, the "rejection which

occurred here will leave [the overlandlord] and [the subtenant] to vie for possession of the

Premises according to New York Law.  This matter is not properly before the Court.").  78 B.R.

at 16 (citation omitted).

    As noted above, however, this should not preclude the Court from considering, on a non-

binding basis, the potential relevance of New York's voluntary surrender doctrine on A&P Real

Property's business judgment to reject the Lease.  Here, the Stipulation would benefit the debtors

regardless whether they receive the second $10.5 million under its terms.  Moreover, if one were

to handicap the likelihood of the debtors' receiving that additional consideration, while there

may be a grey area involving collusive breaches, the voluntary surrender doctrine was found not

to apply in 380 Yorktown Food Corp. notwithstanding the landlord's payment of $300,000 to the

debtor/tenant for the tenant's rejection of the overlease under 11 U.S.C. § 365(a):  "[T]here is

nothing voluntary about having  to choose between assumption and rejection in a Chapter 11

proceeding and the ultimate choice is entirely dependent upon the parties' relative bargaining

power coupled with the overall financial benefit of the leasehold to the bankruptcy estate."  2012

N.Y. Misc. LEXIS 2923, at *80.  See also Lippe, 132 Misc. 2d at 296, 503 N.Y.S.2d at 256.

Here, the debtors were under even more pressure to assume and assign or reject their leases,

including the Lease, than they were in their first bankruptcy case that led to the 380 Yorktown

decision:  they have access to cash only to liquidate their assets; when that cash runs out, they

have no means to continue to perform the Lease.  They have no ability simply to assume it prior to the deadline under 11 U.S.C. § 365(d)(4), and no third party besides the Landlord bid for it. The 380 Yorktown court also noted that the bankruptcy court's order approving rejection under 11 U.S.C. § 365(a) resulted in a breach, not a termination, of the overlease, which also precluded the voluntary surrender doctrine from applying.  2012 N.Y. Misc., at *80-81; see also In re Lavigne, 114 F.3d 379, 386-87 (2d Cir. 1997) (rejection of a lease under 11 U.S.C. § 365 constitutes a breach, not termination, of the lease); 11 U.S.C. §§ 365(g) and 502(g) (same).  To the extent relevant, therefore, the voluntary surrender doctrine would not lead one to second guess A&P Real Property's business decision to reject the Lease under the terms of the Stipulation.

C.      11 U.S.C. § 365(h)(1)(A)(ii) does not apply to the Sublease where the Lease has been rejected.

        Unlike the prior issue, the Court should decide Rainbow's next objection to the motion, Rainbow's contention that, notwithstanding A&P Real Property's rejection of the Lease and its duty to surrender the property immediately to the Landlord after rejection of the Lease, Rainbow may elect to remain in possession under 11 U.S.C. § 365(h)(1)(A)(ii). That section provides,

> If the trustee [or debtor in possession] rejects an unexpired lease of real property under which the debtor is the lessor and --
>
>         (ii) if the term of such lease has commenced, the lessee may retain its rights *under such lease* (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable bankruptcy law.

11 U.S.C. § 365(h)(1)(A)(ii) (emphasis added).

14

By its plain terms, 11 U.S.C. § 365(h)(1)(A)(ii) protects non-debtor lessees where the debtor-lessor rejects their lease, whereas 11 U.S.C. § 365(d)(4) protects non-debtor lessors upon rejection, "to enable the lessors to once again rent the premises and to earn income from the demised premises." In re Tri-Glied, Ltd., 179 B.R. 1014, 1019 (Bankr. E.D.N.Y. 1995).   When a debtor that is both a lessee under an overlease and a lessor under a sublease rejects both the overlease and the sublease, then, it might be argued that the two provisions conflict:  the debtor, as lessee, is obligated to surrender the premises to its landlord, but its subtenant might argue that it nevertheless has a statutory election to stay in place.  See, e.g., Cahaba Forests, LLC v. Hay, 2012 U.S. Dist. LEXIS 13877, at *16-21 (M.D. Ala. Feb. 6, 2012).

