WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                            :
                                                 :    **Chapter 11**
**THE GREAT ATLANTIC & PACIFIC TEA**             :
**COMPANY, INC.,** *et al.*,                     :    **Case No. 15-23007 (RDD)**
                                                 :
          Debtors.[1]                            :    **(Jointly Administered)**
                                                 :
---------------------------------------------------------------x

### NOTICE OF FILING OF EXHIBIT TO THE RESPONSE OF DEBTORS MOTION TO COMPEL OF CHRISTOPHER J. SHANNON

**PLEASE TAKE NOTICE** that on November 13, 2018, the Debtors filed the

*Response of Debtors to Motion to Compel of Christopher J. Shannon* [ECF No. 4241]. (the

"**Response**")[2]

**PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit 1 is a

copy of the Plan referenced in the Response.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Eight Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc. (3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2] Capitalized terms not otherwise defined herein shall have meanings ascribed to such terms in the Response.

Dated:  November 14, 2018
       New York, New York

                                          <u>/s/ Sunny Singh</u>
                                          Ray C. Schrock, P.C.
                                          Garrett A. Fail
                                          Sunny Singh
                                          WEIL, GOTSHAL & MANGES LLP
                                          767 Fifth Avenue
                                          New York, New York 10153
                                          Telephone: (212) 310-8000
                                          Facsimile: (212) 310-8007

                                          *Attorneys for Debtors*
                                          *and Debtors in Possession*

# Exhibit 1

**(Plan)**

# CLAIM CONSULTING AGREEMENT

## Advice to Pay - Certification of Disability and Benefit Calculation

**No.**        NHD-986032

**Between:**   THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.
               Montvale, NJ
               ("Employer")

**And:**       LIFE INSURANCE COMPANY OF NORTH AMERICA
               Philadelphia, Pennsylvania
               ("Consultant")

**Effective:** January 1, 2009

**WHEREAS**, Employer sponsors a self-funded long term disability benefits plan (the "Plan") for its employees; and

**WHEREAS**, Consultant is qualified and experienced as an administrator of benefits under plans similar to the Plan; and

**WHEREAS**, Employer desires to retain Consultant to provide the services specified herein for the proper administration of the Plan;

**IN CONSIDERATION OF** the mutual promises herein contained, the parties agree as follows.

### Section 1.  The Plan.

As used in this Agreement, "Plan" refers to the long term disability benefits plan provided by Employer to its employees, together with any modifications to the Plan made in accordance with this Section.  A copy of the Plan as existing on the effective date of this Agreement is included as Schedule C.  Employer warrants that the Summary Plan Description contains a complete and accurate description of the benefits provided by the Plan and is not altered or supplemented by any other Plan Document.

Employer reserves the right to modify, amend, or terminate the Plan.  Employer agrees to notify Consultant in writing of any such modification, amendment or termination, or of any acquisition, divestiture, merger or other corporate reorganization which may affect employee eligibility.  Implementation of any of the foregoing shall be mutually agreed upon by the Employer and Consultant, subject to data processing systems changes, retroactive effective dates, adjustments in Consultant's compensation, and other adjustments and procedure changes made necessary thereby.

1

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003

Consultant is entitled to rely on the terms of the Plan as set forth in Schedule C and shall not be responsible for administering any changes in the Plan until 30 days after receipt of written notice of such changes, and after any adjustments described in the preceding paragraph have been agreed upon.

## Section 2.  Performance of Services.

Consultant agrees to furnish the services specified in Schedule A in connection with the Plan. These services may be modified upon agreement of the parties.  Any such modification (and the revised administration charge, if any, applicable thereto) shall be evidenced by letter agreement between the parties which, upon execution, shall become a part of this Agreement.

Employer shall remain responsible for performance of all services in connection with the Plan other than those provided for in this Agreement.  Without limiting the generality of the foregoing, this shall include all activities relating to the enrollment of eligible employees, maintenance of eligibility and enrollment records and salary information, furnishing such information to Consultant when necessary for the determination of any claim for benefits under the Plan, issuing benefit payment checks, notifying employees of approval or denial of the claim and handling routine inquiries from employees; as well as any other duties and responsibilities reserved to the Employer in Schedule A.

