**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                 :
In re:                                                           :    Chapter 11
                                                                 :
**THE GREAT ATLANTIC & PACIFIC TEA**                             :    Case No. 15-23007 (RDD)
**COMPANY, INC.,** *et al.*[1]                                   :    (Jointly Administered)
                                                                 :
                          Debtors.                               :
                                                                 :
-------------------------------------------------------------------x

**MEMORANDUM OF DECISION ON KATERENE HALKIAS' MOTION FOR RELIEF
FROM THE AUTOMATIC STAY AND RELATED RELIEF**

Appearances:

Thomas J. Romans, Esq., for Katerene Halkias (the "Movant")

Weil, Gotshal & Manges LLP, for the Debtors, by Sunny Singh, Esq.

Foran Glennon Palandech Ponzi & Rudloff, P.C., for National Union Fire Insurance Company of Pittsburgh, PA (the "Insurer"), by Igor Shleypak, Esq.

Hon. Robert D. Drain, United States Bankruptcy Judge

      This is not an ordinary lift-stay motion.  The Movant seeks a determination that notice of an order lifting the automatic stay to permit her to liquidate her personal injury claim in a non-bankruptcy forum was not given until after a date that would save her from the expiration of the 30-day statute of limitations under section 108(c)(2) of the Bankruptcy Code, which provides, "if

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc. (3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

1

applicable nonbankruptcy law . . . fixes a period for commencing . . . a civil action in a court other than a bankruptcy court on a claim against the debtor . . . such period does not expire until the later of – (1) the end of such period . . . *or (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . with respect to such claim.*" 11 U.S.C. § 108(c)(2) (emphasis added).[2] The Debtors and the Insurer contend that notice of termination of the automatic stay was delivered as stated in the applicable affidavit of service and therefore that the 30-day statute of limitations expired. The Movant also contends that even if notice of the termination of the stay was given as the Debtors and the Insurer contend, the Court should undo the time bar by vacating the lift-stay order and/or lifting the stay again.

Having considered the parties' briefs, the affidavits submitted, and the record of the July 16, 2019 hearing, the Court submits this Memorandum of Decision to explain why notice of termination of the automatic stay occurred more than thirty days before the Movant commenced her state court action, which therefore was time-barred under 11 U.S.C. § 108(c), and that there is no basis to alter that result.

## Jurisdiction

The Court has jurisdiction over the Motion, which arises under 11 U.S.C. § 108(c) and in this chapter 11 case, pursuant to 28 U.S.C. §§ 157(a)-(b)(1) and 1334(b), as a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (G).

## Facts

Although the Court did not hold an evidentiary hearing, there is a substantial record comprising the affidavits submitted by the Movant and the Debtors and documents entitled to judicial notice, and, as discussed below, the Movant has not shown enough objective, or specific

---

[2] It is established that the state law statute of limitations on the Movant's personal injury claim expired before the automatic stay was terminated to permit her to pursue that claim.

2

proof to rebut the presumption that mailed notice of termination of the automatic stay was received more than thirty days before the Movant commenced her state court action.

The Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 362(a) extending the Automatic Stay to Certain Non-Debtor Parties and Approving Procedures for the Modification of the Automatic Stay Under Certain Circumstances* in these cases [ECF No. 1565] (the "Procedures Order") established a process for granting relief from the automatic stay under 11 U.S.C. § 362(a) to enable the liquidation of a large number of personal injury claims in non-bankruptcy courts. That process basically involves four steps: (1) inquiry by the claimant and review by the Debtors, (2) execution of a stipulation and order by the claimant and the Debtors, (3) the Debtors' provision of notice thereof to certain "Reviewing Parties,"[3] and (4) if no objections are made within seven days of such notice, the automatic grant of relief from the automatic stay as provided in the relevant stipulation and order; that is, the stipulation and order lifting the automatic stay is deemed "so ordered" by the Court. Procedures Order, at 3-4 ¶¶ a.-c.

