**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

In re:                                                   :

                                                         :          Chapter 11

THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC.,                                           :          Case No. 15-23007 (LGB)

                                Debtors.                 :

----------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF UNSECURED :
CREDITORS ON BEHALF OF THE
BANKRUPTCY ESTATE OF THE GREAT          :
ATLANTIC & PACIFIC TEA COMPANY INC.,               Adv. Pro. No. 17-08264 (LGB)

*et al.,*                                                :
                                Plaintiff,

v.                                                       :

MCKESSON CORPORATION,                                    :

                                Defendant.               :

----------------------------------------------------------------x

## <u>MEMORANDUM OPINION</u>

### <u>APPEARANCES</u>

BUCHALTER
*Attorneys for McKesson Corporation*
18400 Von Karman Avenue
Irvine, CA 92612
By:    Jeffrey Garfinkle

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
*Attorneys for McKesson Corporation*
200 West 21st Street, 17th Floor
New York, NY 10036
By:    Tracy Klestadt

GRIFFIN HAMERSKY LLP
*Attorneys for the Official Committee of Unsecured Creditors and Special Counsel for the Debtor*
420 Lexington Avenue
New York, NY 10170

By:   Michael Hamersky
      Richard Milin

**HON. LISA G. BECKERMAN**
**UNITED STATES BANKRUPTCY JUDGE**

On July 13, 2017, the Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of The Great Atlantic & Pacific Tea Company[1] (the "Committee" or "Plaintiff") initiated an adversary proceeding (the "Adversary Proceeding") when it filed its Complaint for Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 & 550 (the "Complaint") against a creditor of the Debtor, McKesson Corporation d/b/a McKesson Drug Co. (the "Defendant" or "McKesson").  ECF No. 1 ("Compl.").[2]

Before the Court is McKesson's Motion for Summary Judgment asking the Court to determine the extent of its subsequent new value preference defense, the nature of the claim that it would have if any of the transfers at issue were determined to be preferences, and whether its non-contingent administrative claim may be set off against any preferences.  For the reasons set forth in this decision, McKesson's Motion for Summary Judgment is granted in part and denied in part.

---

[1] On July 19, 2015 (the "Petition Date"), The Great Atlantic & Pacific Tea Company, Inc. (the "Debtor") and several of its affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *In re The Great Atlantic & Pacific Tea Company, Inc.*, No. 15-23007 (Bankr. S.D.N.Y. 2015) ("Main Case") [ECF No. 1].  The Debtors' Chapter 11 cases were jointly administered under Case No. 15-23007 (RDD).  (Am. Compl. ¶ 13).  The only remaining Debtor is The Great Atlantic & Pacific Tea Company, Inc. (the "Debtor").  (Am. Compl. ¶¶ 6 and 13).  On July 24, 2015, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code.  (Am. Compl. ¶ 4).  The Committee consists of (i) 1199SEIU Health Care Employees Pension Fund, (ii) Basser-Kaufman, Inc., (iii) C&S Wholesale Grocers, Inc., (iv) CBA Industries, Inc., (v) McKesson Corporation, (vi) Pension Benefit Guaranty Corporation and (vii) United Food and Commercial Workers International Union.  (Am. Compl. ¶ 4).  On June 6, 2016, the Court authorized the Committee to prosecute avoidance actions on behalf of the Debtors' estates.  (Am. Compl. ¶ 5).

[2] Unless otherwise specified, all citations are to the Adversary Proceeding.  *The Official Committee of Unsecured Creditors on Behalf of the Bankruptcy Estate of The Great Atlantic & Pacific Tea Company Inc., et al. v. McKesson Corporation*, No. 17-08264 (Bankr. S.D.N.Y. 2017) ("Adv. Pro.").

## I.    PROCEDURAL HISTORY

The Complaint seeks the avoidance and recovery of thirty payments made by the Debtor to McKesson, totaling $67,752,943.44, during the ninety-day period prior to the Petition Date (the "Preference Period").  Compl. ¶ 14.  The first claim for relief is brought pursuant to section 547 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), and the second is brought pursuant to section 550(a) of the Bankruptcy Code.  Compl. ¶¶ 14–22, 24–26.

On August 10, 2017, McKesson filed its Answer to the Complaint (the "Answer").  ECF No. 4.  McKesson asserted various defenses set forth in section 547(c) of the Bankruptcy Code, including the ordinary course of business, contemporaneous exchange, and subsequent new value defenses, as well as a setoff defense on account of McKesson's administrative claim pursuant to section 503(b)(9) of the Bankruptcy Code.  Answer ¶¶ 16, 18, 21, 24.

### A.    2019 Summary Judgment Motion

Following the filing of the Answer, the Committee and McKesson conducted an initial round of discovery and participated in a mediation that was ultimately unsuccessful.  *See* ECF No. 23.  On May 1, 2019, as permitted by this Court at a hearing held on November 16, 2018, McKesson filed a Motion for Summary Judgment (the "2019 Motion") seeking a determination that the alleged preferential transfers were shielded via the defenses McKesson asserted in its Answer, specifically, the ordinary course of business, contemporaneous exchange, subsequent new value, and section 503(b)(9) setoff defenses.  ECF No. 24, at 4.  The Declaration of Jenifer Towsley was filed in support of the 2019 Motion.  ECF No. 25 ("2019 Towsley Decl.").

The Committee filed an opposition to the 2019 Motion and the Declaration of Tim Carnahan in support of their opposition.  ECF No. 34; ECF No. 35 (the "Carnahan Decl.").