Because "a sublease which is subject and subordinate to a prime lease is automatically terminated if the prime lease itself is validly terminated," In re Shoppers Paradise, Inc., 8 B.R. 271, 275 (Bankr. S.D.N.Y. 1980), some courts and commentators have couched the solution to this possible conundrum by asking whether rejection of the overlease _terminates_ the lease and thus the sublease.  See, e.g., Block Props. Co. v. Am. Nat'l Ins. Co., 998 S.W.2d 168 (Mo. Ct. App. 1999) (apparently deciding non-debtor subtenant's rights vis a vis the non-debtor overlandlord under 11 U.S.C. § 365(h)(1)(A)(ii) in addition to such parties' post-rejection rights against each other under applicable non-bankruptcy law); Vivek Sankaran, Note, Rejection Versus Termination:  A Sublessee's Rights in a Lease Rejected in a Bankruptcy Proceeding under 11 U.S.C. § 365(d)(4), 99 Mich. L. Rev. 853, 856-57 (2001).[11]

---

[11] One can see why the issue of the subtenant's post-rejection rights against the overlandlord could be confused with the subtenant's rights under section 365(h)(1) in the context of whether the overlease is terminated by its rejection under 11 U.S.C. § 365(a).  If rejection under section 365(a) terminates a rejected overlease, any post-rejection common law rights that the subtenant might have against the overlandlord would be precluded as a matter of federal preemption.  The net effect of those rights is similar to the election right under 11 U.S.C. § 365(h)(1)(A)(ii):  the former subtenant cannot be evicted from the property unless the subtenant independently

If the analysis under section 365(h)(1)(A)(ii) properly depended on whether rejection of a lease constitutes the lease's termination it would be easily applied here, because, as noted above, the Second Circuit has held that rejection of a lease does not terminate it but, rather, constitutes a breach. In re Lavigne, 114 F.3d at 386-87. However, whether section 365(h) applies to a subtenant after rejection of the overlease is not governed by whether such rejection terminates the lease. Instead, a proper reading of section 365(h)(1)(A)(ii)'s reference to the subtenant's "rights under such [sub]lease" and section 365(d)(4)'s surrender requirement show that section 365(h) does not give the subtenant a meaningful election to remain in its former subtenancy when the debtor has rejected the overlease first or simultaneously with the sublease.

In that instance, the requirement that the debtor surrender possession to its landlord is tantamount to termination as far as the subtenant's rights as lessee "under the [sub]lease" -- the operative phrase in section 365(h)(1)(A)(ii) -- are concerned. The subtenant may have common law rights *against the landlord*, as discussed in the previous section, but -- given that the debtor is required to surrender the premises to its landlord under section 365(d)(4) -- the subtenant lacks any meaningful right to possession *from the debtor* "under the [sub]lease," which the debtor (in contrast with the landlord, or, more appropriately a court that can enforce on the landlord under applicable non-bankruptcy law, such as the voluntary surrender doctrine) can no longer confer. See In re Child World, Inc., 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) ("*As a sublessee,* [subtenant] has no possessory interest to preserve following the debtor's rejection of the prime lease.") (emphasis added). See also In re Stalter & Co., 99 B.R. at 331 ("While § 365(h) gives a sublessee the right to maintain its possessory interest in a subleasehold when the debtor has

---

breaches. However, as discussed above, a subtenant may have a right to possession against the overlandlord after rejection separate and apart from any right that it may have to possession under section 365(h)(1)(A)(ii).

16

rejected the sublease, there is *no real property to which the subleasehold* attaches" as soon as the

debtor's right to possession under the primary lease ends.); In re Henderson, 245 B.R. 449, 453-

54 (Bankr. S.D.N.Y. 2000) (rejection of non-residential lease, while not the same as termination,

is tantamount to termination because of surrender requirement); In re 6177 Realty Assocs., Inc.,

142 B.R. 1017, 1019, 1020 (Bankr. S.D. Fla. 1992) (while rejection does not equal termination,

section 365(d)(4)'s surrender requirement effectively terminates all leases in chain where

rejecting debtor is both lessee and sublessor).

      This, of course, still leaves for determination the issue of the subtenant's rights against

the overlandlord under applicable non-bankruptcy law, discussed above, but if the overlease is

rejected before or simultaneously with the sublease, 11 U.S.C. § 365(h)(1)(A)(ii) adds nothing to

the subtenant's rights.  For example, the parties to the analogous litigation in 380 Yorktown

Food Corp. did not even include the bankrupt debtors, 2012 N.Y. Misc. LEXIS 2923, at *1, and

the court's consideration of 11 U.S.C. § 365(h)(1)(A)(ii) was relevant only to the issue of

whether prior rejection had terminated the lease and sublease.  Id. 2012 N.Y. Misc. LEXIS 2923,

at *42-65.