## Section 3.  Consultant's Compensation.

In return for the performance of the specified services, Employer agrees to pay Consultant the fees set forth in Schedule B on a monthly basis.  In addition, Employer shall reimburse Consultant for any expenses or liabilities provided for in Section 6 of this agreement which are incurred by Consultant.  Consultant shall bill Employer monthly at a single location or at multiple locations as requested by Employer and invoices shall specify fees charged for covered employees at each location as requested by Employer and as agreed to by Consultant.  Employer shall provide 30 days notice of any change that would affect the billing of multiple locations. Payment of fees shall be due on the 15th of the month following the month to which the fees relate.  Fees not paid within 30 days of the due date will be assessed a late charge at the rate of 13% per annum.  Employer shall remain liable for all fees billed to separate locations.

The fees set forth in Schedule B shall be subject to change as provided for in Sections 1 and 2 of this Agreement.  In addition, Consultant shall have the right to revise the schedule of fees at the end of the initial term of this Agreement, or at any time thereafter, by giving Employer not less than 30 days prior written notice.  Further, Consultant shall have the right to review and revise the schedule of fees if the covered employee population changes +/- 10% due to expansion or reduction, acquisitions, divestitures, new business ventures, etc.

## Section 4.  Term of the Agreement.

This Agreement shall be effective for an initial term of 12 months commencing with the effective date shown above.  This Agreement shall thereafter automatically continue, until terminated as provided for herein.

2

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003

Either party may terminate this Agreement as of the end of the initial term, or at any time thereafter, by giving the other party at least 30 days advance written notice.

This Agreement shall automatically terminate upon the termination of the Plan or upon the effective date of any statute, regulation, or court decision which would prohibit the activities of the parties under this Agreement.

Consultant may terminate this Agreement immediately, upon written notice to Employer, in the event Employer fails to pay the fees and, if applicable, charges as provided in Section 3 within the time specified, or otherwise breaches any provision of this Agreement.

Employer may terminate this Agreement at any time, following written notice to Consultant, in the event Consultant fails to perform the services required under this Agreement in a manner reasonably satisfactory to Employer, or otherwise breaches any provision of this Agreement. Any such notice shall state with particularity the reasons therefor, and shall not be effective unless Consultant shall fail within 30 days to initiate and pursue the removal of such grounds to the reasonable satisfaction of Employer.

This Agreement may be terminated as of any other date that is mutually agreed upon by the parties.

Upon termination of this Agreement for any reason, Consultant shall continue processing all Plan claims then in its possession, as well as any claims which arose during the term of this Agreement and were submitted to Consultant within 180 days of such termination ("Run-out Claims"). However, no claims arising after termination of this Agreement shall be submitted to Consultant, nor shall Consultant have any obligation for processing any such post-termination claims. Consultant shall make all records relating to claims in process reasonably available to the Employer. Customer shall remain liable for any fees attributable to Run-out Claims after termination of the Agreement.

### Section 5.  Service Standards; Liability.

Consultant shall use ordinary and reasonable care in the performance of its duties, but shall not be liable to the Employer for mistakes of judgment or other actions taken in good faith.

### Section 6.  Liability for Benefits, Expenses and Taxes.

This is not a contract of insurance and Consultant shall not underwrite any risk of the Plan.  All liability for payment of claims made under the Plan shall rest with Employer.  Consultant acts only as the provider of the services described in this Agreement and, with respect to Plan participants, acts only as the agent of the Employer.

Except as otherwise expressly provided in this Agreement, all expenses and liabilities incident to the operation of the Plan shall be the Employer's responsibility.  Without limiting the generality of the foregoing, Employer shall be responsible for:

3

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003

- Any state or federal tax, however denominated, including but not limited to premium taxes, taxes based on sales or gross receipts, and employment taxes, together with any penalties and interest, assessed on the basis of and/or measured by (i) the amount of Plan benefits; or (ii) the amount of Consultant's fees hereunder.

- Any costs or expenses incurred by Consultant in obtaining medical records, attending physician statements, reports of insurance support organizations, medical or rehabilitation consultant reports, or any other item of expense incurred with respect to any particular claims for benefits under the Plan.

- The defense of any legal action or proceeding to recover benefits under the Plan, and any legal liability arising in connection with any such action or proceeding.

This obligation shall survive the termination of this Agreement.

To avoid misunderstanding by third parties concerning the respective duties and liabilities hereunder, the Employer agrees not to use Consultant's name or logotype in any release or printed forms without the prior written approval of Consultant.

### Section 7.  Record Retention and Review.

All documents relating to the determination of benefit claims shall be the property of the Employer subject to Consultant's right to possession and use during the continuation of this Agreement.  Upon 30 days' advance written request and execution of any audit agreement, such documentation shall be made available to the Employer, at Employer's expense, for its audit or inspection during regular business hours at the places of business where it is maintained by Consultant.  Upon termination of this Agreement, such documentation shall be returned to Employer.  Any liability resulting from Employer's use or disclosure of such information or documentation shall be the sole responsibility of the Employer.