The Movant sought and received relief from the automatic stay pursuant to the Procedures Order. First, on November 10, 2015 the Movant submitted an inquiry. Second, on January 22, 2018 the Debtors and the Movant, by her counsel, executed a *Stipulation, Agreement and Order Granting Limited Relief from the Automatic Stay* (the "Agreed Order"), which lifted the automatic stay to enable the Movant to liquidate her claim in a non-bankruptcy forum on the condition that recovery against the Debtors be limited to applicable insurance. Third, on February 13, 2018, the Debtors filed and served on the Reviewing Parties their *Eighteenth Notice*

---

[3] The "Reviewing Parties" are defined as the Office of the United States Trustee, counsel for the official creditors' committee, the applicable insurer(s), and "any relevant non-Debtor Party." Procedures Order, at 4 ¶ b. "Non-Debtor Parties" are defined as "parties that hold contractual indemnification or contribution claims against the Debtors, or that the Debtors have agreed to indemnify and defend, in connection with alleged prepetition personal injury incidents." Id., at 1.

3

*of Filing of Stipulations in Connection with Order Pursuant to 11 U.S.C. §§ 105(a) and 362(a) extending the Automatic Stay to Certain Non-Debtor Parties and Approving Procedures for the Modification of the Automatic Stay Under Certain Circumstances* (the "Stipulation Notice"), which included a copy of the Agreed Order [ECF No. 4000]. See Affidavit of Service of Hassan Alli-Baloguin on behalf of the Debtors' noticing agent, Prime Clerk, LLC, dated February 16, 2019 [ECF No. 4003] (the "Affidavit of Service"). (Originally the Movant contended that the foregoing notice was not in fact sent to the Reviewing Parties and the Movant and her counsel, but, having reviewed the Affidavit of Service, now concedes those facts, contending, instead, that counsel did not actually receive the notice for purposes of section 108(c)(2). Movant's Reply Brief, dated July 9, 2019 ("Reply Brief"), at 2-3; Affidavit of Thomas J. Romans, Esq., dated July 9, 2019 ("Romans Aff.") ¶¶ 1-3.) Fourth, after no objections to the Stipulation Notice were made within seven days of service, the Movant was deemed, pursuant to the Procedures Order, to have been granted relief from the automatic stay under the Agreed Order to commence an action against the Debtors in a non-bankruptcy forum. Agreed Order ¶¶ 2-3.[4]

The Affidavit of Service lists the Stipulation Notice, which included the Agreed Order, as having been sent by first class mail to the Movant and Movant's counsel, Thomas J. Romans, Esq., as well as by e-mail to Mr. Romans. Mr. Romans acknowledges that the addresses in the Affidavit of Service are correct. Romans Aff. ¶ 6.

The Movant alleges that her injury occurred on October 31, 2014. Under New Jersey law, "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause

---

[4] Agreed Order ¶ 11 waived the 14-day stay of the Agreed Order under Fed. R. Bankr. P. 4001(a)(3), for cause, and ¶ 13 reserved jurisdiction in this Court to resolve any disputes arising from the Agreed Order.

4

of any such action shall have accrued, . . ." N.J. Stat. Ann. § 2A:14-2 (West 2019), in this case by November 1, 2016, well before the effective date of the Agreed Order. Moreover, if the Agreed Order was indeed effective under the Procedures Order on February 20, 2018, the seventh day after the Affidavit of Service asserts such notice was given to the Movant, the 30-day extension of the limitations period under 11 U.S.C. § 108(c)(2) expired well before April 16, 2018, the date the Movant commenced her state court action, *Katerene Halkias v. The Great Atlantic & Pacific Tea Company*, Superior Court of New Jersey, Law Division, Bergen County, Dkt. No. BER-L-2733-18 (the "State Court Action").

The Debtors therefore moved to dismiss the State Court Action on the basis that it was time barred. The Movant responded with her own motion to dismiss on a conditional basis, which the State Court granted on March 22, 2019 (the "Dismissal Order"). The Dismissal Order states that the Movant

> may within thirty (30) days following the date of this Order *proceed* before the United States Bankruptcy Court in and for the Southern District of New York in the Chapter 11 Case of the Great Atlantic & Pacific Tea Company, Inc., et al. (Case No. 15-23007) *for declaratory relief as to whether or not the automatic stay had been heretofore effectively lifted with respect to Plaintiff's personal injury claims and, if not heretofore effectively lifted, to obtain an order lifting the stay as to allow Plaintiff to re-file her Complaint* against Defendant as may be allowed by Order of the United States Bankruptcy Court and the United States Bankruptcy Code.