At a hearing held on September 16, 2019 (the "September 2019 Hearing") Judge Drain granted in part and denied in part the 2019 Motion, adopting the reasoning set forth in *Official Comm. of Unsecured Creditors of Quantum Foods, LLC v. Tyson Foods, Inc. (In re Quantum Foods, LLC)*, 554 B.R. 729, 733 (Bankr. D. Del. 2016), ruling that McKesson has the right to set off its section 503(b)(9) administrative claim against any judgment for avoidance and recovery of preferential transfers.  ECF No. 43, Hr'g Tr. at 54, 57–58.

Following the September 2019 Hearing, the parties conducted another round of discovery, during which the Committee filed an Amended Complaint adding two new additional causes of action, one for an alleged violation of the automatic stay and a second for defensive claims (the "Amended Complaint").  ECF No. 93 ("Am. Compl."), ¶¶ 131–69, 170–200.   In response, McKesson filed a Motion to Dismiss the Amended Complaint (the "Motion to Dismiss").  ECF No. 99.  On December 27, 2021 the Motion to Dismiss was denied by the Court, except that the claim asserting various defensive claims for alleged violations of sections 362(a) and 542 "shall only seek relief as a defense, setoff or recoupment, against [McKesson's] allowed claims, including any allowed administrative priority claims under section 503(b)(9)."  ECF No. 107, ¶ 2.

## B.  2022 Summary Judgment Motions

On April 15, 2022, McKesson filed two summary judgment motions. One motion, McKesson Corporation's Motion for Summary Judgment on Debtor's First, Fifth, and Thirteenth Omnibus Claim Objections Seeking to Disallow 11 U.S.C. § 503(b)(9) Claims[3] (the "Claim Motion"), was filed in the main bankruptcy case. *Main Case* [ECF No. 5059].  The second motion,

---

[3] The Claim Motion asks the Court to grant McKesson summary judgment on the Thirteenth Omnibus Claim Objection filed by the Debtor against McKesson inn the Main Case and to determine that McKesson holds a fixed, allowed section 503(b)(9) claim in the amount of $1,750,731.87.  The Claim Motion is mentioned here due to significant overlap between the Claim Motion and Setoff Motion, however, the factual issues raised with respect to the Claim Motion will be addressed in a separate summary judgment opinion.

McKesson Corporation's Motion for Summary Judgment or, in the Alternative, Summary Adjudication and Supporting Memorandum of Facts and Law (the "Setoff Motion"), was filed in the Adversary Proceeding. ECF No. 115 ("Setoff Mot."). In support of both the Claim Motion and the Setoff Motion, McKesson filed McKesson Corporation's Local Rule 7056-1(b) Statement of Undisputed Facts and Conclusions of Law in Support of Motions For Summary Judgment ("McKesson's Statement of Undisputed Facts"). *Main Case* [ECF No. 5064]; *Adv. Pro.* [ECF No. 120] ("McKesson's Statement"). In further support of the Claim Motion and Setoff Motion, McKesson filed the Declaration of Jenifer Towsley. ECF No. 118 ("2022 Towsley Decl.").

On May 6, 2022, the Committee filed its opposition to the Setoff Motion (the "Setoff Opposition") and its opposition to the Claim Motion (the "Claim Opposition"). ECF No. 125 ("Setoff Opp'n."); ECF No. 126 ("Claim Opp'n."). The Committee also filed a response to McKesson's Statement of Undisputed Facts. *Main Case* [ECF No. 5088]; *Adv. Pro.* [ECF No. 129] ("Committee's Statement").

On May 13, 2022, McKesson filed a reply to the Claim Opposition and a reply to the Setoff Opposition (the "Setoff Reply"). *Main Case* [ECF No. 5095]; *Adv. Pro.* [ECF No. 134] ("Reply"). In support of the Setoff Reply, McKesson filed the Declarations of Dawn DeVito and Richard Milin. ECF No. 127 ("DeVito Decl."); ECF No. 128.

### C. Additional Filings

On July 19, 2022, McKesson filed a Notice of Relevant Decision by Eleventh Circuit Court of Appeals, bringing to the Court's attention a recent Eleventh Circuit decision that addresses issues similar to those in the Adversary Proceeding. ECF No. 139.

## II.    FACTUAL BACKGROUND

### A.    Contractual Relationship Between the Debtor and McKesson

The business relationship between McKesson and the Debtor was generally governed by a Supply Agreement dated December 6, 2012 (the "Supply Agreement") and New York state law. Am. Compl. ¶¶ 19–20; Setoff Mot. at 7–8; ECF No. 25-1 ("Supply Agreement").  Under the Supply Agreement, McKesson supplied the Debtor's pharmacies with "Merchandise," defined in the Supply Agreement to include "prescription drugs ('Rx'), over the counter drugs ('OTC'), health and beauty aids, and sundries" (collectively, the "Merchandise").  2022 Towsley Decl. ¶ 4.

The Debtor placed orders with McKesson through an electronic daily ordering system, and McKesson delivered Merchandise to the Debtor's pharmacies five days per week, Monday through Friday.  2022 Towsley Decl. ¶ 4.  Pursuant to the terms of the Supply Agreement, McKesson sold Merchandise to the Debtor on different credit terms based on the category of the Merchandise, which most often fell into the categories of non-generic pharmaceuticals ("Branded Pharmaceuticals") and generic pharmaceuticals ("Generic Pharmaceuticals").  *Id*.  Payment for Branded Pharmaceuticals was due on the Friday of the week following the date of an invoice, while payment for Generic Pharmaceuticals was due on the sixth following Friday.  Supply Agreement §§ 4.A and 4.B; Carnahan Decl. ¶¶ 41–42.