      Each of the three cases cited by Rainbow for the proposition that it nevertheless was

entitled to an election under 11 U.S.C. § 365(h)(1)(A)(ii) are distinguishable.  In In re Zota

Petroleums, LLC, 482 B.R. 154 (Bankr. E.D. Va. 2012), the debtor rejected the sublease but did

not, unlike here, reject the overlease.  Id. at 156.  Thus the debtor, unlike A&P Real Property,

had an effective continuing interest in the leased property to which the subtenant's interest

attached even after the debtor assigned the overlease to a third party.  Id.  at 163.  Similarly, the

debtor in In re Samaritan Alliance, LLC, 2007 Bankr. LEXIS 3896 (Bankr. E.D. Ky. Nov. 21,

2007), was found neither to have effectively terminated the overlease pre-bankruptcy nor to have

rejected it postpetition, which gave the debtor rights in the property to which the subtenant's interest could attach. Id. 2007 Bankr. LEXIS 3896, at *12-14.[12] In re Amicus Wind Down Corp., 2012 Bankr. LEXIS 662 (Bankr. D. Del. Feb. 24, 2012), the debtor also had not yet rejected the overlease, because the lease rejection order provided that rejection would not occur until the debtor relinquished control of the premises and the landlord objected to such rejection becoming effective until the subtenant was evicted. Id. 2012 Bankr. LEXIS 662, at *3-4. The court agreed: "The Lease Rejection Order required delivery of possession of the property to the Over-Landlord, not merely surrender of the Debtors' interest in the Premises as the Debtors argue. The Debtors did not deliver possession of the Property to [the Over-Landlord] because absent eviction proceedings in the New York courts, the Debtors cannot unilaterally surrender the Subtenant's possessory rights in the Premises." Id. 2012 Bankr. LEXIS 662, at *8. Here, the Stipulation provides, to the contrary, that rejection of the Lease and Sublease are effective simultaneously, and eviction of Rainbow is the Landlord's responsibility.[13]

D.    Even if the Stipulation were viewed as a sale of the Lease under 11 U.S.C. § 363(b), Rainbow would not be entitled to relief under 11 U.S.C. § 363(f) or (e). Although the

---

[12] The Samaritan Alliance court found that the debtor and the overlessor had not effectively terminated the overlease four days before the bankruptcy commenced because they simultaneously entered into a "purchased services agreement" that was part of an integrated whole with the "terminated" overlease; thus, the subtenant had rights "under the [sub]lease" for purposes of 11 U.S.C. § 365(h)(1). Id.

[13] To the extent that In re Amicus Wind Down Corp. can be read to assert, in the alternative, that the subtenant had rights "under such [sub]lease" for purposes of 11 U.S.C. § 365(h)(1)(A)(ii) solely because of its state law rights against the overlandlord, with which it was not in privity, 2012 Bankr. LEXIS 662, at *5 n.2, the Court disagrees. A close reading of the decision suggests, however, that the subtenant's mere post-rejection rights against the overlandlord would not suffice to give rise to such an election, although, as noted above, such rights would need to be determined before the subtenant could be evicted. Cf. Chatlos Sys., Inc. v. Kaplan, 147 B.R. 96, 100-101 (D. Del. 1992), aff'd sub nom. In re TIE Commc'ns, 998 F.2d 1005 (3d Cir. 1993), which allocates responsibility to the overlandlord for evicting the subtenant when there were no conditions on the effectiveness of the rejection of the overlease.

Stipulation provides for rejection of the Lease pursuant to 11 U.S.C. § 365(a), Rainbow's last objection contends that the Court should analyze the motion under section 363 of the Bankruptcy Code as a sale of the Lease.[14]  If the motion were so analyzed, Rainbow contends, the debtors would be precluded from selling the Lease free and clear of Rainbow's interest in the property, pursuant to 11 U.S.C. § 363(f), or, at a minimum, Rainbow would be entitled to adequate protection of its interest in the property under 11 U.S.C. § 363(e).