Employer's property interest and right of access shall not extend to any claim data recorded for or otherwise integrated into Consultant's data processing systems during the ordinary course of business.  Consultant shall maintain such data records for the periods of time required by law and subject to the privacy and confidentiality requirements of all applicable laws.

### Section 8.  General Provisions.

a. This Agreement constitutes the entire contract between the parties and, subject to the provisions of Sections 1, 2 and 3, no modification or amendment hereto shall be valid unless in writing and signed by an officer of each of the parties.

b. To the extent not preempted by applicable federal law, this Agreement shall be governed by, and shall be construed in accordance with the laws of the state in which the Employer's place of business specified above is located.

4

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003

c.  The failure of either party to insist upon strict adherence to any term of this Agreement shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term of the Agreement.

d.  Consultant may, at any time, without prior notice to or approval from Employer, assign any or all of its rights or obligations under this Agreement to an affiliate of its choice.

e.  Neither Consultant nor any of its officers, directors or employees shall be deemed to be an employee of Employer.  Neither Employer nor any of its officers, directors or employees shall be deemed to be an employee of Consultant.  The sole relationship of the parties is that of independent contractors.

f.  This is an agreement solely between Employer and Consultant.  It shall not create any right or legal relation whatever between Consultant and any person other than the Employer, including, without limitations, any employee of Employer or any participant in the Plan.

g.  Nothing herein contained shall be construed as making Consultant or any of its officers or employees a fiduciary with respect to the Plan, and Employer assumes responsibility for all liability resulting from breach of fiduciary duty under ERISA.  Consultant is not the Plan Administrator as that term is used within ERISA, nor is Consultant authorized to accept service of process on behalf of the Plan.

**IN WITNESS WHEREOF**, and intending to be legally bound, the parties have signed this Agreement.

THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.
("Employer")

Date: _____    By:_____
                       Title: _____

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
("Consultant")

Date: February 11, 2009

_Karen S. Rohan_ (signature)

Karen S. Rohan, President

5

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003

## SCHEDULE A
## DESCRIPTION OF ADMINISTRATIVE BENEFITS

## I. CLAIM ADMINISTRATION

**Basic Review of Claims**

Consultant will provide Employer with a supply of Consultant's standard disability claims forms, or Consultant will provide Employer with an electronic or telephonic means for collection of claim form information.  Employer shall furnish Consultant's telephone number or claim forms to all employees who provide notice of claim.  For paper claim form, Employer will complete the employer portion of the claim form and will forward completed claim forms to Consultant.  For electronic or telephonic claim form, Employer will provide employer information as requested by Consultant.

Consultant will provide the initial and ongoing screening of claims to determine whether benefits are payable in accordance with the terms of the Plan.  Where required, and at Employer's expense, Consultant will seek and obtain information from medical providers and others necessary to determine qualification for benefits and amount thereof.  Consultant will review the expected claim duration against duration guidelines used by the claim office at the time of the claim and determine the reasonable duration based on feedback from the claimant's attending physician, as appropriate.  Consultant will advise Employer, with respect to each claim, as to whether, in Consultant's judgment, the claim is payable under the Plan.  If payable, Consultant will advise Employer of the approved payment period and amount payable under the terms of the Plan.  Employer shall be responsible for making the final decision with respect to all claims, for communicating such decisions and the amount payable to the claimants and Consultant, and for funding and issuing all benefit payments.

In determining any person's right to benefits under the Plan, Consultant shall rely upon eligibility information furnished by the Employer.  It is mutually understood that the effective performance of this Agreement by Consultant will require that it be advised on a timely basis by the Employer during the continuance of this Agreement of the identity of individuals eligible for benefits under the Plan.  Such information shall identify the effective date of eligibility and the termination date of eligibility and shall be provided promptly to Consultant in a form and with such other information as may reasonably be required by Consultant for the proper administration of the Plan.  Employer acknowledges that its prompt and complete furnishing of the required eligibility and income information is essential to the timely and efficient review by Consultant of claims for Plan benefits.

**Screening and Implementation for Rehabilitation and Social Security Benefits**

Consultant shall at appropriate times and intervals screen all claims for rehabilitation potential and for potential entitlement for Social Security benefits.

6

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003

### **Rehabilitation Assistance**

Where Consultant determines that a claimant has the potential for successful rehabilitation and re-employment, Consultant shall develop and implement a rehabilitation program for the claimant.