Dismissal Order, ¶ 2 (emphasis added).

The Motion thus seeks a determination that (a) notice of the Agreed Order was not effective on February 20, 2018, seven days after notice under the Procedures Order was given as the Debtors and the Insurer claim, but, rather, when the Movant claims notice of the Agreed Order was actually received, a date the Movant contends would put the State Court Action within the limitations period, or (b) a new order lifting the automatic stay.

5

It is conceded that the Movant herself received the Stipulation Notice by regular first-class mail at her home address as stated in the Affidavit of Service, but counsel states that English is not her first language, she did not understand the Notice's relevance, and she did not forward it to him.  Affirmation of Thomas J. Romans, Esq., dated April 8, 2019 ("April Romans Aff."), ¶ 14.

Mr. Romans had not filed a notice of appearance on behalf of the Movant before the Stipulation Notice was mailed, Romans Aff. ¶ 7, but the Debtors clearly were aware that he was serving as her counsel, as evidenced by his signature on the Agreed Order, and mailed and e-mailed the Stipulation Notice to him, as well, as confirmed by the Affidavit of Service.

Mr. Romans alleges, however, that, notwithstanding the Affidavit of Service and his acknowledgement that the addresses therein for him -- Law Offices of Thomas J. Romans, P.O. Box 406, Wyckoff, NJ 07481, and by e-mail at romanslaw@optonine.net -- were correct, he in fact received neither the first class mailing of the Stipulation Notice nor the e-mailed version.  Romans Aff. ¶ 6.

Relying on a technology consultant who asserts that the sender and cover line of the e-mail automatically caused it to be filtered to a "spam" folder, see Affidavit of Adam Rowatti, dated July 8, 2019, ¶¶ 2-3, Mr. Romans contends that he did not see the e-mail notice.  Id. ¶ 8.  Mr. Romans does not state how often or even whether he checked his spam folder, but at least implicitly he did not do so before the statute of limitations ran.

As evidence of his not receiving the mailed Stipulation Notice, Mr. Romans submits (i) the Romans Aff., (ii) an affidavit by his secretary and paralegal, Diana I. Ortiz, dated July 9, 2019 ("Ortiz Aff."), (iii) an affidavit by the owner of the office building where his law office is located, Kenneth H. Stuhr, dated June 17, 2019 (Stuhr Aff."), and affidavits by two people who,

6

like Mr. Roman have post office boxes in Wyckoff, New Jersey: (iv) Gerald Ghinelli, dated July 2, 2019 ("Ghinelli Aff."), and (v) Frederick C. Bradbury, dated July 8, 2019 ("Bradbury Aff.").

Each of these affidavits refers to general problems with mail delivery at Mr. Romans' office, 681 Lawlins Road, Wyckoff, NJ 07481, including that mail at times is dumped at one place in the building instead of delivered to each tenant, or is misdelivered to other tenants. Bradbury Aff. ¶¶ 4-5, Ghinelli Aff. ¶¶ 3-4, 6, Stuhr Aff. ¶¶ 3-4, Ortiz Aff. ¶ 5, Romans Aff. ¶ 11. This information is irrelevant, however, because Mr. Romans' office address is not the correct post office box address to which the Stipulation Notice was mailed. Messrs. Bradbury and Stuhr also attest to general problems with mail service in Wyckoff, NJ, but neither provides any detail of specific incidents of non-delivery or mis-delivery, and it is not clear from Mr. Stuhr's affidavit, moreover, whether he simply is reiterating his problems with service at the office building. Stuhr Aff. ¶ 5 ("I can attest to the serious lack of professional service provided by the Wyckoff Post Office during the time that Mr. Romans encountered the problem he related to me and for many years prior to that time.").