According to the Amended Complaint, the Supply Agreement entitled the Debtor to a rebate on certain purchases of Generic and Branded Pharmaceuticals if the Debtor was current on certain payment obligations to McKesson.  Am. Compl. ¶¶ 20–21.  The Plaintiff states that, pursuant to the Supply Agreement, "the Debtor paid [McKesson] for 'One Stop' generic merchandise ["OS Generic Merchandise"] by a two-step process: [f]irst, the Debtor paid McKesson's invoice, which was marked up by 20% over the manufacturer's invoice," and

6

"[s]econd, [McKesson] paid a rebate of 16.667% on the Debtor's 120% payment, thereby eliminating the 20% mark-up entirely." Claim Opp'n. at 9. The Supply Agreement specifies the timing of the payment and rebate process, stating that the Debtor owed McKesson on the sixth following Friday for its purchases, and McKesson owed the Debtor its rebate fifteen days after the end of the month in which its purchases were made. *Id.*

The Plaintiff contends that the Debtor often received a "prebate" for all purchases during, and many before, the second half of each month, because McKesson often paid the Debtor the rebate before the Debtor was required to pay McKesson's invoice. Claim Opp'n. at 9. The Amended Complaint asserts that Section 21(M) was the only provision of the Supply Agreement requiring payment as a condition of the Debtor's right to rebates and did not require the Debtor to have paid for the specific merchandise on which rebates were granted as a condition of paying those rebates. Am. Compl. ¶ 22. Rather, the Debtor was merely required to be current on the broader class of "payments due and owing to McKesson" as of the date the rebate was due. *Id.* Section 21(M) of the Supply Agreement states:

> Any rebate, volume incentive, or other similar payment based on A&P's purchases and prompt payment…[I]n the event that A&P on the payment date for any such Rebate ("Rebate Payment Date") is not current with respect to A&P's payments due and owing to McKesson pursuant to this agreement…McKesson shall have no obligation hereunder to pay any such rebate either on the Rebate Payment Date or at any time thereafter.

By agreeing to Section 21(M), the Committee asserts that McKesson agreed to pay rebates to the Debtor for merchandise the Debtor had not yet paid for in exchange for the Debtor being current on its obligations to McKesson when they came due. Am. Compl. ¶ 23.

7

B.  The Preference Period

The Debtor made thirty payments to McKesson during the Preference Period (the "Ninety-Day Payments"), the details of which are as follows:

| Delivery Date | Invoice Amount | Delivery Date (Cont.) | Invoice Amount (Cont.) |
|---|---|---|---|
| April 25-30, 2015 | $4,635,582.73 | June 19, 2015 | $ 741,785.01 |
| May 1, 2015 | $ 774,381.20 | June 20-25, 2015 | $3,926,765.57 |
| May 2-7, 2015 | $4,102,560.89 | June 26, 2015 | $ 804,111.40 |
| May 8, 2015 | $ 776,996.14 | June 27 to July 2, 2015 | $4,321,063.37 |
| May 9-14, 2015 | $3,921,757.61 | July 2, 2015 | $ 122,852.16 |
| May 15, 2015 | $ 804,896.06 | July 3, 2015 | $ 3,430.68 |
| May 16-21, 2015 | $4,097,585.05 | July 7, 2015 | $ 535.66 |
| May 22, 2015 | $ 813,698.06 | July 4-9, 2015 | $5,023,685.93 |
| May 23-28, 2015 | $3,493,423.33 | July 10, 2015 | $ 896,236.61 |
| May 29, 2015 | $ 909,118.06 | July 12-13, 2015 | $1,436,808.53 |
| May 30 to June 4, 2015 | $4,182,929.58 | July 13, 2015 | $ 4,304.64 |
| June 5, 2015 | $ 824,426.09 | July 14, 2015 | $1,088,919.73 |
| June 6-11, 2015 | $3,924,060.86 | July 15, 2015 | $ 883,260.71 |
| June 12, 2015 | $ 789,712.50 | July 16, 2015 | $ 830,735.91 |
| June 13-18, 2015 | $3,817,872.39 | July 17, 2015 | $ 883,298.31 |

McKesson's Statement at 2; Committee's Statement at 5–6.[4]

In the months leading up to the Petition Date, McKesson became aware that the Debtor was experiencing financial difficulties.  2019 Towsley Decl. ¶ 10.  McKesson began sending

---

[4] The Committee disputes the payments dated July 2, 2015, July 7, 2015, and July 13, 2015, and the amount of the payment dated July 14, 2015.  Committee's Statement at 5–6.

weekly emails to the Debtor attaching a report ("Pathmark Report") for the previous week's deliveries of Merchandise, identifying delivery dates and an invoice amount.[5]  McKesson's Statement at 1.  Pathmark Reports were sent to the Debtor for the duration of the Preference Period.

In July of 2015, and in light of the Debtor's financial struggles, McKesson notified the Debtor that it would modify the credit terms governing Generic and Branded Pharmaceuticals on a go-forward basis.  2019 Towsley Decl. ¶ 10; Carnahan Decl. ¶ 44.  The credit terms were modified, effective July 13, 2015, to require the Debtor to pay for both Generic and Branded Pharmaceuticals no later than one day after delivery, with payment made via wire, rather than the Debtors' standard procedure of automatic clearing house payment ("Modified Credit Terms").  2019 Towsley Decl. ¶ 10; Carnahan Decl. ¶ 48.  In the week prior to the Petition Date, McKesson sent the Debtor daily Pathmark Reports as opposed to weekly.  McKesson's Statement at 1.

Four payments were made to McKesson by the Debtor under the Modified Credit Terms, totaling approximately $4.25 million, as follows: (1) Tuesday, July 14, 2015 in the amount of $1,436,808.53; (2) Wednesday, July 15, 2015 in the amount of $1,098,919.73; (3) Thursday, July 16, 2015 in the amount of $883,250.71; and (4) Friday, July 17, 2015 in the amount of $830,735.91 ("Modified Credit Term Payments").  Am. Compl., Ex. A.  The Debtor also made its regularly scheduled Friday payment on July 17, 2015.  2019 Motion at 11.  Except for the four Modified Credit Term Payments, the twenty-six other Ninety-Day Payments were made under the original terms of the Supply Agreement, with each invoice paid on its exact due date.  2019 Towsley Decl. ¶ 9; Am. Compl. Ex. 1.