To start, this issue does not concern a fact pattern that continues to divide courts: whether a debtor-lessor may sell real property that it owns free and clear under 11 U.S.C. § 363(f) notwithstanding its lessee's rights under 11 U.S.C. § 365(h)(1).  Compare In re Downtown Athletic Club of New York City, 2000 U.S. Dist. LEXIS 7917, at *11-13 (S.D.N.Y. June 9, 2000); and In re R.J. Dooley Realty, Inc., 2010 Bankr. LEXIS 1761, at *17-23 (Bankr. S.D.N.Y. May 21, 2010) (in each case holding that real property may be sold pursuant to 11 U.S.C. § 363(f) free and clear of lessee's interest under 11 U.S.C. § 363(h)(1)(A)(ii)), and In re Patriot Place, Ltd., 486 B.R. 773, 815-19 (Bankr. W.D. Tex. 2013); In re Zota Petroleums, LLC, 482 B.R. at 163; In re Samaritan Alliance, LLC, 2007 Bankr. LEXIS 3896, at *11-12; and In re Haskell L.P., 321 B.R. 1, 8-9 (Bankr. D. Mass. 2005) (in each case holding that real property may not be sold pursuant to 11 U.S.C. § 363(f) free and clear of lessee's interest under 11 U.S.C. § 365(h)(1)(A)(ii)).  See also Dishi & Sons v. Bay Condos LLC, 510 B.R. 696, 698-99, 707-12 (S.D.N.Y. 2014) (real property may be sold pursuant to 11 U.S.C. §363(f) free and clear of lessee's interest in the real property in limited circumstances, but that interest is entitled to adequate protection under 11 U.S.C. § 363(e)).

---

[14] Notwithstanding, of course, that section 363(b) and (f) do not refer to the assumption and assignment or rejection of leases, which are instead governed by section 365 of the Bankruptcy Code.

Here, instead, the debtors are not selling the underlying real property; they are rejecting

their Lease of that property.  Thus, even under Rainbow's argument, the "sale" is of the Lease,

not of the underlying property.  Rainbow is not a party to the Lease and does not hold its

property interest under the Lease but, rather, under the Sublease; therefore, the "sale" would not

need to be free and clear of Rainbow's (non-existent) interest in the Lease under 11 U.S.C. §

363(f).

Nor do the debtors owe Rainbow adequate protection under 11 U.S.C. § 363(e) with

respect to Rainbow's interest in either the Lease or the underlying real property.  Section 363(e)

of the Bankruptcy Code provides,

> Notwithstanding any other provision of this section, at any time, on request of an
> entity that has an interest in property used, sold, or leased, or proposed to be used,
> sold, or leased, by the trustee [or the debtor in possession], the court . . . shall
> prohibit or condition such use, sale, or lease as is necessary to provide adequate
> protection of such interest.

11 U.S.C. § 363(e).  Rainbow's property interest is in the Sublease and the real estate subleased

pursuant to it.  As noted above, even under Rainbow's argument, the debtors are not "selling"

that property (unlike the debtor in Dishi & Sons, 510 B.R. at 696, which sold the underlying real

property), nor are they using it or leasing it; instead, they are rejecting the Lease of it.  Rainbow

has no interest in the Lease, which under Rainbow's argument, the debtors *are* "selling."

Therefore, under section 363(e) Rainbow has no interest entitled to adequate protection in light

of the Lease's "sale."

Moreover, the Bankruptcy Code does not recognize a right to adequate protection for

lessees of rejected leases with the arguable exception of any interest that they may have under 11

U.S.C. 365(h)(1)(A)(ii).  Except for that interest, they are afforded only a claim under 11 U.S.C.

§§ 365(g) and 502(g).  In re R.J. Dooley Realty, Inc., 2010 Bankr. LEXIS, at *21-24; see also In

20

re Megan-Racine Assocs., Inc., 192 B.R. 321, 327 (Bankr. N.D.N.Y. 1995).  And, as discussed

above, after rejection of the Lease and the statutorily mandated surrender of A&P Real

Property's interest in the property, Rainbow's interest under the Sublease is so nebulous that it

does not have an election right under section 365(h)(1)(A)(ii), while its rights, to the extent they

exist, against the Landlord under New York law are fully preserved for future determination.

Thus, as regards Rainbow's interest in A&P Real Property's interest in the underlying property,

Rainbow has nothing of value to be adequately protected.[15]

## Conclusion

For the foregoing reasons, the debtors' motion should be granted and Rainbow's

objection denied to the extent set forth in the Court's November 13, 2015 order.

Dated:  White Plains, New York
        January 6, 2016

                                        _/s/Robert D. Drain_____
                                        United States Bankruptcy Judge

---

[15] The Bankruptcy Code requires adequate protection only of the value of an entity's interest in
property in which the debtor's estate has an interest.  See generally 3 Collier on Bankruptcy ¶
361.02, at 361-4-5.

21