### **Social Security Appeal Assistance**

Where Consultant determines that a claimant potentially qualifies for Social Security disability benefits, Consultant will notify claimant, providing general information concerning filing for benefits and providing assistance with appeals if benefits are denied.  When Consultant determines that a claimant qualifies for appeal assistance, Consultant shall require him/her to appeal the case, if Consultant warrants, up to and including Social Security hearing level, if appropriate.  Consultant may offer to retain the services of an attorney to represent the claimant.

### **Standards for Quality Assurance**

Where required in Consultant's judgment, Consultant will consult with its in-house medical director and with other qualified professionals to determine whether a claimant is disabled and whether the claimant's disability is covered in accordance with the terms of the Plan and applicable laws.

Claims shall be reviewed in accordance with standards for timeliness and other standards provided for in ERISA regulations.

Consultant shall regularly audit a random sample of claims from Consultant's claim offices that are not dedicated to a specific account to assure that determination of disability has been proper, payment periods and benefit payments have been properly calculated, and that Consultant's general standards for the proper and timely handling of claims have been followed.

In the event Consultant finds that it has advised that a benefit payment to any person be less than the amount to which he is entitled under the Plan, Consultant will promptly report the underpayment to Employer.  In the event Consultant finds that it has advised an overpayment to any person entitled to benefits under the Plan, or advised payment of benefits to any person who is not entitled to them, Consultant shall promptly report the overpayment to Employer.  Employer shall be responsible for recovering the overpayment.  Consultant shall not be required to initiate court proceedings to recover an overpayment.

7

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003

**Handling of Inquiries, Complaints and Appeals**

Consultant shall generally coordinate the claim denial and appeal process provided for in ERISA regulations.  This shall include notifying claimants of their appeal rights, receiving appeals, and making a recommendation to Employer concerning the disposition of appeals.  It is understood that Employer shall be the fiduciary designated under ERISA regulations for the determination of appealed claims and that Consultant shall serve solely as Employer's agent to coordinate and facilitate the appeal process.  Employer shall be responsible for making the final decision with respect to all claims, for communicating such decisions and the amount payable to the claimants and Consultant, and for funding and issuing all benefit payments.

Consultant shall have no duty or obligation to defend against any legal action or proceeding brought to recover a claim for Plan benefits.  Consultant shall, however, make available to the Employer and its counsel, such evidence relevant to such action or proceeding as Consultant may have as a result of its administration of the contested benefit determination.

**Preparation of Plan Documents**

Consultant will rely upon the master plan document reflecting basic benefit specifications provided by Employer.  Such plan document shall, to the extent not inconsistent with the Employer's specifications, be generally consistent with regular practices in the insurance industry for disability income benefits.

Consultant shall rely upon Employer's Summary Plan Descriptions reflecting the essential terms of the Plan and, if appropriate, other information required by ERISA regulations.  This service does not include printing or distribution of the Summary Plan Descriptions.

It is understood and agreed that Consultant make no warranties concerning the terms of the master plan document or the Summary Plan Descriptions, as to their legal integrity, compliance with applicable laws, or tax attributes.  Employer shall be solely responsible for reviewing and determining the acceptability of the master plan document and Summary Plan Descriptions, which are furnished on an "as is" basis.

8

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003

## II. FINANCIAL AND MANAGEMENT REPORTS

Consultant shall furnish the following reports to Employer:

1. Monthly and annual reports concerning approved payment periods, amounts reportable for income tax purposes, and amounts withheld for taxes. The preparation and filing of Form 5500 shall be the responsibility of Employer.

2. Upon request, and provided that Employer has provided Consultant with a census of employees, a census report showing demographics of employees covered by the Plan.

3. At Employer's request, as indicated on the Report Request Form, other standard management information claim activity and distribution reports.

Such reports shall be in Consultant's standard format and shall be provided at times agreed to by Consultant. Upon Employer's request and at a charge agreed upon by Employer and Consultant, Consultant will provide other reports, reports in a different format, or reports at more frequent intervals.

9

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved. Revised 10/2003

# SCHEDULE B
# CONSULTANT'S COMPENSATION

      Basic Administrative Services      $33.57 per check

Indicated fees/charges are for the stipulated services in the Agreement. Service requests beyond these may result in additional charges.

10

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003

## SCHEDULE C
## EMPLOYEE BENEFIT PLAN DOCUMENT

The Employer's Plan Document is
attached to and incorporated into this
Agreement as Schedule C

Copyright © 2001-2003
Life Insurance Company of North America, a CIGNA company.
All rights reserved.  Revised 10/2003