Messrs. Ghinelli, Bradbury, and Romans also state that there have been problems with mail service involving their post office boxes in Wyckoff. Mr. Romans states, "I frequently receive mail addressed to other parties. When I try to redirect it, the post office persists in redelivering it to me. Mail addressed to my post office box is sometimes delivered to my physical office address, where delivery has been chaotic." Romans Aff. ¶ 11.[5] Mr. Ghinelli states, "Mail addressed to other parties is frequently deposited into my postal box and it is continually returned to me when I try to redirect it." Ghinelli Aff. ¶ 5. Mr. Bradbury states, "Mail delivery problems are not isolated to my office. I had similar problems at my post office

---

[5] Ms. Ortiz repeats this sentence in Ortiz Aff. ¶ 6.

box at the Wyckoff Post Office. There are occasions when I receive mail addressed to other individuals, and my mail has been misdirected to other boxholders." Bradbury Aff. ¶ 6. Mr. Bradbury concludes by stating generally, "I have lived in Wykoff for approximately 9 years and I can attest to the fact that the Postal Service here has been unreliable." Id. Again, though, no affiant has described any specific instances of mis-delivery or non-delivery or the relevant circumstances, such as when it occurred and how the piece of mail was addressed.

Ms. Ortiz and Mr. Romans also describe their office practice with respect to incoming mail. Ms. Ortiz states that only Mr. Romans and she hold keys to the office post office box, Ortiz Aff. ¶ 2, and "[t]he usual procedure is that Mr. Romans picks up the mail at the Post Office on his way to the office. If he is unable to do so, I pick up the mail at the Post Office." Id. ¶ 3. "Mail is brought to the office from the Post Office and placed on my desk to be opened and reviewed by me. All court notices, court documents and correspondence from attorneys are delivered to Mr. Romans for his review the day they are received." Id. ¶ 4. Ms. Ortiz ends by stating, "I am able to attest that this item of mail [the Stipulation Notice described by the Affidavit of Service] was not received in this office." Id. ¶ 8.

As for office practice, Mr. Romans simply refers to the affidavit of Ms. Ortiz, "the individual who handles all mail addressed to me," which, he states, "further substantiates my denial that the filed Stipulation was not received at my office." Romans Aff. ¶ 12. He adds only that the Stipulation Notice was the type of notice that he would likely have recognized and remembered. Id. ¶ 13.

## Discussion

The first issue before the Court is a narrow one: did the Movant receive notice of the Agreed Order's termination of the automatic stay for purposes of 11 U.S.C. § 108(c)(2) at least

8

thirty days before she commenced the State Court Action?  She was arguably entitled to such notice under the Court's *Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures*. (ECF No. 62) (the "Case Management Order").  In any event, section 108(c)(2)'s limitations period did not start to run until she received such notice.

First class mail notice, postage prepaid, was a proper way to provide such notice.  The Case Management Order provides that service in these cases is proper if "by U.S. mail, overnight delivery, hand delivery, or, with the exception of Chambers, and with the parties' consent, email or facsimile."  Case Management Order ¶ 6.  In addition to required service on fourteen enumerated "Standard Parties" of all pleadings, objections and related Documents in these cases, id. ¶ 2.i-xiv, the Case Management Order requires that any "any person or entity with a particularized interest in the subject matter of a certain Document" be served with it in the manner described above.  Id. ¶ 2.xv.  (The Case Management Order also states that all pleadings be similarly served on parties who have filed a notice of appearance, id. ¶ 3; however, as discussed, Mr. Romans did not file a notice of appearance as counsel of record for the Movant in these cases until well after the Stipulation Notice was sent.)

It therefore appears that the acknowledged receipt by the Movant herself of the first class mailing of the Stipulation Notice complies with the Case Management Order and, at least by analogy, with Fed. R. Bankr. P. 2002(m) and 9007, and thus constitutes notice for purposes of 11 U.S.C. § 108(c)(2).  First class mail notice to the Movant herself would also comply at least by analogy with Fed. R. Bankr. P. 2002(g)(1)-(2).  She did not designate anyone to receive notice in her place (Mr. Romans not having file a notice of appearance), but even if she had done so, under Fed. R. Bankr. P. 2002(g)(4) the "failure to use the supplied address does not invalidate