---

[5] The parties dispute whether the Pathmark report identifies the "invoice amount" or the "value" of the merchandise, with the Committee asserting the former and McKesson the latter.  McKesson's Statement at 1; Committee's Statement at 2–3.

C.  The Extension Agreement

On September 8, 2015, the Debtor and McKesson entered into an agreement titled, Extension of Compliance with Terms of Supply Agreement (the "Extension Agreement"), pursuant to which the terms of the Supply Agreement were extended to January 31, 2016, and the Debtor paid McKesson an extension fee in the amount of $1 million to be applied to reduce McKesson's administrative claim.  McKesson's Statement at 6; Committee's Statement at 12.

The Amended Complaint states that the Extension Agreement removed certain impediments to the Debtor's collection of rebates, and provided that McKesson shall pay "all accrued Postpetition Rebates when due to be paid on the terms set forth in the [Supply] Agreement, including this Extension, *but without regard to section 21(M) or any other provision of the [Supply] Agreement that would prohibit, condition, or suspend the payment of such Postpetition Rebates to [the Debtor].*"  Am. Compl. ¶ 40.

D.  McKesson's Proof of Claim

On November 24, 2015, McKesson filed its initial proof of claim in the Debtors' bankruptcy proceeding, including an administrative claim pursuant to section 503(b)(9) for "at least $4,943,773.12" for goods received by the Debtor during the twenty days prior to the Petition Date (the "Administrative Claim Period").  Setoff Mot. at 6.  On March 8, 2016, McKesson filed an amended proof of claim, asserting an administrative claim pursuant to section 503(b)(9) for "at least $1,748,115.92."  Setoff Mot. at 6.

On June 15, 2021, McKesson filed a supplemental administrative claim, addressing the claims asserted in the Amended Complaint and McKesson's contingent section 503(b)(9) administrative claim (the "Supplemental Administrative Claim").  Setoff Mot. at 7.  The

Supplemental Administrative Claim asserts an administrative claim for "at least $1,750,731.87" for "Goods received by the Debtor[] during the 20 days before the Petition Date … and as reduced by the One Million Dollars ($1,000,000) Extension Fee per the terms of the 'Extension of Compliance with Terms of Supply Agreement.'"  *Id*.  The Supplemental Administrative claim states that "to the extent any of the payments received by McKesson during the Administrative Claim Period are determined to be avoidable as a preference or otherwise, McKesson's administrative expense claim should be increased by that amount. *Id*.

     E.  <u>The Setoff Motion</u>

In the Setoff Motion, McKesson asserts that its subsequent new value defense ("SNV Defense") reduces its preference exposure to $9.7 million, and McKesson's section 503(b)(9) setoff rights (the "Setoff Defense") reduces McKesson's preference exposure to no more than $898,354.51.  Setoff Mot. at 2, 4.  The Setoff Motion states that McKesson delivered substantial Merchandise to the Debtor, on credit, during the Preference Period totaling $58,846,795.61 in value, which shields all but six of the Ninety-Day Payments from avoidance.  Setoff Mot. at 2, 17.

McKesson then accounts for five of the six remaining Ninety-Day Payments with its Setoff Defense, citing the Court's ruling allowing a dollar-for-dollar setoff of McKesson's section 503(b)(9) administrative claim against its preference exposure.  Setoff Mot. at 17.  The Setoff Motion states that because these five payments were made on account of Merchandise delivered within the Administrative Claim Period, if the payments were avoided as preferential, McKesson's section 503(b)(9) administrative claim would increase by the amount avoided pursuant to section 502(h) of the Bankruptcy Code.  Setoff Mot. at 17.  The only payment that is uncovered by the SNV Defense and Setoff Defense is a payment made on July 17, 2015, in the amount of approximately $900,000, which McKesson argues is the extent of its preference exposure.  *Id.*

11

The Committee's Setoff Opposition raises several arguments that it raised in its Claim Opposition, which concern unproven deliveries, inflated invoices, and unpaid credits owed by McKesson to the Debtor, as well as several arguments specific to the Setoff Motion.  Setoff Opp'n. at 10.  The Committee asserts that the SNV Defense should not shield payments made by the Debtor to McKesson for policy reasons.  *Id.* at 16.  The Committee argues that the SNV Defense should not be available as a defense, especially with respect to payments made under the Modified Credit Terms because the modified terms required next-day payments, and as such, the new value did not remain unpaid.  *Id.*  The Committee contends that McKesson inequitably seeks double payment in asking for a dollar-for-dollar reduction in preference liability based on the SNV Defense plus full payment of its section 503(b)(9) claim.  *Id.* at 10.

The Committee addresses McKesson's Setoff Defense by asserting that McKesson cannot properly setoff its section 503(b)(9) administrative claim against its preference liability because the claims at issue are contingent and did not arise on the same side of the Petition Date.  Setoff Opp'n. at 17–18.  The Committee argues that New York law does not permit setoff against contingent claims.  *Id.*  The Committee asserts that its preference claim is contingent as to its amount and McKesson's liability, and McKesson's section 503(b)(9) claim is contingent to the extent it is based on preference liability.  *Id.*  The Committee further opposes McKesson's Setoff Defense on the grounds that its section 503(b)(9) claim arose pre-petition, while the preference claims arose post-petition.  *Id.* at 18.  As such, the proposed setoff would lack mutuality as required to effectuate a setoff.  *Id.*

Lastly, the Committee argues that any avoidance of payments made to McKesson on account of Merchandise delivered during the Administrative Claim Period would not create a section 503(b)(9) claim in the amount avoided, but rather would create a general unsecured claim

under section 502(h) of the Bankruptcy Code because section 502(h) does not indicate that claims should be valued as of the day they arose, but rather states that the claim created would be treated as if it had arisen pre-petition.  Setoff Opp'n. at 23.