any notice that is otherwise effective under applicable law." The Movant's only arguments to the contrary are that, according to Mr. Romans, "English is not her first language and if mailed to her, she would have no understanding of them." April Romans Aff. ¶ 14. There is nothing in the record, however, to indicate that the Debtors knew that she had difficulty with English (indeed, the sentence quoted above says only that English is not her first language), and the Movant cites no federal law requirement to provide notice in a language other than English, at least absent facts showing that that such notice would not be reasonable under the circumstances. See In re Peralta, 599 B.R. 759, 764 (Bankr. D. N.J. 2019). Moreover, Mr. Romans does not explain why the Movant did not at least forward the Stipulation Notice to him or, perhaps more tellingly, why he did not act to ensure that either she would do so, or that he would directly receive notice pertaining to the Agreed Order, or that he would at least periodically check the case docket. Id. ("[E]ven assuming Movants lacked the ability to understand the documents that were sent to them, this failure to understand does not defeat the fact that actual notice was provided. Where lay individuals are confronted with a legal issue or receive legal documents beyond their comprehension, they often consult a legal professional" that they have retained.). See also Schindler v. Advocate Healthcare, 619 Fed. Appx. 516, 517 (7th Cir. 2015) ("Litigants are responsible for maintaining communications with the court and monitoring the status of their lawsuit, and [claimant] should have checked in with the court if he had concerns about his mail delivery.").

The Debtors knew, though, that the Movant was represented by counsel. Fed. R. Bankr. P. 9014(b) provides that "any paper served after the motion [in a contested matter] shall be served in the manner provided by Rule 5(b) F.R. Civ. P." In addition to providing for service by mail "to the person's last known address -- in which event service is complete upon mailing,"

Fed. R. Civ. P. 5(b)(2)(C), Rule 5(b) states that "[i]f a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Fed. R. Civ. P. 5(b)(1). Nevertheless, the Movant has not argued that actual mail notice to the Movant herself was insufficient for purposes of 11 U.S.C. § 108(c)(2) based on the alleged failure of notice to Mr. Romans as her counsel (as opposed to contending that she would not have understood the notice), perhaps because (a) any ethical obligation to provide such notice was satisfied by the notices sent to Mr. Romans, (b) there was no motion initiating a contested matter that led to the Agreed Order and therefore arguably Fed. R. Bankr. P. 9014(b) did not apply, and (c) section 108(c)(2) refers to "notice" not "service". Compare Borden v. Brunswick Baptist Church (In re Brunswick Baptist Church), 2007 U.S. Dist. LEXIS 3319, at *11-13 (N.D.N.Y. January 16, 2007); In re Peralta, 599 B.R. at 765-67 (not requiring notice to known counsel who has not filed notice of appearance) and In re Grand Union Co., 204 B.R. 864 (Bankr. D. Del. 1997) (requiring notice to known counsel who has not filed notice of appearance, based largely on ethical grounds).

Even assuming, however, that actual notice of the Settlement Stipulation to the Movant herself was insufficient for purposes of 11 U.S.C § 108(c)(2), the Movant has not submitted enough evidence to rebut the presumption that Mr. Romans received the mailed notice of the Settlement Stipulation as set forth in the Affidavit of Service.[6]

---

[6] Because of this determination, the Court does not need to consider whether the e-mail notice to Mr. Romans also constitutes notice for purposes of section 108(c)(2) (it would not constitute proper service under the Case Management Order because Mr. Romans never consented to e-mail service). It is worth observing, however, that there is authority rejecting the proposition that "e-mail does not provide sufficient notice [solely] because an e-mail from a party with whom the recipient has not previously corresponded is likely to be flagged as 'spam.'" Alfred E. Mann Living Trust v. ETIRC Aviation S.A.R.L., 78 A.D.3d 137, 142 910 N.Y.S.2d 418, 422 (1st Dep't. 2010). At least some e-mail service has been held enough for due process purposes as reasonably calculated to apprise the party receiving notice of the pendency of a matter. Id.; Nykool A.B. v. Pac. Int'l Servs., 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014) (courts generally uphold e-mail service delivered to, as here, "e-mail addresses undisputedly connected to the defendants that the defendants used for business purposes"). But see Lavallee v. Med-1 Sols., LLC, 2017 U.S. Dist. LEXIS 162508, at *11 (S.D. Ind. Sept. 19, 2017) ("Not opening an email attachment is not the