### III.    SUMMARY JUDGMENT STANDARD

Bankruptcy Rule 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure, which states that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "bears the burden of establishing that no genuine issue of material fact exists" and that the undisputed facts entitle the movant to judgment as a matter of law.  *See Morales v. Holder*, 351 F. App'x 554, 555 (2d Cir. 2009) (*quoting Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1060–61 (2d Cir. 1995)).

If the moving party satisfies this burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and rather must establish the existence of a genuine issue of fact by "citing to particular parts of materials in the record." *Ning Yen Yao v. Kao (In re Kao)*, 612 B.R. 272, 280 (Bankr. S.D.N.Y. 2020) (*quoting Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2019); Fed. R. Civ. P. 56(a)) (internal quotation marks and citation omitted).  If, however, "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

In determining whether a genuine issue of material fact exists, the court must draw all factual inferences in the light most favorable to the nonmoving party. *Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1061 (2d Cir. 1995) (citations and internal quotation marks omitted). If "there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Id.* (*citing Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir.1988)). A grant of summary judgment will only be precluded by "disputes over facts that might effect the outcome of the suit under governing law." *In re Kao*, 612 B.R. at 280 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing the available evidence, the court cannot "weigh the evidence, assess the credibility of witnesses, or resolve issues of fact." *Rodriguez*, 72 F.3d at 1061 (citations omitted).

## IV.    DISCUSSION

In connection with the Setoff Motion, the Court is being asked to determine the extent of the Defendant's SNV Defense, the nature of the claim that the Defendant would have if any portion of the Ninety-Day Payments were determined to be preferences, and whether its non-contingent section 503(b)(9) claim may be set off against any preferences. The Court notes that it is not determining any final amounts owed by the Defendant because there are numerous issues remaining in dispute, including the ordinary course of business defense to any payments made to the Defendant during the Preference Period, the allowed amount of the Defendant's non-contingent section 503(b)(9) claim, any setoff claims that the Debtor may have against such claim, the allowed amount of any unsecured claim that the Defendant may have against the Debtor, any setoff claims that the Debtor may have against such claim, and the other causes of action not previously dismissed in the Amended Complaint (the third and fourth counts in the Amended Complaint as limited by Judge Drain in his prior rulings).

A. <u>Subsequent New Value</u>

The Court notes that, in Count One of the Amended Complaint, the Plaintiff has alleged

the five required elements of a preference set forth in section 547(b) of the Bankruptcy Code.  The

Defendant does not challenge any of those elements in the Setoff Motion but has raised various

defenses under section 547(c) of the Bankruptcy Code and applicable state law, including section

547(c)(4) of the Bankruptcy Code.

Section 547(c)(4) states that "[t]he trustee may not avoid under this section a transfer– . . .

to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new

value to or for the benefit of the debtor–(A) not secured by an otherwise unavoidable security

interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable

transfer to or for the benefit of such creditor."  In the Setoff Motion, the Defendant argues that,

with respect to twenty-four of the Ninety-Day Payments, subsequent new value was provided by

the Defendant to the Debtor in the form of additional goods delivered after each such payment.  In

the Setoff Opposition, the Plaintiff disputes the SNV Defense on various grounds including that

certain goods were never delivered, that the value of the goods that were delivered is overstated

and that the additional goods delivered after each payment were subsequently paid for by the

Debtor.

The Plaintiff disputes that certain goods in the amount of approximately $127,000 were

delivered as set forth in the Declaration of Dawn DeVito dated May 5, 2022 and Committee Letter

dated March 25, 2022.  DeVito Decl. ¶ 30; ECF No. 112.  Similarly, the Plaintiff disputes the value

of OS Generic Merchandise that was delivered to the Debtor on the basis that the invoice amount

overstates the value of such goods because of the prebate paid by the Defendant to the Debtor prior

to the payment date of the invoice.  *See* Committee's Statement at 2–3.  While the Court is skeptical

15

of the prebate argument, the Court is to draw all factual inferences in favor of the party against whom summary judgment is sought.  Accordingly, the Court is not ruling on the exact amount of the value of the additional goods delivered after each of twenty-four of the Ninety-Day Payments on summary judgment and thus, summary judgment is denied with respect to the amount of subsequent new value of such additional goods delivered.

With respect to the Defendant's argument in the Setoff Motion that the SNV Defense under section 547(c)(4) of the Bankruptcy Code is valid to the extent of the value of the additional goods delivered by the Defendant after each twenty-four of the Ninety-Day payments, the Court grants summary judgment for the Defendant.  There have been seven Circuit Courts that have considered the issue as to whether subsequent new value must remain unpaid in order to shield a potential preference under section 547(c)(4) of the Bankruptcy Code.  Five of the Circuit Courts have ruled that nothing in the language of section 547(c)(4) requires that subsequent new value in the form of additional goods or services provided by the creditor must remain unpaid.  *See Kaye v. Blue Bell Creameries, Inc. (In Re BFW Liquidation, LLC)*, 899 F.3d 1178, 1189 (11th Cir. 2018) (holding that section 547(c)(4) does not require new value to remain unpaid); *Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.)*, 412 F.3d 545, 552 (4th Cir. 2005) (rejecting the idea that section 547(c)(4) requires new value to remain unpaid); *Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 329 (8th Cir. 1997) (concluding that, "under the plain language of § 547(c)(4)(B)," payments that the creditor received from the debtor after providing new value did not prevent the creditor from using that new value as a defense to avoidance because the payments at issue were themselves  "otherwise avoidable"); *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228, 232 (9th Cir. 1995) (holding that "a new value defense is permitted unless the debtor repays the new value by a transfer which is