It is well settled that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." Hagner v. United States, 285 U.S. 427, 430 (1932) (citing Rosenthal v. Walker, 111 U.S. 185, 193 (1884)).[7] "Courts have routinely held that 'an affidavit of service is sufficient evidentiary material to raise the presumption [of receipt after proper mailing].'" In re Bernard L Madoff Inv. Sec. LLC, 2014 U.S. Dist. LEXIS 48401, at *13 (S.D.N.Y. Mar. 31, 2014) (brackets in original) (quoting In re O.W. Hubbell & Sons, Inc., 180 B.R. 31, 34 (N.D.N.Y. 1995). Although the presumption is rebuttable, "[t]his presumption of receipt is 'very strong' and 'can only be rebutted by specific facts and not by invoking another presumption and not be a mere affidavit to the contrary. . . . Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary.'" In re Greenberg, 526 B.R. 101, 105 (Bankr. E.D.N.Y. 2015) (quoting In re Barquet Group, Inc., 477 B.R. 454, 462 n.7 (Bankr. S.D.N.Y. 2012) (ellipses in original), aff'd 486 B.R. 68 (S.D.N.Y. 2012); In re Dana Corp., 2007 Bankr. LEXIS 1934, at *13 (Bankr. S.D.N.Y. May 30, 2007). As discussed by several courts, the presumption's application in cases under the Bankruptcy Code is especially apt because of multiple parties' reliance on regular mail notices to establish deadlines and bar dates. In re Pac. Cargo Servs., LLC, 2014 U.S. Dist. LEXIS 65721, at *24 (D. Or. May 9, 2014);

---

same as failing to open a letter one receives through the United States Post Office mailing system."), aff'd, 2019 U.S. App. LEXIS 23664 (7th Cir. Aug. 8, 2019). Counsel using a regular e-mail address also might be responsible to monitor his "spam" e-mail folder and other notice sources (such as, here, PACER and the Debtors' public website that contained the case docket) to ensure that no important e-mail routed to it was filtered to "spam." See Tobin v. Granite Gaming Group II, LLC, 2008 U.S. Dist. LEXIS 118251, at *22-3 (D. Nev. February 28, 2008). See generally Jeffrey Wolber, "Note: Opening a Can of Worms and Viruses: The Impact of E-Service on E-Mail Users Everywhere," 61 N.Y.L. Sch. L. Rev. 449, 470 (2016/2017) (discussing pros and cons of e-mail service and sensibly recommending that such e-mails contain an index number and jurisdictional information in the text to alert the recipient to check the docket even if he or she is wary of opening a potentially malware-tainted attachment).

[7] The U.S. Post Office continues to set very high goals for the delivery of regular mail, and generally meets or comes close to meeting them. Postal Regulatory Commission, "Annual Compliance Determination Report, Fiscal Year 2018" (April 12, 2019).

In re Greenberg, 526 B.R. at 107-08 (also stating that the presumption is consistent with the Bankruptcy Rules' prescription of notice by first class mail, postage prepaid); In re R.H. Macy & Co., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993); Trump Taj Mahal Assocs. V. Alibraham, 156 B.R. 928, 939 (Bankr. D. N.J. 1993).

As noted, it is well established that the denial, or multiple denials, of receipt will not rebut the presumption of receipt. Manigault v. Macy's E., LLC, 318 F. Appx. 6, 7 (2d Cir. 2009); Meckel v. Cont'l Res. Co., 758 F.2d 811, 817-18 (2d Cir. 1985); Gilbert v. North Am. Airlines, 2014 U.S. Dist. LEXIS 42076, at *25-26 (E.D.N.Y. Mar. 26, 2014); In re AMR Corp., 2016 Bankr. LEXIS 835, at *10 (Bankr. S.D.N.Y. Mar. 17, 2016); In re Residential Capital, LLC, 2014 Bankr. LEXIS 3262, at *31 (Bankr. S.D.N.Y. July 31, 2014). Indeed, as observed in In re Greenberg, "no court has held that multiple denials of receipt are sufficient to rebut the presumption of receipt" where proper mailing has been established. 526 B.R. at 110. Nor will generalized, non-"objective" or non-"specific" evidence of non-delivery or mail theft in the area suffice. In re AMR Corp., 2016 Bankr. LEXIS 835, at *10-11.