otherwise unavoidable"); *Laker v. Vallette (In re Toyota of Jefferson, Inc.*), 14 F.3d 1088, 1093 n.2 (5th Cir. 1994) (holding that a creditor was entitled to section 547(c)(4)'s subsequent new value defense because, although the debtor had paid for the new value provided, it did so "with preferences that were not 'otherwise unavoidable'").  In contrast, the Seventh Circuit held in *In re Prescott* that new value must remain unpaid and focused on whether the estate was replenished. 805 F.2d 719, 728 (7th Cir. 1986).  The Third Circuit held in *N.Y.C. Shoes Inc. v. Bentley Int'l Inc. (In re N.Y.C. Shoes Inc.)* that the debtor must not have fully compensated the creditor for the new value as of the petition date.  880 F.2d 679, 680 (3d Cir. 1989).

The Second Circuit has not ruled on this issue.  While there are some decisions by courts within the Second Circuit that support the argument that subsequent new value must remain unpaid,[6] the Court does not find those decisions to be persuasive.  Instead, the Court relies on the language of the statute, the five Circuit Court decisions cited above holding that subsequent new value does not need to remain unpaid, and certain cases in this District in support of its ruling that subsequent new value need not remain unpaid to be used as a viable preference defense.  *See Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.*), 462 B.R. 66, 71 (Bankr. S.D.N.Y. 2011) (noting that the contrary rule ignores section 547(c)(4)(B) which states that the defense is available if the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor); *Official Comm. Of Unsecured Creditors of Maxwell Newspapers v. Travelers Ins. Indem. Co. (In re Maxwell Newspapers)*, 192 B.R. 633, 639–40 (Bankr. S.D.N.Y. 1996) (rejecting the argument that new value must be unpaid to qualify under section 547(c)(4)); *In re Paula Saker & Co.*, 53 B.R. 630, 634 (Bankr. S.D.N.Y. 1985) ("[S]ome

---

[6] *See In re Pameco Corp.*, 356 B.R. 327 (Bankr. S.D.N.Y. 2006); *see also In re Teligent, Inc.*, 315 B.R. 308, 315 (Bankr. S.D.N.Y. 2004).

courts have reached the conclusion that the subsequent advance exception requires that the advance remain unpaid. . . . But all that this court has required is that 'each transfer must be examined independently to determine whether or not the creditor has replenished the estate.'") (citing *In re Rustia*, 20 B.R. 131, 135 (Bankr. S.D.N.Y. 1982)).

Accordingly, the Court finds that the additional goods delivered by the Defendant constitute a valid SNV Defense against twenty-four of the Ninety-Day Payments.

The remaining issues with respect to the SNV Defense are the value of the OS Generic Merchandise delivered to the Debtor which the Plaintiff challenges as being overstated in value due to the prebate and, with respect to one invoice, the Plaintiff's allegation that there is no proof that the goods were delivered to the Debtor. The resolution of these disputed factual issues will have to await trial.[7]

### B. Setoff

The Defendant moved for summary judgment with respect to its right to setoff its non-contingent section 503(b)(9) claim in the 2019 Motion. At the September 2019 Hearing, Judge Drain ruled, relying on *Quantum*, 554 B.R. at 733, that the Defendant has the right to set off its non-contingent section 503(b)(9) administrative claim against any judgment entered by this Court for avoidance and recovery of preferential transfers.[8] The Court notes that, at the September 2019 Hearing, Judge Drain also ruled that the payments made by the Debtor on July 13, 2015 and thereafter until the Petition Date, which were made within one day of delivery, were substantially

---

[7] The Claim Motion and Claim Opposition contemplate several factual issues regarding the amount of the Defendant's non-contingent section 503(b)(9) claim, including whether certain deliveries were made to the Debtor, whether the Defendant owes the Debtor several credits, and whether the invoices used to calculate the Defendant's administrative claim reflect the true value of the Merchandise delivered. These factual issues are addressed in a separate summary judgment opinion issued by this Court.

[8] Judge Drain did not enter an order with respect to his rulings at the September 2019 Hearing.

contemporaneous, but he reserved until trial the issues of intent and coercion with respect to section 547(c)(1) of the Bankruptcy Code.  ECF No. 43, Hr'g Tr. at 57–59.

In *Quantum*, Judge Carey followed the analysis in *In re Lids Corp.*, 260 B.R. 680, 683 (Bankr. D. Del. 2001), which held that section 502(d) of the Bankruptcy Code does not disallow an administrative claim[9] and thus, the administrative claim which is a post-petition claim may be offset against a judgment for a preference claim which cannot be entered except post-petition.  In his ruling from the bench, Judge Drain held that Defendant's non-contingent section 503(b)(9) claim could be offset against any amount ultimately determined to be due to the Debtor's estate from the Defendant under section 550 of the Bankruptcy Code.  ECF No. 43, Hr'g Tr. at 54, 57–58.  Judge Drain's ruling treated the Defendant's non-contingent section 503(b)(9) claim as a post-petition claim which may be offset against a post-petition preference judgment.  This Court declined to revisit Judge Drain's rulings at the hearing on the Setoff Motion based upon the law of the case doctrine. ECF 138, Hr'g Tr. at 11-13.[10]

### C.  Whether Setoff Should be Disallowed on Equitable Grounds

The Plaintiff argues that the Court should deny summary judgment with respect to the setoff because of the Defendant's pattern of inequitable conduct.  Setoff Opp'n. at 27–32.   The Plaintiff says that the inequitable conduct of the Defendant included seizing $569,000 in rebates in violation of the automatic stay, seizing $579,000 in credits for Merchandise that had been returned pre-petition, having at least $2 million in credits on its books and records which have not

---

[9] The Second Circuit has held that section 502(d) does not apply to administrative claims under section 503(b).  *See In re Ames Dep't Stores, Inc.*, 582 F.2d 422, 432 (2d Cir. 2009).