What, then, might constitute "specific facts," In re Dana Corp., 2007 Bankr. LEXIS 1934, at *13, to rebut the presumption of receipt and warrant further inquiry? Other than recognizing that mail was sent to an incorrect address or returned as undeliverable, In re Residential Capital, LLC, 2015 Bankr. LEXIS 1596, at *23-24 (Bankr. S.D.N.Y. May 11, 2015), courts have stated that "testimony denying receipt in combination with evidence of a standardized procedure for processing mail can be sufficient to rebut the presumption." In re Robinson, 228 B.R. 75, 82 (Bankr. S.D.N.Y. 1998). While there is some variation throughout the country as to the necessary extent of such "office procedure" evidence,[8] courts in jurisdictions with a strong

---

[8] See Lienhard v. Lehighton Ambulance Assoc., 498 B.R. 443, 451 (Bankr. M.D. Pa. 2013) (applying a stronger presumption only for certified mail).

presumption of notice by regular mail require a detailed, rigorous showing. As discussed in Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, for example, to rebut the presumption of receipt, declarations of "standard office procedure for receipt of mail" need to establish direct oversight by the declarant, without gaps, and the existence of specific procedural safeguards to ensure that mail is properly handled. 2011 Bankr. LEXIS 4754, at *13-14 (Bankr. S.D.N.Y. Dec. 1, 2011) (citing In re Robinson, 228 B.R. at 82; Cablevision Sys. Corp. v. Malandra (In re Malandra), 206 B.R. 667, 674 (Bankr. E.D.N.Y. 1997); CUNA Mutual Ins. Group v. Williams (In re Williams), 185 B.R. 598, 600 (BAP 9th Cir. 1995); and In re Hobbs, 141 B.R. 466, 467-69 (Bankr. N.D. Ga. 1992), as cases where the presumption was not rebutted despite affidavits of general office procedures for handling mail like those submitted by Ms. Ortiz and Mr. Romans). Accord, Sanders v. Cmty. Cars Inc., (In re Sanders), 2014 Bankr. LEXIS 14, at *9 (Bankr. M.D. Ala. Jan. 3, 2014); In re Dana Corp., 2007 Bankr. LEXIS 1934, at *15. See also In re AMR Corp., 2016 Bankr. LEXIS 835, at *7-8 (evidence of reliable tracking procedures could be sufficiently objective to rebut presumption) (citing Hogarth v. N.Y.C. Health & Hosps. Corp., 2000 U.S. Dist. LEXIS 4590, at *12-14 (S.D.N.Y. Apr. 12, 2000), where presumption was rebutted by detailed logs of incoming and outgoing mail that contained no record of letter in question); In re Greenberg, 526 B.R. at 109.

    Most of the content of the declarations supporting Mr. Romans' contention that he did not receive notice of the Agreed Order are either irrelevant or fall into the category of conclusory denials found to be lacking in the foregoing caselaw; and Ms. Ortiz's affidavit contains the kinds of gaps that render declarations regarding office procedure insufficient: she is not the only, or even the primary, person to pick up mail at the post office box, and, to the extent that she does eventually receive it, she passes it on to Mr. Romans if it reflects a case-related notice -- she does

14

not discuss what happens to it after that. Mr. Romans' affidavit has similar problems: he is not the only person to pick up mail at the post office box, he does not state how it is tracked thereafter, and he simply says that it is unlikely that he would have ignored the notice if Ms. Ortiz had eventually placed it on his desk. There is no evidence that Mr. Romans' office has the type of tracking, or log-in system that has rebutted the presumption of receipt in other cases when more than one person handles office mail. The Movant thus has not presented enough evidence to rebut the presumption of receipt arising from the Affidavit of Service.

The second basis for the Motion is also unavailing. The Court does not have the power to waive or extend the statute of limitations under 11 U.S.C. § 108(c)(2) under the present facts, where the Debtors have done nothing to mislead the Movant as to the statutory deadline. Nor can the Court indirectly waive or extend the deadline by the expedient of vacating the Agreed Order or entering a new lift-stay order as the Movant requests.[9] The fact that the Movant's recovery under the Agreed Order would be limited to insurance proceeds should not change this conclusion: the statute of limitations was enacted for the benefit of all parties potentially responsible for paying the claim, including the Insurer.

## Conclusion

For the foregoing reasons, the Motion should be denied. The Debtors are directed to submit an order to chambers consistent with this Memorandum of Decision.

Dated: White Plains, New York
      August 14, 2019

                                            /s/ Robert D. Drain
                                            UNITED STATES BANKRUPTCY JUDGE

---

[9] Such relief also would appear to be inconsistent with the state court's Dismissal Order, which gave the Movant leave only to seek a declaration that the automatic stay had not been "effectively lifted."