[10] Whether there is an equitable reason why setoff should not be permitted to occur was not decided by Judge Drain. The Court also will not revisit Judge Drain's ruling on substantially contemporaneous exchange.

been applied and for which there is not an adequate explanation, seizing $134,503.57 in credits to be offset against the Defendant's unsecured claim, holding $44,032 in credits that it owes the Debtor, and holding $22,918.39 owed to the Debtor. *Id.*

The Plaintiff is correct that the Bankruptcy Court has the authority to deny approval of a setoff. *In re Lehman Brothers Holdings, Inc.*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009). However, the Second Circuit has held that such discretion should be sparingly used. "The rule allowing set-off, both before and after bankruptcy, is not one that courts are free to ignore when they think application would be 'unjust.' It is a rule that has been embodied in every bankruptcy act the nation has had, and creditors . . . have long acted in reliance upon it." *In re Applied Logic Corp.*, 576 F.2d 952, 957–58 (2d Cir. 1978). The Bankruptcy Court should enforce the remedy of setoff unless there are "compelling circumstances" that require the disallowance of a setoff. *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir. 1979). "Compelling circumstances may be present where there is a 'serious and immediate threat to the debtor,' *Niagara Mohawk Power Corp. v. Utica Floor Maintenance, Inc. (In re Utica Floor Maintenance, Inc.)*, 41 B.R. 941, 944–45 (N.D.N.Y. 1984), or where the creditor has engaged in criminal conduct or fraud." *See In re Whimsy, Inc.*, 221 B.R. 69, 74 (S.D.N.Y. 1998) (citing *Blanton v. Prudential-Bache Sec., Inc. (In re Blanton)*, 105 B.R. 321, 337–38 (Bankr. E.D. Va. 1989)).

The Court has reviewed the arguments raised by the Plaintiff in its Setoff Opposition and supporting declarations as to why this Court should deny the Defendant's right to setoff. Treating all of the facts alleged by the Plaintiff as true in its pleadings, this Court does not believe that the conduct alleged by the Plaintiff involving the Defendant provides "compelling circumstances" for this Court to deny the Defendant's right to setoff.

D.  The Interrelationship of Sections 550, 502(h) and 503(b)(9) as a Defense

The Defendant argues in the Setoff Motion that any judgment rendered on the preference claim would be futile because the resulting section 502(h) claim for any avoided preferential transfers would not be an unsecured claim, but would be an administrative claim under section 503(b)(9).  The Court disagrees.

The Court would have preferred to rule on this issue after trial since there is a possibility that all of the Ninety-Day Payments are subject to valid defenses, and as such the Court might never reach this issue.  However, the Defendant has raised it in its Setoff Motion as a defense and so, under Second Circuit caselaw, this Court must address it.  Setoff Mot. at 18–19; *see Meyers v. Asics Corp.*, 865 F. Supp. 177, 179 (S.D.N.Y. 1994) ("A motion for summary judgment must be considered with due regard for the right of parties asserting adequately supported claims and defenses to have those claims and defenses tried to the jury. However, the right to a swift and inexpensive conclusion to claims and defenses lacking a factual basis cannot be ignored.") (internal citation omitted); *see also Talwar v. Connecticut*, 539 F. Supp. 2d 604, 608 (D. Conn. 2008) ("When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses.").

Section 502(h) states that "[a] claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."  If this Court were to find that some portion of the Ninety-Day Payments made by the Defendant to the Debtor in the Preference Period are avoidable as a preference under section 547 of the Bankruptcy Code, then the Court would

21

enter a judgment in favor of the Plaintiff under section 550. After applying the setoff discussed above in Section IV.B, the balance of the preference judgment would be due and payable by the Defendant. If the Defendant pays the balance of the preference judgment, then it would be entitled to an allowed claim in the amount paid by the Defendant. The question is whether such hypothetical allowed claim would be a section 503(b)(9) claim or an unsecured claim.

This exact issue does not appear to have been decided by any court. Based on the legislative history of section 503(b)(9), it does not appear that Congress considered the interplay between sections 503(b)(9) and 503(h). Setoff Opp'n. at 24.

Section 503(b)(9) is a unique part of the Bankruptcy Code because it accords administrative claim status to the amount owed to a provider of goods who delivered goods to a debtor during the twenty days prior to the date that the debtor filed for bankruptcy for what otherwise would have been an unsecured claim. The legislative history of section 503(b)(9) is almost non-existent. Some believe that the legislative history "suggests that it was aimed at providing relief to sellers of goods who fail to give the required notice under the reclamation provision of section 546 (c)[.]" Shirley S. Cho, *The Intersection of Critical Vendor Orders and Bankruptcy Code § 503(b)(9)*, 29 Cal. Bankr. J. 7, 11 (2007), citing BAPCA, Pub. L. No. 109-8 at § 1227. However, there is no legislative history explaining section 503(b)(9) or its terminology when it was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act. *See In re Sklar Exploration Co., LLC*, 638 B.R. 627, 633 (Bankr. D. Colo. 2022).

Section 502(h) of the Bankruptcy Code was not amended when section 503(b)(9) was enacted to address the conflict between the administrative claim status accorded goods received in the twenty days prior to the filing for bankruptcy and the language of section 502(h) which refers to "the same as if such claim had arisen before the date of the filing of the petition." The Court

interprets the language of section 502(h) to mean that the claim is to be treated as a pre-petition claim and not as an administrative claim.  The Court finds the decisions cited to by the Defendant in the Setoff Motion and the Setoff Reply to be distinguishable.

The Defendant argues that section 502(h) requires that the transferee be put back in the same position as it would be had the preferential transfer never been made.  Reply at 24-26.  Certain scholarly articles support the Defendant's argument that a preferred creditor is granted the same legal rights that it had before the transfer.  *See* Rafael I. Pardo, *On Proof of Preferential Effect*, 55 Ala. L. Rev. 281, 282 (Winter 2004).  Two of the cases cited by the Defendant also support this argument.  *See Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*, 375 F.3d 51,70–71 (1st Cir. 2004) ("[W]e, like the district court, conclude that Fleet's 502(h) claim would have the status of a prepetition secured claim[.]") (citing *In re Bankvest Capital Corp.*, No. 02-40101, 2003 WL 1700978, at *7 (D. Mass. Mar. 28, 2003) ("[C]onsequently, returning any payment to Bankvest would be futile because Fleet would be returned to its status as a secured creditor."); *In re Falcon Prods., Inc.*, No. 4:07-CV-1495, 2008 WL 363045, at *10 (E.D. Mo. Feb. 8, 2008) (finding that the alleged preferred creditor would have a section 507(a)(4) claim under section 502(h) if a preference judgment were entered against the alleged preferred creditor and the alleged preferred creditor paid the judgment in full).  In each case, the court remarked on the futility of avoiding the transfer(s) as a preference, having the alleged preferred creditor pay the preference judgment in full, having the alleged preferred creditor file a claim in the amount of the paid judgment, and having the debtor then distribute funds in full payment of the priority or secured claim, as applicable.

The facts here are distinguished from the facts in the above cases.  First, Judge Drain previously ruled in the context of setoff to treat a section 503(b)(9) claim as a post-petition claim

that can be setoff against the preference judgment. *See supra* at Section IV.B. Second, pursuing the preference action in this case would not be futile because even if the Defendant were entitled to a section 503(b)(9) claim in the amount of any paid preference judgment, the Debtor is administratively insolvent and so the Defendant would receive a recovery of pennies on the dollar on account of that claim and not a full recovery as was posited by the courts in the *In re Bankvest Capital Corp.* and *In re Falcon Products, Inc.* cases. Third, the courts in those cases held that, based upon the language of section 502(h), the alleged preferred creditor would receive a pre-petition claim and not a post-petition claim. The holdings in those cases are that the alleged preferred creditor would be allowed a pre-petition claim with the same security or priority, as applicable, that it would have had if the preferential payment(s) had not been made because it is equitable to put the alleged preferred creditor back in the position it would have been in had the preferential payment been made. *In re Bankvest Capital Corp.*, 373 F.3d at 67; *In re Falcon Prods., Inc.*, 2008 WL 363045, at *7. But, such unsecured claims, albeit secured or priority, do not directly conflict with the language of section 503(h).

In this case, it would be inconsistent for this Court to treat a section 503(b)(9) claim as a post-petition claim in the context of a setoff and then treat a section 503(b)(9) as a pre-petition claim in the context of section 502(h). While the Court is sympathetic to the argument made by the Defendant that it should have a preference judgment payment claim that puts it back in the position that it would have been in had the preferential transfer not been made, the language of section 502(h) does not specifically say that, and it could have. It is difficult to square a section 503(b)(9) claim which has been determined by this Court to be a post-petition claim for setoff purposes with the language of section 502(h) which describes the claim as arising pre-petition.

It does not appear that Congress considered the interplay between section 503(b)(9) and section 502(h). There is no legislative history for section 503(b)(9) and the legislative history is very sparce for section 502(h). Section 503(b)(9) is somewhat unique because it grants administrative expense status to transactions that took place pre-petition. There was no discussion in the legislative process regarding section 503(b)(9) as to what would happen if the payment for the goods received by the debtor within the twenty days prior to the petition date were avoided as a preference. If the payment was made for goods received twenty-one days prior to the petition date, the payment was avoided as a preference, the preferred creditor paid the avoided amount in full, and the preferred creditor timely filed its claim for the amount paid by the preferred creditor, it is clear that the preferred creditor would have an allowed unsecured claim in the amount of the preference judgment paid by the preferred creditor. It is unclear what Congress intended to happen if the preferential payment was for goods delivered to the debtor during the twenty days prior to the petition date.

Based on the law of the case doctrine concerning the Court's ruling on section 503(b)(9) in the context of setoff and the specific language of section 502(h) referring to the claim for the amount that the preferred creditor paid on account of the preference judgment as a pre-petition claim, the Court holds that, if a preference judgment against the Defendant were rendered in this Adversary Proceeding, the Defendant paid the amount of the preference judgment in full, and then the Defendant filed a claim for the amount of the paid preference judgment, the Defendant would not have an allowed section 503(b)(9) claim, but would have an allowed unsecured claim in the amount of the paid preference judgment.

## V.     CONCLUSION

The Court grants partial summary judgment with respect to the Defendant's section 547(c)(4) defense, but not with respect to the determination of the dollar amount of the subsequent new value provided in connection with each of the twenty-four payments.  The value of the goods delivered after each of the twenty-four payments is disputed by the Plaintiff in its Setoff Opposition so it will have to be determined after an evidentiary hearing before this Court.  The Court overrules the Plaintiff's arguments with respect to setoff and the Defendant's setoff argument with respect to the hypothetical claim that could arise under section 502(h).

The Court requests that the parties to the Adversary Proceeding contact the Court to schedule a status conference to occur within the next few weeks on a mutually agreeable date.

Dated: January 18, 2024
  New York, New York

        */s/ Lisa G. Beckerman*
        **THE HONORABLE LISA G. BECKERMAN**
        **UNITED STATES BANKRUPTCY JUDGE**